# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN
## DISTRICT OF GEORGIA

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
                   Plaintiff,           )
                                        )
             v.                         )          Civil Action No.
                                        )
STATE OF GEORGIA,                       )
                                        )
                   Defendant.           )
_____ )

## **COMPLAINT**

1.     The United States alleges that Defendant, the State of Georgia

("State"), discriminates against thousands of public school students with behavior-

related disabilities by unnecessarily segregating them, or by placing them at

serious risk of such segregation, in a separate and unequal educational program

known as the Georgia Network for Educational and Therapeutic Support Program

(the "GNETS Program" or "GNETS"), which is financed, operated, and

administered by the State.  This segregation is unnecessary for the vast majority of

students and, therefore, violates Title II of the Americans with Disabilities Act

("ADA"), which prohibits unnecessary segregation of persons with disabilities in

state programs, services, and activities.  42 U.S.C. §§ 12131-34.  Such unjustified

isolation and segregation of persons with disabilities violates the ADA's mandate

1

that public entities "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R. § 35.130(d); *see also* 42 U.S.C. § 12132; *Olmstead v. L.C.*, 527 U.S. 581, 597 (1999).

2.      For example, GNETS students in one area of Georgia were reportedly educated in a classroom located in the basement of a general education school with its own separate entrance.  The students in this GNETS classroom never left the basement or interacted with any other students during the school day.  There was a large sign hanging at the front of their classroom that said "DETENTION," because the classroom was also used for detention outside regular school hours. *See* GNETS Letter of Findings (July 15, 2015), *available at* https://www.ada.gov/olmstead/documents/gnets_lof.pdf at 9.  Other students in the GNETS Program are entirely segregated from their peers outside GNETS and attend school in "Centers" – often old, poorly maintained buildings, some of which formerly served as schools for black students under Jim Crow laws.  *Id*.

3.      Mental health and therapeutic educational services and supports, such as Functional Behavioral Assessments, Behavioral Intervention Plans, and individualized positive behavioral supports, can be provided in integrated settings, including general education classrooms in students' zoned schools.

4.      When provided with appropriate mental health and therapeutic

2

educational services and supports, the vast majority of the students with disabilities in the GNETS Program could participate in the curriculum, instruction, elective courses, extracurricular activities, and other educational enrichment services in general education classrooms with their peers.

5.      Georgia public school students with behavior-related disabilities are placed in the GNETS Program where they receive mental health and therapeutic educational services and supports exclusively with other students with disabilities. The majority of students remain in the GNETS Program away from general education classrooms for years at a time while they receive such services.  They must establish that they no longer exhibit certain behaviors— in large part, the very behaviors indicative of the behavior-related disabilities that resulted in their placement in the GNETS Program — in order to exit the GNETS Program and return to general education.

6.      Many other children with disabilities are at serious risk of future placement in the GNETS Program due to the State's administration of its highly segregated mental health and therapeutic educational service system for children.

7.      The State discriminates against students with behavior-related disabilities in or at risk of placement in the GNETS Program by denying them equal opportunity to access and benefit from the educational services available to students throughout the State who are not in the GNETS Program.  Educational

services and supports needed to help students succeed can be provided to students with behavior-related disabilities in integrated settings, including general education classrooms in students' zoned schools. *See, e.g.*, https://www.ada.gov/olmstead/documents/gnets_lof.pdf at 11, 18-19.

8.    The State, through the GNETS Program, denies students with disabilities the full opportunity to interact with their peers without disabilities, which can have a lasting impact on the students' future opportunities for academic achievement.

9.    The United States brings this lawsuit to vindicate the rights of the thousands of students unnecessarily segregated in the GNETS Program, or at risk of such segregation, and to compel the State to administer its educational programs, services, and activities in a non-discriminatory manner.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction of this action under Title II of the ADA, 42 U.S.C. §§ 12131-12133 and 28 U.S.C. §§ 1331 and 1345.  The Court may grant relief sought in this action pursuant to 28 U.S.C. §§ 2201(a) and 2202.

11.    Venue is proper under 28 U.S.C. § 1391 because a substantial part of the acts and omissions giving rise to the action occurred in the Northern District of Georgia.  *See* 28 U.S.C. § 1391(b).

## PARTIES

12.    Plaintiff, the United States of America, brings this action under the ADA to protect the rights of students with disabilities unnecessarily receiving mental health and therapeutic educational services and supports in the segregated GNETS Program, as well as students at serious risk of unnecessary segregation there, who are qualified for and do not oppose receiving services in integrated settings.

13.    Defendant, the State of Georgia, is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1), and is therefore subject to Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*, and its implementing regulations, 28 C.F.R. Part 35.

14.    Defendant plans, funds, administers, and delivers mental health and therapeutic educational services and supports, including the GNETS Program, for students with behavior-related disabilities via various agencies and departments, described below.

## STATUTORY AND REGULATORY BACKGROUND

15.    Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Title II

further prohibits the unnecessary segregation of persons with disabilities.  *See id.*;

*Olmstead v. L.C.*, 527 U.S. 581, 600 (1999).

16.    The chief purpose of the ADA is to end discrimination against, and

the isolation of, individuals with disabilities.  As Congress stated in the findings

and purpose section of the ADA: "[H]istorically, society has tended to isolate and

segregate individuals with disabilities, and, despite some improvements, such

forms of discrimination against individuals with disabilities continue to be a

serious and pervasive social problem."  42 U.S.C. § 12101(a)(2).  Congress further

found that discrimination against individuals with disabilities persisted in

education and access to public services, and that such individuals faced various

forms of discrimination, including "segregation, and relegation to lesser services,

programs, activities, benefits, jobs, or other opportunities."  42 U.S.C. §§

12101(a)(3), (a)(5).

17.    Title II of the ADA therefore prohibits discrimination on the basis of

disability by public entities.  *See* 42 U.S.C. § 12132.  A "public entity" is any State

or local government and any department, agency, or other instrumentality of a

State or local government, and covers all services, programs, and activities

provided or made available by public entities, including through contractual,

licensing, or other arrangements.  *See id*. §§ 12131(1), 12132; 28 C.F.R. § 35.130.

Accordingly, Title II's coverage extends to the State and its agencies.

18.     Congress directed the Attorney General to issue regulations implementing Title II of the ADA.  *See* 42 U.S.C. § 12134.

19.     The Title II regulations require public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R. § 35.130(d).  "The most integrated setting" means a setting that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible . . . ."  *See id*. pt. 35, app. B at 690.

20.     Title II's regulations further prohibit public entities from utilizing "criteria or methods of administration" that have the effect of subjecting qualified individuals with disabilities to discrimination, including unnecessary segregation, or "that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities . . . ." *Id.* § 35.130(b)(3).

21.     The Supreme Court has held that Title II prohibits the unjustified segregation of individuals with disabilities in the provision of public services.  *See Olmstead*, 527 U.S. at 597. Unjustified isolation of persons with disabilities who, with reasonable modifications, could participate in an integrated setting is unlawful discrimination because (1) segregation "perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life,"

7

and (2) segregation "severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment."  *Id.* at 600-01.

22.   Public entities are required to provide community-based services when (a) such services are appropriate, (b) the affected persons do not oppose community-based treatment, and (c) community-based services can be reasonably accommodated, taking into account the resources available to the entity and the needs of other persons with disabilities.  *See id*. at 607.

Finally, Title II's regulations also address discrimination in the form of inequality in services, programs, or activities provided by public entities.  Public entities may not (1) "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit or service;" (2) "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from an aid, benefit or service that is not equal to that afforded others;" (3) "[p]rovide a qualified individual with a disability with an aid, benefit or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;" or (4) "[o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit or service."  *Id.* § 35.130(b)(1)(i)-(iii), (vii).

# FACTUAL ALLEGATIONS

A. <u>The State's System for Providing Educational Services and Supports to Students with Behavior-Related Disabilities</u>

23.     The Georgia Department of Education ("GaDOE") oversees public education throughout the State, ensuring that laws and regulations pertaining to education are followed and that State and federal money is properly allocated and appropriated.

24.     The State, through the GaDOE, plans, funds, administers, licenses, manages, and oversees the GNETS Program.  It determines which mental health and therapeutic educational services and supports to provide, who will provide such services, in what settings services will be provided, and how to allocate and manage the State and federal funds earmarked for such services.

25.     The State, through the GaDOE, sets the criteria for students' eligibility for GNETS and establishes the requirements for students' entry into and transition out of GNETS.   *See* Ga. Comp. R. & Regs. § 160-4-7-.15(2); Ga. Dept. of Ed., GNETS Operations Manual at 9, 11-12 (Jan. 2014) (the "GNETS Operations Manual"), *available at* http://www.gadoe.org/Curriculum-Instruction-and-Assessment/Special-Education-Services/Documents/GNETS/FY14 Operations Manual.pdf.  The State also has designated an employee to oversee the GNETS

Program as well as several employees to oversee implementation of Positive

Behavioral Interventions and Supports ("PBIS") across the State.

26.     Even though mental health and therapeutic educational services and

supports can be provided in integrated general education classrooms, the State,

including GaDOE, has selected to plan, fund, administer, license, manage, and

oversee those services almost exclusively in segregated GNETS centers and

classrooms. As a result, local school districts often must send students with

behavior-related disabilities to GNETS for such services and supports because the

state will not make available the same services in integrated settings.

27.     The Georgia Department of Community Health ("DCH") is the State

agency responsible for Medicaid and PeachCare for Kids®, which is the State's

program to implement the federal Early and Periodic Screening, Diagnostic, and

Treatment ("EPSDT") program that funds Medicaid services for eligible children

across the State and the United States.  Many mental health and therapeutic

educational services and supports, including services and supports provided

through the GNETS Program, are reimbursable through the EPSDT program that is

administered by DCH.

28.     The Georgia Department of Behavioral Health and Developmental

Disabilities ("DBHDD") is the State agency providing policies, programs, and

services for people with mental illness, substance use disorders, and developmental

disabilities.  DBHDD is responsible for many of the supports and services that are needed by students with disabilities placed in GNETS and delivered through the State-managed care system that DBHDD administers in part.  *See* https://dbhdd.georgia.gov.

29.     During the 2014-2015 school year, the State reported that it served approximately 4,600 students, pre-kindergarten through 12th grade, with behavior-related disabilities in the GNETS Program (the "GNETS Population").  There were approximately 125 pre-kindergarten and kindergarten students in the GNETS Program.

30.     To be eligible for GNETS services, a student must be a child with an emotional and behavioral disorder "based upon documentation of the severity of the duration, frequency, and intensity of one or more of the characteristics of the disability category of emotional and behavioral disorders ("EBD")," or "[o]ther eligible students with disabilities … [where] the frequency, intensity, and duration of their behaviors is such that [GNETS] placement is deemed by those students' IEP teams to be appropriate to meet the students' needs."  *See* GNETS Operations Manual at 1.  According to State data, most of the students served in the GNETS Program have a diagnosis of EBD.

31.     GNETS is divided into 24 regional programs serving all of the State's public school districts.  The Program currently serves all of the State's 181 school

11

districts, with some regional programs individually serving over a dozen school districts.  *See* GNETS Program Directory FY 16, *available at* https://www.gadoe.org/Curriculum-Instruction-and-Assessment/Special-Education-Services/Documents/GNETS/FY%2016%20GNETS%20Programs.pdf.

32.     According to State data, in the 2014-2015 school year, students from more than half of all Georgia public schools (1,355 schools) entered the GNETS Program.

33.     For fiscal year 2016-2017, the State allocated over $72 million in State and federal dollars to the GNETS Program through a line item in the State budget separate from the State's funding of public schools.  *See* HB 751 FY 2016-17 Appropriations Bill, § 24.9, *available at* https://opb.georgia.gov/sites/opb.georgia.gov/files/related_files/site_page/FY_2017_Final%20Bill_Governor%20Signed.pdf.

## B. GNETS Centers and GNETS Classrooms Are Segregated, Institutional Settings.

34.     More than two-thirds of all students in the GNETS Program attend school in regional GNETS Centers, which are generally located in self-contained buildings that serve only students with disabilities from multiple school districts. The GNETS Centers severely restrict interactions between students with disabilities and their peers in general education, depriving students in GNETS of

the opportunity to benefit from the stimulation and range of interactions that occur in general education schools, including opportunities to learn with, observe, and be influenced by their non-disabled peers.

35.     Other students in the GNETS Program attend school in regional GNETS Classrooms, which serve only students with disabilities and, although the Classrooms are located within general education school buildings, they are often not the students' zoned general education schools.  The GNETS Classrooms may also be located at schools that serve different grade configurations than the grades in which the students in GNETS are enrolled (e.g., a 4th grade student in GNETS may be in a GNETS Classroom in a general education high school).

36.     Even in GNETS Classrooms that are physically located in general education school buildings, many students placed in the GNETS Classrooms are unnecessarily segregated from their non-disabled peers because the GNETS Classrooms are often located in separate wings or isolated parts of school buildings, some of which are locked and/or fenced off from spaces used for general education programs.

C.  Georgia Administers its GNETS Services in a Manner that has Caused Unnecessary Segregation of Students in State-Run GNETS Centers and GNETS Classrooms and that Places Other Students at Serious Risk of Such Segregation.

37.     Mental health and therapeutic educational services and supports for students with behavior-related disabilities can be provided in integrated educational settings with various levels of services and supports.

38.     Yet, for over 40 years, the State has operated, administered, and funded the GNETS Program in mostly segregated settings, largely to the exclusion of integrated alternatives.

39.     The State fails to provide and fund sufficient mental health and therapeutic educational services and supports for children with behavior-related disabilities in integrated educational settings throughout the State.

40.     The State fails to provide adequate training to general education teachers regarding students with behavior-related disabilities and the supports and services that allow these students to learn in integrated settings.  Instead, the State focuses its training and technical assistance resources related to serving students with behavior-related disabilities on faculty and staff in segregated GNETS programs.  For example, the State provides professional development and training on Functional Behavior Assessments and Behavior Intervention Plans and other evidence-based practices and interventions to GNETS professionals and staff in segregated GNETS programs.

41.     The State uses discriminatory referral, admissions, and exit criteria for the GNETS Program that have the effect of screening out students with disabilities from integrated settings.

42.     Because the State does not make available adequate or effective integrated mental health and therapeutic educational services and supports for students with disabilities, thousands of students with behavior-related disabilities in Georgia are at serious risk of placement in segregated GNETS programs.  For instance, many students are placed at serious risk of placement in the GNETS Program because they are not informed of or given the opportunity to receive integrated mental health and therapeutic educational services and supports prior to receiving a referral or recommendation for placement in GNETS, while other students who are able to transition back to general education classrooms from the GNETS Program are at risk of returning to GNETS because the State fails to provide them with the mental health and therapeutic educational services and supports necessary to allow them to remain in a general education classroom.

43.     Moreover, the GNETS Program utilizes exit criteria that require students with disabilities to meet behavioral standards that result in students unnecessarily remaining in the GNETS Program when they could be served in general education schools.

D. Students with Behavior-Related Disabilities in or at Serious Risk of Placement in the GNETS Program are Qualified to Receive Services in More Integrated Settings and Do Not Oppose It.

44.    The vast majority of students in the GNETS Program could participate in general education schools if the State reasonably modified its delivery of educational services and supports in integrated educational settings.  The State unnecessarily segregates students in GNETS from their peers without disabilities and denies them many of the opportunities available in more integrated general education classrooms.

45.    Mental health and therapeutic educational services and supports are available in Georgia to a limited number of students with disabilities in integrated educational settings.  The students who receive such services and supports have disabilities similar to many of the students currently served in the segregated GNETS Program.  For many of these students, integrated mental health and therapeutic educational services and supports have enabled them to interact to the fullest extent possible with non-disabled peers and teachers, and, *inter alia*, to participate in curriculum that corresponds to grade level standards, access a range of extracurricular activities, and learn and practice appropriate behaviors in a general education classroom.

46.     The majority of students in the GNETS Program would not oppose receiving mental health and therapeutic educational services and supports in a more integrated setting.

E.  The State Fails to Offer Students with Behavior-Related Disabilities in the GNETS Program Equal Opportunities to Participate in Electives, Extracurricular Activities, and Other Educational Opportunities.

47.     The State's administration of the GNETS Program results in inequality of educational opportunities for students in GNETS.  Students in GNETS generally do not receive grade-level instruction that meets Georgia's State Standards like other students in general education classrooms.  Rather, particularly at the high school level, students in the GNETS Centers and Classrooms often receive only computer-based instruction.  By contrast, other students in general education classrooms generally receive instruction from teachers certified in the subject matters they are teaching, and in the case of students with disabilities in general education classrooms, also from teachers certified in special education.

48.     Students in GNETS also often lack access to electives, facilities, and extracurricular activities, such as after-school athletics or clubs, that are available to other students in general education settings. The unequal educational opportunities offered to students in the GNETS Program are specific to and a consequence of students' disability status and concomitant unnecessary segregation.

17

49.     Many of the GNETS Centers and Classrooms are inferior facilities in various states of disrepair that lack many of the features and amenities of general education schools, such as gymnasiums, cafeterias, libraries, science labs, music rooms, or playgrounds.  Some GNETS Centers are located in poor-quality buildings that formerly served as schools for black students during *de jure* segregation.

50.     Approximately one week before the start of the 2016-2017 school year, the GaDOE announced that students currently enrolled in nine GNETS facilities would be transferred to a different location for the start of the school year due to the deteriorating physical conditions and need for structural improvements of those nine facilities.

51.     Yet, even despite the State's limited plans to move and place some GNETS students into other locations, a lack of equal educational opportunities persists for such students, and will continue to persist, if and when students are moved from one segregated GNETS facility to another.  Endemic to all segregated GNETS programs is a lack of access to equal educational opportunities, as—unlike other students in general education settings— students in segregated GNETS settings lack opportunities for grade-level instruction, certified teachers, access to elective and extracurricular activities, and classroom learning complemented by interaction with non-disabled peers.  As such, unequal educational opportunities

18

remain a concrete and serious consequence of segregation regardless of the physical integrity of the building that students are placed in.

F. <u>The State Can Provide Services in Integrated Settings by Reasonably Modifying its Mental Health and Therapeutic Educational Service System for Students with Behavior-Related Disabilities.</u>

52.     GNETS programs are intended to provide a range of mental health and therapeutic educational services and supports, including paraprofessional support, therapeutic interventions, and the services provided by mental health professionals, including psychologists, social workers, psychiatrists, and behavior support specialists.

53.     Mental health and therapeutic educational services and supports assist students with behavior-related disabilities to identify their behavioral triggers; allow for the development of an individualized plan that relies upon positive support to address those triggers; train teachers, school staff, and parents to properly implement the plan; and allow for coordination with non-school providers of mental health and other services.

54.     Mental health and therapeutic educational services and supports include comprehensive, strengths-based Functional Behavioral Assessments, Behavioral Intervention Plans, and individualized positive behavioral supports; behavior coaching; case management and individual care coordination; crisis response and stabilization; and social skills training.  The federal Medicaid

program EPSDT generally authorizes reimbursement to cover such services in a
school or community-based setting rather than only in segregated educational
institutions.

55.    While currently provided in segregated GNETS settings, these
services, regardless of how they are funded by the State, can be provided in
integrated settings, such as general education classrooms, community-based
settings near schools, and students' homes.  Providing mental health and
therapeutic educational services and supports in integrated settings would allow
students with disabilities in need of those services access to meaningful
interactions with non-disabled peers.

56.    Integrated mental health and therapeutic educational services and
supports do exist for some students in Georgia, although the State has not funded
them, instead electing to fund such services almost exclusively in segregated
GNETS settings; such services have allowed those students to be integrated into
the general education classroom, socialize regularly with non-disabled peers, and
have access to the general education curriculum and teachers.  However, for
thousands of other students with behavior-related disabilities in or at risk of
placement in GNETS Centers and Classrooms across Georgia, these behavior-
related services and supports are only available in GNETS Centers and GNETS

Classrooms because the State has not made these services and supports available in sufficient supply to meet their needs.

57.     The State can reasonably modify its programs, policies, and services to remedy these Title II violations and avoid discrimination against students in or at risk of placement in the GNETS Program.

58.     Reasonable modifications to the State's system for providing mental health and therapeutic educational services and supports can be accomplished by operating a statewide service system that properly evaluates students' individual service needs and whether those needs can be met in integrated general education classes or schools; applying entrance and exit standards for the GNETS Program that are appropriate, clearly identified, equitably applied, and shared with all students and families; and redirecting the State's resources to offer mental health and therapeutic educational services and supports for students with behavior-related disabilities in the most integrated setting appropriate for them where they may access equal educational opportunities.

59.     Students in the GNETS Centers and Classrooms could be served by the State in more integrated settings with supports without fundamentally altering the State's service system.  Integrated and appropriate educational services and supports for the GNETS Population already exist within the State's educational service system.  The State is independently obligated to provide many of these

services to Medicaid-eligible children pursuant to the EPSDT requirements of the Medicaid Act. 42 U.S.C. §§ 1396a(a)(43), 1396d(a)(4), 1396d(r)(1)-(5). If administered appropriately in integrated settings, these educational services and supports would be both cost-effective and capable of meeting the needs of these students with disabilities.

60.    Integrated mental health and therapeutic educational services and supports are a cost-effective alternative to providing services for students in or at risk of entering segregated GNETS settings. For example, a State audit of the GNETS Program determined that "there is no assurance that GNETS is a cost-effective placement for providing these services." Georgia Department of Audits and Accounts Performance Audit Operations, Georgia Network for Educational and Therapeutic Support (GNETS) at 13 (Oct. 2010), *available at* http://www.gahsc.org/nm/2010/educational%20and%20therapeutic%20support%20-%20gnets%5B1%5D.pdf. The auditors estimated that, in 2009, "the state would have expended a minimum of $42 million to serve these students in local schools rather than GNETS (compared to $58 million in state funds for GNETS)." *Id.* at 22.

61.    The actions needed to remedy the State's mental health and therapeutic educational service system could be achieved through the redirection, reallocation, expansion, and coordination of existing resources.

## THE UNITED STATES' INVESTIGATION

62.     On July 15, 2015, the United States issued a findings letter to

Governor Nathan Deal and Georgia Attorney General Sam Olens, notifying the

State that it failed to comply with Title II of the ADA by unnecessarily segregating

students with disabilities from their peers without disabilities through the GNETS

Program, placing other students at risk of such segregation, and providing

opportunities to its students in the GNETS Program that are unequal to those

provided to other students not in the GNETS Program.  The letter reported in detail

the findings of the United States' investigation, provided the State notice of its

failure to comply with the ADA, and outlined the steps necessary for the State to

meet its obligations pursuant to federal law.  The letter further advised the State

that, in the event that a resolution could not be reached voluntarily, the Attorney

General may initiate a lawsuit pursuant to the ADA.

63.     Despite good faith efforts, the United States has determined that

voluntary compliance cannot be reached at this time.

64.     The United States has determined that judicial action is therefore

necessary to remedy the violations of law identified by the United States and to

vindicate the rights of students with behavior-related disabilities in or at risk of

being placed in the GNETS Program who could receive services in the most

integrated setting appropriate to their needs where they could access equal educational opportunities.

## COUNT I
## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. §§ 12131 *et seq.*

65.     The allegations of Paragraphs 1 through 64 of this Complaint are hereby realleged and incorporated by reference.

66.     Defendant State of Georgia is a public entity subject to Title II of the ADA, 42 U.S.C. § 12131(1).

67.     Members of the GNETS Population are persons with disabilities covered by Title II of the ADA, and they are qualified to participate in the Defendant's services, programs, or activities.  42 U.S.C. §§ 12102, 12131(2).

68.     Defendant has violated and continues to violate the ADA by administering its mental health and therapeutic educational service system in a manner that fails to serve students in the GNETS Program in the most integrated setting appropriate to their needs and puts other students with disabilities at risk of unnecessary segregation in GNETS.  The State further violates the ADA by failing to reasonably modify the State's policies, practices, and procedures to avoid such discrimination and unnecessary segregation.  42 U.S.C. § 12132.

69.     Defendant further violates the ADA by providing unequal educational opportunities to the GNETS Population, and by failing to reasonably modify policies, practices, and procedures to avoid such discrimination.  28 C.F.R § 35.130(b)(1)(i)-(iii), (vii).

70.     Providing services to students with disabilities in or at risk of entering the GNETS Program in more integrated settings can be accomplished through reasonable modifications to the State's programs and services.

71.     Many students in or at risk of entering the GNETS Program could benefit from mental health and therapeutic educational services and supports in integrated settings and do not oppose such placement.

72.     The State's actions constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulations at 28 C.F.R. pt. 35.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that the Court:

A.     Grant judgment in favor of the United States on its Complaint and declare that Defendant has violated Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*

B.     Issue a declaratory judgment that Defendant has violated Title II of the ADA by (1) failing to make reasonable modifications to the GNETS Program to provide students with disabilities access to necessary mental health and therapeutic educational services and supports in the most integrated setting

appropriate to their needs, and (2) providing students with disabilities services, programs, and benefits that are inferior and unequal to those provided to other students served in the general education environment.

    C.    Enjoin Defendant to:

        a.    Provide appropriate, integrated mental health and therapeutic educational services and supports that are designed to allow students with behavior-related disabilities to be placed in integrated general education classroom settings, and access to equal educational opportunities, to those in or at serious risk of entering the GNETS Program; and

        b.    Cease discriminating against those in or at serious risk of entering the GNETS Program by failing to provide mental health and therapeutic educational services and supports in the most integrated setting appropriate to their needs.

    D.    Provide such other appropriate relief as the interest of justice may require.

Dated: August 23, 2016

Respectfully submitted:

/s/*John A. Horn*
John A. Horn
United States Attorney
Northern District of Georgia


/s/ *Aileen Bell Hughes*
AILEEN BELL HUGHES
GA Bar Number: 375505
Assistant United States Attorney
United States Department of Justice
Richard B. Russell Federal Building
75 Ted Turner Dr. SW
Suite 600
Atlanta, GA 30303-3309
(404) 581.6000
aileen.bell.hughes@usdoj.gov

/s/ *Vanita Gupta*
VANITA GUPTA
Principal Deputy Assistant Attorney
General

EVE HILL
Deputy Assistant Attorney General

SHAHEENA SIMONS
Chief, Educational Opportunities
Section

RENEE WOHLENHAUS
Deputy Chief, Educational
Opportunities Section

REGINA KLINE
Senior Counsel

TOREY B. CUMMINGS
VICTORIA M. LILL
ANDREA E. HAMILTON
Trial Attorneys
United States Department of Justice
Civil Rights Division

/s/ *Andrea E. Hamilton*
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-4092
andrea.hamilton@usdoj.gov