## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NO: 1:16-CV-03088-ELR |
| STATE OF GEORGIA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR STAY OF PROCEEDINGS

The State of Georgia ("State") files this Memorandum of Law In Support of Its Motion to Dismiss the Complaint, or in the alternative, for a Stay of Proceedings. The Complaint consists of a single count, alleging violation of Title II of the Americans with Disabilities Act ("ADA"). The claim fails for four reasons: (1) The United States Department of Justice ("DOJ") lacks standing to bring claims under Title II of ADA. (2) The Complaint fails to allege actionable discrimination. (3) The Individuals with Disabilities Education Act ("IDEA") applies to address any matter relating to the educational placement of a student with disabilities, and an ADA claim alleging actions that are covered under IDEA fails as a matter of law. (4) "Obey-the-law" injunctions are prohibited in the

Eleventh Circuit.  (In addition, the State of Georgia is not a proper party defendant.

State agencies are entities capable of being sued.  The State is not.)

## **INTRODUCTION**

This is no ordinary lawsuit, and it seeks relief that no court ever has issued.

DOJ asks the Court, under Title II of the ADA, to order numerous state agencies,

over one hundred local school districts, and the State appropriators of funding

granted by the Georgia General Assembly, to place students suffering with severe

emotional trauma and analogous disabilities in general education classrooms –

even though no special education professional has so recommended.

DOJ seeks this relief based not on a well-settled principle of law, but rather

on what it contends is a correct application of ADA under Olmstead v. L.C., 527

U.S. 581 (1999).  DOJ's theory is wrong.  Generally, DOJ seeks to substitute itself

for the teams of educators and other professionals who, under IDEA, create

individualized education programs ("IEP") for students with disabilities.  Olmstead

does not support this, nor does any reasonable reading of ADA.  Specifically, the

Complaint fails to allege each of the recognized ADA elements.

DOJ's sweeping theory is particularly inappropriate to address the "myriad

of 'intractable economic, social, and even philosophical problems'" that are raised

by the Complaint and ill-suited for the blunt remedy of a judicial order.  San

Antonio Independent Sch. Dist. v. Rodriguez, 411 U.S. 1, 42 (1973) (citation omitted). The Supreme Court of the United States has declined similar invitations of federal involvement, deciding that the judiciary's "lack of specialized knowledge and experience … counsels against premature interference with informed judgments made at the state and local levels." Id.; see also Miller v. Bd. of Educ. Of Albuquerque Pub. Schs., 565 F.3d 1232, 1243 n.6 (10th Cir. 2009) ("[We] decline to involve ourselves in the structuring of school systems.").

As a threshold matter, this Court should not even reach that issue: as decided by another district court in the Eleventh Circuit, DOJ lacks standing to bring a Title II claim at all. C.V. v. Dudek, No. 12-60460-CIV-ZLOCH, 2016 WL 5220059 (S.D. Fla. Sept. 20, 2016). And, the State of Georgia is not the proper party against whom relief could be ordered.

The Court, on motion to dismiss, must accept as true well-pled factual allegations (as opposed to the conclusory assertions unsupported by alleged facts). However, the allegations are such that the State offers the following to give context to the ADA claim brought against it. The State emphasizes that the welfare of its students, particularly students with special needs, is its highest priority. The factual allegations are woefully dated and do not describe the current state of the

Georgia Network for Educational and Therapeutic Support ("GNETS") program or current State policy.

## BACKGROUND

### The IDEA, IEPs, and the IEP Team

The GNETS program is a means by which the State complies with IDEA. Three federal statutes are pertinent to students with disabilities: IDEA, Section 504 of the Rehabilitation Act of 1973, and ADA. Both ADA and Section 504 prohibit disability discrimination by state and local governments (Section 504 applies only to entities that receive federal funding, while ADA applies also to entities that do not receive federal funding).

IDEA is a far more specific statute than ADA. IDEA applies only to a subset of students with disabilities who are protected under ADA, i.e., students with disabilities who require special education and related services. IDEA affirmatively entitles these students to an Individualized Education Plan ("IEP"). 20 U.S.C. §1412(a). The IEP is created by an IEP Team, which is comprised of a parent(s); at least one regular education teacher, at least one special education teacher; a school district representative qualified to provide specially designed instruction to meet the unique needs of the student; a person knowledgeable about the general education curriculum and available resources; a psychologist

or other professional who can interpret psychoeducational evaluation result; and, where appropriate, the student.  Id.; Ga. Comp. R. & Regs. 160-4-7.06(5); 34 C.F.R. §300.23.

The IEP team first determines the educational components and related services necessary for a free and appropriate education ("FAPE") tailored specifically to the student's individual needs.  20 U.S.C. § 1412(a)(1).  Second, the IEP team determines the setting in which those services can be provided to the student that will afford him or her the greatest opportunity to interact with non-disabled peers, known as the least restrictive environment ("LRE").  20 U.S.C. §§ 1412(a)(3)-(7).   See K.I. v. Montgomery Public Schools, 805 F.Supp.2d 1283 (M.D. Ala. 2011) (LRE alone does not satisfy IDEA; the setting must accommodate the education and related services necessary for FAPE.).  See also Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 290-91 (5th Cir. 2005) (en banc); 20 U.S.C. §§ 1400(d)(1)(a), 1212(5).

When conducting the LRE analysis, the IEP team considers settings other than general education only where the nature or severity of the disability is such that education in general education classes, with the use of supplementary aids and services, cannot be satisfactorily achieved.  Id  In such situations, special classes for part of the school day, off-site services for part of the school day or after

school, and other settings for delivering the IEP are considered.  Id.  The most

restrictive option is residential placement, which removes the student from his or

her home and community.  Id.  Challenges to the IEP Team's decision may be

brought under the IDEA, and the IDEA is also enforced by the United States

Department of Education, not DOJ.  20 U.S.C. § 1416.

The GNETS Program

The GNETS program is designed to prevent the alternative of residential

placement.  Id.  See also GNETS Operations Manual (January 2014) (the

"Manual") at 1 (describing GNETS as providing "comprehensive educational and

therapeutic support services to students who might otherwise require residential or

other more restrictive placements").[1]  Only an IEP team can refer a student to the

GNETS program, and it may do so only after affirmatively deciding that (1)

GNETS services are more likely than any other service(s) to benefit the student

educationally and therapeutically (i.e., it is the LRE); and (2) data shows that less

restrictive services "have not enabled the child to benefit educationally."  Ga.

Comp. R. & Regs. 160-4-7-.15(1) and (2).  See also Compl. ¶¶ 26, 29-36.  Students

---

[1] Paragraph 25 of the Complaint refers to the Manual and identifies where it can be
found online.  Thus, this Court may consider the Manual for motion to dismiss
purposes.  Hoefling v. City of Miami, 811 F. 3d 1271, 1277 (11th Cir. 2016.)  A
true and accurate copy of the Manual is attached as "Exhibit 1."

may receive GNETS services in the general education classroom, for part of the day, or where recommended by the IEP team, for the full school day.  <u>See generally</u>, Manual.  Some GNETS services are provided in a traditional school setting; others are provided in separate, distinct facilities.  (Compl. ¶¶ 31, 34-36.)

<u>The Complaint</u>

The Complaint raises one count: Alleged violation of Title II of the ADA. (Compl. ¶¶ 66-72.)  It claims that the State violates the ADA by not serving "students in the GNETS Program in the most integrated setting appropriate to their needs and puts other students with disabilities at risk of unnecessary segregation." (<u>Id.</u> ¶ 68.)  It also claims that the State provides "unequal educational opportunities to the GNETS Population." (<u>Id.</u> at ¶ 69.)  For the alleged violations, the DOJ seeks a declaratory judgment and a sweeping affirmative injunction that orders the State to provide sufficient "mental health and therapeutic educational services and supports … in integrated general classroom settings" and equal education opportunities.  (<u>Id.</u> ¶¶ B and C.)  The DOJ also seeks an "obey the law" injunction that orders the state to stop violating ADA. (<u>Id.</u> ¶ D.)

## STANDARD OF REVIEW

If the allegations and documents fail to state a claim for relief, the complaint should be dismissed.  Fed. R. Civ. P. 12(b)(6).  See also Duncan v. CitiMortgage, Inc., No. 1:13-CV-1493-TWT, 2014 WL 172228 at *3 (N.D. Ga. Jan. 15, 2014) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While facts pled are accepted as true, they must state a "plausible claim for relief."  Id. at *4 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 279 (2009)).  Legal conclusions and "unwarranted deductions" are afforded no deference.  Twombly, 550 U.S. at 555; Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011); Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F. 3d 1242, 1248 (11th Cir. 2005).

## ARGUMENT AND CITATION TO AUTHORITY

The Complaint should be dismissed for four reasons.  First, DOJ lacks standing to bring an action under Title II of ADA.  Second, DOJ fails to allege the elements of discrimination under ADA or its regulations.  Third, the Complaint wrongly conflates ADA with the IDEA.  Finally, "obey the law" injunctions are not allowed in the Eleventh Circuit.

## A.    The DOJ Lacks Standing.

Congress expressly authorized DOJ to enforce Titles I and III of ADA, which prohibit discrimination in employment and public accommodations

provided by private entities, respectively.  42 U.S.C. §§ 12117(a) (Title I),

12188(b) (Title III).  The DOJ brought this lawsuit, however, pursuant to Title II,

which prohibits discrimination in the provision of public services.  42 U.S.C.

§§ 12131-12165.  And as recently decided by the United States District Court for

the Southern District of Florida, Congress did not provide DOJ with authority to

bring a lawsuit against states for alleged violations of Title II of ADA.  C.V. v.

Dudek, No. 12-60460-CIV-ZLOCH, 2016 WL 5220059 (S.D. Fla. Sept. 20, 2016).

In Dudek, the district court considered a lawsuit against the State of Florida

over the administration of the state's Medicaid program.  2016 WL 522059 at *1.

The DOJ sought to join the lawsuit as a party, but the court, sua sponte, decided

that DOJ lacked standing to litigate Title II claims for three reasons.  Id.  First,

unlike Titles I and III, Title II of ADA does not mention the Attorney General or

provide her with any statutory enforcement authority.  Id. at *2 (citing 42 U.S.C.

§§ 12117(a) (Title I) and 12188(b)(1)(B) (Title III)).  By contrast, Title II retains

standing for a "person" alleging discrimination.  42 U.S.C. § 12133.  This choice –

omitting the Attorney General – is presumed to be intentional: "Where Congress

has conferred standing on a particular actor in one section of a statutory scheme,

but not in another, its silence must be read to preclude standing."  Dudek, 2016

WL 5220059 at *3.  Similarly, DOJ is not presumed to have standing: "'when an

agency in its governmental capacity is meant to have standing, Congress says so.'" Id. at *1 (citing Director, Office of Workers' Comp. Programs. Dep't of Lab. v. Newport News Shipbuilding & Dry Doc Co., 514 U.S. 122, 129 (1995)).

Second, Congress's decision to limit Title II standing to "any person" necessarily excluded the federal government: "There is a 'longstanding interpretive presumption that 'person' does not include the sovereign'." Id. (citing Vt. Agency of Nat. Res. v. United States ex rel Stevens, 529 U.S. 765, 780 (2000)).  Congress is presumed to know this general rule, further supporting the conclusion that Congress intended to limit standing to private parties.  United States v. Feola, 420 U.S. 671, 710 (1975) (deciding Congress is presumed to know the law).

Third, Title II's narrow remedial scheme confirms that only private parties may seek enforcement of its anti-discrimination provisions.  Id. at 6.  As the Dudek Court reasoned, Title II's reach into public services applies to historically state-administered programs.  Thus, it imposes "significant federalism costs, subjecting state-run public services to federal judicial review."  Id.  Title II's grant of standing only to "persons" limits those federalism costs by restricting such judicial review to requests made by recipients of those public services, and not by the federal government.  Id.  Dudek's holding and reasoning apply here, where the Complaint asserts only a Title II claim.  For this reason, the Complaint should be dismissed.

Echoing the Dudek court's concerns, the State preserves its constitutional objection to Title II being applied in this lawsuit.  The Supreme Court has never held that Title II of ADA is constitutional when applied to something other than a fundamental right.  See Olmstead v. Zimring, 527 U.S. 581, 587 (1999) (presenting "no constitutional question"); Tennessee v. Lane, 541 U.S. 509, 519 (2004) (addressing ADA and fundamental right to court services).  And while the Eleventh Circuit has applied Title II in the higher education context, Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ., 405 F.3d 954, 957 (11th Cir. 2005), primary and secondary education is not a fundamental right.  See Plyler v. Doe, 457 U.S. 202, 223 (1982) (deciding education is not a fundamental right).

Should this Court disagree with the Dudek court's analysis, the State requests a stay of this litigation until the Eleventh Circuit has an opportunity to decide the appeal of the Dudek order.[2]  See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); Four Seasons Hotels & Resorts v. Consorcio Barr S.A., 377 F.3d 1164, 1172 n.7 (11th Cir. 2004).  In determining whether a stay should be granted in the

---

[2]  The DOJ has not yet appealed the Dudek order, citing to previous case consolidation which prevents the Order from becoming a final judgment.  See Fed. R. Civ. P. 54(b); Mot. To Vacate Or. on Mot. To Consolidate Cases, C.V. v. Dudek, No. 12-60460-CIV-ZLOCH, 2016 (S.D. Fla. filed Oct. 21, 2016) [Doc. 553].  The DOJ has moved to vacate the consolidation so that final judgment may be entered against it and the DOJ can appeal.

interests of justice, courts consider "(1) whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant; (2) whether a stay will simplify the issues in the case; and (3) whether discovery is complete and a trial date has been set." Tomco Equipment Co. v. Southeastern Agri-Systems, Inc., 542 F.Supp.2d 1303, 1307 (N.D. Ga. 2008) (citation omitted). There is no question that these factors are satisfied here, especially where concerns of judicial economy are heightened given that this entire lawsuit is funded by state and federal taxpayers. If the Dudek decision is upheld, any efforts dedicated to litigating the Complaint would be in vain, whereas if it is reversed, DOJ will have experienced no prejudice by staying the case. Either way, this lawsuit should not proceed now.

## B.    The Complaint Fails to State an ADA Claim.

Congress passed ADA to "address discrimination against persons with disabilities." Lane, 541 U.S. at 516. It was not enacted to allow DOJ to commandeer state coffers to provide an unquantifiable level of services or eradicate educational options for students who can avoid residential treatment but do not thrive in the general classroom environment. Thus, to plead a Title II claim, DOJ must allege that the State "administers" public services in a discriminatory or unequal manner. 28 C.F.R. § 35.130. The Complaint fails to state an ADA claim,

because (1) the State does not administer the GNETS program; and (2) the Complaint does not allege actionable discrimination.

### 1.    The State Does Not Administer The GNETS Program.

Before any consideration of discrimination, the Complaint should be dismissed for failing to sufficiently allege that the State "administers" the GNETS within the meaning of 28 C.F.R. § 35.130.  On this point, the Complaint alleges a conclusory legal statement – that the GNETS program is "financed, operated, and administered" by the State – but unsupported legal conclusions are not entitled to a presumption of accuracy.  (Compl. ¶ 1; see also Compl. ¶ 24.) See Mamani, 654 F.3d at 1153.   However, Georgia law, which can be considered on a motion to dismiss, demonstrates that State entities lack the authority to control, and therefore administer, GNETS services.  This reality bars relief under Title II.

The regulation at issue requires public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R. § 35.130(d) (emphasis added).  Neither the text of ADA nor its regulations define "administer," so the plain meaning applies.  Molloy v. Allied Van Lines, Inc., 267 F. Supp. 2d 1246, 1252 (M.D. Fla. 2003).  The Oxford Dictionary of English defines "administer" as to "manage and be responsible for the running of."  (OED p. 21, 3d Ed. 2010).

Black's Law Dictionary defines it, in the public law context, as "practical management and direction." (BLD "administration" p. 44 7th ed. 1999). Georgia's constitution, Code, and regulations make clear that the State's role with the GNETS program does not meet this threshold. See Mamani, 654 F.3d at 1153 (affording no deference to a complaint's legal conclusions).

The Constitution of the State of Georgia mandates that education services be "maintained and controlled" by the local education agencies, i.e., the school districts and their governing local boards of education. Ga. Const. Art. 8, § 5, ¶ 2. The Supreme Court of Georgia has recently said that this language grants "local boards of education the exclusive right to establish, maintain, and control K–12 public education." Gwinnett Cty. Sch. Dist. v. Cox, 289 Ga. 265, 266, 710 S.E.2d 773, 775 (2011). GNETS programs are operated by the local boards of education or under the fiscal control of Regional Education Service Agencies ("RESAs"), which are independent entities that enable local school districts to share resources. Id. By law, RESAs are not state entities. O.C.G.A. § 20-2-270(f).

Based on the State Constitution's emphasis on local control, the Official Code of Georgia does not empower the State to control or manage GNETS. Instead, O.C.G.A. § 20-2-152 grants the State Board of Education authority only to adopt "criteria used to determine eligibility of students for state funded special

education programs." O.C.G.A. § 20-2-152(a).   Local school districts, acting

through their IEP Teams, decide whether those admission criteria have been met.

State actors make no decision regarding the placement of an individual student.

The State Board also provides funding for the GNETS program if the

General Assembly has appropriated such funds.  O.C.G.A. § 20-2-152(c)(1).  The

funding comes in the form of grants and not generalized operational costs.

O.C.G.A. § 20-2-152(c)(1)(A).  The Georgia Department of Behavioral Health and

Developmental Disabilities ("DBHDD") is alleged only to provide services that are

needed by students enrolled in the GNETS program.  (Compl. ¶ 28.)  The

Department of Community Health ("DCH") is alleged to administer the Early and

Periodic Screening, Diagnostic and Treatment program through Medicaid.

(Compl. ¶ 27.)  Neither agency is alleged to administer the GNETS program, and

neither is alleged to administer services in a discriminatory manner.

Standing alone, funding a program does not constitute administering it for

purposes of the ADA.  Bacon v. City of Richmond, Va., 475 F.3d 633, 638 (4th

Cir. 2007).  In Bacon, the Fourth Circuit affirmed the dismissal of a Title II lawsuit

against a municipality over retrofitting the city's schools.  475 F.3d at 638.  The

court held that, because the city lacked "exclusive control" over the day-to-day

operation of its schools at issue, it could not be liable.  Bacon, 475 F.3d at 638.

The court decided that funding a program without controlling it does not "cause[] plaintiffs to be excluded nor discriminated against".  Id. at 639-40.

Like the municipality in Bacon, the State of Georgia cannot be held liable for decisions it does not make regarding (1) entry to the GNETS program; (2) exiting the GNETS program; (3) services available in the general education environment versus those in the GNETS program self-contained settings; or (4) maintenance of freestanding GNETS facilities.  Under Georgia's constitutional and statutory framework, those responsibilities and decisions lie elsewhere. Consequently, pursuant to the reasoning of Bacon, the State cannot be liable under Title II when it is not engaged in any controlling act.  The Complaint does not distinguish any of this law, nor does it allege that Georgia operates the GNETS program in violation of its own constitution and statutes.  This precludes relief on both ADA theories raised in the Complaint.

### 2.    **The Complaint Fails to Allege Cognizable Discrimination.**

Even if the Complaint had sufficiently alleged that the State administers the GNETS program, it still fails to allege a claim for discrimination based on unjustified isolation or failure to satisfy the integration mandate of 28 C.F.R. § 35.130(d).  The Supreme Court has said that there are four elements of such a discrimination claim under the ADA:  (1) the provision of services in isolated

settings; (2) when state treatment professionals have determined that community

placement is appropriate; (3) the individual does not oppose community

placement; and (4) the community placement can be "reasonably accommodated,

taking into account the resources available to the State and the needs of others with

mental disabilities." Olmstead, 527 U.S. 581, 607. Here, DOJ has failed to allege

the elements two and three.

> a.    The Complaint Fails To Allege Treatment Professionals Have
>        Determined Community Placement Is Appropriate For Students
>        Receiving Services In GNETS.

DOJ's main theory is that GNETS purportedly discriminates against

disabled students by "segregating" them from their non-disabled peers. See

generally Compl. The law does not, however, prohibit creating distinct programs

for disabled students. The regulation at issue requires integration only where it is

"appropriate" based on an individual's needs. 28 C.F.R. § 31.130(d). Likewise,

DOJ's guidelines discuss enabling interaction between the disabled and non-

disabled when "possible." 28 C.F.R. § 35.130 pt. 35, app. B at 690. The Supreme

Court recognized this in Olmstead. There, it held that (1) ADA prohibits only

"[u]njustified isolation" of persons with mental illness; and (2) isolation is

unjustified only when an individual is denied community placement but the state's

professionals have determined that the individual "can handle and benefit from [such] settings."  527 U.S. at 597, 600.

The Complaint does not allege that the State's treatment professionals have determined that the general education setting is appropriate for even one individual student who receives GNETS program services in a self-contained setting.  Nor can it.  As previously discussed, the law governing the GNETS program allows a student to receive GNETS services only after a team of professionals has decided, that community placement is inappropriate.  Specifically, the IEP Team must affirmatively refer a student to GNETS, and it may do so only after documentation of prior provision of services in a less restrictive setting, and data indicating that those less restrictive efforts did not benefit the student educationally.  Comp. R. & Regs. 160-4-7-.15(2)(a); see also Manual at 1, 9 (explaining that "[e]ntry into a GNETS program is an IEP team decision and is based on the student's needs as identified in the IEP.)"  Similarly, a student's exit criteria from the GNETS program are based on the IEP process.  See Ga. Comp. R. & Regs. 160-4-7-.15(2)(a); Manual at 11-12.  This is the exact opposite of Olmstead, where the State's treatment professionals recommended community placement of the two individual plaintiffs.  524 U.S. at 602.

The DOJ does not allege that students are entering the GNETS program in violation of Georgia regulations and the Manual.   Thus, ADA theory on which DOJ relies, i.e., Olmstead, actually bars the relief sought: it provides that, as here, when a community setting is not recommended, "it would be inappropriate to remove a [student] from the more restrictive setting.'" Olmstead, 527 U.S. at 602 (citing 28 C.F.R. § 35.130(d)). And, as discussed more fully below, ignoring an IEP Team's recommendation for a student to receive services in GNETS violates the IDEA.  Consequently, DOJ's claim that GNETS students are not in the most integrated setting should be dismissed for failing to allege the necessary element that the State's professionals have recommended another LRE or general education classroom placement for students in the GNETS program.

> b.    The Complaint Fails To Sufficiently Allege That Students Receiving GNETS Services Do Not Oppose Moving Into A General Education Setting.

Although Olmstead makes an individual's preference for a community setting an element of an ADA claim, the Complaint fails to allege a single fact in support of the conclusory assertion that the "majority of students in the GNETS program would not oppose" receiving services in a general education setting. (Compl. ¶ 46.)  Nor does the Complaint allege any fact to allow that bald assertion to be accepted, even on a motion to dismiss.   The Court, in deciding a motion to

dismiss, must distinguish between well-pled factual allegations and "conclusory allegations and unwarranted deductions of facts," which are entitled to no presumption of accuracy or truthfulness.  <u>Twombly</u>, 550 U.S. at 557.  DOJ tacitly relies "upon information and belief" as the basis of this allegation, which is insufficient without facts rendering the allegation plausible.  <u>Id.</u>; <u>see also</u> <u>McCullough v. Bd. of Regents of the Univ. Sys. of Ga.</u>, 623 F. App'x 980, 983 (11th Cir. 2015) (same regarding Title VI claim).  Consequently, the Complaint has failed to allege, as required by <u>Olmstead</u>, that "the affected persons do not oppose" receiving services in the general education environment, warranting dismissal.  527 U.S. at 607.

## C.    <u>IDEA Governs Least Restrictive Environment.</u>

DOJ's ADA claim also must be dismissed because it seeks relief (a change in LRE) available under IDEA.  The State wants to be crystal clear on this point: The GNETS program fulfills Georgia's obligations under the IDEA and ADA. DOJ's claim, plain and simple, is an LRE claim that seeks to overturn IEP Teams' decisions through the guise of the ADA.  The IDEA prohibits this result, and nothing in the ADA authorizes DOJ to pursue such a claim.

Under IDEA, a parent challenging LRE must complete the administrative hearing process before obtaining standing to appeal in the federal district court.

The IDEA administrative process must be completed not only before an IDEA claim can proceed to federal court, but also before an ADA claim alleging failure to place the student with non-disabled peers can be brought in federal court. The Eleventh Circuit has held that IDEA, and its administrative procedures, apply to any matter relating to the educational placement of a child. MTV v. DeKalb Co. Sch. Dist., 446 F.3d 1153 (11th Cir. 2006). The parents and the school (with the expertise of special education professionals), and not the federal government, are empowered under IDEA to make placement and LRE determinations. See Batchelor v. Rose Tree Media School Dist., 759 F.3d 266 (3d Cir. 2014); Baldessarre v. Monroe-Woodbury Cent. School Dist., 820 F.Supp.2d 490 (S.D. N.Y. 2011); Brown v. District 299--Chicago Public Schools, 762 F.Supp.2d 1076 (N.D. Ill. 2010); Greenwood v. Wissahickon School Dist., 571 F.Supp.2d 654 (E.D. Pa. 2008). See also Todd D. by Robert D. v. Andrews, 933 F.2d 1576, 1581 (11th Cir. 1991) (The courts "pay great deference to the educators who develop the IEP.").

DOJ will contend that it is not subject to the IDEA administrative exhaustion requirement, but, in reality, DOJ has no authority to enforce IDEA, 20 U.S.C. § 1416, and the only court that has addressed the issue has held that DOJ lacks standing to enforce Title II of the ADA. Dudek, 2016 WL 5220059 at *2. What

DOJ seeks here is to attack the IEP Teams' decisions, which the parents of the GNETS students have not sought to overturn. DOJ asks the Court to overlook the case law holding unequivocally that an ADA claim regarding inclusion with non-disabled peers can be brought under IDEA and, therefore, the efficient administrative process that Congress enacted to govern IDEA cases and which requires that the administrative process must be exhausted before entering federal court.

Perhaps most fundamentally, DOJ fails to allege that the State's treatment professionals have determined that general education is the appropriate setting for students currently served in GNETS self-contained settings. As discussed, this foreclosed DOJ's claim under the ADA as interpreted by Olmstead. 527 U.S. at 600-01. See also 28 C.F.R. § 35.130(d); 28 C.F.R. § 130 pt. 35, app. B at 690. And because the ADA authorizes States to rely on their own professionals' determination of when it is "appropriate" and "possible" for a student to be served in the general education setting, that IDEA-mandated determination may lawfully not lead to a recommendation for placement in a general education setting. Olmstead, 527 U.S. at 602. See also Greenwood, 571 F.Supp.2d at 654; Urban by Urban v. Jefferson Co. Sch. District R-1, 870 F.Supp. 1558 (D. Colo. 1994).

Thus, the IDEA statutory framework forecloses DOJ's claim, and the claim fails under the ADA because DOJ does not – and cannot – allege that the self-contained placements are "unjustified."   Olmstead, 527 U.S. at 596.  To show actionable "unjustified" isolation, the Complaint has to claim that the State's professionals decided that a student would benefit from a general education setting. Instead, and because a referral to the GNETS program requires an affirmative decision that the program is most appropriate for the individual student, the DOJ is attacking the IEP Team's decision under the guise of an ADA claim.  (Compl. ¶ 42.)

A particularly instructive decision is United States v. Arkansas, 794 F.Supp.2d 935 (E.D. Ark.2011).  In Arkansas, the federal government sued Arkansas, alleging that practices at a state residential facility for the developmentally disabled (including students) violated the rights of facility residents guaranteed by ADA and IDEA.  The center provided residential placement for special education students placed by IEP teams.  DOJ put on evidence of problems in the operation of the program and expert testimony stating that the students housed in the residential program would have more interaction with the general population if placed in community-based settings. DOJ alleged that Arkansas violated the 28 C.F.R. § 35.130(d)'s "integration mandate" by not

using a community-based settings. DOJ alleged an ADA violation and an IDEA (failure to provide LRE) violation.  Following a six-week bench trial, the Court found in favor of Arkansas and against DOJ on ADA claim.  Arkansas, by way of the residential program, fulfilled the LRE requirement.

Here, no IDEA claim is presented, and DOJ's ADA claim fails on multiple grounds, including those set forth in Arkansas.  Arkansas went to trial.  Its decision, however can inform this Court on the proper ruling on this motion to dismiss.

**D.    The Eleventh Circuit Does Not Allow Obey-The-Law Injunctions.**

DOJ also seeks an injunction that would require Georgia to "provide appropriate, integrated mental health and therapeutic educational services and supports" for students with behavior-related disabilities and to "cease discriminating against those in or at serious risk of entering the GNETS Program by failing to provide…services and supports in the most integrated setting."  This prayer for relief is nothing more than a request that this Court mandate that Georgia "obey the law."  Such remedy is not available in the Eleventh Circuit. Elend v. Basham, 471 F.3d 1199, 1209 (2006).

## <u>CONCLUSION</u>

For any of these reasons, the State of Georgia respectfully requests that this Court DISMISS the Complaint for failure to state a claim.  In the alternative, the State requests that this Court stay the proceedings until at least the Eleventh Circuit decides that DOJ has standing to bring the lawsuit.

Respectfully submitted this 1st day of November, 2016.

|  |  |
|---|---|
| Christopher M. Carr | */s/ Alexa R. Ross* |
| Attorney General | Alexa R. Ross |
| Georgia Bar No. 112505 | Georgia Bar No. 614986 |
|  | aross@robbinsfirm.com |
| Dennis R. Dunn | Josh Belinfante |
| Deputy Attorney General | Georgia Bar No. 047399 |
| Georgia Bar No. 234098 | jbelinfante@robbinsfirm.com |
|  | Special Assistant Attorney General |
| Russell D. Willard |  |
| Senior Assistant Attorney General | Robbins Ross Alloy Belinfante Littlefield LLC |
| Georgia Bar No. 760280 | 999 Peachtree Street, N.E., Suite 1120 |
|  | Atlanta, GA 30309 |
| Julia B. Anderson | Telephone: (678) 701-9381 |
| Senior Assistant Attorney General |  |
| Georgia Bar No. 017560 |  |
|  | *Attorneys for Defendant* |
| State Law Department |  |
| 40 Capitol Square, S.W. |  |
| Atlanta, Georgia 30334 |  |
| Telephone: (404) 656-3357 |  |
| Facsimile:  (404) 463-1062 |  |

# **L.R. 7.1(D) CERTIFICATION**

I certify that this brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this brief has been prepared using 14-pt Times New Roman Font.

*/s/ Alexa R. Ross*
Alexa R. Ross
Georgia Bar No. 614986

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the within and foregoing

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR**

**IN THE ALTERNATIVE, FOR STAY OF PROCEEDINGS** with the Clerk of

Court using the CM/ECF system, which automatically sent counsel of record

e-mail notification of such filing.

This 1st day of November, 2016.

/s/ Alexa R. Ross
Alexa R. Ross