# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# STATE OF GEORGIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) FILE NO:  1:16-CV-03088-ELR |
| STATE OF GEORGIA, | ) |
| | ) |
| Defendant. | ) |

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR STAY OF PROCEEDINGS

The State of Georgia ("State") files this Reply Brief in Support of Its Motion to Dismiss the Complaint, or in the alternative, for a Stay of Proceedings.  As shown below, the United States Department of Justice ("DOJ") (1) fails to offer compelling legal support to establish its standing to bring a Title II claim under the Americans with Disabilities Act ("ADA"); (2) did not allege critical elements for a discrimination claim under the ADA; (3) urges an unsupported and novel interpretation of the ADA that would result in violation of the Individuals With Disabilities Education Act ("IDEA"); and (4) seeks an injunction unauthorized under federal law.

## THE DEPARTMENT OF JUSTICE LACKS STANDING

The DOJ's standing argument makes a fatal error; it does not challenge, and therefore concedes that, as the sovereign, the United States is not a "person" for statutory construction purposes.  42 U.S.C. § 12133 (limiting standing to "persons alleging discrimination.") (DOJ Br. at 8.)   This flaw infects every defense the DOJ musters, and this Court should reject each of the DOJ's arguments as the Southern District of Florida did in C.V. v. Dudek, No. 12-60460-CIV-ZLOCH, 2016 WL 5220059 (S.D. Fla. Sept. 20, 2016).   At the very least, the Court should preserve public resources and allow the Eleventh Circuit to decide the issue before proceeding with analysis of the State's motion to dismiss.

First, as recognized by the Dudek court, the DOJ's reliance on Title VI and the Rehabilitation Act are unavailing.  2016 WL 5220059 at *4-7.  While Title II of the ADA adopts the remedial schemes of those other statutes, Title II's text is clear: only "persons" may avail themselves of the remedies in the Civil Rights Act and Rehabilitation Act: "The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."  42 U.S.C. § 12133 (emphasis added).  Put simply, basic grammar provides that only a "person" may seek and obtain any remedy afforded by Title II, and the DOJ does not contest that the United States is not a "person" under federal law.  Dudek, 2016 WL S220059 at *4-7; see also Flores-Figueroa v. United States, 556 U.S. 646, 650 (2009) (applying rules of grammar to interpret a statute).

In addition, as also discussed in the Dudek opinion, Title VI of the Civil Rights Act does not expressly authorize a statutory cause of action but "instead allow[s] enforcement of conditions attached to federal funding."  Id.  By contrast, Title II of the ADA however "is not tied to federal funding, [thus] any cause of action for breach of contract or covenant running with that funding was not carried over to Title II."  2016 WL 5220059 at *6.

2

The Dudek court also rejected the DOJ's next argument, namely that it may establish its own standing by promulgating rules to create standing (where the statute did not) and then rely on the Chevron deference.  See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984).  The "fatal defect in the [DOJ's] plea for Chevron deference is its failure to distinguish between two distinct concepts: the scope of an agency's authority and the scope of a court's jurisdiction."  2016 WL 5220059 at *9.  As held in Dudek, the judicial branch decides whether statutes afford standing in Article III courts, as "administrative agencies may not . . . confer standing on themselves … [standing] must come from the statute."  Id.  Finally, Dudek concluded that Chevron is inapplicable given the lack of ambiguity in Title II's remedial section.  Id.; see also 42 U.S.C. § 12133.

In sum, none of the cases relied on by the DOJ address the significance of the word "person" in Title II's remedial provision.  Consequently, DOJ's decision not to argue that the United States is a "person" precludes establishing standing.

## THE COMPLAINT FAILS TO STATE AN ADA CLAIM

Even if the United States had standing enabling the DOJ to bring an ADA lawsuit, the ADA claim before this Court would be subject to dismissal because the DOJ fails to plead requisite elements.  Specifically, the DOJ (1) relies on legal conclusions instead of factual allegations to claim that the State "administers" the

GNETS program; and (2) fails to plead two elements of an institutionalization-discrimination claim as set forth in Olmstead v. Zimring, 527 U.S. 581 (1999).

### 1. The State Does Not Administer The GNETS Program.

The DOJ agrees that a state entity may not be liable under Title II of the ADA unless it "administers" the program at issue, and the DOJ apparently agrees with the State that, for purposes of ADA regulations, "administer" means to exercise operational control. (DOJ Br. at 15.) 28 C.F.R. § 35.130(d). In its response to the State's arguments regarding the local school districts' administration of the GNETS program, the DOJ relies solely on the Complaint's legal conclusions instead of factual allegations. (DOJ Br. at 14-17.) Specifically, the DOJ's Brief cites to six paragraphs from the Complaint that make legal conclusions like the State "plans, funds, administers, licenses, manages, and oversees the GNETS Program." (Compl. ¶ 24.) These conclusory allegations simply incorporate the language of the DOJ's integration regulation, and they are entitled to no deference. Ashcroft v. Iqbal, 556 U.S. 662, 687 (2009).

The DOJ's legal conclusions are wrong. As shown, the State's power is expressly limited by its constitution, which provides that "Each school system shall be under the management and control of a board of education." Ga. Const. art. VIII, § 5, ¶ II. And, while the State is constitutionally required to guarantee an

"adequate public education," that does not mean that the state administers the means by which that education is provided. Ga. Const. art. VIII, § 1, ¶ I.

The case of <u>Gwinnett County School District v. Cox</u>, 710 S.E.2d 773, 776 (Ga. 2011) supports this conclusion. It explains that education has always been a local issue except in very few circumstances, like special education, where the General Assembly "<u>may</u> provide by law for the creation of special schools … and <u>may</u> provide for the participation of local board of education." The State legislature exercised that discretionary authority minimally. It established Regional Education Service Agencies ("RESAs"), which along with local education boards, administer the GNETS program. O.C.G.A. § 20-2-270(f). The General Assembly also limited the Georgia Department of Education's role to setting eligibility criteria (but not applying those standards) and providing grants. <u>See</u> O.C.G.A. § 20-2-152. Local governments and RESAs control the rest. This is hardly the type of "operational control" that the DOJ concedes is necessary. Nor are these questions of fact. They are provisions of State law that State agencies follow and have not been alleged to violate.

The State has committed significant resources to enhancing the GNETS Program. Appropriations, however, are not tantamount to operational control or

the "administration" of a program.  See 28 C.F.R. § 35.130(d); Bacon v. City of Richmond, 475 F.3d 633, 641 (2007).[1]

### 2. The Complaint Misapplies Olmstead.

The Complaint is not based on the text of the ADA; rather, it is based on a DOJ regulation that requires state services to be administered "in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 CFR § 35.130(d) (the "Integration Regulation").  See Olmstead, 527 U.S. at 592, 596-97.  In Olmstead, the Supreme Court considered the Integration Regulation, and it established the elements necessary to show a violation of the regulatory mandate.  581 U.S. at 596.

Deciding that only "unjustified placement" constitutes actionable discrimination under the ADA, the Court said plaintiffs must allege at least that "[1] the State's treatment professionals determine that such placement [in an integrated setting] is appropriate, [and (2) that] the affected persons do not oppose such treatment."  Id. at 606 (brackets added).  The Complaint alleges no fact about treatment professionals nor does it identify any individual students' preference.

---

[1] The DOJ has still not articulated any act on the part of the Georgia Departments of Behavioral Health and Developmental Disabilities or Community Health that would establish liability under a cognizable ADA theory.

6

On the first requirement – showing community placement has been deemed appropriate by treatment professionals – the DOJ refers to allegations that are void of any reference to a professional's judgment. See DOJ Br. at 17 (citing Compl. ¶¶ 37-43). Perhaps consequently, the DOJ argues it does not have to. Id. (citing Day v. Dist. of Columbia, 894 F. Supp. 2d 1, 23 (D.D.C. 2012)). But Olmstead is expressly contrary to the DOJ's cited authority, and the Day decision is easily distinguishable. Unlike the DOJ's allegations here, the Plaintiffs in Day actually alleged that "each named plaintiff 'has been determined by health care professionals to be appropriate for community placement.'" 894 F. Supp. 2d at 23. Unlike here, the debate there was over whether the professional had to be from the government. The DOJ has not made that minimal allegation in this lawsuit.

In addition, unlike Day, where plaintiffs were waiting on a professional determination to be placed outside a nursing facility, IEP Teams for students receiving services through the GNETS Program must decide (1) that the therapeutic services available through GNETS are necessary; and (2) that, due to the individual student's present emotional condition, a the self-contained environment is necessary to prevent the student from residential placement. Ga. Comp. R. & Regs. 160-4-7-.15(2)(a).

The DOJ does not challenge the appropriateness of this two-pronged test, nor does it claim that IEP Teams are not employing the requisite analysis. Instead, the DOJ challenges the very existence of the GNETS Program and asks this Court to issue an order overturning every IEP TEAM decision that was made to serve the needs of each individual student.

The problem this creates for the DOJ, however, is that challenges to an IEP Team's conclusion are brought pursuant to the IDEA, which is enforced by the United States Department of Education. 20 U.S.C. § 1416. But more fundamentally, the critical inquiry for ADA purposes is not whether a student is allegedly isolated or not (e.g., whether the GNETS Program is a per se violation of the ADA). The question is whether that purported isolation is unjustified. Olmstead, 527 U.S. at 600-603. And, that question necessarily turns on whether the "reasonable assessments of [the State's] own professionals [determined that] an individual 'meets the essential eligibility requirements' for habilitation in a community based program. Absent such qualification, it would be inappropriate to remove a patient from the more restrictive setting." Id. at 602 (citing 28 CFR § 35.130(d)) (emphasis added). Under this controlling law, the DOJ has not alleged an ADA claim, because it has not alleged that any professional decided any student is qualified to exit the GNETS program.

Finally, the DOJ has not alleged that the students receiving services through the GNETS Program categorically oppose it. Instead, the Complaint makes a conclusory statement that "the majority of students in the GNETS Program would not oppose receiving" general education services. (DOJ Br. at 18 (citing ¶¶ 46, 62).) Accepting that allegation as true does not entitle DOJ to the relief it seeks. <u>Olmstead</u> held that community placement may not be imposed on [students] who do not desire it." 527 U.S. at 602 (citing 28 CFR § 35.130(c)(1)). Thus, the sweeping relief DOJ seeks – shuttering the GNETS Program – cannot occur so long as there are at least some students who prefer the GNETS Program.

## THE ADA CANNOT BE USED TO OVERTURN IEP TEAM DECISIONS DULY MADE PURSUANT TO IDEA

The State's position (verbatim) is that "the GNETS program fulfills Georgia's obligations under IDEA and ADA. DOJ…seeks to overturn IEP Teams' decisions through the guise of the ADA." (Def.'s Br. at 20.) DOJ fails to respond to the State's position. Instead, DOJ contends (incorrectly) that the State argues that DOJ must exhaust IDEA administrative procedures and that IDEA supplants ADA. (DOJ Resp. at 19.) The State argues neither contention.

The IDEA is a comprehensive statute creating "what" and "where" affirmative obligations on the part of public school systems: Public school systems must provide each student with disabilities who requires special education and

9

related services in order to benefit from public education the services he or she individually needs in the setting that will allow the student to interact as much as possible with non-disabled peers. 20 U.S.C. § 1400 *et seq.* 20 U.S.C. §1401(18)(19); 20 U.S.C. §1415. IDEA includes a detailed framework of procedural safeguards to ensure that each student receives his or her statutorily guaranteed benefits. Id. All decisions regarding educational programming and setting are made on an individualized basis per student, in consultation with experts, the parent(s), and when appropriate, the student. Bd. of Educ. of the Hendrick Hudson Cent. Dist. v. Rowley, 458 U.S. 176 (1982). DOJ does not allege that the law is contrary to the foregoing.

 Nor does DOJ allege any fact contrary to the following: The IDEA, its regulations, and the State's regulations adopted to implement the IDEA apply to each student served through the GNETS Program. The Complaint does not allege that any GNETS Program student's IEP team individualized his or her IEP substantively and regarding setting. Nor does it contend that any such student's IEP team determined that the GNETS programming and a self-contained setting is appropriate for the student. See Ga. Comp. R. & Regs. 160-4-7-.15. The Complaint also does not question that each student's IEP team creates a new IEP at least annually (and more often if the student's needs change). Finally, the

10

Complaint identifies no student or parent who seeks this Court to order the student out of the GNETS Program.

While an IDEA violation can exist based on failure to affirmatively provide services, the ADA requires factual allegations that at least create an inference of professional bad faith or gross misjudgment.  See J.D.P. v. Cherokee Cty., Ga. Sch. Dist., 735 F. Supp.2d 1348  (N.D. Ga. 2010); D.A. ex rel. Latasha A. v. Houston Independent Sch. Dist., 629 F.3d 450  (5th Cir. 2010); Alston v. Dist. of Columbia, 770 F. Supp. 2d 289  (D.D.C. 2011); Millay v. Surry Sch. Dep't., 584 F. Supp. 2d 219, 239 Ed. Law Rep. 457 (D. Me. 2008); J.L. v. Francis Howell R-3 Sch. Dist., 693 F. Supp. 2d 1009, 257 Ed. Law Rep. 383 (E.D. Mo. 2010).  Here, the Complaint is void of any allegation of bad faith or gross misjudgment by the State.

DOJ also argues that each GNETS student's IEP violates ADA because, according to DOJ, "Georgia delivers … services to students with behavior-related disabilities in an overall manner that causes unnecessary segregation."  (DOJ Br. at 22 (emphasis added).)  DOJ thus asks the Court to cast aside each individual student's IEP team's expert and legally required recommendations, without consulting the IEP teams, let alone getting their statutorily required recommendations and approval.  The point DOJ fails to acknowledge is this sought-after relief, as a matter of law, results in violations of the IDEA.

11

DOJ bases its ADA claim against the State on a proposition with no legal basis.  DOJ contends that Olmstead and the Integration Regulation create a mandate that "extends to protect students…who are in, or at risk of placement in, GNETS."  (DOJ Br. at 21.)  Yet, DOJ cites no case where the ADA authorized overturning even one special education student's placement. See K.M. v. Tustin Unified Sch. Dist.,  725 F.3d 1088 (9th Cir 2013); Y.G. v. Riverside U.S.D., 774 F. Supp. 2d 1055 (C.D. Cal 2011); K.M. v. Hyde Park Cent Sch. Dist., 381 F. Supp. 2d 343, 360 (S.D.N.Y. 2005).

One case cited by DOJ in feigned support of its position deserves particular attention:  Steimel v. Wernert, 823 F.3d 902 (7th Cir. 2016). (DOJ Br. at 21.)  The Seventh Circuit did not decide, or even address, the issue of whether ADA can be used to overturn any student's IEP placement. The court in Steimel applied ADA, as interpreted by the Olmstead, in a case that involved a state's providing community integration benefits to some persons with disabilities but not to other similarly situated persons.  The Steimel reasoning was that "[w]hile a State is not obligated to create new services, it may violate Title II when it refuses to provide an existing benefit to a disabled person that would enable that individual to live in a more community-integrated setting." Id.  (citing Olmstead, 527 U.S. at 603 n.14 ("States must adhere to the ADA's nondiscrimination requirement with regard to

the services they in fact provide."). Clearly, Steimel does not touch upon any issue presented in this matter or any analogous issue.

## DOJ Seeks Impermissible Relief

DOJ attempts to save its "obey the law" injunction with a footnote. Under the Federal Rules of Civil Procedure and Eleventh Circuit precedent, an injunction must "describe in reasonable detail…the act or acts restrained or required," Fed. R. Civ. P. 65(d), and "be framed so that those enjoined know exactly what conduct the court has prohibited and what steps they must take to conform their conduct to the law." S.E.C. v. Smyth, 420 F.3d 1225, n.14 (11th Cir. 2005). For this reason, injunction orders may not just track the text of a statute or regulation. Yet, that is exactly what the DOJ seeks. (See Compl. at WHEREFORE Clause, C (asking to enjoin the State from "discriminating" and require the State to provide "equal educational opportunities".)

The DOJ's reliance on Florida PIRG v. E.P.A., 386 F.3d 1070 (11th Cir. 2004), for support is misplaced. First, Florida PIRG has been supplemented by Smyth as well as Elend v. Basham, 471 F.3d 1199, 1209-10 (11th Cir. 2006), (denying relief seeking to mandate that the Secret Service "ensure there's no violation of the First Amendment.") Second, the injunctive relief sought by Plaintiffs in Florida PIRG required the Environmental Protection Agency conduct

13

a specific review of Florida's proposed new standards under specific statutory criteria. The injunction sought here fails because it does not provide the State with any guidance as to the prohibited conduct and seeks only to enforce a regulation.

## These Proceedings Should Be Stayed

In its response, the DOJ attempts to cast the State's request for a stay pending the appeal in Dudek as one of "indefinite duration," relying on the Supreme Court's decision in Landis v. N. Am. Co., 299 U.S. 248 (1936) and the 11th Circuit's decision in Ortega Trujillo v. Conover & Co. Comm., Inc., 221 F.3d 1262 (11th Cir. 2000). The requested stay is not as extreme as the one in Landis, which sought a stay until a decision was rendered by the Supreme Court in proceedings that were in the district court. Landis, 299 U.S. at 251. Nor is the requested stay similar to the one in Ortega, which involved a stay pending review by a foreign (Bahamian) jurisdiction, not another federal district court.

The Supreme Court has noted there is no general guideline for a stay where there are two pending cases involving similar issues in federal district courts but "the general principle is to avoid duplicative litigation." Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 817 (1976). The Eleventh Circuit has noted that the reason for a stay like the one sought here "an excellent one: to await a federal appellate decision that is likely to have a substantial or controlling effect

14

on the claims and issues in the stayed case." Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Management Dist., 559 F.3d 1191, 1198 (11th Cir. 2009) (dismissing appeal of stay for lack of jurisdiction because the stay did not render plaintiff's case "effectively out of court").

This case meets that test. Both Dudek and this matter touch on the exact same issue – whether DOJ has standing to bring a claim under Title II of the ADA. And, a stay is particularly important here where the cost of litigation – both in terms of the State and Federal government's treasury and in time – is borne exclusively by taxpayers and Georgia students. See Miccosukee Tribe, 559 F.3d at 1195 (discussing order issuing stay lifted after one year or at the conclusion of appeal in related case, whichever came first).

## CONCLUSION

For any of these reasons, the State of Georgia respectfully requests that this Court DISMISS the Complaint for failure to state a claim. In the alternative, the State requests that this Court stay the proceedings until at least the Eleventh Circuit decides that DOJ has standing to bring the lawsuit.

Respectfully submitted this 23rd day of December, 2016.

| | |
|---|---|
| Christopher M. Carr<br>Attorney General<br>Georgia Bar No. 112505 | */s/ Alexa R. Ross*<br>Alexa R. Ross<br>Georgia Bar No. 614986<br>aross@robbinsfirm.com |
| Dennis R. Dunn<br>Deputy Attorney General<br>Georgia Bar No. 234098 | Josh Belinfante<br>Georgia Bar No. 047399<br>jbelinfante@robbinsfirm.com<br>Special Assistant Attorney General |
| Russell D. Willard<br>Senior Assistant Attorney General<br>Georgia Bar No. 760280 | Robbins Ross Alloy Belinfante Littlefield LLC<br>999 Peachtree Street, N.E., Suite 1120<br>Atlanta, GA 30309 |
| Julia B. Anderson<br>Senior Assistant Attorney General<br>Georgia Bar No. 017560 | Telephone: (678) 701-9381 |
| | *Attorneys for Defendant* |
| State Law Department<br>40 Capitol Square, S.W.<br>Atlanta, Georgia 30334<br>Telephone: (404) 656-3357<br>Facsimile: (404) 463-1062 | |

## **L.R. 7.1(D) CERTIFICATION**

I certify that this brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this brief has been prepared using 14-pt Times New Roman Font.

*/s/ Alexa R. Ross*
Alexa R. Ross
Georgia Bar No. 614986

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed the within and foregoing **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR STAY OF PROCEEDINGS** with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing.

This 23rd day of December, 2016.

                                                 */s/ Alexa R. Ross*
                                                 Alexa R. Ross