UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| v. ) | |
| ) | NO: 1:16-CV-03088-ELR |
| STATE OF GEORGIA, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

On May 4, 2017, this Court issued an order directing the State of Georgia ("Georgia") to file a brief on two issues: (1) whether Georgia is a proper party defendant; and (2) whether injunctive relief can be obtained against the State of Georgia in this case. (Dkt. 30 at 2.) As argued before this Court on May 10, 2017, the answer to both questions is "no." Georgia is not a proper party, because a state acts through its public officers and public agencies. Similarly, the injury alleged in the complaint – unjustified isolation – is not traceable to an act of "the State of Georgia." Beyond this, the relief the United States seeks is impermissible, because, among other things, it does not satisfy the redressability standard of constitutional standing. The United States bears the burden of proof on the questions of constitutional standing, and each of these reasons warrants granting

Georgia's Motion to Dismiss. (Dkt. 9.)  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

### 1. Georgia Is Not A Proper Party

The analysis on whether a state is a proper party to litigation typically arises in the context of the Eleventh Amendment to the United States Constitution. Though Georgia cannot assert the defense in this lawsuit, the analysis of those cases is instructive.  The central Eleventh Circuit decision on the issue is Luckey v. Harris, 860 F.2d 1012, 1016 (1988).  It involved a civil rights action brought by indigent persons charged with criminal offenses in Georgia courts. Id. at 1014. The court decided, in the context of suits brought by individuals, the proper party is the "official [who is] responsible for the challenged action." Id. at 1015.

District courts in this circuit have employed similar analysis.  See, e.g., Brenner v. Scott, 999 F. Supp. 2d. 1278, 1285 (N.D.Fla. 2014) (deciding Florida Surgeon General was proper party for challenging state law on same-sex marriage given the Surgeon General's role in deciding the marital status for death certificates); Fla. Hosp. Assoc. v. Viamonte, No. 4:08cv312 – RH/WCS, 2008 WL 5101755 (N.D.Fla. Nov. 26, 2008) (deciding that agency secretary is proper party given enforcement role);  Gay Lesbian Bixesual Alliance v. Evans, 843 F. Supp. 1424, 1426 (M.D.Ala. 1993) (deciding Alabama Attorney General was proper party given his obligation to enforce challenged state law).

These cases show that the proper party is the one that actually administers or enforces the challenged program. As set forth in Georgia's Brief in Support of the Motion to Dismiss (Dkt. 9-1 at 13-16), and its Reply Brief (Dkt. 17 at 4-6), as a matter of state constitutional and statutory law, Georgia does not administer, control, or enforce the GNETS program or make the decisions that lead to a student receiving of services in the GNETS program. The State Board of Education is authorized only to provide grants and funding. O.C.G.A. § 20-2-152(c)(1). The Department of Behavioral Health and Developmental Disabilities ("DBHDD") contracts with some providers to provide some services to some students enrolled in the GNETS program. And, the Department of Community Health ("DCH") simply funds and administers the Medicaid program, of which some students in the GNETS programs may be beneficiaries. Neither DCH nor DBHDD is alleged to be involved in the GNETS program or in the decisions to provide GNETS services to any student. Nor are they alleged to contract with Medicaid providers in a discriminatory fashion.

As argued before this Court, the question of whether Georgia itself is a proper party raises an additional jurisdictional bar to the United States's complaint, namely constitutional standing. As this Court is well aware, a plaintiff seeking to invoke federal jurisdiction bears the burden of showing that they have: (1) an injury; (2) that is traceable to the defendant's conduct; and (3) can be redressed by

a court order.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992). Because the United States named the "State of Georgia" as a party, it has failed to satisfy the traceability requirement of constitutional standing.

The traceability standard considers whether there is a "causal connection between the injury and the challenged action of the defendant which is not too attenuated." Ga. State Conf. of NAACP Branches v. Cox, 183 F.3d 1259, 1262 (11th Cir. 1999).  Here, the crux of the United States's complaint challenges the acts of third parties, namely the Individualized Education Program ("IEP") Teams' decisions that GNETS services are appropriate, and the decisions of Local Education Agencies ("LEAs") and Regional Education Service Agencies ("RESAs"), which are not state actors.  See O.C.G.A. § 20-7-270(f).  Such claims are not new to federal courts, but they rarely can demonstrate standing:

> When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed.  In that circumstance, causation and redressibility ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction – and perhaps on the response of others as well.  The existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict.

Lujan, 504 U.S. at 562.

Another Supreme Court decision is on point. Allen v. Wright, 468 U.S. 737, 759-60 (1984) (abrogation on other grounds recognized in Lexmark Intern., Inc. v. Static Control Components, Inc., 134 S.Ct. 1377 (2014)). In Allen, the plaintiffs sought to have the Court declare unlawful the IRS regulations that, they alleged, allowed some private schools to maintain racially-discriminatory practices and tax-exempt status. Id. at 746-47. The Supreme Court concluded, however, that the plaintiffs lacked standing: the IRS was not the party that directly caused or controlled the harm alleged:

> it is entirely speculative, as respondents themselves conceded … whether withdrawal of a tax exemption from a particular school would lead the school to change its policies … [or] whether any given parent of a child attending such a private school would decide to transfer the child to public school as a result of any changes.

Id. at 757. The same analysis applies to this case where it is uncertain what changes, if any, would befall students receiving GNETS services if the "State of Georgia" may no longer fund the program as it does currently.

Allen also held that suits "challenging, not specifically identifiable [g]overnment violations of the law, but the particular programs agencies establish to carry out their legal obligations … even when premised on allegations of several instances of violations of law, are rarely if ever appropriate for federal-court adjudication." 468 U.S. at 761 (emphasis added). Here again, Allen's analysis applies to this dispute. The United States does not effectively challenge the

-5-

propriety of the GNETS program itself, and the injury is based on third parties' decisions.

The Eleventh Circuit addressed a similar claim in Cox and Doe v. Pryor, 344 F.3d 1282, 1286-87 (11th Cir. 2003). In Cox, plaintiffs challenged Georgia's campaign finance laws and alleged that the regulations excluded "nonwealth citizens from meaningful participation in the electoral process" by allowing wealthy candidates to contribute unlimited amounts of funds to their own campaigns. 183 F.3d at 1261. The court held that the plaintiffs lacked standing, in part, because their allegations of being unable to "meaningfully to participate in and influence elections [were] attributable to the conduct and resources of private individuals, not the state." Id. at 1264.

In Pryor, the plaintiffs sued the Attorney General of Alabama on the grounds that state law empowered him to enforce Alabama's sodomy law, which was rendered unconstitutional by the United States Supreme Court's decision in Lawrence v. Texas, 539 U.S. 558 (2003). 344 F.3d at 1283. The Eleventh Circuit concluded that the plaintiffs lacked standing for several reasons: (1) the Attorney General took no action to enforce the sodomy law against the plaintiffs; (2) he had not threatened to enforce the statute; and (3) the Attorney General conceded that in the wake of Lawrence, the state sodomy law was unconstitutional as it could be

applied to the plaintiffs.  Id. at 1285.  Put simply there was no "challenged action" of the Attorney General, and he was not a proper party to the lawsuit.  Id.

These opinions show that the traceability standard is not satisfied in this case.  Other than conclusory legal allegations, the Complaint does not allege any specific action by the "State of Georgia."  Thus, the injuries alleged are either caused by third parties, as in Lujan and Cox, or Georgia has no role in causing the harm, like in Pryor.  Either way, the Complaint should be dismissed for failing to name the proper party or alleging sufficient facts to show the traceability or causation standard of constitutional standing.

### 2. **Relief Is Not Available Against the State of Georgia.**

This Court also ordered Georgia to address whether the injunctive relief sought could be obtained against the "State of Georgia."  As with the issue of proper parties, and for similar reasons, the answer remains "no."  This is for two reasons, both of which were argued before this Court on May 10, 2017: (1) the United States lacks constitutional standing to obtain relief against the "State of Georgia," because third parties, who are not before this Court, are those that make the decisions causing the alleged injury or violations of the Americans with Disabilities Act; and (2) the United States seeks an "obey the law" injunction.  Georgia will address only the first in this Supplemental Brief, as the "obey the law" injunction was raised in the original briefing.

The question of whether relief against a named party will address the alleged injury speaks directly to the third prong of constitutional standing: redressibility. See Lujan, 504 U.S. at 561. To satisfy this third element, the United States must have pled sufficient facts to show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. (citing Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)). It has not.

The United States concedes that it is not attacking the GNETS statute as unconstitutional. See O.C.G.A. § 20-2-152(c)(1). Nor does it appear to be challenging the existence of the GNETS program itself. Rather, it seeks to challenge the "State of Georgia's" alleged administration of the GNETS program.[1] The Supreme Court has considered and rejected similar lawsuits. See Allen, 468 U.S. at 760 (deciding that suits against a government program are "rarely if ever appropriate for federal court adjudication").

The Court in Lujan offered similar reasoning to Allen. There, when plaintiffs challenged the acts of the Interior Secretary for not sufficiently curtailing decisions of other agencies, the Court denied standing. It held that the "resolution by the District Court would not have remedied respondents' alleged injury anyway,

---

[1] Georgia has also moved to dismiss the Complaint on the grounds that it does not "administer" the GNETS program as contemplated by 28 C.F.R. § 35.130(d). This brief does not directly address that argument.

because it would not have been binding upon the [other] agencies.  They were not parties to the suit, and there is no reason they should be obliged to honor [it]." 504 U.S. at 569.

The Eleventh Circuit recently reached a similar decision in the unpublished opinion of <u>Daogaru v. United States Attorney General</u>, 2017 WL 1160882 (11th Cir., Mar. 29, 2017).  There, a Georgia resident recently moved from the state of Michigan.  <u>Id.</u> at *1.  He sought a firearms license and sued the United States Attorney seeking a declaration that a federal firearms statute, 18 U.S.C. § 922(g)(1) was unconstitutional.  <u>Id.</u>  The court concluded he lacked standing, because he could not show redressibility: "Daogaru would still face prosecution in Georgia for possessing a firearm even if the district court issued an order that enjoined federal officials from prosecuting him."  <u>Id.</u> at *2.

A similar analysis applies here.  The United States does not seek an injunction prohibiting Georgia from funding GNETS services, nor does it seek (nor can it seek) any relief challenging the IEP Team plans to recommend GNETS services.  Thus, even if the "State of Georgia" were to cease its alleged discrimination "by failing to provide mental health and therapeutic services and supports in the most integrated setting," students may still be placed in segregated facilities based on choices that Georgia can neither control and this Court's order, at least from this lawsuit, cannot reach.  Put simply, standing is lacking.

## **CONCLUSION**

For these reasons and for those set forth in Defendant's Motion to Dismiss and Reply Brief, the State of Georgia respectfully requests that this Court GRANT its Motion to Dismiss.

In the alternative, the State requests that this Court stay the proceedings until at least the Eleventh Circuit decides that DOJ has standing to bring the lawsuit.

Respectfully submitted this 15th day of May, 2017.

| | |
|---|---|
| Christopher M. Carr<br>Attorney General<br>Georgia Bar No. 112505 | /s/ Alexa R. Ross<br>Alexa R. Ross<br>Georgia Bar No. 614986<br>aross@robbinsfirm.com |
| Dennis R. Dunn<br>Deputy Attorney General<br>Georgia Bar No. 234098 | Josh Belinfante<br>Georgia Bar No. 047399<br>jbelinfante@robbinsfirm.com<br>Kimberly Anderson |
| Russell D. Willard<br>Senior Assistant Attorney General<br>Georgia Bar No. 760280 | Georgia Bar No. 602807<br>kanderson@robbinsfirm.com<br>Special Assistant Attorney General |
| Julia B. Anderson<br>Senior Assistant Attorney General<br>Georgia Bar No. 017560 | Robbins Ross Alloy Belinfante Littlefield LLC<br>999 Peachtree Street, N.E., Suite 1120<br>Atlanta, GA 30309<br>Telephone: (678) 701-9381 |
| State Law Department<br>40 Capitol Square, S.W.<br>Atlanta, Georgia 30334<br>Telephone: (404) 656-3357 | *Attorneys for Defendant* |

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Response has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Response has been prepared using 14-pt Times New Roman Font.

*/s/ Alexa R. Ross*
Alexa R. Ross
Georgia Bar No. 614986

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing **DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing.

This 15th day of May, 2017.

                                                */s/ Alexa R. Ross*
                                                Alexa R. Ross