# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| v. ) | |
| ) | NO: 1:16-CV-03088-ELR |
| STATE OF GEORGIA, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

The State of Georgia submits this Supplemental Reply Brief pursuant to this Court's May 4 Order. (Dkt. 30 at 2.) The United States continues to conflate conclusory (and incorrect) legal allegations with facts. Its ADA[1] Title II claim is rooted not in the statute but in its own broad interpretation of the Supreme Court's decision in Olmstead v. Zimring, 527 U.S. 581 (1999). Olmstead did not involve students receiving special education and related services under IDEA. It did not involve IEP teams' IDEA-required determinations that a self-contained setting is, at the present time, the least restrictive environment in which individual students can benefit from the IDEA services they receive. Even if this Court were to accept the novel premise that an Olmstead claim can apply here, the United States'

---

[1] Georgia adopts the same abbreviations as in the original Brief in Support of its Motion to Dismiss. (Dkt. 9.)

complaint must be dismissed because <u>the United States has not, and cannot, plead the elements of an "Olmstead" Title II violation</u>.  The missing element/allegation requisite to an <u>Olmstead</u> claim is that the alleged segregation of students with severe emotional-behavioral disorder is "unjustified." Under <u>Olmstead</u>, "unjustified" segregation by definition is segregation imposed despite a state professional's decision that community-based services are appropriate.  527 U.S. at 600-603, 607. The Department of Justice admits that it fails to allege this. (<u>See</u> Pl.'s Br. at 9 (Dkt. 37).)  Similarly, the Complaint alleges that the "State of Georgia" controls the GNETS program, but it fails to cite controlling authority empowering the State to make the types of decisions about which the United States complains.

    Instead, the Department of Justice seeks a backdoor means to enforce Title II in a manner that will cause the SEA (State Education Agency) and the LEAs (Local Education Agency) to violate IDEA. IDEA enforcement, moreover, lies exclusively in the forms of individual causes of action and with the United States Department of Education.  <u>See</u> 20 U.S.C. § 1416.  Indeed, the Department of Justice made its strategy known when it filed the lawsuit at issue here; its press release acknowledged that "The Lawsuit is the First Challenge to a State-Run School System for Segregating Students with Disabilities." Justice Department

Sues Georgia for Unnecessarily Segregating Students with Disabilities (Aug. 23, 2016), https://www.justice.gov/opa/pr/justice-department-sues-georgia-unnecessarily-segregating-students-disabilities.)  But, in reality, the Department of Justice strains to enforce ADA Title II as a trump card that "beats" IDEA, without providing any legal authority in support. Thus, the lawsuit must be dismissed.

1. **Georgia Is Not A Proper Party.**

A fundamental flaw with the United States' theory is the false, unsupported premise that the State of Georgia administers the GNETS program.  The Department of Justice relies on conclusory legal allegations—not on actual law.  For example, its Brief cites seven paragraphs from its own Complaint to show that the State of Georgia controls the GNETS Program.  (See Pl. Br. at 2-6 (citing Compl. ¶¶ 1, 8, 33, 24-25, 60, 50) (Dkt. 37).)  None of the cited paragraphs cite to any Georgia law that authorizes any state (as opposed to local) actor to make the decisions about which the Department of Justice complains.

The law that the United States does cite only proves the larger point: its lawsuit is not based on the ADA, but rather on IDEA.  Specifically, the United States cites to only a Georgia Department of Education regulation (Ga. Comp. R. & Regs. § 160-1-4-.49) which addresses IDEA funds provided to the SEA and, in turn, to LEAs.  "Under provisions of the Individuals with Disabilities Education

Act, the State of Georgia receives grant funds from the Office of Special Education Programs, U.S. Department of Education." Ga. Comp. R. & Regs. 160-1-4-.49(1) (emphasis added). The Department of Justice has no jurisdiction to address IDEA funding.

Nor does the GNETS Operations Manual cited in the Complaint support the United States' argument. It provides that "[u]ltimately, the school district is responsible for the provision of related services." (Operations Manual at 11 (Dkt. 9-2).) Finally, the citation to the Georgia Constitution is similarly unavailing. (See Pl. Br. at 10 (citing Ga. Const. art. VIII, § 1, ¶ 1) (Dkt. 37).) The "adequacy" provision of the State Constitution—"The provision of an adequate public education for the citizens shall be a primary obligation of the State of Georgia"—has been interpreted by Georgia's highest court as imposing no affirmative obligations or particular spending methods at all. See, e.g., McDaniel v. Thomas, 285 S.E.2d 156 (Ga. 1981) (focusing on challenge to financing); Smith v. Tolbert, 127 S.E. 868, 869 (Ga. 1925) (deciding that constitutional provision is satisfied when the General Assembly provides for a thorough system of schools).

More telling than what the United States cites is what it cannot distinguish or minimize: O.C.G.A. § 20-2-152(c)(1) limits the SEA's authority related to GNETS to providing grants and funding, and its operational authority extends solely to the

"Georgia School for the Deaf, the Georgia Academy for the Blind, the Atlanta Area School for the Deaf, and other special schools as approved by the General Assembly." O.C.G.A. § 20-2-152(c)(1)(E). Because the United States has not alleged that the State of Georgia operates the GNETS program in contradiction to state law, it cannot make the State of Georgia a proper party for purposes of litigation based on nothing but conclusory legal allegations that wrongly claim the State operates the GNETS program or makes decisions about who enters the program. This statutory limitation distinguishes this case from the cited authority of United States v. Harris County, where Texas law made the responsibility of voting poll access a county responsibility. Civ. No. 4:16-CV-2331, slip op. at 4-5 (S.D. Tex. Apr. 26, 2017) ((citing Lightbourn v. Cty. of El Paso, 118 F.3d 421, 431 (5th Cir 1997) (citing Section 43.034 of the Texas Election Code)).

For all of these reasons, the injury the United States alleges—unnecessary isolation of students in the GNETS program—even if it were true, could not be caused by a decision of the State of Georgia. Rather, the Complaint focuses on a "particular program" that can "rarely if ever [be] appropriate for federal court adjudication." Allen v. Wright, 468 U.S. 737, 759-60 (1984). And, because the United States' claim is predicated upon LEAs and RESAs making decisions regarding how and where to provide educational services to some children, the

injury alleged is not fairly traceable to any state actors. This is particularly true where, as is the case here, state law does not empower the state actors to make any determinative decision.

## 2. Relief Is Not Available Against the State of Georgia.

Similarly, in an effort to show that the relief it seeks would address the alleged harm—unnecessary isolation of students—the United States is compelled to, again, rely on its conclusory allegations. The United States' brief cites to Paragraphs 23-28 and Paragraphs 57-58 of the Complaint. Those allegations allege that the Georgia Department of Education establishes exit criteria for the GNETS program, and that some students in the GNETS program are eligible for Medicaid services paid for by the Department of Community Health and contracted for by the Department of Behavioral Health and Developmental Disabilities. (Compl. ¶¶ 23-28, 57-58.) The Complaint does not allege, nor can it, that the exit criteria established by the State can override the decisions of the IEP teams that, pursuant to IDEA, will decide the most integrated setting appropriate for the needs of the particular student. Put simply, regardless of the process by which the SEA passes IDEA funds and state funds to the LEAs, the LEAs' IEP teams, which include education and disability specialists, determine the environment in which each student can benefit from the services provided to him

or her. See 20 U.S.C. §1414. Paragraph 44 of the Complaint, cited on page 11 of the United States' brief, is even more telling. It purportedly establishes (for purposes of a motion to dismiss) that the "vast majority of students in the GNETS Program could participate in general education schools . . . . The State unnecessarily segregates students in GNETS . . . ." (Compl. ¶ 44 (emphasis added) (Dkt. 1).) But, nowhere does the Complaint allege that the IEP teams decided that community-based services are appropriate, but recommended GNETS self-contained settings nonetheless. This omission precludes relief for two reasons.

First, as addressed in the State of Georgia's prior briefing, under the ADA, unnecessary segregation occurs only when the State's treatment professionals have concluded that community-based services are appropriate for an individual. Olmstead, 527 U.S. at 600-603, 607. Second, it reinforces that the decisions at issue—those that lead to "unnecessar[y]" segregation—are not being made by State actors and will not be affected by a remedy against the "State of Georgia." The Supreme Court has decided that similar allegations based on the acts of third parties, precludes redressability when, as here, the "existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.'"

Lujan v. Defs. of Wildlife, 504 U.S. 555, 562 (1992) (quoting ASARCO Inc. v. Kadish, 490 U.S. 605, 615 (1989) (Kennedy, J., writing for the plurality)).

Thus, the United States' claim that it does not "seek relief in the form of changes to the IEP process or mandate placements for individual students in more integrated settings" is precisely what demonstrates the lack of redressability. Whatever occurs with how GNETS supplemental grants are funded (and, as shown, the GNETS operation manual makes clear that the obligation to provide services lies squarely with the LEAs and RESAs), third parties will always be in control of which students receive education services in what environment. The IDEA provides the statutory basis to challenge those decisions, and the Department of Justice cannot bring a claim pursuant to that statute.

Respectfully submitted, this 24th day of May, 2017.

| | |
|---|---|
| | /s/ Alexa R. Ross |
| Christopher M. Carr | Alexa R. Ross |
| Attorney General | Georgia Bar No. 614986 |
| Georgia Bar No. 112505 | aross@robbinsfirm.com |
| | Josh Belinfante |
| Dennis R. Dunn | Georgia Bar No. 047399 |
| Deputy Attorney General | jbelinfante@robbinsfirm.com |
| Georgia Bar No. 234098 | Kimberly Anderson |
| | Georgia Bar No. 602807 |
| Russell D. Willard | kanderson@robbinsfirm.com |
| Senior Assistant Attorney General | Special Assistant Attorney General |
| Georgia Bar No. 760280 | |
| | Robbins Ross Alloy Belinfante Littlefield LLC |
| Julia B. Anderson | 999 Peachtree Street, N.E., Suite 1120 |

-9-

Senior Assistant Attorney General  
Georgia Bar No. 017560

State Law Department  
40 Capitol Square, S.W.  
Atlanta, Georgia 30334  
Telephone: (404) 656-3357

Atlanta, GA 30309  
Telephone: (678) 701-9381

*Attorneys for Defendant*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Response has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Response has been prepared using 14-pt Times New Roman Font.

*/s/ Alexa R. Ross*
Alexa R. Ross
Georgia Bar No. 614986

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing **DEFENDANT'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing.

This 24th day of May, 2017.

                                                 */s/ Alexa R. Ross*
                                                Alexa R. Ross