**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NO:  1:16-CV-03088-ELR |
| STATE OF GEORGIA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR STAY OF PROCEEDINGS

The State of Georgia ("State") files this Memorandum of Law In Support of Its Renewed Motion to Dismiss the Complaint, or in the alternative, for Stay of Proceedings.  The Complaint [Doc No. 1] consists of a single count, alleging violation of Title II of the Americans with Disabilities Act ("ADA").  The claim fails for four reasons:

1.    The Complaint fails to allege actionable discrimination.

2.    ADA cannot be used in a manner that violates the Individuals with Disabilities Education Act ("IDEA").  IDEA guarantees each student with disabilities who requires special education and related services an *individualized* educational program provided in the setting that the

*individual student* needs to benefit from the services.   Plaintiff asks the Court to eschew IDEA and require that every student at issue be placed in the general education setting.

3.    "Obey-the-law" injunctions are prohibited in the Eleventh Circuit.

4.    The Eleventh Circuit has not resolved the issue of whether DOJ lacks standing to raise claims that arise from Title II of the ADA.  This Court should stay this lawsuit again pending a final determination from the entire Eleventh Circuit Court of Appeals, for the same reasons it originally stayed this lawsuit.

## **INTRODUCTION**

This is no ordinary lawsuit, and it seeks relief that no court ever has issued. DOJ asks the Court, under Title II of the ADA, to commandeer control of numerous state agencies (none of whom are parties to this suit), State appropriators, and over one hundred local and independent school districts by controlling the process whereby students suffering with severe emotional trauma and analogous disabilities receive education.  Worse yet, the DOJ seeks this remedy despite that no special education professional has recommended the type of relief sought by the DOJ.   While a divided panel of the Eleventh Circuit concluded that the DOJ has standing to bring Title II claims, the State of Florida is currently

seeking a rehearing en banc of that decision.  United States v. Florida, No. 17-13595 (11th Cir. Oct. 29, 2019).

DOJ seeks this relief based not on a well-settled principle of law, but rather on what it contends is a correct application of ADA under Olmstead v. L.C., 527 U.S. 581 (1999). DOJ's theory is wrong. Generally, DOJ seeks to substitute itself for the teams of educators and other professionals who, under IDEA, create individualized education programs ("IEP") for students with disabilities. Nothing in the Olmstead decision supports this, nor does any reasonable reading of ADA. Indeed, the Complaint fails to allege each of the recognized ADA elements.

DOJ's sweeping theory is particularly inappropriate to address the "myriad of 'intractable economic, social, and even philosophical problems'" that are inherent in education policy and raised by the Complaint. San Antonio Independent Sch. Dist. v. Rodriguez, 411 U.S. 1, 42 (1973) (citation omitted). Recognizing that education is very much a state-driven policy that is ill suited for the blunt remedy of a judicial order, the Supreme Court of the United States has declined similar invitations of federal involvement, deciding that the judiciary's "lack of specialized knowledge and experience … counsels against premature interference with informed judgments made at the state and local levels." Id.; see also Miller v. Bd. of Educ. of Albuquerque Pub. Schs., 565 F.3d 1232, 1243 n.6

(10th Cir. 2009) ("[We] decline to involve ourselves in the structuring of school systems.").

While the procedural posture of this case requires the Court to accept as true well-pled factual allegations, it may disregard conclusory assertions unsupported by alleged facts. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). It is, therefore, imperative that the State offer the following to give context to the ADA claim brought against it: The State emphasizes that the welfare of its students, particularly students with special needs, is its highest priority. The factual allegations are woefully dated and do not describe the current state of the Georgia Network for Educational and Therapeutic Support ("GNETS") program or current State policy.

## BACKGROUND

### The IDEA, IEPs, and the IEP Team

The GNETS program is a means by which the State complies with IDEA and exceeds its obligations under IDEA by providing an additional educational setting less restrictive than residential placement.

Three federal statutes are pertinent to students with disabilities: IDEA, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and ADA. Both ADA and Section 504 prohibit disability discrimination by state and local

governments (Section 504 applies only to entities that receive federal funding, while ADA applies also to entities that do not receive federal funding).

IDEA is a far more specific statute than ADA. IDEA applies only to a subset of students with disabilities who are protected under ADA, *i.e.*, students with disabilities who require special education and related services in order to benefit from their education requires each Local Education Agency ("LEA") to affirmatively entitle these students to an IEP. 20 U.S.C. §1412(a). The IEP is created by an IEP Team, which is comprised of a parent(s); at least one regular education teacher, at least one special education teacher; a school district representative qualified to provide specially designed instruction to meet the unique needs of the student; a person knowledgeable about the general education curriculum and available resources; a psychologist or other professional who can interpret psychoeducational evaluation result; and, where appropriate, the student. Id.; Ga. Comp. R. & Regs. 160-4-7.06(5); 34 C.F.R. §300.23.  No State official is a member of the IEP team.  Id.

The IEP team first determines the educational components and related services necessary for a free and appropriate education ("FAPE") tailored specifically to the student's individual needs. 20 U.S.C. § 1412(a)(1). Second, the IEP team determines the setting in which those services can be provided to the

student that will afford him or her the greatest opportunity to interact with non-disabled peers, known as the least restrictive environment ("LRE"). 20 U.S.C. §§ 1412(a)(3)-(7). See K.I. v. Montgomery Public Schools, 805 F. Supp. 2d 1283 (M.D. Ala. 2011) (LRE alone does not satisfy IDEA; the setting must accommodate the education and related services necessary for FAPE.). See also Pace v. Bogalusa City Sch. Bd., 403 F. 3d 272, 290-91 (5th Cir. 2005) (en banc); 20 U.S.C. §§ 1400(d)(1)(a), 1212(5).

When conducting the LRE analysis, the IEP team considers settings other than general education only where the nature or severity of the disability is such that education in general education classes, with the use of supplementary aids and services, cannot be satisfactorily achieved. Id. In such situations, special classes for part of the school day, off-site services for part of the school day or after school, and other settings for delivering the IEP are considered. Id. The most restrictive option is residential placement, which removes the student from his or her home and community. Id. Challenges to the IEP Team's decision may be brought under the IDEA, and the IDEA is also enforced by the United States Department of Education, not DOJ. 20 U.S.C. § 1416.

<u>The GNETS Program</u>

The GNETS program is designed to prevent the alternative of residential placement. <u>Id</u>. <u>See also</u> GNETS Operations Manual (January 2014) (the "Manual") at 1 (describing GNETS as providing "comprehensive educational and therapeutic support services to students who might otherwise require residential or other more restrictive placements").[1] Only an IEP team can refer a student to receive education services through the GNETS program, and the  IEP Team may do so only after affirmatively deciding that (1) GNETS services are more likely than any other service(s) to benefit the student educationally and therapeutically (i.e., it is the LRE); and (2) data shows that less restrictive services "have not enabled the child to benefit educationally." Ga. Comp. R. & Regs. 160-4-7-.15(1) and (2). (<u>See also</u> Compl. ¶¶ 26, 29-36.) Students may receive GNETS services in the general education classroom, for part of the day, or where recommended by the IEP team, for the full school day. <u>See generally</u>, Manual. Some GNETS services are provided in a traditional school setting; others are provided in separate, distinct facilities. (Compl. ¶¶ 31, 34-36.)

---

[1] Paragraph 25 of the Complaint refers to the Manual and identifies where it can be found online. Thus, this Court may consider the Manual for motion to dismiss purposes. <u>Hoefling v. City of Miami</u>, 811 F. 3d 1271, 1277 (11th Cir. 2016.) A true and accurate copy of the Manual is attached as "Exhibit 1."

The Complaint

The Complaint raises one count: Alleged violation of Title II of the ADA. (Compl. ¶¶ 66-72.) It claims that the State violates the ADA by not serving "students in the GNETS Program in the most integrated setting appropriate to their needs and puts other students with disabilities at risk of unnecessary segregation." (Id. ¶ 68.) It also claims that the State provides "unequal educational opportunities to the GNETS Population." (Id. at ¶ 69.) For the alleged violations, the DOJ seeks a declaratory judgment and a sweeping affirmative injunction that orders the State to provide sufficient "mental health and therapeutic educational services and supports … in integrated general classroom settings" and equal education opportunities. (Id. ¶¶ B and C.) The DOJ also seeks an "obey the law" injunction that orders the state to stop violating ADA. (Id. ¶ D.)

Procedural History

On August 23, 2016, the DOJ filed this lawsuit [Doc. No. 1].  The State moved to dismiss the lawsuit on November 1, 2016 [Doc. No. 9].  The State's motion to dismiss included an alternative to stay the lawsuit pending a decision in the Eleventh Circuit Court of Appeals related to whether the DOJ has standing to sue under Title II of the ADA.  This Court stayed this lawsuit pending the Eleventh Circuit's decision [Doc. No. 40].  A divided panel of the Eleventh Circuit

(a visiting judge from the Sixth Circuit writing the majority opinion) ruled on the pending case on September 17, 2019 finding that the DOJ does have standing to bring a Title II ADA lawsuit. United States v. Florida, No. 17-13595, 2019 WL 4439465 (11th Cir. Sept. 17, 2019). Judge Lisa Branch of the Eleventh Circuit dissented and wrote that the DOJ lacks standing to bring Title II claims under the ADA. Thereafter, this Court lifted the stay and ordered the State to either answer the complaint or file a motion to dismiss [Doc. No. 45]. Since this Court lifted the stay in this case, the State of Florida filed a motion seeking a rehearing en banc of the Dudek decision. United States v. Florida, No. 17-13595 (11th Cir. Oct. 29, 2019). This Renewed Motion follows.

## STANDARD OF REVIEW

If the allegations and documents fail to state a claim for relief, the complaint should be dismissed. Fed. R. Civ. P. 12(b)(6). See also Duncan v. CitiMortgage, Inc., No. 1:13-CV-1493-TWT, 2014 WL 172228 at *3 (N.D. Ga. Jan. 15, 2014) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While facts pled are accepted as true, they must state a "plausible claim for relief." Id. at *4 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 279 (2009)). Legal conclusions and "unwarranted deductions" are afforded no deference. Twombly, 550 U.S. at 555;

Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011); Aldana v. Del Monte

Fresh Produce, N.A., Inc., 416 F. 3d 1242, 1248 (11th Cir. 2005).

<u>ARGUMENT AND CITATION TO AUTHORITY</u>

The Complaint should be dismissed for four reasons. First, DOJ fails to

allege the elements of discrimination under ADA or its regulations. Second, the

Complaint wrongly conflates ADA with the IDEA. Third, "obey the law"

injunctions are not allowed in the Eleventh Circuit.  Finally, the DOJ lacks

standing, and a stay should be granted to allow the Eleventh Circuit an opportunity

to decide whether to hear the Dudek decision en banc.

**A.**     **The Complaint Fails to State an ADA Claim.**

Congress passed ADA to "address discrimination against persons with

disabilities." Tennessee v. Lane, 541 U.S. 509, 516 (2004). It was not enacted to

allow DOJ to commandeer state coffers to provide an unquantifiable level of

services that are not supported by state education professionals.  Nor does the

ADA provide a means for the DOJ to eradicate educational options for students

who can avoid residential treatment but do not thrive in the general classroom

environment. Thus, to plead a Title II claim, DOJ must allege that the State

"administers" public services in a discriminatory or unequal manner. 28 C.F.R.

§ 35.130. The Complaint fails to state an ADA claim, because (1) the State does

not administer the GNETS program; and (2) the Complaint does not allege

actionable discrimination.

### a.    The State Does Not Administer The GNETS Program.

Before any consideration of discrimination, the Complaint should be

dismissed for failing to sufficiently allege that the State "administers" the GNETS

within the meaning of 28 C.F.R. § 35.130. The Complaint alleges a conclusory

legal statement – that the GNETS program is "financed, operated, and

administered" by the State – but unsupported legal conclusions are not entitled to a

presumption of accuracy. (Compl. ¶ 1; see also Compl. ¶ 24.) See Mamani, 654

F. 3d at 1153. Georgia law, which can be considered on a motion to dismiss,

demonstrates that state entities lack the authority to control, and therefore

administer, GNETS services. This reality bars relief under Title II.

The federal regulation relied on by the DOJ requires public entities to

"administer services, programs, and activities in the most integrated setting

appropriate to the needs of qualified individuals with disabilities." 28 C.F.R.

§ 35.130(d) (emphasis added). Neither the text of ADA nor its regulations define

"administer," so the plain meaning applies. Molloy v. Allied Van Lines, Inc.,

267 F. Supp. 2d 1246, 1252 (M.D. Fla. 2003). The Oxford Dictionary of English

defines "administer" as to "manage and be responsible for the running of."

(OED p. 21, 3d Ed. 2010).  Black's Law Dictionary defines it, in the public law context, as "practical management and direction." (BLD "administration" p. 44 7th ed. 1999). Georgia's Constitution, Code, and regulations make clear that the State's role with the GNETS program does not meet this threshold. See Mamani, 654 F.3d at 1153 (affording no deference to a complaint's legal conclusions).

DOJ contends that GNETS purportedly discriminates against disabled students by "segregating" them from their non-disabled peers, and that the State is at fault for this alleged segregation. (See generally Compl.)  No law, however, prohibits governments from creating distinct programs for disabled students. In fact, the DOJ's regulation requires integration **only** where it is "appropriate" based on an individual student's needs. 28 C.F.R. § 31.130(d). Even DOJ's guidelines discuss enabling interaction between the disabled and non-disabled when "possible." 28 C.F.R. § 35.130 pt. 35, app. B at 690. The Supreme Court recognized this in Olmstead. There, it held that (1) ADA prohibits only "[u]njustified isolation" of persons with mental illness; and (2) isolation is unjustified only when an individual is denied community placement but the state's professionals have determined that the individual "can handle and benefit from [such] settings." 527 U.S. at 597, 600.

Factually, Plaintiff recites elements of the ADA claim but allege only conclusions inadequate to meet the notice pleading standard, which requires more than conclusory allegations. IDEA and ADA, their implementing regulations, and state law complementing these federal statutes render Plaintiff's claims dismissible.

The Georgia Constitution also comes into play. As the Georgia Supreme Court has held, each Local Education Agency ("LEA") holds *exclusive* constitutional authority to operate its schools. Gwinnett Cty. Sch. Dist. v. Cox, 289 Ga. 265, 266, 710 S.E.2d 773, 775 (2011). This is consistent with federal law. This responsibility includes having primary responsibility for providing special education and related services for students who require specialized services for emotional and behavioral disorders.

Moreover, federal and state law require the State and each LEA to play a role in public education, but the role of each differs. The State disburses federal and state funds, promulgates regulations to carry out federal law, and oversees the operations of the LEAs. Plaintiffs here tacitly admit that the State fulfills its obligations as articulated by the Georgia Supreme Court. (Compl. ¶ 23.) The State's oversight does not include directly controlling general education, special education, the decision to provide special education services, or the provision of

special education services.  To the contrary, each LEA provides all education services, including special education to students with disabilities.  Federal law requires this direct relationship between the LEA and its trained professionals and the students with disabilities.

The centralities of the LEAs are a matter of state constitutional law.  The Constitution of the State of Georgia mandates that education services be "maintained and controlled" by the local education agencies, i.e., the school districts and their governing local boards of education. Ga. Const. Art. 8, § 5, ¶ 2. The Supreme Court of Georgia has recently said that this language grants "local boards of education the **exclusive** right to establish, maintain, and control K–12 public education." Cox, 289 Ga. at 266 (emphasis added). Based on this constitutional grant of authority, GNETS programs are operated by the local boards of education or under the fiscal control of Regional Education Service Agencies ("RESAs"), which are independent (non-State) entities that enable local school districts to share resources. Id.; O.C.G.A. § 20-2-270(f).

Further, consistent with the State Constitution's emphasis on local control, the Official Code of Georgia does not empower the State to control or manage GNETS: O.C.G.A. § 20-2-152 grants the State Board of Education authority only to adopt "criteria used to determine eligibility of students for state funded special

education programs." O.C.G.A. § 20-2-152(a). Local school districts, acting through their IEP Teams, decide whether those admission criteria have been met. State actors make no decision regarding the placement of an individual student.

The State Board also provides funding for the GNETS program if the General Assembly has appropriated such funds. O.C.G.A. § 20-2-152(c)(1). The funding comes in the form of grants and not generalized operational costs. O.C.G.A. § 20-2-152(c)(1)(A). The Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD") is alleged only to provide services that are needed by students enrolled in the GNETS program. (Compl. ¶ 28.) The Department of Community Health ("DCH") is alleged to administer the Early and Periodic Screening, Diagnostic and Treatment program through Medicaid. (Compl. ¶ 27.) Neither agency is alleged to administer the GNETS program, and neither is alleged to administer services in a discriminatory manner.

Standing alone, funding a program does not constitute administering it for purposes of the ADA. Bacon v. City of Richmond, Va., 475 F.3d 633, 638 (4th Cir. 2007). In Bacon, the Fourth Circuit affirmed the dismissal of a Title II lawsuit against a municipality over retrofitting the city's schools. 475 F.3d at 638. The court held that, because the city lacked "exclusive control" over the day-to-day operation of its schools at issue, it could not be liable. Bacon, 475 F.3d at 638.  The

court decided that funding a program without controlling it does not "cause[]

plaintiffs to be excluded nor discriminated against." Id. at 639-40.

Like the municipality in Bacon, the State of Georgia cannot be held liable

for decisions it does not make regarding (1) entry to the GNETS program;

(2) exiting the GNETS program; (3) services available in the general education

environment versus those in the GNETS program self-contained settings; or

(4) maintenance of freestanding GNETS facilities. Under Georgia's constitutional

and statutory framework, those responsibilities and decisions lie elsewhere.

Consequently, pursuant to the reasoning of Bacon, the State cannot be liable under

Title II when it is not engaged in any controlling act. The Complaint does not

distinguish any of this law, nor does it allege that Georgia operates the GNETS

program in violation of its own constitution and statutes. This precludes relief on

both ADA theories raised in the Complaint.[2]

---

[2] After this Court entered a stay of this litigation, advocates in Georgia filed a parallel suit against the State in the Northern District. A motion to dismiss on this ground (and others) is currently pending before the Honorable Michael J. Brown in the case styled The Georgia Advocacy Office, et al., v. State of Georgia, et al., Civil Case Filing No. 1:17-cv-03999-SCJ, United States District Court for the Northern District of Georgia.

**b.**     **The Complaint Fails to Allege Cognizable Discrimination.**

Even if the Complaint sufficiently alleged that the State administers the

GNETS program, it still fails to allege a claim for discrimination based on

unjustified isolation or failure to satisfy the integration mandate of 28 C.F.R.

§ 35.130(d). The Supreme Court has said that there are four elements of such a

discrimination claim under the ADA: (1) the provision of services in isolated

settings; (2) when state treatment professionals have determined that community

placement is appropriate; (3) the individual does not oppose community

placement; and (4) the community placement can be "reasonably accommodated,

taking into account the resources available to the State and the needs of others with

mental disabilities." Olmstead, 527 U.S. 581, 607. Here, DOJ has failed to allege

elements two and three.

     i.     The Complaint Fails To Allege Treatment Professionals Have
          Determined Community Placement Is Appropriate For Students
          Receiving Services In GNETS.

The Complaint does not allege that the State's treatment professionals have

determined that the general education setting is appropriate for even one individual

student who receives GNETS program services in a self-contained setting. Nor can

it. As previously discussed, the law governing the GNETS program allows a

student to receive GNETS services only after a team of professionals has decided,

that community placement is inappropriate. Specifically, the IEP Team must affirmatively refer a student to GNETS, and it may do so only after documentation of prior provision of services in a less restrictive setting, and data indicating that those less restrictive efforts did not benefit the student educationally. Comp. R. & Regs. 160-4-7-.15(2)(a); see also Manual at 1, 9 (explaining that "[e]ntry into a GNETS program is an IEP team decision and is based on the student's needs as identified in the IEP.") Similarly, a student's exit criteria from the GNETS program are based on the IEP process. See Ga. Comp. R. & Regs. 160-4-7-.15(2)(a); Manual at 11-12. This is the exact opposite of Olmstead, where the State's treatment professionals recommended community placement of the two individual plaintiffs. 524 U.S. at 602.

The DOJ does not allege that students are entering the GNETS program in violation of Georgia regulations and the Manual. Thus, ADA theory on which DOJ relies, i.e., Olmstead, actually bars the relief sought: it provides that, as here, when a community setting is not recommended, "it would be inappropriate to remove a [student] from the more restrictive setting." Olmstead, 527 U.S. at 602 (citing 28 C.F.R. § 35.130(d)). And, as discussed more fully below, ignoring an IEP Team's recommendation for a student to receive services in GNETS violates the IDEA. Consequently, DOJ's claim that GNETS students are not in the most

integrated setting should be dismissed for failing to allege the necessary element that the State's professionals have recommended another LRE or general education classroom placement for students in the GNETS program.

        ii.        The Complaint Fails To Sufficiently Allege That Students Receiving GNETS Services Do Not Oppose Moving Into A General Education Setting.

Although <u>Olmstead</u> makes an individual's preference for a community setting an element of an ADA claim, the Complaint fails to allege a single fact in support of the conclusory assertion that the "majority of students in the GNETS program would not oppose" receiving services in a general education setting. (Compl. ¶ 46.) Nor does the Complaint allege any fact to allow that bald assertion to be accepted, even on a motion to dismiss. The Court, in deciding a motion to dismiss, must distinguish between well-pled factual allegations and "conclusory allegations and unwarranted deductions of facts," which are entitled to no presumption of accuracy or truthfulness. <u>Twombly</u>, 550 U.S. at 557. DOJ tacitly relies "upon information and belief" as the basis of this allegation, which is insufficient without facts rendering the allegation plausible. <u>Id</u>.; <u>see also</u> <u>McCullough v. Bd. of Regents of the Univ. Sys. of Ga.</u>, 623 F. App'x 980, 983 (11th Cir. 2015) (same regarding Title VI claim). Consequently, the Complaint has failed to allege, as required by <u>Olmstead</u>, that "the affected persons do not oppose"

receiving services in the general education environment, warranting dismissal.
527 U.S. at 607.

**B.    IDEA Governs Least Restrictive Environment.**

DOJ's ADA claim also must be dismissed because it seeks relief (a change
in LRE) available under IDEA. The State wants to be crystal clear on this point:
The GNETS program fulfills Georgia's obligations under the IDEA and ADA.
DOJ's claim, plain and simple, is an LRE claim that seeks to overturn IEP Teams'
decisions through the guise of the ADA. The IDEA prohibits this result, and
nothing in the ADA authorizes DOJ to pursue such a claim.

Under IDEA, a parent challenging LRE must complete the administrative
hearing process before obtaining standing to appeal in the federal district court.
The IDEA administrative process must be completed not only before an IDEA
claim can proceed to federal court, but also before an ADA claim alleging failure
to place the student with non-disabled peers can be brought in federal court.  The
Eleventh Circuit has held that IDEA, and its administrative procedures, apply to
any matter relating to the educational placement of a child.  MTV v. DeKalb Co.
Sch. Dist., 446 F.3d 1153 (11th Cir. 2006).  The parents and the school (with the
expertise of special education professionals), and not the federal government, are
empowered under IDEA to make placement and LRE determinations.  See Todd

D. by Robert D. v. Andrews, 933 F.2d 1576, 1581 (11th Cir. 1991) (The courts "pay great deference to the educators who develop the IEP."). See also Batchelor v. Rose Tree Media School Dist., 759 F.3d 266 (3d Cir. 2014); Balderssarre v. Monroe-Woodbury Cent. School Dist., 820 F. Supp. 2d 490 (S.D. N.Y. 2011); Brown v. District 299—Chicago Public Schools, 762 F. Supp. 2d 1076 (N.D. Ill. 2010); Greenwood v. Wissachickon School Dist., 571 F. Supp. 2d 654 (E.D. Pa. 2008).

What DOJ seeks here is to attack the IEP Teams' decisions, which the parents of the GNETS students have not sought to overturn. DOJ asks the Court to overlook the case law holding unequivocally that an ADA claim regarding inclusion with non-disabled peers can be brought under IDEA and, therefore, the efficient administrative process that Congress enacted to govern IDEA cases and which requires that the administrative process must be exhausted before entering federal court.

Perhaps most fundamentally, DOJ fails to allege that the State's treatment professionals have determined that general education is the appropriate setting for students currently served in GNETS self-contained settings. As discussed, this foreclosed DOJ's claim under the ADA as interpreted by Olmstead. 527 U.S. at 600-01. See also 28 C.F.R. § 35.130(d); 28 C.F.R. § 130 pt. 35, app. B at 690. And

-21-

because the ADA authorizes States to rely on their own professionals'
determination of when it is "appropriate" and "possible" for a student to be served
in the general education setting, that IDEA-mandated determination may lawfully
not lead to a recommendation for placement in a general education setting.
Olmstead, 527 U.S. at 602. See also Greenwood, 571 F. Supp. 2d at 654; Urban by
Urban v. Jefferson Co. Sch. District R-1, 870 F. Supp. 1558 (D. Colo. 1994).

Thus, the IDEA statutory framework (which DOJ cannot enforce) forecloses
DOJ's claim, and the claim fails under the ADA because, as shown, DOJ does not
– and cannot – allege that the self-contained placements are "unjustified."
Olmstead, 527 U.S. at 596; (Compl. ¶ 42.)

A particularly instructive decision is United States v. Arkansas, 794 F. Supp.
2d 935 (E.D. Ark.2011). In Arkansas, the federal government sued Arkansas,
alleging that practices at a state residential facility for the developmentally disabled
(including students) violated the rights of facility residents guaranteed by ADA and
IDEA. The center provided residential placement for special education students
placed by IEP teams. DOJ put on evidence of problems in the operation of the
program and expert testimony stating that the students housed in the residential
program would have more interaction with the general population if placed in
community-based settings. DOJ alleged that Arkansas violated the 28 C.F.R.

§ 35.130(d)'s "integration mandate" by not using a community-based settings. DOJ alleged an ADA violation and an IDEA (failure to provide LRE) violation. Following a six-week bench trial, the Court found in favor of Arkansas and against DOJ on ADA claim. Arkansas, by way of the residential program, fulfilled the LRE requirement.

Here, no IDEA claim is presented, and DOJ's ADA claim fails on multiple grounds, including those set forth in <u>Arkansas</u>. <u>Arkansas</u> went to trial. Its decision, however can inform this Court on the proper ruling on this motion to dismiss.

**C.    <u>The Eleventh Circuit Does Not Allow Obey-The-Law Injunctions.</u>**

DOJ also seeks an injunction that would require Georgia to "provide appropriate, integrated mental health and therapeutic educational services and supports" for students with behavior-related disabilities and to "cease discriminating against those in or at serious risk of entering the GNETS Program by failing to provide…services and supports in the most integrated setting." This prayer for relief is nothing more than a request that this Court mandate that Georgia "obey the law." Such remedy is not available in the Eleventh Circuit. <u>Elend v. Basham</u>, 471 F.3d 1199, 1209 (2006).

**D.**    **The DOJ Lacks Standing.**

The State's original Motion to Dismiss, filed on November 1, 2016

[Doc. No. 9] raised the issue that the DOJ lacked standing to bring this lawsuit

under Title II of the ADA. The State relied on a case decided by the United States

District Court for the Southern District of Florida that held that Congress did not

provide the DOJ with authority to bring a lawsuit against states for alleged

violations of Title II of ADA. C.V. v. Dudek, No. 12-60460-CIV-ZLOCH, 2016

WL 5220059 (S.D. Fla. Sept. 20, 2016). A visiting judge and one judge from the

Eleventh Circuit Court of Appeals reversed the lower court's ruling and held that

the DOJ does have standing under Title II of the ADA. United States v. Florida,

No. 17-13595, 2019 WL 4439465 (11th Cir. Sept. 17, 2019). Eleventh Circuit

Judge Lisa Branch dissented. On October 29, 2019, the State of Florida moved for

an *en banc* hearing by the entire Eleventh Circuit Court of Appeals. United States

v. Florida, No. 17-13595 (11th Cir. Oct. 29, 2019). Therefore, this issue is not

fully resolved by the Eleventh Circuit. The State fully incorporates its original

Motion to Dismiss [Doc. No. 9] in this brief as if fully set forth here to preserve its

argument that the DOJ lacks standing in this lawsuit.

Because the State of Florida has filed a Petition for Rehearing En Banc, this

Court should stay this lawsuit again pending a final determination from the entire

Eleventh Circuit Court of Appeals for the same reasons it originally stayed this lawsuit.  In determining whether a stay should be granted in the interest of justice, courts consider "(1) whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant; (2) whether a stay will simplify the issues in the case; and (3) whether discovery is complete and a trial date has been set." <u>Tomco Equipment Co. v. Southeastern Agri-System, Inc.</u>, 542 F. Supp. 2d 1303, 1307 (N.D. Ga. 2008) (citation omitted).  There is no question that these factors are satisfied here, especially where concerns of judicial economy are heightened given that this entire lawsuit is funded by state and federal taxpayers.  If the Eleventh Circuit overturns the panel decision from September 17, 2019, any efforts dedicated to litigating the Complaint would be in vain, whereas if it is upheld, DOJ will have experienced no prejudice by staying the case.  Either way, this lawsuit should not proceed now.

## <u>CONCLUSION</u>

For any of these reasons, the State of Georgia respectfully requests that this Court DISMISS the Complaint for failure to state a claim. In the alternative, the State requests that this Court stay the proceedings until at least the Eleventh Circuit makes a final determination by its full en banc panel that DOJ has standing to bring the lawsuit.

Respectfully submitted this 6th day of November, 2019.

/s/ Josh Belinfante

Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Alexa R. Ross
Georgia Bar No. 614986
aross@robbinsfirm.com
Kimberly K. Anderson
Georgia Bar No. 602807
kanderson@robbinsfirm.com
Joseph H. Saul
Georgia Bar No. 432592
jsaul@robbinsfirm.com

Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone:     (678) 701-9381
Facsimile:     (404) 856-3250

*Attorneys for Defendant State of Georgia*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this motion has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this motion has been prepared using 14-pt Times New Roman Font.


*/s/ Josh Belinfante*
Josh Belinfante

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR STAY OF PROCEEDINGS** with the Clerk of Court using the CM/ECF system, which will send e-mail notification of such filing to all counsel of record.

This 6th day of November, 2019.

*/s/ Josh Belinfante*
Josh Belinfante