# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NO:  1:16-CV-03088-ELR |
| STATE OF GEORGIA, | ) | |
| | ) | |
| Defendant. | ) | |

## THE STATE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Plaintiff's Complaint fails factually and legally and must be dismissed.

This is the sixth brief submitted to this Honorable Court related to the State's motion to dismiss, and the Court heard oral argument on the motion. In this Reply, therefore, the State will endeavor to focus narrowly on and succinctly articulate Plaintiff's essential factual and legal misstatements.  The State also incorporates and stands by its arguments made in prior filings.

## **SUMMARY**

Plaintiff's ADA claim fails for these reasons:

*First*, the GNETS Rule is unequivocally non-discriminatory and supports no valid ADA claim. *See* Ga. Comp. R. & Regs. 160-4-7-.15.

*Second*, neither federal nor state law empowers the State to recommend GNETS services or the setting in which those services will be provided.  IDEA (and state law) empowers only local school districts (through their respective IEP teams) to do so.  ADA does not strip individual school districts of their authority under federal and state law to operate their GNETS programs.

*Third,* Plaintiff fails to allege an *Olmstead* claim, *Olmstead* does not involve the IDEA, and *Olmstead* does not counteract any IDEA - qualified student's right to an individualized IEP and the educational environment determined by experts to best meet his/her needs.

*Fourth,* with no colorable substantive ADA claim, Plaintiff is left with only a dismissible "obey the (supposed) law" claim.

If the Court is inclined not to dismiss this lawsuit at this time, the Court should impose a stay until the Eleventh Circuit either denies Florida's petition or grants Florida's petition and rules *en banc* in *United States v. Florida,* 938 F.3d 1221 (11th Cir. 2019).  This Honorable Court granted a stay pending the ruling of

the Eleventh Circuit Court of Appeals in *United States v. Florida*.  In September 2019 the Eleventh Circuit, by a three-judge panel, ruled in appellant's favor, and this Court subsequently lifted the then-in-place stay.   Florida has since petitioned for an *en banc* decision, and nothing indicates that the Eleventh Circuit will delay its ruling.

The State does not ask this Court to stay this lawsuit indefinitely.  Plaintiff, however, bases its opposition to this Court's imposing a second stay on the fiction that the stay would be of indefinite duration, and the cases on which Plaintiff relies involve indefinite stays pending appeal.  Here, Florida already has filed its petition, and nothing suggests that a decision will not be forthcoming within a reasonable period of time.  For these reasons and the reasons stated in Defendant's Brief in Support of Its Motion to Dismiss, this Court should stay this lawsuit in the event it does not dismiss this lawsuit.

## I.    **The GNETS Rule Is Unequivocally Non-Discriminatory.**

The GNETS Rule states the intent to ensure that each student who needs GNETS services (according to his/her local district IEP team) receives them in the environment that provides as much interaction with the general education population as possible.  The GNETS Rule delineates the criteria that local school

districts must consider to ensure that the State's intent is honored.  The most pertinent parts of the GNETS Rule, summarized, provide as follows:

- GNETS services are an option in the continuum of supports intended to *prevent children from requiring residential or more restrictive placement*.

- The student's IEP team determines whether GNETS services are necessary for the student to receive FAPE as required under IDEA.

- The IEP team will consider the various settings in which GNETS services may be delivered, *beginning with the general education setting in the student's Zoned School or other public school.*

- The IEP team must assess at least annually whether each student served outside the general education setting is ready to transition to a less restrictive setting.

Notably, the GNETS Rule requires local districts to serve in the general education setting each student who qualifies for GNETS services - unless a student's IEP team determines based on objective data that the student cannot in that setting receive FAPE.  Plaintiff asks this Court to ignore the plain language of the Rule and eliminate GNETS programs wholesale, thereby eschewing the individualized IEP and environment determinations that IDEA requires. Plaintiff's claim is illogical and invalid.

## II.    The State Does Not Place Any Student In A GNETS Program.

Under IDEA and Georgia law the State lacks authority to administer the local districts' GNETS programs or recommend the setting in which they will be delivered.  The student placement decisions that are the basis of the Complaint are exclusively made by the local school districts.  Ga. Comp. R. & Regs. 160-4-7-.15(1)(b), (4) & (5)(d)(1);  Comp. R. & Regs. 160-4-7-.15(4) (noting LEAs, through IEP teams, determine the level of GNETS services per individual student). Plaintiff submits, in essence, that the State can be liable for alleged unlawful segregation in a program the State does not operate.  This theory contradicts well-established federal law.  28 C.F.R. § 35.130(b)(3).  *See also Bacon v. City of Richmond*, 475 F.3d 633, 641 (4th Cir. 2007); *Gipson v. Popeye's Chicken & Biscuits*, 942 F. Supp. 2d 1303 (N.D. Ga. 2013); *Noel v. N.Y. City Taxi & Limousine Comm'n,* 687 F.3d 63 (2nd Cir. 2012) (control over licensing of industry does not transform the industry into a program or activity for ADA Title II purposes).

Plaintiff continues to rely on the *Day* and *Paterson* cases, which do not address Georgia's constitutional, statutory, and regulatory framework.  *Day v. Distr. of Columbia,* 894 F. Supp. 2d 1, 23 (D.D.C. 2012); *Disability Advocates, Inc. v. Paterson*, 598 F. Supp. 2d 289, 317-18 (E.D.N.Y. 2009). "The constitutional

history of Georgia could not be more clear that . . . local boards of education have the exclusive authority to fulfill one of the 'primary obligation[s] of the State of Georgia,' namely, '[t]he provision of an adequate public education for the citizens.'" *Gwinnett Cty. Sch. Dist. v. Cox*, 289 Ga. 265, 266 (2011) (citing Art. VIII, Sec. I, Par. I.).  Plaintiff attempts to distinguish *Cox* based on its factual background involving state-authorized charter schools.  That distinction, however, does not alter the language of the Georgia Constitution or the Georgia Supreme Court's recognition of the exclusive control that local districts hold.

Because the State does not, and under Georgia law cannot, administer GNETS programs, the inquiry ends and the Complaint must be dismissed.  Yet, even if this Court were to find relevant that the GNETS Rule sets forth GNETS program criteria, the Complaint does not allege that the criteria are discriminatory or the source of unlawful segregation.  The Complaint hinges on decisions made exclusively by local school districts, not the State.  As a matter of statutory (and constitutional) law, local school districts are not State actors.  *Colston v. Hutchinson*, 208 Ga. 559 (1951).  *See also* O.C.G.A. § 20-2-70(f) (RESAs).

The Complaint lacks factual support.  (*See* Compl.  ¶¶ 24, 26, 34, 37, 38-39, 41.)  Plaintiff alleges that the State violates "ADA by administering its mental health and therapeutic educational service system in a manner that fails to serve

students in the GNETS Program in the most integrated setting appropriate . . . ."
(Compl. ¶ 68.)  No action by the State is specified as allegedly discriminatory.   No
particular "manner" of  administering the GNETS programs is alleged.  *See Iqbal,*
556 U.S. at 678 (2009) (noting "naked assertions devoid of further factual
enhancement" are not sufficient to survive a motion to dismiss).  In any event,
even if Plaintiff's  allegations were sufficient to meet the notice pleading standard,
they still would fail to allege a wrong committed by the State.  The allegations
address the consequences of decisions made by local school districts, and not the
substance of State law.  Ga. Comp. R. & Regs. 160-4-7-.15.

The Complaint fails to address the bedrock distinction between the State and
the local school districts.  The Complaint does not present to the Court the issue of
whether Plaintiff has a colorable claim against the local districts. The State will not
guess why Plaintiff brought its claim against the State, and the Court does not
require the State to do so.  (Nor did Plaintiff approach the Georgia General
Assembly, which is the branch of state government that appropriates funds to the
GNETS programs.) Instead, Plaintiff asks this Court to eliminate GNETS
programs – based on the supposed opinion of unidentified "experts" who have not
assessed any GNET program student.  Plaintiff offers no legal or factual basis to do
so.

### III.    The Complaint Fails To Allege An *Olmstead* Claim, and *Olmstead*  Does Not Narrow The Scope Of  IDEA.

Plaintiff fails to state a viable claim under *Olmstead* (or Rule 12(b)). (Compl. ¶¶ 2, 37-43, 46, 62); s*ee Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff asks the Court to accept that each student receiving GNETS services, and each student who in the future may receive GNETS services, is unlawfully segregated or at risk of unlawful segregation.  Plaintiff does not allege, because it cannot truthfully allege, that a professional has determined that even one student it purports to represent can receive FAPE as IDEA requires the general education setting.   Plaintiff  admits no qualified professional has assessed any individual student and argues that courts interpreting *Olmstead* do not require a state professional's determination of appropriateness for community placement.

Nor does Plaintiff address that the case law on which it relies involves no issue regarding a student's right to receive IDEA-mandated assessment or services. *See M.J., et. al. v. The District of Columbia, et. al.,* 2019 WL 3344459 (D.D.C. July 25, 2019) (IDEA requisite individual assessments not part of lawsuit). All "authority" Plaintiff offers to support its argument is inapposite in additional ways as well.  In the *Paterson, Frederick L.,* and *Hogan* cases, treatment professionals analyzed and evaluated the named individuals asserting claims.

-8-

*Paterson*, 598 F. Supp. 2d at 306; *Frederick L. v. Dep't of Public Welfare*, 157 F. Supp. 2d 509, 540 (E.D. Pa. 2001) ((plaintiff analyzed and recommended for community placement); *Joseph S. v. Hogan,* 561 F. Supp. 2d 280, 293 (E.D.N.Y. 2008) (plaintiff evaluated by independent agency).  Even if this Court were to disregard *Olmstead's* precise language regarding the state professional's assessment of a student's ability to function in a community setting and decide that a *state* treatment professional does not need to assess each individual student, surely some professional must assess the individual's needs.  *Olmstead,* 527 at 607. Here, the Complaint alleges no professional assessment.  (Compl. ¶ 2.)

Plaintiff's claim is based on its opposition to the GNETS programs, not on ADA law, and thus fails. *See, e.g., M.R. v. Dreyfus*, 697 F.3d 706, 720 (9th Cir. 2012) (where plaintiffs showed specific ways they would be "at serious risk of institutionalization").  The Complaint is subject to dismissal because ADA does not strip any IDEA-qualified student of his/her IDEA rights. IDEA is a comprehensive statute creating and governing the "what" and "where" of affirmative obligations on the part of public-school systems.  20 U.S.C. § 1400 *et seq*; 20 U.S.C. § 1401(18)(19); 20 U.S.C. § 1415.   IDEA, its regulations, and the State Rules adopted to implement IDEA apply to each student served through the GNETS programs.

Plaintiff again relies on inapposite case law in an attempt to support its ADA claim that would strip students of their IDEA rights. The *J.S.* case holds the unremarkable conclusion that a plaintiff can seek recovery under IDEA and ADA *if* the recovery sought under ADA is consistent with IDEA. *J.S. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979 (11th Cir. 2017). Further, *J.S.* is factually distinct. In *J.S.,* the school removed the plaintiff from classes for no reason related to education. Here, students are purposefully given GNETS program services based on IEP team recommendations. Ga. Comp. R. & Regs. 160-4-7-.15(4).

The *Fry* decision (on which *J.S. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979 (11th Cir. 2017), cited by Plaintiff relies) establishes the analysis that supports the State's position here, i.e., that Plaintiff's claim is an IDEA, not an ADA claim. The *Fry* Court offers the following analysis to determine whether a claim is an IDEA or ADA claim:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE … or instead addresses disability-based discrimination [actionable under ADA] can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school - say, a public theater or library? And second, could an *adult* at the school - say, an employee or visitor- have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about [IDEA claims].… But when the answer is no, then the complaint probably does concern … [an IDEA claim based on denial of ] FAPE, even if it does not

explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Fry,* 137 S. Ct. at 756.

Here, Plaintiff alleges facts that could not be alleged to have occurred anywhere but in the public-school setting and could not be alleged to have caused an adult to be unlawfully segregated. Plaintiff does not admit the obvious: Plaintiff challenges IEP teams' determinations of classroom settings for students. Plaintiff's essential claim is that students are not educated in the proper classrooms, and no adult could bring the same claim. Therefore, Plaintiff's claim should be dismissed for failure to properly bring an IDEA claim. *See* 20 U.S.C. § 1415(l).

## IV.    **The Proposed Injunction Is An Illegal Obey the Law Injunction.**

Plaintiff fails to provide legal support for a general, "stop discrimination" injunction. *See* Fed. R. Civ. P. 65(d) (requiring a "reasonable detail[ed]" injunction); *S.E.C. v. Smyth*, 420 F.3d 1225, n.14 (11th Cir. 2005).

Plaintiff's reliance on *Florida PIRG v. E.P.A.,* 386 F.3d 1070 (11th Cir. 2004) is misplaced. First, *Florida PIRG* has been supplemented by *Smyth* and *Elend v. Basham*, 471 F.3d 1199, 1209-10 (11th Cir. 2006) (denying relief seeking to mandate that the Secret Service "ensure there's no violation of the First

Amendment").  Second, the injunctive relief sought by the plaintiffs in *Florida PIRG* required the Environmental Protection Agency to conduct specific review of Florida's proposed new standards under specific statutory criteria.  The injunction sought here provides the State with no guidance as to the prohibited conduct and seeks only to enforce a regulation and federal law.

## Conclusion

For the reasons stated above, the State respectfully requests that this Court dismiss the Complaint for failure to state a claim.  Plaintiff asks this Court to find the State of Georgia liable for allegedly unlawful segregation, based on an expressly non-discriminatory State Rule.  The United States Supreme Court's decision in *Fry*  leaves no doubt that Plaintiff here attempts to use ADA to sidestep, and to cause violation of, IDEA.  The relief Plaintiff seeks, moreover, would restrain the State from funding the GNETS programs and thereby would result in some students being served in residential settings - the most restrictive of all settings.  Surely, the legislature did not intend for ADA to operate as such.

Respectfully submitted this 4th day of December 2019.


/s/ Alexa R. Ross
Alexa R. Ross
Georgia Bar No. 614986
aross@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Joseph H. Saul
Georgia Bar No. 432592
jsaul@robbinsfirm.com

Special Assistant Attorney General

Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone:      (678) 701-9381
Facsimile:      (404) 856-3250

*Attorneys for Defendant State of Georgia*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this motion has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this brief has been prepared using 14-pt Times New Roman Font.

*/s/ Alexa R. Ross*
Alexa R. Ross

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **THE STATE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will send e-mail notification of such filing to all counsel of record.

This 4th day of December 2019.

*/s/ Alexa Ross*
Alexa R. Ross