**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16-cv-03088- |
| | ) | ELR |
| STATE OF GEORGIA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**AMENDED JOINT PRELIMINARY REPORT AND DISCOVERY PLAN[1]**

**1. Description of Case:**

(a) **Describe briefly the nature of this action**.

<u>Plaintiff:</u>

This civil action is brought by the United States under Title II of the

---

[1] The parties originally filed a joint preliminary report and discovery plan on December 1, 2016. [Doc. 14]. The Court did not take action on the parties' plan prior to granting Defendant's alternative request for a stay of proceedings. [Doc. 40]. The stay was lifted on October 16, 2019 [Doc. 45], and the Court denied Defendant's renewed motion to dismiss on May 13, 2020 [Doc. 61]. Given that some circumstances have changed since the filing of the initial plan, the parties respectfully submit an amended plan for the Court's review.

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*, alleging that the State of Georgia discriminates against thousands of public school students with behavior-related disabilities through the State's operation, administration, and funding of the Georgia Network for Educational and Therapeutic Support ("GNETS") Program. The Complaint alleges that students in the GNETS Program receive services in classrooms and centers where they are segregated from their non-disabled peers. It further alleges that the State administers its mental health and therapeutic educational service system in a manner that fails to serve students in the GNETS Program in the most integrated setting appropriate to their needs and puts other students with behavior-related disabilities at serious risk of unnecessary segregation in the GNETS Program. Additionally, the United States alleges that the State provides students in the GNETS Program educational opportunities that are unequal to those provided to students in general education settings.

<u>Defendant:</u>

Plaintiff's Complaint alleges facts as they existed over six years ago. This lawsuit presents issues regarding whether Plaintiff seeks to enforce Title II of the ADA in a way that would require the State to violate the Individuals with

2

Disabilities Education Act ("IDEA"). The State lawfully passes federal and state funds to local school districts or local education agencies ("LEAs") in exchange for each LEA's assuring compliance with IDEA.

Plaintiff has not alleged that any student claims that he or she has been placed in an unduly restricted environment. The State, pursuant to IDEA, requires the LEAs to fulfill federal and state statutory and regulatory requirements, including providing GNETS services to students who are in danger of receiving services in a residential facility. The State Rule regarding GNETS requires each student who receives GNETS services to receive them in the general education setting unless that setting has proved unsuccessful for the individual student based on decisions made by the Individualized Education Program teams ("IEP"). No State official is a member of an IEP team. (*See generally* Ga Comp. R. & Regs. 160-4-7-.15.)

Plaintiff does not allege the State has intentionally set up a segregated program for students with special needs or intentionally discriminates against students with special needs. This lawsuit at its core seeks to determine whether local entities are using funding the State allocates to avoid residential placement for students with disabilities.

**(b)** **Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

Plaintiff:

(1) The State of Georgia operates a statewide program of public education that provides free public school education to its resident children.

(2) The State of Georgia plans, funds, administers, and delivers mental health and therapeutic educational services, and, through the Board of Education and State School Superintendent, establishes certain policies for Georgia's public education system.

(3) Some students with behavior-related disabilities receive public education services in Georgia through the GNETS Program.

(4) The GNETS Program includes 24 regional programs serving the majority of school districts in the State. During the 2014-15 school year, approximately 4,600 students with behavior-related disabilities, pre-kindergarten through 12th grade, received education services in the GNETS Program.

(5) Many students in the GNETS Program attend school in regional GNETS "Centers," which are generally located in self-contained buildings that serve students with disabilities from multiple school districts.

(6) Other students in the GNETS Program attend school in regional GNETS "Classrooms," which are located within general education school buildings that are often not the students' zoned general education schools and that

may serve different grade configurations than the grades in which the students in GNETS are enrolled. The Classrooms serve students with disabilities and are often located in separate wings of school buildings used for general education programs.

(7) Students served in GNETS Centers and Classrooms have little interaction with nondisabled students.

(8) Although the time students spend in the GNETS Program varies, many students are served in the GNETS Program for several years.

(9) The State plans, funds, administers, licenses, manages, and oversees mental health and therapeutic educational services ("MHTES").

(10) Some students with behavior-related disabilities in Georgia who are not currently in the GNETS Program need, or may, in the future, need, access to MHTES to remain in general education settings.

(11) The majority of students in the GNETS Program could participate in general education schools with MHTES and would not oppose doing so.

(12) Placement in the GNETS Program begins with a referral from the student's school and the student's Individualized Education Program ("IEP") team. A GNETS Program administrator reviews the placement to determine

whether it is appropriate. The State Board of Education establishes the exit criteria for the GNETS Program.

(13) Some GNETS Centers are located in older buildings in need of significant repairs and upgrades. Some GNETS Centers formerly served as schools for black students during *de jure* segregation.

(14) Many of the GNETS Centers and Classrooms lack features and amenities found in general education schools, such as gymnasiums, cafeterias, libraries, science labs, music rooms, or playgrounds.

(15) Unlike students in general education classrooms, students in the GNETS Program often do not receive grade-level instruction that meets Georgia's State Standards; at the high school level, students in the GNETS Program often receive only computer-based instruction.

(16) Unlike students in general education classrooms, students in the GNETS Program often lack access to electives, facilities, and extracurricular activities.

(17) There are students with behavior-related disabilities who are served throughout the State in general education settings.

<u>Defendant:</u>

 (1) The State Board Rule regarding GNETS provides as follows:

- Each student's IEP team must determine that GNETS services are necessary for students to receive FAPE. (The IEP team is assembled by the student's LEA. It is a group of individuals with specialized knowledge of the individual student.)

- Removal from the general education setting will occur only when the nature or severity of the student's social, emotional and/or behavioral challenges are such that education in a general education setting with the use of supplementary services and intensive individualized interventions cannot be achieved.

- The IEP team will consider the various settings in which GNETS services may be delivered and determine whether the individual student is likely to receive FAPE in each environment, beginning with the least restrictive setting.

- GNETS services may be delivered as follows:

  i.    Services provided in the general education setting in the student's Zoned School or other public school.

  ii.    Services provided in the student's Zoned School or other public-school setting by way of a "pull out" from the general education setting for part of the school day.

7

     iii.    Services provided in the student's Zoned School or other public school for part of the school day, in a setting dedicated to GNETS.

     iv.    Services provided in the student's Zoned School or other public school for the full school day, in a setting dedicated to GNETS.

     v.    Services provided in a facility dedicated to GNETS for part of the school day.

     vi.    Services provided in a facility dedicated to GNETS for the full school day.

(2) The State Rule, if followed by the LEAs, would ensure that GNETS services are provided to students who exhibit intense social, emotional, and/or behavioral challenges to prevent these students from receiving special education and related services in a more restrictive setting, i.e., a residential placement.

(3) Federal and state law requires that the services necessary and the appropriate environment for each student with a disability be individualized; that students are not subjected to a "one size fits all" group of services or environment.

(4) The State has undertaken a comprehensive review and is implementing a strategic plan to examine the GNETS student population, the quality of the

8

special education services provided, and the quality of the therapeutic

supports provided.

**(c) The legal issues to be tried are as follows:**

Plaintiff:

(1) Whether the State administers the GNETS Program within the meaning of

Title II of the ADA.

(2) If the State administers the GNETS Program, whether the administration of

the GNETS Program, which provides mental health and therapeutic

educational services almost exclusively in segregated settings, violates the

Title II mandate that public entities "administer services, programs, and

activities in the most integrated setting appropriate to the needs of qualified

individuals with disabilities."

(3) Whether the State violates the ADA by providing unequal educational

opportunities to students in the GNETS Program.

(4) Whether Plaintiff is entitled to the relief that it seeks.


Defendant:

In addition to what Plaintiff states above, Defendant identifies the following

legal issues in dispute:

1) Whether the State administers GNETS as contemplated under Title II of the ADA.

2) Whether the United States seeks to enforce the ADA in a way that eliminates the mandatory, per individual-student determination of special education and related services by way of a judgment that requires students as a group to be served in the general education setting.

3) Whether the United States' claims are precluded by the IDEA.

4) Whether the United States' claims are precluded by the Eleventh Amendment to the United States Constitution.

5) Whether the United States has standing to bring its alleged claims.

**(d) The cases listed below (include both style and action number) are:**

(1) Pending Related Cases: While not formally denoted as a related case, the Georgia Advocacy Office, The Arc of the United States, and individually-named plaintiffs filed an action against the State of Georgia pertaining to the State's operation of GNETS, which raises some similar factual and legal issues. *Georgia Advocacy Office v. State of Georgia*, 1:17-cv-03999-MLB.

(2) Previously Adjudicated Related Cases: NONE

**2. This case is complex because it possesses one or more of the features listed below (please check):**

_____(1)    Unusually large number of parties

_____(2)    Unusually large number of claims or defenses

_____(3)    Factual issues are exceptionally complex

__X__(4)    Greater than normal volume of evidence

__X__(5)    Extended discovery period is needed

_____(6)    Problems locating or preserving evidence

_____(7)    Pending parallel investigations or action by government

__X__(8)    Multiple use of experts

_____(9)    Need for discovery outside United States boundaries

_____(10)    Existence of highly technical issues and proof

__X__(11)    Unusually complex discovery of electronically stored information

## 3. Counsel:

**The following individually named attorneys are hereby designated as lead counsel for the parties:**

<u>Plaintiff</u>:

Renee M. Wohlenhaus, Deputy Chief
Andrea E. Hamilton, Trial Attorney
Victoria M. Lill, Trial Attorney
Laura C. Tayloe, Trial Attorney
Michelle L. Tucker, Trial Attorney
United States Department of Justice, Civil Rights Division, Educational
Opportunities Section

11

Aileen Bell Hughes, Assistant United States Attorney, U.S. Attorney's Office for the Northern District of Georgia

Defendant:

Alexa R. Ross
Georgia Bar No. 614986
Special Assistant Attorney General
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street NW
Atlanta, GA 30318
Telephone: (678) 701-9381

Alexa Ross and Josh Belinfante are designated as co-lead counsel for Defendants.

Additional counsel from ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD LLC

include Joseph H. Saul and Melanie Johnson.


## 4. Jurisdiction:

**Is there any question regarding this Court's jurisdiction?**

  X   Yes      ___ No

Plaintiff has no question regarding the Court's jurisdiction.  However, Defendant

has attached a brief statement explaining its jurisdictional objection.

**If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss**

separately the claim(s) on which the objection is based. Each objection should be supported by authority.

**5. Parties to This Action:**

**(a) The following persons are necessary parties who have not been joined**:

> **Plaintiff:** None.
>
> **Defendant:**  Each Georgia LEA identifies each student who possesses a disability that necessitates special education and related services in order for the student to benefit from his or her education.  Consequently, LEAs are necessary parties because Plaintiff alleges that each student receives services outside the general education setting in a violation of Title II of the ADA.  These LEAs make placement decisions for each student receiving GNETS services, not the State.

**(b) The following persons are improperly joined as parties:** NONE

**(c) The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:** NONE

**(d) The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

**6. Amendments to the Pleadings:**

13

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed.R.Civ.P. 15. Further instructions regarding amendments are contained in LR 15.

**(a) List separately any amendments to the pleadings that the parties anticipate will be necessary:** NONE AT THIS TIME.

**(b) Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

**7. Filing Times for Motions:**

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below. All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

**(a)** *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

**(b)** *Summary Judgment Motions*: within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

**(c)** *Other Limited Motions*: Refer to Local Rules 7.2A, 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

**(d)** *Motions Objecting to Expert Testimony*: <u>Daubert</u> motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

**8. Initial Disclosures:**

**The parties are required to serve initial disclosures in accordance with Fed.R.Civ.P. 26. If any party objects that initial disclosures are not appropriate, state the party and the basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed.R.Civ.P. 26(a)(1)(B).**

The parties will exchange initial disclosures on or before June 18, 2020.

**9. Request for Scheduling Conference:**

**Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.**

The parties expect they will be able to reach agreement about discovery and scheduling matters and will request a conference only if it becomes necessary to resolve issues upon which the parties cannot reach agreement.

**10. Discovery Period:**

**The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.**

The parties agree that Defendant shall file its answer on or before June 11, 2020. Additionally, the parties agree that discovery will commence thirty days after the appearance of Defendant by answer to the complaint. The parties agree to a five-month fact discovery period. The parties further agree to a 90-day expert

discovery period to commence after the conclusion of fact discovery. Opening

expert reports will be due 45 days after the close of the fact discovery period. Any

expert rebuttal reports will be due 30 days after opening expert reports.

Depositions of experts will take place by the conclusion of the expert discovery

period.

**Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing. Please state below the subjects on which discovery may be needed:**

Plaintiff anticipates that the following discovery will be necessary. Plaintiff

identifies the following discovery topics in good faith based on the information

currently known and reserves the right to amend to comport with later-acquired

information. Plaintiff seeks discovery regarding:

(a) Documents and information related to policies, procedures, plans, rules,

guidance, actions, and inactions, as written and as applied, regarding the

structure, operation, and administration of the GNETS Program.

(b) Documents and information related to the demographics of the students

in, and at risk of placement in, the GNETS Program.

(c) Documents and information related to students currently or previously served in the GNETS Program, as well as students at risk of placement in the GNETS Program.

(d) Documents and information related to children currently or recently receiving public educational services in residential treatment facilities in the State.

(e) Documents and information related to the services and supports available and provided to students with behavior-related disabilities, including mental health and therapeutic educational services and supports, within the GNETS Program and in general education settings.

(f) Documents and information related to the number, type, prevalence, and cost of mental health and therapeutic educational services statewide, including documents and information pertaining to system capacity.

(g) Documents and information related to the comparative quality of the facilities, curriculum, instruction, extracurricular activities, and other topics related to educational opportunities within the GNETS Program and in general education settings.

(h) Documents and information related to the qualifications, training, and professional development of GNETS Program and general education

staff and personnel working with students with behavior-related disabilities.

(i)   Documents and information related to general operating costs and expenses associated with the GNETS Program, including, but not limited to, staffing and personnel, transportation, instructional materials, facilities, and maintenance.

(j)   Documents and information related to state and federal funding for the State's system of providing mental health and therapeutic educational services.

(k)   Documents and information related to experiences of students and their families in the GNETS Program.

(l)   Documents and information related to experiences of educators with students in the GNETS Program and with similar students in general education.

(m)  Documents and information related to experts identified by Defendant. Defendant anticipates that the following discovery will be necessary. Defendant identifies the following discovery topics in good faith based on the information currently known and reserves the right to amend to comport with later-acquired information.

(a) Discovery will be needed to determine the specific facts on which Plaintiff bases the general, notice-pleading factual allegations contained in the Complaint. (Examples are set forth in Compl. ¶¶ 26, 34, 36-49, 51, 55-61.) To illustrate, Complaint allegations and the types of facts Defendant will seek in discovery are as follows:

Allegation: "The State, through the GNETS Program, denies students with disabilities the full opportunity to interact with their peers without disabilities, which can have a lasting impact on the students' future opportunities for academic achievement." (Compl. ¶ 8.)

Related Discovery: The State will propound interrogatories, seek documents, and elicit deposition testimony regarding the alleged actions and inactions that constitute or result in the denial of such opportunities.

Allegation: "Mental health and therapeutic educational services and supports for students with behavior-related disabilities can be

provided in integrated educational settings with various levels of services and supports." (Compl. ¶ 37.)

Related Discovery: The State will propound interrogatories, seek documents, and elicit deposition testimony regarding, among other things, the precise mental health services and therapeutic services that allegedly can be provided in integrated general education classrooms, potential providers of such services, the cost of such services, and the student population that allegedly can successfully receive such services in this setting.

(b) Discovery will be needed to examine the bases, including any expert opinion, underlying certain allegations, such as the reasonableness of the plan for "redirection, reallocation, expansion, and coordination of existing resources" that Plaintiff asks this Court to impose on the State. (Compl. ¶ 61.)

(c) Discovery will be needed regarding any expert identified by Plaintiff.

(d) Discovery will be needed to identify each state special education program that has been investigated by the Department of Justice to determine

compliance with Title II of the ADA, the findings of each investigation, and the outcome of each investigation.

(e) Discovery will be needed to determine whether the Department of Justice alleges that provision of GNETS Program services in settings that are not self-contained violates Title II of the ADA.

(f) Discovery will be needed to determine whether the Department of Justice contends that the measures allegedly required by Title II of the ADA must be provided even if contrary to an individual student's IEP as required under the IDEA, opposed by an individual student's parent, or temporarily traumatic for an individual student.

(g) Discovery will be needed regarding communications between the Department and advocacy groups, including but not limited to the Atlanta Legal Aid Society, the American Civil Liberties Union of Georgia, ARC of Georgia, Autistic Self Advocacy Network, the Attachment and Trauma Network, Autism Society of Georgia, Barton Child Law & Policy Center at Emory University, the Bazelon Center for Mental Health Law, the Carter Center, CETPA, Inc., Consortium of Education Civil Rights Attorneys, disability Link, Division of Behavioral Health in the Satcher Health

Leadership Institute at Morehouse School of Medicine, Georgia Advocacy Office, Inc., Georgia Council on Developmental Disabilities, Georgia Parent School Network, Gwinnett Parent Coalition to Dismantle the School to Prison Pipeline, Mental Health America of Georgia, Parent to Parent of Georgia, People First of Georgia and Southern Center for Human Rights.

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:**

The Parties anticipate that they will need four additional months to complete discovery and that discovery will need to be conducted in phases as described above due to the use of multiple experts, the greater than normal volume of evidence, the unusually complex discovery of electronically stored information, and the complexity of scheduling in this case.

**11. Discovery Limitation and Discovery of Electronically Stored Information:**

**(a) What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?**

The parties expect to negotiate within the next 30 days, and intend to submit to the Court, a proposed protective order governing the transfer, maintenance, and use of confidential information, including student records and the personally identifiable information and personal health information contained therein, and steps to ensure the parties' and third-parties' compliance with federal and state regulations regarding such records.

**(b) Is any party seeking discovery of electronically stored information?**

 X  Yes    ___ No

**(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:**

The parties expect to negotiate within the next 30 days a stipulation and order covering, *inter alia*, the categories of documents, things, and Electronically Stored Information for which preservation is required, the format in which these items will be produced in discovery, the manner in which the parties will assert claims of privilege, and procedures for resolving discovery disputes and inadvertent productions of privileged or protected information.

23

**(2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:**

The parties expect to reach agreement within the next 30 days on the format for the production of Electronically Stored Information, the method of production, and the inclusion or exclusion and use of metadata.

In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

## 12. Other Orders:

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?**

As noted above in response to Question 11(a), the parties expect to negotiate within the next 30 days, and intend to submit to the Court, a proposed protective order governing the transfer, maintenance, and use of confidential information, including student records and the personally identifiable information and personal health information contained therein, and steps to

ensure the parties' and third-parties' compliance with federal and state

regulations regarding such records.

## 13. Settlement Potential:

**(a) Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on June 18, 2020, and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.**

For plaintiff: Lead counsel (signature) /s/ Andrea E. Hamilton, /s/ Victoria M. Lill

Other participants: Renee Wohlenhaus, Laura C. Tayloe, Michelle L. Tucker,

Aileen Bell Hughes

For defendant: Lead counsel (signature)  /s/ Alexa R. Ross

Other participants: Josh Belinfante, Joseph Saul

**(b) All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:**

(___) A possibility of settlement before discovery.

(X) A possibility of settlement after discovery.

(___) A possibility of settlement, but a conference with the judge is needed.

(___) No possibility of settlement.

**(c) Counsel (__) do or (X) do not intend to hold additional settlement conferences among themselves prior to the close of discovery.**

The proposed date of the next settlement conference is _____, 20__.

**(d) The following specific problems have created a hindrance to settlement of this case.**

**14. Trial by Magistrate Judge:**

**Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.**

**(a) The parties (__) do consent to having this case tried before a magistrate judge of this Court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this __ day _____ of 20__.**

**(b) The parties (X) do not consent to having this case tried before a magistrate judge of this Court.**

**Respectfully submitted,**

**On Behalf of Plaintiff:**

Eric S. Dreiband
Assistant Attorney General

Gregory B. Friel
Deputy Assistant Attorney General

Shaheena A. Simons
Chief
Educational Opportunities Section

Renee M. Wohlenhaus
Deputy Chief
Educational Opportunities Section

**On Behalf of Defendant:**

Christopher M. Carr
Attorney General
State of Georgia
Georgia Bar No. 112505

Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 7760280

State Law Department
40 Capitol Square, S.W.
Atlanta, Georgia 30334
Telephone: (404) 656-3357

Facsimile: (404) 463-1062

Andrea E. Hamilton
Victoria M. Lill
Laura C. Tayloe
Michelle L. Tucker
Trial Attorneys, Civil Rights Division

Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com

/s/ Andrea E. Hamilton
Andrea E. Hamilton
NC Bar Number: 42878
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202)514-4092
andrea.hamilton@usdoj.gov

/s/ Alexa R. Ross
Alexa R. Ross
Georgia Bar No. 614986
aross@robbinsfirm.com

Special Assistant Attorneys General
Robbins Ross Alloy Belinfante
Littlefield LLC
500 14th Street, NW
Atlanta, GA 30318
Telephone: (678) 701-9381

Byung J. Pak
United States Attorney
Northern District of Georgia

/s/ Aileen Bell Hughes
Aileen Bell Hughes
GA Bar Number: 375505
Assistant United States Attorney
United States Department of Justice
Richard B. Russell Federal Building
75 Ted Turner Dr. SW
Suite 600
Atlanta, GA 30303-3309
(404) 581.6000
aileen.bell.hughes@usdoj.gov

## SCHEDULING ORDER

Upon review of the information contained in the Amended Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:


IT IS SO ORDERED, this ___ day of _____, 20__.

## **<u>L.R. 7.1(D) CERTIFICATION</u>**

I certify that the Amended Joint Preliminary Report and Discovery Plan
have been prepared with one of the font and point selections approved by the Court
in Local Rule 5.1(C). Specifically, this brief has been prepared using 14-pt Times
New Roman Font.

This 18th day of June, 2020.

*<u>/s/ Aileen Bell Hughes</u>*
AILEEN BELL HUGHES
ASSISTANT U.S. ATTORNEY

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed the foregoing Amended Joint Preliminary Report and Discovery Plan with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing.

This 18th day of June, 2020.

*/s/ Aileen Bell Hughes*
AILEEN BELL HUGHES
ASSISTANT U.S. ATTORNEY