# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16-cv-03088- |
| | ) | ELR |
| STATE OF GEORGIA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# PROPOSED JOINT STIPULATION AND ORDER
# REGARDING DISCOVERY

Plaintiff United States of America ("United States") and Defendant State of Georgia (collectively, the "Parties") mutually seek to reduce the time, expense, and other burdens of discovery of documents, tangible things, and electronically-stored information ("ESI"). Therefore, the Parties are entering into this Stipulation, and the Court enters this Order, to govern the Parties' preservation and production obligations in this action. This Stipulation and Order will not affect the Parties' obligations to preserve and produce documents, tangible things, and ESI in any other action.

The Parties stipulate as follows:

1) **<u>Definitions.</u>**

    a.) <u>Backup System</u> means backup tapes, continuity of operations systems, data or system mirrors or shadows, and other systems that are: (i) used for the purpose of system recovery or information restoration; and (ii) routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established, documented, and routine system maintenance policy.

    b.) <u>Counsel</u> means counsel of record in the above-captioned case, including attorneys, supervisors, and legal staff, including contractors, for the United States Department of Justice and attorneys, supervisors, and legal staff for the State of Georgia.

    c.) <u>Document</u> means any written or otherwise recorded graphic matter of any type and any electronically stored information as defined in Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 34(a), including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records, or data compilations, regardless of the form in which they exist or the medium in which they are stored.

d.) <u>Draft Document</u> means a preliminary version of a document that has been shared by the author with another person (by email, print, or otherwise) or one that the author no longer intends to finalize or to share with another person.

e.) <u>Document Family</u> means a group of related documents, including paper documents that were grouped together or physically attached by clips, staples, binding, folder, etc., emails with attachments, archive files such as zip, and files with embedded documents.

f.) <u>Load File</u> means a file in Concordance .DAT file format with standard delimiters that contains all metadata fields required for each production.

g.) <u>Party</u> means Plaintiff United States or Defendant State of Georgia.

h.) <u>Web Page</u> means any internet and intranet pages including, but not limited to, pages on social media and social networking sites, blogs, or other sites, to which a Party has posted relevant information.

**2)  <u>Obligations to Preserve Documents, Tangible Things, and ESI.</u>**

a.) In accordance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence ("FRE"), and the relevant controlling principles of law, the Parties agree to preserve all potentially relevant documents,

tangible things, and ESI, whether created before or after the Effective

Date of this Stipulation and Order, unless specifically exempted from

discovery by this Stipulation and Order.

b.) The Parties agree that by preserving documents, tangible things, and

ESI for the purpose of this litigation, they are not conceding that such

material is discoverable, nor are they waiving any claim of privilege.

Except as otherwise provided in Paragraph 3, nothing in this

Stipulation and Order shall alter the responsibilities or obligations of

the Parties to provide a privilege log for material withheld under a

claim of privilege.

**3) <u>Preservation Not Required for Certain Documents, Tangible Things, and ESI.</u>**

a.) <u>ESI.</u>  The Parties agree that they need not preserve, continue to

preserve, or produce or create a privilege log for the following

categories of ESI:

i. Voicemail messages on Counsel's voicemail system prior to

August 23, 2016;

ii. Temporary or cache files, including internet history, web browser

cache and cookie files, wherever located;

iii.  Server, system, or network logs;

iv.  Data from photocopiers, printers, or fax machines;

v.  Auto-saved copies of electronic documents;

vi.  Delivery or read receipts of email; and

vii.  Logs of calls made to or from mobile devices.

b.) <u>Duplicate copies of ESI</u>.  When duplicate copies of relevant ESI exist in more than one location, no Party is required to preserve:

i.  ESI on mobile or portable devices (e.g., Blackberry Handheld, smart phones, thumb drives, CDs, DVDs, etc.), including documents, electronic messages (e.g., email, Text/SMS, "pin to pin," etc.), calendar entries, contact data, or notes, *provided that* duplicate copies of the ESI are preserved in another reasonably accessible location; and

ii.  ESI on Backup Systems *provided that* duplicate copies of the ESI have been preserved in another reasonably accessible location.  If relevant ESI exists *only* on a Party's Backup System, the Party will preserve ESI on the Backup System until the Parties can agree on how and when the ESI will be preserved or produced.  If

the Parties cannot reach agreement, they will seek a ruling from the Court.

c.) <u>Documents Created by, and Exchanged Solely Between and Among, Counsel for the Respective Parties</u>.  The Parties agree not to preserve, produce, or create a privilege log for any documents, including Draft Documents, tangible things, or ESI that were: (i) created by, and exchanged solely among, Counsel for the United States and (ii) created by, and exchanged solely among, Counsel for the State of Georgia.

d.) <u>Trial-Preparation Protection for Communication Between Counsel and Expert Witness</u>.  Communication between Counsel and any witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) shall be protected from disclosure and shall not be preserved or produced in discovery regardless of the form of the communication, nor shall a privilege log be produced or created for such communications, except to the extent that the communications are discoverable pursuant to Fed. R. Civ. P. 26(b)(4)(C).  Communication between Counsel and any witness employed solely for trial preparation purposes under Fed. R. Civ. P. 26(b)(4)(D) shall be

protected from disclosure and shall not be preserved or produced in discovery regardless of the form of the communication, nor shall a privilege log be produced or created for such communication.

e.) <u>No Discovery of Material Not Required to be Preserved</u>.  The Parties agree not to seek discovery of documents, tangible things, and ESI that they have agreed not to preserve pursuant to Paragraph 3.  If any discovery request is susceptible of a construction which calls for the production of documents, tangible things, or ESI covered by Paragraph 3, the responding Party is not required to preserve, produce, or create a privilege log for such information.

f.) <u>Other Preservation Obligations Not Affected</u>.  Nothing in this Stipulation and Order shall affect any other obligations of the Parties to preserve documents, tangible things, and ESI for other purposes, such as pursuant to court order, administrative order, statute, regulation, existing retention policies, or in response to other anticipated litigation.

4) **<u>Identification and Production of Documents, Tangible Things, and ESI.</u>**

a.) <u>Use of Search Criteria and Designation of Custodians to Identify ESI</u>. The Parties agree to meet and confer within 30 days of the

commencement of discovery to discuss whether search criteria or

analytic tools (e.g., technology assisted reviews with word search)

should be used or custodians should be designated to identify

responsive ESI.

b.) <u>Production Specifications</u>.  The Parties agree to produce documents,

tangible things, and ESI in the manner required by Fed. R. Civ. P.

34(E)(i)-(iii).  In addition, unless the Parties agree or the Court orders

otherwise, the Parties will make production as follows:

    i.  <u>Spreadsheets and Presentations</u>.  Spreadsheets (e.g., Excel or

Quattropro) and presentations (e.g., Powerpoint) will be

produced in native format with extracted text.  Spreadsheets and

presentations should not be imaged, but a placeholder image

must be included to represent the spreadsheet or presentation.

Native files will be saved in a directory named NATIVE.

    ii.  <u>Databases and Proprietary Files</u>.  The Parties will meet and

confer, upon request, regarding the production of databases and

any proprietary file formats (non-Microsoft or Corel Suite-

compatible files) with the goal of cooperating to enable each side

to understand how to extract the relevant information from the database in an efficient and cost-effective manner.

iii.   <u>Black & White or Color Images</u>.  Documents and ESI, including emails, that can be accurately represented in black and white will be scanned or converted to single page Tagged Image File Format ("TIFF" or ".tiff format") files, using CCITT Group IV compression.  All such images will be converted at 300 d.p.i. and reflect, without visual degradation, the full and complete information contained on the original document.  Photographs, color brochures, and other documents and ESI that cannot be accurately represented in black and white or that are primarily in color will be converted to JPEG files at 300 d.p.i. upon request. The Parties will honor reasonable requests for either the production of the original document for inspection and copying or production of any color image of the document, tangible thing, or ESI.  All images will be saved in a directory named IMAGES.

iv.   <u>Web Pages</u>.  Web Pages will be produced in a manner that best represents the contents of the page (e.g., pdf files) and that contains the date of the page.  The Parties will meet and confer,

upon request, regarding the production of Web Pages prior to production.

v. <u>Video and Audio</u>. The Parties agree to produce video and audio files in their native format, provided that the native format is a standard format (e.g., .mpg, .mov, .mp4, .wav, .wmv, .wma). Video and audio files should not be imaged but a placeholder image must be included to represent the file. In the event that the Parties use a proprietary or nonstandard format, the Parties agree to meet and confer to enable each Party to review the video or audio files in a readily accessible format.

vi. <u>Paper Documents</u>. Responsive hardcopy documents will be scanned and converted to single-page TIFF or .tiff format files, using CCITT Group IV compression. All images will be scanned at 300 d.p.i. and reflect, without visual degradation, the full and complete information contained on the original document. All color documents (e.g., photographs, color brochures, or other documents that cannot be accurately represented in black and white or documents that are primarily in color) will be scanned or converted to JPEG files at 300 d.p.i. upon request. The Parties

will honor reasonable requests for either the production of the
original document for inspection and copying or production of
any color image of the document.

vii. <u>Documents Containing Fixed Notes</u>.  For documents with pages
that contain fixed notes (e.g., post-it notes), each page with such
note will be scanned in its entirety both with and without the
notes and shall be numbered sequentially and identified as a
single document.

viii. <u>Related Documents</u>.  Document Families (e.g., emails with
attachments, archive files such as zip, files with embedded
documents, cover letters with enclosures, documents in a binder
or folder) shall be produced so that each part is a separate
document.  Each document (parent and child) will have the same
attachment range (as specified in the Attachment Range field of
Attachment A) as a way of identifying the group.

ix. <u>Deduplication</u>. Deduplication will be used to remove exact
duplicate documents within each custodian's respective
collection.  The Parties agree to use MD5 hash values for
deduplication and calculate those values for all ESI at the time of

collection or processing.  Deduplication must be by Document Family, not by individual document.

x. <u>Other Files</u>.  Other electronic documents not specifically discussed above will be produced as single page TIFF or .tiff format files, using CCITT Group IV compression with related text files.  If the documents in their original form cannot be converted to TIFF as described above, the Parties will meet and confer promptly concerning the form of such production.

xi. <u>Metadata</u>.  Where the metadata described in Attachment A exists, and is associated with produced documents and ESI, it will be provided with the associated documents and ESI in the format described in Attachment A.  The Parties will produce a "Load File" containing the fields specified in Attachment A.  The Load File will be provided in a directory named DATA in a Concordance .DAT file format with standard delimiters.  Parties agree not to include Optical Character Recognition ("OCR")/extracted text in .DAT files.

xii. <u>Redaction</u>.  In the event that a Party needs to redact a portion of a document, that document will be produced with the redacted

portion clearly defined and burned into the image. The metadata associated with the unredacted native file should be produced (unless privilege is specifically asserted regarding a particular metadata field). Should a Party need to redact a portion of a spreadsheet, presentation, or other native format file, the Parties will meet and confer regarding production of the redacted document. The full unredacted document must be preserved.

xiii. <u>Image Cross Reference File</u>. The Parties will produce an "image cross reference file" in Concordance Opticon .log format, to accompany any produced images. The image cross reference file will provide the Bates Numbers, relative path to images, and document break indicators. The image cross reference file will be provided in a directory named DATA.

xiv. <u>Corresponding Text Files</u>. For electronic documents that exist as native files and do not require redaction, the Parties will produce extracted text files reflecting the full text that was electronically extracted from the native file, regardless of whether the document is being produced in native form. For all scanned hard-copy documents, electronic documents that exist as native

files for which native text is not available (e.g., graphic files and some PDFs), the Parties will produce corresponding OCR text files, regardless of whether the document is being produced in native form.  The OCR and extracted text files will be produced in ASCII text format and will be labeled and produced on Production Media in accordance with the provisions of Paragraph 4(b)(xvi) below.  These text files will be named with the unique Bates Number of the first page of the corresponding document followed by the extension ".txt."  The OCR and extracted text files will be produced in a manner suitable for importing the information into Relativity.  OCR and extracted text files will be saved in a directory named TEXT.  All documents should have an accompanying text file even if zero size.

xv. <u>Bates Numbering</u>.  The Parties agree to produce all documents with a legible, unique page identifier ("Bates Number") electronically "burned" onto each page in the lower right hand corner or at a location that does not obliterate, conceal, or interfere with any information from the source document.  The Bates Number convention will be in the format "X########"

where "X" represents the short character abbreviation for the

producing Party and "########" represents the eight-digit

sequential number of the page being produced by that Party.

Documents produced by the Parties will be abbreviated as

follows: United States = US; State of Georgia = GA.  For

example, the first Bates labeled document produced by the

United States should be labeled "US00000001."  Images will be

named as [Bates Number].tiff or [Bates Number].jpg or [Bates

Number].pdf.  Native files will be named with the proper

Windows extension ([Bates Number].ext).  Each document will

be named for the first Bates Number of the document.  The

Parties will sequentially Bates Number each document in a

Document Family.

xvi. <u>Production</u>.  The Parties agree to produce documents and ESI in

accordance with the terms of this stipulation through the U.S.

Department of Justice, Justice Enterprise File Sharing ("JEFS")

System.  Plaintiff will provide Defendant with a JEFS external

user agreement and once the external user agreement has been

completed, the Parties will have access to the JEFS electronic

platform to upload any document productions.  When loading

document productions, the parties will make every effort to zip

the files being produced to facilitate transfer via JEFS.  Upon

uploading a production to JEFS, the Parties agree to provide: (1)

case name, (2) producing Party's name, and (3) production date.

In addition, the Parties will send in an accompanying letter the

type of materials (e.g., documents), and the Bates Number

range(s) of the materials.

xvii.  Encryption.  Each Party shall have the obligation to remove

encryption or password protection for all ESI produced.

Alternatively, the Parties will provide passwords and assistance

needed to open encrypted files.  If software is required to open

encrypted files, the Party producing the encrypted files must

provide the software.

**5) Privileged Documents, Tangible Things, and ESI.**

a.) Assertion of Privilege/Protection.  The Parties agree that for each

document, tangible thing, or ESI withheld based on an asserted claim

of privilege or protection, the Party asserting the privilege or

protection must produce a privilege or protection log pursuant to Fed.

R. Civ. P. 26(b)(5)(a), except as provided in Paragraph 3. The privilege or protection log must contain: (i) subject or re line, title, or other descriptor; (ii) type (e.g., document, tangible thing, or ESI); (iii) names of all attachments; (iv) date created, sent, or received; (v) authors, recipients, and copyees (cc and bcc); and (vi) privilege(s) or protection(s) claimed and their basis, with sufficient information to establish the elements of each asserted privilege. An embedded email should be separately identified and logged. Email attachments should be identified as attachments and separately identified and logged.

b.) If providing any of the information enumerated in Paragraph 5(a) would result in a Party disclosing information that is itself privileged or protected, that Party shall assert a claim of privilege or protection over the information on the Party's privilege log. The other Party shall have the opportunity to request further information regarding the assertion of the claim of privilege or protection.

c.) Except as otherwise provided in Paragraph 3, nothing in this Stipulation and Order will alter the responsibilities or obligations of the Parties to create or produce a privilege log for material withheld under a claim of privilege or protection.

**6)  <u>Inadvertent Disclosure of Privileged or Protected Information.</u>**

a.) The Parties agree that a disclosure of information contained within documents, things, and ESI that is protected by attorney-client privilege, work product protection, and/or applicable governmental privileges (such as deliberative process) does not operate as a subject matter waiver in this case if: 1) the disclosure is inadvertent; 2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and 3) the holder promptly took reasonable steps to rectify the error.

b.) If the producing Party inadvertently discloses information that it asserts is privileged or protected, it will notify the receiving party within 14 days of discovery of disclosure and provide the production date and the Bates number(s) or Document ID (for native files) of all material that it believes contains the inadvertently disclosed information.

c.) If a production contains information that the receiving Party believes is privileged or protected and was inadvertently produced, it will promptly notify the producing Party and provide the Bates number(s) or Document ID (for native files) of the item it believes was

inadvertently produced.  Within 14 days after receiving notification, the producing Party may make a written request for return of the material.  If the producing Party does not send a written request for return of the material to the receiving Party within 14 days, the producing Party waives all claims of privilege or protection as to the material, but this still does not operate as a subject matter waiver.

d.)  When the receiving Party receives a written demand for return of the material, it will make reasonable, good faith efforts to promptly sequester, return, or destroy all inadvertently produced material identified by the producing party.  If copies of inadvertently produced materials are located or stored on the receiving Party's Backup System(s), those copies need not be affirmatively removed but, rather, the receiving Party may overwrite those copies according to its normal records management procedures.

e.)  If the receiving Party must destroy or delete production files in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate copy of the production files minus only the inadvertently produced material within 14 days of its written request for return of the material to the receiving Party.

f.) If the receiving Party intends to challenge the claim of privilege or protection or the inadvertence of the production, it will keep one copy of the inadvertently produced material in a sealed envelope or a sequestered location while seeking a ruling from the Court. Nothing in this Stipulation prevents access by a receiving Party's information technology or security personnel from accessing, in the normal course of their work, systems or locations where inadvertently produced material is sequestered.

7) **Duty to Supplement.** A Party must supplement its production pursuant to Fed. R. Civ. P, 26(e) in a timely manner if the Party learns that any disclosure was materially incorrect or incomplete.

8) **Costs of Document Production.** Each Party will bear the costs of producing its own documents, tangible things, and ESI.

9) **Requirement to Confer.** Before filing any motion regarding the terms of this Stipulation and Order, compliance with this Stipulation and Order, or other discovery matter, the Parties will confer in a good faith attempt to resolve such disputes.

10) **Reservation of Right to Contest Production.** Nothing in this Stipulation and Order should be interpreted as a waiver of any Party's right to object to

the production of material for any reason allowed under the Federal Rules of Civil Procedure or applicable law.

11) **Sanctions.**  Each Party agrees not to seek sanctions pursuant to the Federal Rules of Civil Procedure, the contempt powers of the Court, or any other authority, against another Party for the failure to preserve documents, tangible things, or ESI that are not required to be maintained pursuant to Paragraph 3.

12) **Sample Production.** The Parties will exchange a sample production of documents/ESI formatted to be consistent with this Stipulation and Order. The sample production shall contain a minimum of 10 documents, to include a combination of scanned paper files and ESI, and shall include at least one spreadsheet and one email.  The production need not be relevant to this case, as it is intended only to test the adequacy of the specifications in this Stipulation and Order and the compatibility of the Parties' systems. If any Party reports problems with the sample productions, the Parties shall confer regarding the terms of this Stipulation and Order.

13) **Miscellaneous.**

a.) This Stipulation and Order may be executed in counterparts.

b.) The Effective Date of this Stipulation and Order shall be the date on which the Stipulation is executed by all the Parties and submitted for approval by the Court.

c.) This Stipulation and Order may not be enlarged, modified, or altered except in a writing signed by the Parties and entered as an Order by the Court.

d.) None of the meet and confer provisions of this Stipulation and Order shall be construed to extend the time within which a Party must respond to a discovery request; rather, such time frames shall be governed by the Federal Rules of Civil Procedure.

e.) The terms of this Stipulation and Order are not exhaustive.  Each Party reserves the right to subsequently request to meet and confer to address any matters not addressed herein.

Agreed to by Counsel for the Parties:

**On Behalf of Plaintiff:**

Shaheena A. Simons
Chief
Educational Opportunities Section

**On Behalf of Defendant:**

Christopher M. Carr
Attorney General
State of Georgia
Georgia Bar No. 112505

Renee M. Wohlenhaus
Deputy Chief
Educational Opportunities Section

Andrea E. Hamilton
Victoria M. Lill
Laura C. Tayloe
Michelle L. Tucker
Trial Attorneys, Civil Rights Division

*/s/ Andrea E. Hamilton*
Andrea E. Hamilton
NC Bar Number: 42878
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202)514-4092
andrea.hamilton@usdoj.gov

Byung J. "BJAY" Pak
United States Attorney
Northern District of Georgia

*s/ Aileen Bell Hughes*
Aileen Bell Hughes
GA Bar Number: 375505
Assistant United States Attorney
United States Department of Justice
Richard B. Russell Federal Building
75 Ted Turner Dr. SW
Suite 600
Atlanta, GA 30303-3309
(404) 581.6000
aileen.bell.hughes@usdoj.gov

Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 7760280

State Law Department
40 Capitol Square, S.W.
Atlanta, Georgia 30334
Telephone: (404) 656-3357
Facsimile: (404) 463-1062

Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com

*/s/ Alexa R. Ross*
*(w/express permission Aileen Bell Hughes)*
Alexa R. Ross
Georgia Bar No. 614986
aross@robbinsfirm.com

Special Assistant Attorneys General
Robbins Ross Alloy Belinfante
Littlefield LLC
500 14th Street, NW
Atlanta, GA 30318
Telephone: (678) 701-9381

## **L.R. 7.1(D) CERTIFICATION**

I certify that the Proposed Joint Stipulation and Order Regarding Discovery has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this brief has been prepared using 14-pt Times New Roman Font.

This 6th day of August, 2020.


*/s/ Aileen Bell Hughes*
AILEEN BELL HUGHES
ASSISTANT U.S. ATTORNEY

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed the foregoing Proposed Joint Stipulation and Order Regarding Discovery with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing.

This 6th day of August, 2020.


*/s/ Aileen Bell Hughes*
AILEEN BELL HUGHES
ASSISTANT U.S. ATTORNEY

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16-cv-03088- |
| | ) | ELR |
| STATE OF GEORGIA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## STIPULATED ORDER REGARDING DISCOVERY

Having read and considered the Parties' **JOINT STIPULATION REGARDING DISCOVERY** and for good cause shown, it is hereby ORDERED that the Parties' Joint Stipulation Regarding Discovery be approved.

So ordered this _____ day of _____, 2020.


_____
ELEANOR L. ROSS
UNITED STATES DISTRICT JUDGE