IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATE OF GEORGIA, )<br>)<br>Defendant. )<br>) | CIVIL ACTION FILE<br>NO. 1:16-cv-03088-ELR |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant State of Georgia (the "State") submits this Brief in Support of Its Motion for Judgment on the Pleadings.

## INTRODUCTION

The State would not normally move for a judgment on the pleadings so soon after a court order denying a motion to dismiss (the "Order"). [Doc. 47]. New binding precedent, however, necessitates additional judicial review. Just before this Court entered the Order, the Eleventh Circuit issued its decision in Jacobson v. Florida Secretary of State, 957 F.3d 1193 (11th Cir. 2020). There, the court explained the role of redressability in federal cases when the alleged wrongful act is implemented by third parties who are not

parties to the litigation.  957 F.3d at 1207-12.  The majority held that standing requires the alleged injury to be traceable to the sued actor, not others who act "independently."  957 F.3d at 1207.  Applied here, the State cannot redress independent acts of the non-party Local Education Agencies ("LEAs") and Regional Educational Service Agencies ("RESAs").[1]  Consequently, Plaintiffs cannot obtain their requested relief which alleges violations of the Americans with Disabilities Act ("ADA").

## I.      FACTS

For purposes of this Motion, only a few facts are necessary for this Court's consideration.  As described by this Court, the Justice Department alleges that the State "discriminates against thousands of public school students with behavior-related disabilities 'by unnecessarily segregating them, or by placing them at serious risk of such segregation, in a separate and unequal program'" known as GNETS.  [Doc. 61 at 1-2].  This Court further described the Justice Department as claiming that "such isolation and segregation violates the ADA[]."  Id. at 2.  In other words, the act of discrimination—and subsequent violation of the ADA—occurs when students are "segregated" into the GNETS program.  The problem for the Justice

---

[1] Unless otherwise noted, this Brief refers to LEAs and RESAs collectively as "LEAs."

Department, however, is that the State does not make any decision that leads to a student receiving GNETS services, nor can the State prevent a student who has been recommended to receive GNETS services from receiving them.

Based on the State's Motion to Dismiss, [Doc. 9], this Court considered whether the State "administers" the GNETS program for purposes of the ADA, which attaches liability only when state actors administer services. [Doc. 61 at 8-14 (citing 28 C.F.R. § 35.130(d))]. The Court concluded, for purposes of a motion to dismiss, that the Justice Department had alleged sufficient facts to claim that the State "administers" the GNETS program by disbursing GNETS funds, monitoring LEAs' and RESAs' compliance with fund requirements and federal and state "policies, procedures [and] rules," and establishing "'classification criteria'" for students to receive GNETS services. [Doc. 61 at 10-11]. Importantly, however, the Justice Department has not alleged that the classification criteria themselves violate the ADA. Rather, the claim is that students are unlawfully segregated when the decision is made to provide them with certain kinds of GNETS services. Id. at 2.

## II.   STANDARD OF REVIEW

A motion for judgment on the pleadings is authorized by Federal Rules of Civil Procedure 12(c). The motion should be granted if there are "no

material facts in dispute, and [upon consideration of] the substance of the pleadings and any judicially noticed facts." Hawthorne v. Mac Adjustment, *Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998) (citation omitted).  As with a motion to dismiss, all facts in the complaint are accepted as true and viewed in the light most favorable to the Plaintiff.  Id.

### III.   ARGUMENT AND CITATION TO AUTHORITY

After Jacobson, and in addition to the reasons currently being considered by the Eleventh Circuit, the Justice Department lacks standing to bring an ADA claim against the State.  "Article III standing requires that the plaintiff's injury be 'fairly traceable' to the defendant's actions and redressable by relief against *that* defendant."  Jacobson, 957 F.3d at 1210 (emphasis in original).  On April 29 of this year, just weeks before this Court issued the Order, the Eleventh Circuit released its opinion in Jacobson.  957 F.3d at 1193.

In Jacobson, the appellate court reversed a preliminary injunction and declaratory judgment issued against the Secretary of State of Florida on the grounds that the plaintiffs lacked standing.  See generally, id.  Specifically, the plaintiffs sued to enjoin, and have declared unconstitutional, a Florida statute that required candidates of the party that won the last gubernatorial election to appear first on the ballot.  Id. at 1198-99.  All judges on the panel

4

agreed that the plaintiffs lacked a cognizable injury in fact, and a majority of the panel also held that the plaintiffs' claims were redressable only by an order against non-party local election officials and not the Florida Secretary of State. This created a problem for the plaintiffs who, like the Justice Department here, sued only a state official and none of the county election (or local education) officials who implemented the state statute. The redressability analysis is controlling and it forecloses the Justice Department's claims in this lawsuit.

In Jacobson, the court recognized that the plaintiffs' alleged injury—the order of placement of candidates' names on Florida ballots—is traceable to county election officials and not the Secretary of State. 957 F.3d at 1207. In Florida, county election officials are constitutional officers elected at the county level; their statutes are distinct from those governing the Secretary; local boards of commissioners compensate the county election officials, and the Secretary had no power to remove county election officials. Id. And, it was county election officials that were tasked, "independently of the Secretary, with printing the names of candidates on the ballots in the order prescribed by the ballot statute." Id.

Given these state laws, the court recognized that an injunction against the Secretary would not redress the plaintiffs' alleged harms, because neither

5

the Secretary nor her agents printed the ballots.  Id. at 1208.  A declaratory judgment was equally ineffectual, because the county election officials were nonparties and not subject to the order.  Id.  The court found it immaterial that the Secretary could provide "written guidance to the supervisors" informing them of the declaratory injunction.  Id.  The reason for this conclusion is obvious: "'Redressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power.'"  Id. at 1209 (emphasis in original) (citing Franklin v. Massachusetts, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in the judgment)).

   The Jacobson majority concluded that the Secretary's authority to prescribe rules about ballot layout and provide direction to county officials did not establish redressability either.  "That the Secretary has the power to prescribe rules and issue directives about ballot order, which the [county] Supervisors might well be obliged to follow, says nothing about whether she 'possess[es] authority to *enforce* the complained-of provision as the causation element of standing requires."  *Id.* at 1211 (emphasis in original).  Finally, the majority held that requiring the promulgation of a rule would raise

"serious federalism concerns, and it is doubtful that a federal court would have the authority to order it." Id. at 1212.

The Jacobson analysis precludes the Justice Department from showing redressability against the State. Paragraph 26 of the Complaint makes clear that local school districts "send" students to receive services through GNETS. [Doc. 1 ¶ 26]. This Court recognized the centrality of local education officials' decision in the Order: "on the one hand, local governmental authorities run individual GNETS schools and place students in GNETS. On the other hand, the State funds GNETS and develops rules and procedures." [Doc. 61 at 12 (citing Georgia Advocacy Office v. Georgia, No. 1:17-cv-03999, 2020 WL 1650434 at *4 (N.D. GA, March 19, 2020)) (emphasis added)]. Thus, this situation is much like that in Jacobson: the decision that causes the alleged injury is not redressable by relief against the State.

Indeed, LEAs are like the county election officials in Jacobson; both are created by state constitutions. Ga. Const. art. VIII, § 5, ¶ II; 957 F.3d at 1207. Both operate largely independently of control at the State level. Neither can be removed from office for the allegations brought in the two lawsuits. The State Board cannot prevent LEAs from recommending students for GNETS services anymore than the Florida Secretary of State could require local election officials to print ballots in a different order.

After Jacobson, the State Board's rulemaking authority is also insufficient to confer standing for at least three reasons. First, the Jacobson court found rulemaking an insufficient basis to establish standing. 957 F.3d at 1208. Second, judicial relief is limited to preventing the State from acting in a certain manner; it cannot compel the State to promulgate a rule or regulation to address Plaintiff's policy preferences. *Id.* at 1212. Third, the Justice Department does not seek to have the GNETS rules (which have been updated since the filing of this lawsuit) declared in violation of the ADA. [Doc. 1, ad damnum clause]. For these reasons, Jacobson precludes the Justice Department from satisfying the constitutional mandate of standing.

## IV. Conclusion

The State does not file this Motion lightly. Recent developments in the law warrant additional judicial review. For these reasons, the State Defendant requests that this Court dismiss the Complaint due to lack of standing.

This 7th day of August, 2020.

8

/s/ *Alexa R. Ross*
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Alexa R. Ross
Georgia Bar No. 614986
aross@robbinsfirm.com
Joseph H. Saul
Georgia Bar No. 432592
jsaul@robbinsfirm.com
Melanie Johnson
Georgia Bar No. 466756
mjohnson@robbinsfirm.com

Special Assistant Attorney General

Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street NW
Atlanta, GA 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3250

*Attorneys for Defendants*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Brief has been prepared using 13-pt Century Schoolbox Font.

*/s/ Alexa R. Ross*
Alexa R. Ross
Georgia Bar No. 614986

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing **DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing.

This 7th day of August, 2020.

*/s/ Alexa R. Ross*
Alexa R. Ross
