# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16-cv-03088- |
| | ) | ELR |
| STATE OF GEORGIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Having unsuccessfully petitioned this Court twice to dismiss the claims against it brought by Plaintiff United States of America ("United States") and to stay these proceedings, Defendant State of Georgia ("State") now seeks to relitigate the denial of its Renewed Motion to Dismiss, or in the Alternative, for Stay of Proceedings ("Renewed Motion to Dismiss") through a Motion for Judgment on the Pleadings ("Motion").  This Court has already ruled that the United States' Complaint adequately alleges Defendant's control over the Georgia Network for Educational and Therapeutic Support ("GNETS") Program and that the United States has standing to assert its claims.  Order

denying Renewed Motion to Dismiss [ECF 061], 2020 WL 3496783 (N.D. Ga. May 13, 2020) ("Order"), at 8, 12, 23.  There have been no material changes in the procedural posture or facts of this case in the three months since the Court issued that ruling, yet Defendant insists that this Court must now reach a different conclusion solely on the basis of a decision issued by the Eleventh Circuit weeks *before* the ruling.  The decision cited by Defendant does not support, much less compel, different conclusions than the ones reached earlier by this Court regarding the United States' standing and the adequacy of the facts alleged in support of its claims.  Accordingly, Defendant's Motion serves only to further delay proceedings in this four-year-old case.  The Motion should be denied.

## **BACKGROUND**

On August 23, 2016, the United States brought suit against Defendant, alleging that Defendant's GNETS Program violates Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134 (1990), by unnecessarily segregating students with disabilities and providing them with educational opportunities that are not equal to those provided to their non-disabled peers.  *See* Complaint [ECF 001].  Defendant moved to dismiss the Complaint or, in the alternative, to stay proceedings on November 1, 2016.  [ECF 009]  On December

2

9, 2016, the United States filed its Opposition to Georgia's Motion to Dismiss or for a Stay of Proceedings.  [ECF 016]  Defendant filed a Reply in Support of Motion to Dismiss, or in the Alternative for Stay of Proceedings on December 23, 2016.  [ECF 017]

On May 4, 2017, this Court issued an order directing Defendant to brief whether the State is a proper party defendant and whether injunctive relief can be obtained against the State in this matter.  [ECF 030]  Defendant filed its Supplemental Brief in Support of its Motion to Dismiss on May 15, 2017.  [ECF 035]  The United States filed a Response to Defendant's Supplemental Brief on May 19, 2017 [ECF 037], and Defendant's Supplemental Reply Brief followed on May 24, 2017 [ECF 038].

On August 11, 2017, the Court stayed this litigation pending the Eleventh Circuit's resolution of the question whether the Attorney General for the United States has standing to pursue claims under Title II of the ADA.  [ECF 040]  On September 17, 2019, the Eleventh Circuit panel rejected Florida's standing arguments and ruled that the Attorney General has standing to sue to enforce Title II of the ADA.  *United States v. Florida*, 938 F.3d 1221 (11th Cir. 2019).  In light of this holding, this Court lifted its stay on October 16, 2019, and directed

Defendant either to file a motion to dismiss "on any remaining grounds" or to answer the Complaint. [ECF 045]

Pursuant to this Court's order, Defendant filed its Renewed Motion to Dismiss on November 6, 2019. [ECF 047] The United States opposed Defendant's Renewed Motion to Dismiss on November 20, 2019 [ECF 050], and Defendant filed a reply in further support of its motion on December 4, 2019 [ECF 053]. On May 13, 2020, this Court denied Defendant's Renewed Motion to Dismiss in its entirety. Order at 8, 12, 23 (noting Defendant's argument that "Plaintiff fails to plead a prima facie case for Title II discrimination because it is the local school districts, not the State, that manages and implements the GNETS program," finding "that Plaintiff's Complaint sufficiently alleges that the true administration of the program rests with the state," and holding Eleventh Circuit precedent binding as to the United States' standing to raise Title II claims). At the same time, the Court denied Defendant's alternative request for a second stay of proceedings, noting that this case was filed in 2016 and "[t]he Court finds no reason to further delay the case for an indefinite period of time." *Id*. at 5 n.3.

In the months following the Court's denial of Defendant's Renewed Motion to Dismiss, Defendant filed an Answer to the Complaint [ECF 067], the parties

filed an Amended Joint Preliminary Report and Discovery Plan [ECF 068; entered as Order ECF 071], exchanged Initial Disclosures [*see* ECF 069], and negotiated and filed a Proposed Joint Stipulation Regarding Discovery and Joint Motion for Entry of Protective Order [ECF 077, 079; entered as Orders ECF 080, 082].  On July 24, 2020, the United States served Defendant with the United States' First Request for Production of Documents and First Set of Interrogatories [*see* ECF 074, 075].  Two weeks later, on August 7, 2020, Defendant filed the instant Motion [ECF 078].

## LEGAL STANDARD

"A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss." *Astral Health & Beauty, Inc. v. Aloette of Mid-Mississippi, Inc.*, 895 F. Supp. 2d 1280, 1282 (N.D. Ga. 2012).  Accordingly, this Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs." *Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  *See Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003); *Cobb Theatres III, LLC v. AMC Entm't Holdings, Inc.*, 101 F. Supp. 3d 1319, 1328 (N.D. Ga. 2015).  "Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief." *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (quoting *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001), *cert. denied*, 535 U.S. 1018 (2002)).

## ARGUMENT

### I.    Defendant's Motion for Judgment on the Pleadings Is an Inappropriate Attempt to Further Delay Proceedings.

Dissatisfied with this Court's denial of its Renewed Motion to Dismiss and despite the absence of any changed circumstances relevant to the United States' standing to bring these claims, Defendant now makes another attempt to dismiss or delay these proceedings by repackaging assertions previously made in this litigation—including those relating to redressability—as a Rule 12(c) Motion for Judgment on the Pleadings.  [ECF 078]  *See King v. Farris*, 357 Fed. App'x 223, 225 (11th Cir. 2009) (quoting *Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1329 (11th Cir. 2007)) ("[A] motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind."), *reh'g denied*, 401 Fed. App'x 518 (11th Cir. 2010), *cert. denied*, 562 U.S. 1137 (2011).

In support of its Motion, Defendant relies exclusively on *Jacobson v. Florida Sec'y of State*, 957 F.3d 1193 (11th Cir. 2020)—a case decided weeks before this Court's May 13, 2020, Order denying Defendant's Renewed Motion to

Dismiss.  The only change in the record that might explain Defendant's request for dismissal at this juncture is its now-filed Answer.  Yet, Defendant does not cite to any part of its Answer in support of any defense or objection not raised at the motion to dismiss stage.

The argument raised in Defendant's Rule 12(c) Motion is not new.  In fact, in May 2017, Defendant argued the lack of redressability in supplemental briefing in support of its first Motion to Dismiss.  Defendant's Supplemental Brief in Support of its Motion to Dismiss [ECF 035] ("Def.'s Supp. Br.") at 8-9.  Despite this Court's express direction that Defendant's Renewed Motion to Dismiss identify "any remaining grounds" for dismissal, Defendant chose not to press that argument when it filed its motion in November 2019.  [ECF 45]  Having chosen not to pursue the argument in its Renewed Motion to Dismiss, Defendant should not now be allowed to waste the time and resources of this Court and the parties.

While Defendant characterizes *Jacobson* as "[n]ew binding precedent," *Jacobson* did not establish new law on the issue of redressability.  *See* Defendant's Brief in Support of its Motion for Judgment on the Pleadings [ECF 078-1] ("Def.'s Br.") at 1.  Instead, the court in that case applied existing case law—including law previously cited by Defendant in its supplemental briefing in support of its Motion to Dismiss—to decide redressability of claims against the government officials

7

involved in the case. *Compare* Def.'s Supp. Br. at 4-9 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) and *Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003) in discussing redressability) *with Jacobson* (relying on *Doe v. Pryor* and its progeny to decide the facts before the court). To the extent Defendant contends *Jacobson* is somehow controlling in this matter, it had every opportunity to notify this Court of *Jacobson*'s asserted relevance *before* the Court issued its Order denying the Renewed Motion to Dismiss. Only after this Court denied the Renewed Motion to Dismiss and request for a second stay of proceedings and the United States served Defendant with its first set of discovery requests did Defendant decide that *Jacobson* should be brought to this Court's attention. Nothing precluded Defendant from including arguments supported by the very same case law in its Renewed Motion to Dismiss. This Court should not now indulge Defendant's attempts to further delay proceedings with the filing of this Motion.

## II. Defendant's Arguments Regarding Redressability Are Foreclosed by this Court's Prior Rulings and the Allegations Contained in the United States' Complaint.

Notwithstanding Defendant's delay, the arguments contained in its Motion are foreclosed by this Court's prior rulings and the allegations contained in the United States' Complaint.

In its Complaint, the United States seeks a remedy for Defendant's creation, funding, and decades-long operation of the GNETS Program, a segregated and unequal statewide service delivery system for students with behavior-related disabilities.  Defendant, however, contends that the LEAs—not the State—are the only entities capable of providing the relief sought by the United States because the LEAs ultimately determine whether a student receives GNETS services.[1]  *See* Def.'s Br. at 7.  In pressing this argument, Defendant seeks to relitigate an issue that this Court has already decided under precisely the same legal standard governing this Motion: whether the United States has alleged facts sufficient to support the conclusion that the State administers or exercises control over the GNETS Program.  *See* Order at 8, 13 (addressing Defendant's claim that "Plaintiff fails to plead a prima facie case for Title II discrimination because it is the local school districts, not the State, that manages and implements the GNETS program" and concluding that the United States "sufficiently alleged in its Complaint that GNETS is 'operated[] *and* administered by the State'").  Because this Court has already deemed the United States' allegations sufficient to support a finding that

---

[1] Defendant collectively refers to LEAs and RESAs as "LEAs" in its brief.  *See* Def.'s Br. at 2 n.1.  However, whether Defendant maintains or asserts any control over RESAs is a disputed issue of material fact that is not appropriate for this Court to resolve at this stage of the litigation.

the State operates and administers the GNETS Program, *see id.* at 13, it is clear that the State is the only entity with the broad authority to prevent and redress the ongoing injuries alleged to flow from the GNETS Program's current structure, funding, and operation.

In concluding that the United States has "sufficiently alleged … that GNETS is 'operated *and* administered by the State,'" Order at 13, this Court undertook a thoughtful analysis of Georgia law and the United States' well-pleaded allegations that the State violated Title II of the ADA in its operation of GNETS.  As this Court explained, Georgia law requires that Defendant "adopt classification criteria for each area of special education to be served on a state-wide basis," as well as "the criteria used to determine eligibility of students for state funded special education programs."  *See* Order at 10 (citing Ga. Code Ann. § 20-2-152(a)). Georgia law also renders Defendant responsible for "coordinating services for children experiencing 'severe emotional disturbance' like children in GNETS." Order at 10 (citing Ga. Code Ann. § 49-5-220(a)(6)).

Citing Georgia's rules and regulations, this Court identified additional ways that Defendant manages, oversees, and administers GNETS.  For example, the Court noted that Defendant "'receives and disburses GNETS funds;' '[a]dminister[s] the funds by … develop[ing] rules and procedures regulating the

10

operation of the GNETS grant;' and '[m]onitor[s] GNETS to ensure compliance with Federal and State policies, procedures, rules and the delivery of appropriate instructional and therapeutic services.'"  Order at 10-11 (citing Ga. Comp. R. & Regs. § 160-4-7-.15(5)(a) and Complaint).  The Court also noted that Defendant is "vested with the authority to determine if a local school district is incapable of serving a student with a disability."  Order at 11 (citing Ga. Comp. R. & Regs. § 160-4-7-.20(1)(b)).

    Not only has this Court concluded that various provisions of Georgia law support a finding of Defendant's administration and control of GNETS, it has also concluded that the United States "articulate[d] specific facts which explain the particular ways in which it contends the DOE controls and administers the [GNETS] program within the meaning of Title II of the ADA."  Order at 13-14. These facts include, but are not limited to, Defendant's determination of which mental health and therapeutic educational services and supports to provide GNETS students, its setting of entry and exit criteria for the GNETS Program, and its designation of a State employee to run the GNETS Program.  *See* Order at 11-12 (citing Compl. ¶¶ 24-28).  Based on its review of these facts, as well as the United States' allegation that local school districts often send students to GNETS "because the state will not make available the same services in integrated settings," this

Court found that the United States had "sufficiently allege[d] that the true administration of the program rests with the State."  Order at 11-12.

      Ignoring this Court's decision on this very issue, Defendant attempts to argue that ultimate control of the GNETS Program lies with the LEAs because the LEAs determine whether students receive GNETS services.  *See* Def.'s Br. at 2-3.  Yet, little has changed to cause this Court to reconsider the decision it reached just three months ago on the issue of the State's control of GNETS.  Even as Defendant strains to position this case within the four corners of *Jacobson*, where the court found non-parties in control of the challenged process, Defendant disregards the many ways that the State exercises control in the decision-making process governing placement in GNETS.  GNETS directors who answer to the State on admissions, staffing, programming, and operations questions participate actively in those decisions.  *See* Ga. Comp. R. & Regs. § 160-4-7-.15(3)(a)-(b) (noting that any IEP meeting considering whether a student receives GNETS services "will include a GNETS director or his/her designee").  Moreover, GNETS placement decisions are necessarily made based on available resources—specifically the spaces open for students in the GNETS Program—that are determined in large part by state funding and professional staffing decisions.  *See* Compl. ¶¶ 26, 55-58; *see generally* Ga. Comp. R. & Regs. § 160-4-7-.15(5)(a).

Defendant's reliance on *Jacobson* to suggest that the LEAs are the only entities capable of redressing the United States' claims is no more persuasive. Unlike here, the plaintiffs in *Jacobson* sued a state official despite the fact that "Florida law expressly gives a different, independent official control over" the challenged process. 957 F.3d at 1208. In addition, the plaintiffs in that case "ha[d] offered no contrary evidence to establish that the [Florida State official] plays any role" in the challenged process. *Id.* at 1207.

In this case, however, the United States has alleged facts demonstrating that the State is the only entity that can fully redress the claims at issue. Because this Court has already ruled that the United States adequately alleged that the State administers and controls the GNETS Program, it is undisputed that the State plays a role in the "challenged process." Further, the United States' claims are redressable against Defendant because Defendant—not non-party LEAs—is best positioned to ensure that a publicly funded State system of mental health and therapeutic educational services and supports is structured in such a way that students have access to such services and supports in the most integrated setting appropriate to their needs.

Indeed, the Complaint alleges that Defendant can remedy its failure by making reasonable modifications to its system for delivering mental health and

therapeutic educational services to students with behavior-related disabilities.

Compl. ¶¶ 23-28, 57-58.  Defendant has the ability and resources to make those

changes, as well as the discretion to draw on resources already available within its

own agencies, including the Department of Education, the Department of

Community Health, and the Department of Behavioral Health and Developmental

Disabilities.  Compl. ¶¶ 25, 27, 28, 55-56.[2]  Under these circumstances, the United

States' claims are clearly redressable against the State.  *See Harrell v. Fla. Bar*,

608 F.3d 1241, 1260 n.7 (11th Cir. 2010) ("Redressability is established, however,

when a favorable decision 'would amount to a significant increase in the likelihood

that the plaintiff would obtain relief that directly redresses the injury suffered'"

(quoting *Utah v. Evans,* 536 U.S. 452, 464 (2002))).

## CONCLUSION

Defendant's Motion for Judgment on the Pleadings serves no purpose other

than to further delay this litigation.  In its May 13, 2020, Order denying

Defendant's Renewed Motion to Dismiss, this Court concluded that the United

States has standing to pursue the claims at issue in this case and that the United

States has adequately alleged that Defendant operates and administers the GNETS

---

[2] As this Court has already observed, the relief the United States requests is "specific," "unambiguous[]," and "tangible."  Order at 20-21.

Program.  Given this ruling and the absence of any intervening change warranting a different ruling, Defendant cannot credibly establish that injunctive relief against the State would not remedy the harm alleged.  This Motion should therefore be summarily rejected with instructions to maintain the current ongoing schedule for litigation in this case.

Dated:  August 21, 2020


Respectfully submitted:

BYUNG J. PAK
United States Attorney
Northern District of Georgia


/s/ *Aileen Bell Hughes*
AILEEN BELL HUGHES
GA Bar Number: 375505
Assistant United States Attorney
United States Department of Justice
Richard B. Russell Federal Building
75 Ted Turner Dr. SW
Suite 600
Atlanta, GA 30303-3309
(404) 581.6000
aileen.bell.hughes@usdoj.gov

ERIC S. DREIBAND
Assistant Attorney General

SHAHEENA A. SIMONS
Chief
Educational Opportunities Section

RENEE M.WOHLENHAUS
Deputy Chief
Educational Opportunities Section

ANDREA E. HAMILTON
VICTORIA M. LILL
LAURA C. TAYLOE
MICHELLE L. TUCKER
Trial Attorneys
United States Department of Justice
Civil Rights Division

/s/ *Andrea E. Hamilton*
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-4092
andrea.hamilton@usdoj.gov

## **L.R. 7.1(D) CERTIFICATION**

I certify that this brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this brief has been prepared using 14-pt Times New Roman Font.

/s/ *Aileen Bell Hughes*
AILEEN BELL HUGHES
ASSISTANT U.S. ATTORNEY

17

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed the foregoing document with the

Clerk of Court using the CM/ECF system, which automatically sent counsel of

record e-mail notification of such filing.

This 21st day of August, 2020.


/s/ *Aileen Bell Hughes*
AILEEN BELL HUGHES
ASSISTANT U.S. ATTORNEY