IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>STATE OF GEORGIA,<br><br>　　Defendant. | )<br>)<br>)<br>)<br>)  CIVIL ACTION FILE<br>)  NO. 1:16-cv-03088-ELR<br>)<br>)<br>)<br>) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant State of Georgia (the "State") submits this Reply Brief in Support of its Motion for Judgment on the Pleadings.

## INTRODUCTION

The Justice Department's response misses the mark completely. [Doc. No. 83]. Defendants' Motion for Judgment on the Pleadings (the "MJP") does not rely on authority relevant to its Renewed Motion to Dismiss. That pleading focused on claims arising under the ADA.[1] [Doc. No. 47.] The pending MJP challenges standing, and the analysis on redressability is distinct from the question of administration under the ADA. This is

---

[1] This Reply Brief adopts the same abbreviations as the State's Brief in Support of the Motion for Judgment on the Pleadings. [Doc. 78-1]

particularly true after the Eleventh Circuit's decision in Jacobson v. Florida Secretary of State, 957 F.3d 1193 (11th Cir. 2020).[2]

Here, the claims are not redressable by the State, because the acts of alleged discrimination occur at the local level and not by the State. See generally [Doc. 1.]  The seminal act about which the Justice Department complains is the referral of a student to the GNETS program by an IEP team. [Id. at ¶ 26.]  The State is not involved in IEP team decisions. 34 C.F.R. § 300.321(a).  Additional acts of alleged discrimination occur once a student is receiving GNETS services.  They are housed in different classrooms or buildings, but the State does not make those decisions.  And, if the Justice Department obtains its requested relief, this Court will not be making those decisions either.  Non-party LEAs and RESAs will, and this Court's authority cannot reach those who the Justice Department chose not to make parties to this lawsuit.  Jacobson, 957 F.3d at 1208.

If the Justice Department seeks an end to the GNETS program—through terminating funding or by mandating that all students receive an

---

[2] As of September 3, 2020, Jacobson is now a binding opinion from a full panel of the Eleventh Circuit.  See Jacobson v. Florida Secretary of State, 19-14552 (11th Cir. Sept. 3, 2020).  For purposes of this Reply, Defendants cite to the original panel opinion, as there are no changes to the discussion on standing and redressability.

education in their general classroom or wholly segregated residential settings—it should say so. Until then, it cannot establish redressability as set forth in Jacobson, 957 F.3d at 1210.

## ARGUMENT AND CITATION TO AUTHORITY

The State's argument is straightforward and was fully briefed in eight pages: the discrimination the Justice Department complains of is not traceable to the State's "actions and redressable by relief against that defendant." Jacobson, 957 F.3d at 1210. To escape the preclusive impact of Jacobson, the Justice Department filed a brief that is twice as long. [Doc. 83.] It claims that the MJP was filed for delay, that the State has some amorphous and conclusory role in the decision to refer a student to the GNETS program, and that two other state agencies provide funding through the Medicaid program in a way that the Justice Department dislikes. These arguments are factually erroneous or fall under the dispositive weight of Jacobson.

1. **The State Does Not Seek Delay.**

The Justice Department's first argument is that the State is somehow attempting to purposefully delay this case. [Doc. 83 at 6-7.] Not so. Discovery is ongoing; the parties have already exchanged some written

discovery, and the State has not requested a hearing on the MJP. In the light of these facts, the Justice Department's claims of delay ring hollow.

Similarly, the Justice Department erroneously claims that it matters that the MJP does not cite to the answer. [Id. at 7.] The Tenth Affirmative Defense is that the Justice Department lacks standing. [Doc. 67 at 3.] The State is not required to cite the affirmative defense to prevail on the MJP, and the Justice Department certainly cited no authority to support that position.

Next, the Justice Department argues that, while the State's Renewed Motion to Dismiss was still pending before this Court, the State should have filed a Notice of Supplemental Authority about Jacobson. [Doc. 83 at 8.] This argument represents the first indication that the Justice Department misunderstood the MJP. The Renewed Motion to Dismiss challenged the Justice Department's assertion that the State "administers" the GNETS program within the meaning of the ADA. [Doc. 61 at 8-14]. The current argument is different. It addresses redressability and the question of who, where, and how does alleged discrimination take place. As shown below, the Order makes clear that those acts do not occur at the State level. In other words, the State could indirectly "administer" the GNETS program for ADA

purposes (e.g., provide some funding and oversight) but still not directly make the actionable decisions that establish standing.

Indeed, the Complaint makes the point too. It alleges that local school districts "send" children to the GNETS program. [Doc. 1 ¶ 26.] This is the precise situation Jacobson addresses: "neither [the State] she nor [its] agents control" whether the general education setting is not the appropriate setting for a particular student. 957 S.3d at 1208. Under these circumstances, the Justice Department cannot establish redressability, because a mandatory injunction[3] would be against the State only and not prevent one child from receiving services outside of their general classroom. LEAs and RESAs

---

[3] The Justice Department actually seeks far more than a typical mandatory injunction. A reasonable reading of the Complaint suggest that the federal government seeks to dictate where and how children are educated. How education funds are to be spent. How the State's Medicaid program is to be operated, and what types of services can be offered through the State Department of Behavioral Health and Developmental Disabilities. Put simply, the Justice Department does not seek a "reasonable accommodation." [Doc. 1 at ¶ 58.] The Justice Department seeks a wholesale takeover of State policymaker's decisions. This is hardly consistent with Supreme Court precedent, which acknowledged that the judiciary's "lack of specialized knowledge and experience … counsels against premature interference with informed judgments made at the state and local levels." San Antonio Independent Sch. Dist. v. Rodriguez, 411 U.S. 1, 42 (1973) (citation omitted).

would still be free to utilize the GNETS program, both under its current form and through enhanced local funding.[4]

2. **This Order Demonstrates The Lack Of Standing.**

On the merits, the Justice Department claims that this Court's order on the Renewed Motion to Dismiss (the "Order") precludes granting the MJP. Not so. [Doc. 83 at 8-14.] The Order articulates the Justice Department's claims much more clearly than the Complaint itself, and it demonstrates why the MJP should be granted.

For example, the Order explains **when** the alleged discrimination occurs: placement into the GNETS program (e.g., students are allegedly "segregate[ed] or by plac[ed in] serious risk of such segregation, in a separate and unequal educational program). [Id. at 2.] There is no allegation that the State participates in this decision.

---

[4] The Justice Department's Brief asserts that there is a question of material fact about whether RESAs are controlled by the State. [Doc. 83 at 9 n.1.] There is nothing for a jury to decide. State law makes clear that RESAs are "not state agencies." O.C.G.A. § 20-2-270(f). The Justice Department also says that GNETS officials are in IEP Team meetings. The Justice Department did not allege that in the Complaint. In addition, the Justice Department misunderstands the rule, and GNETS Directors are not state actors.

The Order also addressed **who** purportedly causes the discrimination: an IEP team "places a student in GNETS."[5] [Doc. No. 61 at 3 n.2 (quoting Georgia Advocacy Office v. Georgia, 447 F. Supp. 3d 1311 (N.D. Ga. 2020)).] Moreover, the Order decided that the Complaint alleged "that local governmental authorities run individual GNETS schools and place students in GNETS." [Id. at 12 (citing Georgia Advocacy Office, 447 S. Supp. 3d at 1311).] This is consistent with the Complaint itself. Paragraph 26 makes clear that "local school districts … send students" for GNETS services. [Doc. 1 at ¶ 26 (emphasis added).]

Paragraphs 34 through 36 and 49 address **where** the alleged discrimination takes place: in buildings operated by local school districts. The Justice Department does not (and cannot) allege that questions about physical plant are determined by the State. See also [Doc. No. 67 (Answer) at ¶¶ 34, 49.] The Order does not address this issue, and certainly not in a way that is beneficial to the Justice Department.

Similarly, Paragraph 48 claims that students receiving GNETS services cannot participate in the same level of extracurricular activities.

---

[5] The Justice Department claims that GNETS directors "actively participate" in the IEP meetings. [Doc. 83 at 12.] This is a red herring. GNETS directors are not State actors.

[Doc. No. 1.]  But, **how** local school districts make available extracurricular activities like sports and music programs are not decided by any of the State Defendants, and the Complaint does not articulate a basis to conclude otherwise.  See also [Doc. No. 67 at ¶ 43.]

Put simply, none of these decisions—the when, who, where, and how of special education—are made by State actors.  Jacobson addresses each of these points and forecloses the Justice Department's theory.  Specifically, this Court could grant the Justice Department's requested declaratory relief (e.g., that the State operates GNETS in a discriminatory manner), but that will not "bind the [local school districts], 'who are not parties' to this action.  As nonparties, the [local school districts] are not 'obliged … in any binding sense … to honor an incidental legal determination [this] suit produce[s]."  Jacobson 957 F.3d at 1208 (citing Lewis v. Governor of Ala., 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc)) (ellipsis in original)).  In other words, LEAs and RESAs will not be precluded from referring students for GNETS services, providing GNETS services in any particular type of building (or within another type of building), or setting extracurricular programming by the Justice Department's requested relief.

Similarly, the Court could grant the Justice Department's request to fundamentally alter the State's Medicaid program through the Departments

8

of Community Health and Behavioral Health and Developmental Disabilities. But, that does not mean that LEAs and RESAs would change where the students receive the new Medicaid services (in more "integrated" settings or in current GNETS classrooms). Nor does it change when decisions are made about GNETS services or who participates in those decisions. It just provides, at best, another alternative from which non-State actors (e.g., the LEAs and RESAs) may choose for special education needs.

The Justice Department has a few fallback positions. None warrant denying the State's MJP. The first is that the Defendant is empowered with rulemaking authority. [Doc. No. 83 at 10.] This point was squarely addressed by the Jacobson majority, and the Justice Department does not address it at all: if "rulemaking authority were sufficient to establish traceability, plaintiffs could presumably also challenge a law by suing the legislators who enacted it instead of the officials who execute it." 957 F.3d at 1211. Moreover, the Jacobson majority warned that judicial power is limited to enjoining officials and not directing the State to promulgate a different set of regulations. 957 F.3d at 1212.

The next argument considers the allegation that the State establishes "discriminatory" entrance and exit criteria for the GNETS program. See [Doc. 1 ¶¶ 41, 43.] In addition to the analysis above, the language in the

Complaint about this criteria is conclusory: "The State uses discriminatory referral, admissions, and exit criteria for the GNETS program that have the effect of screening out students with disabilities from integrated settings." [Doc. 1 ¶ 41.]  These kinds of conclusory statements are not required to be accepted on a motion for judgment on the pleadings.  Andrx Pharm., Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1230 n.1 (11th Cir. 2005).  Finally, the Justice Department does not seek new entrance or exit criteria as part of this lawsuit.  [Doc. 1 ad damnum clause.]

The Justice Department then misplaces its reliance on a third regulation, which provides that the Department of Education can determine whether a "local school district is incapable of serving a student with a disability" is misplaced.  [Doc. 83 at 11 (citing Order at 11 (citing Ga. Comp. R. & Regs. 160-4-7-.20(1)(b))).]  The Justice Department does not explain how a local school district's capability to educate is the same as providing services in a different building or with greater access to extra-curricular activities.

Finally, the Justice Department claims that the State can redress the federal government's concerns by (completely) reworking their Medicaid program and other services that are delivered through three State agencies: the Department of Education, the Department of Community Health, and the Department of Behavioral Health and Developmental Disabilities.  [Doc. 83

10

at 14.] This too is in error, as demonstrated by the provisions of the Complaint upon which the Justice Department's argument rests. [Id. (citing paragraphs 25, 27, 28, 55-56).] Those provisions of the Complaint articulate the Justice Department's preferred method of spending State dollars, but none of those policy ideas address how the State is to compel an IEP team to make a different decision. Consequently, declaratory and injunctive relief against the State "will not redress" these alleged injuries about placement, buildings, and after school activities. Jacobson, 957 F.3d at 1208.

## CONCLUSION

If the Justice Department seeks an end to State funding for GNETS, the alleged discrimination it complains about can persist. This is exactly why its claims are not redressable. If the Justice Department seeks something less than the elimination of GNETS, it should make that clear. But either way, the source of all of the alleged discrimination in this lawsuit happens in venues outside of the State's control and by individuals who are not State actors. As the Eleventh Circuit held in Jacobson, facts like these do not establish standing. For these reasons, the State requests that this Court GRANT its Motion for Judgment on the Pleadings.

This 4th day of September, 2020.

| | |
|---|---|
| Christopher M. Carr<br>Attorney General<br>Georgia Bar No. 112505<br><br>Bryan K. Webb<br>Deputy Attorney General<br>Georgia Bar No. 743580<br><br>Russell D. Willard<br>Senior Assistant Attorney General<br>Georgia Bar No. 760280<br><br>Jennifer Colangelo<br>Senior Assistant Attorney General<br>Georgia Bar No. 521320<br><br><br>State Law Department<br>40 Capitol Square, S.W.<br>Atlanta, Georgia 30334<br>Telephone: (404) 656-3357 | */s/ Alexa R. Ross*<br>Alexa R. Ross<br>Georgia Bar No. 614986<br>aross@robbinsfirm.com<br>Josh Belinfante<br>Georgia Bar No. 047399<br>jbelinfante@robbinsfirm.com<br>Joseph H. Saul<br>Georgia Bar No. 432592<br>jsaul@robbinsfirm.com<br>Melanie Johnson<br>Georgia Bar No. 466756<br>mjohnson@robbinsfirm.com<br><br>Special Assistant Attorney General<br><br>Robbins Ross Alloy Belinfante Littlefield LLC<br>500 14th Street NW<br>Atlanta, GA 30318<br>Telephone: (678) 701-9381<br><br>*Attorneys for Defendant* |

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this Brief has been prepared using 13-pt Century Schoolbox Font.

*/s/ Alexa R. Ross*
Alexa R. Ross
Georgia Bar No. 047399

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing **DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing.

This 4th day of September, 2020.

*/s/ Alexa R. Ross*
Alexa R. Ross
