IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

STATE OF GEORGIA,

     Defendant.

CIVIL ACTION FILE NO.

1:16-CV-03088-ELR

## OBJECTION OF THE FLOYD COUNTY SCHOOL DISTRICT TO PLAINTIFF'S SUBPOENAS

Pursuant to Rule 45(d)(2)(B) of the Federal Rules of Civil Procedure, the Floyd County School District ("FCS"), a non-party in the above-captioned matter, respectfully submits the following objections to two (2) subpoenas for the inspection of Coosa High School, 4454 Alabama Highway, Rome, Georgia 30165, and Coosa Middle School, 212 Eagle Drive N.W., Rome, Georgia 30165.[1]

These subpoenas are not reasonably calculated to avoid imposing undue burdens and expense on FCS—and perhaps more importantly—the inspections proposed within Attachment A to the subpoenas will disrupt the learning environment

---

[1] The United States of America, Plaintiff in this matter, served these upon the Superintendent for FCS, Dr. Glenn White, on January 24, 2022. FCS has attached a copy of those subpoenas as **Exhibit 1** to these objections.

*Page 1 of 21*

of those behavioral-disabled students about whom Plaintiff is allegedly so concerned. Plaintiff can, and should, do much better.

## I.    INTRODUCTION.

### A.    Floyd County School District and GNETS.

FCS is located in Floyd County, Georgia, and it has an enrollment of approximately 9,200 students.[2] FCS contains four high schools, Model, Armuchee, Pepperrell, and Coosa, with several feeder schools serving each high school. The schools presently at issue in this matter are Coosa High School and Coosa Middle School, which are located in the western part of Floyd County. Coosa High has a little more than 900 students, and it serves students in grades 9-12. Coosa Middle serves students in grades 6-8.

The Georgia Network for Educational and Therapeutic Support, commonly called GNETS, is a program designed to

> provide[] comprehensive educational and therapeutic support services to students who exhibit intense social, emotional and/or behavioral challenges with a severity, frequency or duration such that the provision of education and related services in the general education environment has not enabled him or her to benefit educationally based on the [individualized education plan].

---

[2] The Rome City School District is an independent school district operating in the county seat of Floyd County, the City of Rome. The Rome City School District also received a subpoena, and it has submitted its own objections.

Ga. Comp. R. & Regs. r. 160-4-7-.15(2)(a) (Westlaw current through Dec. 29, 2021). FCS is contained within the northwest region for GNETS, and Northwest Georgia RESA helps to administer this program. N.W. Ga. Regl. Educ. Serv. Agency, *Georgia Network for Education and Therapeutic Support*, https://www.nwgaresa.com/north-west-gnets (last accessed Feb. 3, 2022). GNETS and Northwest Georgia RESA are separate and distinct entities from FCS.

**B.    Subpoenas to FCS.**

On or about January 24, 2022, Plaintiff served Dr. Glenn White, the Superintendent of FCS, with two (2) subpoenas. (*See generally* Subps. from U.S. to FCS (Jan. 24, 2022) ("FCS Subps.").) These subpoenas demand an inspection at Coosa High and Coosa Middle, respectively, on February 28, 2022, and March 4, 2022. (*Id*.) Each subpoena contains an attachment, captioned "Attachment A," which imposes various demands upon FCS. (*See generally* Attachments A to FCS Subps.)[3] These are eerily like the subpoenas Plaintiff has served other school districts throughout the state, and these subpoenas are not tailored or designed to fit the particular circumstances at either Coosa High or Coosa Middle. (*See generally id*.) Based on statements made by Plaintiff's legal counsel, FCS believes that Plaintiff

---

[3] For brevity, FCS will hereinafter cite to the Attachments A as "Attachment A at __."

has served such subpoenas and similar attachments to non-party school districts throughout Georgia, and none of these attachments are tailored or designed to fit the particular circumstances at any individual school.

Not only are these subpoenas not reasonably tailored to fit the particularized circumstances present at Coosa High and Coosa Middle, but they are also unacceptable from the standpoint of permitting unknown persons into a very sensitive school or educational setting. Plaintiff seeks carte blanche access to schools in which the residents of Floyd County have entrusted the safety and welfare of their behaviorally disabled children to FCS, and Plaintiff's overly-broad subpoenas completely fail to reflect this reality.

## C.    Communications between Plaintiff and FCS.

Plaintiff did not serve these subpoenas in a void. As documented through email correspondence, Plaintiff's counsel at the United States Department of Justice had ample opportunity to discuss these important matters with FCS' counsel, and at all times throughout these communications, FCS' counsel proposed reasonable alternatives and stipulations to Plaintiff's overly-broad and unduly burdensome subpoenas. (*See e.g.* Email from I. Stewart Duggan, Partner, Brinson, Askew, Berry, Seigler, Richardson & Davis, LLP, to Claire Chevrier, Esq., Trial Atty., U.S. Dept. of Justice, *FCS Subpoenas – United States v. Georgia (Floyd County Schools –*

*Rome, GA)* (Dec. 22, 2021 2:56 p.m. EST).)  For instance, FCS voluntarily offered a deposition of FCS' Special Education/GNETS Director before any on-site inspections to minimize impact on students and to streamline any on-site inspections.  (*See id*.)  In a response email, Plaintiff declined this invitation and deemed such a deposition "unnecessary."  (Email from Victoria Lill, Esq., Senior Trial Atty., U.S. Dept. of Justice, to I. Stewart Duggan, Partner, Brinson, Askew, Berry, Seigler, Richardson & Davis, LLP, *FCS Subpoenas – United States v. Georgia (Floyd County Schools – Rome, GA)* (Jan. 13, 2022 7:15 p.m. EDT).)  Plaintiff has failed to seriously consider and address FCS' legitimate concerns and proposed solutions.

## II.    OBJECTIONS OF FCS TO PLAINTIFF'S SUBPOENAS.

Having established the background, FCS submits the following objections to Plaintiff's two (2) subpoenas.[4]

### A.    Inspections are invasive discovery tools that should be specifically and narrowly tailored to the unique circumstances of each school.

Plaintiff seeks to inspect Coosa High and Coosa Middle on February 28, 2022, and March 4, 2022, without providing the precise times that Plaintiff's experts and representatives will arrive at and leave these schools.  (Attachment A at 1.)  The standard attachments to the subpoenas permit Plaintiff's experts and representatives

---

[4] Unless otherwise stated, because of the identical nature of the subpoenas, Plaintiff should construe these objections as applying to both subpoenas.

to inspect a variety of areas within the school—many of which *are not specific to GNETS*—without any stipulations as to *how or when* the Plaintiff's experts and representatives will access such areas. (*See* Attachment A at 2.) Plaintiff seeks for the "regional GNETS program director or GNETS site-based administrator accompany each team during the entirety of the inspection," without acknowledging whether such individuals are within the employ or control of FCS.

The broad inspections that Plaintiff seeks to impose at Coosa High and Coosa Middle do not comport with reality. FCS expects more than just the proposed site team to be part of the inspection—FCS has been informed that the State of Georgia will want to have attorneys or other persons present, and FCS demands that its attorneys and/or administrators be present. This means a larger number of strange and unknown (at least to the students) adults in these schools; therefore, these site inspections will be more invasive than Plaintiff anticipates. Advance coordination concerning precise times in this instance is important to maintain a secure school setting. Moreover, Plaintiff ignores whether the proposed list of inspection areas is particularized to either Coosa High and Coosa Middle, and Plaintiff makes several presuppositions about these schools. Last, and certainly not least, Plaintiff presumes that FCS has control over certain individuals that it does not. To the extent that Plaintiff requests persons not within the employ or control of FCS to be present at

any site inspections, FCS cannot and will not guarantee that such persons will be present.  To purportedly place such a burden on FCS is inherently unreasonable.

FCS understands that GNETS has already provided Plaintiff with a voluminous number of documents that will answer many of the questions Plaintiff proposes with a site visit.  Given this, Plaintiff should narrowly tailor any site visit to prevent burdens and disruption to Coosa High and Coosa Middle (including to staff and students) and, in particular, those students having behavior-related disabilities.  However, Plaintiff has simply served FCS with a standard, non-customized subpoena without taking cognizance of any of these important factors.  For these reasons, FCS objects to Plaintiff's subpoena.

## B.     Plaintiff's proposed questioning of persons during the inspections amounts to impermissible, roving depositions.

Plaintiff seeks to have "the GNETS director or site-based administrator"[5] answer questions concerning

> the specific use(s) of particular rooms or areas of the building, the extent to which GNETS students are permitted to use those rooms or areas of the building, basic facts regarding the nature of any classrooms entered and/or observed (e.g., the grade level(s) of the classroom, subject matter, etc.), whether classroom attendance that day reflects actual

---

[5] The term "GNETS director or site-based administrator" is vague and imprecise, and Plaintiff should clarify its intent.

enrollment, the job title of school staff interacting with students, and, generally, what students are working on.[6]

(Attachment A at 2.)  If Plaintiff wants this information, the best way to obtain it is in a controlled format, with processes in place to protect the person giving the information and the persons seeking the information, i.e., a deposition.[7]  *See generally* Fed. R. Civ. P. 30(c)(1)-(2).  Second, to the extent Plaintiff seeks a person not employed or authorized to speak on behalf of FCS to make statements or assertions that Plaintiff will later seek to attribute to FCS, this is patently unreasonable.[8]

Plaintiff suggests that *the experts* will not "question or otherwise engage students or class personnel beyond exchanging common pleasantries." (Attachment A at 3.)  Notably, Plaintiff excludes Department of Justice personnel from this limitation.  (*See id*.)  The glaring exception of Department of Justice personnel apparently being exempt from the "pleasantries" limitation is not sufficient.  One may

---

[6] This is apparently a "non-exhaustive list of potential questions." (*See* Email from Victoria Lull, Esq., Senior Trial Atty., U.S. Dept. of Justice, to I. Stewart Duggan, Partner, Brinson, Askew, Berry, Seigler, Richardson & Davis, LLP, *FCS Subpoenas – United States v. Georgia (Floyd County Schools – Rome, GA)* (Jan. 13, 2022 7:15 p.m. EST).).

[7] And again, FCS has offered the deposition of its Special Education/GNETS Director prior to any inspection.  Plaintiff has declined.

[8] FCS is uncertain as to Plaintiff's intentions at this point.

reasonably imagine a student, a parent, a faculty member, or a staff member of a school being legitimately intimidated and feeling as though he or she *must* respond to any questions from an official from the United States Department of Justice, regardless of any intentions on the part of Department of Justice personnel.  This approach is not acceptable in a school setting.

What Plaintiff proposes is—in essence—"'a roving deposition . . . throughout the [school], of persons who were not sworn and whose testimony was not recorded, and without any right by [FCS] to make any objection to the questions asked.'" *U.S. v. Territory of the Virgin Islands*, 280 F.R.D. 232, 236-237 (D.V.I. 2012) (quoting *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 907 (4th Cir. 1978)).  For the reasons expressed above, FCS objects to Plaintiff's subpoenas and any roving questioning of unsworn and unknown persons at Coosa High or Coosa Middle whom Plaintiff's experts or Department of Justice staff may encounter.

## C.    Plaintiff has not engaged in good-faith negotiations with FCS.

As described in Part I.C. of these objections, Plaintiff did not serve these subpoenas in a vacuum.  In a Joint Status Report to the Court, Plaintiff promised "to make good-faith efforts to work cooperatively with counsel for the . . . [local educational agencies] involved with the regional GNETS programs to plan and conduct

site visits" that permitted its Plaintiff's experts "reasonable access" to schools. (Joint

Status Report at 8 (Dec. 10, 2021) [Doc. 126].)

First, the *initial contact* of Plaintiff's counsel with FCS's counsel was as fol-

lows:

> It was great talking with you earlier today. *As we discussed, attached
> please find copies of subpoenas for site visits involving Floyd County
> Schools that the United States **is issuing**.* In order to avoid the cost to
> taxpayers of a process server, we are requesting that you let us know as
> soon as possible whether you accept service of these subpoenas as
> counsel for the school district.

(Email from Claire D. Chevrier, Esq., Trial Atty., U.S. Dept. of Justice, to I. Stewart

Duggan, Partner, Brinson, Askew, Berry, Seigler, Richardson & Davis, LLP, *FCS

Subpoenas – United States v. Georgia* (Dec. 17, 2021 6:09 p.m. EST) (emphasis

added).) Sending subpoenas and asking whether an attorney can accept service of

the subpoenas, whose contents and scope had never been discussed, is not "good-

faith efforts" or "work[ing] cooperatively." (*See generally* Joint Status Report at 8.)

It amounts to a "take it or leave it proposition."

Plaintiff did not work with FCS in good faith; rather, Plaintiff—the powerful

and much larger federal government of the United States—swatted away any sugges-

tions by a perceived "small fry" school system in northwest Georgia, and it proceeded

with basically the same plan it always had. That is not good faith, and the standardized

and non-customized Attachments A to the subpoenas do not demonstrate that Plaintiff

legitimately attempted to respond to any of FCS' reasonable concerns. Because Plaintiff failed to live up to its promise to work in good faith with FCS and other school systems, FCS objects to Plaintiff's subpoenas.

**D.    Live-feed video and audio of classrooms.**

In the past few years, society has changed greatly. Lawyers have adjusted to taking depositions, and even holding certain court proceedings, remotely via video conference. (*See generally* United States District Court for the Northern District of Georgia Gen. Or. 20-04 (Nov. 22, 2021); United States District Court for the Northern District of Georgia Gen. Or. 21-02 (Jan. 27, 2021).) FCS proposes utilizing such technology to permit Plaintiff and its experts to view GNETS classrooms live. Plaintiff has shown no reason why this is not sufficient to observe these classrooms, particularly given Plaintiff's experts might get a more authentic, realistic view if there are not extra, strange adults in a classroom, and FCS objects to the extent that Plaintiff has not considered these viable, less intrusive, and less burdensome options. FCS objects to Plaintiff's subpoenas on the basis that Plaintiff has not reasonably considered less intrusive means to view classrooms.

**E.    The length and time of inspections is imprecise, vague, and unduly bur-
densome.**

FCS objects to the proposed length and time of the proposed inspections be-
cause it is vague, imprecise and will be overly disruptive, overly intrusive, and un-
duly burdensome to Coosa High and Coosa Middle. Plaintiff proposes the site in-
spections at the following dates and times:

| |
|---|
| 02/28/2022 8:00 am – 4:00pm<br>03/04/2022 8:00 am – 4:00pm<br>(not to exceed 3.5 hours/day) |

(FCS Subps.)

Plaintiff has not explained why two (2) site inspections are necessary, espe-
cially when Plaintiff proposes having multiple experts present.  The three-and-a-half
hour time period will encompass a significant portion of the school day. Because
Plaintiff intends to conduct these visits during active school hours, rather than to
inspect the premises when students are not present, this request takes valuable staff
away from existing obligations and disrupts the school environment for large periods
of time.

Furthermore, it is FCS's understanding from conversations with Plaintiff's
counsel that Plaintiff's site inspections teams intend to be able to leave and return to
Coosa High and Coosa Middle as many times as they please, so long as the

cumulative amount of time does not exceed three-and-a-half hours per day. This presents an additional and undue burden on the staff of these schools, as Coosa High and Coosa Middle are intended to be secure schools which random adults cannot enter and exit as they please. FCS objects to Plaintiff's subpoenas on this basis.

**F.      The proposed inspection areas are vague, imprecise, and overly expansive, and Plaintiff's subpoenas do not take into account the reasonable privacy expectations of students, faculty, and staff.**

Plaintiff proposes inspecting various parts of Coosa High and Coosa Middle, including, but not limited to, the "Counseling Office/Center," "Nurse's Office/Station," and "[a]ny other area of the premises accessed or utilized by students in the GNETS program not specifically identified above." (Attachment A at 2.) This is concerning for several reasons.

First, one of the primary purposes of Plaintiff's proposed site inspections is to ascertain the quality and condition of FCS' GNETS facilities as compared to FCS' general education facilities. As explained elsewhere in this objection, while Coosa High and Coosa Middle house FCS' GNETS program, these schools are also general education schools. *All* students at Coosa High and Coosa Middle—regardless of whether such students are GNETS students or general education students—have access to the same facilities. Thus, there is no reason why Plaintiff should have any need to conduct such expansive and invasive inspections of these schools.

Second, several of these areas listed in the Attachments A are particularly concerning because these are areas in which students, staff, or faculty may receive confidential medical or counseling services[9] and in which students, parents, faculty, and staff have a reasonable expectation of privacy or confidentiality.[10]  Obviously, purported experts and employees of the Department of Justice should not be permitted to invade the personal privacy and confidentiality of others (particularly children) by invading these spaces.  Furthermore, the catch-all phrase of "any other area of the premises" essentially gives unlimited permission to invade any space within the school, including principals' offices, bathrooms,[11] and other places where there would be a reasonable expectation of privacy or confidentiality on the part of students, parents, faculty, and staff.  Moreover, FCS has heard credible reports of Plaintiff's experts rifling through closets and storage areas.  Plaintiff has never explained

---

[9] Local Education Agencies in Georgia are required to provide school counseling areas that are "accessible to all students, including those with disabilities, *and situated to protect student and parent confidentiality*[.]"  Ga. Comp. R. & Regs. r. 160-4-8-.05(2)(a)(2)(iv) (current through Jan. 13, 2022) (emphasis added).

[10] One important distinction regarding FCS' GNETS program is that FCS does not have an isolated building for its GNETS program.  All students at Coosa High and Coosa Middle access the same facilities.  Plaintiff's subpoenas fail to acknowledge this reality, and Plaintiff should strive to protect the confidentiality and privacy *of all* students, not just students in the GNETS program.

[11] Strangely (and somewhat creepily), Plaintiff is reluctant to allow FCS to clear restrooms prior to Plaintiff's inspection of such areas.

why this is necessary, and Plaintiff does, in fact, include "[s]torage rooms/closets within GNETS school-based classrooms or standalone GNETS centers" as one of the area subject to inspection.  (Attachment A at 2.)

Third, Plaintiff also proposes unfettered access to "classrooms that serve any student enrolled in the regional GNETS program."  (Attachment A at 2.)  Plaintiff does not, however, suggest any limitation on the inspections of classrooms including, but not limited to, a GNETS student actually being in the classroom when the inspection is made. Plaintiff essentially seeks the ability to come and go into classrooms—regardless of whether the classroom is a general education classroom or a GNETS classroom—as Plaintiff sees fit.  This is disruptive to the learning environments at Coosa High and Coosa Middle.  Plaintiff offers no explanation why it needs such unlimited access, and Plaintiff has offered no explanation how this intrusion into, and disruption of, FCS' schools will provide Plaintiff any useful information.

In short, Plaintiff has not—and cannot—explain how or why many of the areas listed in its subpoenas will be pertinent to any issue in the above-captioned case, and at present, the supposed areas subject to Plaintiff's inspections are overly-expansive, potentially violative of reasonable privacy expectations, unduly burdensome, vague, and ill-defined.  FCS objects to Plaintiff's subpoenas on this basis.

**G.**    **Plaintiff's subpoenas do not provide adequate protection to ensure that Plaintiff's experts or staff will not hover over, or interfere with, students, faculty, and staff.**

Plaintiff states that its experts—again, Plaintiff glaringly exempts Department of Justice personnel from these requirements—shall comply with the following regarding the placement of experts in classrooms:

> The two experts on each team and one DOJ employee shall have the right to enter each qualifying classroom to conduct observations.  The experts shall make all reasonable efforts to stand and/or sit in the area of the classroom least likely to cause disruption.  In most cases, this area will be in the back of the classroom.  Experts shall have reasonable leeway to adjust their position within the classroom where needed to observe what students are working on and students' level of engagement.
>
> .    .    .
>
> Additionally, experts shall be permitted to observe—either from a stationary position in a classroom or in a hallway—periods of transition where students in the GNETS program move to and from classrooms or other areas of the school facility.

(Attachment A at 2-3.)  This is insufficient for the reasons that follow.

First, nowhere in Plaintiff's subpoenas does Plaintiff acknowledge the conspicuous omission of restrictions upon Department of Justice staff.  By its own terms, these restrictions on movement only apply to the Plaintiff's supposed experts.  Second, "reasonable leeway" is an incredibly broad and ill-defined term that gives the experts essentially no guidance.  Under this present protocol, the experts could—if they deem such leeway "reasonable"—hover over or follow students, faculty, or

staff.  More stringent guidelines are necessary, *both for Plaintiff's experts and any DOJ staff*.  Third, Plaintiff's subpoenas again ignore, and are not adjusted to take into account, the unique circumstances at Coosa High and Coosa Middle in that these are not isolated, GNETS-only facilities.  These are general education schools in which not only are GNETS students moving to or from classrooms, but *all* students are.  Plaintiff's subpoenas, as they are currently drafted, do not reflect this reality.  For all these reasons, FCS objects to Plaintiff's subpoenas.

**H.    Plaintiff's subpoenas do not adequately address issues with taking photographs or visual images, and these subpoenas do not adequately address the reasonable privacy expectations of students, parents, faculty, and staff at Coosa High and Coosa Middle.**

Plaintiff states it "shall have the right to document the nature, condition, and appearance of the premises via photographs so long as the photographs taken do not include students, parents/guardians, building personnel, or any other images that implicate [FERPA]."[12]  (Attachment A at 3.)  First, this does not take into account the privacy protections under Georgia law as described in *Pavesich v. New England Life Insurance Company*, 122 Ga. 190 (1905), and its progeny.  Second, Plaintiff's Attachments A do not supply any means for FCS to ensure that Plaintiff's experts and

---

[12] "FERPA" refers to the Federal Educational Rights and Privacy Act, 20 U.S.C. § 1232g, and the regulations promulgated as a result of that act, 34 C.F.R. §§ 99.1 through 99.67.

representatives are, in fact, complying with this portion of Attachment A.  Third, Plaintiff's proposal concerning photographs does not take into account areas where students, parents, faculty, or staff have a reasonable expectation of privacy or confidentiality, as described in Part II.F. of these objections.  To ensure that all persons can be assured of privacy, FCS has previously offered to take photographs, as requested by Plaintiff's representatives and experts, and provide these to Plaintiff on the same day at no cost; however, Plaintiff has, without justification, rejected that compromise.  Thus, FCS objects to the taking of photographs or other visual images at Coosa High or Coosa Middle as proposed in Attachment A.

### III.   NOTICE REGARDING COST SHIFTING AND SANCTIONS.

Under the Federal Rules of Civil Procedure,

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees-- on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1).  A court may order payment of attorney's fees or costs if "a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice, Inc. v. Stormans, Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013).  The federal rules also ensure that if a non-party is ordered to comply with a subpoena, then the court "must protect a person who is neither a party

nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). This is a mandatory provision designed to protect a non-party where a "subpoena imposes expenses on a non-party" and where "those expenses are significant." *Legal Voice, Inc.*, 738 F.3d at 1184 (internal citations and quotations omitted). A court may allocate costs between a requestor and non-party where the requestor imposes significant expenses upon a non-party. *See id.* at 1185.

In the present matter, FCS has raised several legitimate concerns regarding Plaintiff's proposed inspections and proposed solutions. Prior to Plaintiff issuing a subpoena, FCS incurred attorneys' fees in its attempts to negotiate in good faith with Plaintiff about these legitimate concerns. Plaintiff, however, has adopted a "take it or leave it" type of approach to FCS and other school districts, issuing non-individualized subpoenas that fail to account for the unique circumstances or concerns of FCS and its fellow school districts. Counsel for FCS previously requested that its attorneys' fees be paid for by Plaintiffs, but counsel for the Plaintiff declined, stating they had no internal policy that might allow for reimbursement of costs/attorneys' fees in these circumstances. If Plaintiff seeks to compel FCS to comply with the presently-designed protocol for inspections of FCS' schools, FCS hereby provides notice to Plaintiff that FCS may seek appropriate sanctions, including reasonable attorneys' fees. If FCS is ordered to comply with Plaintiff's subpoenas—as presently presented

or as may be modified by the Court—FCS intends to seek allocation of significant costs, as appropriate.

## IV.    CONCLUSION.

FCS objects to Plaintiff's subpoenas for the reasons explained in Part II above. Because FCS has served these objections in accordance with Rule 45 of the Federal Rules of Civil Procedure, FCS considers the site inspection visits to Coosa High School and Coosa Middle School, scheduled for February 28, 2022, and March 4, 2022, to be cancelled.

Respectfully submitted on this 7th day of February, 2022.

BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP

By:    */s/ I. Stewart Duggan*
I. Stewart Duggan
Georgia Bar No. 232207
C. King Askew
Georgia Bar No. 025400
John Matthew Hawkins
Georgia Bar No. 120839

*Attorneys for Non-Party Floyd County School District*

P.O. Box 5007
Rome, Georgia 30162-5007
Phone:   (706) 291-8853
Fax:      (706) 234-3574
Email:   isduggan@brinson-askew.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this day filed a copy of the foregoing OBJECTION OF NON-PARTY FLOYD COUNTY SCHOOL DISTRICT TO PLAINTIFF'S SUB-POENAS with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

I further certify that this document has been prepared in Times New Roman font (14 pt.) and formatted in accordance with the Local Rules of the United States District Court for the Northern District of Georgia.

This 7th day of February, 2022.

BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP

By:    */s/ I. Stewart Duggan*
I. Stewart Duggan
Georgia Bar No. 232207

*Attorney for Non-Party Floyd County School District*

P.O. Box 5007
Rome, Georgia 30162-5007
Phone:  (706) 291-8853
Fax:    (706) 234-3574
Email:  isduggan@brinson-askew.com