IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| PLAINTIFF, | |
| v. | Civil Action No. |
| STATE OF GEORGIA, | 1:16-cv-03088-ELR |
| DEFENDANT. | |

## CONSOLIDATED/JOINT DISCOVERY STATEMENT REGARDING THE UNITED STATES' RULE 45 SUBPOENAS FOR INSPECTION OF PREMISES WITHIN COBB COUNTY SCHOOL DISTRICT AND FULTON COUNTY SCHOOL DISTRICT

Plaintiff United States of America and nonparties Cobb County School District ("CCSD") and Fulton County School District ("FCSD") (collectively, "Respondents"), being unable to resolve a discovery dispute after meeting and conferring in good faith on several occasions, respectfully submit this Joint Statement pursuant to the applicable terms of the Court's standing order.

In December 2021, the United States issued 77 Rule 45 subpoenas to inspect sites and observe classrooms in 47 facilities housing Georgia Network for

Educational and Therapeutic Support ("GNETS") programs.[1] Each subpoena includes a uniform site visit protocol (attached hereto as Exhibit A) that identifies the terms of the inspections. Respondents issued written objections. After meeting and conferring, counsel were able to narrow the disputes to the seven that follow.

### I.    Selection of GNETS Classrooms for Observation

*United States' Position*

The United States' site visit protocol provides for observation of "classroom instruction or any other activity taking place in all GNETS classrooms." Ex. A at 2. The United States' experienced and highly trained experts are inspecting a limited but representative cross-section of GNETS Program locations and must have access to all GNETS classrooms at the sites selected to draw reliable conclusions.

*Fulton and Cobb Counties' Response*

Respondents object that the United States' proposed protocol for site inspections, in the aggregate, is not proportional to the needs of the case.

As a compromise, Respondents are generally willing to permit inspections of all GNETS classrooms, provided the terms of the inspections are otherwise limited as set forth in Respondents' positions below.

---

[1] The United States served stakeholders claiming an interest in the program or the properties where the program operates, including Regional Education Service Agencies ("RESA"s) and local school districts ("LEA"s).

FCSD objects, however, to any observation of a GNETS classroom that does not currently have a full-time teacher assigned to it. Currently, there are two classrooms that are in transition between full-time teachers. GNETS classrooms are sensitive, educational environments, and classrooms in transition between full-time teachers are especially prone to disruption by deviation from routine classroom operations. Accordingly, any observation of such classrooms would be unduly disruptive, substantially outweighing any purported need the United States has to oberve those closerooms.

CCSD also objects to the observation of any general education classroom in which a GNETS student with heightened psychological sensitivies (including psychosis or paranoia) is enrolled. Within CCSD, there are two such classes. CCSD will permit observation of the remaining general education class at issue.

_United States' Reply_

The scope of Rule 45 is determined by reference to Rule 26(b), which provides that a party generally "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); _see Secs. & Exchange Comm'n v. Avent_, No. 16 Civ. 2459, 2018 WL 8996272, at *1 (N.D. Ga. Apr. 26, 2018) (quoting Fed. R. Civ. P. 26(b)(1)). Relevancy is broadly construed. _See State Bank of Tex. v. Patel_, No. 09 Civ. 1494,

2015 WL 13358146, at * 1 (N.D. Ga. Mar. 31, 2015) ("Put simply, the Civil Rules and this Court's local rules mandate that parties be permitted liberal discovery.").

The information obtained from observing any GNETS classroom, including GNETS classrooms that currently lack an assigned full-time teacher, is relevant to establishing whether the GNETS Program is "separate and unequal," as alleged in the Complaint. Respondents provide no reason why GNETS classrooms without full-time teachers should be deemed irrelevant to the United States' claims. Indeed, given the sensitive nature of the educational environment in which GNETS students are placed, the United States is entitled to assess the adequacy of program staffing and how programs attempt to meet students' needs when they lack full-time certified teachers.

The United States has discussed the two general education CCSD classes referenced above and has agreed not to observe those classrooms while the GNETS student with heightened psychological sensitivities is present.

## II.    Maximum Length of Facility Tour and Any Single Classroom Observation

*United States' Position*

"So long as total inspection time for a single team does not exceed 3.5 hours, the experts' time spent on any particular aspect of the site visit shall not be limited." Ex. A at 1. This provision provides the United States with flexibility in determining

4

the amount of time needed to complete a tour of the underlying facility, which may be a small elementary school, a standalone GNETS center, or a sprawling 275,000 square foot high school. The provision also gives the United States' experts needed discretion to determine the length of time spent in any given classroom and to react in real time to the presence or absence of activities they consider most informative. In some cases, the experts may be able to conclude a classroom observation in 20 minutes. In others, they may require a longer observation period to make assessments and draw conclusions. Because each team's inspection time has been capped at 3.5 hours, giving experts discretion to determine the proper allocation of that time across classrooms does not impose any undue burden.

*Fulton and Cobb Counties' Response*

Respondents object to the United States' retaining unfettered discretion as to the duration of any observations at a site.

As a compromise, Respondents are willing to permit: (1) up to twenty minutes for each classroom observation; and (2) up to forty-five minutes total for all non-classroom facilities to which students ordinarily have access.

Respondents object to any attempt to tour or observe administrative offices or other site facilities to which students do not ordinarily have access, as such inspections are not proportional to the needs of the case.

5

<u>United States' Reply</u>

The United States offered to limit individual classroom observations to a maximum of one hour during the meet and confer process but cannot commit to more restrictive limitations without threatening the discretion its experts need to respond to classroom events in real time. Further, while facility tours typically do not last longer than 45 minutes, there are a number of variables that necessitate the discretion outlined in the United States' protocol. The schools the United States intends to inspect in Fulton County, for example, include two high schools, a middle school, and an elementary school, each of which varies significantly in size and layout. The United States' protocol ensures its experts are able to gather the information from facilities and classrooms needed to form reliable opinions while also providing subpoenaed nonparties a concrete time limit for the inspection. When comparing what the United States has proposed to what has been deemed appropriate by other courts, the United States' proposed inspections are fairly conservative. *See, e.g.*, *Santamaria v. Dallas Indep. Sch. Dist.*, Civ. No. 3:06-CV-692-L, 2006 U.S. Dist. LEXIS 33195, at *1, *3 (N.D. Tex. May 17, 2006) (rejecting claims of undue burden and permitting expert to observe classes at a single school "for up to three days, without interfering with classroom instruction."); *Wyatt v. Hannan*, Civ. No. 3195-N, 1995 WL 699616, at *1 (M.D. Ala. Nov. 8, 1995) (permitting expert,

outside the presence of defendants' counsel and without a staff escort, to tour an adolescent center, conduct classroom observations, and interview students and teachers at the conclusion of class). Finally, Respondents concern about administrative offices is unwarranted. In its February 22, 2022 letters to Respondents, the United States wrote: "We are in agreement that we will not inspect any administrative offices or facilities not generally accessible by students."

### III.    Individuals Permitted to Participate in Classroom Observation

<u>*United States' Position*</u>

"Each [site inspection] team will consist of a maximum of two DOJ employees and two experts."  Ex. A at 1. While all will participate in the facility tour, only one DOJ employee will join experts in classrooms for observations. This protocol limits the total number of classroom visitors, ensures the United States' experts have adequate access, and guards against improper questioning of the experts or accusations of protocol violations by other parties.

<u>*Fulton and Cobb Counties' Response*</u>

Respondents object to multiple observations of the same classroom and more than two individuals entering a classroom for any given observation. Respondents are willing to permit up to two experts to observe a classroom during a given observation, with attorneys or other personnel remaining in the hallway outside the

classroom. If the United States' attorneys are present in the classroom, it will be necessary for Respondents' attorneys and Metro RESA's attorneys also to be present. Such a large number of adults would not resemble a normal classroom setting, diminishing the value of the observation itself and unduly disrupting classroom operations.

The United States' experts should be expected to comply with whatever protocol this Court puts in place, without a need for supervision by DOJ attorneys. And no questioning should occur or be attempted while students are present (*i.e.*, during a classroom observation) or outside the presence of Respondents' attorneys.

*United States' Reply*

Classroom personnel are routinely observed in the regular course of business. Principals, central office administrators, therapists, and other providers all enter classrooms to observe teachers and students. The State itself conducts periodic site inspections and observations of GNETS programs as part of its administration and oversight of the GNETS Program. Respondents have made no showing that the inspections the United States proposes are any more disruptive than the regularly-conducted inspections and observations to which teachers and students are accustomed. Since November of 2021, the United States' experts have conducted site inspections of 22 GNETS facilities. During these inspections, the experts

generally have been accompanied by at least one DOJ personnel when conducting classroom observations. While students have acknowledged the presence of visitors during these observations, they have generally returned to what they were doing prior to the expert team entering the classroom within the first minute or two. This is true even when other administrators and counsel not affiliated with DOJ are present.

## IV.    Expert Positioning Within Classroom

*United States' Position*

The United States' "experts shall make all reasonable efforts to stand and/or sit in the area of the classroom least likely to cause disruption." Ex. A at 2. Although "[i]n most cases, this area will be the back of the classroom," experts must have "reasonable leeway to adjust their position within the classroom where needed to observe what students are working on and students' level of engagement." *Id.* at 2-3. Classrooms have different configurations and students do not always remain stationary. If experts stand in the back of a classroom but students are receiving instruction through laptops or in small groups in distant areas of the room, the experts may need to move positions to see and/or hear instruction and students' engagement.

*Fulton and Cobb Counties' Response*

Respondents object to any experts or other United States' representatives retaining unfettered discretion to move freely about the classroom during observations. Such movement would be distracting and unduly disruptive to classroom operations.

As a compromise, Respondents are willing to permit observers to remain stationary at the back of the classroom. Because classrooms are small, this vantage point will easily facilitate a programmatic observation by the United States' experts. Given that the United States intends to conduct a programmatic observation—rather than independent educational evaluations of specific students—there is no need for the United States' experts to look over individual students' shoulders while they work on assignments and participate in class instruction.

*United States' Reply*

Classroom observations provide firsthand information regarding the nature and quality of curricula/instruction, classroom structure and management, the provision of therapeutic services and supports, student engagement and interaction, and the extent to which students can be served in more integrated settings. The United States experts, combined, have thousands of hours of classroom observation experience. The freedom to adjust one's position within a classroom, if necessary,

supports the experts' ability to gather information needed to form reliable opinions. The adjustments are not, as Respondents suggest, to look over individual students' shoulders.

Insofar as Respondents argue that giving experts the leeway to quietly adjust their positioning within a classroom will be "unduly disruptive" without proffering any supporting evidence, courts have dismissed these kinds of unsubstantiated claims of classroom disruption. *See Santamaria v. Dallas Indep. Sch. Dist.*, Civ. No. 3:06-CV-692-L, 2006 U.S. Dist. LEXIS 33195, at *1, *3 (N.D. Tex. May 16, 2006); *Gaskin v. Commonwealth of Pennsylvania*, Civ. No. 94-4048, 1997 WL 734031, at *1 (E.D. Pa. Nov. 4, 1997); *Wyatt v. Hannan*, Civ. No. 3195-N, 1995 WL 699616 at, *1 (M.D. Ala. Nov. 8, 1995).

## V.   Returning to Prior Classrooms

<u>United States' Position</u>

"If requested, the [United States'] experts shall be permitted to return to a classroom already observed for additional observation." Ex. A at 3.  In some instances, experts may observe something within a classroom that leaves them questioning what conclusions should be drawn from the observation. The flexibility to return to a classroom allows experts to confirm or revise initial impressions, as needed.  Moreover, when experts enter a classroom where students are having a meal

or otherwise not engaged in active learning, requiring them to wait 20 or 30 minutes for instruction to resume wastes important inspection time. To honor the inspection's 3.5-hour time limitation, experts must have the flexibility to depart a classroom where active instruction is not occurring, devote time that would otherwise be spent waiting for instruction to begin to observe a different classroom, and return to the initial classroom to complete the observation.

## *Fulton and Cobb Counties' Response*

Respondents object that repeat or multiple classroom observations are not proportional to the needs of the case.

Counsel for the United States have repeatedly advised that their experts are generally able to complete classroom observations within 15-20 minutes. Accordingly, Respondents are willing to permit: (i) observation of all GNETS classrooms; (i) up to 20 minutes for each classroom observation; and (iii) up to two experts per observation. Given these compromises, the United States' desire for repeat classroom observations does not outweigh Respondents' interests in minimizing disruption of classroom operations.

## *United States' Reply*

The United States' experts will only return to a prior classroom for observation if it is necessary for them to confirm or form their opinion. Respondents

have not proffered any evidence supporting their assertion that these rare returns to prior classrooms will be unduly disruptive. Indeed, the United States' experts have employed this practice infrequently and without undue disruption during the 22 site inspections they have conducted at GNETS facilities since November 2021.

## VI.    Incidental Questions from Experts Asked On-Site

*United States' Position*

Under the United States' site visit protocol, "[t]he experts on each team shall be permitted to ask questions of the GNETS director or site-based administrator that are incidental to the inspection of the premises. This includes questions about the specific use(s) of particular rooms or areas of the building, the extent to which GNETS students are permitted to use those rooms or areas of the building, basic facts regarding the nature of any classrooms entered and/or observed (e.g., the grade level(s) of the classroom, subject matter, etc.), whether classroom attendance that day reflects actual enrollment, the job title of school staff interacting with students, and, generally, what students are working on." Ex. A at 2. These kinds of incidental questions provide important context for what experts observe during site inspections. Thus, they must be asked and answered contemporaneous with the site inspection.

*Fulton and Cobb Counties' Response*

Respondents object that Rule 45 does not permit representatives of the United States to question site employees, which would have the potential to function as a roving, unsworn deposition. To facilitate a more efficient and orderly site inspection, Respondents may be willing to answer certain non-substantive questions that might help provide context for what the United States' experts are observing. But Respondents maintain that, under Rule 45, they have no obligation to answer those questions.

To date, the United States has not disclosed the field(s) of expertise of each expert conducting an observation. And though it has provided a list of example questions, the language of the subpoenas make clear that this list is not exhaustive. The United States' use of the term "incidental" is vague, as reasonable minds might disagree about where questioning crosses the line between a non-substantive incidental question and a probing, substantive interview that Respondents' agents have not had a reasonable opportunity to prepare for. At bottom, the risk that the United States' representatives might use these inspections to conduct roving, unsworn depositions outweighs any interest the United States has in obtaining information from individuals who might be ill-equipped to answer those questions. *See Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908-10 (4th Cir. 1978).

<u>*United States' Reply*</u>

Federal Rule of Civil Procedure 45 has been construed consistently with Rule 34 to permit "the broadest sweep of access, inspection, examination, testing, sampling, copying, and photographing of documents, electronically stored information, or objects in the possession or control of another party." Wright and Miller, Federal Practice and Procedure, §2206; *see also Gaskin v. Commonwealth of Pennsylvania*, Civ. No. 94-4048, 1997 WL 734031, at *1 (E.D. Pa. Nov. 4, 1997) (quoting Wright and Miller §2206). Consistent with this broad sweep, courts have upheld the right of parties to ask questions during a Rule 45 inspection. *See Barnhardt v. Meridian Mun. Separate Sch. Dist.*, Civ. No. 4:65-cv-1300, 2012 U.S. Dist. LEXIS 42460, at *10-11 (S.D. Miss. Mar. 28, 2012) (permitting sit-down interviews during site inspections with school personnel); *Kenny A. v. Perdue*, Civ Act. 1:02-cv-1686, 2004 US Dist. LEXIS 33464, at *13 (N.D. Ga. Dec. 3, 2004) (permitting experts to conduct private interviews with children and informal interviews with staff); *Wyatt v. Hannan*, Civ. No. 3195-N, 1995 WL 699616, at *1 (M.D. Ala. November 8, 1995) (permitting experts to conduct private interviews with students and teachers). The contextual questions the United States' experts intend to ask administrative personnel plainly fall within the scope of a Rule 45 inspection. *Belcher* does not dictate otherwise.

## VII.   Scheduling Site Visit Dates/Times

*United States' Position*

The United States "intends to conduct inspections of the identified premises in two separate teams." Ex. A at 1. This site visit design aims to minimize the disruption that GNETS programs and local school systems complain of by moving through buildings in two modestly sized teams rather than a single excessively large team. The two-team design also offers COVID-19-related benefits by limiting the number of individuals traveling in close proximity to one another through buildings. The total inspection time for any given facility is 7 hours—the equivalent of a single school day—whether the 3.5-hour visits occur on the same day or two different days.

*Fulton and Cobb Counties' Response*

Respondents object that multi-day inspections are not proportional to the needs of the case. Each observation will be highly disruptive to school operations, potentially detaining the time of multiple site-based administrators, GNETS personnel, and attorneys. Though the United States continues to insist that it must have four experts observe each classroom, it has not demonstrated a need for more than two experts. In fact, the United States has not disclosed the observers' fields of expertise, and the use of four experts appears to be needlessly cumulative and unduly disruptive to school operations. At a minimum, if the United States is permitted to

have four different experts observe the same classroom, it should be required to demonstrate that each of the four experts (i) has a field of expertise different from the others, and (ii) is opining on an subject that the other experts are not competent to opine on.

Furthermore, as the party seeking to conduct this non-party discovery, the United States should bear the burden of coordinating its observers' schedules to ensure that they can be present at a site for the day of inspection, thereby minimizing further disruption to school operations. Its experts have voluntarily undertaken this litigation consulting engagement (presumably for compensation), and it is not unreasonable to expect them to accept the scheduling inconvenience that accompanies that work. To date, the United States has not articulated any reason why its four experts are unable (as opposed to merely unwilling) to appear at a site on the same day. It would be far more burdensome for the nonparty Respondents to make arrangements for multi-day inspections at each site than it would be for the United States' four experts simply to coordinate their schedules to appear on the same day. By insisting on having multi-day observations, the United States seeks only to shift the burden of its experts' scheduling inconvenience to nonparty school districts.

*United States' Reply*

The United States' two-team protocol was developed to limit disruption and to mitigate the risk of COVID-19 exposure by ensuring that no more than four individual team members (two experts and two DOJ personnel) are present at a site at any given time. In Section III, above, Respondents assert that the presence of "a large number of adults" is "unduly disrupt[ive]" for purposes of classroom observations. Here, Respondents maintain that that United States should "coordinat[e] its observers' schedules to ensure that they can [all] be present" on the same day. Respondents cannot have it both ways. Nor can they dictate the United States' expert strategy. The United States has heard the concerns voiced by GNETS programs and school districts regarding the disruption caused by large groups of visitors, and it has accommodated those concerns by arranging for two short site inspections that will allow all of its experts to gather relevant information. Respondents—the only two school districts to assert that this proposed structure is unduly disruptive—provide no evidence to support their claimed disruption. Nineteen facilities have already accommodated this two-team structure without any complaints of undue disruption. The facilities associated with Respondents should be treated no differently.

The United States notes that site inspection teams typically conduct a full week of site inspections at one time, following a geographically efficient site inspection itinerary that covers 2-4 GNETS programs and as many as 12-15 facilities. Creating these itineraries requires painstaking detail and coordination with numerous entities, including but not limited to the United States' counsel and its experts, GNETS programs and their counsel, local school districts and their counsel, and the State and its counsel. Altering the schedule for any one facility has a domino effect on all others. The obligation to accommodate Respondents' request that the two 3.5 hour site inspections occur on a single day rather than across two days should be viewed against that backdrop.

Respectfully submitted this 4th day of March, 2022.

KURT R. ERSKINE
*United States Attorney*
Northern District of Georgia

/s/ *Aileen Bell Hughes*
AILEEN BELL HUGHES
GA Bar Number: 375505
Assistant United States Attorney
United States Department of Justice
Richard B. Russell Federal Building
75 Ted Turner Dr. SW, Suite 600
Atlanta, GA 30303-3309

*/s/Jeffrey R. Daniel*
Jeffrey R. Daniel
Georgia Bar No. 949075
NELSON MULLINS RILEY & SCARBOROUGH, LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363
Telephone: 404.322.6000
Facsimile: 404.322.6050
jeff.daniel@nelsonmullins.com

*Counsel for Cobb County School District and Fulton County School District*

(404) 581.6000
aileen.bell.hughes@usdoj.gov


KRISTEN CLARKE
Assistant Attorney General

SHAHEENA A. SIMONS
Chief

RENEE M.WOHLENHAUS
KELLY GARDNER WOMACK
Deputy Chiefs

ANDREA E. HAMILTON
VICTORIA M. LILL
CLAIRE D. CHEVRIER
FRANCES S. COHEN
PATRICK HOLKINS
LAURA C. TAYLOE
MICHELLE L. TUCKER
Trial Attorneys
Educational Opportunities Section

*/s/ Kelly Gardner Womack*
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 598-9603
kelly.gardner@usdoj.gov

*Counsel for Plaintiff*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this statement has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this brief has been prepared using 14-pt Times New Roman font.

/s/ *Aileen Bell Hughes*
AILEEN BELL HUGHES
ASSISTANT U.S. ATTORNEY

## **CERTIFICATE OF SERVICE**

I certify that, on this 4th day of March 2022, I electronically filed the

foregoing Consolidated Joint Discovery Statement with the Clerk of Court using

the CM/ECF system, in order to effect service upon all counsel of record.


/s/ *Aileen Bell Hughes*
AILEEN BELL HUGHES
ASSISTANT U.S. ATTORNEY