## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| PLAINTIFF, | |
| *v.* | Civil Action No. |
| **STATE OF GEORGIA,** | 1:16-cv-03088-ELR |
| DEFENDANT. | |

### CORRECTED CONSOLIDATED/JOINT DISCOVERY STATEMENT REGARDING THE UNITED STATES' RULE 45 SUBPOENAS FOR INSPECTION OF PREMISES WITHIN PIONEER RESA, NORTHWEST RESA, OCONEE RESA, AND METRO RESA

Plaintiff United States of America and nonparties the Pioneer RESA, the Habersham County School District, the Dawson County School District, and the Forsyth County School District (collectively "Pioneer Respondents") and Oconee RESA and Putnam County School District (collectively "Oconee Respondents"), Northwest Georgia RESA and Chattooga County School District (collectively "Northwest Respondents") and Metro RESA, being unable to resolve a discovery dispute despite meeting and conferring in good faith on several occasions, respectfully submit this Joint Statement pursuant to the applicable terms of the Court's standing order.

1

In December 2021, the United States issued 77 Rule 45 subpoenas to inspect sites and observe classrooms in 47 facilities housing Georgia Network for Educational and Therapeutic Support ("GNETS") programs.[1] Each subpoena includes a uniform, carefully considered, site visit protocol (attached hereto as Exhibit A) that identifies the terms of the inspections.

Respondents duly filed objections. After meeting and conferring, counsel narrowed the disputes to the following.

## 1. Must the United States Tailor a Specific Subpoena to Each Facility?

_United States' Position_

The United States' protocol purposefully facilitates its experts' use of a uniform methodology for collecting data and information from site inspections. Consistent access across facilities promotes the reliability of experts' opinions.

_Respondents' Position_

Rule 45 does not provide unfettered access and is not to be implemented without limitation. Protections exist in the rule itself to ensure non-parties are guarded against undue burden or expense Rule 45(d). These subpoenas, particularly as drafted, are an undue burden and expense to the non-parties. The United States made no effort to tailor the subpoenas to limit the burden and expense on the non-

---

[1] The United States served stakeholders claiming an interest in the program or the properties where the program operates, including GNETS programs, Regional Education Service Agencies ("RESA"s), and local educational agencies ("LEA"s).

parties. The United States can utilize a uniform methodology for collecting data and information for site inspections while still tailoring the subpoenas for each location in order to adequately inform the non-parties about amount of time needed for the site inspection and the evidence being sought for discovery. The subpoenas do not take into consideration the fact that each location varies significantly with regard to size[2] and scope of the program, yet the subpoena lists the same amount of time needed and same locations to be inspected, regardless of whether there is one GNETS class in the school, or ten GNETS classes. Judicial efficiency and conservation of public resources require the United States to narrow the Rule 45 subpoenas to serve subpoenas that are narrowed and drafted specifically for each site they are seeking to inspect rather than the vague and generalized subpoenas they sent. If the United States seeks to implement the subpoenas as written, they should carry the burden, as required under Rule 45 of pursuing a motion to compel and set out the basis for each specific subpoena

*United States' Reply*

Federal Rule of Civil Procedure 45 has been construed consistently with Rule 34 to permit "the broadest sweep of access, inspection, examination, testing,

---

[2] The United States has already been provided with documents responsive to subpoenas providing them with information letting them know exactly how many students are served at each location and exactly what facilities exist at each location.

sampling, copying, and photographing of documents, electronically stored information, or objects in the possession or control of another party." Wright and Miller, Federal Practice and Procedure, §2206; *see also Gaskin v. Commonwealth of Pennsylvania*, Civ. No. 94-4048, 1997 WL 734031, at *1 (E.D. Pa. Nov. 4, 1997) (quoting Wright and Miller §2206). Rule 34 specifies that the contents of a request must be described with "reasonable particularity" for each item or category to be inspected. Typically, a request runs afoul of the "reasonable particularity" requirement if it fails to specify the areas a party wishes to inspect. *See Callaway v. Exposiac Industries, Inc.*, No. C82-012N, 1982 U.S. Dist. LEXIS 10108, at *2 (N.D. Ga. June 25, 1982). Here, Respondents have more than sufficient notice of what and how the United States seeks to inspect. Indeed, Respondents fail to identify any specific way in which the notice provided by the subpoenas is inadequate.

Respondents' assertion that the United States should tailor the amount of time needed based on the characteristics of each site inappropriately assumes that these characteristics can be predetermined. Numerous factors that cannot be assessed until a team is onsite influence the length of a classroom observation and the total length of a site visit, including but not limited to the nature and type of instruction experts observe. Accordingly, the United States has identified a fairly short time limit for each site inspection that can be adjusted downward if the status of onsite factors

counsels in favor of doing so. Where a site inspection can be completed in less than 3.5 hours, the United States has ended, and will continue to end, the inspection early.

As to Respondents' concern with public resources, the United States notes that it provided Respondents' counsel with copies of the subpoenas at issue by email in December 2021 and requested that counsel accept service on behalf of her clients in order to minimize taxpayer costs. In each case, counsel declined to do so, forcing the United States to incur the expense of issuing each subpoena by process server. Counsel cannot now claim to be concerned with the conservation of public resources.

## 2. May Experts Discreetly Move Around the Classroom to Facilitate In-Session Observation?

### *United States' Position*

The United States designed its protocol to maximize the experts' ability to conduct meaningful classroom observations, while minimizing disruption. The protocol prescribes that the United States' experienced and highly trained experts will stand or sit, usually in "the back of the classroom," but allows "reasonable leeway" when "needed to observe what students are working on and students' level of engagement." Ex. A at 2-3.

This limitation provides the right degree of flexibility. If students are working individually on laptops, experts may need to view the screens so as to

gauge instructional content and students' engagement. Similarly, an expert may need to adjust her positioning to see and hear small group instruction.

*Respondents' Position*

Respondents object to the United States' experts having "leeway" to move about the classroom within the classroom during the classroom observations and expressed concern that, in so doing, the experts would disrupt the classroom environment and encroach on students' personal space. Respondents agreed that the experts need not be confined to the back of the classroom and may select their position for their observation, so long it is out of the way and not obtrusive. Respondents continue to ask that experts and attorneys not move about the classroom during the observation. The students served through the GNETS educational program, in particular, require intensive educational, behavioral, and therapeutic supports due to their disabilities and deserve access to their instruction without disruption. The site premises inspection should not intrude on their instructional day, particularly in light of the fact that the students and their parents are not parties to the lawsuit and have not been given the opportunity to consent to the site premises inspection.[3] Additionally, the site premises inspection is that of the program and facilities as a whole and not of any individual student. Classroom

---

[3]Non-Parties have no objection of the site visit before or after students are receiving instruction; however, that was rejected by the United States.

observations are conducted by school administrators on a regular basis to determine student engagement and appropriate instruction without an administrator moving about the classroom in such a way as to limit classroom disruption. It is expected that these experts can do the same. If the experts need to move freely in the classroom, that can be arranged when students are not receiving instruction.

*United States' Reply*

Classroom observations provide firsthand information regarding the nature and quality of curricula/instruction, classroom structure and management, the provision of therapeutic services and supports, student engagement and interaction, and the extent to which students can be served in more integrated settings. The United States experts, combined, have thousands of hours of classroom observation experience. The freedom to adjust one's position within a classroom, if necessary, supports the experts' ability to gather information needed to form reliable opinions.

Insofar as Respondents argue that giving experts the leeway to quietly adjust their positioning within a classroom will be "disrupt[tive]" without proffering any supporting evidence, courts have dismissed these kinds of unsubstantiated claims of classroom disruption. *See Santamaria v. Dallas Indep. Sch. Dist.*, Civ. No. 3:06-CV-692-L, 2006 U.S. Dist. LEXIS 33195, at *1, *3 (N.D. Tex. May 16, 2006); *Gaskin v. Commonwealth of Pennsylvania*, Civ. No. 94-4048, 1997 WL 734031, at *1 (E.D. Pa. Nov. 4, 1997); *Wyatt v. Hannan*, Civ. No. 3195-N, 1995 WL 699616, at *1 (M.D.

Ala. Nov. 8, 1995). This is especially appropriate here, as the United States' experts have already conducted site inspections of 22 GNETS facilities and generally have had no issues with the way in which they have exercised the discretion to adjust their positioning. The experts have a shared interest in minimizing disruption not only out of concern for the students and the school environment, but also to ensure their observations are of a typical classroom environment operating as it normally would.

**3. How Long May A Classroom Observation Last, and May the Experts, in Their Discretion, Return to a Classroom Visited Previously?**

*United States' Position*

Within a 3.5-hour cap for the entire site visit, the protocol gives experts appropriate discretion to determine where to spend time observing. To make observation worthwhile, experts need to react in real time to activities (or their absence) that provide them with the most useful information. Experts need freedom to leave a classroom when instructional activity is minimal, for example, and return to see if instruction has resumed or to change or confirm a prior impression. To resolve differences, the United States offers to limit observation in any one classroom to one hour. In the vast majority of instances, the experts spend far less time observing a single classroom. However, they occasionally feel that a longer observation period is particularly revealing and, thus, necessary for them to form their opinions. The experts' respective allocation of time among classrooms and

facilities does not impose any additional burden on Respondents given the total inspection time limit.

<u>*Respondents' Position*</u>

The overall request for a site visit of 3.5 hours is half a school day. The United States has noted each subpoena for two visits per location such that each school location will receive a full school day's site inspection and full day's disruption. And again, this may be true even if there is only one GNETS classroom in the school because the subpoenas have not been tailored to any given site. To the extent that the United States has contended that some of the site inspection may not take 3.5 hours, the subpoenas are vague. The United States has indicated that the average classroom observation is expected to last 15-20 minutes yet requests one hour per classroom and the ability to come back to classrooms once they leave. Respondents believe that this request is overly burdensome and disruptive to the classroom environment and has offered a cap of 40 minutes per classroom which is *twice* the amount of the claimed typical observation. Additionally, classroom observations are, by their nature, disruptive to the classroom environment and this is particularly true for these students who require consistency, routine, and structure. The United States seeks to conduct multiple site premises inspections at the same schools with different experts and now also seeks to be able to come and go in the same

classrooms. They should be expected to limit the disruption as much as possible in order to limit the impact on the students involved.

<u>United States' Reply</u>

Respondents have proffered no reason why a 20-minute classroom observation is permissible, but a longer one is not. The United States offered to limit individual classroom observations to a maximum of one hour during the meet and confer process but cannot commit to more restrictive limitations without threatening the discretion its experts need to respond to classroom events in real time. When comparing what the United States has proposed to what has been deemed appropriate by other courts, the United States' proposed inspections are fairly conservative. *See, e.g.*, *Santamaria v. Dallas Indep. Sch. Dist.*, Civ. No. 3:06-CV-692-L, 2006 U.S. DIST. LEXIS 33195, at *1, *3 (N.D. Tex. May 17, 2006) (rejecting claims of undue burden and permitting expert to observe classes at a single school "for up to three days, without interfering with classroom instruction."); *Wyatt v. Hannan*, Civ. No. 3195-N, 1995 WL 699616, at *1 (M.D. Ala. November 8, 1995) (permitting expert, outside the presence of defendants' counsel and without a staff escort, to tour an adolescent center, conduct classroom observations, and interview students and teachers at the conclusion of class).

To the extent Respondents contend that giving experts the right to return to a prior classroom is overly burdensome and disruptive, they are short on specifics.

The United States' experts will only return to a prior classroom for observation if it is necessary for them to confirm or form their opinion. The United States' experts have retained discretion over the length of their classroom observations and the need to return to a prior classroom during the 22 site inspections they have conducted at GNETS facilities since November 2021. This discretion has not resulted in undue disruption.

4. **May Experts Take Photographs of Site Locations, Provided Photographs Do Not Contain Images of Students, Staff, or FERPA-Protected Material?**

*United States' Position*

The United States' experts "shall have the right to document the nature, condition, and appearance of the premises via photographs so long as the photographs taken do not include students, parents/guardians, building personnel, or any other images that implicate the Family Educational Rights and Privacy Act." Taking photographs of the premises can be done silently through the use of a cell phone without disruption.

*Respondents' Position*

Respondents object to any photographs being taken that violate students right to privacy or the Family Educational Rights and Privacy Act and/or otherwise disrupt the educational environment. Respondent has offered to provide photographs of the premises and to allow the United States to take photographs

when/where students are not present. It is Respondents' understanding that the United States has agreed that their experts do not intend to take photographs of students or any information that is otherwise protected by FERPA and they have further agreed that: (1) if any photos are taken that contain an image of staff, students, or personally identifiable information (PII), the United States agrees to redact or blur such images in the photograph and (2) that DOJ will provide Respondents with a copy of the photos taken during the site visit within 30 days and that we may also redact or blur any images of staff, students and PII. Respondents agreed with this protocol.

Respondent further requests that no photographs are taken while students are in the classroom as this could make students uncomfortable and be disruptive. While the United States contends that they will not take photographs of the students, it ignores the fact that students may not have the capacity to know whether photographs are actually being taken of them. Respondents want to ensure that students feel comfortable in the classroom environment.

*United States' Reply*

Rule 34 specifically provides for a party's authority to seek "entry onto designated land… so that the requesting party may… photograph… any designated object or operation on it." Courts have upheld this right, including when the inspection involved disabled children. *New York State Ass'n for Retarded Children*

*v. Carey*, 706 F.2d 956, 960–61 (2d Cir. 1983) (concluding the district court did not abuse its discretion by permitting plaintiffs' counsel, consultants, and experts to inspect state facility for disabled children and "to take photographs, make observations, take notes, . . . and interview any class member, staff member, or employee desired outside the presence of defendants, their counsel, and representatives.").

In order for the United States' experts to complete their visits within the designated time block, they cannot wait for students to exit every classroom before taking pictures, especially given the number of classrooms they intend to visit, the difficulty of planning around classroom transitions, and the fact that many GNETS students (especially those in self-contained classrooms and in elementary classrooms) are in the same classroom for the entire school day. The United States' experts are well within their rights to take their own pictures so that they dictate how they capture images of the facilities and ensure that those images suit their needs. The experts will ensure that they take photographs in a silent, minimally disruptive manner. Indeed, they have done just that on the site visits of the 22 facilities that have been completed. Respondents provide no evidence that any of the photographs taken by the experts to date violate FERPA or that students have been aware of, or complained about, these photographs. In most instances, photographs are taken of hallways and areas of the building other than classrooms. However, if there is an

13

object in a classroom that an expert deems relevant, the expert should have the freedom to discretely take the photograph and continue on with the site visit.

**5.** **May Experts Ask Questions of School Personnel Incidental to their Visit?**

*United States' Position*

Under the United States' site visit protocol, "[t]he experts on each team shall be permitted to ask questions of the GNETS director or site-based administrator that are incidental to the inspection of the premises. This includes questions about the specific use(s) of particular rooms or areas of the building, the extent to which GNETS students are permitted to use those rooms or areas of the building, basic facts regarding the nature of any classrooms entered and/or observed (e.g., the grade level(s) of the classroom, subject matter, etc.), whether classroom attendance that day reflects actual enrollment, the job title of school staff interacting with students, and, generally, what students are working on." Ex. A at 2. These incidental questions provide important context for what experts observe during site inspections. For that reason, they must be asked and answered contemporaneous with the site inspection.

*Respondents' Position*

Respondents contend that Rule 45 subpoenas for premises inspections entitles the Unites States to a inspect premises, not to a deposition and questioning of the Respondents' staff. Rule 45 inspection of premises entitles the United States to just that – the ability to inspect the premises. If the United States seeks a deposition,

they should pursue it through the existing avenues available for such.  To the extent that the United States is seeking "incidental" information about the locations being inspected, extensive information about each location has already been provided by the Respondents about each of the programs, facilities, and classrooms, including class descriptions, student rosters and even student files.  Respondents have agreed to provide general information about the classrooms/programs/school in advance and further agreed that the United Statement may submit questions in accordance with agreed upon topics in advance (such as those listed in the subpoena's Attachment A).  Respondents also agreed that subsequent questions may be submitted on-site to counsel for consideration but declined to allow staff to be questioned during the site premises inspection.  Instead, the United States seeks a roving deposition that goes well beyond the scope of a Rule 45 premises inspection.

Courts have required parties to justify the discovery sought is intrusive and burdensome.  Likewise, simply pursing the information under color of a site inspection does not entitle the United States to circumvent the protections afforded under the rules that exist for depositions.  Courts have found this to be true even when requested by parties to a case seeking to question employees of the opposing party informally during a site inspection, and the Court rejected this stating that, "While the presence of defendant's attorneys will give the interrogations the appearance of depositions, the safeguards of true depositions will be absent."

*Belcher v. Bassett Furniture Industries Inc.*, 588 F. 2d 904, 908. (4th Cir. 1978). "Plaintiff could recast any number of far-reaching inquiries as falling within the 'operations, premises, processes and procedures viewed during the facility inspection," creating the same danger of unlimited and "roving depositions.'" *U.S. v. Territory of Virgin Islands*, 280 F.R.D. 232, 237 (2012) (citing *Belcher)*. Here, Respondents have not voluntarily agreed to questioning, are not parties to the case and the United States has not demonstrated justifiable cause to be able to gather such information outside the existing parameters of the discovery process.

<u>United States' Reply</u>

Federal Rule of Civil Procedure 45 has been construed consistently with Rule 34 to permit "the broadest sweep of access, inspection, examination, testing, sampling, copying, and photographing of documents, electronically stored information, or objects in the possession or control of another party." Wright and Miller, Federal Practice and Procedure, §2206; *see also Gaskin v. Commonwealth of Pennsylvania*, Civ. No. 94-4048, 1997 WL 734031, at *1 (E.D. Pa. Nov. 4, 1997) (quoting Wright and Miller §2206). Consistent with this broad sweep, courts have upheld the right of parties to ask questions during a Rule 45 inspection. *See Barnhardt v. Meridian Mun. Separate Sch. Dist.*, Civ. No. 4:65-cv-1300, 2012 U.S. Dist. LEXIS 42460, at *10-11 (S.D. Miss. Mar. 28, 2012) (permitting sit-down interviews during site inspections with school personnel); *Kenny A. v. Perdue*, Civ

Act. 1:02-cv-1686, 2004 US Dist. LEXIS 33464 (N.D. Ga., Dec. 3, 2004) (permitting experts to conduct private interviews with children and informal interviews with staff); *Wyatt v. Hannan*, Civ. No. 3195-N, 1995 WL 699616 at *1 (M.D. Ala. Nov. 8, 1995) (permitting experts to conduct private interviews with students and teachers). The contextual questions the United States' experts intend to ask administrative personnel plainly fall within the scope of a Rule 45 inspection.

To the extent Respondents argue that the proposed inspections are unduly burdensome because they require a GNETS program administrator or site-based administrator to answer questions from the experts and thus subject the administrators to "roving depositions," those arguments are unpersuasive. In *New York State Association for Retarded Children v. Carey*, the court acknowledged the danger that "interrogation of . . . employees, conducted informally, could amount to a roving deposition, taken without notice, through the [facility] of persons who were not sworn and whose testimony was not recorded, and without any right by the defendant to make any objection to the questions asked." 706 F.2d at 961. However, the Second Circuit held that the lower court did not err in concluding that the danger did not outweigh the value of the proposed inspection in the search for the truth because "plaintiff counsel's claims of noncompliance were quite specific," "[a]lmost all the out-of-court statements by . . . employees provisionally admitted were received for the purpose of enabling plaintiffs' experts to express an opinion as

permitted by FRE 703," and the observations to which plaintiffs' experts testified were accompanied by "documentary and photographic exhibits." *Id.* Here, as in *Carey*, the United States' claims of unlawful discrimination are specific, the statements from administrators are being elicited to enable the United States' experts to render opinions, and those opinions will be supported not only by administrators' statements but also by documentary and photographic evidence.

Although Respondents rely on *Belcher* to support their claim that informal questioning should be prohibited during a Rule 45 inspection, that case was decided against "the backdrop of a boilerplate complaint without any specific allegations of discrimination and a motion which failed 'to specify any reason or need for the inspection, simply relying on rule 34.'" *Clay v. Consol Penn. Coal Co., LLC*, No. 12 Civ. 92, 2013 WL 12373591, at * 1 (N.D. W. Va. Apr. 25, 2013) (characterizing *Belcher*). Different facts warrant different outcomes. The *Carey* court noted as much. *See Carey*, 706 F.2d at 961 (concluding that "[a] different balance [from that in *Belcher*] must be struck in the present case"). Other courts have done the same. *See, e.g.*, *U.S. Equal Emp't Opportunity Comm'n v. Akebono Brake Corp.*, No. 16 Civ. 3545, 2018 WL 1365796, at *3, 6 (N.D. W.Va. Mar. 16, 2018); *Clay*, 2013 WL 12373591, at *2.

Respectfully submitted this 6th day of March, 2022.

KURT R. ERSKINE
*United States Attorney*
Northern District of Georgia

/s/ *Aileen Bell Hughes*
AILEEN BELL HUGHES
GA Bar Number: 375505
Assistant United States Attorney
United States Department of Justice
Richard B. Russell Federal Building
75 Ted Turner Dr. SW, Suite 600
Atlanta, GA 30303-3309
(404) 581.6000
aileen.bell.hughes@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General

SHAHEENA A. SIMONS
Chief

RENEE M.WOHLENHAUS
KELLY GARDNER WOMACK
Deputy Chiefs

ANDREA E. HAMILTON
VICTORIA M. LILL
CLAIRE D. CHEVRIER
FRANCES S. COHEN
PATRICK HOLKINS
LAURA C. TAYLOE
MICHELLE L. TUCKER
Trial Attorneys
Educational Opportunities Section

/s/Beth F. Morris
Beth F. Morris
Georgia Bar No. 153013
HARBEN, HARTLEY & HAWKINS, LLP
Gateway Professional Center
340 Jesse Jewell Parkway, Suite 750
Gainesville, Georgia 30501
Telephone: (770) 534-7341
Facsimile: (770) 532-0399
Email: bmorris@hhhlawyers.com

*Attorney for Non-Parties Pioneer Regional Educational Service Agency, Oconee Regional Educational Service Agency, Metro Regional Educational Service Agency, Northwest Georgia Regional Educational Service Agency, Chattooga County School District, Habersham County School District, Dawson County School District, Forsyth County School District, and Putnam County School District*

*/s/ Kelly Gardner Womack*
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 598-9603
kelly.gardner@usdoj.gov

*Counsel for Plaintiff*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this statement has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this brief has been prepared using 14-pt Times New Roman font.

/s/ *Aileen Bell Hughes*
AILEEN BELL HUGHES
ASSISTANT U.S. ATTORNEY

## CERTIFICATE OF SERVICE

I certify that, on this 6th day of March 2022, I electronically filed the

foregoing Consolidated Joint Discovery Statement with the Clerk of Court using

the CM/ECF system, in order to effect service upon all counsel of record.


/s/ *Aileen Bell Hughes*
AILEEN BELL HUGHES
ASSISTANT U.S. ATTORNEY