# EXHIBIT E

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | 1:16-CV-03088-ELR |
| v. | ) | |
| | ) | |
| STATE OF GEORGIA, | ) | |
| | ) | |
| Defendant. | ) | |

**OBJECTION TO SUBPOENAS TO PERMIT INSPECTION OF PREMISES BY METRO RESA, NORTHWEST GEORGIA RESA AND CHATTOOGA COUNTY SCHOOL DISTRICT**

**I.    INTRODUCTION**

The Metro Regional Educational Service Agency ("Metro RESA") is the fiscal agent for the North Metro GNETS Program ("North Metro") which is part of the Georgia Network of Educational and Therapeutic Supports ("GNETS"). North Metro provides comprehensive educational and therapeutic support on the continuum of supports for special education students in local school districts in the North Metro Atlanta Area including North Atlanta, North Fulton, Gwinnett County and Buford City Schools.

The Northwest Georgia Regional Educational Service Agency ("Northwest Georgia RESA") is the fiscal agent for Northwest Georgia GNETS ("Northwest

Georgia") which is part of the Georgia Network of Educational and Therapeutic Supports ("GNETS"). Northwest Georgia GNETS provides comprehensive educational and therapeutic support on the continuum of supports for special education students in seventeen local school districts to in Northwest Georgia. Amongst the school districts served is the Chattooga County School District. Chattooga County consists of five schools serving a little over 2600 students in Summerville, Georgia.

Neither Metro RESA, nor the Northwest Georgia RESA, nor the Chattooga County School District, or any other local educational agency served by those RESAs or their GNETS programs are parties to this lawsuit. The students educated in these schools and GNETS programs are, likewise, not parties to this lawsuit. Nevertheless, significant demands are being made of RESAs, GNETS programs, local school districts, their employees, and the students responsive to third party subpoenas served by the United States pursuant to Fed. R. Civ. P. Rule 45 with little regard to any attempt to tailor the subpoenas to each location, to minimize the burden placed on them or the students involved.

## II. BACKGROUND

Prior to serving any subpoenas pursuant to Fed. R. Civ. P. Rule 45, the United States attempted to schedule voluntary "site visits" and premises inspections at GNETS programs and local school districts across the state in connection with this pending litigation. In attempt to collaborate, GNETS programs, their fiscal agents and counsel have engaged in extensive communications about the purpose and scope of these visits. Concerns have been raised with the United States on behalf of GNETS programs, local school districts and students with regard to the burden of the visits, disruption to the school environment, the nature of the classroom observations proposed, the number of individuals requested to participate, the request to question individuals outside, student confidentiality concerns, concerns for safety protocols. While efforts were made to resolve the issues that arose, because the requests were not made under the color of a subpoena or any other legal parameters, it was difficult to discern the scope of the visits in connection with this legal matter.

The United States has moved forward with serving subpoenas on GNETS and local educational agencies throughout the state of Georgia. Other than seeking to inspect different locations, the content and scope of the subpoenas are identical. This is true regardless of the number of schools the United States is seeking to inspect,

the number of GNETS classrooms at a given school location, the issues for discovery, or the role of the program in this underlying litigation. Each of these fiscal agents have already responded to a subpoena for records and provided hundreds of pages of documents responsive to those requests. The United States has information about the programs, including information about the classrooms, and student rosters which enabled them to tailor their requests for the sake of efficiency for the parties involved. Instead, they sent the same blanket subpoenas to all parties to inspect the premises of the schools involved.

Closer inspection of the subpoenas, however, also reveals that the requests go well beyond a site inspection outside the scope of Rule 45, are overly burdensome and the RESAs and local school districts hereby object on the grounds set forth below.

## OBJECTIONS

### III. THE NON-PARTIES OBJECT TO THESE SUBPOENAS AS THEY ARE OVERLY BURDENSOME AND OUTSIDE THE SCOPE OF RULE 45

The non-parties involved object to the subpoenas served by the United States. A non-party may object to a subpoena so long as the non-party has some personal stake in the subpoena. *Colonial Funding Network, Inc. v. Genuine Builders, Inc.,* 326 F.R.D. 206 (2018). Metro RESA, Northwest Georgia RESA, and Chattooga

4

County School District all have a stake in this subpoena as the United States seeks to inspect their premises, conduct observations of their classrooms and the inspections are likely to have an impact on their employees and students. The inspections are also time consuming and costly to each of the programs involved.

The subpoenas served on these third parties are overly burdensome. Fed. R. Civ. P. 45(d)(1) requires that "a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." The subpoenas served, however, impose a significant burden and little to no effort was made to avoid such a burden. The blanket subpoenas were served on all non-parties and include large windows of time, multi-day visits, with no indication as to when they may come or go during the school day and include catch all lists of portions of the facilities they seek to inspect – whether they exist in a given school or not.

The subpoenas also ask that each GNETS and school involved sacrifice large amounts of time and allow experts and attorneys to march through schools and conduct hours of observations. This is a considerable disruption to any school, particularly where they are providing therapeutic supports to students with significant disabilities and behavioral needs. *See, Martinelli v. Petland, Inc*. No. 09-529-PHX-DGC, 2010 WL 3947526 (D. Kan. Oct. 7, 2010).

5

Classroom observations, themselves, go beyond the scope of an inspection of the premises which could be done outside school hours and limit any disruption to students and instruction. The subpoenas further demand to have "leeway" to move about the classrooms and determine the duration of the observations they will be conducting without regard for the students' needs and ongoing instruction. They shall also be permitted to a classroom or interact with students and take photographs. To the extent that the United States seeks to take photographs of students during classroom instruction. The non-parties have offered for photographs to be taken during non-instructional times and object to any photographs to be taken during classroom instruction or for actions to be taken that may otherwise make students feel uncomfortable, unsafe or in any way disrupt the instructional setting.

Nothing in Rule 45 contemplates such interactions, especially where students are involved and without their parents' knowledge and consent. Again, these students, their parents, and the schools involves are not parties to this lawsuit, but the expectations to be involved and share otherwise confidential information is as extensive as if they are.

The non-parties also object to questioning during the premises inspection. To the extent that the United States has sought "incident questions," they have already been provided with extensive information about each location that they are visiting

6

and questioning staff during instructional time, takes staff away from the students. If they are seeking to inspect the premises and have more extensive access to the buildings and even staff, they have been offered to do so outside the instructional day. During the instructional day, all staff are assigned for the explicit purpose of serving, supporting, and instructing students. Rule 45 is not a deposition and the staff not required to participate for the purposes of questioning. This remains particularly true where they are not parties to the case.

While each subpoena identifies a 3.5-hour window of time, the subpoenas each set two visits – a total up to 7 hours of site inspection and classroom observations per school location. Some of the visits identified have only one GNETS classroom and because the subpoena does not limit the amount of time for the classroom observation portion of the site inspection and leaves the observation to the discretion of the experts, a single classroom observation could last hours. Even if each total visit were only 3.5 hours, this time span is a substantial burden on any given school and the students served there when a typical school day is approximately seven hours. Given that the subpoenas seek to conduct these visits during active school hours, rather than to inspect the premises when students are not present, this request takes valuable staff away from existing obligations and disrupts the school environment for large periods of time. It may seem unobtrusive when

7

viewed as a singular visit, but the United States sent seven subpoenas to the North Metro Program as a whole, seeking to conduct two different site inspections on two different dates and totals 49 hours' worth classroom observations. If the United States does not intend to use all of these hours, that is completely unclear and the specific inspections to be conducted are vague.

While the subpoenas indicate that they are attempting to reduce staff by splitting their teams, doing so increases attorney's fees for the parties involved and also impacts the GNETS by requiring them to divide staff at multiple locations – staff that would otherwise be attending to their students. If the experts share expertise, they should be contained to limit the amount of time demanded by the subpoenas rather than expanding the total number of visits. The United States also demands that they be allowed to send two experts and one attorney into each classroom, while some of the classroom may only have 5 students in it – so the number of adults might be very intimidating for the students involved as well. The well being and consideration for the non-party students involved who are attempting to be educated in their individualized, therapeutic educational environment requires both consideration and protection so that there is as little disruption as possible.

Overall, the non-parties object to these subpoenas. If they are to be allowed, the non-parties ask that subpoenas be narrowed based on each program so that

focus of each inspection is clear and that the premises be inspected outside of school hours to limit the disruption to school staff and students and to help ensure safety during the ongoing pandemic.

### I. THE NON-PARTIES ARE ENTITLED TO ATTORNEY'S FEES

Fed. R. Civ. P. Rule 45 allows for the award of attorney's fees when "a non-party incurs significant expense from compliance with a subpoena." See, *Valcor Engineering Corp. v. Parker Hannfin Corp.,* 2018 WL 3956732 (2018). In this matter, the non-parties have already incurred significant attorney's fees in their attempts to confer with and comply with requests for site inspections even prior to the subpoenas. Upon receipt of these subpoenas, additional costs are incurred whereupon the non-parties will need to have legal counsel present at each of the visits (and in some cases at two locations on the same date) and in pursuing this objection (many of which were previously raised with counsel for the United States). It is also clear from the continued communications that additional non-parties will be impacted and incurring similar expense, with little regard to the burdens or costs placed on them.

## CONCLUSION

The Metro RESA, Northwest Georgia RESA and Chattooga County School District object to the site visits scheduled for January 10, 2022 and January 12, 2022.

## CERTIFICATION

Counsel certifies pursuant to Local Rule 5.1 that this document has been prepared in Times New Roman 14-point font with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch.

This 21st day of February, 2022.

                                      **HARBEN, HARTLEY & HAWKINS, LLP**

                                      */s/ Beth F. Morris*

Gateway Professional Center       Beth F. Morris
340 Jesse Jewell Parkway, Suite 750   Georgia Bar No. 153013
Gainesville, Georgia 30501
Telephone: (770) 534-7341         Reagan Sauls
Facsimile: (770) 532-0399          Georgia Bar No. 311422
Email: bmorris@hhhlawyers.com
Email: rsauls@hhhlawyers.com

                                      ATTORNEYS FOR NON-PARTIES
                                      METRO REGIONAL EDUCATIONAL
                                      SERVICE AGENCY, NORTHWEST
                                      GEORGIA REGIONAL EDUCATIONAL
                                      SERVICE AGENCY AND CHATOOGA
                                      COUNTY SCHOOL DISTRICT

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of February, I electronically filed the *Objection to Subpoenas to Permit Inspection of Premises By Metro RESA, Northwest Georgia RESA and Chattooga County School District* with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

This 21st day of February, 2022.

**HARBEN, HARTLEY & HAWKINS, LLP**

*/s/ Beth F. Morris*

Gateway Professional Center
340 Jesse Jewell Parkway, Suite 750
Gainesville, Georgia 30501
Telephone: (770) 534-7341
Facsimile: (770) 532-0399
Email: bmorris@hhhlawyers.com

Beth F. Morris
Georgia Bar No. 153013

ATTORNEY FOR NON-PARTIES
METRO REGIONAL EDUCATIONAL
SERVICE AGENCY, NORTHWEST
GEORGIA REGIONAL EDUCATIONAL
SERVICE AGENCY AND CHATOOGA
COUNTY SCHOOL DISTRICT