IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>STATE OF GEORGIA,<br><br>DEFENDANT. | Civil Action No.<br>1:16-cv-03088-ELR |

## NON-PARTIES' RESPONSE TO MOTION TO COMPEL

### INTRODUCTION

The Metro Regional Educational Service Agency ("Metro RESA") is the fiscal agent for the North Metro GNETS Program ("North Metro"), which is part of the Georgia Network of Educational and Therapeutic Supports ("GNETS"). North Metro provides comprehensive educational and therapeutic support on the continuum of supports for special education students in local school districts in the North Metro Atlanta Area including North Atlanta, North Fulton, Gwinnett County, and Buford City Schools.

The Northwest Georgia Regional Educational Service Agency ("Northwest Georgia RESA") is the fiscal agent for Northwest Georgia GNETS ("Northwest

Georgia"), which is part of the Georgia Network of Educational and Therapeutic Supports ("GNETS"). Northwest Georgia GNETS provides comprehensive educational and therapeutic support on the continuum of supports for special education students in seventeen local school districts to in Northwest Georgia. Amongst the school districts served is the Chattooga County School District. Chattooga County consists of five schools serving a little over 2600 students in Summerville, Georgia.

The Pioneer Regional Educational Service Agency ("Pioneer RESA") is the fiscal agent for the Futures Program ("Futures"), which is part of the Georgia Network of Educational and Therapeutic Supports ("GNETS"). Futures provides comprehensive educational and therapeutic support on the continuum of supports for special education students in fifteen local school districts to in Northeast Georgia. Amongst the school districts served is Dawson County School District, Habersham County School District, and Forsyth County School District.

The Oconee Regional Educational Service Agency ("Oconee RESA") is the fiscal agent for GNETS of Oconee, which is part of the Georgia Network of Educational and Therapeutic Supports ("GNETS"). GNETS of Oconee provides comprehensive educational and therapeutic support on the continuum of supports for special education students in six local school districts in Central Georgia.

Amongst the school districts served is the Baldwin County School District and Putnam County School District.

Neither Metro RESA, Northwest Georgia RESA, Pioneer RESA, Oconee RESA, the Chattooga County School District, the Dawson County School District, the Habersham County School District, the Forsyth County School District, and the Putnam County School (hereafter referred to jointly as "Non-Parties"), nor any other local educational agency served by those RESAs or their GNETS programs are parties to this lawsuit. The students educated in these schools and GNETS programs are, likewise, not parties to this lawsuit. Nevertheless, significant demands are being made of the RESAs, GNETS programs, local school districts, their employees, and the students by the third party subpoenas served by the United States, with barely any attempt to tailor the subpoenas to each location and minimize the burden placed on them or the students involved.

## ARGUMENT

**I.   The United States' Demands That Non-Parties Orchestrate Discovery on Its Behalf Caused the Delay and Has Unduly Burdened the Non-Parties**

In November 2021, the Unites States contacted counsel for the Non-Parties, stating that it would like to schedule voluntary visits to certain GNETS programs across the state in December and January, some of which counsel represents. At the

outset, counsel indicated that it was important not just to communicate with the GNETS program and their fiscal agent, but also the local educational agency ("LEA") involved, particularly where the GNETS classroom was located, as they would have legitimate interest and concern regarding the visit.  While the classroom may be staffed by the fiscal agent, the classroom may be housed in a building owned by the LEA and populated by LEA students.  The United States indicated that it wanted to tour the buildings, observe the students and the classrooms, implicating rights of more than one legal entity. The United States complains in its Motion that the coordination of the visits has been complicated by the number of parties involved, but that does not mean that any parties' rights should be shirked due to the inconvenience of coordinating with more than one legal entity. It remains important to protect the rights of the students and staff involved, particularly here where they are not parties to this lawsuit.

On November 9, 2021, counsel for Non-Parties shared dates that each of these Non-Parties and their counsel were available. But because no information was provided about which specific locations the United States planned to visit, Non-Parties could not inform the LEAs involved and it appeared that the United States had not informed the LEAs that they were seeking to visit their premises.  On November 17, 2021, counsel for Non-Parties followed up with the United States

asking whether a visit was going forward in December, reiterating that Thanksgiving Break was upcoming and due to schools being closed there was little time left to coordinate and schedule with the LEAs.

On Friday November 19, 2021, the United States sent for the very first time the list of program locations it was seeking to visit on December 6-7, 2021, just five school days later. These locations included two different GNETS programs located in five different LEAs, represented by four different legal counsel. This list was not sent to the LEAs or their counsel; it was only sent to counsel for the GNETS with the apparent expectation that counsel for GNETS would contact the LEAs and coordinate the visits for the United States. No procedures, expectations or scope of the visits were included in the list. The following week, school districts were closed for Thanksgiving Break.

In a continued attempt to facilitate the visits, however, the Non-Parties contacted any parties that they could reach to put them in touch with the United States. At the same time, the Non-Parties' counsel began discussing the protocols for the visits, which the United States had not yet shared with the Non-Parties despite requests. On November 24, 2021, a phone conference regarding the upcoming visits was held and protocols were finally shared to both counsel for Non-Parties and counsel for another LEA. Concern was also expressed that not all parties were

represented on the call, so those parties would need to be involved going forward. While the United States flippantly refers to the coordination between non-parties as a "game of Whack-A-Mole" in its Motion, it continued to be apparent that the onus was on the Non-Parties to contact any other interested parties and to coordinate with them, as the United States did not have plans to do so prior to the visits, which is contrary to its obligations as the subpoenaing party.

The Non-Parties first had an opportunity to review the proposed protocols on November 29, 2021 when schools re-opened. Other non-parties did not become aware of the proposed visits or the proposed protocols until that week because the United States had not contacted any of them. On December 2, 2021, counsel for the Non-Parties reached out to the United States, detailing responses to the proposed protocols and procedures under which all parties were comfortable going forward. It is of note that *at no time* has any of the non-parties refused to allow the site inspections to proceed or objected to the site inspections, which include classroom observations of students with significant disabilities. Rather, the only objections have been to the amount of disruption caused by the visits and proposals for ways to limit that disruption. These proposals, as further detailed in the Joint Discovery Plan, set out recommendations to limit the number of individuals in the room (especially given that some of the classrooms only have a few students in them), limit movement

in the classroom so as not to interfere with classroom instruction, limiting the amount of time for the classroom observations, requests that experts not take photographs while students are in the classroom and other such proposals. When the United States did not agree to the proposals by the non-parties involved, it sent subpoenas reiterating its position and has not wavered from that position since.

Through numerous emails, phone calls and hours and hours of attempts to resolve these concerns, the United States and the Non-Parties have been unable to do so. The Non-Parties have continued to reiterate that these site premises inspections and classroom observations do not involve typical students and are not typical classroom observations; therefore, a heightened level of care should be taken with regard to the amount of disruption that could result.  They have repeatedly advocated on behalf of the students impacted and simply asked that agreements be reached to protect those students' interests and to limit the disruption to instruction and the services these students require.

## II.     Rule 45 Does Not Entitle the United States to Unfettered Access

Plaintiff cites *Gaskin v. Commonwealth of Pennsylvania*, No. Civ.A 94-4048, 1997 WL 734031, at *1 n.3 (E.D. Pa. Nov. 4, 1997) (quoting Wright & Miller) to support its position that Non-parties should be compelled to allow unfettered access

for classroom observations. Yet, this is not what Non-Parties are arguing and have shown above that Non-Parties have worked for days and weeks in order to work on setting up reasonable protocols for this facility visit. Non-Parties would like to point out that unfettered access would be appropriate for the site visit when students are not present. It is only the Non-Parties' concerns with complying with FERPA and not disrupting students that drive them to urge Plaintiff to agree to reasonable terms of these visits and that is exactly what *Gaskin* held.

For non-parties, Rule 45 of the Federal Rules of Civil Procedure requires a district court to quash or modify the subpoena if it is "unreasonable or oppressive." Fed.R.Civ.P. 45(c)(3). Rule 45 provides that a subpoena must be modified or quashed if it "requires disclosure of privileged or other protected matter" or "subjects a person to [an] undue burden." Fed. R. Civ. P. 45(c)(3); *see Queen v. State Farm Mut. Ins. Co.,* No. 19-21931-CIV, 2019 WL 3716806, at *3 (S.D. Fla. Aug. 7, 2019); *Pinehaven Plantation Properties, LLC v. Mountcastle Family LLC*, No. 1:12-CV-62, 2013 WL 6734117, at *1 (M.D. Ga. Dec. 19, 2013) ("In short, a district court may limit discovery when the burden of compliance outweighs its likely benefit or relevance."). "Even if the discovery may be relevant for impeachment purposes, the court may nonetheless limit non-party discovery when the information is available through less-intrusive avenues." Id. (*quoting Buckley Towers Condo., Inc. v. QBE*

*Ins. Corp.*, No. 07-22988-CV, 2008 WL 2645680, at *5 (S.D. Fla. June 26, 2008));

*see also*, *Castleberry v. Camden Cty.*, 331 F.R.D. 559, 563 (S.D. Ga. 2019).

The Court in *Gaskin* ruled that the observations in classrooms could go forward, based on the non-parties' argument that the scope of discovery for nonparties under Rule 45 is more limited than for parties under Rule 34; therefore, they could not be compelled to submit to the classroom observations through the issuance of subpoenas pursuant to Rule 45. *Gaskin* at *2. Further, the Court ruled that counsel for plaintiffs must give the school districts adequate notice prior to any on-site visits and to minimize disruption to the educational process. *Id.*

"What constitutes unreasonableness or oppression is, of course, a matter to be decided in the light of all the circumstances of the case...." *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C.Cir.1984) (quoting 5A Moore's Federal Practice, § 40.05[2] n. 44)); *Queen v. State Farm Mut. Ins. Co.*, No. 19-21931-CIV, 2019 WL 3716806, at *2 (S.D. Fla. Aug. 7, 2019).

These subpoenas, as drafted, are an undue burden and expense to the non-parties. The United States made no effort to tailor the subpoenas to limit the burden and expense on the non-parties. The United States can utilize a uniform methodology for collecting data and information for site inspections, while still tailoring the subpoenas for each location in order to adequately inform the non-parties about

9

amount of time needed for the site inspection and the evidence being sought for discovery. The subpoenas do not take into consideration the fact that each location varies significantly with regard to size[1] and scope of the program. Yet, the subpoena lists the same amount of time needed and same locations to be inspected, regardless of whether there is one GNETS class in the school, or ten GNETS classes. Instead, the burden is being placed on the non-party to make their premises available for a span of time, rather than the burden being placed on Plaintiff to tailor the subpoena to its actual needs and inform the non-party of how much time might actually be needed, based on the scope of the visit and the scope of discovery.

The United States continues to rely on case law and the heightened importance of discovery outlined in cases such as the *New York Ass'n for Retarded Children v. Carey*, but that case involved parties. The rights, involvement and obligations of parties engaged in litigation are significantly different than those of a non-party and they need not be compared. To suggest that any non-party can and should be dragged into cumbersome discovery in the same manner as a party is simply inappropriate and not what is envisioned in the Federal Rules. It is for this

---

[1] The United States has already been provided with documents responsive to subpoenas providing them with information letting them know exactly how many students are served at each location and exactly what facilities exist at each location.

purpose that Fed. Rule 45 set up specific protections for non-parties. While the Non-Parties do not dispute that the United States believes that the information it is seeking in discovery is important to its case, the students and their parents have no ability to consent to these premises' inspections.

Judicial efficiency and conservation of public resources require the United States to narrow the Rule 45 subpoenas to serve subpoenas that are narrowed and drafted specifically for each site they are seeking to inspect, rather than the vague and generalized subpoenas it sent. If the United States seeks to implement the subpoenas as written, it should carry the burden, as required under Rule 45, to set out the basis for each specific subpoena for each specific location.

Furthermore, the Non-Parties object to any photographs being taken that violate students' right to privacy or the Family Educational Rights and Privacy Act and/or otherwise disrupt the educational environment. Respondent has offered to provide photographs of the premises and to allow the United States to take photographs when/where students are not present. It is the Non-Parties' understanding that the United States has agreed that its experts do not intend to take photographs of students or any information that is otherwise protected by FERPA and it has further agreed that: (1) if any photos are taken that contain an image of staff, students, or personally identifiable information (PII), the United States agrees

to redact or blur such images in the photograph and (2) that DOJ will provide Respondents with a copy of the photos taken during the site visit within 30 days so that they may also redact or blur any images of staff, students and PII.

The Non-Parties further requested that no photographs are taken while students are in the classroom, as this could make students uncomfortable and be disruptive. While the United States contends that it will not take photographs of students, it ignores the fact that students may not have the capacity to know whether photographs are actually being taken of them. The Non-Parties want to ensure that students feel comfortable in the classroom environment. Again, Non-Parties are not saying pictures cannot be taken, but that those taken must be in accordance with FERPA and do not disrupt instruction in the classrooms. The Non-Parties have offered to allow the United States to take photographs when students are not present, including in classrooms. Again, the primary concern is the well being of the students during the site inspection. It is unclear why photographs must be taken during instruction if they are not being taken of students and the United States has been unwilling to reach a compromise on this issue.

Likewise, the Non-Parties have requested that the United States limits any single classroom observation to 40 minutes. While the United States has contended that a typical observation will last 15-20 minutes, it demanded that it be entitled to

observe for one hour and be able to return to any given classroom for a subsequent observation. Non-Parties have offered twice the length of what the United States experts have, in their experience, spent on a typical single observation. It is, therefore, unreasonable to ask for three times or more in length for an observation.

Finally, the United States has contended that its experts need to be able to move about the classroom during instruction. This is incredibly disruptive to instruction and the students attempting to focus. It can be intimidating or confusing to these students to have individuals who they do not know milling about the classrooms. School administrators who conduct observations for the purposes of evaluating teachers remain in one location in the classroom and assess instruction and engagement from this standpoint. The Non-Parties offered to allow the experts to select their position in the classroom for optimum viewpoint, but simply asked that they not move about the classroom to minimize disruption. A site inspection that allows for a classroom observation may be allowed, but it is the procedures and protocols and demands being placed on the Non-parties involved that is overly burdensome in this matter.

### III. Rule 45 Site Inspection is Not an Open Deposition

Respondents contend that Rule 45 subpoenas for premises inspections entitles the Unites States to a inspect premises, not to a deposition and questioning of the

Respondents' staff. Rule 45 inspection of premises entitles the United States to just that – the ability to inspect the premises. If the United States seeks a deposition, they should pursue it through the existing avenues available for such under the court rules. To the extent that the United States is seeking "incidental" information about the locations being inspected, extensive information about each location has already been provided by the Respondents about each of the programs, facilities, and classrooms, including class descriptions, student rosters and even student files. Respondents have agreed to provide general information about the classrooms/programs/school in advance and further agreed that the United States may submit questions in accordance with agreed upon topics in advance (such as those listed in the subpoena's Attachment A). Respondents also agreed that subsequent questions may be submitted on-site to counsel for consideration but declined to allow staff to be questioned during the site premises inspection. Instead, the United States seeks a roving deposition that goes well beyond the scope of a Rule 45 premises inspection.

  Courts have required parties to justify the discovery sought that is intrusive and burdensome. Likewise, simply pursing the information under color of a site inspection does not entitle the United States to circumvent the protections afforded under the rules that exist for depositions. Courts have found this to be true even

when requested by parties to a case seeking to question employees of the opposing party informally during a site inspection, and the Court rejected this stating that, "While the presence of defendant's attorneys will give the interrogations the appearance of depositions, the safeguards of true depositions will be absent." *Belcher v. Bassett Furniture Industries Inc.*, 588 F. 2d 904, 908. (4th Cir. 1978). "Plaintiff could recast any number of far-reaching inquiries as falling within the 'operations, premises, processes, and procedures viewed during the facility inspection,' creating the same danger of unlimited and "roving depositions."" *U.S. v. Territory of Virgin Islands*, 280 F.R.D. 232, 237 (2012) (citing *Belcher)*. Here, Respondents have not voluntarily agreed to questioning, are not parties to the case and the United States has not demonstrated justifiable cause to be able to gather such information outside the existing parameters of the discovery process.

## CONCLUSION

The Non-Parties reiterate that they have no problem with complying with the subpoenas as written when there are no students or staff in the building. However, these students have significant disabilities that impact every aspect of their lives, making routine and consistency critical. It is the Non-Parties obligation to implement each student's IEP and keep them safe in their classroom. Having strangers coming into classrooms, roaming through their space, and asking questions

while taking pictures is the opposite of what would be best for these students. Again, the Non-Parties are not refusing to comply with a site visit as allowed under Rule 45. Rather, they are simply asking for reasonable tailoring of each subpoena to the particular site, as to not be unduly burdensome for teachers, staff and students trying to go to school for the day.

Respectfully submitted this 8<u>th</u> day of April, 2022.

HARBEN, HARTLEY & HAWKINS, LLP

*/s/ Beth F. Morris*

Gateway Professional Center
340 Jesse Jewell Parkway, Suite 750
Gainesville, Georgia 30501
Telephone: (770) 534-7341
Facsimile: (770) 532-0399
Email: bmorris@hhhlawyers.com

Beth F. Morris
Georgia Bar No. 153013

ATTORNEY FOR NON-PARTIES PIONEER REGIONAL EDUCATIONAL SERVICE AGENCY, OCONEE REGIONAL EDUCATIONAL SERVICE AGENCY, METRO REGIONAL EDUCATIONAL SERVICE AGENCY NORTHWEST GEORGIA REGIONAL EDUCATIONAL SERVICE AGENCY, CHATTOOGA COUNTY SCHOOL DISTRICT, HABERSHAM COUNTY SCHOOL DISTRICT, DAWSON COUNTY SCHOOL DISTRICT, FORSYTH COUNTY SCHOOL DISTRICT, AND PUTNAM COUNTY SCHOOL DISTRICT

## L.R. 7.1(D) CERTIFICATION

I certify that this statement has been prepared with one of the fonts and point selections approved by the Court in Local Rule 5.l(C). Specifically, this brief has been prepared using 14-pt Times New Roman font.

*s/Beth F. Morris*
Beth F. Morris

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of April 8, 2022, I electronically filed the *Non-Parties' Response to Motion to Compel* with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

HARBEN, HARTLEY & HAWKINS, LLP

*/s/ Beth F. Morris*
Beth F. Morris
Georgia Bar No. 153013

Gateway Professional Center
340 Jesse Jewell Parkway, Suite 750
Gainesville, Georgia 30501
Telephone: (770) 534-7341
Facsimile: (770) 532-0399
Email: bmorris@hhhlawyers.com

ATTORNEY FOR NON-PARTIES PIONEER REGIONAL EDUCATIONAL SERVICE AGENCY, OCONEE REGIONAL EDUCATIONAL SERVICE AGENCY, METRO REGIONAL EDUCATIONAL SERVICE AGENCY

NORTHWEST GEORGIA REGIONAL EDUCATIONAL SERVICE AGENCY, CHATTOOGA COUNTY SCHOOL DISTRICT, HABERSHAM COUNTY SCHOOL DISTRICT, DAWSON COUNTY SCHOOL DISTRICT, FORSYTH COUNTY SCHOOL DISTRICT, AND PUTNAM COUNTY SCHOOL DISTRICT