IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>PLAINTIFF,<br><br>*v.*<br><br>STATE OF GEORGIA<br>DEFENDANT. | Civil Action No.<br><br>1:16-CV-03088-ELR |

### CERTIFICATION OF SERVICE OF DISCOVERY

Pursuant to Local Rule 5.4, N.D. Ga., I certify that on Friday, June 24, 2022, the United States served a **SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION** to JOANNA MOCK, Director of Heartland Academy GNETS Program, on the following counsel of record via email:

>Hieu M. Nguyen
>Harben, Hartley & Hawkins, LLP
>340 Jesse Jewell Parkway SE
>Suite 750
>Gainesville, Georgia 30501
>hnguyen@hhhlawyers.com

A true and correct copy of the subpoena is attached hereto.

Respectfully submitted,

RYAN K. BUCHANAN
  *United States Attorney*

/s/Aileen Bell Hughes
*Assistant United States Attorney*
Georgia Bar No. 375505
aileen.bell.hughes@usdoj.gov
*600 U.S. Courthouse*
*75 Ted Turner Drive, S.W.*
*Atlanta, GA 30303*
*(404) 581-6000  fax (404) 581-6181*

**Certificate of Compliance**

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing certification has been prepared using Book Antiqua, 13-point font.

/s/ Aileen Bell Hughes
*Assistant United States Attorney*

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

December 19, 2022

/s/ AILEEN BELL HUGHES
AILEEN BELL HUGHES
*Assistant United States Attorney*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
_____ District of _____

|  |  |
|---|---|
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:

*(Name of person to whom this subpoena is directed)*

❐ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|

❐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR

_____            *Aileen Bell Hughes*
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____, who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

Pursuant to Fed. R. Civ. P. 45(a)(1)(C), (D), Heartland Academy GNETS program is commanded to produce by August 1, 2022 the designated documents, electronically stored information, or tangible things in its possession, custody, or control as identified below.

## INSTRUCTIONS

1. This subpoena covers all documents in or subject to your possession, custody, or control, including all documents that are not in your immediate possession but that you have the effective ability to obtain and that are responsive, in whole or in part, to any of the individual requests set forth below. If for any reason—including a claim of attorney-client privilege—you do not produce documents called for by this subpoena, you should submit a list of the documents you are not producing. The list should describe each document in a manner that, without revealing information itself privileged or protected, will enable the United States to assess the claim of privilege. This description should include the following: the author of the document, date of the document, recipient(s) of the document, subject matter of the document, each person who has ever possessed a copy of the document, the basis for withholding the document, the attorney(s) and client(s) involved (if applicable), and the subpoena request to which the document is responsive.

2. Unless otherwise specified, these requests seek responsive documents from the 2019-20 school year through the 2021-22 school year.

3. If documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify each such document, the date on which it was lost, discarded, or destroyed, and the reason(s) for its loss, discarding, or destruction.

4. Documents should be produced as they are kept in the ordinary course of business. Documents created or stored electronically must be produced in their native electronic format, not printed to paper. All documents should be produced in a unitized manner (i.e., separated or otherwise delineated to identify the boundaries for each document).

5. Data should be produced in a searchable and usable electronic format. Specifically, for any request for a collated list of data, please provide the information using a Microsoft Excel spreadsheet, with the delineated data separated by appropriate columns and rows. Please also provide a corresponding data dictionary/key. For any request for copies of documents, please

provide the information as a searchable Word or Adobe Acrobat file. To the extent any information is available online, please provide the URL address(es) where the information is located.

6. All documents produced should be labeled with sequential numbering (Bates-stamped). The Bates stamps should begin with a letter prefix that identifies the program and that prefix should be followed by numbering that includes at least six digits (e.g., "ABC000001").

7. For any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the document production.

## DEFINITIONS

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1. For purposes of responding to this subpoena, "you" means Heartland Academy GNETS program, its constituent agencies or facilities, and any of its officers, employees, contractors, attorneys, representatives, investigators, agents, or any other person acting or purporting to act on its behalf.

2. "Document" means writings, electronic mail, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records, or data compilations stored in any medium from which information can be obtained.

3. "GNETS Program" or "GNETS" means the Georgia Network for Educational and Therapeutic Support Program and any of the twenty-four regional GNETS programs—which may include GNETS Centers, GNETS School-Based Locations, GNETS School-Based Classrooms, and/or other settings where GNETS services are provided—including all officers, employees, contractors, attorneys, representatives, investigators, agents, or any other person acting or purporting to act on its or their behalf.

4. "GNETS Centers" means self-contained buildings that serve only students with disabilities placed in GNETS from one or more school districts.

5. "GNETS School-Based Locations" means schools with classrooms that serve children placed in GNETS where the classrooms are located on a campus with general education school buildings.

6. "GNETS School-Based Classrooms" means classrooms that only serve children placed in GNETS but are located on a campus with general education school buildings. GNETS School-Based Classrooms do not include general education classrooms in which GNETS services may also be provided to students with disabilities in the same classroom as their non-disabled peers.

7. "GNETS student" means any K-12 student who is receiving or has received educational services through the GNETS Program at any point during a given school year.

8. "LEA" means local education agency, including its officers, employees, contractors, attorneys, representatives, investigators, agents, or any other person acting or purporting to act on its behalf.

9. "RESA" means one of the 16 regional education service agencies located in service districts throughout the State of Georgia, including each regional education service agency's officers, employees, contractors, attorneys, representatives, investigators, agents, or any other person acting or purporting to act on its behalf.

10. "Policies" or "procedures" means any written or unwritten policy, procedure, manual, guidance, protocol, directive, mandate, rule, regulation, course of action, strategy, plan, guiding principle, guidelines, method, routine, process, modus operandi, technique, practice, system, formula, routine, or other mode of conduct that governs operations.

11. "School Year" means the period of time from the start of one public school year to the next, including the Extended School Year for students with disabilities.

12. "Therapeutic services" means those services and supports designed to improve students' opportunities to access education by addressing their emotional, behavioral, and/or mental health.

13. The present tense includes the past and future tenses. Words in the singular and plural are interchangeable. The terms "all" and "any" mean "any and all;" "and" and "or" encompass both "and" and "or." The word "including" means "including, but not limited to."

## DOCUMENTS

1. Documents, by school year, reflecting (a) the location of each GNETS Center and GNETS School-Based Location serving students enrolled in your GNETS program, and (b) the dates when each such location was used to provide GNETS services.

2. Documents, by school year, reflecting the total number of GNETS students served at each GNETS Center identified in (1) above.

3. Documents, by school year, reflecting the total number of GNETS students served at each GNETS School-Based Location identified in (1) above, disaggregated by classroom for elementary school and class period for middle and high school.

4. Documents describing any distinguishing criteria (e.g., those specializing in serving students with autism or students transitioning from residential treatment facilities) applicable to each GNETS Center and GNETS School-Based Location (including classrooms serving GNETS students within those facilities) identified in (1) above and the school year(s) to which the distinguishing criteria apply.

5. Student enrollment rosters or other documents identifying, by school year, the following data and other information for each student enrolled in your GNETS program:

   a. Name;
   b. Student identification number;
   c. Service Location (e.g., GNETS Center name, GNETS School-Based Location name);
   d. Grade Level;
   e. Date of Birth;
   f. Primary disability;
   g. Secondary disability;
   h. EBD designation (yes or no);
   i. Race/ethnicity;
   j. Gender;
   k. Home School System or LEA;
   l. Home School;
   m. Description of the behaviors that resulted in GNETS placement;
   n. Description of prior therapeutic interventions and behavior supports provided to the student in lesser restrictive environments, and the setting where provided, prior to the student's placement in GNETS
   o. Duration of total time spent in GNETS during specified school year (i.e., number of days);

    p. Date of enrollment in GNETS during specified school year;

    q. If applicable, date of exit from GNETS during specified school year and subsequent educational placement;

    r. Number of daily segments the student is integrated in classes with non-disabled peers;

    s. Time in a Residential Treatment Facility ("RTF") during specified school year (yes or no);

    t. Free or Reduced Price Meal status (yes or no); and

    u. Any extracurricular activities the student participates in, and whether these activities occur at the GNETS Center, GNETS School-Based Location, or another school.

6. Documents identifying, by school year and separately for each GNETS Center or GNETS School-Based Location within your GNETS program, each individual on staff in a professional role with your GNETS program, including each person's:

    a. Name;

    b. Employee Identification Number;

    c. Position (e.g., director, teacher, behavioral specialist, psychologist);

    d. Employment contract(s);

    e. Race/ethnicity;

    f. Gender;

    g. Number of years working in the GNETS Program;

    h. Total years of experience in the education field;

    i. Professional licensing and/or certification (e.g., Special Education certification), if any; and

    j. Termination date/departure date from the GNETS Program, if applicable.

7. Any documents reflecting the criteria for enrollment and the process by which students are referred, evaluated, and admitted to your GNETS program, including the source of the criteria by which enrollment determinations are made; the personnel involved in the referral, evaluation, and admission process, by name and title; and the process for confirming that the provision of services in the general education setting were insufficient to maintain the student in that placement.

8. Documents reflecting your GNETS program's general criteria to exit the GNETS program or transition from a GNETS setting to a general education setting, the process by which student-specific exit or transition criteria are established, how progress toward or satisfaction of the criteria is measured, and any transition planning or service coordination provided to students exiting your GNETS program, including the personnel involved in the exit process, by name and title.

9. Documents reflecting, by school year and separately for each GNETS Center or GNETS School-Based Location within your GNETS program, any general information regarding your GNETS program, such as brochures, manuals, student or employee handbooks, or school or site improvement plans. This should include but not be limited to documents relating to therapeutic services, behavior management systems, the transition process, or other written policies or procedures not otherwise provided in response to requests above.

10. Documents reflecting, by school year and separately for each GNETS Center or GNETS School-Based Location within your GNETS program, data on the number of referrals of students to your GNETS program, even if the student did not enroll in your GNETS program, disaggregated by home school, and any information regarding why any student referred to the program was not accepted.

11. Documents reflecting, by school year and separately for each GNETS Center or GNETS School-Based Location:

   a. The total number of students who graduated high school with a general education diploma while enrolled in your GNETS program;

   b. The total number of students who graduated high school with a special education or alternate diploma while enrolled in your GNETS program;

   c. The total number of students who graduated high school with a general education diploma after having spent some of their educational career in your GNETS program;

   d. The total number of students who graduated high school with a special education or alternate diploma after having spent some of their educational career in your GNETS program;

   e. The total number of students who dropped out of school during the time they were enrolled in your GNETS program;

   f. The total number of students who dropped out of school after the time they were enrolled in your GNETS program;

    g. The post-school activity data, collected by the Georgia Department of Education Post-School Survey, including the number of students who graduated from your GNETS program and (i) enrolled in higher education, (ii) joined the military, (iii) obtained competitive employment, (iv) enrolled in other post-school education or training, (v) obtained other employment – part-time, self, and supported employment, (vi) obtained other employment – sheltered work or day habilitation, (vii) are on waiting list, (viii) are unengaged, or (ix) returned to high school; and

    h. Any other post-secondary outcome data relating to your GNETS program students not provided in response to (a)-(g) above.

12. Any periodic accountability report or assessment provided by your GNETS program to the Georgia Department of Education, including the GNETS Annual Accountability Report and the Comprehensive Needs Assessment Report.

13. All documentation that pertains to the GNETS Strategic Plan, including materials your GNETS program prepared or submitted to the Georgia Department of Education, and any materials the Georgia Department of Education sent to you reflecting their monitoring and evaluation via the GNETS Strategic Plan.

14. Each GNETS grant application you submitted to the Georgia Department of Education.

15. Documents reflecting the reporting structure from your GNETS Program to any LEA, RESA, or to the State, including those relating to funding, grants, training, and monitoring.

16. A master schedule or bell schedule for the 2021-22 school year for each GNETS Center and GNETS School-Based Location within your GNETS program.

17. Documents reflecting, by school year and separately for each GNETS Center and GNETS School-Based Location within your GNETS program, the complete referral packets and the student records generated during a student's time in your GNETS program for each of the following students: the first student listed alphabetically by last name starting at each of F, L, and S for elementary school, middle school, and high school (for a total of nine student files—three elementary, three middle school and three high school—for each GNETS Center or GNETS School-Based Location). Such documents should include any Individualized Education Programs, Functional Behavioral Assessments, Behavioral Intervention Plans, GNETS referral documents, discipline records, and report cards.

18. Documents reflecting, for each GNETS Center or GNETS School-Based Location within your GNETS program:

   a. The age of the building(s);
   b. The building floor plan;
   c. The date your GNETS program began using the location;
   d. Whether there are metal detectors at any entrance; and
   e. Whether the GNETS site has the following:
      i. Cafeteria where the students eat, and whether the food is prepared at that site;
      ii. Gymnasium;
      iii. Library;
      iv. Computer Lab;
      v. Science Lab;
      vi. Playground;
      vii. Specials or Electives (e.g., art, music); and
      viii. Extracurricular Activities (e.g., clubs, athletics).

19. Documents reflecting, for each GNETS Center or GNETS School-Based Location within your GNETS program:

   a. Whether any additional educational program is housed at the site; and
   b. If there is at least one additional educational program, the nature of the program(s) and the extent, if any, to which there is interaction between GNETS students and the students enrolled in the other programs.

20. Documents reflecting, by school year and separately for each GNETS Center or GNETS School-Based Location within your GNETS program:

   a. The types of therapeutic services that are available to students;
   b. The names, addresses, and phone numbers of any community providers who provide therapeutic services to students in your GNETS program; which types of services each provides; in which GNETS Center or GNETS School-Based Location the service is provided and to how many students; and the average amount, duration, and frequency of each service provided per student annually;
   c. Any contracts or service agreements with Care Management Organizations or community service providers;

d. Information relating to unmet need for therapeutic services, including any waitlists or gaps analyses;

e. Any actions taken to implement a System of Care Plan that could facilitate collaboration across agencies serving children with disabilities;

f. Whether the GNETS Center or GNETS School-Based Location participates in Georgia's APEX programs, and if so, which students have received services through that program;

g. Whether the GNETS Center or GNETS School-Based Location participates in Georgia's MTSS and/or PBIS programs, and if so, which students have received services through either of those programs; and

h. Whether the GNETS Center or GNETS School-Based Location has access to intervention supports or community-based wraparound emergency services (including the State's Intensive Customized Care Coordination (IC3) service), and if so, what those interventions or services include.