# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NO. 1:16-CV-03088-ELR |
| STATE OF GEORGIA, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S OBJECTIONS AND RESPONSES TO
## PLAINTIFF'S FIRST REQUESTS FOR ADMISSION

Defendant State of Georgia ("Defendant") hereby responds through its counsel of record to Plaintiff's First Requests for Admission as follows:

## GENERAL OBJECTIONS

Defendant objects to Plaintiff's "instructions" and/or "definitions" insofar as they vary from, purport to modify or enlarge upon, or are inconsistent with the Federal Rules of Civil Procedure and/or the Local Rules.

## DEFINITIONS

"Department" means the United States Department of Justice.

## RESPONSES TO REQUESTS FOR ADMISSION

1.     Admit that the first GNETS Program location was established in 1970.

**RESPONSE**:

The State objects to Request No. 1 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Subject to the preceding objection, and without waiving same, the State Denies Request No. 1.  The services that are now known as GNETS were not called that name in 1970.

2.     Admit that the first GNETS Program location was a single educational center in Athens, Georgia.

**RESPONSE**:

The State objects to Request No. 2 to the extent it implies or otherwise suggests that the State administers the GNETS Program.  Defendant admits the program that became known as GNETS was first located in Athens, Georgia. Defendant objects to the remainder of the request as the phrase "a single educational center" is vague and ambiguous. Subject to the foregoing objection and to the extent further response is required, Defendant denies the remainder of the request.

3.     Admit that in 1972, the State expanded the GNETS Program to become a network of psychoeducational centers (commonly referred to as "psycho-ed centers") operating throughout the State of Georgia.

**RESPONSE:**

The State objects to Request No. 3 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Defendant objects to the request as vague and ambiguous with regard to the phrase "expanded the GNETS Program to become a network" which is vague and unclear as to at least (1) the type of "expansion" being referred to (which could be interpreted various ways including, among other possibilities, the number of physical locations, funding amounts, LEA participation, etc.); (2) what constitutes a "network of psychoeducational centers;" and (3) what specific activity the Request seeks about the State. Subject to the foregoing objections and to the extent a response is required, Defendant denies the request.

4.    Admit that in 1976, the State reorganized the psycho-ed centers operating throughout the State into 24 regions.

**RESPONSE:**

The State objects to Request No. 4 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 4 on the grounds that the phrase "psycho-ed centers operating throughout the State" is vague and susceptible to multiple meanings. Subject to the preceding objections, the State admits that, in 1976, for State purposes, it

-3-

reorganized into 24 regions, what the State presumes the Department of Justice means by "psycho-ed" centers.

5.    Admit that in 2007, the State renamed the network of psycho-ed centers the Georgia Network for Educational and Therapeutic Support Program.

**RESPONSE:**

The State objects to Request No. 5 to the extent it suggests or otherwise implies that the State administers the GNETS program.  The State also objects to Request No. 5 on the grounds that the phrase "network" is vague and undefined. Subject to the preceding objections, and without waiving the same, the State admits Request No. 5.

6.    Admit that the GNETS Program currently includes the following 24 regional GNETS programs:

- •    Burwell
- •    Cedarwood
- •    Coastal Academy
- •    Coastal Georgia Comprehensive Academy
- •    DeKalb-Rockdale
- •    Elam Alexander Academy
- •    Flint Area Learning
- •    Futures
- •    Harrell Learning Center

- H.A.V.E.N. Academy

- Heartland Academy

- Horizon Academy

- Mainstay Academy

- North Metro

- NorthStar Educational and Therapeutic Services

- Northwest Georgia Educational

- Oak Tree

- GNETS of Oconee

- Pathways Educational

- River Quest

- Rutland Academy

- Sand Hills

- South Metro

- Woodall

**RESPONSE:**

The State objects to Request No. 6 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Subject to the preceding objection, the State admits Request No. 6.

7.    Admit that each of the 24 regional GNETS programs has a separate fiscal agent: a RESA or a LEA.

**RESPONSE:**

Admitted.

8.    Admit that in 1990, the State passed a law requiring the development of "a coordinated system of care so that children and adolescents with emotional disturbance and their families will receive appropriate educational, nonresidential and residential mental health services." Ga. Code Ann. § 49-5-220(a)(6).

**RESPONSE:**

Defendant objects to Request No. 8 on the grounds that explaining a state agency's responsibility, and interpreting the meaning of a duly-enacted statute improperly requires legal conclusions. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Defendant also objects to Request No. 8 to the extent it suggests or otherwise implies that the State administers the GNETS program.   Subject to the preceding objections, the Defendant denies Request No. 8 and states that the statute speaks for itself.

9.    Admit that DBHDD is responsible for "planning, developing, and implementing the coordinated system of care for [children with severe emotional disabilities]." Ga. Code Ann. § 49-5-220(b).

**RESPONSE:**

Defendant objects to Request No. 9 on the grounds that explaining the state agency's responsibility, and interpreting the meaning of a duly-enacted statute

requires a legal conclusion, which renders Request No. 9 improper. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997). Defendant also objects to Request No. 9 to the extent it suggests or otherwise implies that the State administers the GNETS program. Subject to the preceding objections, the Defendant denies Request No. 9 and states that the statute speaks for itself.

10.    Admit that the GNETS Program currently serves students in both GNETS Centers and GNETS Classrooms.

**RESPONSE:**

Defendant also objects to Request No. 10 to the extent it suggests or otherwise implies that the State administers the GNETS program. Defendant also objects to Request No. 10 on the grounds the "GNETS Centers" and "GNETS Classrooms," while defined by the Department in the Requests, remain subject to multiple meanings. Subject to the preceding objections, the Defendant admits Request No. 10.

11.    Admit that students served in GNETS Centers do not have physical access to their non-disabled peers while at the GNETS Center where they are served.

**RESPONSE:**

Defendant objects to Request No. 11 on the grounds it presumes students

receive services at GNETS Centers only.  The State also objects to Request No. 11 on the grounds the "GNETS Centers" and "GNETS Classrooms," while defined by the Department in the Requests, remain subject to multiple meanings.  Finally, the State objects to Request No. 11 to the extent it suggests or otherwise implies that the State administers the GNETS program.  Subject to the preceding objections, the Defendant denies Request No. 11.

12.    Admit that GNETS Classrooms include classrooms located in separate wings of general education school buildings, isolated parts of general education school buildings, and areas of general education school buildings that are physically distant from general education grade-level classrooms.

**RESPONSE:**

Defendant objects to Request No. 12 on the grounds that it is vague; specifically, the phrases "separate wings," "isolated," and "physically distant," are subject to multiple meanings.  In addition, the State objects to Request No. 12 on the grounds the "GNETS Centers" and "GNETS Classrooms," while defined by the Department in the Requests, also remain subject to multiple meanings.  Finally, the State objects to Request No. 12 to the extent it suggests or otherwise implies that the State administers the GNETS program.  Subject to the preceding objections, and without waiving the same, Defendant admits that some GNETS Classrooms are

located in wings of general education school buildings. Defendant denies the remainder of the request.

13.    Admit that the Georgia Department of Audits and Accounts, Performance Audit Operations Division conducted an audit of the GNETS Program and released the findings of that audit in an October 2010 document ("2010 GNETS Audit") produced as GA01852247- GA01852288.

**RESPONSE:**

Defendant admits that the Georgia Department of Audits and Accounts conducted and release the findings of a performance audit in October 2010, which the State has produced as described by Request No. 13.

14.    Admit that GaDOE employs both a GNETS Program Manager and GNETS Program Specialist who specifically work on the GNETS Program.

**RESPONSE:**

Defendant objects to Request No. 14 on the grounds that the phrase "specifically work on" is vague and susceptible to multiple meanings.  The State also objects to Request No. 14 to the extent it suggests or otherwise implies that the State administers the GNETS program.  Subject to the preceding objections, and without waiving the same, the State admits the Department of Education currently employs an individual who addresses the GNETS program.

15.    Admit that GaDOE first hired a GNETS Program Manager exclusively dedicated to GNETS in 2016.

**RESPONSE:**

Defendant objects to Request No. 15 on the grounds that the phrase "exclusively dedicated" is vague and susceptible to multiple meanings in the context of the Request. The State also objects to Request No. 15 to the extent it suggests or otherwise implies that the State administers the GNETS program. Subject to the preceding objections, and without waiving the same, the State admits the Department of Education hired an individual with the title GNETS Program Manager in 2016.

16.    Admit that the GNETS Program Manager hired in 2016 was Nakeba Rahming.

**RESPONSE:**

The State objects to Request No. 16 to the extent it suggests or otherwise implies that the State administers the GNETS program. Subject to the preceding objection, and without waiving the same, the State admits that when it hired Nakeba Rahming in 2016, her title was GNETS Program Manager.

17.    Admit that prior to 2016, GaDOE employee Ginny O'Connell dedicated a portion of her time to GNETS-related program management and a portion of her time to PBIS program management and coordination.

**RESPONSE:**

The State objects to Request No. 17 to the extent it suggests or otherwise implies that the State administers the GNETS program.  Defendant further objects to Request No. 17 on the grounds that the phrases "GNETS-related program management" and "PBIS program management and coordination" are vague and susceptible to multiple meanings.  Subject to the preceding objections, and without waiving the same, the State admits that, prior to 2016, GaDOE employee Ginny O'Connell spent part of her professional time in matters involving GNETS and PBIS.  Defendant denies the remainder of the request.

18.    Admit that the GNETS Program Manager hired in 2016 reported directly to the State School Superintendent's Chief of Staff.

**RESPONSE:**

The State objects to Request No. 18 to the extent it suggests or otherwise implies that the State administers the GNETS program.  Subject to the preceding objection, and without waiving the same, the State admits that, in 2016, it hired an

-11-

individual with the title GNETS Program Manager, and that individual reported directly to the State School Superintendent's Chief of Staff.

19.    Admit that GaDOE first hired a GNETS Program Specialist in 2018.

**RESPONSE:**

The State objects to Request No. 19 to the extent it suggests or otherwise implies that the State administers the GNETS program.  Subject to the preceding objection, and without waiving the same, the State admits that, in 2018, it hired an individual with the title GNETS Program Specialist.

20.    Admit that the GNETS Program Specialist hired in 2018 is Lakesha Stevenson.

**RESPONSE:**

The State objects to Request No. 20 to the extent it suggests or otherwise implies that the State administers the GNETS program.  Subject to the preceding objection, and without waiving the same, the State admits that, in 2018, it hired Lakesha Stevenson to a position with the title GNETS Program Specialist.

21.    Admit that the GNETS Program Specialist reports to the GNETS Program Manager.

**RESPONSE:**

The State objects to Request No. 21 to the extent it suggests or otherwise implies that the State administers the GNETS program.  Subject to the preceding objection, and without waiving the same, the State admits Request No. 21.

22.    Admit that the current GNETS Program Manager is Vickie Cleveland.

**RESPONSE:**

The State objects to Request No. 22 to the extent it suggests or otherwise implies that the State administers the GNETS program.  Subject to the preceding objection, and without waiving same, the State admits that Vickie Cleveland is an employee of the Georgia Department of Education, and her current title is GNETS Program Manager.

23.    Admit that Vickie Cleveland has served as GNETS Program Manager since 2018.

**RESPONSE:**

The State objects to Request No. 22 to the extent it suggests or otherwise implies that the State administers the GNETS program.  Subject to the preceding objection, and without waiving the same, the State admits that, since 2018, Vickie Cleveland has been an employee of the Georgia Department of Education; her

current title is GNETS Program Manager, and she has maintained that title since being promoted to that position in 2018.

24.    Admit that in order to receive funding, regional GNETS programs are required to submit an annual GNETS grant application to GaDOE each fiscal year.

**RESPONSE:**

The State objects to Request No. 24 to the extent it suggests or otherwise implies that the State administers the GNETS program.  The State further objects to Request No. 24 on the grounds that the word "required" calls for a legal conclusion, which is improper in requests for admission.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Subject to the preceding objection, and without waiving same, the State admits that GNETS funds are not distributed to appropriate recipients without the submission of an annual grant application to the Georgia Department of Education.  The remaining portion of the request is denied.

25.    Admit that regional GNETS programs must complete the GNETS Strategic Plan and self-assessment as part of the annual grant application process.

**RESPONSE:**

The State objects to Request No. 25 to the extent it suggests or otherwise implies that the State administers the GNETS program.  The State further objects to

Request No. 25 on the grounds that the phrase "must complete" calls for a legal conclusion, which is improper in requests for admission. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objection, and without waiving the same, the State answers Request No. 25 by stating that the referenced grant applications speak for themselves. The remaining portion of the request is denied.

26.    Admit that the State appropriations bill is initiated by the General Assembly each year.

**RESPONSE:**

The State objects to Request No. 26 to the extent it calls for a legal conclusion, which is improper in requests for admission. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997). Defendant also objects to the phrase "initiated" as vague and subject to multiple meanings within the context of the State Constitution and the Requests. Subject to the preceding objections, and without waiving the same, the State answers Request No. 26 by stating that Article III, Section IX of the State Constitution speaks to the appropriation process.

27.    Admit that the Governor's Office provides input, or has the opportunity to provide input, into the State appropriations bill each year.

**RESPONSE:**

Defendant objects to this request as overly vague and imprecise with respect to the role of the Governor's Office in the appropriations process.  Defendant further objects to the term "input" which is also overly vague in consideration of the role of the Governor's Office in the appropriations process. The State also objects to Request No. 27 to the extent it improperly calls for a legal conclusion.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Subject to the preceding objections, and without waiving the same, the State answers Request No. 27 by stating that any person has rights under the First Amendment to the United States Constitution, as well as Article I, Section I, Paragraph V of the State Constitution to exercise the freedom of speech, and that Article III, Section IX of the State Constitution speaks to the appropriation process.

28.    Admit that each year the State appropriations bill approved by the General Assembly becomes law either with the signature of the Governor or in the absence of a veto by the Governor.

**RESPONSE:**

The State objects to Request No. 28 to the extent it calls for a legal conclusion, which is improper in requests for admission.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Subject to

the preceding objection, and without waiving the same, Defendant refers the Department to Article III, Section V of the State Constitution, which sets forth the legal processes for legislation to become law in Georgia.

29.    Admit that the annual State appropriations bill designates a "Total Funds" amount for the State Department of Education, which for FY2023 was in the amount of $12,825,676,638. This amount is identified in HB 911 at Section 24, line 1813 (p.61).

**RESPONSE:**

The State objects to Request No. 29 to the extent it calls for a legal conclusion, which is improper in requests for admission. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objection, and without waiving the same, Defendant admits that Request No. 29 accurately describes House Bill 911 as passed by the Georgia General Assembly in the 2022 legislative session and signed by Governor Kemp.

30.    Admit that the "Total Funds" amount for the State Department of Education in an annual appropriations bill consists of federal funds and grants, State funds, and other funds.

**RESPONSE:**

The State objects to Request No. 30 to the extent it calls for a legal conclusion, which is improper in requests for admission. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objection, and without waiving the same, Defendant answers that House Bill 911, as passed during the 2022 legislative session of the Georgia General Assembly and signed by Governor Kemp, speaks for itself. Except as thus stated, Request No. 30 is denied.

31.    Admit that, as set forth in HB 911 at Section 24, lines 1813-1820 (pp.61-62), the FY2023 federal funds and grants portion of the "Total Funds" amount for the State Department of Education in the annual appropriations bill was $2,099,148,714, the State funds portion was $10,696,316,904, and the other funds portion was $30,211,020.

**RESPONSE:**

The State also objects to Request No. 31 to the extent it calls for a legal conclusion, which is improper in requests for admission. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objection, and without waiving the same, Defendant answers that House Bill 911, as passed during the 2022 legislative session of the

Georgia General Assembly and signed by Governor Kemp, speaks for itself.  Except as thus stated, Request No. 31 is denied.

32.    Admit that the formula used to calculate QBE funding assumes a "basic unit cost," as stated in HB 911 at Section 24, below line 1820 (p.62), which is the "base amount" defined in Ga. Code Ann. § 20-2-161.

**RESPONSE:**

The State objects to Request No. 32 to the extent it calls for legal conclusions—both as to a Georgia Appropriations Act, and to Georgia statutory law—which is improper in requests for admission.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Subject to the preceding objection, and without waiving the same, the State answers Request No. 32 by stating that (1) House Bill 911, as passed during the 2022 legislative session of the Georgia General Assembly and signed by Governor Kemp, speaks for itself; and (2) at least Article 2, of Chapter 2, of Title 20 provides statutory law on the Quality Basic Education ("QBE") formula and program.  Except as thus stated, Request No. 32 is denied.

33.    Admit that allocations from the State Department of Education to LEAs are calculated using the QBE funding formula, as referenced in HB 911 at Section 24, below line 1820 (p.62).

**RESPONSE:**

The State objects to Request No. 33 to the extent it calls for legal conclusions—both as to a Georgia Appropriations Act, and to Georgia statutory law—which is improper in requests for admission. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objection, and without waiving the same, the State answers Request No. 33 by stating that (1) House Bill 911, as passed during the 2022 legislative session of the Georgia General Assembly and signed by Governor Kemp, speaks for itself; and (2) at least Article 2, of Chapter 2, of Title 20 provides statutory law on the Quality Basic Education ("QBE") formula and program.  Except as thus stated, Request No. 33 is denied.

34.    Admit that the base amount used in QBE funding calculations is determined for a high school student in a general education program, which has a weight of 1.0 and establishes the baseline, as set forth in Ga. Code Ann. § 20-2-161.

**RESPONSE:**

The State objects to Request No. 34 to the extent it calls for legal conclusions—both as to a Georgia Appropriations Act, and to Georgia statutory law—which is improper in requests for admission. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).

Subject to the preceding objection, and without waiving the same, the State answers Request No. 34 by stating that (1) House Bill 911, as passed during the 2022 legislative session of the Georgia General Assembly and signed by Governor Kemp, speaks for itself; and (2) at least Article 2, of Chapter 2, of Title 20 provides statutory law on the Quality Basic Education ("QBE") formula and program. Except as thus stated, Request No. 34 is denied.

35.    Admit that the QBE funding formula includes multipliers, applied to the base amount, for certain categories of students to reflect the additional costs associated with those students' educational needs, as set forth in Ga. Code Ann. § 20-2-161.

**RESPONSE:**

The State objects to Request No. 35 to the extent it calls for legal conclusions to explain the interpretation, implementation, and operation of a statute, specifically O.C.G.A. § 20-2-161. This is an improper request for admission. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objection, and without waiving the same, the State answers Request No. 35 by stating that the cited statute speaks for itself. Except as thus stated, Request No. 35 is denied.

36.    Admit that the multipliers for students with disabilities range from 2.4118 for Category I to 5.8710 for Category IV, as set forth in Ga. Code Ann. § 20-2-161.

**RESPONSE:**

The State objects to Request No. 36 to the extent it improperly calls for legal conclusions to explain the interpretation, implementation, and operation of a statute, specifically O.C.G.A. § 20-2-161. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objection, and without waiving the same, the State answers Request No. 36 by stating that the cited statute speaks for itself. Except as thus stated, Request No. 36 is denied.

37.    Admit that funding for staffing for students with disabilities also varies by the disability Category, with staffing ratios ranging from "1 to 8" for Category I to "1 to 3" for Category IV, as set forth in Ga. Code Ann. § 20-2-161.

**RESPONSE:**

The State objects to Request No. 37 to the extent it improperly calls for legal conclusions to explain the interpretation, implementation, and operation of a statute, specifically O.C.G.A. § 20-2-161. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the

preceding objection, and without waiving the same, the State answers Request No.

37 by stating that the cited statute speaks for itself.  Except as thus stated, Request

No. 37 is denied.

38.    Admit that QBE funding for a student with disabilities is greater under

the QBE formula than it would be if the same student did not have disabilities.

**RESPONSE:**

The State objects to Request No. 38 to the extent it improperly calls for legal

conclusions to explain the interpretation, implementation, and operation of statutory

and regulatory law.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots

2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Subject to the preceding objection,

and without waiving the same, the State answers Request No. 38 by stating that the

laws and regulations governing the QBE program speak for themselves.  Except as

thus stated, Request No. 38 is denied.

39.    Admit that GaDOE has instructed, for purposes of the FTE student

count, that a student who is served in GNETS be reported by the LEA encompassing

their place of residence.

**RESPONSE:**

The State objects to Request No. 39 to the extent that it implies or otherwise

suggests that the State administers the GNETS Program.  The State also objects to

Request No. 39 to the extent it calls for legal conclusions to explain the interpretation, implementation, and operation of statutory and regulatory law. This is an improper request for admission. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objection, and without waiving the same, the State answers Request No. 39 by referring the Department to Georgia Department of Education Regulation 160-5-1-.03, which speaks for itself. Except as thus stated, Defendant denies Request No. 39.

40.    Admit that regional GNETS programs are defined as special entities that do not report students to GaDOE for the purpose of earning FTE-based QBE funds.

**RESPONSE:**

The State objects to Request No. 40 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 40 to the extent it calls for legal conclusions to explain the interpretation, implementation, and operation of statutory and regulatory law. This is an improper request for admission. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objection, and without waiving the same, the State answers Request No.

40 by stating that the statutes and regulations setting forth the implementation of the QBE funding methods speak for themselves. Except as thus stated, Defendant denies Request No. 40.

41. Admit that QBE funding for a student with disabilities is allocated to the LEA encompassing the student's place of residence even if the student is enrolled in a regional GNETS program.

**RESPONSE:**

The State objects to Request No. 41 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 41 to the extent it improperly calls for legal conclusions to explain the interpretation, implementation, and operation of statutory and regulatory law. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objection, and without waiving the same, the State answers Request No. 41 by stating that the statutes and regulations setting forth the implementation of the QBE funding methods speak for themselves. Except as thus stated, Defendant denies Request No. 41.

42. Admit that the annual State appropriations bill designates a "Federal Programs" amount "to coordinate federally funded programs and allocate federal funds to school systems," which for FY2023 was in the amount of $1,195,922,003.

This amount is identified in HB 911 at Section 24.7 and line 1913 (p.65).

**RESPONSE:**

The State objects to Request No. 42 to the extent it calls for a legal conclusion, which is an improper request for admission. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objection, and without waiving the same, Defendant answers that House Bill 911, as passed during the 2022 legislative session of the Georgia General Assembly and signed by Governor Kemp, speaks for itself. Except as thus stated, Request No. 42 is denied.

43.    Admit that most, if not all, of the amount appropriated for the State Department of Education's Federal Programs comes from federal IDEA funding.

**RESPONSE:**

The State objects to Request No. 43 to the extent it calls for a legal conclusion, which is an improper request for admission. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objection, and without waiving the same, Defendant answers that House Bill 911, as passed during the 2022 legislative session of the Georgia General

Assembly and signed by Governor Kemp, speaks for itself. Subject to the preceding objections, and without waiving the same, Defendant denies Request No. 43.

44.    Admit that the purpose of funds in the State Department of Education's Federal Programs line item is to serve students with special needs.

**RESPONSE:**

The State objects to Request No. 44 to the extent it calls for a legal conclusion about the meaning and intention of federal law, which represents an improper request for admission. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997). Defendant also objects to Request No. 44 on the grounds that the phrases "Federal Programs" and "special needs" are vague terms that are susceptible to multiple meanings. Subject to the preceding objection, and without waiving the same, Defendant denies Request No. 44.

45.    Admit that the State Department of Education allocates Federal Programs funds to LEAs using the QBE funding formula.

**RESPONSE:**

The State objects to Request No. 45 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 45 to the extent it calls for legal conclusions to explain the interpretation, implementation, and operation of statutory and regulatory law. This

is an improper request for admission.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).  The State also objects to Request No. 45 on the grounds that "Federal Programs" is a vague term subject to multiple meanings.  Subject to the preceding objections, and without waiving the same, the State answers Request No. 45 by stating that the statutes and regulations setting forth the requirements of Federal Programs and QBE funding methods speak for themselves.  Except as thus stated, Defendant denies Request No. 45.

46.    Admit that, since at least 2015, the annual State appropriations bill has included a specific line item identifying funding for GNETS.

**RESPONSE:**

The State objects to Request No. 46 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 46 to the extent it calls for legal conclusions to explain the meaning of an appropriations act passed by the Georgia General Assembly and signed by the Governor, as questions seeking legal conclusions represent an improper request for admission.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Subject to the preceding objections and without waiving the same, Defendant denies Request No. 46.

47.    Admit that the majority of the funds that have been allocated to the GNETS Program annually through the line item in the State appropriations bill are State funds.

**RESPONSE:**

The State objects to Request No. 47 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 47 on the grounds that "allocated" is a vague term susceptible to multiple meanings.  Defendant also objects to Request No. 47 to the extent it calls for legal conclusions to explain the meaning of an appropriations act passed by the Georgia General Assembly and signed by the Governor, as questions seeking legal conclusions represent an improper request for admission.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Subject to the preceding objections and without waiving the same, Defendant admits Request No. 47.

48.    Admit that the amount of funding for the GNETS line item in the annual State appropriations bill is not determined by application of the QBE funding formula.

**RESPONSE:**

The State objects to Request No. 48 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 48 on the grounds that questions about the "application of the QBE funding formula" seek a legal conclusion and represent an improper request for admission.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Subject to the preceding objections and without waiving the same, Defendant admits that the General Assembly is not bound by the QBE formula when deciding the appropriation for the GNETS programs.

49.    Admit that State funding allocations for specific regional GNETS programs are not determined by application of the QBE funding formula.

**RESPONSE:**

The State objects to Request No. 49 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 49 on the grounds that questions about the "application of the QBE funding formula" seek a legal conclusion and represent an improper request for admission.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Subject to the preceding objections and without waiving the same, Defendant admits Request No. 48.

50.     Admit that, for FY2023, the "Total Funds" amount in the annual State appropriations bill for the GNETS line item was $65,427,745. This amount is identified in HB 911 at Section 24.8, line 1919 (p.65).

**RESPONSE:**

The State objects to Request No. 50 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 50 to the extent it calls for a legal conclusion, which is an improper request for admission.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Subject to the preceding objections, and without waiving the same, Defendant answers that (1) House Bill 911, as passed during the 2022 legislative session of the Georgia General Assembly and signed by Governor Kemp, speaks for itself; and (2) Request No. 50 accurately reflects line 1919 of House Bill 911.

51.     Admit that since 2015, the "Total Funds" amount for the GNETS line item in each annual State appropriations bill has exceeded $60,000,000.

**RESPONSE:**

The State objects to Request No. 51 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to

-31-

Request No. 51 on the grounds that questions about the meaning of an appropriations act of the Georgia General Assembly improperly calls for a legal conclusion. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objections and without waiving the same, Defendant denies Request No. 51.

52.    Admit that the "Total Funds" amount for the GNETS line item in an annual State appropriations bill consists of federal funds and grants and State funds.

**RESPONSE:**

The State objects to Request No. 52 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 52 on the grounds that questions about the meaning of an appropriations act of the Georgia General Assembly improperly calls for a legal conclusion. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). Defendant further objects to Request No. 52 on the grounds that Georgia's appropriations acts are public documents, and a request (and definition of "State appropriations bill") that provides no temporal limit (e.g., which appropriations acts) is both unduly burdensome, and seeks irrelevant information. This is particularly true in the light of the number of requests to admit that the Department has served on the State, as well as the ongoing written and other

discovery.

53.    Admit that, in FY2023, the federal funds and grants portion of the "Total Funds" amount for the GNETS line item in the annual State appropriations bill was $11,322,802 and the State funds portion was $54,104,943. These amounts are identified in HB 911 at Section 24.8, lines 1919-1923 (p.65).

**RESPONSE:**

The State objects to Request No. 53 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 53 to the extent it calls for a legal conclusion, which is an improper request for admission.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997).  The State also objects to Request No. 53 on the grounds that it seeks information about FY 2023, which ends on July 30, 2023, but the Request appears to limit the question to House Bill 911, which passed in 2022.  Subject to the preceding objections, and without waiving the same, Defendant answers that (1) House Bill 911, as passed during the 2022 legislative session of the Georgia General Assembly and signed by Governor Kemp, speaks for itself; and (2) Request No. 54 accurately reflects lines 1919-23 of House Bill 911.

54.    Admit that the breakdown of the "Total Funds" amount for the GNETS line item in the annual State appropriations bill for FY2015-FY2022 was as follows:

- FY2015: state - $62,081,479; federal - $8,160,000
- FY2016: state - $62,246,538; federal - $8,160,000
- FY2017: state - $63,926,563; federal - $8,260,042
- FY2018: state - $66,142,788; federal - $8,260,042
- FY2019: state - $63,821,338; federal - $8,260,042
- FY2020: state - $63,746,765; federal - $11,322,802
- FY2021: state - $56,469,094; federal - $11,322,802
- FY2022: state - $53,365,930; federal - $11,322,802

**RESPONSE:**

Defendant objects to Request No. 54 on the grounds that it is vague; specifically, it is unclear whether the Request refers to final appropriations, those provided in the Amended Fiscal Year budget, or those provided in the original Fiscal Year budget. The State also objects to Request No. 54 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 54 on the grounds that questions about the meaning of an appropriations act of the Georgia General Assembly improperly calls for a legal conclusion. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objections, and without waiving the same, the State answers Request No. 54 by stating that if the Department provides sufficient clarification about the information it seeks, the State may withdraw some or all of its objections.

-34-

55.    Admit that, with respect to the annual State appropriations bills since 2015, the State funds portion of the "Total Funds" amount for each GNETS line item has been at least four times larger than the federal funds and grants portion of the "Total Funds" amount for the same GNETS line item.

**RESPONSE:**

The State objects to Request No. 55 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 55 on the grounds that questions about the meaning of an appropriations act of the Georgia General Assembly improperly calls for a legal conclusion.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Defendant further objects to Request No. 55 because it seeks irrelevant information.  Further, the State objects to Request No. 55 on the grounds that Georgia's appropriations acts are public documents, and the Request does not seek factual information, but rather computation of the Department's proposed mathematical problem, which it can do itself.

56.    Admit that the State chooses to appropriate some of its IDEA funds to GNETS.

**RESPONSE:**

Defendant objects to Request No. 56 on the grounds that it is vague; specifically, it is unclear what the Department means by the words "appropriate" in this context.  The State also objects on the grounds that Request No. 56 contains no temporal limitation or identification and is, therefore, unduly burdensome and unclear.  This is particularly true given that: (1) Georgia's appropriations acts are public documents and accessible by the Department; and (2) the Department has already engaged in extensive and costly discovery.  The State also objects to Request No. 56 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 56 to the extent it seeks an interpretation of appropriations acts of the Georgia General Assembly, which improperly calls for a legal conclusion.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Subject to the preceding objections, and without waiving the same, the State answers Request No. 56 by stating that if the Department provides sufficient clarification about the information it seeks, the State may withdraw some or all of its objections.

57.    Admit that the IDEA funds the State chooses to appropriate to GNETS are included within the federal funds and grants portion of the "Total Funds" amount

for the GNETS line item in any given annual State appropriations bill.

**RESPONSE:**

Defendant objects to Request No. 57 on the grounds that it is vague; specifically, it is unclear what the Department means by the words "appropriate" in this context. The State also objects on the grounds that Request No. 57 contains no temporal limitation and is, therefore, unduly burdensome. This is particularly true given that: (1) Georgia's appropriations acts are public documents and accessible by the Department; and (2) the Department has already engaged in extensive and costly discovery. The State also objects to Request No. 57 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 57 to the extent it seeks an interpretation of appropriations acts of the Georgia General Assembly, which improperly calls for a legal conclusion. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). Subject to the preceding objections, and without waiving the same, the State answers Request No. 57 by stating that if the Department provides sufficient clarification about the information it seeks, the State may withdraw some or all of its objections.

58.    Admit that the United States Department of Education does not require the State to appropriate any of its IDEA funds to GNETS.

**RESPONSE:**

The State also objects to Request No. 58 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 58 because it improperly calls for a legal conclusion about the statutes and regulations administered by the United States Department of Education. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).

59.     Admit that the State generated the formula used to allocate federal IDEA funding to regional GNETS programs.

**RESPONSE:**

The State objects to Request No. 59 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 59 because it improperly calls for a legal conclusion about the statutes and regulations administered by the United States Department of Education and the Georgia Department of Education. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). The State also objects to Request No. 59 on the grounds that it is vague: specifically, the phrases "generated," "formula," and "State" are susceptible to multiple meanings in this

context.  Subject to the preceding objections, and without waiving the same, the State answers Request No. 59 by stating that if the Department provides sufficient clarification about the information it seeks, the State may withdraw some or all of its objections.

60.    Admit that the amount of federal funding that the State allocates to regional GNETS programs is based on the numerical range into which each program's student count falls.

**RESPONSE:**

The State objects to Request No. 60 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 60 because it improperly calls for a legal conclusion about the statutes and regulations administered by the federal and Georgia governments.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).  The State also objects to Request No. 60 on the grounds that it is vague: specifically, the phrases "federal funding," and "numerical range" are susceptible to multiple meanings in this context.  Subject to the preceding objections, and without waiving the same, the State answers Request No. 60 by stating that if the Department provides sufficient clarification about the information it seeks, the State may withdraw some or all of its objections, and there is an applicable numerical

range.

61.    Admit that the State uses a funding formula that it created to determine the amount of State funding allocated to regional GNETS programs in any given year ("the GNETS program funding formula").

**RESPONSE:**

The State objects to Request No. 61 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 61 because it improperly calls for a legal conclusion about the statutes, regulations, or policies applied by the State government.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). The State also objects to Request No. 61 on the grounds that it is vague: specifically, the phrases "formula," "State," and "created," are susceptible to multiple meanings in this context.  Subject to the preceding objections, and without waiving the same, the State answers Request No. 61 by stating that if the Department provides sufficient clarification about the information it seeks, the State may withdraw some or all of its objections.

62.    Admit that the GNETS program funding formula does not include, as a factor in determining funding, the number of students for whom a regional GNETS program provides consultative services in the general education setting – that is,

services directly to a student or that student's teacher or paraprofessional in the general education setting.

**RESPONSE:**

The State objects to Request No. 62 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 62 because it improperly calls for a legal conclusion about the statutes, regulations, and policies applied by the State government. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). The State also objects to Request No. 62 on the grounds that it is vague: specifically, the phrases "formula," "factor," and "consultative services," and "services," are susceptible to multiple meanings in this context. Subject to the preceding objections, and without waiving the same, the State answers Request No. 62 by stating that if the Department provides sufficient clarification about the information it seeks, the State may withdraw some or all of its objections.

63.    Admit that there is no local matching funds requirement for a regional GNETS program receiving State funding.

**RESPONSE:**

The State objects to Request No. 63 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to

Request No. 63 on the grounds that it is vague: specifically, the phrase "matching funds" is not defined and is susceptible to multiple meanings in this context. Subject to the preceding objections, and without waiving the same, the State answers Request No. 63 by stating that if the Department provides sufficient clarification about the information it seeks, the State may withdraw some or all of its objections.

64.     Admit that QBE funding allocated to a LEA for a given student is not transferred to the regional GNETS program if that student is served in a regional GNETS program (i.e., QBE funding does not "follow" the student).

**RESPONSE:**

The State objects to Request No. 64 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 64 because it improperly calls for a legal conclusion about the implantation of the QBE regulations and statutes codified in of Article 6, of Chapter 2, of Title 20 of the Official Code of Georgia Annotated. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). The State also objects to Request No. 64 on the grounds that it is vague: specifically, the phrases "federal funding," and "numerical range" are susceptible to multiple meanings in this context. Subject to the preceding objections, and without waiving the same, the State denies any inference that children receiving GNETS services

never benefit from QBE funding allocated to their LEA, and that the per student funds differ between GNETS funding and QBE funding.

65.    Admit that each regional GNETS program's grant application must be approved by the State in order for the regional GNETS program to receive funding.

**RESPONSE:**

The State objects to Request No. 65 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 65 on the grounds that it provides no temporal limitation, which makes it unduly burdensome and overly broad.  Subject to the preceding objections, and without waiving the same, the State denies Request No. 65.

66.    Admit that each regional GNETS program's budget must be approved by the State in order for the regional GNETS program to receive funding.

**RESPONSE:**

The State objects to Request No. 66 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 66 to the extent that it improperly seeks a legal conclusion.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Finally, Defendant further objects to Request No. 66 on the grounds that it provides no temporal limitation, which makes it unduly burdensome

and overly broad.  Subject to the preceding objections, and without waiving the same, the State answers Request No. 66 by stating that if the Department narrows its request and further clarifies it, the State may withdraw some or all of its objections.

67.    Admit that the State does not require that the budget proposals for the GNETS Program submitted to the General Assembly or the Governor's Office contain any budget items designated for the provision of therapeutic services and supports for students.

**RESPONSE:**

The State objects to Request No. 67 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 67 to the extent that it improperly seeks a legal conclusion about what the State "requires."  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Defendant also objects to Request No. 67 on the grounds that it is vague: it does not specify what it means by "the State," nor does it describe what it means by "budget proposals," "therapeutic services," or "supports for students."  Finally, Defendant further objects to Request No. 67 on the grounds that it provides no temporal limitation, which makes it unduly burdensome and overly broad.

68.    Admit that the State does not require that the budget proposals or grant

-44-

applications for regional GNETS programs submitted to GaDOE contain any budget items designated for the provision of therapeutic services and supports for students.

**RESPONSE:**

The State objects to Request No. 68 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 68 to the extent that it improperly seeks a legal conclusion about what the State "requires." *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). Defendant also objects to Request No. 68 on the grounds that it is vague: it does not specify what it means by "the State," nor does it describe what it means by "budget items," "therapeutic services," or "supports for students." Finally, Defendant further objects to Request No. 68 on the grounds that it provides no temporal limitation, which makes it unduly burdensome and overly broad.

69.     Admit that the Facilities Services Unit of GaDOE conducted a Facility Conditions Assessment of GNETS program facilities during the 2015 and 2016 calendar years ("Facility Conditions Assessment")

**RESPONSE:**

The State objects to Request No. 69 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Subject to the preceding

objection, and without waiving the same, Defendant admits Request No. 69.

70.    Admit that GaDOE planned to use the findings of the Facility Conditions Assessment to facilitate decision making regarding the award of State funds to regional GNETS programs or their fiscal agents for repairs or upgrades to GNETS program facilities.

**RESPONSE:**

The State objects to Request No. 70 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 70 to the extent that it seeks communications subject to the attorney-client privilege, attorney work product, or the protections of executive session. Defendant also objects to Request No. 70 on the grounds that it is vague: specifically, the terms "facilitate decision making" is vague and susceptible to multiple meanings in this context.  Subject to the preceding objections, and without waiving the same, the State answers Request No. 70 by stating that if the Department narrows its request and further clarifies it, the State may withdraw some or all of its objections.

71.    Admit that in January 2016, GaDOE's Facilities Services Unit identified three GNETS program facilities (Cedarwood Program in Baxley, Horizon Program in Tifton, and Oaktree Elementary Program in Albany) as raising immediate facility assessment concerns.

**RESPONSE:**

The State objects to Request No. 71 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Defendant also objects to Request No. 71 on the grounds that it is vague: specifically, the term "immediate facility assessment concerns" is vague and susceptible to multiple meanings in this context. Subject to the preceding objections, and without waiving the same, the State admits Request No. 71.

72. Admit that the State, through GSFIC, entered into a contract with an architectural firm (2WR) to conduct the Facility Conditions Assessment.

**RESPONSE:**

The State objects to Request No. 72 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Subject to the preceding objections, and without waiving the same, the State has not been able to determine an answer to admits Request No. 72.

73. Admit that GNETS program facilities were scored as part of the Facility Conditions Assessment using a rubric with a number of categories.

**RESPONSE:**

The State objects to Request No. 73 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Defendant also objects to

Request No. 73 on the grounds that it is vague: specifically, the term "rubric" is susceptible to multiple meanings in this context. Subject to the preceding objections, and without waiving the same, the State admits Request No. 73.

74.    Admit that, under the scoring system in the rubric used in the Facilities Conditions Assessment, a GNETS program facility with the highest possible score in all categories would receive a score of 1, and that GNETS program facilities receiving any lower scores on any component would receive a score between 0 and 1.

**RESPONSE:**

The State objects to Request No. 74 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Defendant also objects to Request No. 74 on the grounds that it is vague: specifically, the term "rubric" is susceptible to multiple meanings in this context. The State also objects on the ground that the document the Request describes speaks for itself. Subject to the preceding objections, and without waiving the same, the State cannot admit or deny Request No. 74 at this time, despite consulting with numerous and appropriate personnel. The State reserves the right to supplement this answer.

75.    Admit that some GNETS program facilities included in the Facilities Conditions Assessment dated back to the 1920s, and a number had been constructed

in the 1960s and 1970s.

**RESPONSE:**

The State objects to Request No. 75 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Defendant also objects to the request in that it is vague and misleading. Subject to the foregoing objections, without waiving the same, and to the extent a response is required, Defendant admits that some GNETS program facilities included in the Facilities Conditions Assessment were originally constructed in the 1920s, 1960s, and 1970s, and Defendant objects to and denies any inference that many of these facilities did not also have major renovations and additions in later decades. The State further answers Request No. 75, by stating that the Robert F. Kennedy building in Washington, D.C., was completed in 1935; the Richard B. Russell federal building in Atlanta, Georgia, was built in the 1970s, and the Elbert P. Tuttle building, also in Atlanta, Georgia, was completed in or around 1910.

76.    Admit that some GNETS program facilities included in the Facilities Conditions Assessment were phased-out facilities (school facilities not included in a district's Local Facility Plan), which are not approved for FTE purposes.

**RESPONSE:**

The State objects to Request No. 76 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 76 to the extent that it improperly seeks a legal conclusion about what is "approved for FTE purposes."  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).  Defendant also objects to Request No. 76 on the grounds that it is vague: it does not specify what it means by "Local Facility Plan."  Subject to the preceding objections, and without waiving the same, Defendant answers Request No.. 76 as follows: it cannot truthfully admit or deny the matter due to lack of information and knowledge. Defendant has made reasonable inquiry and the information known or readily obtainable is insufficient to enable Defendant to admit or deny the matter.

77.    Admit that GNETS program facilities often do not meet contemporary codes or standards for educational environments, such as modern construction materials and practices, temperature control, mold abatement, and technological capacity.

**RESPONSE:**

The State objects to Request No. 77 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to

Request No. 77 to the extent that it improperly seeks legal conclusions, including an analysis on what satisfies various "codes," or "standards for educational environments," among other things. *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997). Defendant also objects to Request No. 77 on the grounds that it is vague: it does not specify what it means by "often," "contemporary codes or standards for educational environments," "modern construction materials and practices," and "technological capacity." Subject to the preceding objections, and without waiving the same, Defendant denies this request.

78. Admit that the Facility Conditions Assessment was a non-destructive site evaluation, and did not include tests for asbestos, lead paint, or lead in the water.

**RESPONSE:**

The State objects to Request No. 78 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Defendant also objects to Request No. 78 on the grounds that it is vague: it does not specify what it means by "non-destructive site evaluation." Defendant also objects on the grounds that Request No. 78 seeks information that is irrelevant and unlikely to lead to the discovery of admissible evidence. Subject to the preceding objections, and without waiving the same, Defendant admits Request No. 78.

-51-

79.    Admit that in or around July 2016 the State received a draft report from the architectural firm it engaged sharing the firm's findings.

**RESPONSE:**

The State objects to Request No. 79 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Defendant also objects to Request No. 79 on the grounds that it is vague: it does not specify what architectural firm it references, or what the draft report is about.  Subject to the preceding objections, and without waiving the same, Defendant admits Request No. 79.

80.    Admit that in the summer of 2016 GaDOE shared information relating to the Facility Conditions Assessment with members of the State Board of Education.

**RESPONSE:**

The State objects to Request No. 80 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Defendant also objects to the extent Request No. 80 seeks information protected by the attorney-client privilege, and the protections of executive session.  Subject to the preceding objections, and without waiving the same, Defendant admits Request No. 80.

81.    Admit that in the summer of 2016 the State identified nine GNETS program facilities with Facility Conditions Assessment scores below 0.4.

**RESPONSE:**

The State objects to Request No. 81 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Defendant also objects to the extent Request No. 81 seeks information protected by the attorney-client privilege, and the protections of executive session. Subject to the preceding objections, and without waiving the same, Defendant admits that nine GNETS program facilities were identified in the Facility Conditions Assessment.

82.    Admit that in late July 2016, Mike Royal, Chairman of the State Board of Education, issued written notifications that nine GNETS program facilities could no longer be used to serve GNETS students.

**RESPONSE:**

The State objects to Request No. 82 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Subject to the preceding objections, and without waiving the same, Defendant responds to Request No. 82 by stating that the letter from Chairman Royal speaks for itself.

83.    Admit that the written notifications referenced in No. 82 above were sent to the Directors of the regional GNETS programs affiliated with the nine facilities and/or the Superintendents of the LEAs owning the physical facilities.

**RESPONSE:**

The State objects to Request No. 83 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Subject to the preceding objection, and without waiving the same, Defendant admits Request No. 83.

84.    Admit that the actions taken in July 2016 with respect to the nine GNETS program facilities that could no longer be used to serve GNETS students were sometimes referred to—in the media, by GNETS program personnel, and by some GaDOE personnel—as the facilities having been "closed."

**RESPONSE:**

The State objects to Request No. 84 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to Request No. 84 on the grounds that it is vague: it does not specify which "media" it refers to, nor does it identify "GNETS program personnel," or "GaDOE personnel." These omissions deprive the State of an ability to accurately answer the Request.  In addition, Defendant objects as unduly burdensome and overly broad to the extent that the definition of "media" is broad enough to include any website that discusses the issue.  Finally, the State objects to Request No. 84 as it seeks pure hearsay that is not likely to lead to the discovery of admissible evidence, and because Defendant cannot fairly admit or deny how third parties such as the media or GNETS program

personnel referred to the matter. Subject to the forgoing, and to the extent a response is required, Defendant answers Request No. 84 by stating that it cannot be expected to read every possible media coverage (including, potentially, social media posts) about it or the GNETS program.

85.    Admit that GaDOE and other State personnel created a Facility Remediation Plan in relation to GNETS program facilities that were found to have identified needs following the Facility Conditions Assessment.

**RESPONSE:**

The State objects to Request No. 85 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects on the grounds that the phrase "other State personnel" is vague and susceptible to multiple meanings.  Subject to the preceding objections, and without waiving the same, Defendant cannot admit or deny Request No. 85 despite a diligent and good faith search.  The State reserves the right to supplement this response.

86.    Admit that LEA superintendents and fiscal agent personnel were provided information about the Facility Remediation Plan in February and March 2017.

**RESPONSE:**

The State objects to Request No. 86 to the extent that it implies or otherwise

suggests that the State administers the GNETS Program. Subject to the preceding objection, and without waiving the same, Defendant admits Request No. 86.

87.    Admit that, for GNETS program facilities where the Facility Conditions Assessment identified needs, GaDOE offered the fiscal agents of the affiliated regional GNETS programs the option of submitting a proposal and timeline setting forth a plan to relocate the students served at the GNETS program facility to a different facility or applying for a State grant to help fund the necessary repairs or upgrades to the GNETS program facility.

**RESPONSE:**

The State objects to Request No. 87 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Subject to the preceding objections, and without waiving the same, Defendant admits Request No. 87.

88.    Admit that personnel from GaDOE and DBHDD created an application for State facilities grants that could be completed by regional GNETS programs or their fiscal agents to seek State funding to make repairs or upgrades to GNETS program facilities in accordance with the findings of the Facility Conditions Assessment.

**RESPONSE:**

The State objects to Request No. 88 to the extent that it implies or otherwise

suggests that the State administers the GNETS Program. Defendant objects to Request No. 88 on the grounds that it is vague; the phrases "State facilities grants" is not defined and subject to multiple interpretations. Subject to the preceding objections, and without waiving the same, Defendant denies Request No. 88 as drafted, particularly given the dual role of a State employee (e.g.,. working at DBHDD but mostly with the Georgia Department of Education).

89.    Admit that, for those regional GNETS programs or fiscal agents that relocated GNETS students from an existing GNETS program facility to a new site after the Facility Conditions Assessment, the new site was required to be approved by GaDOE.

**RESPONSE:**

The State objects to Request No. 89 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Subject to the preceding objections, and without waiving the same, Defendant admits Request No. 89.

90.    Admit that GaDOE required that a Letter of Assurance be signed by regional GNETS programs or fiscal agents applying for State grants to make repairs to GNETS program facilities after the Facility Conditions Assessment was complete.

**RESPONSE:**

The State objects to Request No. 90 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 90 because the phrase "Letter of Assurance" is undefined and possibly subject to multiple meanings. Subject to the preceding objections, and without waiving the same, Defendant states that any written communications between the Georgia Department of Education and others identified in Request No. 90 speak for themselves and admits Request No. 90.

91.    Admit that the Letter of Assurance described in No. 90 above included a provision that the regional GNETS program would agree to occupy the facility being repaired or upgraded for no less than 10 years, absent prior approval from GaDOE's Facilities Services Unit.

**RESPONSE:**

The State objects to Request No. 91 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to Request No. 91 because the phrase "Letter of Assurance" is undefined and possibly subject to multiple meanings. Subject to the preceding objections, and without waiving the same, Defendant answers Request No. 91 by stating that the letter it describes speaks for itself.

92.    Admit that the quality of educational facilities impacts student learning.

**RESPONSE:**

Defendant objects to Request No. 92 request as vague, overbroad, and irrelevant for the purposes of the claims in this case.  For example, the phrases "quality of educational facilities" and "impacts" are subject to multiple, diverse, and compelling differences.  Further, the request is overly broad, as almost any conceivable condition or input could "impact[] student learning," including such uncontrollable things like weather, world peace, and allergies.  Subject to the forgoing objections, without waiving the same, and to the extent a response is required, Defendant admits Request No. 92.

93.    Admit that the quality of educational facilities impacts student and staff well-being

**RESPONSE:**

Defendant objects to Request No. 93 request as vague, overbroad, and irrelevant for the purposes of the claims in this case.  For example, the phrases "quality of educational facilities" and "impacts" are subject to multiple, diverse, and compelling differences.  Further, the request is overly broad, as almost any conceivable condition or input could "impact[] student learning," including such uncontrollable things like weather, world peace, and allergies.  Subject to the

forgoing objections, without waiving the same, and to the extent a response is required, Defendant admits Request No. 93.

94.    Admit that dilapidated educational facilities pose obstacles to student learning.

**RESPONSE:**

Defendant objects to Request No. 94 request as vague, overbroad, and irrelevant for the purposes of the claims in this case. For example, the phrases "dilapidated" and "obstacles" are subject to multiple meanings in this context. Further, the request is overly broad. For example, a "dilapidated" building that lacks any roof could certainly "pose obstacles to student learning," but a building that had window-installed air conditioning units may not. The Request lacks sufficient narrowing to answer the question correctly or thoroughly. If the Department provides a narrower Request, the State may withdraw some or all of its objections.

95.    Admit that dilapidated educational facilities pose obstacles to overall student and staff well-being.

**RESPONSE:**

Defendant objects to Request No. 95 request as vague, overbroad, and irrelevant for the purposes of the claims in this case. For example, the phrases "dilapidated" and "obstacles" are subject to multiple meanings in this context.

Further, the request is overly broad.  For example, a "dilapidated" building that lacks any roof could certainly "pose obstacles to student learning," but a building that had window-installed air conditioning units may not.  The Request lacks sufficient narrowing to answer the question correctly or thoroughly.  If the Department provides a more limited Request, the State may withdraw some or all of its objections.

96.    Admit that the field labeled "SENDING_SYSTEM_ID" in files GA00000001-GA00000005 reflects the district or county where each student's home school is located as of the year identified in the field labeled "SCHOOL_YEAR".

**RESPONSE:**

The State can neither admit or deny Request No. 96, as for most students the statement is correct and would be admitted.  There are, however, some exceptions to this general rule..

97.    Admit that the field labeled "SENDING_SCHOOL_ID" in files GA00000001-GA00000005 reflects each student's home school as of the year identified in the field labeled "SCHOOL_YEAR".

**RESPONSE:**

Admitted.

98.     Admit that each entry for a student in files GA00000001-GA00000005 reflects a student entry into a regional GNETS program.

**RESPONSE:**

The State objects to Request No. 98 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Subject to the preceding objection, and without waiving the same, Defendant admits Request No. 98.

99.     Admit that the "SCHOOL_YEAR" field entries in files GA00000001-GA00000005 correspond with the year the spring semester took place: an entry of "2016" corresponds with the 2015-2016 school year, an entry of "2017" corresponds with the 2016-2017 school year, an entry of "2018" corresponds with the 2017-2018 school year, an entry of "2019" corresponds with the 2019-2020 school year, and an entry of "2020" corresponds with the 2019-2020 school year.

**RESPONSE:**

Admitted.

100.   Admit that the field labeled "END_DATE" in files GA00000001-GA00000005 reflects the date a student was fully exited from a regional GNETS program.

**RESPONSE:**

The State objects to Request No. 100 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Defendant also objects to Request 100 as vague and confusing, specifically the phrase "fully exited," because not all students with an entry in the field are "fully exited." Subject to the foregoing objections, without waiving the same, and to the extent a response in required, Defendant admits that the "END_DATE" field refers to either the date a student was fully exited from a regional GNETS program or, for students not fully exited, the date on which the relevant school year ended.

101.    Admit that, for any GNETS student not fully exited from GNETS by the end of a given school year, the data contained in the field labeled "END_DATE" in files GA00000001- GA00000005 reflects the date on which the relevant school year ended.

**RESPONSE:**

The State objects to Request No. 101 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Subject to the preceding objection, and without waiving the same, Defendant admits Request No. 101.

102.    Admit that an entry of 6 segments in the field labeled "NO_OF_DAILY_GNETS_SEGMENTS" in files GA00000001- GA00000005 reflects a student receiving 100% of their daily instructional time in a GNETS

setting.

**RESPONSE:**

The State objects to Request No. 102 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Subject to the preceding objection, and without waiving the same, Defendant admits Request No. 102.

103. Admit that an entry of 6 segments in the field labeled "NO_OF_DAILY_GNETS_SEGMENTS" in files GA00000001- GA00000005 reflects a student spending 100% of the school day in a GNETS setting.

**RESPONSE:**

The State objects to Request No. 103 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Subject to the preceding objection, and without waiving the same, Defendant denies Request No. 103 as drafted, because students receiving services through a GNETS program may be able to interact with his or her peers during class change, lunch, or recess/free time and it would not be reflected on the documents identified.

104. Admit that the field labeled "PRIMARY_AREA" in files GA00000001- GA00000005 reflects a student's primary exceptionality as identified on their IEP.

**RESPONSE:**

Defendant admits Request No. 104.

105.   Admit that in the year 2016 (GA00000001), there were 5,280 entries into the GNETS Program, reflecting each time any student enters the GNETS Program including when a student exits and reenters multiple times within a year, and of those 5,280 entries, 3,697 were entries into GNETS Centers, 1,536 were entries into GNETS Classrooms, and 47 entries did not specify the type of GNETS setting.

**RESPONSE:**

The State objects to Request No. 105 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Subject to the preceding objection, and without waiving the same, Defendant admits Request No. 105.

106.   Admit that in the year 2017 (GA00000002), there were 4,911 entries into the GNETS Program, reflecting each time any student enters the GNETS Program including when a student exits and reenters multiple times within a year, and of those 4,911 entries, 3,244 were entries into GNETS Centers, 1,649 were entries into GNETS Classrooms, and 18 entries did not specify the type of GNETS setting.

**RESPONSE:**

The State objects to Request No. 106 to the extent that it implies or otherwise

suggests that the State administers the GNETS Program.  Subject to the preceding

objection, and without waiving the same, Defendant admits Request No. 106.



107.   Admit that in the year 2018 (GA00000003), there were 4,430 entries

into the GNETS Program, reflecting each time any student enters the GNETS

Program including when a student exits and reenters multiple times within a year,

and of those 4,430 entries, 2,799 were entries into GNETS Centers, 1,622 were

entries into GNETS Classrooms, and 9 entries did not specify the type of GNETS

setting.

**RESPONSE:**

The State objects to Request No. 107 to the extent that it implies or otherwise

suggests that the State administers the GNETS Program.  Subject to the preceding

objection, and without waiving the same, Defendant admits Request No. 107.

108.   Admit that in the year 2019 (GA00000004), there were 4,191 entries

into the GNETS Program, reflecting each time any student enters the GNETS

Program including when a student exits and reenters multiple times within a year,

and of those 4,191 entries, 2,768 were entries into GNETS Centers, 1,420 were

entries into GNETS Classrooms, and 3 entries did not specify the type of GNETS

setting.

**RESPONSE:**

The State objects to Request No. 108 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Subject to the preceding objection, and without waiving the same, Defendant admits Request No. 108.

109.   Admit that in the year 2020 (GA00000005), there were 3,891 entries into the GNETS Program, reflecting each time any student enters the GNETS Program including when a student exits and reenters multiple times within a year, and of those 3,891 entries, 2,496 were entries into GNETS Centers, 1,394 were entries into GNETS Classrooms, and 1 entry did not specify the type of GNETS setting.

**RESPONSE:**

The State objects to Request No. 109 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Subject to the preceding objection, and without waiving the same, Defendant admits Request No. 109.

110.   Admit that in the year 2016 (GA00000001), there were 4,492 unique students served in the GNETS Program (regardless of the number of times an individual student may have exited and reentered).

**RESPONSE:**

The State objects to Request No. 110 to the extent that it implies or otherwise

suggests that the State administers the GNETS Program.  Subject to the preceding objection, and without waiving the same, Defendant admits Request No. 110.

111.   Admit that in the year 2017 (GA00000002), there were 4,117 unique students served in the GNETS program (regardless of the number of times an individual student may have exited and reentered).

**RESPONSE:**

The State objects to Request No. 111 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Subject to the preceding objection, and without waiving the same, Defendant admits Request No. 111.

112.   Admit that in the year 2018 (GA00000003), there were 3,805 unique students served in the GNETS program (regardless of the number of times an individual student may have exited and reentered).

**RESPONSE:**

The State objects to Request No. 112 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Subject to the preceding objection, and without waiving the same, Defendant admits Request No. 112.

113.   Admit that in the year 2019 (GA00000004), there were 3,607 unique students served in the GNETS program (regardless of the number of times an individual student may have exited and reentered).

**RESPONSE:**

The State objects to Request No. 113 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Subject to the preceding objection, and without waiving the same, Defendant admits Request No. 113.

114. Admit that in the year 2020 (GA00000005), there were 3,344 unique students served in the GNETS program (regardless of the number of times an individual student may have exited and reentered).

**RESPONSE:**

The State objects to Request No. 114 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Subject to the preceding objection, and without waiving the same, Defendant admits Request No. 114.

115. Admit that the State has not produced documents sufficient to identify the numbers of students in Georgia placed in Residential Treatment Facilities ("RTFs") from the 2015-16 school year to the present.

**RESPONSE:**

Defendant objects to the request as an improper request for admission in that whether Defendant has produced certain documents is not a relevant fact. Defendant

further objects to the request as vague and ambiguous in that the request could be interpreted either as a request to admit facts pertaining to the satisfaction of Defendant's discovery obligations, which is not within the scope of Rule 26(b)(1) and therefore not relevant, or the request could be interpreted as a request to admit the facts pertaining to the subject matter in the underlying the document request. Subject to the foregoing objections, and to the extent a response is required, Defendant denies the request.

116.    Admit that the State has not produced documents sufficient to identify the numbers of GNETS students who were placed in an RTF prior to or after receiving GNETS services from the 2015-16 school year to the present.

**RESPONSE:**

Defendant objects to the request as an improper request for admission in that whether Defendant has produced certain documents is not a relevant fact. Defendant further objects to the request as vague and ambiguous in that the request could be interpreted either as a request to admit facts pertaining to the satisfaction of Defendant's discovery obligations, which is not within the scope of Rule 26(b)(1) and therefore not relevant, or the request could be interpreted as a request to admit the facts pertaining to the subject matter in the underlying the document request. Subject to the foregoing objections, and to the extent a response is required,

Defendant denies the request.

117.    Admit that the State has not produced any evidence-based research supporting its contention that students referred to GNETS would otherwise require residential or more restrictive placement.

**RESPONSE:**

Defendant objects to the request as an improper request for admission in that whether Defendant has produced certain documents is not a relevant fact.    In addition, it is improper to  use requests to admit to police discovery.  Defendant further objects to the request as vague and ambiguous in that the request could be interpreted either as a request to admit facts pertaining to the satisfaction of Defendant's discovery obligations, which is not within the scope of Rule 26(b)(1) and therefore not relevant, or the request could be interpreted as a request to admit the facts pertaining to the underlying subject matter. Defendant also objects on the grounds that the Request does not cite any discovery request or other reason why the State should have produced the described information.  Lastly, Defendant objects to the request as it misstates facts and/or testimony.

118.    Admit that the State has not produced any studies, plans, models, analyses, presentations, memoranda, or reports concerning whether placement in the GNETS Program has prevented children from being placed in residential facilities

or other more segregated settings.

**RESPONSE:**

Defendant objects to the request as an improper request for admission in that whether Defendant has produced certain documents is not a relevant fact. Defendant further objects to the request as vague and ambiguous in that the request could be interpreted either as a request to admit facts pertaining to the satisfaction of Defendant's discovery obligations, which is not within the scope of Rule 26(b)(1) and therefore not relevant, or the request could be interpreted as a request to admit the facts pertaining to the subject matter in the underlying the document request. Defendant also objects on the grounds that the Request does not cite any discovery request or other reason why the State should have produced the described information.

119.   Admit that the State enacted a Georgia Department of Education Rule related to the GNETS Program, produced as GA00002067-GA00002074 and appearing as Rule 160-4-7-.15 in the Rules and Regulations of the State of Georgia ("the GNETS Rule").

**RESPONSE:**

The State objects to Request No. 119 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to

the word "State" in the Request as imprecise and vague. Subject to the preceding objection, and without waiving the same, Defendant answers Request No. 119 by stating that the Georgia Department of Education promulgated what Request No. 119 describes as the "GNETS Rule."

120. Admit that the State has periodically revised the GNETS Rule, most recently in 2017.

**RESPONSE:**

The State objects to Request No. 120 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. The State also objects to the word "State" in the Request as imprecise and vague. Subject to the preceding objection, and without waiving the same, Defendant answers Request No. 120 by stating that the Georgia Department of Education has revised what the Request describes as the "GNETS Rule," including in 2017.

121. Admit that the State does not track the graduation rates of GNETS students.

**RESPONSE:**

The State objects to Request No. 121 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Defendant objects to the request in that the term "track" is vague and ambiguous. Subject the forgoing

objections, without waiving the same, and to the extent a response is required Defendant denies Request No. 121, because, while the State does not receive the identified information in this format now, it does return to the LEA, and the State has access to that information.

122.   Admit that the State does not track the types of diplomas received by those GNETS students who do graduate.

**RESPONSE:**

The State objects to Request No. 122 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Defendant objects to the request in that the terms "track," and "types of diplomas" are vague and ambiguous. Subject the forgoing objections, without waiving the same, and to the extent a response is required Defendant admits Request No. 122.

123.   Admit that the State does not track the dropout rates of GNETS students.

**RESPONSE:**

The State objects to Request No. 123 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Defendant objects to the request in that the term "track" is vague and ambiguous. Subject the forgoing objections, without waiving the same, and to the extent a response is required

Defendant admits Request No. 123.

124.   Admit that the State does not track post-secondary outcomes for GNETS students.

**RESPONSE:**

The State objects to Request No. 124 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Defendant objects to the request in that the terms "track" and "post-secondary outcomes" are vague and ambiguous. Subject the forgoing objections, without waiving the same, and to the extent a response is required Defendant admits Request No. 124.

125.   Admit that the State excludes students from receiving school-based behavioral health services through the Georgia Apex Program at "GNETS standalone facilities" (also known as GNETS Centers), as stated here:

https://dbhdd.georgia.gov/be-supported/mental-health-children-young-adults-and-families/apex-3-faqs ("In which types of schools can Apex services be implemented?").

**RESPONSE:**

The State objects to Request No. 125 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Defendant objects to the request in that the terms "State," and "excludes" as susceptible to multiple meanings

in this context.  Subject the forgoing objections, without waiving the same, and to the extent a response is required Defendant denies Request No. 125.

126.   Admit that the State has not produced any documents setting forth exit criteria or timelines by which students served in GNETS programs must be considered for transition back to a general education setting.

**RESPONSE:**

The State objects to Request No. 126 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Defendant also objects to the Request in that the terms "exit criteria," "timelines," and "transition," are vague, ambiguous, and subject to multiple meanings. Defendant further objects to Request No. 126 as an improper request for admission in that whether Defendant has produced certain documents is not a relevant fact. Defendant further objects to the request as vague and ambiguous in that the request could be interpreted either as a request to admit facts pertaining to the satisfaction of Defendant's discovery obligations, which is not within the scope of Rule 26(b)(1) and therefore not relevant, or the request could be interpreted as a request to admit the facts pertaining to the subject matter in the underlying the document request.  Finally, Defendant objects on the grounds that the Request does not cite any discovery request or other reason why the State should have produced the described information. The State

further answers Request No. 126 by stating that if the Department rephrases or clarifies the information it seeks, the State may withdraw some or all of its objections.

127. Admit that the State has not produced documents identifying, summarizing, or describing the comparative costs of services and supports provided to students with disabilities within the GNETS Program and in general education settings.

**RESPONSE:**

The State objects to Request No. 127 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Defendant also objects to the Request in that the terms "services and supports" are vague, ambiguous, and subject to multiple meanings. Defendant further objects to Request No. 127 as an improper request for admission in that whether Defendant has produced certain documents is not a relevant fact. Defendant further objects to the request as vague and ambiguous in that the request could be interpreted either as a request to admit facts pertaining to the satisfaction of Defendant's discovery obligations, which is not within the scope of Rule 26(b)(1) and therefore not relevant, or the request could be interpreted as a request to admit the facts pertaining to the subject matter in the underlying the document request. Finally, Defendant objects on the grounds that the

Request does not cite any discovery request or other reason why the State should have produced the described information. Subject to the foregoing objections, and to the extent a response is required, Defendant denies the request.

128. Admit that the State has not produced documents identifying, summarizing, or describing GaDOE's monitoring of aggregated and disaggregated GNETS Program data to determine cost effectiveness across programs.

**<u>RESPONSE:</u>**

The State objects to Request No. 128 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Defendant also objects to the Request in that the terms "GNETS Program data," "cost effectiveness," and monitoring," are vague, ambiguous, and subject to multiple meanings. Defendant further objects to Request No. 128 as an improper request for admission in that whether Defendant has produced certain documents is not a relevant fact, nor will it narrow the issues at trial (if summary judgment does not end the case). Defendant further objects to the request as vague and ambiguous in that the request could be interpreted either as a request to admit facts pertaining to the satisfaction of Defendant's discovery obligations, which is not within the scope of Rule 26(b)(1) and therefore not relevant, or the request could be interpreted as a request to admit the facts pertaining to the subject matter in the underlying the document request.

Finally, Defendant objects on the grounds that the Request does not cite any discovery request or other reason why the State should have produced the described information. Subject to the foregoing objections, and to the extent a response is required, Defendant denies the request.

129.    Admit that the State created the initial GNETS Strategic Plan and all subsequent versions of the GNETS Strategic Plan.

**RESPONSE:**

The State objects to Request No. 129 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Defendant also objects to the Request in that the term "State" is imprecise and subject to multiple meanings in this context, and the phrase "GNETS Strategic Plan" is undefined and subject to multiple possible meanings.  Subject the forgoing objections, without waiving the same, and to the extent a response is required Defendant admits that the Georgia Department of Education, in collaboration with GNETS Directors and other stakeholders, participated in the creation of a document known as the GNETS Strategic Plan.

130.    Admit that the State has not produced any studies, plans, models, analyses, presentations, memoranda, or reports concerning the efficacy of providing educational and therapeutic services and supports to students in the GNETS Program

in settings apart from their nondisabled peers.

**RESPONSE:**

The State objects to Request No. 130 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Defendant also objects to the Request in that the phrase "the efficacy of providing educational and therapeutic services and supports to students in the GNETS Program in settings apart from their nondisabled peers" is vague, ambiguous, and subject to multiple meanings. Defendant further objects to Request No. 130 as an improper request for admission in that whether Defendant has produced certain documents is not a relevant fact. Defendant further objects to the request as vague and ambiguous in that the request could be interpreted either as a request to admit facts pertaining to the satisfaction of Defendant's discovery obligations, which is not within the scope of Rule 26(b)(1) and therefore not relevant, or the request could be interpreted as a request to admit the facts pertaining to the subject matter in the underlying the document request. Finally, Defendant objects on the grounds that the Request does not cite any discovery request or other reason why the State should have produced the described information. Subject to the foregoing objections, and to the extent a response is required, Defendant denies Request No. 130.

131.    Admit that the State has not produced any data, analyses, assessments,

studies, reports, or other information about any barriers, obstacles, or gaps in services and supports that prevent or inhibit the provision of educational and therapeutic services and supports to school-age children in general education schools and/or local community settings.

**RESPONSE:**

The State objects to Request No. 131 to the extent that it implies or otherwise suggests that the State administers the GNETS Program. Defendant also objects to the Request in that the phrases "barriers," "obstacles," "gaps in services," "supports," and "educational and therapeutic services and supports" are vague, ambiguous, and subject to multiple meanings. Defendant further objects to Request No. 131 as an improper request for admission in that whether Defendant has produced certain documents is not a relevant fact. Defendant further objects to the request as vague and ambiguous in that the request could be interpreted either as a request to admit facts pertaining to the satisfaction of Defendant's discovery obligations, which is not within the scope of Rule 26(b)(1) and therefore not relevant, or the request could be interpreted as a request to admit the facts pertaining to the subject matter in the underlying the document request. Finally, Defendant objects on the grounds that the Request does not cite any discovery request or other reason why the State should have produced the described information. Subject to the

foregoing objections, and to the extent a response is required, Defendant denies Request No. 131.

132.   Admit that GaDOE did not comply with the legislative directive set forth in Georgia HB 911 to "evaluate, in consultation with stakeholders, the [GNETS] program to provide strategic statutory recommendations and funding formula updates to the Office of Planning and Budget, the House Budget and Research Office, and the Senate Budget and Evaluation Office by November 1, 2022."

**RESPONSE:**

The State objects to Request No. 132 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The Defendant also objects on the grounds that the phrase "legislative directive" is wrong in this context, and that responding to the Request improperly requires a legal conclusion as to the impact of miscellaneous language in an appropriations act.  *See United States v. Block 44, Lots 3, 6, Plus W. 80 Feet of Lots 2 & 5,* 177 F.R.D. 695, 695 (M.D. Fla. 1997).   Subject to the preceding objections, and without waiving the same, Defendant denies Request No. 132.

133.   Admit that GaDOE has not provided any recommendations regarding the manner in which the GNETS Program should be funded to the Office of Planning

and Budget, the House Budget and Research Office, or the Senate Budget and Evaluation Office during the 2022 calendar year.

**RESPONSE:**

The State objects to Request No. 133 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  Subject to the preceding objection, and without waiving the same, Defendant denies Request No. 132.

134.   Admit that GaDOE has not provided any funding formula updates related to the GNETS Program to the Office of Planning and Budget, the House Budget and Research Office, or the Senate Budget and Evaluation Office during the 2022 calendar year.

**RESPONSE:**

The State objects to Request No. 134 to the extent that it implies or otherwise suggests that the State administers the GNETS Program.  The State also objects to the phrases "funding formula," and "updates," as vague and subject to multiple interpretations.  Subject to the preceding objections, and without waiving the same, Defendant denies Request No. 134.

This 27th day of January, 2023.

/s/ Josh Belinfante
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Melanie Johnson
Georgia Bar No. 466756
mjohnson@robbinsfirm.com
Edward Bedard
Georgia Bar No. 926148
ebedard@robbinsfirm.com
Danielle Hernandez
Georgia Bar No.  736830
dhernandez@robbinsfirm.com
Javier Pico Prats
Georgia Bar No. 664717
javier.picoprats@robbinsfirm.com
Anna Nicole Edmondson
Georgia Bar No. 289667
aedmondson@robbinsfirm.com
Robbins Alloy Belinfante Littlefield LLC
500 14th Street NW
Atlanta, Georgia  30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3255

Alexa R. Ross
Georgia Bar No. 614986
alexarross@icloud.com
AlexaRossLaw, LLC
2657 Danforth Lane
Decatur, Georgia  30033

Special Assistant Attorneys General

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served the within and foregoing **DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSION** by sending it via email addressed as follows:

Andrea Hamilton
Andrea.Hamilton@usdoj.gov

Frances Cohen
Frances.Cohen2@usdoj.gov

Kelly Gardner
Kelly.Gardner@usdoj.gov

Megan Erickson
Megan.Erickson@usdoj.gov

Victoria Lill
Victoria.Lill@usdoj.gov

Sandra Levert
Sandra.Levert@usdoj.gov

Renee Wohlenhaus
Renee.Wohlenhaus@usdoj.gov

Allison Ewers
Allison.Ewers@usdoj.gov

Michelle Tucker
Michelle.Tucker@usdoj.gov

Claire Chevrier
Claire.Chevrier@usdoj.gov

Laura Tayloe
Laura.Tayloe@usdoj.gov

Patrick Holkins
Patrick.Holkins@usdoj.gov

Aileen Bell Hughes
ABellHughes@usa.doj.gov

This 27th day of January, 2023.

*/s/ Josh Belinfante*
Josh Belinfante
Georgia Bar No. 047399