# EXHIBIT V



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE OF SPECIAL EDUCATION AND REHABILITATIVE SERVICES

August 1, 2016

Dear Colleague:

The U.S. Department of Education (Department) is committed to ensuring that all children with disabilities have meaningful access to a State's challenging academic content standards that prepare them for college and careers. Consistent with these goals, the Individuals with Disabilities Education Act (IDEA) entitles each eligible child with a disability to a free appropriate public education (FAPE) that emphasizes special education and related services designed to meet the child's unique needs.[1]  20 U.S.C. §§1412(a)(1) and 1400(d)(1)(A).  Under the IDEA, the primary vehicle for providing FAPE is through an appropriately developed individualized education program (IEP) that is based on the individual needs of the child. 34 CFR §§300.17 and 300.320-300.324.  In the case of a child whose behavior impedes the child's learning or that of others, the IEP Team must consider – and, when necessary to provide FAPE, include in the IEP – the use of positive behavioral interventions and supports, and other strategies, to address that behavior.  34 CFR §§300.324(a)(2)(i) and (b)(2); and 300.320(a)(4).

The Department has determined that this letter is significant guidance under the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices, 72 Fed. Reg. 3432 (Jan. 25, 2007).  See www.whitehouse.gov/sites/default/files/omb/memoranda/fy2007/m07-07.pdf.  Significant guidance is non-binding and does not create or impose new legal requirements.  The Department is issuing this letter to provide LEAs and other responsible public agencies with information to assist them in meeting their obligations under the IDEA and its implementing regulations.

If you are interested in commenting on this letter, please email us your comment at iepgoals@ed.gov or contact Lisa Pagano at 202-245-7413 or Lisa.Pagano@ed.gov.  For further information about the Department's guidance processes, please visit www2.ed.gov/policy/gen/guid/significant-guidance.html.

Recent data on short-term disciplinary removals from the current placement strongly suggest that many children with disabilities may not be receiving appropriate behavioral interventions and

---

[1] While this letter focuses on requirements under the IDEA relating to FAPE in the least restrictive environment, students with disabilities also have rights under two civil rights laws that prohibit discrimination on the basis of disability—Section 504 of the Rehabilitation Act of 1973 (Section 504) and Title II of the Americans with Disabilities Act (Title II). The Office for Civil Rights (OCR) in the U.S. Department of Education enforces Section 504 in public elementary and secondary schools.  Also, in this context, OCR shares in the enforcement of Title II with the U.S. Department of Justice. More information about these laws is available at: www.ed.gov/ocr and www.ada.gov.

400 MARYLAND AVE., S.W. WASHINGTON, DC 20202-2600
www.ed.gov
*The Department of Education's mission is to promote student achievement and preparedness for global competiveness by fostering educational excellence and ensuring equal access.*

Page 2—Dear Colleague

supports, and other strategies, in their IEPs.[2] During the 2013-2014 school year, 10 percent of all children with disabilities, ages 3 through 21, were subject to a disciplinary removal of 10 school days or less, with children of color with disabilities facing higher rates of removal.[3] For instance, nineteen percent of black children with disabilities, ages 3 through 21, were subject to a removal of 10 school days or less within a single school year.[4] In light of research about the detrimental impacts of disciplinary removals,[5] including short-term disciplinary removals, the Department is issuing this guidance to clarify that schools, charter schools, and educational programs in juvenile correctional facilities must provide appropriate behavioral supports to children with disabilities who require such supports in order to receive FAPE and placement in the least restrictive environment (LRE). As a practical matter, providing appropriate behavioral supports helps to ensure that children with disabilities are best able to access and benefit from instruction.

The IDEA authorizes school personnel to implement a short-term disciplinary removal from the current placement, such as an out-of-school suspension, for a child with a disability who violates a code of student conduct. 34 CFR §300.530(b)(1). The Department strongly supports child and school safety, and this letter is not intended to limit the appropriate use of disciplinary removals that are necessary to protect children. Rather, the letter is a part of the Department's broader work to encourage school environments that are safe, supportive, and conducive to teaching and learning, where educators actively prevent the need for short-term disciplinary removals by effectively supporting and responding to behavior.[6,7] In keeping with this goal, this letter serves to remind school personnel that the authority to implement disciplinary removals does not negate their obligation to consider the implications of the child's behavioral needs, and the effects of the use of suspensions (and other short-term removals) when ensuring the provision of FAPE.[8]

---

[2] For purposes of this letter, we use "behavioral supports" to generally refer to behavioral interventions and supports, and other strategies to address behavior.

[3] U.S. Department of Education, EDFacts Data Warehouse (EDW), OMB #1875-0240: "IDEA Part B Discipline Collection," 2014.

[4] Id.

[5] Council of State Governments Justice Center and the Public Policy Research Institute. (2011). Breaking schools' rules: a statewide study of how school discipline relates to students' success and juvenile justice involvement. Available at https://csgjusticecenter.org/wp-content/uploads/2012/08/Breaking_Schools_Rules_Report_Final.pdf

[6] "The Act and the regulations recognize that school officials need some reasonable degree of flexibility when disciplining children with disabilities who violate a code of student conduct. Interrupting a child's participation in education for up to 10 school days over the course of a school year, when necessary and appropriate to the circumstances, does not impose an unreasonable limitation on a child with a disability's right to FAPE." 71 Fed. Reg. 46717 (Aug. 14, 2006).

[7] More about the Department's work is available at www.ed.gov/rethinkdiscipline

[8] This letter does not address the obligations of school personnel following a disciplinary change in placement, including obligations to provide behavioral supports. This letter is intended to supplement the June 2009 Questions and Answers on Discipline Procedures (as revised) from OSERS, which provided guidance on discipline policies for school-age children to personnel in State educational agencies (SEAs) and local educational agencies (LEAs), and parents. Further, as the obligations of school personnel covered in this letter also apply to school personnel serving children with disabilities in juvenile correctional facilities, this letter is also intended to supplement the December 5,

Page 3—Dear Colleague

Additionally, this letter provides alternatives to disciplinary removal which schools can apply instead of exclusionary disciplinary measures.

We are issuing this guidance to clarify that the failure to consider and provide for needed behavioral supports through the IEP process is likely to result in a child not receiving a meaningful educational benefit or FAPE. In addition, a failure to make behavioral supports available throughout a continuum of placements, including in a regular education setting, could result in an inappropriately restrictive placement and constitute a denial of placement in the LRE. While such determinations are necessarily individualized, this guidance is intended to focus attention on the need to consider and include evidence-based behavioral supports in IEPs that, when done with fidelity, often serve as effective alternatives to unnecessary disciplinary removals, increase participation in instruction, and may prevent the need for more restrictive placements.

This letter is organized into five areas:
- IDEA's procedural requirements regarding evaluations, eligibility determinations, IEPs, and behavioral supports;
- IDEA's IEP content requirements related to behavioral supports;
- Circumstances that may indicate potential denials of FAPE or of placement in the LRE;
- Implications for short-term disciplinary removals and other exclusionary disciplinary measures;[9]
- Conclusion, including additional information for parents and stakeholders.

I. **IDEA Procedural Requirements Regarding Evaluations, Eligibility, IEPs, and Behavioral Supports**

The IDEA and its implementing regulations require IEP Teams to follow certain procedures to ensure that IEPs meet the needs, including the behavioral needs, of children with disabilities. See 20 U.S.C. §1414(d) and 34 CFR §§300.320-300.324. Those needs are generally identified during the initial evaluation or reevaluation, which must, among other matters, use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child, and assess the child in all areas related to the suspected disability,

---

2014 OSERS Dear Colleague Letter on the Individuals with Disabilities Education Act requirements that apply to the education of students with disabilities in correctional facilities. The June 2009 guidance can be found at http://idea.ed.gov/object/fileDownload/model/QaCorner/field/PdfFile/primary_key/7 and the December 5, 2014 letter can be found at http://www2.ed.gov/policy/gen/guid/correctional-education/index.html

[9] For purposes of this document, we use "exclusionary disciplinary measures" as a descriptive term to discuss the range of actions that school personnel implement – in response to a child's misbehavior or violation of a code of student conduct – where the child is removed and excluded from their classroom, from school grounds, or school activities either formally (e.g., suspension) or informally (e.g., asking the parent to keep the student at home for a day or more). Additional information regarding exclusionary disciplinary measures may be found in Section IV of this document.

including, if appropriate, social and emotional status. 34 CFR §§300.304(b) and 300.304(c)(4); see also 34 CFR §§300.304-300.311. Further, the evaluation must use technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in addition to physical and developmental factors. 34 CFR §300.304(b)(3). Parents, classroom teachers, and other service providers will also have formal and informal information about an eligible child's current functional (e.g., behavioral) performance for the IEP Team's consideration. 34 CFR §§300.321 and 300.324. Once the IEP is developed, IEP Teams must: (1) review the child's IEP periodically, but not less than annually, to determine whether the child's annual goals are being achieved (34 CFR §300.324(b)(1)(i)), and (2) revise the IEP, as appropriate, to address any lack of expected progress towards the annual goals in the child's IEP and in the general education curriculum, the child's anticipated needs, or other matters. 34 CFR §300.324(b)(1)(ii).

There are a number of special factors that IEP Teams must consider in developing, reviewing, or revising a child's IEP. The IDEA specifically requires IEP Teams to consider the use of positive behavioral interventions and supports, and other strategies, to address behavior for any child with a disability whose behavior impedes his or her learning or that of others. 20 U.S.C. §1414(d)(3)(B)(i). This requirement applies to all IEP Teams, regardless of the child's specific disability, and to the development, review, and revision of IEPs (34 CFR §300.324(a)(2) and (b)(2)). Incidents of child misbehavior and classroom disruptions, as well as violations of a code of student conduct, may indicate that the child's IEP needs to include appropriate behavioral supports. This is especially true when a pattern of misbehavior is apparent or can be reasonably anticipated based on the child's present levels of performance and needs. To the extent a child's behavior including its impact and consequences (e.g., violations of a code of student conduct, classroom disruptions, disciplinary removals, and other exclusionary disciplinary measures) impede the child's learning or that of others, the IEP Team must consider when, whether, and what aspects of the child's IEP related to behavior need to be addressed or revised to ensure FAPE. If the child already has behavioral supports, upon repeated incidents of child misbehavior or classroom disruption, the IEP team should meet to consider whether the child's behavioral supports should be changed.

In general, IEP Team meetings provide parents (who are required members of the team) critical opportunities to participate in the decision-making process, raise questions and concerns regarding their child's behavior, and provide input on the types of behavioral supports their children may need to facilitate their child's involvement and progress in the general education curriculum. 34 CFR §§300.320(a), 300.321(a)(1), and 300.324(a)(1)(ii). Parents have the right to request an IEP Team meeting at any time, and public agencies generally must grant a reasonable request from a parent for an IEP Team meeting.[10] See 20 U.S.C.

---

[10] Assistance to States for the Education of Children with Disabilities and Early Intervention Programs for Infants and Toddlers with Disabilities, Final Rule, 64 Fed. Reg. 12406, 12581 (Mar. 12, 1999) explains, in response to public comment, that "A[regulatory] provision is not necessary to clarify that public agencies will honor 'reasonable' requests

Page 5—Dear Colleague

§1414(d)(4)(A)(i)(III) and 34 CFR §300.324(b)(1)(ii)(C). We believe it would be appropriate for a parent to request an IEP Team meeting following disciplinary removals or changes in the child's behavior that impede the child's learning or that of others, as these likely indicate that the IEP, as written or implemented, may not be properly addressing the child's behavioral needs.[11] Whenever appropriate, the child with a disability should also be present during IEP Team meetings. 34 CFR §300.321(a)(7).

*When an IEP Has Already Been Developed for a School Year*

In instances where a child with a disability is subject to a disciplinary removal after the IEP for that school year has been developed and the parents and the relevant school officials agree that the IEP needs to be revised to address the behavior, but circumstances prevent the IEP Team from convening prior to the child's return to school, the IDEA regulations permit the parent and public agency to agree not to convene an IEP Team meeting and instead to develop a written document to amend or modify the current IEP. 34 CFR §300.324(a)(4)(i). This option could be used to provide the child with the necessary behavioral supports upon the child's return to school. However, if changes are made to the child's IEP in this manner, the agency must ensure that the IEP Team is informed of those changes. 34 CFR §300.324(a)(4)(ii).

## II. IDEA's IEP Content Requirements Related to Behavioral Supports

Research shows that school-wide, small group, and individual behavioral supports that use proactive and preventative approaches, address the underlying cause of behavior, and reinforce positive behaviors are associated with increases in academic engagement, academic achievement, and fewer suspensions and dropouts.[12] In short, children are more likely to achieve when they are directly taught predictable and contextually relevant school and classroom routines and expectations, acknowledged clearly and consistently for displaying positive

---

by parents for a meeting to review their child's IEP. Public agencies are required under the statute and these final regulations to be responsive to parental requests for such reviews."

[11] T.K., S.K., individually and on behalf of L.K. v. New York City Department of Education, Brief of the United States as Amicus Curiae Supporting Appellees (2015). Available at
https://www.justice.gov/sites/default/files/crt/legacy/2015/03/16/tknycdoebrief.pdf

[12] Christle, C. A., Jolivette, K., & Nelson, C. M. (2005). Breaking the school to prison pipeline: identifying school risk and protective factors for youth delinquency. Exceptionality, 13(2), 69-88. See also Crone, D. A., & Hawken, L. S. (2010). Responding to problem behavior in schools: the behavior education program. Guilford Press. See also Liaupsin, C. J., Umbreit, J., Ferro, J. B., Urso, A., & Upreti, G. (2006). Improving academic engagement through systematic, function-based intervention. Education and Treatment of Children, 29, 573-591. See also Luiselli, J. K., Putnam, R. F., Handler, M. W., & Feinberg, A. B. (2005). Whole-school positive behaviour support: effects on child discipline problems and academic performance. Educational Psychology, 25(2-3), 183-198. See also Putnam, R., Horner, R. H., & Algozzine, R. (2006). Academic achievement and the implementation of school-wide behavior support. Positive Behavioral Interventions and Supports Newsletter, 3(1), 1-6.

academic and social behavior, consistently prompted and corrected when behavior does not meet expectations, and treated by others with respect.[13]

However, when a child with a disability experiences behavioral challenges, including those that result in suspensions or other exclusionary disciplinary measures, appropriate behavioral supports may be necessary to ensure that the child receives FAPE. In the same way that an IEP Team would consider a child's language and communication needs, and include appropriate assistive technology devices or services in the child's IEP (34 CFR §300.324(a)(2)(iv) and (v)) to ensure that the child receives a meaningful educational benefit, so too must the IEP Team consider and, when determined necessary for ensuring FAPE, include or revise behavioral supports in the IEP of a child with a disability exhibiting behavior that impedes his or her learning or that of others. 34 CFR §§300.320(a)(4) and 300.324(a)(2)(i).

Therefore, as part of the development, review and, as appropriate, revision of the IEP, IEP Teams should determine whether behavioral supports should be provided in any of three areas: (1) special education and related services, (2) supplementary aids and services, and (3) program modifications or supports for school personnel. 34 CFR §300.320(a)(4).

IEPs should contain behavioral supports supported by evidence—IDEA specifically requires that both special education and related services and supplementary aids and services be based on peer-reviewed research to the extent practicable. 34 CFR §300.320(a)(4). As a matter of best practice, we strongly encourage schools to consider how the implementation of behavioral supports within the IEP could be facilitated through a school-wide, multi-tiered behavioral framework, described at greater length below.

*Special Education and Related Services*

Behavioral supports provided as part of a child's special education and related services may be necessary to ensure that the child's IEP is designed to enable the child to advance appropriately toward attaining the annual goals specified in the IEP, to be involved in and make progress in the general education curriculum, and to participate in extracurricular and other nonacademic activities. 34 CFR §§300.320(a)(4)(i) and (ii). Interventions and supports that could assist a child with a disability to benefit from special education may include instruction and reinforcement of school expectations, violence prevention programs, anger management groups, counseling for mental health issues, life skills training, or social skills instruction. Please see the end of this section for additional tools and resources to assist with the implementation of behavioral supports.

---

[13] Algozzine, B., Wang, C., & Violette, A. S. (2011). Reexamining the relationship between academic achievement and social behavior. Journal of Positive Behavioral Interventions, 13, 3-16. See also McIntosh, K., Chard, D. J., Boland, J. B., & Horner, R. H. (2006). Demonstration of combined efforts in school-wide academic and behavioral systems and incidence of reading and behavior challenges in early elementary grades. Journal of Positive Behavioral Interventions, 8, 146-154.

Page 7—Dear Colleague

*Supplementary Aids and Services*

Public agencies must comply with the requirement to make available a continuum of alternative placements as required under 34 CFR §§300.114-300.116, which includes the provision of supplementary aids and services (e.g. behavioral supports) throughout the continuum. Under 34 CFR §300.42, supplementary aids and services are defined to include aids, services, and other supports that are provided in regular education classes, other education-related settings, and in extracurricular and nonacademic settings, to enable children with disabilities to be educated with nondisabled children to the maximum extent appropriate in accordance with 34 CFR §§300.114-300.116.

Appropriate supplementary aids and services could include those behavioral supports necessary to enable a child with a disability to be educated in regular classes or the setting determined to be the child's appropriate placement in the LRE. Such behavioral supports might include meetings with a behavioral coach, social skills instruction, counselor, or other approaches. In general, placement teams may not place a child with a disability in special classes, separate schooling, or other restrictive settings outside of the regular educational environment solely due to the child's behavior when behavioral supports through the provision of supplementary aids and services could be provided for that child that would be effective in addressing his or her behavior in the regular education setting.[14] 34 CFR §§300.114-300.116. Children with disabilities may only be removed from the regular educational environment when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. 34 CFR §300.114(a)(2)(ii).

*Program Modifications or Supports for School Personnel*

In addition to the behavioral supports that may be provided directly to children with disabilities, program modifications or supports for school personnel, provided on behalf of the child, may also be necessary to support the child's involvement and progress in the general education curriculum, advancement towards attaining the annual goals specified in the IEP, and participation in extracurricular and other nonacademic activities. 34 CFR §§300.320(a)(4)(i) and (ii). School personnel may need training, coaching, and tools to appropriately address the behavioral needs of a particular child. Supports for school personnel may be designed, as appropriate, to better implement effective instructional and behavior management strategies and specific behavioral interventions that are included in the child's IEP.

---

[14] We refer to the "placement team," rather than the IEP Team, as IDEA's implementing regulations specify that placement decisions must be made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options. 34 CFR §300.116(a)(1).

Page 8—Dear Colleague

*Implementation of a Multi-Tiered Behavioral Framework*

Research shows that implementing evidence-based, multi-tiered behavioral frameworks can help improve overall school climate, school safety, and academic achievement for all children, including children with disabilities.[15] In general, behavioral supports are most effectively organized within a multi-tiered behavioral framework that provides instruction and clear behavioral expectations for all children, targeted intervention for small groups not experiencing success, and individualized supports and services for those needing the most intensive support. In recent years, the Department has disseminated a number of tools and resources to assist schools in the creation of safe and supportive school climates conducive to learning, including the implementation of effective alternatives to disciplinary removal. These resources include:

- *Supporting and Responding to Behavior: Evidence-based Classroom Strategies for Teachers*, a document summarizing evidence-based, proactive, and responsive classroom behavior support and intervention strategies for teachers.[16]

- *Positive Behavioral Intervention and Supports: Implementation Blueprint and Self-Assessment,* a guide to develop local capacity for sustainable, culturally and contextually relevant, and high-fidelity implementation of multi-tiered practices and systems of support.[17]

- *2014 School Discipline Guidance Package*, including guidance on how public elementary and secondary schools can meet their legal obligations to administer discipline without discriminating on the basis of race, color or national origin and a set of guiding principles to assist communities in improving school climate and school discipline.[18]

These and other resources can be found at www.ed.gov/rethinkdiscipline and http://ccrs.osepideasthatwork.org.

### III. Circumstances that May Indicate Potential Denials of FAPE or of Placement in the LRE

It is incumbent upon IEP Teams to implement IDEA's procedural and substantive requirements to ensure that children with disabilities receive the behavioral supports they need to enable them to advance appropriately toward attaining the annual goals specified in their IEPs and to be

---

[15] Bradshaw, C., Koth, C.W., Thornton, L.A., & Leaf, P.J., (2009). Altering school climate through school-wide positive behavioral interventions and supports: findings from a group-randomized effectiveness trial. Prevention Science 10(2), 100-115.

[16] Available at https://www.osepideasthatwork.org/evidencebasedclassroomstrategies/

[17] Available at http://www.pbis.org/blueprint/implementation-blueprint

[18] Available at http://www2.ed.gov/policy/gen/guid/school-discipline/fedefforts.html#guidance

Page 9—Dear Colleague

involved in and make progress in the general education curriculum.
20 U.S.C. §§1414(d)(1)(A)(i)(IV); 1414(d)(3)(B)(i) and 1414(d)(3)(C). A failure to implement these procedural requirements or provide needed behavioral supports to a child with a disability could result in the child not receiving a meaningful educational benefit, and therefore constitute a denial of FAPE and/or a denial of placement in the LRE (i.e., an unduly restrictive placement).

A determination of whether there is a denial of FAPE is a fact-based determination, to be made on a case-by-case basis. Factors to consider include: whether the public agency has failed to follow the procedures IDEA requires when developing, reviewing, or revising the child's IEP, or has failed to consider and/or provide a child with a disability with necessary behavioral supports when the child's behavior impedes his or her learning or that of others; or whether the child's IEP is reasonably calculated to provide a meaningful educational benefit in the absence of behavioral supports.

Circumstances that may indicate either a procedural or substantive failure in the development, review, or revision of the IEP include, but are not limited to, the following[19]:

- The IEP Team did not consider the inclusion of positive behavioral interventions and supports in response to behavior that impeded the child's learning or that of others;
- School officials failed to schedule an IEP Team meeting to review the IEP to address behavioral concerns after a reasonable parental request;
- The IEP Team failed to discuss the parent's concerns about the child's behavior, and its effects on the child's learning, during an IEP Team meeting;
- There are no behavioral supports in the child's IEP, even when the IEP Team determines they are necessary for the child;
- The behavioral supports in the IEP are inappropriate for the child (e.g., the frequency, scope or duration of the behavioral supports is insufficient to prevent behaviors that impede the learning of the child or others; or consistent application of the child's behavioral supports has not accomplished positive changes in behavior, but instead has resulted in behavior that continues to impede, or further impedes, learning for the child or others);
- The behavioral supports in the child's IEP are appropriate, but are not being implemented or not being properly implemented (e.g., teachers are not trained in classroom

---

[19] Under 34 CFR §300.513(a), a hearing officer's determination of whether a child received FAPE must be based on substantive grounds. In matters alleging a procedural violation, a hearing officer may find that a child did not receive FAPE only if the procedural inadequacies: (1) impeded the child's right to FAPE; (2) significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of FAPE to the parent's child; or (3) caused a deprivation of educational benefit. 34 CFR §300.513(a)(2)(i)–(iii). Although best viewed as a procedural requirement, a failure to follow 34 CFR §300.324(a)(2)(i) could result in a substantive denial of FAPE if any of the circumstances in 34 CFR §§300.513(a)(2)(i)–(iii) are present. As this is a fact-based determination, Section III provides examples of facts and circumstances that may indicate that a procedural failure has resulted in a denial of FAPE.

Page 10—Dear Colleague

- management responses or de-escalation techniques or those techniques are not being consistently implemented); or
- School personnel have implemented behavioral supports not included in the IEP that are not appropriate for the child.

Circumstances that may indicate that the child's IEP is not reasonably calculated to provide a meaningful educational benefit include, but are not limited to, the following:

- The child is displaying a pattern of behaviors that impede his or her learning or that of others and is not receiving any behavioral supports;
- The child experiences a series of disciplinary removals from the current placement of 10 days or fewer (which do not constitute a disciplinary change in placement) for separate incidents of misconduct that impede the child's learning or that of others, and the need for behavioral supports is not considered or addressed by the IEP Team;[20] or
- The child experiences a lack of expected progress toward the annual goals that is related to his or her disciplinary removals or the lack of behavioral supports, and the child's IEP is neither reviewed nor revised.

A determination of whether there is a denial of placement in the LRE is also a fact-based determination. Factors to consider include whether the child's IEP is designed to enable the child to be educated and participate with nondisabled children in extracurricular and other nonacademic activities in the absence of behavioral supports. Circumstances that may indicate that the child's placement in the LRE may not be appropriate include, but are not limited to, a scenario in which a continuum of placements that provides behavioral supports is not made available (e.g., behavioral supports not provided in the regular educational setting), and, as a result, the IEP inappropriately calls for the child to be placed in special classes, separate schooling, or another restrictive placement outside the regular educational environment (e.g., home instruction, home tutoring program, or online learning program).

### IV. Implications for Short-Term Disciplinary Removals and Other Exclusionary Disciplinary Measures

Schools should note that recent research demonstrates that disciplinary measures such as short-term removals from the current placement (e.g., suspension), or other exclusionary disciplinary measures that significantly impede the implementation of the IEP, generally do not help to

---

[20] Under 34 CFR §300.536 a series of disciplinary removals that constitute a pattern is a change in placement. A pattern of removals is a series of removals that total more than 10 school days within a school year, for behavior that is substantially similar to the child's behavior in previous incidents that led to removals, with consideration for additional factors such as the length of each removal, the total amount of time the child has been removed, and the proximity of the removals to one another.

reduce or eliminate reoccurrence of the misbehavior. In fact, there is a growing awareness that school suspensions produce unintended and undesirable results. Longitudinal studies, for example, have found that suspension from school does not deter misbehavior. These studies found a high rate of repeat offending in out-of-school suspension, ranging from 35% to 42%.[21] Research also shows that suspension from school is associated with significant adverse consequences for the children suspended.[22] Suspensions from school are consistently associated with lower academic performance.[23] As a suspended child's education is interrupted, he or she is more likely to fall behind, to become disengaged from school, and to drop out.[24]

Removals from the current placement generally do not address the needs of a child with a disability for positive behavioral interventions and supports. Accordingly, we remind States, LEAs, and IEP Teams that while 34 CFR §300.530 explicitly permits school personnel to implement short-term disciplinary removals from the current placement, such removals may indicate a need to review and revise the child's IEP to address his or her behavioral needs. In addition, exclusionary disciplinary measures that do not constitute a removal from the current placement may also indicate the need to review and revise the child's IEP.

*Authority of School Personnel under 34 CFR §300.530*

Under IDEA and its implementing regulations, school personnel have the authority to remove a child with a disability who violates a code of student conduct from his or her current placement to an appropriate interim alternative educational setting, another setting, or suspension, for up to 10 consecutive school days in a school year, to the extent those alternatives are applied to children without disabilities, and for additional removals of up to 10 school days in the same school year for separate incidents of misconduct, provided that the additional removals do not constitute a change of placement. 34 CFR §§300.530(b) and 300.536.[25]

While the IDEA and its implementing regulations recognize that school officials need some reasonable degree of flexibility when disciplining children with disabilities who violate a code of student conduct and that school safety is paramount, the Department cautions that the use of short-term disciplinary removals from the current placement may indicate that a child's IEP, or

---

[21] Skiba, R.J., Shure, L.A., Middelberg, L.V., & Baker, T.L. (2012). Reforming school discipline and reducing disproportionality in suspension and expulsion. In Jimerson, S.R., Nickerson, A.B., Mayer, M.J., & Furlong, M.J. (Eds.) Handbook of School Violence and School Safety, 2nd Ed. New York: Routledge.

[22] Lee, T., Cornell, D., Gregory, A., & Xitao, F. (2011). High suspension schools and dropout rates for black and white students. Education & Treatment Of Children, 34(2), 167-192. See also Brooks, K., Schiraldi, V., & Zeidenberg, J. (2000). School house hype: two years later. Washington, DC: Justice Policy Institute / Covington, KY: Children's Law Center. See also Civil Rights Project. (2000). Opportunities suspended: the devastating consequences of zero tolerance and school discipline policies. Cambridge, MA.

[23] Id.

[24] Id.

[25] Disciplinary removals of more than 10 consecutive school days or a series of removals that cumulate to more than 10 school days in a school year that constitute a pattern are considered a change in placement. 34 CFR §300.536.

the implementation of the IEP, does not appropriately address his or her behavioral needs. This, in turn, may result in the child not receiving a meaningful educational benefit, which could constitute a denial of FAPE. As noted above, these determinations are highly factual, and would be made on a case-by-case basis. We are concerned, however, that some SEAs and LEAs may have erroneously interpreted the IDEA to provide school personnel with the broad authority to implement short-term removals without restriction and without regard to whether the child's IEP is properly addressing his or her behavioral needs. It has come to the Department's attention that there are a number of legal memos and technical assistance documents which have erroneously characterized the 10-day period as "free days."[26]

This characterization may discourage school personnel from considering whether behavioral supports are needed to address or improve patterns of behavior that impede learning before, during, or after short-term disciplinary removals are implemented. The Department reminds SEAs and LEAs that, under IDEA, IEP Teams have an obligation to develop appropriate IEPs based on the individual needs of each child. Teachers must also be fully informed about their specific responsibilities related to implementation of the child's IEP, including the specific accommodations, modifications, and supports that must be provided for the child in accordance with the IEP. 34 CFR §300.323(d). Further, IDEA requires States and LEAs to ensure that all personnel necessary to carry out the purposes of Part B of IDEA are appropriately and adequately prepared and trained. 34 CFR §§300.156 and 300.207. This responsibility would include appropriately training teachers and other school personnel to provide required behavioral supports to children with disabilities. Therefore, a failure to provide appropriate behavioral supports (because they are not offered or because teachers and other staff are not adequately trained to implement such supports) that results in the child not receiving a meaningful educational benefit may constitute a denial of FAPE.

*Use of Exclusionary Disciplinary Measures*

Schools should take care when implementing exclusionary disciplinary measures that significantly interfere with a child's instruction and participation in other school activities. In some schools, staff are properly trained to implement and document measures such as the use of study carrels, time outs, and restrictions in privileges, in a manner consistent with a child's right to FAPE.[27] However, in other schools, staff may not be properly trained in the appropriate use of

---

[26] National Council on Disability. (2015). Breaking the school-to-prison pipeline for students with disabilities. Available at https://www.ncd.gov/sites/default/files/Documents/NCD_School-to-PrisonReport_508-PDF.pdf. This report highlights an excerpt from a legal pamphlet designed for school districts: "Schools have free use of up to 10 school days of short-term removals per school year without IDEA implications. The days can be used in any combination, quickly or slowly, although caution would warrant using the 10 'free' days judiciously over the school year, and avoiding multiple suspension days if at all possible."

[27] The Department has previously stated that the use of measures such as study carrels, time outs, or other restrictions in privileges is permissible so long as such measures are not inconsistent with a student's IEP (OSEP Memorandum to Chief State School Officers, Questions and Answers on Disciplining Students with Disabilities, April 1995).

Page 13—Dear Colleague

these measures; consequently, their improper use of these measures could rise to the level of a disciplinary removal.  These exclusionary disciplinary measures also could include:

- A pattern of office referrals, extended time excluded from instruction (e.g., time out), or extended restrictions in privileges;

- Repeatedly sending children out of school on "administrative leave" or a "day off" or other method of sending the child home from school;

- Repeatedly sending children out of school with a condition for return, such as a risk assessment or psychological evaluation; or

- Regularly requiring children to leave the school early and miss instructional time (e.g., via shortened school days).[28]

In general, the Department does not consider the use of exclusionary disciplinary measures to be disciplinary removals from the current placement for purposes of 34 CFR §300.530, so long as children with disabilities are afforded the opportunity to continue to be involved in and make progress in the general education curriculum, receive the instruction and services specified on their IEPs, and participate with nondisabled children to the extent they would have in their current placement.[29]  It is likely that the exclusionary disciplinary measures listed above, if implemented repeatedly, would constitute a disciplinary removal from the current placement.  For example, when school personnel regularly require a child with a disability to leave school early and miss instructional time due to their behavior, it is likely that the child's opportunity to be involved in and make progress in the general education curriculum has been significantly impeded; in such circumstances, sending the child home early would constitute a disciplinary removal from the current placement.  To the extent that schools implement exclusionary disciplinary measures in a manner tantamount to a suspension – or other removal from the

---

[28] We have deliberately omitted from this list of examples any reference to referrals to law enforcement authorities due to our recommendation to schools, described in the Department's *Guiding Principles: A Resource Guide for Improving School Climate and Discipline*, that school resource officers not be involved in routine disciplinary matters.  The Guiding Principles can be found at www2.ed.gov/policy/gen/guid/school-discipline/guiding-principles.pdf

[29] The Department would apply the same analysis to the use of exclusionary discipline measures that apply to in-school suspensions, for purposes of 34 CFR §300.530.  In the Preamble to the August 14, 2006 final Part B regulations, the Department explained: "It has been the Department's long term policy that an in-school suspension would not be considered a part of the days of suspension addressed in 34 CFR §300.530 as long as the child is afforded the opportunity to continue to appropriately participate in the general curriculum, continue to receive the services specified on the child's IEP, and continue to participate with nondisabled children to the extent they would have in their current placement. This continues to be our policy."  The explanation concludes by indicating that whether an in-school suspension would constitute a day of suspension would depend on the unique facts and circumstances of each case.  71 Fed. Reg. 46715 (Aug. 14, 2006).

child's current placement – they are required to fulfill their statutory obligation to report such removals,[30] and act within the authority of school personnel provided under 34 CFR §300.530.

Further, as we noted earlier, the use of exclusionary disciplinary measures may indicate that a child's IEP, or the implementation of the IEP, does not appropriately address his or her behavioral needs.  To ensure that each child receives a meaningful educational benefit, IEP Teams must consider the need for positive behavioral interventions and supports for children with disabilities whose behavior impedes their learning or that of others, and, when determined necessary to ensure FAPE, include or revise needed behavioral supports in the child's IEP.  Such behavioral supports also may include supports for school personnel, so that teaching staff are trained in best uses of such behavioral supports.

**V.   Conclusion**

Children with disabilities are at a greater risk of disciplinary removals that significantly interrupt their learning, often unnecessarily.  These risks are increased for children of color with disabilities.  In many cases, we have reason to believe these removals are due to minor instances of misbehavior that are unrelated to issues of child or school safety, and can and should be addressed through supports and guidance.[31]

When behavioral supports are not provided and, as a result, a child with a disability is repeatedly removed from his or her current placement through suspensions for behavior that impedes his or her learning or that of others, a number of options are available to assist parents in challenging the appropriateness of their child's IEP. First, as noted earlier, parents have the right to request an IEP Team meeting at any time, and public agencies generally must grant a reasonable parental request for an IEP Team meeting.  Parents may be particularly interested in making such a request following changes in the child's behavior that result in disciplinary removals.  Further, parents, individuals, and organizations may also pursue child-specific or systemic remedies through the State complaint procedures outlined below.

---

[30] IDEA mandates that States provide data each year to the Secretary of Education and the public on the use of long-term suspensions and expulsions (20 U.S.C. §1418(a)(1)(A)(v)(III)) and on the incidence and duration of disciplinary actions, including suspensions of one day or more, by race, ethnicity, limited English proficiency status, gender, and disability category (20 U.S.C. §1418(a)(1)(D)).  Further, States are required to collect and examine data to determine whether significant disproportionality based on race and ethnicity is occurring in the State and the LEAs of the State with respect to the incidence, duration, and type of disciplinary actions, including suspension and expulsions (34 CFR §300.646(d)(1)(C)), and whether significant discrepancies are occurring in the rate of long-term suspensions and expulsions of children with disabilities among LEAs in the State or compared to the rates for nondisabled children within LEAs (34 CFR §300.170).

[31] Skiba, R. J., Chung, C. G., Trachok, M., Baker, T., Sheya, A., Hughes, R. L. (2014). Parsing disciplinary disproportionality: Contributions of infraction, student, and school characteristics to out-of-school suspension and expulsion. American Educational Research Journal, 51, 640-670.

Page 15—Dear Colleague

When conditions persist and a denial of FAPE is suspected, a parent or a public agency may file a due process complaint to request a due process hearing on any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of FAPE to the child. 34 CFR §300.507(a). If the dispute cannot be resolved through the resolution process, the parent or public agency must have an opportunity for an impartial due process hearing. 34 CFR §§300.511(a), 300.512, 300.513 and 300.515.

A second important method for resolving disputes available under IDEA is the mediation process described in 34 CFR §300.506. The mediation process, which must be voluntary, offers a less formal opportunity for parents and public agencies to resolve disputes about any matter, including disciplinary removals, under 34 CFR part 300, including matters arising prior to the filing of a due process complaint. 34 CFR §300.506(a).

Lastly, States are also required to establish and implement their own State complaint procedures, separate from their due process procedures, for resolving any complaint that meets the requirements of 34 CFR §300.153. 34 CFR §300.151(a)(1). Any organization or individual, including one from another State, may file a signed written State complaint alleging that a public agency has violated a requirement of either Part B of the Act or the Part B regulations.

Additional information regarding dispute resolution is available at:

- Questions and Answers on IDEA Part B Dispute Resolution Procedures, revised July 2013 (OSEP Memo 13-08) (http://www2.ed.gov/policy/speced/guid/idea/memosdcltrs/acccombinedosersdisputeresolutionqafinalmemo-7-23-13.pdf); and

- Dear Colleague Letter on a public agency's Use of Due Process Procedures After a Parent Has Filed a State Complaint, April 2015 (https://www2.ed.gov/policy/speced/guid/idea/memosdcltrs/dcl04152015disputeresolution2q2015.pdf)

The Office of Special Education and Rehabilitative Services (OSERS) is committed to ensuring that children with disabilities have access to learning environments that are safe, supportive, and conducive to learning. In such learning environments, educators have the skills and tools to prevent disciplinary incidents before they happen, use effective behavioral supports, teach behavioral expectations, and implement other behavioral management strategies. In many schools, effective behavioral supports have been implemented within a multi-tiered behavioral framework to organize school efforts to support children with disabilities and their peers. In this way, schools facilitate the provision of FAPE by providing children with disabilities with the behavioral supports they need to prevent, or bring an end to, disciplinary approaches that may unduly interfere with instruction and the implementation of IEPs. Further, this focus on prevention helps to ensure that educators receive the training, coaching, and other supports they

Page 16—Dear Colleague

need to help children with disabilities, and their peers, to focus on learning and succeed in school.

To better develop and implement appropriate IEPs for children whose behavior impedes the child's learning or that of others, and to ensure that behavioral supports are available throughout the continuum of placements, including in the regular education setting, OSERS has enclosed with this letter two technical assistance documents that we first released in November 2015 as part of the 40th Anniversary of IDEA:

1) Supporting and Responding to Behavior: Evidence-Based Classroom Strategies for Teachers:
   https://www.osepideasthatwork.org/evidencebasedclassroomstrategies

2) Positive Behavioral Interventions and Supports: Implementation Blueprint and Self-Assessment:
   http://www.pbis.org/blueprint/implementation-blueprint

These two documents provide additional information on evidenced-based classroom strategies to support and respond to behavior and on organizing practices in an integrated manner in a multi-tiered system of support.

If you have any questions or comments, please contact the Office of Special Education Programs Education Program Specialist, Lisa Pagano at 202-245-7413 or Lisa.Pagano@ed.gov.

Thank you for your support and your continued interested in improving education access and opportunity for children with disabilities.

Sincerely,

/s/ | /s/
--- | ---
Sue Swenson | Ruth E. Ryder
Acting Assistant Secretary | Acting Director
Special Education and Rehabilitative Services | Office of Special Education Programs