## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | CIVIL ACTION |
| v. | NO. 1:16-CV-03088-ELR |
| STATE OF GEORGIA, | |
| *Defendant*. | |

## STATE OF GEORGIA'S RESPONSES TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

**RESPONSE:** Pursuant to Federal Rule of Civil Procedure 56 and Rule 56.1(B) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, Defendant State of Georgia hereby submits its responses to Plaintiff's Statement of Undisputed Material Facts:

**I.    GNETS Program Overview**

1.    **The program that became known as the GNETS Program was first located in Athens, Georgia and was reorganized into 24 regions in 1976 after additional locations were established. Defendant State of Georgia's Objections and Responses to the United States' First Requests for Admission ("Def. Resp. to RFA") Nos. 2, 4 (attached hereto as "Ex. 1").**

**RESPONSE:** Objection. Defendant objects to the statement because it is not material and thus does not comply with the provisions set out in LR 56.1(B)(1). Defendant further objects to "after additional locations were established" to the extent it

– 1 –

suggests or otherwise implies that the GNETS program was reorganized in response to

additional locations being established and to the extent it suggests or otherwise implies

the State administers the GNETS program. Defendant does not dispute that the GNETS

program was first located in Athens, Georgia and was reorganized into 24 regions in

1976.

**2.     In 2007, the State of Georgia ("State") renamed the network of those programs the Georgia Network for Educational and Therapeutic Support Program ("GNETS Program" or "GNETS" or "Program").  Ex. 1, Def. Resp. to RFA No. 5.**

**RESPONSE:** Objection. Defendant objects on the grounds that "network" is

vague and subject to interpretation. Defendant further objects to the extent that

"renamed" suggests or otherwise implies that the State administers the GNETS

program. Subject to the preceding objections, the Court may consider the remainder of

this evidence for purposes of the summary judgment motion.

**3.     The GNETS Program currently includes the following 24 regional GNETS programs, which collectively serve nearly all of the State's 181 public school districts:  Burwell, Cedarwood, Coastal Academy, Coastal Georgia Comprehensive Academy, DeKalb-Rockdale, Elam Alexander Academy, Flint Area Learning, Futures, Harrell Learning Center, H.A.V.E.N. Academy, Heartland Academy, Horizon Academy, Mainstay Academy, North Metro, NorthStar Educational and Therapeutic Services, Northwest Georgia Educational, Oak Tree, GNETS of Oconee, Pathways Educational, River Quest, The Lighthouse (formerly known as Rutland Academy), Sand Hills, South Metro, and Woodall.  *See* Ex. 1, Def. Resp. to RFA No. 6; FY 24 GNETS Directory (July 2023), https://www.gadoe.org/Curriculum-Instruction-and-Assessment/Special-Education-Services/Documents/GNETS/FY24%20%20GNETS%20%20Directory%20Updated %20%20July%202023.pdf (last visited Oct. 18, 2023) (attached hereto as "Ex. 2"); FY 23 GNETS Directory (June 2022) (attached hereto as**

"Ex. 3"); AskDOE - Schools and Districts, https://www.gadoe.org/External-Affairs-and-Policy/AskDOE/Pages/Schools-and-Districts.aspx#:~:text=There%20are%20currently%20181%20school,in%20the%20st ate%20of%20Georgia (last visited Oct. 18, 2023) (attached hereto as "Ex. 4").

**RESPONSE:** Objection. Defendant objects that "serve" and "nearly all" are vague and subject to interpretation, and thus further objects to the extent that "serve" suggests or otherwise implies that the State administers the GNETS program. Subject to the preceding objections, the Court may consider the remainder of this evidence for purposes of the summary judgment motion.

4.    Among the current or former directors of these regional GNETS programs are: David Ackerman (Coastal Georgia Comprehensive Academy), Whitney Braddock (Cedarwood), Samuel Clemons (Horizon Academy), Brooke Cole (Elam Alexander Academy), Lisa Futch (Coastal Academy), Derrick Gilchrist (South Metro), Cassandra Holifield (North Metro), Haley Livingston (Harrell Learning Center), Jacqueline Neal (NorthStar Educational and Therapeutic Services), Talithia Newsome (Sand Hills), Celest Ngeve (former Rutland Academy), and Patricia Wolf (GNETS of Oconee). *See* Exs. 2-3.

**RESPONSE:** Objection. Defendant objects to the statement because it is not material and thus does not comply with the provisions set out in LR 56.1(B)(1).

5.    Each of the 24 regional GNETS programs has a fiscal agent: a regional education service agency ("RESA") or a local education agency ("LEA"). Ga. Code Ann. § 20-2-270.1; Ex. 1, Def. Resp. to RFA No. 7.

**RESPONSE:** Undisputed. The Court may consider this evidence for purposes of the summary judgment motion.

6.    From 2016 to 2022, the GNETS Program served the following numbers of unique students:

- **2016 – 4,492 students**
- **2017 – 4,117 students**
- **2019 – 3,805 students**
- **2019 – 3,607 students**

- **2020 – 3,344 students**
- **2021 – 2,963 students**
- **2022 – 2,925 students**

Ex. 1, Def. Resp. to RFA Nos. 110-114; see GA05242789 (attached hereto as "Ex. 5"); GA05242790 (attached hereto as "Ex. 6").

**RESPONSE:** Undisputed. The Court may consider this evidence for purposes of the summary judgment motion.

7. **The GNETS Program currently serves students in GNETS Centers— self-contained facilities that are separate from general education school settings and that only students in the GNETS Program attend—and GNETS school-based locations—that is, one or more classrooms populated exclusively by students in the GNETS Program but co-located with a general education school. Ex. 1, Def. Resp. to RFA No. 10; Deposition of Vickie Cleveland ("Cleveland Dep.") 112:18-25, 115:4-7 (attached hereto as "Ex. A"); Deposition of Haley Livingston ("Livingston Dep.") 126:5-127:24 (attached hereto as "Ex. B"); Deposition of Lakesha Stevenson ("Stevenson Dep.") 93:3-5 (attached hereto as "Ex. C").**

**RESPONSE:** Undisputed. The Court may consider this evidence for purposes of the summary judgment motion.

## II.    The State's Service Delivery System

8. **The Georgia Department of Education ("GaDOE") is the state agency responsible for "the fiscal and administrative management of certain aspects of K-12 public education, including the implementation of federal and state mandates." Ga. Comp. R. & Regs. § 160-4-7-.15(1)(c) (attached hereto as "Ex. 7").**

**RESPONSE:** Objection. Ga. Comp. R. & Regs. § 160-4-7-.15(1)(c) speaks for itself and, in full, (1)(c) provides: "Georgia Department of Education (GaDOE) - the

state agency charged with the fiscal and administrative management of certain aspects

of K-12 public education, including the implementation of federal and state mandates.

Such management is subject to supervision and oversight by the State Board of

Education." Defendant further objects to the extent that Plaintiff's use of "responsible"

suggests or otherwise implies that the State administers the GNETS program. Lastly,

Defendant objects on the ground that Plaintiff's interpretation of a rule constitutes a

legal conclusion which does not comply with LR 56.1(B)(1).

9. **Georgia's State Board of Education, which supervises and oversees GaDOE in the execution of its managerial responsibilities, is the "constitutional authority which defines education policy for the public K-12 education agencies in Georgia." Ex. 7 at ¶ (1)(c), (f).**

   **RESPONSE:** Objection. Ga. Comp. R. & Regs. § 160-4-7-.15(1)(c), (f) speaks

for itself. Defendant further objects on the ground that Plaintiff's interpretation of a rule

constitutes a legal conclusion which does not comply with LR 56.1(B)(1).

10. **The Georgia Department of Community Health ("DCH") is the agency that administers the State's Medicaid and PeachCare for Kids programs, through which eligible children access medically necessary Medicaid services, including Early Periodic Screening Diagnosis and Treatment Services. *See* Ga. Code Ann. §§ 31-2-1, 31-2-4; Ex. 8; Deposition of Wendy Tiegreen ("Tiegreen Dep.") 216:3-7 (attached hereto as "Ex. D").**

   **RESPONSE:** Objection. The cited code sections speak for themselves. Second,

Defendant objects on the ground that Plaintiff's interpretation of a statute constitutes a

legal conclusion which does not comply with LR 56.1(B)(1). Third, the cited evidence

does not support the statement. Fourth, Defendant objects to the statement because it is

not material for purposes of the pending Motion and thus does not comply with the provisions set out in LR 56.1(B)(1).

11. **Many mental health and therapeutic educational services and supports are reimbursable through the State's Medicaid and PeachCare for Kids programs.** *See generally* **PeachCare for Kids website, https://dch.georgia.gov/peachcare-kids (last visited Oct. 18, 2023) (attached hereto as "Ex. 9");** *see* **Deposition of Frank Berry ("Berry Dep.") 164:18-166:13 (attached hereto as "Ex. E").**

RESPONSE: Objection. Defendant objects on the ground that Plaintiff's interpretation of what is reimbursable by the State's Medicaid programs constitutes a legal conclusion which does not comply with LR 56.1(B)(1). Defendant further objects to the statement because it is not material for purposes of the pending Motion and thus does not comply with the provisions set out in LR 56.1(B)(1).

12. **The Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD") is the state agency that oversees and administers policies, programs, and services for "mental health, developmental disabilities, and addictive diseases."  Ga. Code Ann. § 37-1-20;** *see also* **Ga. Code Ann. § 37-1-21; Ex. E, Berry Dep. 165:11-166:13, 184:21-25; Deposition of Judith Fitzgerald ("J. Fitzgerald Dep.") 52:21-53:19, 62:2-16 (attached hereto as "Ex. F").**

RESPONSE: Objection. Ga. Code Ann. § 37-1-20 and Ga. Code Ann. § 37-1-21 speak for themselves. Second, Defendant objects on the ground that Plaintiff's interpretation of statute constitutes a legal conclusion which does not comply with LR 56.1(B)(1). Lastly, Defendant objects to the statement because it is not material for purposes of the pending Motion and thus does not comply with the provisions set out in LR 56.1(B)(1).

13. **In 1990, the State passed a law requiring, among other things, the development of "a coordinated system of care so that children and adolescents with a severe emotional disturbance and their families will receive appropriate educational, nonresidential and residential mental health services." Ga. Code Ann. § 49-5- 220(a)(6).**

**RESPONSE:** Objection. The code section speaks for itself. Second, Defendant objects on the ground that Plaintiff's interpretation of statute constitutes a legal conclusion which does not comply with LR 56.1(B)(1). Third, the cited evidence does not support the statement as the cited evidence provides the General Assembly's legislative intent and is not a requirement of law. Lastly, Defendant objects to the statement because it is not material for purposes of the pending Motion and thus does not comply with the provisions set out in LR 56.1(B)(1).

14. **The State legislature has charged DBHDD with "planning, developing, and implementing the coordinated system of care for" children with severe emotional disabilities, among others. Ga. Code Ann. § 49-5-220(b); *see also* Ga. Code Ann. § 37-1-20(24).**

**RESPONSE:** Objection. Ga. Code Ann. § 49-5-220(b) and Ga. Code Ann. § 37-1-20(24) speak for themselves. Second, Defendant objects on the ground that Plaintiff's interpretation of statute constitutes a legal conclusion which does not comply with LR 56.1(B)(1). Third, Defendant objects that the fact cited only provides language from Ga. Code Ann. § 49-5-220(b) and cannot be attributable to what is provided in Ga. Code Ann. § 37-1-20(24). Lastly, Defendant objects to the statement because it is not material for purposes of the pending Motion and thus does not comply with the provisions set out in LR 56.1(B)(1).

15. **DBHDD funds and administers school-based behavioral health services through the Georgia Apex Program but excludes students at "GNETS standalone facilities" (also known as GNETS Centers) from receiving those services. *See APEX 3.0 Frequently Asked Questions*, https://dbhdd.georgia.gov/be-supported/mental- health-children-young-adults-and-families/apex-3-faqs ("In which types of schools can Apex services be implemented?") (last visited Oct. 18, 2023) (attached hereto as "Ex. 10"); Ex. F, J. Fitzgerald Dep. 62:17-63:8; Deposition of Lisa Futch ("Futch Dep.") 303:17-305:5 (attached hereto as "Ex. G"); Deposition of Dante McKay ("McKay Dep.") 158:2-16 (attached hereto as "Ex. H").**

RESPONSE: Objection. The cited evidence does not support the statement. Ex. 10 instead provides, in pertinent part, "The Georgia Apex Program (Apex), funded and managed by the Georgia Department of Behavioral Health and Developmental Disabilities (DBHDD), is a partnership between community-based mental health providers and local schools and school districts that helps address the mental health needs of Georgia students." It further provides, in pertinent part, "Apex services cannot be provided in private charter schools, GNETS standalone facilities, private schools, or homeschooled/cyber public schools." Lastly, Defendant objects to the statement because it is not material for purposes of the pending Motion and thus does not comply with the provisions set out in LR 56.1(B)(1).

## III. The GNETS Rule

16. **On June 15, 2017, the State Board of Education promulgated a rule related to the GNETS Program that appears as Rule 160-4-7-.15 in the Rules and Regulations of the State of Georgia ("the GNETS Rule"). Ex. 7.**

RESPONSE: Objection. Defendant objects to the extent the statement suggests or otherwise implies that the State administers the GNETS program. Subject to the

preceding objection, the Court may consider the remainder of this evidence for purposes of the summary judgment motion.

17. **The current GNETS Rule took effect on July 5, 2017, but prior to that time an earlier GNETS rule promulgated by the State Board of Education was in force. Ex. 7;** *see* **Ex. 1, Def. Resp. to RFA 120.**

    **RESPONSE:** Objection. Defendant objects to the extent the statement suggests or otherwise implies that the State administers the GNETS program. Subject to the preceding objection, the Court may consider the remainder of this evidence for purposes of the summary judgment motion.

18. **The GNETS Rule establishes the purpose of the GNETS Program, the characteristics that purport to distinguish the GNETS Program from other educational environments, the eligibility criteria for student placement in the GNETS Program, and the learning environments in which GNETS services may be delivered.** *See* **Ex. 7 at ¶¶ (2)-(4).**

    **RESPONSE:** Objection. The Rule speaks for itself. Second, Defendant objects on the ground that Plaintiff's interpretation of the rule constitutes a legal conclusion which does not comply with LR 56.1(B)(1). Third, the cited evidence does not support the statement.

19. **The GNETS Rule specifically states that "GNETS provides comprehensive educational and therapeutic support services to students who exhibit intense social, emotional and/or behavioral challenges with a severity, frequency or duration such that the provision of education and related services in the general education environment has not enabled him or her to benefit educationally based on the IEP ["Individualized Education Program"]." Ex. 7 at ¶ (2)(a).**

**RESPONSE:** Undisputed. The Court may consider this evidence for purposes of the summary judgment motion.

**20.    The GNETS Rule also states that "GNETS will be staffed to meet the needs of a unique population of students requiring intensive individualized supports, including providing appropriate therapeutic services identified in the IEP" and that "GNETS services are implemented with greater intensity and frequency than what is typically delivered in a general education school environment." Ex. 7 at ¶ (2)(c),(d).**

**RESPONSE:** Ga. Comp. R. & Regs. § 160-4-7-.15(2) and its subsections speaks for itself. Defendant further objects that the excerpts in conjunction suggests or otherwise implies that the State administers the GNETS program. Subject to the preceding objections, the Court may consider the remainder of this evidence for purposes of the summary judgment motion.

**21.    According to the GNETS Rule:**

> [a]n individual student is considered for GNETS services only if his or her IEP team recommends GNETS services based on the existence of all of the following, which will be documented in the student's education record:
>
> 1. Documentation that indicates evidence of annual IEP reviews, progress monitoring data aligned with IEP goals, documentation indicating prior services were delivered in a lesser restrictive environment and the student's inability to receive FAPE in that environment.
>
> 2. A Functional Behavioral Assessment (FBA) and/or Behavior Intervention Plan (BIP) administered within the past year.
>
> 3. Documentation that a comprehensive reevaluation has been completed within the last 3 years.

Ex. 7 at ¶ (3)(c).

**RESPONSE:** Undisputed. The Court may consider this evidence for purposes of

the summary judgment motion.

22. **The GNETS Rule further provides that: "[t]he IEP team must determine that GNETS services are necessary for students to receive FAPE. Removal from the general education setting will occur only when the nature or severity of students' social, emotional and/or behavioral challenges are such that education in a general education setting with the use of supplementary services and intensive individualized interventions cannot be achieved." Ex. 7 at ¶ (4)(a).**

**RESPONSE:** Undisputed. The Court may consider this evidence for purposes of

the summary judgment motion.

23. **The GNETS Rule requires that students be age 5 or older to receive GNETS services. Ex. 7 at ¶ (2)(a).**

**RESPONSE:** Objection. Defendant objects on the ground that the statement

constitutes a legal conclusion which does not comply with LR 56.1(B)(1). Defendant

further objects to the statement because it is not material for purposes of the pending

Motion and thus does not comply with the provisions set out in LR 56.1(B)(1).

24. **Under a prior version of the GNETS Rule promulgated by the State Board of Education, students could receive GNETS services as early as age 3 and a diagnosis of "emotional and behavior disorder" or "EBD" was a prerequisite for placement in the GNETS Program.** *See* **GA01286674 (attached hereto as "Ex. 11") at GA01286675; Deposition of Brooke Cole ("Cole Dep.") 66:16-67:18 (attached hereto as "Ex. I"); Deposition of Amber McCollum ("McCollum Dep.") 87:1-19 (attached hereto as "Ex. J").**

**RESPONSE:** Objection. Defendant objects to the extent that the excerpts

separately or in conjunction suggest or otherwise imply that the State administers the

GNETS program. Second, Defendant objects that the evidence cited does not support

the fact stated. Third, Defendant objects on the ground that the statement constitutes a

legal conclusion which does not comply with LR 56.1(B)(1). Fourth, Defendant objects

to the statement because it is not material for purposes of the pending Motion and thus

does not comply with the provisions set out in LR 56.1(B)(1).

**25.    The GNETS Rule specifies the environments in which GNETS services may be delivered, which range from "the general education setting in the student's Zoned School or other public school" at one end of the spectrum to a full school day in "a facility dedicated to GNETS" at the other end of the spectrum.  Ex. 7 at ¶ (4)(c).**

**RESPONSE:** Objection. Defendant objects on the ground that the statement

constitutes a legal conclusion.

**26.    The GNETS Rule specifies each of the entities the State has assigned a role in Program operations, prescribes those entities' duties and responsibilities, and dictates the relationships between the entities and the State.  Ex. 7 at ¶ (5).**

**RESPONSE:** Objection. Defendant objects on the ground that the statement

constitutes a legal conclusion which does not comply with LR 56.1(B)(1). Defendant

further objects that the cited evidence does not support the statement with respect to the

uses of "specifies," "assigned," "prescribes," and "dictates." Lastly, Defendant objects

to the extent the statement suggests or otherwise implies the State administers the

GNETS program.

**27.    This includes the following such entities: a) the State Board of Education (the "State Education Agency (SEA)"), b) individual school systems (the "local**

education agency (LEA)"), c) regional GNETS programs ("the GNETS"), and d) fiscal agents (which can be LEAs or RESAs).  Ex. 7 at ¶ (5).

**RESPONSE:** Objection. Defendant objects on the ground that the statement

constitutes a legal conclusion.

28. **According to the GNETS Rule, the State Education Agency shall "[r]eceive and disburse funds appropriated by the Georgia General Assembly to support GNETS services."  Ex. 7 at ¶ (5)(a).**

**RESPONSE:** Defendant admits that the Court may consider this evidence for

purposes of the summary judgment motion.

29. **The GNETS Rule also charges the State Education Agency with "[a]dminister[ing] the grant funds" by performing the following duties and responsibilities in collaboration with GaDOE: "(i) [d]evelop[ing] rules and procedures regulating the operation of the GNETS grant, including the application process"; (ii) "[n]otify[ing] the fiscal agents regarding each fiscal year's allocation and approv[ing] GNETS services budgets"; and (iii) "[m]onitor[ing] GNETS to ensure compliance with Federal and state policies, procedures, rules, and the delivery of appropriate instructional and therapeutic services."  Ex. 7 at ¶ (5)(a).**

**RESPONSE:** Objection. The evidence cited does not support the statement.

Plaintiff's interpretation and characterization of the GNETS Rule is not a statement of

undisputed fact, but an argumentative statement regarding a disputed issue in this case.

The evidence cited also does not comply with LR 56.1(B)(1) because it is a legal

conclusion.

30. **The GNETS Rule requires LEAs to perform several duties and responsibilities, including: (1) "[e]nsure that FAPE is delivered to students recommended for GNETS services in the least restrictive environment (LRE)"; (2) "[c]onvene IEP team meetings as required by State Board of Education Rule 1604-7-.06"; (3) "[p]rovide transportation to and from a**

**GNETS, as required, including transportation to and from home/school for students receiving GNETS services for part of the school day and for students participating in extracurricular activities"; (4) "[m]aintain and report student record data in accordance with the State Board of Education Rule 160-5-1-.07 and GaDOE guidance"; (5) "[a]llocate supports and resources, which may include in-kind services to GNETS to facilitate flexible models of service delivery and best practices for equitable educational support as appropriate"; and (6) "[s]ubmit student schedules to the GaDOE with the GNETS code," among other things. Ex. 7 at ¶ (5)(b).**

**RESPONSE:** Objection. Plaintiff's interpretation and characterization of the

GNETS Rule is not a statement of undisputed fact but an argumentative statement

regarding a disputed issue in this case. In addition the statement does not comply with

LR 56.1(B)(1) because it is a legal conclusion.

31. **The GNETS Rule sets forth the duties and responsibilities of the regional GNETS programs, including but not limited to the programs' obligations to: (1) "[c]ollaborate with LEAs to ensure that special education related services are provided to all students receiving GNETS services"; (2) "[c]ollaborate with GaDOE to implement activities outlined in the GNETS strategic plan to improve GNETS practices and student services"; (3) "[c]omplete the annual needs assessment embedded in the GNETS strategic plan"; (4) [s]ubmit application[s] for grant funds annually"; (5) "[s]ubmit budget request[s] to support program operations to fiscal agents"; (6) "[c]ollaborate with the fiscal agent to ensure appropriate expenditure of funds"; (7) "[s]ubmit student and program data as requested by the GaDOE"; (8) "[c]onduct FBAs/BIPs for any student considered for GNETS services in accordance with (3)(c)(2) of this rule"; (9) "[c]ollaborate with LEAs to convene IEP team meetings as required by State Board Of Education Rule 160-4-7-.06"; and (10) "[m]onitor facilities for safety and accessibility for students served by GNETS and report identified concerns to all key stakeholders including, LEAs, fiscal agents and any other appropriate parties." Ex. 7 at ¶ (5)(c).**

**RESPONSE:** Objection. Plaintiff's interpretation and characterization of the

GNETS Rule is not a statement of undisputed fact but an argumentative statement

regarding a disputed issue in this case. In addition the statement does not comply with

LR 56.1(B)(1) because it is a legal conclusion.

**32.  Lastly, the GNETS Rule provides that the fiscal agent shall, among other things: (1) "[a]ccount for and disburse grant funds in accordance with general accepted accounting and financial reporting principles to restricted GNETS accounts . . ."; (2) "[s]ubmit financial reports as required by the SEA and the GaDOE"; and (3) "[r]eport requested data to the SEA or the GaDOE." Ex. 7 at ¶ (5)(d).**

**RESPONSE:** Objection. Plaintiff's interpretation and characterization of the

GNETS Rule is not a statement of undisputed fact but an argumentative statement

regarding a disputed issue in this case. In addition the statement does not comply with

LR 56.1(B)(1) because it is a legal conclusion.

**IV.    Direction from State-Employed GNETS Program Personnel[1]**

**33.  GaDOE employs both a GNETS Program Manager and GNETS Program Specialist who oversee the State's responsibilities related to the GNETS Program. *See* Ex. 1, Def. Resp. to RFA No. 14; Ex. A, Cleveland Dep. 23:12-17, 25:17-19; Deposition of Clara Keith Brown ("Keith Dep.") 25:22-26:4 (attached hereto as "Ex. K").**

**RESPONSE:** Objection. Plaintiff's characterization of GaDOE's relationship

with respect to GNETS is not a statement of undisputed fact, but an argumentative

statement regarding a disputed issue in this case. This is particularly true with respect to

the usage of the terms "oversee" and "responsibilities." Further, the evidence cited does

not support the statement. Defendant's Response to RFA No. 14 instead states that "the

---

[1] Defendant State of Georgia objects to all headings herein to the extent they contain argument and do not comply with LR 56.1(B)(1).

State admits the Department of Education currently employs an individual who

addresses the GNETS program."

**34.    Organizationally, GNETS (including these dedicated positions) has been housed in different GaDOE departments over time but is currently located within the Special Education Services and Supports Division of GaDOE's Office of Federal Programs.** *See* **Ex. 12; Deposition of Wina Low ("Low Dep.") 30:16-35:25 (attached hereto as "Ex. L"); Deposition of Sonia Shaun Owen ("Owen Dep.") 30:14-31:7, 33:21-34:8 (attached hereto as "Ex. M").**

    <u>RESPONSE:</u> Objection. The evidence cited does not support the statement.

Plaintiff's characterization of GaDOE's organization and relationship with respect to

GNETS is not a statement of undisputed fact, but an argumentative statement regarding

a disputed issue in this case. This is particularly true with respect to the usage of the

term "dedicated" and the term "GNETS," a definition for which is not provided herein

(i.e., the GNETS Program, the 24 regional GNETS programs, etc.), yet is described as

being "housed" in GaDOE. Defendant objects to the extent that the statement is used to

suggest that the State of Georgia administers the GNETS Program.

**35.    GaDOE first hired a GNETS Program Manager, whose work focuses exclusively on the GNETS Program, in 2016.** *See* **Ex. 1, Def. Resp. to RFA No. 15; Ex. A, Cleveland Dep. 36:12-37:14, 66:10-14; Deposition of Deborah Gay ("Gay Dep.") 108:1-10 (attached hereto as "Ex. N"); Ex. K, Keith Dep. 236:6-13; Ex. L, Low Dep. 77:10-18.**

    **RESPONSE:** Objection. Plaintiff's characterization of GaDOE's relationship

with respect to GNETS is not a statement of undisputed fact, but an argumentative

statement regarding a disputed issue in this case. Defendant objects to the extent that the

statement is used to suggest that the State of Georgia administers the GNETS Program.

In addition, The evidence cited does not support the statement. Defendant's Response to

RFA No. 14 instead states that "'[d]efendant objects to Request No. 15 on the grounds

that the phrase 'exclusively dedicated' is vague and susceptible to multiple meanings in

the context of the Request… the State admits the Department of Education hired an

individual with the title GNETS Program Manager in 2016'."

**36.  The GNETS Program Manager hired in 2016 was Nakeba Rahming.  Ex. 1, Def. Resp. to RFA No. 16.**

**RESPONSE:** Objection. Defendant objects to the statement because it is not

material and thus does not comply with the provisions set out in LR 56.1(B)(1).

Defendant does not otherwise object to the statement.

**37.  The GNETS Program Manager is sometimes referred to as the GNETS Program Director.  Ex. N, Gay Dep. 106:16-107:10; Deposition of William "Matt" Jones ("W. Jones Dep.") 209:18-21 (attached hereto as "Ex. O"); Ex. K, Keith Dep. 25:22-26:4; Ex. B, Livingston Dep. 70:13-21; Ex. J, McCollum Dep. 35:12-15, 208:15-23.**

**RESPONSE:** Objection. The evidence cited does not support the statement, and

even if it did, the statement is not material and thus does not comply with the provisions

set out in LR 56.1(B)(1).

**38.  Nakeba Rahming reported directly to the State School Superintendent's Chief of Staff, William "Matt" Jones, and worked closely with a DBHDD Director named Clara Keith.  Ex. 1, Def. Resp. to RFA No. 18; Ex. O, W. Jones Dep. 24:23- 25:14; Ex. K, Keith Dep. 33:13-20; 46:19-47:2, 47:13-48:1.**

**RESPONSE:** Objection. The statement is not material and thus does not comply with the provisions set out in LR 56.1(B)(1).

39.    **GaDOE's Chief Financial Officer James "Ted" Beck described the GNETS Program Manager as "the coordinator for the 20+ sites" who "work[s] to implement our policies and procedures with more standardization across each location." Ex. 13; Deposition of James Beck ("Beck Dep.") 10:3-7, 23:4-21, 154:1- 156:5 (attached hereto as "Ex. P").**

**RESPONSE:** Objection. The statement lacks foundation to show that Mr. Beck has the personal knowledge necessary to speak to the role of the GNETS Program Manager. Second, the statement, which is simply Mr. Beck's personal opinion and description of the GNETS Program Manager role, is not material and thus does not comply with the provisions set out in LR 56.1(B)(1). Lastly, evidence directly contradicts Mr. Beck's testimony and shows GNETS Program decisions, including on policies and procedures, are made at the local level. (*e.g.*, (closure of programs or locations [Deposition of Vickie Cleveland at 114:11-14]; policies and procedures generally [Deposition of Haley Livingston at 60:9-61:7]; curriculum decisions [Deposition of Lisa Futch at 237:12-238:4, Deposition of Cassandra Holifield at 30:20-31:17, Deposition of Wina Low at 63:15–64:14]; staffing and hiring [Deposition of Talithia Newsome at 107:2-111:2, Deposition of Haley Livingston at 277:8-12; 278:1-12, Deposition of Lisa Futch at 349:8-14, Deposition of Shaun Owen at 155:13-20, Deposition of Derrick Gilchrist at 254:14-255:5, Deposition of Vickie Cleveland at 146:14-23, Deposition of Celest Ngeve at 128:3-131:18]; facility maintenance and

concerns [Deposition of Talithia Newsome at 71:25-73:11, Deposition of Lisa Futch at 238:5-15, Deposition of Cassandra Holifield at 286:15-24, Deposition of David Ackerman at 90:1-3, Deposition of Whitney Braddock at 230:17-21]; bus service [Deposition of Talithia Newsome at 84:17-22, 85:2-6, 236:20-237:3, Deposition of Lisa Futch at 167:9-18, Deposition of Haley Livingston at 153:4-11, Deposition of Celest Ngeve at 139:2-5, Deposition of David Ackerman at 19-21]; restraint policies [Deposition of Lisa Futch at 353:9-18]; transition, academic achievement, and reintegration [Deposition of Wina Low at 167:13–168:2, 150:7–17]; CSB collaborations [Deposition of Jennifer Hibbard at 74:24-75:14; 76:4-13].)

**40.     Prior to Nakeba Rahming's hire, GaDOE employed other personnel who dedicated some portion of their time to GNETS Program management. Ex. 1, Def. Resp. to RFA No. 17; Ex. N, Gay Dep. 27:1-29:8; Deposition of Patricia Wolf ("Wolf Dep.") 249:22-250:6 (attached hereto as "Ex. Q").**

**RESPONSE:** Objection. The statement is not a statement of undisputed fact, but an argumentative statement regarding a disputed issue in this case. Defendant objects to the extent that the statement is used to suggest that the State of Georgia administers the GNETS Program. In addition, the evidence cited does not support the statement. Defendant's Response to RFA No. 17 states that "'GNETS-related program management' […] [is] vague and susceptible to multiple meanings. Subject to the preceding objections, and without waiving the same, the State admits that, prior to 2016, GaDOE employee Ginny O'Connell spent part of her professional time in matters involving GNETS and PBIS."

– 19 –

**41.  In addition to the GNETS Program Manager, GaDOE hired a GNETS Program Specialist for the first time in 2018.  Ex. 1, Def. Resp. to RFA No. 19.**

**RESPONSE:** Defendant objects to the statement because it is not material and thus does not comply with the provisions set out in LR 56.1(B)(1). Defendant does not otherwise object to the statement.

**42.  The GNETS Program Specialist, whose work focuses exclusively on the GNETS Program, reports to the GNETS Program Manager.** *See* **Ex. 1, Def. Resp. to RFA No. 21; Exs. 14-15; Ex. A, Cleveland Dep. 66:10-12; Ex. C, Stevenson Dep.25:6-12, 78:6-8.**

**RESPONSE:** Objection. The statement is not a statement of undisputed fact, but an argumentative statement regarding a disputed issue in this case, especially with respect to the phrase "focuses exclusively." Defendant objects to the extent that the statement is used to suggest that the State of Georgia administers the GNETS Program. In addition, the evidence cited does not support the statement.

**43.  Lakesha Stevenson was hired as the GNETS Program Specialist in 2018 and has continued to hold that position since then.  Ex. 1, Def. Resp. to RFA No. 20; Ex. C, Stevenson Dep. 24:15-22.**

**RESPONSE:** Defendant objects to the statement because it is not material and thus does not comply with the provisions set out in LR 56.1(B)(1). Defendant does not otherwise object to the statement.

**44.  The current GaDOE employee serving as GNETS Program Manager, Vickie Cleveland, has held that position since 2018.  Ex. 1, Def. Resp. to RFA Nos. 22-23.**

**RESPONSE:** Defendant objects to the statement because it is not material and thus does not comply with the provisions set out in LR 56.1(B)(1). Defendant does not otherwise object to the statement.

A.    **Project Management Plan**

45.    **In late 2015 and 2016, State personnel—including the GNETS Program Manager—developed a comprehensive plan for the GNETS Program containing "detailed action steps to address program improvements" and metrics for tracking the State's progress in ensuring implementation.** *See* **Ex. N, Gay Dep. 156:3-156:13; Ex. K, Keith Dep. 65:23-66:22, 68:21-25, 96:20-97:5, 98:21-101:22, 169:1-170:25.**

**RESPONSE:** Defendant objects as the evidence cited does not support the statement. Defendant also objects because the statement does not comply with LR 56.1(B)(1) because it is stated as an argument. Plaintiff's characterization of the State's role in the plan and the purpose of the plan is not a statement of undisputed fact, but an overtly argumentative statement unsupported by the evidence and regarding a disputed issue in this case. Defendant further objects to the extent that the statement is used to suggest that the State of Georgia administers the GNETS Program. Lastly, the evidence cited does not support the statement that "[i]n late 2015 and 2016, State personnel— including the GNETS Program Manager—developed a comprehensive plan for the GNETS Program containing 'detailed action steps to address program improvements'" and metrics for tracking the State's progress in ensuring implementation." The evidence cited shows that, contrary to the DOJ's description, the Project Management Plan was never implemented and lacks a means of enforcement.  The cited deposition testimony

of Ms. Keith refers to an email and speaks of an aspiration—identifying a short-term

goal—and not actual implementation.

**46.    This Project Management Plan sought program improvements in a wide range of areas, including program administration, instruction, therapeutic services, facilities, and funding.  *See* GA00061974 (attached hereto as "Ex. 16") (redactions applied by State); GA00198520 (attached hereto as "Ex. 17") (redactions applied by State).**

RESPONSE: Defendant objects because the statement does not comply with LR

56.1(B)(1) because it is stated as an argument. Plaintiff's characterization of the goals

of the Project Management Plan is not a statement of undisputed fact, but an overtly

argumentative statement unsupported by the evidence and regarding a disputed issue in

this case. Defendant further objects to the extent that the statement is used to suggest

that the State of Georgia administers the GNETS Program. Lastly, the evidence cited

does not support the statement that the plan "sought program improvements in a wide

range of areas."

**47.    The Project Management Plan specifically referenced the GNETS Strategic Plan as an action step for improving program administration. *See* Ex. 16 (GA00061974); Ex. 17 (GA00198520).**

RESPONSE: Objection. The evidence cited does not support the statement.

Exhibits 16 -17 do not "specifically reference the GNETS Strategic Plan as an action

step for improvising program administration." Rather, the Project Management Plan

lists "revis[ing] [the] GNETS Strategic plan" as an activity and milestone. Defendant

also objects because the statement does not comply with LR 56.1(B)(1) because it is

stated as an argument. Plaintiff's characterization of the Project Management Plan "as an action step for improving program administration" is not a statement of undisputed fact, but an overtly argumentative statement unsupported by the evidence and regarding a disputed issue in this case. Defendant objects to the extent that the statement is used to suggest that the State of Georgia administers the GNETS Program.

**B.    The GNETS Strategic Plan and Self-Assessment**

48.    **GaDOE requires all regional GNETS programs to comply with the GNETS Strategic Plan. *See* Ex. 18 at GA00362008; Deposition of Whitney Braddock ("Braddock Dep.") 206:10-19, 208:1-11 (attached hereto as "Ex. R"); Deposition of Derrick Gilchrist ("Gilchrist Dep.") 243:16-25, 244:21-245:8 (attached hereto as "Ex. S"); Deposition of Cassandra Holifield ("Holifield Dep.") 196:24-197:1 (attached hereto as "Ex. T"); Ex. K, Keith Dep. 90:25-91:6, 192:6-15; Ex. B, Livingston Dep. 69:17-70:12; Deposition of Celest Ngeve ("Ngeve Dep.") 285:14-17 (attached hereto as "Ex. U"); Ex. M, Owen Dep. 193:4-15; Ex. C, Stevenson Dep. 42:10-17, 47:24- 48:7; Ex. Q, Wolf Dep. 238:7-18.**

**RESPONSE:** Objection. The statement does not comply with LR 56.1(B)(1) because it is stated as an argument. Plaintiff's characterization of GaDOE's relationship with respect to GNETS and the existence of any "requirement" is not a statement of undisputed fact, but an argumentative statement regarding a disputed issue in this case. Defendant objects to the extent that the statement is used to suggest that the State of Georgia administers the GNETS Program. In addition, the term "requires" is ambiguous and subject to multiple interpretations. Indeed, at least one GNETS Program Director testified she completes the Strategic Plan self-assessment but does not turn it in. Braddock Dep. at 210:12-18. Lastly, the evidence shows the Strategic Plan is a self-

assessment; it is not a "plan" to "comply with." Deposition of Shaun Owen at 194:11-15; Deposition of Vickie Cleveland at 207:4-10, 185:1-4; 214:20-24, 215:8-14; Deposition of Lakesha Stevenson at 151:9-21.

49.    **In or around 2016, the GNETS Program Manager collaborated with a committee of regional GNETS program directors and various State personnel, including from GaDOE and DBHDD, to oversee the creation of the GNETS Strategic Plan and its supporting documents.** *See* **Ex. 1, Def. Resp. to RFA No. 129; Ex. 18 at GA00362006, GA00362008; Ex. 19 at GA00221994, GA00221996; Ex. R, Braddock Dep. 206:10-207:2; Ex. A, Cleveland Dep. 204:21-205:12; Ex. N, Gay Dep. at 166:3-167:1, 168:19-169:2; Ex. S, Gilchrist Dep. 41:9-19; Ex. K, Keith Dep. 67:17-19,94:20-95:6, 109:3-14, 177:8-178:6.**

RESPONSE: Objection. The statement does not comply with LR 56.1(B)(1) because it is stated as argument. Plaintiff's characterization of the GNETS Program Manager's role and the role of State personnel related to the GNETS Strategic Plan, particularly with respect to any "overs[ight]," is not a statement of undisputed fact, but an overtly argumentative statement regarding a disputed issue in this case. Defendant objects to the extent that the statement is used to suggest that the State of Georgia administers the GNETS Program. Lastly, the evidence refutes the statement and instead shows the creation of the Strategic Plan was a collaboration of the GNETS Program Manager and GNETS Directors. Deposition of Clara Keith Brown at 177:11-178:6. Further, the ultimate decision as to the content of the Strategic Plan was a collaborative decision of the GNETS Program Manager and GNETS Directors. Deposition of Clara Keith Brown at 177:11-178:6.

**50.** **Prior to GaDOE's implementation of the GNETS Strategic Plan in 2016, it had developed and implemented another strategic document that set forth goals and expectations for the GNETS Program and was updated over a four-year period.** *See* **Ex. 20; Ex. N, Gay Dep. 163:1-167:1.**

**RESPONSE:** Objection. The statement does not comply with LR 56.1(B)(1) because the citation to Ex. 20 does not include a page number and because the fact is stated as argument. Plaintiff's characterization of GaDOE's role related to the Strategic Plan in 2016 is not a statement of undisputed fact, but an overtly argumentative statement regarding a disputed issue in this case. Defendant objects to the extent the statement is used to suggest that the State of Georgia administers the GNETS Program. In addition, the evidence cited does not support the statement with respect to Plaintiff's characterization of the role, if any, that GaDOE played in relation to the referenced GNETS Strategic Plan. Lastly, Defendant objects to the phrase "strategic document that set forth goals and expectations for the GNETS Program" as an argumentative statement regarding a disputed issue in this case.

**51.** **The GNETS Strategic Plan effectively replaced prior strategic documents and performance monitoring tools that GaDOE required regional GNETS programs to use.** *See* **Ex. 21; Ex. N, Gay Dep. 171:11-173:20.**

**RESPONSE:** Objection. The evidence cited does not support the statement. Defendant further objects because the statement does not comply with LR 56.1(B)(1) because it is stated as argument. Plaintiff's characterization of a "requirement" by GaDOE is not a statement of undisputed fact, but an overtly argumentative statement regarding a disputed issue in this case. Lastly, the evidence does not support the portion

of the statement regarding "prior strategic documents and performance monitoring tools" and such phrase is ambiguous, vague, and subject to interpretation.

52.  **In the years since initially developing and implementing the Strategic Plan, the State has led periodic revisions of the Plan.** *See* **Ex. 18 at GA00362006; Ex. A, Cleveland Dep. at 204:21-206:11, 210:19-212:13.**

**RESPONSE:** Defendant objects because the statement does not comply with LR 56.1(B)(1) because it is stated as argument. Plaintiff's characterization of GaDOE's role related to GNETS Strategic Plan is not a statement of undisputed fact, but an overtly argumentative statement regarding a disputed issue in this case. Defendant objects to the extent that the statement is used to suggest that the State of Georgia administers the GNETS Program. Lastly, the evidence refutes the statement and instead shows the creation of the Strategic Plan was a collaboration of the GNETS Program Manager and GNETS Directors. Deposition of Clara Keith Brown at 177:11-178:6. Further, the ultimate decision as to the content of the Strategic Plan was a collaborative decision of the GNETS Program Manager and GNETS Directors. Deposition of Clara Keith Brown at 177:11-178:6.

53.  **The GNETS Strategic Plan touches nearly every aspect of the GNETS Program's operations and outlines the standards that govern regional GNETS programs in the following six "focus areas": Program Leadership and Accountability; Behavior Support and Therapeutic Services; Instructional/Academic Support; Program Funding and Fiscal Management; Integration of Services and Capacity Building; and Facilities Management and Safety. Ex. 18 at GA00362009;** *see* **Ex. A, Cleveland Dep. 204:21-205:2.**

**RESPONSE:** Defendant objects because the evidence cited does not support the statement and the statement does not comply with LR 56.1(B)(1) because it is stated as an argument. Plaintiff's characterization of the GNETS Strategic Plan is not a statement of undisputed fact but an overtly argumentative statement regarding a disputed issue in this case. Defendant further objects to the extent that the statement is used to suggest that the State of Georgia administers the GNETS Program.

54. **The 2016 version of the Strategic Plan had seven focus areas, but the "Program Leadership" and "Program Accountability" sections were combined to create what is now the "Program Leadership and Accountability" section.** *See* **Ex. 18 at GA00362008; Ex. 19 at GA00221997; Ex. R, Braddock Dep. 207:3-11; Ex. A, Cleveland Dep. 204:21-206:1; Ex. C, Stevenson Dep. 48:8-48:22.**

**RESPONSE:** Objection. Defendant objects because the statement does not comply with LR 56.1(B)(1) because it is not material. Defendant further objects to the extent that the statement is used to suggest that the State of Georgia administers the GNETS Program.

55. **Each focus area outlined in the GNETS Strategic Plan lists an overarching goal, individual action items, and examples of the evidence regional GNETS programs must provide to demonstrate implementation of each action item.** *See*, *e.g.*, **Ex. 18 at GA00362009; Ex. A, Cleveland Dep. 210:5-18, 213:6-214:10; Ex. K, Keith Dep. 178:20-180:22.**

**RESPONSE:** Defendant objects because the statement does not comply with LR 56.1(B)(1) because it is stated as argument. Plaintiff's characterization of the GNETS Strategic Plan, what it contains, and what it does or does not require is not a statement of undisputed fact, but an overtly argumentative statement regarding a disputed issue in

this case. Defendant further objects to the extent that the statement is used to suggest

that the State of Georgia administers the GNETS Program.

**56.    The "Program Leadership and Accountability" component of the Strategic Plan requires, among other things, that GNETS Directors "ensure that the [Strategic Plan] activities are implemented within their programs."  Ex. 18 at GA00362011.**

**RESPONSE:** Objection. Defendant objects because the statement does not

comply with LR 56.1(B)(1) because it is stated as argument. Plaintiff's characterization

of the "Program Leadership and Accountability" component of the Strategic Plan, and

what it does or does not require, is not a statement of undisputed fact, but an overtly

argumentative statement regarding a disputed issue in this case. Defendant also objects

because the statement does not comply with LR 56.1(B)(1) because it is not material.

**57.    The "Behavioral Support and Therapeutic Services" component of the Strategic Plan requires, among other things, that GNETS Directors implement interventions and practices like Positive Behavior Intervention Supports ("PBIS") and Trauma Informed Care on a daily basis, ensure the use of Functional Behavior Assessments (FBAs) and Behavior Intervention Plans (BIPs), administer standardized assessments sanctioned by the State (e.g., SDQ, BASC-3) to track the social and emotional development of students placed in the GNETS Program, and ensure GNETS staff receive training on other interventions and supports.  *See* Ex. 18 at GA00362012-GA00362014.**

**RESPONSE:** Objection. The evidence cited does not support the asserted fact.

The Strategic Plan does not "require" any actions. It provides a self-assessment tool for

GNETS facilities to assess their own progress towards certain goals and action items.

The purpose of the Strategic Plan and Self-Assessment is to "facilitate a self-

assessment," "initiate discussion among program leaders and stakeholders to identify priority needs for improvement," "validate areas of strength," and "analyze results and other program data to determine need for professional learning and resources to drive improvement." Plaintiff's Ex. 18 at GA00362009. In addition, nothing in the Strategic Plan "requires" the use of "assessments sanctioned by the State[.]" As the Plan states, SDQ and BASC3 are merely "Examples/Sources to Support" these self-assessment ratings.

In addition, the fact is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion to the extent it suggests GNETS programs have a legal obligation to do anything under the GNETS Strategic Plan.

Lastly, the assertion that the Strategic Plan "requires" anything is directly refuted by the evidence in this case. The Strategic Plan is not tied to anything, including the receipt of any funding; indeed, a Program can still be funded by the grant even if the goals in the Strategic Plan are not met. Stevenson Dep. 154:9–10, 160:1–2; Cleveland Dep. 219:9–12. To the extent a Program is not meeting the goals laid out in the Strategic Plan, the State does not take any action beyond providing feedback and suggestions to the Programs for ways they can improve. Cleveland Dep. 218:13–220:2; Stevenson Dep. 153:11–154:10, 158:21–160:7.

58.    **The "Instructional/Academic Support" component of the Strategic Plan requires, among other things, that GNETS teachers and other staff comply with various instruction-related performance standards and expectations.** *See* **Ex. 18 at GA00362015-GA00362016.**

**RESPONSE:** Objection. The evidence cited does not support the asserted fact. The Strategic Plan does not "require" any actions. It provides a self-assessment tool for GNETS facilities to assess their own progress towards certain goals and action items. The purpose of the Strategic Plan and Self-Assessment is to merely "facilitate a self-assessment," "initiate discussion among program leaders and stakeholders to identify priority needs for improvement," "validate areas of strength," and "analyze results and other program data to determine need for professional learning and resources to drive improvement." Plaintiff's Ex. 18 at GA00362009. Nothing in the GNETS Strategic Plan "requires" teachers and other staff to "comply" with anything.

In addition, the fact is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion to the extent it suggests GNETS programs have a legal obligation to do anything under the GNETS Strategic Plan.

Lastly, the assertion that the Strategic Plan "requires" anything is directly refuted by the evidence in this case. The Strategic Plan is not tied to anything, including the receipt of any funding; indeed, a Program can still be funded by the grant even if the goals in the Strategic Plan are not met. Stevenson Dep. 154:9–10, 160:1–2; Cleveland

Dep. 219:9–12. To the extent a Program is not meeting the goals laid out in the Strategic

Plan, the State does not take any action beyond providing feedback and suggestions to

the Programs for ways they can improve. Cleveland Dep. 218:13–220:2; Stevenson

Dep. 153:11–154:10, 158:21–160:7.

59. **The "Program Funding and Fiscal Management" component of the Strategic Plan requires, among other things, that regional GNETS programs' solicitation and use of GNETS grant funds comply with standards outlined in the Strategic Plan.** *See* **Ex. 18 at GA00362017.**

RESPONSE: Objection. The evidence cited does not support the asserted fact.

The Strategic Plan does not "require" any actions. It provides a self-assessment tool for

GNETS facilities to assess their own progress towards certain goals and action items.

The purpose of the Strategic Plan and Self-Assessment is to merely "facilitate a self-

assessment," "initiate discussion among program leaders and stakeholders to identify

priority needs for improvement," "validate areas of strength," and "analyze results and

other program data to determine need for professional learning and resources to drive

improvement." Plaintiff's Ex. 18 at GA00362009. Nothing in the GNETS Strategic

Plan "requires" GNETS grant funds to "comply with standards outlined in the strategic

plan." It merely sets that as a "Goal." Moreover, nothing in the GNETS Strategic Plan

addresses the "solicitation" of GNETS grant funds.

In addition, the fact is immaterial because it does not demonstrate the State

controls the decisions at issue in this case, namely: where GNETS-funded services are

provided and where students receive them. The fact does not comply with LR

56.1(B)(1) because it is a legal conclusion to the extent it suggests GNETS programs

have a legal obligation to do anything under the GNETS Strategic Plan.

Lastly, the assertion that the Strategic Plan "requires" anything is directly refuted

by the evidence in this case. The Strategic Plan is not tied to anything, including the

receipt of any funding; indeed, a Program can still be funded by the grant even if the

goals in the Strategic Plan are not met. Stevenson Dep. 154:9–10, 160:1–2; Cleveland

Dep. 219:9–12. To the extent a Program is not meeting the goals laid out in the Strategic

Plan, the State does not take any action beyond providing feedback and suggestions to

the Programs for ways they can improve. Cleveland Dep. 218:13–220:2; Stevenson

Dep. 153:11–154:10, 158:21–160:7.

**60.  The "Integration of Services and Capacity Building" component of the Strategic Plan requires, among other things, that GNETS Directors collaborate with LEAs to ensure that students have an opportunity to receive services in the least restrictive environment. *See* Ex. 18 at GA00362018-GA00362020.**

**RESPONSE:** Objection. The evidence cited does not support the asserted fact.

The Strategic Plan does not "require" any actions. It provides a self-assessment tool for

GNETS facilities to assess their own progress towards certain goals and action items.

The purpose of the Strategic Plan and Self-Assessment is to merely "facilitate a self-

assessment," "initiate discussion among program leaders and stakeholders to identify

priority needs for improvement," "validate areas of strength," and "analyze results and

other program data to determine need for professional learning and resources to drive

improvement." Plaintiff's Ex. 18 at GA00362009. Nothing in the GNETS Strategic Plan "requires" GNETS Directors to "collaborate" with LEAs. It merely sets that as a "Goal."

In addition, the fact is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion to the extent it suggests GNETS programs have a legal obligation to do anything under the GNETS Strategic Plan.

Lastly, the assertion that the Strategic Plan "requires" anything is directly refuted by the evidence in this case. The Strategic Plan is not tied to anything, including the receipt of any funding; indeed, a Program can still be funded by the grant even if the goals in the Strategic Plan are not met. Stevenson Dep. 154:9–10, 160:1–2; Cleveland Dep. 219:9–12. To the extent a Program is not meeting the goals laid out in the Strategic Plan, the State does not take any action beyond providing feedback and suggestions to the Programs for ways they can improve. Cleveland Dep. 218:13–220:2; Stevenson Dep. 153:11–154:10, 158:21–160:7.

**61.  The "Facilities Management and Safety" component of the Strategic Plan requires GNETS Directors to (1) monitor the site for safety and ADA compliance and maintenance and (2) communicate all identified concerns to the LEA and or SEA and advocate for repairs/improvements. *See* Ex. 18 at GA00362020.**

**RESPONSE:** Objection. The evidence cited does not support the asserted fact. The Strategic Plan does not "require" any actions. It provides a self-assessment tool for GNETS facilities to assess their own progress towards certain goals and action items. The purpose of the Strategic Plan and Self-Assessment is to merely "facilitate a self-assessment," "initiate discussion among program leaders and stakeholders to identify priority needs for improvement," "validate areas of strength," and "analyze results and other program data to determine need for professional learning and resources to drive improvement." Plaintiff's Ex. 18 at GA00362009.

In addition, the fact is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion to the extent it suggests GNETS programs have a legal obligation to do anything under the GNETS Strategic Plan.

Lastly, the assertion that the Strategic Plan "requires" anything is directly refuted by the evidence in this case. The Strategic Plan is not tied to anything, including the receipt of any funding; indeed, a Program can still be funded by the grant even if the goals in the Strategic Plan are not met. Stevenson Dep. 154:9–10, 160:1–2; Cleveland Dep. 219:9–12. To the extent a Program is not meeting the goals laid out in the Strategic Plan, the State does not take any action beyond providing feedback and suggestions to

the Programs for ways they can improve. Cleveland Dep. 218:13–220:2; Stevenson

Dep. 153:11–154:10, 158:21–160:7.

**62.    To ensure that regional GNETS programs "implement[] the action items within the strategic plan," the Strategic Plan requires that regional GNETS directors "reflect on implementation and practices at each GNETS site" by using a "self- assessment rating."  Ex. 18 at GA00362009-GA00362010.**

<u>**RESPONSE:**</u> Objection. The evidence cited does not support the asserted fact.

The Strategic Plan does not "require" any actions. It provides a self-assessment tool for

GNETS facilities to assess their own progress towards certain goals and action items.

The purpose of the Strategic Plan and Self-Assessment is to merely "facilitate a self-

assessment," "initiate discussion among program leaders and stakeholders to identify

priority needs for improvement," "validate areas of strength," and "analyze results and

other program data to determine need for professional learning and resources to drive

improvement." Plaintiff's Ex. 18 at GA00362009.

In addition, the fact is immaterial because it does not demonstrate the State

controls the decisions at issue in this case, namely: where GNETS-funded services are

provided and where students receive them.

Lastly, the assertion that the Strategic Plan "requires" anything is directly refuted

by the evidence in this case. The Strategic Plan is not tied to anything, including the

receipt of any funding; indeed, a Program can still be funded by the grant even if the

goals in the Strategic Plan are not met. Stevenson Dep. 154:9–10, 160:1–2; Cleveland

Dep. 219:9–12. To the extent a Program is not meeting the goals laid out in the Strategic

Plan, the State does not take any action beyond providing feedback and suggestions to the Programs for ways they can improve. Cleveland Dep. 218:13–220:2; Stevenson Dep. 153:11–154:10, 158:21–160:7.

63.    **Using a rubric created by the State, regional GNETS programs must conduct self-assessment ratings of their compliance with the various components of the GNETS Strategic Plan twice annually. Exs. 22-23; Ex. 24 at GA00901799; Ex. R, Braddock Dep. 209:7-17; Ex. A, Cleveland Dep. 206:13-208:1, 210:19-212:18; Ex. S, Gilchrist Dep. 245:17-24; Ex. T, Holifield Dep. 197:24-198:18; Ex. K, Keith Dep. 174:12-176:25, 178:21-180:22, 184:2-185:12, 186:13-188:10; Ex. U, Ngeve Dep. 294:8-295:15; *see generally* Ex. 18 at GA00362009-GA00362010.**

**RESPONSE:** Objection. The fact is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion to the extent it suggests GNETS programs have a legal obligation to conduct the GNETS Strategic Plan self assessment.

The assertion that the Strategic Plan "requires" anything is directly refuted by the evidence in this case. The Strategic Plan provides a self-assessment tool for GNETS facilities to assess their own progress towards certain goals and action items. The purpose of the Strategic Plan and Self-Assessment is to merely "facilitate a self-assessment," "initiate discussion among program leaders and stakeholders to identify priority needs for improvement," "validate areas of strength," and "analyze results and other program data to determine need for professional learning and resources to drive improvement." Plaintiff's Ex. 18 at GA00362009. It is not tied to anything, including

the receipt of any funding; indeed, a Program can still be funded by the grant even if the goals in the Strategic Plan are not met. Stevenson Dep. 154:9–10, 160:1–2; Cleveland Dep. 219:9–12. To the extent a Program is not meeting the goals laid out in the Strategic Plan, the State does not take any action beyond providing feedback and suggestions to the Programs for ways they can improve. Cleveland Dep. 218:13–220:2; Stevenson Dep. 153:11–154:10, 158:21–160:7.

Likewise, the assertion that the rubric was created solely by the State is directly refuted by the evidence. The Plan was created by a collaboration of the GNETS Program Manager and GNETS Directors, and the ultimate decision as to the content of the Strategic Plan was a collaborative decision of the GNETS Program Manager and GNETS Directors. Cleveland Dep. 205:21–206:411; Brown Dep. 177:11–178:6.

**64.    In addition, the State requires regional GNETS directors to submit "artifacts," or evidence, that demonstrate they meet the criteria indicated on the self- assessment.  Ex. 24 at GA00901799; Deposition of Samuel Clemons ("Clemons Dep.") 250:12-20 (attached hereto as "Ex. V"); Ex. I, Cole Dep. 390:25-391:14; Ex. S, Gilchrist Dep. 246:4-14; Ex. T, Holifield Dep. 200:15-201:3; Ex. B, Livingston Dep. 69:17-70:12; Ex. U, Ngeve Dep. 288:24-289:16.**

**RESPONSE:** Objection. The fact is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion to the extent it suggests GNETS programs have a legal obligation to submit "artifacts."

The assertion that the Strategic Plan "requires" anything is directly refuted by the evidence in this case. The Strategic Plan provides a self-assessment tool for GNETS facilities to assess their own progress towards certain goals and action items. The purpose of the Strategic Plan and Self-Assessment is to merely "facilitate a self-assessment," "initiate discussion among program leaders and stakeholders to identify priority needs for improvement," "validate areas of strength," and "analyze results and other program data to determine need for professional learning and resources to drive improvement." Plaintiff's Ex. 18 at GA00362009. It is not tied to anything, including the receipt of any funding; indeed, a Program can still be funded by the grant even if the goals in the Strategic Plan are not met. Stevenson Dep. 154:9–10, 160:1–2; Cleveland Dep. 219:9–12. To the extent a Program is not meeting the goals laid out in the Strategic Plan, the State does not take any action beyond providing feedback and suggestions to the Programs for ways they can improve. Cleveland Dep. 218:13–220:2; Stevenson Dep. 153:11–154:10, 158:21–160:7; Clemons Dep. 253:12–254:2.

**RESPONSE:** Likewise, the assertion that the self-assessment rubric was created solely by the State is directly refuted by the evidence. The Plan was created by a collaboration of the GNETS Program Manager and GNETS Directors, and the ultimate decision as to the content of the Strategic Plan was a collaborative decision of the GNETS Program Manager and GNETS Directors. Cleveland Dep. 205:21–206:411; Brown Dep. 177:11–178:6.

65. **Historically, GaDOE personnel—specifically the GNETS Program Manager and/or GNETS Program Specialist—conducted on-site reviews after the programs submitted their self-assessments.** *See* **Ex. R, Braddock Dep. 210:5-14; Ex. V, Clemons Dep. 250:21-251:9; Ex. I, Cole Dep. 391:15-25; Ex. G, Futch Dep. 93:20-94:14; Ex. S, Gilchrist Dep. 246:4-23; Ex. T, Holifield Dep. 198:19-199:6; Ex. K, Keith Dep. 90:22-91:6; Ex. B, Livingston Dep. 68:12-69:16; Ex. U, Ngeve Dep. 288:3-23, 290:19-291:18; Ex. C, Stevenson Dep. 49:20-24.**

RESPONSE: Objection. The cited evidence does not support the statement. In addition, the statement is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them.

66. **During these on-site strategic plan reviews, GaDOE evaluated the regional GNETS programs' self-assessment, reviewed artifacts, asked questions, toured facilities, and provided feedback.** *See* **Ex. 18 at GA00362009; Exs. 15, 24-25; Ex. R, Braddock Dep. 208:6-209:17, 210:5-14; Ex. V, Clemons Dep. 250:8-251:9, 254:7-255:20; Ex. I, Cole Dep. 387:17-388:2, 390:22-391:23; Ex. S, Gilchrist Dep. 246:4-247:6; Ex. T, Holifield Dep. 198:19-199:23, 200:15-201:3; Ex. K, Keith Dep. 178:20-180:22, 181:7-183:22; Ex. B, Livingston Dep. 68:12-70:12, 80:25-81:17; Ex. U, Ngeve Dep. 288:3-289:12, 290:19-291:18, 304:8-305:22; Ex. C, Stevenson Dep. 46:10-23, 49:9-51:6.**

RESPONSE: Objection. The cited evidence does not support the statement. In addition, the statement is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them.

67. **The onsite strategic plan reviews were scheduled on a rotating basis or based on a regional GNETS program's prior performance.** *See* **Ex. 26 at GA00337238; Ex. A, Cleveland Dep. 228:12-25, 230:3-231:6; Ex. I, Cole Dep. 387:17-388:8; Ex. S, Gilchrist Dep. 246:11-14; Ex. R, Braddock Dep. 210:23-211:15.**

**RESPONSE:** Objection. The fact is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them. Further, the evidence cited does not support the asserted fact to the extent it suggests this is the current practice.

68. **Onsite strategic plan reviews lasted anywhere from several hours to a full school day.** *See* **Ex. I, Cole Dep. 391:19-392:3; Ex. U, Ngeve Dep. 290:19-292:12.**

   **RESPONSE:** Objection. The fact is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them. Further, the evidence cited does not support the asserted fact to the extent it suggests this is the current practice.

69. **After the onset of the COVID-19 pandemic, strategic plan reviews were paused and then conducted virtually.** *See* **Ex. 27; Ex. A, Cleveland Dep. 222:17-25; Ex. G, Futch Dep. 93:20-94:11; Ex. C, Stevenson Dep. 164:14-165:7, 167:4-19.**

   **RESPONSE:** Objection. The fact is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them.

70. **On occasion, GaDOE has required regional GNETS programs to submit sample IEPs as part of the Strategic Plan process so that GaDOE could review those IEPs, assess the regional GNETS program's compliance with implementation criteria, and provide feedback.  Ex. T, Holifield Dep. 241:11-243:10.**

   **RESPONSE:** Objection. The fact is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded

services are provided and where students receive them. Further, the evidence cited does

not support the asserted fact because nothing in the cited deposition testimony states

that GaDOE "required" the provision of sample IEPs; it says merely that they asked for

them. Holifield Dep. 241:19–22. Lastly, Ms. Holifield's characterization of the purpose

of IEP file review is speculative.

71.    **Starting in 2022, GaDOE consolidated the strategic plan self-assessment submissions into the grant application process for regional GNETS programs.  Ex. I, Cole Dep. 389:22-390:10; 395:9-15; Ex. C, Stevenson Dep. 149:4-151:8.  *See* Ex. A, Cleveland Dep. 206:25-207:19.**

       **RESPONSE:** Objection. The fact is immaterial because it does not demonstrate

the State controls the decisions at issue in this case, namely: where GNETS-funded

services are provided and where students receive them.

72.    **Once a regional GNETS program submits the artifacts demonstrating its compliance with GNETS Strategic plan components, GaDOE reviews those artifacts and requests any additional information it may require.  *See* Ex. B, Livingston Dep. 81:6-17; Ex. C, Stevenson Dep. 160:22-163:2; *see, e.g.*, Ex. 28.**

       **RESPONSE:** Objection. The fact is immaterial because it does not demonstrate

the State controls the decisions at issue in this case, namely: where GNETS-funded

services are provided and where students receive them. Further, the evidence cited does

not support the asserted fact because nothing in the cited evidence states that GaDOE

"required" any information; it says merely that they asked for it. <u>See</u>, <u>e.g.</u>, Plaintiff's

Ex. 28 ("State *requested* revision…") (emphasis added).

73.    **At the conclusion of the GNETS Strategic Plan review process, GaDOE provides regional GNETS programs with feedback on their compliance.  Ex. 7; Ex. 18 at GA00362008-GA00362010; Ex. V, Clemons Dep. 250:24-251:9; Ex. A, Cleveland Dep. 158:24-159:10, 166:11-167:10, 210:5-18, 217:20-219:8; Ex. G, Futch Dep. 94:15-95:18; Ex. T, Holifield Dep. 200:15-202:4; Deposition of Jaqueline Neal ("Neal Dep.") 23:21-24:13 (attached hereto as "Ex. W").**

**RESPONSE:** Objection. The evidence cited does not support the asserted fact;

specifically, with regard to feedback on "compliance." In addition, the fact is immaterial

because it does not demonstrate the State controls the decisions at issue in this case,

namely: where GNETS-funded services are provided and where students receive them.

74.    **In the past, this feedback has included each regional GNETS program's final ratings on the various GNETS Strategic Plan components, as well as other action steps each regional GNETS program should take in the future. *See* Ex. 18 at GA00362008-GA00362010; Exs. 15, 29; Ex. V, Clemons Dep. 250:24-251:9, 253:7- 254:2; Ex. T, Holifield Dep. 201:21-202:4; Ex. U, Ngeve Dep. 295:16-297:7; Ex. C, Stevenson Dep. 46:10-23, 49:20-24.**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it

is a legal conclusion to the extent it suggests GNETS programs have a legal obligation

to do anything with respect to the GNETS Strategic Plan or in response to it. The

Strategic Plan does not "require" any action. In addition, the fact is immaterial because

it does not demonstrate the State controls the decisions at issue in this case, namely:

where GNETS-funded services are provided and where students receive them.

75.    **More recently, GaDOE has moved away from providing the regional GNETS programs with numerical scores, and instead provides "feedback on implementation based on the rubric rating"—that is ratings of "operational," "emerging," or "not evident." *See, e.g.*, Ex. A, Cleveland Dep. 230:16– 231:14.**

**RESPONSE:** Objection. The fact is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them.

76. **Participation in the Strategic Plan's self-assessment and review process remains mandatory; regional GNETS programs cannot opt out.** *See* **Ex. 18 at GA00362008-GA00362011; Ex. 29; Ex. S, Gilchrist Dep. 243:16-25; Ex. B, Livingston Dep. 69:17-70:12; Ex. U, Ngeve Dep. 285:14-286:3.**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion. The fact is also unsupported by the evidence cited. Nothing in the evidence cited says "regional GNETS programs cannot opt out." The fact is also immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them.

### C. Other State-Created Documents Governing the GNETS Program

77. **Regional GNETS programs use a standardized set of forms to assess student eligibility for the GNETS Program.** *See* **Exs. 30-39; Ex. R, Braddock Dep. 101:21-102:24, 103:15-104:3, 107:11-110:10; Ex. V, Clemons Dep. 51:21-52:6, 61:20-62:19; Ex. G, Futch Dep. 350:23-353:5; Ex. S, Gilchrist Dep. 228:5-233:6; Ex. W, Neal Dep. 128:10-130:11; Ex. U, Ngeve Dep. 191:18-193:24, 195:21-198:5, 201:16-204:15, 220:11-222:9, 235:13-238:1, 313:25-316:22; Ex. Q, Wolf Dep. 170:19-175:22.**

**RESPONSE:** Objection. The fact is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them. The fact is also unsupported by the evidence cited to the extent it suggests that all regional GNETS programs use the

same standardized set of forms or that GaDOE created the forms. The fact only cites the

testimony of a small subset of GNETS Directors. Further, the fact is unsupported to the

extent it suggests that regional GNETS programs are required to use the forms. The

evidence instead shows there is no requirement by GaDOE to use any of these

documents. Deposition of Talithia Newsome at 150:13-151:10; 162:13-17; 180:16-22;

Deposition of Cassandra Holifield at 279:8-18; 252:9-14; Deposition of Vickie

Cleveland at 128:4-129:15. In fact, GaDOE does not require use of any specific

documents related to consideration of services. Deposition of Vickie Cleveland at

128:4-129:15.

**78.** **This standardized set of forms is known as the Consideration of Services Forms or Consideration of Services Packet (hereafter "Consideration of Services Forms").** *See, e.g.*, **Exs. 40-43; Ex. Q, Wolf Dep. 191:14-194:8.**

**RESPONSE:** Objection. The fact is immaterial because it does not demonstrate

the State controls the decisions at issue in this case, namely: where GNETS-funded

services are provided and where students receive them. The fact is also unsupported by

the evidence cited to the extent it suggests that all regional GNETS programs use the

same standardized set of forms or that GaDOE created the forms. The fact only cites the

testimony of a small subset of GNETS Directors. Further, the fact is unsupported to the

extent it suggests that regional GNETS programs are required to use the forms. The

evidence instead shows there is no requirement by GaDOE to use any of these

documents. Deposition of Talithia Newsome at 150:13-151:10; 162:13-17; 180:16-22;

Deposition of Cassandra Holifield at 279:8-18; 252:9-14; Deposition of Vickie

Cleveland at 128:4-129:15. In fact, GaDOE does not require use of any specific

documents related to consideration of services. Deposition of Vickie Cleveland at

128:4-129:15.

79. **The Consideration of Services Forms include a Confidential Student Information Packet, Guiding Questions for Consideration of GNETS Services Form, GNETS Services Flow Chart, and Request for GNETS Consultation Form.** *See* **Exs. 31-33, 36-39, 44-47; Ex. R, Braddock Dep. 107:11-108:1; Ex. V, Clemons Dep. 206:2-207:7, 208:3-210:7, 210:19-211:5, 211:21-212:11, 213:18-20; Ex. I, Cole Dep. 192:18-20, 193:6-11, 194:21-195:4, 200:23-202:21, 213:23-214:24; Ex. G, Futch Dep. 325:7-326:5, 328:17-23; Ex. S, Gilchrist Dep. 228:5-233:6; Ex. W, Neal Dep. 128:10-130:11; Ex. U, Ngeve Dep. 191:18-193:24, 195:21-198:5, 201:16-204:15, 220:11-222:9, 235:13-238:1, 313:25-316:22; Ex. Q, Wolf Dep. 185:4-22.**

RESPONSE: Objection. The fact is immaterial because it does not demonstrate

the State controls the decisions at issue in this case, namely: where GNETS-funded

services are provided and where students receive them.

80. **GaDOE oversaw the development of the Consideration of Services Forms.** *See* **Exs. 32, 40-43, 48-53; Ex. Q, Wolf Dep. 187:6-205:15;** *see generally* **Ex. I, Cole Dep. 97:1-98:14; Ex. S, Gilchrist Dep. 228:5-233:6; Ex. U, Ngeve Dep. 192:13-193:6, 201:16-202:17, 207:1-6, 220:6-24.**

RESPONSE: Objection. The fact is immaterial because it does not demonstrate

the State controls the decisions at issue in this case, namely: where GNETS-funded

services are provided and where students receive them. The fact is also unsupported to

the extent that the fact suggests that State was responsible for, created, or mandates the

use of, the Consideration of Services Form. As ¶ 81 below acknowledges, the forms

were developed by a committee which included various GNETS Directors. Wolf Dep.

171:6-16. The forms themselves were formally approved by the Committee, not by the

GNETS Program Manager. Wolf Dep. 185:23-187:5.

81.    **The GNETS Program Manager, who assembled a committee to develop the first drafts of the Consideration of Services Forms, directed the committee to ensure that the forms were aligned to the State's GNETS Rule, reviewed the Forms, determined the process for obtaining feedback on the Forms from other stakeholders, and approved the final versions of the Forms.  Exs. 40, 43, 48-49, 51-53; Ex. Q, Wolf Dep. 185:4-189:18, 190:8-205:15.**

   **RESPONSE:** Objection. The fact is unsupported by the cited evidence.

Specifically, the evidence does not support that the GNETS Program Manager

assembled or directed the committee, determined any process for obtaining feedback, or

approved the forms. Instead, the evidence shows the forms were developed by a

committee which included various GNETS Directors. Wolf Dep. 171:6-16. The GNETS

Program Manager agreed to the final versions in conjunction with the rest of the

committee. The forms themselves were formally approved by the Committee, not by the

GNETS Program Manager. Wolf Dep. 185:23-187:5. In addition, the fact is immaterial

because it does not demonstrate the State controls the decisions at issue in this case,

namely: where GNETS-funded services are provided and where students receive them.

82.    **The GNETS Program Manager dictated when and how the Consideration of Services Forms would be implemented by the regional GNETS programs. Ex. 41, 43, 53; Ex. Q, Wolf Dep. 192:18-194:8, 203:19-205:15.**

   **RESPONSE:** Objection. The cited evidence does not support the statement

provided especially with respect to the statement that the GNETS Program Manager

"dictated when and how" the forms would be implemented. Defendant further objects that the fact is immaterial because it does not demonstrate the State controls the decisions at issue in this case, namely: where GNETS-funded services are provided and where students receive them. Additionally, Defendant objects that the fact is also unsupported to the extent that the fact suggests that State was responsible for, created, or mandates the use of, the Consideration of Services Form.

**83.    Before the State created and implemented documents like the Consideration of Services Forms and the Strategic Plan, GaDOE provided regional GNETS programs a GNETS Operations Manual that it created "to ensure GNETS programs operate efficiently, effectively and consistently throughout the network." Ex. 54 at GA00403826;** *see* **Ex. 55; Ex. T, Holifield Dep. 250:10-251:2, 252:6-14; Ex. K, Keith Dep. 55:12-56:1, 63:7-16; Ex. Q, Wolf Dep. 241:8-243:7.**

RESPONSE: Objection. The statement provided is argumentative and does not comply with LR56.1(B)(1). The statement is also unsupported by the cited evidence. As to the consideration of services forms, the evidence shows there is no requirement by GaDOE to use any of these documents. Deposition of Talithia Newsome at 150:13-151:10; 162:13-17; 180:16-22; Deposition of Cassandra Holifield at 279:8-18; 252:9-14; Deposition of Vickie Cleveland at 128:4-129:15. In fact, GaDOE does not require use of any specific documents related to consideration of services. Deposition of Vickie Cleveland at 128:4-129:15. In addition, the evidence similarly shows the creation of the Strategic Plan was a collaboration of the GNETS Program Manager and GNETS Directors. Deposition of Clara Keith Brown at 177:11-178:6. Further, the ultimate

decision as to the content of the Strategic Plan was a collaborative decision of the

GNETS Program Manager and GNETS Directors. Deposition of Clara Keith Brown at

177:11-178:6. Defendant further objects to the extent the statement is being used to

represent that the State of Georgia administers the GNETS program. Lastly, "[t]he

operations manual is online. It hasn't been updated for a number of years." Wolf Dep.

243:5-7. GNETS directors no longer refer to the operations manual. Wolf Dep. 243:8-

10.

**D.    Data Directives**

84.    **The GNETS Program Manager and GNETS Program Specialist routinely require regional GNETS programs to submit various operational data to GaDOE.  *See* Exs. 15, 56-60; Ex. A, Cleveland Dep. 111:22-112:17, 133:21-135:8, 174:20-175:8, 186:14-187:2, 192:17-198:15, 198:16-203:7, 204:6-14; Ex. T, Holifield Dep. 93:11-102:23; Ex. B, Livingston Dep. 148:15-151:2; 223:24-225:4; 227:8-228:19; 241:6-242:12 Ex. W, Neal Dep. 114:14-116:1, 335:17-336:12; Ex. U, Ngeve Dep. 179:17-182:10, 183:18-184:2; Ex. C, Stevenson Dep. 46:10-23, 69:8-20, 212:5-214:5.**

    RESPONSE: Objection. The statement is argumentative and does not comply

with LR56.1(B)(1) especially with respect to "routinely require" and "various

operational data." The evidence instead shows that the information purportedly

"required" is information for the voluntary grant application process. Cleveland Dep.

186:14-187:2; Ngeve Dep. 180:16-181:14. Such information is required by the United

States Department of Education in accordance with 20 U.S.C.A. § 1418(a).

85.    **This data includes, but is not limited to, information regarding student placement into and transition out of GNETS, therapeutic services and interventions provided to students in GNETS, segments in GNETS, student**

**disability categories, student enrollment data, GNETS teacher certifications, and student restraints.** *See* **Exs. 56, 58-63; Ex. T, Holifield Dep. 93:11-102:23; Ex. B, Livingston Dep. 148:15-151:2, 223:24-225:4, 227:8-228:19, 241:6-242:12; Ex. L, Low Dep. 142:11-20, 192:6-20, 193:17-196:22, 199:4-23; Ex. W, Neal Dep. 114:14-116:1, 335:17-336:12.**

**RESPONSE:** Objection. The statement provided is referencing paragraph 84,

which is argumentative and does not comply with LR56.1(B)(1) especially with respect

to "routinely require" and "various operational data." The evidence instead shows that

the information purportedly "required" is information for the voluntary grant

application process. Cleveland Dep. 186:14-187:2; Ngeve Dep. 180:16-181:14.

86. **GaDOE has also required regional GNETS programs to review and submit information to GaDOE relating to the IEP files of individual students placed in the GNETS Program. Exs. 57, 64-65; Ex. A, Cleveland Dep. 192:17-193:5, 194:13-17, 195:5-24, 198:16-202:23; Ex. I, Cole Dep. 365:18-366:4, 368:20-370:13.**

**RESPONSE:** Objection. The evidence cited does not support the statement.

There is no mention of a "requirement" in any of the evidence cited, only of a request.

Defendant further objects that the statement mischaracterizes the cited evidence, which

states that this request has only occurred twice from the State of Georgia, and is not an

ongoing request. Cole Dep. 370:1-13. Lastly, the directors' characterization of the

purpose of IEP file review is speculative, as GaDOE did not provide any reason for said

file review and simply requested such files.

87. **GaDOE required this IEP file review process as recently as 2021.** *See* **Exs. 57, 64-66; Ex. A, Cleveland Dep. 192:17-193:5, 194:13-196:8; Ex. I, Cole Dep. 365:18-366:4, 368:20-370:13;**

**RESPONSE:** Objection. The evidence cited does not support the statement. The statement misrepresents the evidence cited which provides that the reviews have not been done again since 2020. Cole Dep. 370:1-5. The only mention of 2021 is as a due date for a 2020 request. Ex. U, Ngeve Dep. 259:21-261:22.

88. **As part of the process, GaDOE mandated that regional GNETS program directors review and produce to GaDOE extensive information for every student receiving GNETS services, whether those students were served at GNETS centers or school-based locations.** *See* **Exs. 57, 65; Ex. A, Cleveland Dep. 192:17-193:5, 194:13-17, 195:5-24, 198:16-202:23; Ex. I, Cole Dep. 365:18-366:4, 368:20-369:23; Ex. C, Stevenson Dep. 212:5-214:5.**

**RESPONSE:** Objection. The evidence cited does not support the statement. In addition, the statement is argumentative and does not comply with LR 56.1(B)(1). The evidence cited does not state that GaDOE "mandated" the regional GNETS program directors to produce the information but rather shows the information was requested from the GNETS program directors.

89. **GaDOE dictated the information that regional GNETS program directors were to provide GaDOE regarding each individual student.** *See, e.g.*, **Exs. 57, 65; Ex. A, Cleveland Dep. 192:17-193:5, 194:13-17, 195:5-24, 198:16-202:23; Ex. I, Cole Dep. 365:18-366:4, 368:20-369:23; Ex. C, Stevenson Dep. 212:5-214:5.**

**RESPONSE:** Objection. The evidence cited does not support the statement, which is argumentative and does not comply with LR 56.1(B)(1). There is no evidence GaDOE "dictated" anything and the evidence cited shows the information was requested from the GNETS program directors.

90.   **The form outlining the IEP information required by GaDOE seeks information related to each student's disability, placement history, behavioral interventions, and history of restraint and seclusion, as well as information related to the regional GNETS program's compliance with the entrance criteria outlined in the State GNETS Rule.** *See, e.g.*, **Ex. 57; Ex. A, Cleveland Dep. 192:17-193:5, 194:13- 17, 195:5-24, 198:16-202:23; Ex. I, Cole Dep. 365:18-366:4, 368:20-369:15.**

    **RESPONSE:** Objection. The evidence cited does not support the statement.

There is no evidence GaDOE "required" the information. Further, the evidence cited

does not show the requested information included "history of restraint and seclusion."

Lastly, the directors' characterization of the purpose of IEP file review is speculative, as

GaDOE did not provide any reason for said file review and simply requested such files.

    **E.    Direction Regarding Program Administration**

91.   **State personnel, including the GNETS Program Manager and Program Specialist, facilitate and lead periodic statewide GNETS Director meetings.** *See* **Ex. 15; Ex. R, Braddock Dep. 32:8-34:22; Ex. A, Cleveland Dep. 73:1-14, 181:21-182:21; Ex. I, Cole Dep. 26:18:-27:2, 36:1-37:6; Ex. G, Futch Dep. 97:1-18, 98:7-11; Ex. S, Gilchrist Dep. 31:18-20, 31:24-32:20; Ex. B, Livingston Dep. 79:4-80:22; Ex. W, Neal Dep. 30:7-31:7, 350:5-351:9; Deposition of Talithia Newsome ("Newsome Dep.") 56:6-57:22 (attached hereto as "Ex. X"); Ex. C, Stevenson Dep. 46:10-23, 71:13-72:1, 72:18-73:2.**

    **RESPONSE:** Objection. Defendant objects because the evidence cited does not

support the statement and the statement does not comply with LR 56.1(B)(1) because it

is stated as an argument. Defendant further objects to the extent that the statement is

used to suggest that the State of Georgia administers the GNETS Program.

92.   **Regional GNETS program directors regularly seek direction from State GNETS personnel on a host of day-to-day matters regarding student eligibility and service delivery.** *See, e.g.*, **Ex. 67 (Oconee GNETS Director**

**seeking confirmation from GaDOE regarding student eligibility and the
2017 GNETS Rule); Ex. 68 (clarifying whether a student whose home school
system is in the Oconee GNETS catchment area could be served by a
different regional GNETS); Ex. 69 (Coastal Academy GNETS Director
notifying GaDOE about changes in the LEAs served by the regional GNETS
program using a previously required form created by GaDOE); Ex. 70 (Elam
Alexander Academy GNETS Director seeking guidance from GaDOE
regarding the placement of students with certain disability designations); Ex.
71 (Horizon Academy GNETS Director seeking clarification as to whether
GNETS accepts students from charter schools); Ex. 72 (Horizon Academy
GNETS Director seeking guidance as to whether an LEA could require a
student transitioning out of GNETS to return to the LEA on a trial basis);
Ex. G, Futch Dep. 241:17-245:8, 245:25-248:23 (Coastal Academy GNETS
Director seeking guidance from GaDOE regarding use of GNETS funding);
Ex. B, Livingston Dep. 233:22-236:4, 236:5- 239:22 (Harrell GNETS
Director seeking clarification from GaDOE about job qualification
requirements for regional GNETS program staff); *see also* Exs. 73-86; Ex. R,
Braddock Dep. 116:11-12, 116:21, 117:13-118:9; Ex. V, Clemons Dep. 220:19-
221:13, 221:22-225:20; Ex. I, Cole Dep. 34:5-21, 108:3-12, 108:21-111:11,
115:14-117:4, 120:11-121:19; Ex. G, Futch Dep. 118:10-120:2, 120:5-122:17;
Ex. S, Gilchrist Dep. 58:16-59:4, 59:23-64:15, 209:3-17, 210:1-211:14; Ex. U,
Ngeve Dep. 231:11-233:25, 247:24-248:17; Ex. C, Stevenson Dep. 175:23-
176:10, 177:16-180:17; Ex. Q, Wolf Dep. 213:21-215:20, 216:2-217:15.**

**RESPONSE:** Objection. The evidence does not support the statement.

Specifically, the evidence does not show GNETS Program Directors "regularly seek

direction" regarding "a host of day-to-day matters." Nothing indicates any "direction"

given was binding on Directors. The statement is argumentative and does not comply

with LR56.1(B)(1). Additionally, Defendant objects that certain exhibits do not support

the statement provided. For example, Exs. 67-68 contain questions about the operation

of the Georgia Administrative Procedure Act and not the administration of GNETS. Ex.

69 is a letter from a GNETS director to the State providing an update; it is not

"seek[ing] direction." Ex. 70 is an email from GaDOE asking a GNETS director a question; it is not a GNETS director "seek[ing] direction" from GaDOE. Ex. G is not evidence of a GNETS program director "seek[ing] direction" on matters of "student eligibility and service delivery," but is instead evidence of a GNETS program director asking about the use of federal funds or forwarding information to GaDOE. Lastly, Defendant objects to the extent the statement is used to suggest the State of Georgia administers the GNETS Program.

93.    **Two regional GNETS program directors even identified the current GNETS Program Manager and GNETS Program Specialist as individuals to whom they report. Ex. I, Cole Dep. 25:6-13, 26:8-15; Ex. X, Newsome Dep. 54:25-55:8.**

      **RESPONSE:** Objection, the statement is a flagrant misrepresentation of the cited evidence. The entire relevant transcript portions are not cited, which shed light on the Directors' meaning of "reports" in this context. As clarified by Ms. Newsome: "When you say 'report,' you mean like just 'share information.'" The deposing attorney for Plaintiff answered with, "Yes." Newsome Dep. 66:23-67:5. Further, as Ms. Cole testified in the evidence cited, "I don't know if you would say 'report to.'" Cole Dep. 25:5-13. As such, Defendant objects that the statement provided is incorrect, argumentative, and misleading as no GNETS Director reports to the GNETS Program Manager or GNETS Program Specialist in any supervisory capacity as improperly suggested by the statement. Instead, GNETS Directors are employees of the LEA/RESA and report to supervisors employed by the LEA/RESA. Deposition of Talithia Newsome

at 52:15-53:23; Deposition of Haley Livingston at 11:16-20; 277:8-10; Deposition of

Cassandra Holifield at 332:16-19; Deposition of Derrick Gilchrist at 256:4-6; 19:10-18;

Deposition of Brooke Cole at 24:5-13; Deposition of Celest Ngeve at 23:9-11. Lastly,

Defendant objects to the extent the statement is used to suggest the State of Georgia

administers the GNETS Program.

94. **The State requires regional GNETS programs to administer specific academic and behavioral assessments to students receiving GNETS services, such as the i-Ready instructional and diagnostic measure, the Strengths and Difficulties Questionnaire (SDQ), and the BASC-3. Exs. 87-90; Ex. S, Gilchrist Dep. 165:2-23, 166:15-18, 167:8-15, 168:17-169:1, 184:8-185:9, 197:2-9; Ex. T, Holifield Dep. 148:3-149:3, 152:11-153:15, 236:19-238:6; Ex. Q, Wolf 207:8-19, 208:16-210:23.**

   **RESPONSE:** Objection. Defendant objects to the extent the statement is used to

suggest the State of Georgia administers the GNETS Program. Subject to and without

waiving the foregoing objection, Defendant admits the Court may consider this

evidence for purposes of the summary judgment motion.

95. **In several instances, the State contracts directly with service providers to make these assessments available to regional GNETS programs. *See* Ex. 91 at GA00054567.013 (various GaDOE supports and services provided via contract); Ex. 92 (contract for GNETS Program access to i-Ready); Ex. 93 (contract for GNETS Program access to the BASC-3); Ex. P, Beck Dep. 184:9-185:17, 185:24-188:21; Ex. A, Cleveland Dep. 189:12-21, 190:21-192:16; Ex. O, W. Jones Dep. 169:25-170:16, 176:4-21.**

   **RESPONSE:** Objection. The fact is immaterial because it does not demonstrate

the State controls the decisions at issue in this case, namely: where GNETS-funded

services are provided and where students receive them. Defendant further objects to the

extent the statement is used to suggest the State of Georgia administers the GNETS

Program. Subject to and without waiving the foregoing objection, Defendant admits the

Court may consider this evidence for purposes of the summary judgment motion.

96.    **The State provides regional GNETS programs with direction as to when and how they should administer each of these assessments. Exs. 94-97; Ex. V, Clemons Dep. 230:11-235:1; Ex. T, Holifield 132:1-4, 132:24-134:25, 233:3-234:3; Ex. U, Ngeve Dep. 251:23-252:20, 253:1-15, 254:8-24, 255:15-23, 256:25-257:10, 345:14-25; Ex. Q, Wolf 219:2-222:18, 224:5-225:3.**

RESPONSE: Objection. The cited evidence does not support the statement

made. Defendant further objects to the extent the statement is used to suggest the State

of Georgia administers the GNETS Program. Subject to and without waiving the

foregoing objection, Defendant admits the Court may consider this evidence for

purposes of the summary judgment motion.

## F.    Direction Regarding Program Facilities

97.    **The Facilities Services Unit of GaDOE conducted a Facility Conditions Assessment of GNETS Program facilities during the 2015 and 2016 calendar years ("Facility Conditions Assessment"). Ex. 1, Def. Resp. to RFA No. 69; Deposition of Michael Rowland ("Rowland Dep.") 47:16-50:19 (attached hereto as "Ex. Y").**

RESPONSE: Objection. Defendant objects to the extent the statement is used to

suggest the State of Georgia administers the GNETS Program. Subject to and without

waiving the foregoing objection, Defendant admits the Court may consider this

evidence for purposes of the summary judgment motion.

98.    **GaDOE planned to use the findings of the Facility Conditions Assessment to facilitate decision-making regarding the award of State funds to regional**

GNETS programs or their fiscal agents for repairs or upgrades to their GNETS Program facilities. Exs. 98-99; Ex. K, Keith Dep. 214:6-25; Ex. Y, Rowland Dep. 47:16-50:19, 57:7-58:14, 59:21-62:18, 64:21-65:24, 66:3-68:12-16, 78:7-80:20, 94:4-97:21.

RESPONSE: Objection. Defendant objects to the extent the statement is used to

suggest the State of Georgia administers the GNETS Program. Defendant further

objects to the statement because it is not material and thus does not comply with the

provisions set out in LR 56.1(B)(1).

99.    The State, through the Georgia State Financing and Investment Commission, entered into a contract with an architectural firm to conduct the Facility Conditions Assessment. Exs. 99-101; Ex. P, Beck Dep. 135:11-136:15, 139:12- 141:22; Ex. Y, Rowland Dep. 78:7-79:20, 160:6-161:6.

RESPONSE: Objection. The fact is immaterial because it does not demonstrate

the State controls the decisions at issue in this case, namely: where GNETS-funded

services are provided and where students receive them. Defendant objects to the extent

the statement is used to suggest the State of Georgia administers the GNETS Program.

Defendant further objects to the statement because it is not material and thus does not

comply with the provisions set out in LR 56.1(B)(1).

100.    In the summer of 2016, based on a report of the architectural firm's findings, the State identified nine GNETS Program facilities in such poor physical condition that it concluded they could not continue serving students in the GNETS Program. Ex. 1, Def. Resp. to RFA No. 81; Exs. 102-104; Ex. O, W. Jones Dep. 189:4-190:6, 193:1-194:25; Ex. K, Keith Dep. 226:16-229:5; Ex. Y, Rowland Dep. 80:21-82:2, 83:5-86:21, 145:7-146:20.

RESPONSE: Objection. The cited evidence does not support the statement. In

addition, Defendant objects that the statement is argumentative and does not comply

with LR 56.1(B)(1). Plaintiff's use of "such poor physical condition" is an argumentative qualifier which is not supported by the evidence cited. Instead, the letter sent to county superintendents shows the subject facilities were described as "unsafe and unhealthful" and "[a]s such, the Board is suggesting that you remedy this deficiency by collaborating with key stakeholders" to relocate children to a different facility. Plaintiff's Ex. 100 at GA01486055.

**101.    In late July 2016, Mike Royal, Chairman of the State Board of Education, issued written notifications that the nine GNETS Program facilities could no longer be used to serve students in the GNETS Program and the affected regional GNETS programs would need to move students from those facilities to alternate site locations.  Exs. 100, 102; Ex. K, Keith Dep. 226:16-229:22, 230:14-232:18; Ex. Y, Rowland Dep. 86:22-88:1; *see also* Ex. R, Braddock Dep. 219:21-220:23.**

RESPONSE: Objection. Defendant objects to the extent the statement is used to suggest the State of Georgia administers the GNETS Program. In addition, the evidence shows the letter sent to county superintendents shows the subject facilities were described as "unsafe and unhealthful" and "[a]s such, the Board is suggesting that you remedy this deficiency by collaborating with key stakeholders" to relocate children to a different facility. Plaintiff's Ex. 100 at GA01486055.

**102.    GaDOE and other State personnel created a Facility Remediation Plan in relation to GNETS Program facilities (other than the nine referenced above) that were found to have identified needs following the Facility Conditions Assessment.  Ex. Y, Rowland Dep. 94:4-96:13.**

RESPONSE: Objection. Defendant objects to the extent the statement is used to suggest the State of Georgia administers the GNETS Program. Defendant further

objects to the statement because it is not material for purposes of the pending Motion

and thus does not comply with the provisions set out in LR 56.1(B)(1).

**103.** **For GNETS Program facilities where the Facility Conditions Assessment identified needs, GaDOE offered the fiscal agents of the affiliated regional GNETS programs the option of submitting a proposal and timeline setting forth a plan to relocate the students served at the GNETS Program facility to a different facility or applying for a State grant to help fund the necessary repairs or upgrades to the GNETS Program facility. Ex. 1, Def. Resp. to RFA No. 87; Ex. Y, Rowland Dep. 94:4-96:13.**

**RESPONSE:** Objection. Defendant objects to the extent the statement is used to

suggest the State of Georgia administers the GNETS Program. Defendant further

objects to the statement because it is not material for purposes of the pending Motion

and thus does not comply with the provisions set out in LR 56.1(B)(1).

**104.** **For those regional GNETS programs or fiscal agents that relocated students in the GNETS Program from an existing GNETS facility to a new (i.e., different) site after the Facility Conditions Assessment, the new site was required to be approved by GaDOE. Ex. 1, Def. Resp. to RFA No. 89.**

**RESPONSE:** Objection. Defendant objects to the extent the statement is used to

suggest the State of Georgia administers the GNETS Program.

**105.** **GaDOE required that a Letter of Assurance be signed by regional GNETS programs or fiscal agents applying for State grants to make repairs to GNETS facilities after the Facility Conditions Assessment was complete. Ex. 1, Def. Resp. to RFA No. 90; Ex. 105; Ex. Y, Rowland Dep. 111:21-115:5.**

**RESPONSE:** Objection. Defendant objects to the extent the statement is used to

suggest the State of Georgia administers the GNETS Program. Defendant further

objects to the statement because it is not material for purposes of the pending Motion

and thus does not comply with the provisions set out in LR 56.1(B)(1).

106.   **That Letter of Assurance included a provision that the regional GNETS program would agree to occupy the GNETS facility being repaired or upgraded for no less than 10 years, absent prior approval from GaDOE's Facilities Services Unit. Ex. 1, Def. Resp. to RFA No. 91; Ex. 105; Ex. R, Braddock Dep. 219:21-220:1, 220:16-23, 221:17-222:2, 222:15-22, 225:10-226:6; Ex. Y, Rowland Dep. 111:21-116:9.**

   **RESPONSE:** Objection. Defendant objects to the extent the statement is used to

suggest the State of Georgia administers the GNETS Program.

107.   **The Letter of Assurance also included a provision requiring prior approval from GaDOE for the regional GNETS program to move to a location other than the one the grant funds were used to improve. Ex. 105; Ex. Y, Rowland Dep. 111:21-116:9.**

   **RESPONSE:** Objection. Defendant objects to the extent the statement is used to

suggest the State of Georgia administers the GNETS Program.

V.   **GNETS Program Funding**

108.   **Each year, the General Assembly appropriates state and federal funds necessary to operate the State's departments and agencies through a State appropriations bill.** *See* **Ga. Const. art. 3, § 9, ¶ II(b);** *The Budget Process***, Governor's Office of Planning and Budget, https://opb.georgia.gov/budget-information/budget-process (last visited Oct. 18, 2023) (attached hereto as "Ex. 106").**

   **RESPONSE:**  Undisputed. The Court may consider this evidence for purposes of

the summary judgment motion.

109.   **The Governor's Office provides input into the State appropriations bill each year.** *See* **Ga. Const. art. 3, § 9, ¶ II(a).**

**RESPONSE:** Undisputed. The Court may consider this evidence for purposes of the summary judgment motion.

110.  **The State appropriations bill approved by the General Assembly becomes law either with the signature of the Governor or in the absence of a veto by the Governor.** *See* **Ga. Const. art. 3, § 5, ¶ XIII; Ex. 1, Def. Resp. to RFA 28; Ex. 106.**

**RESPONSE:** Objection. Defendant objects on the ground that Plaintiff's interpretation of the Georgia Constitution constitutes a legal conclusion which does not comply with LR 56.1(B)(1). Defendant further objects to the statement because it is not material for purposes of the pending Motion and thus does not comply with the provisions set out in LR 56.1(B)(1).

111.  **Since at least 2015, the annual State appropriations bill has included a specific line item within GaDOE's section of the bill providing funding for GNETS.** *See* **H.B. 76, 153rd Gen. Assemb., Reg. Sess. (see p. 93 at 134.100) (Ga. 2015); H.B. 751, 153rd Gen. Assemb., Reg. Sess. (see p. 54 at 24.9) (Ga. 2016); H.B. 44, 154th Gen. Assemb., Reg. Sess. (see p. 96 at 142.100) (Ga. 2017); H.B. 684, 154th Gen. Assemb., Reg. Sess. (see p. 50 at 24.10) (Ga. 2018); H.B. 31, 155th Gen. Assemb., Reg. Sess. (see p. 100 at 146.100) (Ga. 2019); H.B. 793, 155th Gen. Assemb., Reg. Sess. (see p. 63 at 24.9) (Ga. 2020); H.B. 81, 156th Gen. Assemb., Reg. Sess. (see p. 80 at 142.100) (Ga. 2021); H.B. 911, 156th Gen. Assemb., Reg. Sess. (see p. 65 at 24.8) (Ga. 2022); H.B. 19, 157th Gen. Assemb., Reg. Sess. (see p. 105 at 151.100) (Ga. 2023).**

**RESPONSE:** Objection. Defendant objects on the ground that Plaintiff's interpretation of appropriations acts constitutes a legal conclusion which does not comply with LR 56.1(B)(1). Subject to and without waiving the foregoing objection, Defendant admits that the Court may consider this evidence for purposes of the summary judgment motion.

112.  **The State determines GNETS funding using a formula distinct from the formula used to fund local education agencies.** *See* **Ex. 1, Def. Resp. to RFA No. 48; Deposition of Geronald Bell ("Bell Dep.") 117:12-16 (attached hereto as "Ex. Z").**

RESPONSE: Objection. The evidence cited does not support the statement

provided and mischaracterizes the evidence. Instead, the evidence shows the General

Assembly is not bound by the QBE formula when deciding the appropriation for the

GNETS programs.

113.  **The "Total Funds" amount for the GNETS line item in an annual State appropriations bill consists of federal funds and grants and State funds.** *See, e.g.*, **H.B. 911, 156th Gen. Assemb., Reg. Sess. (see p. 65 at 24.8) (Ga. 2022).**

RESPONSE: Objection. Defendant objects on the ground that Plaintiff's

interpretation of appropriations acts constitutes a legal conclusion which does not

comply with LR 56.1(B)(1). Subject to and without waiving the foregoing objection,

Defendant admits that the Court may consider this evidence for purposes of the

summary judgment motion.

114.  **The State can designate a portion of its Federal IDEA funds as discretionary funds to supplement its own spending on educational services for students with disabilities.** **30(b)(6) Deposition of Rusk Roam ("Roam 30(b)(6) Dep.") 27:8-28:3 (attached hereto as "Ex. AA");** *see* **Ex. Z, Bell Dep. 42:25-43:8.**

RESPONSE: Objection. The evidence cited does not support the statement.

First, the evidence cited does not support that portion of the statement regarding use of

discretionary IDEA funds "to supplement [the State's] own spending on educational

services for students with disabilities." Second, the evidence shows the General

Assembly, which is not a party in this case, appropriates discretionary IDEA funds for use in the GNETS Program. *See, e.g.*, H.B. 911, 156th Gen. Assemb., Reg. Sess. (see p. 65 at 24.8) (Ga. 2022), in the record at Doc. 429-23 at 65 (Exhibit R Part 1 of the State's Statement of Undisputed Material Facts). The evidence further shows the State has to receive approval from the United States Department of Education for its use of IDEA discretionary funds on the GNETS Program. 30(b)(6) Deposition of Rusk Roam at 28:12-29:15; 30:15-31:5; July 1, 2023 letter from United States Department of Education to Richard Woods, attached to Defendant's Statement of Additional Material Facts as Ex. 1, "approv[ing] Georgia's application for Federal fiscal year (FFY) 2023 funds under Part B of the Individuals with Disabilities Education Act (IDEA Part B)" and explaining the bases of the approval.

**115.** **In exercising this discretion, the State designates millions of its discretionary IDEA funds for use in the GNETS Program.** *See* **Ex. 91 at GA00054567.004; Ex. A, Cleveland Dep. 235:12-236:1; Ex. AA, Roam 30(b)(6) Dep. 27:8-22.**

**RESPONSE:** Objection. The evidence cited does not support the statement. Evidence instead shows that the General Assembly, which is not a party in this case, appropriates discretionary IDEA funds for use for the GNETS Program. *See, e.g.*, H.B. 911, 156th Gen. Assemb., Reg. Sess. (see p. 65 at 24.8) (Ga. 2022), in the record at Doc. 429-23 at 65 (Exhibit R Part 1 of the State's Statement of Undisputed Material Facts); Ga Comp. R. & Regs. 160-4-7-.15(5)(a)(1) in the record at Doc. 429-3 (Ex. A of the State's Statement of Undisputed Material Facts). The evidence further shows the

State has to receive approval from the United States Department of Education for its use

of IDEA discretionary funds on the GNETS Program. 30(b)(6) Deposition of Rusk

Roam at 28:12-29:15; 30:15-31:5; July 1, 2023 letter from United States Department of

Education to Richard Woods, attached to Defendant's Statement of Additional Material

Facts as Ex. 1, "approv[ing] Georgia's application for Federal fiscal year (FFY) 2023

funds under Part B of the Individuals with Disabilities Education Act (IDEA Part B)"

and explaining the bases of the approval.

116. **The majority of the funds allocated to the GNETS Program annually through the line item in the State appropriations bill are State funds. Ex. 1, Def. Resp. to RFA No. 47.**

   **RESPONSE:** Defendant admits that the Court may consider this evidence for

purposes of the summary judgment motion.

117. **Since 2015, the "Total Funds" or "Total Public Funds" amount for the GNETS line item in each annual State appropriations bill has exceeded $60,000,000, as can be seen in the following breakdown of total funds by funding source:**

   - **FY2015 ($70,121,479): state - $62,081,479; federal - $8,040,000**

   - **FY2016 ($70,406,538): state - $62,246,538; federal - $8,160,000**

   - **FY2017 ($72,086,561): state - $63,926,561; federal - $8,160,000**

   - **FY2018 ($74,402,830): state - $66,142,788; federal - $8,260,042**

   - **FY2019 ($72,081,380): state - $63,821,338; federal - $8,260,042**

   - **FY2020 ($75,069,567): state - $63,746,765; federal - $11,322,802**

   - **FY2021 ($64,122,733): state - $52,799,931; federal - $11,322,802**

- **FY2022 ($64,688,732): state - $53,365,930; federal - $11,322,802**

- **FY2023 ($65,427,745): state – $54,104,943; federal -$11,322,802**

- **FY2024 ($64,131,220): state - $52,808,418; federal - $11,322,802**

**See H.B. 76, 153rd Gen. Assemb., Reg. Sess. (see p. 93 at 134.100) (Ga. 2015); H.B. 751, 153rd Gen. Assemb., Reg. Sess. (see p. 54 at 24.9) (Ga. 2016); H.B. 44, 154th Gen. Assemb., Reg. Sess. (see p. 96 at 142.100) (Ga. 2017); H.B. 684, 154th Gen. Assemb., Reg. Sess. (see p. 50 at 24.10) (Ga. 2018); H.B. 31, 155th Gen. Assemb., Reg. Sess. (see p. 100 at 146.100) (Ga. 2019); H.B. 793, 155th Gen. Assemb., Reg. Sess. (see p. 63 at 24.9) (Ga. 2020); H.B. 81, 156th Gen. Assemb., Reg. Sess. (see p. 80 at 142.100) (Ga. 2021); H.B. 911, 156th Gen. Assemb., Reg. Sess. (see p. 65 at 24.8) (Ga. 2022); H.B. 19, 157th Gen. Assemb., Reg. Sess. (see p. 105 at 151.100) (Ga. 2023).**

**RESPONSE:** Defendant admits that the Court may consider this evidence for purposes of the summary judgment motion.

118. **After the State legislature sets the total amount of GNETS funding for a given year, GaDOE determines how much of that funding each regional GNETS program will receive. Ex. 7; Ex. Z, Bell Dep. 39:23-40:2, 132:7-133:11; Ex. A, Cleveland Dep. 158:24-166:10.**

**RESPONSE:** Objection. The cited evidence does not support that portion of the statement, "GaDOE determines how much of that funding each regional GNETS program will receive." Subject to and without waiving the foregoing objection, Defendant admits that the Court may consider this evidence for purposes of the summary judgment motion.

119. **The funding GaDOE awards to each regional GNETS program consists of State funds and federal funds. Ex. J, McCollum Dep. 214:9-215:3; Ex. AA, Roam 30(b)(6) Dep. 36:1-10, 43:13-17.**

**RESPONSE:** Objection. The cited evidence does not support the statement. The evidence instead shows that state and federal funds are part of the appropriation from the General Assembly. *See, e.g.*, H.B. 911, 156th Gen. Assemb., Reg. Sess. (see p. 65 at 24.8) (Ga. 2022), in the record at Doc. 429-23 at 65 (Exhibit R Part 1 of the State's Statement of Undisputed Material Facts). After the General Assembly appropriates grant funds for the GNETS Program, GaDOE notifies the regional programs' fiscal agents of the allocations of the State and federal funds. Exs. 111-113; Ex. J, McCollum Dep. 133:12-134:11, 166:19- 168:17.

**120.  To determine the amount of funds each regional GNETS program will receive, the State applies funding formulas that it created.  Ex. Z, Bell Dep. 150:14- 151:21, 168:15-170:6.**

**RESPONSE:** Objection. The cited evidence does not support the statement. Specifically, the evidence refers to a formula but does not state its purpose. Defendant further objects to the statement because it is not material for purposes of the pending Motion and thus does not comply with the provisions set out in LR 56.1(B)(1).

**121.  The State uses one funding formula to determine the amount of State funding allocated to each regional GNETS program in any given year ("the GNETS program funding formula").  *See* Ex. Z, Bell Dep. 175:15-176:4.**

**RESPONSE:** Objection, the cited evidence does not support the statement. Specifically, the cited evidence does not support the portion of the statement that the formula is used "to determine the amount of State funding allocated to each regional GNETS program." Defendant further objects to the statement because it is not material

for purposes of the pending Motion and thus does not comply with the provisions set

out in LR 56.1(B)(1).

**122.** **The State determines the amount of federal funding allocated to each regional GNETS program in a given year using a formula tied to the number of students in each program. Ex. 1, Def. Resp. to RFA 60; Ex. 91 at GA00054567.012; Ex. Z, Bell Dep. 165:9-23; Ex. R, Braddock Dep. 200:21-201:03; Ex. A, Cleveland Dep. 235:12-236:1, 239:4-11.**

**RESPONSE:** Defendant admits that the Court may consider this evidence for

purposes of the summary judgment motion.

**123.** **In order to receive a portion of the funds the State appropriates to the GNETS Program, regional GNETS programs must submit a grant application to GaDOE each fiscal year ("GNETS grant application"). Ex. 1, Def. Resp. to RFA No. 24; Exs. 7, 107; Deposition of David Ackerman ("Ackerman Dep.") 54:9-16 (attached hereto as "Ex. BB"); Ex. A, Cleveland Dep. 158:24-159:10, 162:5-163:16; Ex. I, Cole Dep. 174:7-25; Ex. G, Futch Dep. 239:2-19; Ex. T, Holifield Dep. 105:5-106:6; Ex. O, W. Jones Dep. 257:5-16; Ex. B, Livingston Dep. 199:10-200:13; Ex. W, Neal Dep. 352:2-10; Ex. U, Ngeve Dep. 263:16-264:24.**

**RESPONSE:** Defendant admits that the Court may consider this evidence for

purposes of the summary judgment motion.

**124.** **GNETS grant applications are submitted in or around June of each year for funding received during the following school year. Ex. 7; Ex. BB, Ackerman Dep. 118:3-4; Ex. A, Cleveland 158:24-159:10, 162:5-20; Ex. G, Futch Dep. 239:2-14; Ex. T, Holifield Dep. 105:15-108:6; Ex. J, McCollum Dep. 103:6-21; Ex. W, Neal Dep. 93:8-11; Ex. U, Ngeve Dep. 269:20-25; Ex. C, Stevenson 118:23-120:8; Ex. Q, Wolf Dep. 64:6-20.**

**RESPONSE:** Defendant admits that the Court may consider this evidence for

purposes of the summary judgment motion.

125. **To complete the GNETS grant application, regional GNETS programs must supply voluminous amounts of information to GaDOE.** *See, e.g.*, **Exs. 107-110; Ex. V, Clemons Dep. 145:2-146:14; Ex. I, Cole Dep. 174:7-25; Ex. W, Neal Dep. 352:11-354:5; Ex. U, Ngeve Dep. 265:13-266:16, 267:21-268:10, 270:5-13.**

    **RESPONSE:** Objection. The statement mischaracterizes the evidence.

Specifically, the cited evidence does not support that portion of the statement stating

that programs "must supply voluminous amounts of information to GaDOE." Whether

an amount is "voluminous" is ambiguous, vague, and subject to interpretation. The

State does not dispute that the regional GNETS Programs provide information in the

voluntary GNETS grant application.

126. **This information includes details related to regional GNETS programs' staffing, participating school districts, available behavioral and therapeutic supports, trainings, instruction, progress monitoring, program procedures, service delivery, and use of restraints.** *See, e.g.*, **Exs. 107-108, 110; Ex. A, Cleveland Dep. 186:14-23; Ex. I, Cole Dep. 174:7-19; Ex. B, Livingston Dep. 200:5-13; Ex. U, Ngeve Dep. 263:16- 264:3.**

    **RESPONSE:** Defendant admits that the Court may consider this evidence for

purposes of the summary judgment motion.

127. **In addition to completing the GNETS Strategic Plan and self-assessment as part of the annual grant application process, regional GNETS programs must also submit their program budgets to GaDOE and have those budgets approved by GaDOE.** **Ex. 7; Ex. A, Cleveland Dep. 158:24-159:10, 159:20-161:5, 208:9-210:4; Ex. S, Gilchrist Dep. 245:6-16; Ex. T, Holifield Dep. 104:10-106:18; Ex. J, McCollum Dep. 107:4-109:8; 214:9-22; Ex. C, Stevenson Dep. 149:4-150:5.**

    **RESPONSE:** Defendant admits that the Court may consider this evidence for

purposes of the summary judgment motion.

128. **Regional programs must provide GaDOE with assurances signed by the fiscal agent, the regional program itself, and each participating school district's superintendent and special education director. These assurances require that the assuring entity take, or refrain from taking, specific action related to GNETS Program operations.** *See* **Ex. 91 at GA00054563-GA00054566;** *see* **GA00321621 at GA00321621-GA00321628 (attached hereto as "Ex. 135").**

   **RESPONSE:** Objection. The cited evidence does not support the statement and the statement mischaracterizes the evidence. First, the evidence does not support the assertion that the regional GNETS programs "must provide GaDOE" with the assurance. Instead, the evidence shows one example of the GNETS Program Manager requesting "a copy" of the assurance from one GNETS Program. Plaintiff's Ex. 135. Second, the evidence does not support that portion of the statement that the school district's special education director must sign the assurance.

129. **Once GaDOE receives the information submitted by each regional GNETS program, it contacts regional GNETS program directors to request any clarification or adjustment that may be required.** *See, e.g.*, **Ex 107; Ex. R, Braddock Dep. 91:2-10; Ex. I, Cole Dep. 174:11-19, 175:25-176:16; Ex. T, Holifield Dep. 108:22-109:8; Ex. W, Neal Dep. 354:14-18; Ex. C, Stevenson Dep. 121:18-123:1.**

   **RESPONSE:** Defendant admits that the Court may consider this evidence for purposes of the summary judgment motion.

130. **After GaDOE ensures that it has all of the information required for the grant application and reviews that information, it approves the application and confirms the amount of funding it will allocate to the regional GNETS program. Ex. T, Holifield Dep. 108:22-109:8; Ex. W, Neal Dep. 354:14-21; Ex. U, Ngeve 264:4- 24; Ex. Q, Wolf Dep. 65:13-16.**

**RESPONSE:** Defendant admits that the Court may consider this evidence for purposes of the summary judgment motion.

**131.   GaDOE notifies regional GNETS programs of their preliminary grant allocations in writing. Exs. 111-113; Ex. J, McCollum Dep. 133:12-134:11, 166:19- 168:17.**

**RESPONSE:** Defendant objects to the statement because it is not material for purposes of the pending Motion and thus does not comply with the provisions set out in LR 56.1(B)(1). Subject to the preceding objection, Defendant admits that the Court may consider this evidence for purposes of the summary judgment motion.

**132.   The notification of preliminary grant allocations is followed by final grant award notifications, which are issued after the State Board of Education completes approval of funding. Ex. 113; Ex. Z, Bell Dep. 138:9-139:16; Ex. J, McCollum Dep. 214:9-22; *see also*, *e.g.*, Ex. R, Braddock Dep. 199:10-17; Deposition of Larry Winter ("Winter Dep.") 156:11-157:8 (attached hereto as "Ex. CC").**

**RESPONSE:** Defendant admits that the Court may consider this evidence for purposes of the summary judgment motion.

**133.   In addition to the funds that the State provides regional GNETS programs through the grant application process, the State Board of Education provides additional grant funds to some regional GNETS programs for specific purposes. *See* Exs. 114-116; Ex. R, Braddock Dep. 203:25-204:24; Ex. CC, Winter Dep. 170:14-172:2, 173:8-175:22.**

**RESPONSE:** Objection. The cited evidence does not support the statement. The evidence shows the grants are awarded to the fiscal agents as the Grant Recipient, not the GNETS Programs. (Plaintiff's Exs. 114-116.) The evidence further shows one GNETS Program received a grant from GaDOE for "counseling services" and a grant –

the source of which is not specified – for "COVID money." (Plaintiff's Ex. R, Braddock

Dep. 203:25-204:24.)

**134.    For example, the State provides several regional GNETS programs—through agreements with the regional GNETS program and their fiscal agents—with grants designed to address their need for therapeutic support and fill service delivery gaps affecting their operations.** *See* **Exs. 114, 116-124; Ex. Z, Bell Dep. 129:19- 130:11; Ex. A, Cleveland Dep. 103:21-106:10, 107:12-21; Ex. I, Cole Dep. 278:7-280:15; Ex. G, Futch Dep. 252:15-253:21; Ex. K, Keith Dep. 132:10-134:20, 136:11-140:1, 147:10-150:12, 153:7-154:15; Ex. B, Livingston Dep. 119:6-120:9; Ex. L, Low Dep. 201:20-24; Ex. W, Neal Dep. 80:6-83:8; 83:24-86:5; Ex. U, Ngeve Dep. 276:5-278:2; Ex. M, Owen Dep. 85:22-86:6, 92:17-93:24, 186:12-187:10; Ex. CC, Winter Dep. 173:8-175:22; Ex. Q, Wolf Dep. 142:16-144:12, 147:13-148:16.**

**RESPONSE:** Objection. The statement mischaracterizes the evidence which

does not show GaDOE has any agreement with the regional GNETS program and their

fiscal agents regarding the therapeutic services grant; instead, there is an assurance

between the fiscal agent and GNETS program, not with GaDOE. *See*, Plaintiff's Ex.

120.

**135.    In FY19, the State provided nearly $1.3 million as part of its grant funding for the GNETS Program to cover various contracts for therapeutic services.** *See* **Ex. 125 at GA00007234; Ex. Z, Bell Dep. 122:23-124:9, 129:3-130:11.**

**RESPONSE:** Objection, the evidence does not support the statement. The

evidence shows in FY19, the General Assembly "redirected" nearly $1.3 million "for

existing behavioral and therapeutic services contracts." (*See* Plaintiff's Ex. 125 at

GA00007234.) The evidence further shows that these grant funds are allocated to the

fiscal agents for reimbursements. *See*, Plaintiff's Ex. 116 (regarding therapeutic grant

for FY20). Lastly, Defendant objects to the statement because it is not material for purposes of the pending Motion.

**136. Through their fiscal agents, regional GNETS programs that receive grant funds for such therapeutic services must provide the State with various assurances, including that they will procure the therapeutic staff providing such services through a staffing agency approved by GaDOE. Exs. 118, 120, 126-128; Ex. I, Cole Dep. 278:7-280:14; Ex. K, Keith Dep. 140:8-143:5, 153:7-155:6; Ex. W, Neal Dep. 80:6-83:8; Ex. Q, Wolf Dep. 141:6-144:2, 144:19-145:19, 147:13-149:2.**

**RESPONSE:** Objection, the evidence does not support the statement. First, the evidence does not show that GNETS Programs "must provide the State with various assurances." Instead, the evidence shows the GNETS programs and the fiscal agent enter into assurances with each other. (*See, e.g.*, Plaintiff's Ex. 120.) Second, the evidence shows that it is the fiscal agent that decides to enter into any agreement with a therapeutic services provider, it is the fiscal agent that reviews the provider agreement, and the fiscal agent that "make[s] any adjustments that they deemed (sic) to be necessary. Including statements related to the contractors (sic) liability for this service." (Plaintiff's Ex. 118.)

**137. Regional GNETS programs seeking to depart from the terms of these assurances have sought permission from GaDOE before doing so. *See, e.g.*, Exs. 118, 126-128; Ex. Q, Wolf Dep. 141:6-144:2, 144:19-145:19, 147:13-148:16.**

**RESPONSE:** Objection, the evidence does not support the statement. First, the evidence contains one non-final draft assurance document between a fiscal agent and a GNETS program. (Plaintiff's Ex. 126.) Second, the evidence shows an instance in

which a regional GNETS Program director testifies that there was no requirement by

GaDOE that she was seeking "to depart from." In fact, GaDOE had simply provided a

"suggested resource." (Plaintiff's Ex. Q, Wolf Dep. at 142:25-143:2; 143:12-14). Third,

the evidence shows that it is the fiscal agent that decides to enter into any agreement

with a therapeutic services provider, it is the fiscal agent that reviews the provider

agreement, and the fiscal agent that "make[s] any adjustments that they deemed (sic) to

be necessary. Including statements related to the contractors (sic) liability for this

service." (Plaintiff's Ex. 118.)

138. **Regional GNETS programs receiving therapeutic services grants must submit detailed logs to GaDOE on a monthly basis regarding the therapeutic services provided by staff procured through the grant. Exs. 59, 126, 129-130; Ex. K, Keith Dep. 140:8-142:19, 143:14-22; Ex. U, Ngeve Dep. 332:5-333:21, 334:16-336:2; Ex. Q, Wolf Dep. 146:1-147:12; *see also generally* Exs. 15, 114, 119, 121, 131; Ex. A, Cleveland Dep. 103:21-106:10, 107:12-25; Ex. I, Cole Dep. 278:7-280:15; Ex. G, Futch Dep. 252:15-253:16; Ex. K, Keith Dep. 147:10-151:3; Ex. B, Livingston Dep. 227:8-228:19; Ex. W, Neal Dep. 114:14-116:1; Ex. C, Stevenson Dep. 46:10-23, 69:8-20, 200:9-201:17.**

**RESPONSE:** Objection, the evidence does not support the statement in that it

suggests therapeutic services providers are "procured" through the grant. In contrast, the

evidence shows that these grant funds are allocated to the fiscal agents for

reimbursements. *See*, Plaintiff's Ex. 116.

139. **In at least one instance, GaDOE personnel supplied a regional GNETS program receiving the therapeutic services grant with a document outlining responsibilities for a social worker staff position and the regional GNETS program then used that document to create a job description for its State-funded social worker position. Ex. 128; Ex. Q, Wolf Dep. 144:19-145:12, 148:17-149:2.**

**RESPONSE:** Objection. The evidence does not support that portion of the statement that states the social worker position is "State-funded." Instead, the evidence shows the LEAs are reimbursed by the therapeutic services subgrant for funds the LEAs used on the position. *See*, Plaintiff's Ex. 116.

140. **The vast majority of therapeutic staff in regional GNETS programs is funded through State grant monies. *See, e.g.*, Exs. 108-109, 132-134; Ex. R, Braddock Dep. 152:22-153:20, 161:13-25; Ex. V, Clemons Dep. 145:2-7, 147:13-150:6, 167:17-168:9, 193:15-195:1; Ex. S, Gilchrist Dep. 122:4-23, 207:5-21; Ex. U, Ngeve Dep. 265:18-266:16, 271:5-23, 273:15-274:1; Ex. Q, Wolf Dep. 100:12-104:20, 105:3-106:5.**

**RESPONSE:** Objection, the statement is not supported by the evidence. In addition, the personnel roles that constitute "therapeutic staff" for purposes of this statement are not defined. Similarly, the term "vast majority" is vague, ambiguous, and subject to interpretation.

Respectfully submitted this 13th day of November, 2023.

Christopher M. Carr
*Attorney General*
Georgia Bar No. 112505
Bryan K. Webb
*Deputy Attorney General*
Georgia Bar No. 743580
Russell D. Willard
*Senior Assistant Attorney General*
Georgia Bar No. 760280
Susan R. Haynes
*Assistant Attorney General*
Georgia Bar No. 901269
Office of the Attorney General 40
Capitol Square, S.W. Atlanta, Georgia
30334 Telephone: (404) 656-3357

*/s/ Josh Belinfante*
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Melanie Johnson
Georgia Bar No. 466756
mjohnson@robbinsfirm.com
Edward Bedard
Georgia Bar No. 926148
ebedard@robbinsfirm.com
Danielle Hernandez
Georgia Bar No. 736830
dhernandez@robbinsfirm.com
Javier Pico Prats
Georgia Bar No. 664717

jpicoprats@robbinsfirm.com
Anna Edmondson
Georgia Bar No. 289667
aedmondson@robbinsfirm.com
**Robbins Alloy Belinfante Littlefield
LLC**
500 14th Street NW
Atlanta, GA 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

Alexa R. Ross
Georgia Bar No. 614986
alexarross@icloud.com
**AlexaRossLaw, LLC**
2657 Danforth Lane
Decatur, Georgia 30033

Special Assistant Attorneys General
*Attorneys for Defendant*