**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16-cv-03088- |
| | ) | ELR |
| STATE OF GEORGIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO EXCLUDE THE DECLARATION OF DANTE MCKAY

Pursuant to Federal Rules of Civil Procedure 26 and 37 and Federal Rule of Evidence 702, Plaintiff United States of America ("United States") moves to exclude the Declaration of Dante McKay, ECF No. 428-4, proffered by the State of Georgia ("State") on November 7, 2023 in support of the State's Motion to Exclude the Testimony of Dr. Robert Putnam, ECF No. 428, and Motion for Summary Judgment, ECF No. 429-1.

## INTRODUCTION

In an effort to challenge evidence adduced by the United States showing that the State could reasonably modify its service delivery system to better support students with behavior-related disabilities and help them remain in integrated

settings, the State relies on the Declaration of Dante McKay ("McKay Declaration" or "Declaration"), ECF No. 428-4.[1]  The McKay Declaration is improper and should be excluded for the following critically important reasons.  First, Mr. McKay opines about a cost estimate for modifying the State's school-based mental health Apex Program, yet a diligent search by the United States suggests that neither the cost estimate nor the basis for it appear in the State's discovery productions, and the State has declined to clarify whether it previously produced the estimate or any related underlying information pursuant to this Court's scheduling orders.  Second, the Declaration's principal purpose is to express expert opinion testimony not previously disclosed in accordance with this Court's scheduling orders.  Finally, even assuming for purposes of argument that the purpose of the Declaration is not to express expert testimony, the Declaration is inadmissible because Mr. McKay's opinions are not based on personal knowledge and instead rely on hearsay.  The United States has been prejudiced by each of the lapses, and, in particular, is not able to test Mr. McKay's eleventh-hour opinions through further depositions or discovery.

## BACKGROUND

---

[1] In its Motion to Exclude the Testimony of Dr. Robert Putnam, ECF No. 428, the State refers to the Declaration as Exhibit 4.  In its Motion for Summary Judgment, ECF No. 429-1, the State refers to the Declaration as Exhibit I.

The State cites the McKay Declaration in support of its fundamental alteration arguments,[2] which it raises in its Motion to Exclude the Testimony of Dr. Robert Putnam, ECF No. 428 at 12, and Motion for Summary Judgment, ECF No. 429-1 at 29-31. The State contends that the Declaration is "[t]he only admissible evidence" regarding the reasonableness of the modifications proposed by the United States' experts and that the Declaration "demonstrates that DOJ's proposed modifications are not reasonable and would constitute a fundamental alteration of the State's programs . . . ." ECF No. 429-1, Defendant's Motion for Summary Judgment at 31.

In his Declaration, Mr. McKay, Director of the Office of Children, Youth and Families in Georgia's Department of Behavioral Health and Developmental Disabilities ("DBHDD"), offers his opinion about two factors: cost and workforce shortages, which he claims impact the State's ability to expand the Apex Program, an existing school-based mental health program, to all public schools in Georgia. He states, "The cost estimate for expanding APEX to every public school in Georgia applying a 1:50 therapist to student ratio resulted in a total estimated cost of $313.5 million, with an estimated attributed cost to the State of Georgia of more than $219.5 million in State funds." McKay Decl. ¶ 8. Mr. McKay further opines that "[a]n expansion of this magnitude would necessitate additional appropriations for

---

[2] The State failed to plead fundamental alteration, which is an affirmative defense, in its Answer to the United States' Complaint. *See* ECF No. 67 at 1-3 (asserting eleven affirmative defenses, none of which mentions fundamental alteration).

DBHDD by the Georgia General Assembly of more than $219.5 million" and that "[f]ederal funds would not supplement this." McKay Decl. ¶ 8. The cost estimate Mr. McKay references is, according to him, "subject to the availability of workforce to staff all 2,308 public schools." McKay Decl. ¶ 11.

As the Director of DBHDD's Office of Children, Youth and Families, Mr. McKay has worked at DBHDD since 2016. *See* March 9, 2023 McKay Dep. 13:20-14:10 ("2023 McKay Dep.") (attached hereto as "Exhibit A"). In several depositions, including when he served as a witness in the 30(b)(6) deposition of the State, he demonstrated his detailed understanding of the Apex Program, such as the funding sources for multiple expansions of the program. *See* Ex. A, 2023 McKay Dep. 12:7-13:19, 16:8-17:1, 33:13-34:9, 34:25-39:25, 55:3-10, 63:7-15; *see also* ECF No. 404, January 27, 2022 McKay Dep. ("2022 McKay Dep.") 21:25-22:1, 32:11-25, 35:3-38:12, 140:1-144:24, 184:4-185:1, 187:8-12. He and his staff coordinate with numerous stakeholders regarding the Apex Program. ECF No. 404, 2022 McKay Dep. 59:21-60:14, 80:1-80:23, 107-108:10, 124:13-129:19.

The cost estimate that Mr. McKay now describes in his Declaration is information that the United States sought, but did not receive, during discovery. On December 22, 2022, the United States served the State with a written discovery request that focused explicitly on the cost of expanding access to behavioral health

services in general education services, including through the Apex Program.[3] However, the United States' diligent search suggests that the State did not produce any documents in response to this discovery request containing the cost figures referenced in Mr. McKay's Declaration, and—as noted—the Declaration neither identifies nor attaches any.

During fact discovery, the United States deposed Mr. McKay twice, first on January 27, 2022 in his personal capacity and second on March 9, 2023, when the State identified him in response to a Rule 30(b)(6) deposition notice.  ECF No. 404, 2022 McKay Dep.; Ex. A, 2023 McKay Dep.   During his January 27, 2022 deposition, Mr. McKay testified that DBHDD had not conducted any analysis of the cost of expanding Apex.  ECF No. 404, 2022 McKay Dep. 184:4-185:1, 187:8-12.[4]

On March 15, 2023, after the close of fact discovery and pursuant to this Court's operative scheduling orders, the United States disclosed its experts, Dr. Amy McCart and Dr. Robert Putnam.  *See* ECF No. 344.  The United States provided these experts' written reports to the State on June 16, 2023.  *See* ECF No. 376.  In

---

[3] Request No. 3 of the United States' Fifth Request for Production of Documents sought "[a]ll analyses . . . or other documents that describe the actual cost, or possible cost, to the State of increasing access to and use of school-based behavioral health services in general education settings, including through the Georgia Apex program . . . ."  *See* United States' Fifth Request for Production of Documents at 6 (attached hereto as "Exhibit B.").

[4] "Q: Has there been any analysis . . . of the amount of funding that would be required to expand Apex to every public school in Georgia?
A: No."

his report, Dr. Putnam recommends the State expand its Apex Program to better serve students with behavior-related disabilities in integrated settings. ECF No. 428-1, Report of Dr. Robert Putnam ("Putnam Rep.") at 58-59, 63-64. The State did not disclose any affirmative experts. The only expert the State disclosed during expert discovery was Dr. Andrew Wiley, a rebuttal expert first identified on July 28, 2023. *See* ECF No. 379. Dr. Wiley's rebuttal report, which the State served on September 1, 2023, does not reference the cost estimate or workforce shortages described in the McKay Declaration or any other costs or workforce shortages related to Apex expansion in Georgia.[5] *See* Rebuttal Report of Dr. Andrew Wiley ("Wiley Rep.") (attached hereto as "Exhibit C") and Errata to Wiley Rep. ("Wiley Errata") (attached hereto as "Exhibit D").

Not until after the close of both fact and expert discovery did the State attempt to offer any evidence of the cost of expanding the Apex Program. On November 7, 2023, nearly eight months after the close of fact discovery and two months after the Court-ordered deadline for rebuttal expert reports, the State filed the McKay Declaration in support of its Motion to Exclude the Testimony of Dr. Robert Putnam, ECF No. 428 and Motion for Summary Judgment, ECF No. 429-1. The United States conducted a good faith search of the over 728,000 records produced by the

---

[5] Dr. Wiley's list of considered materials does not reference any cost estimate or workforce shortages described in the McKay Declaration. *See* Exs. C and D.

State in discovery but did not find any reference to the cost estimate described in the McKay Declaration.

Given the volume of the State's production, and its unfamiliarity with the cost estimate proffered by Mr. McKay, the United States wrote opposing counsel on November 9, 2023 requesting that the State confirm: (1) the date of the cost estimate referenced in the McKay Declaration and (2) whether the State had produced the cost estimate or any documents on which the estimate relied and, if so, the Bates numbers of those documents. *See* Nov. 9. 2023 Email from A. Hamilton Watson to M. Johnson and Nov. 10, 2023 Response (attached hereto as Exhibit E). In response, the State did not provide the requested information, but rather stated, in full and without explanation, that: "Mr. McKay's affidavit speaks for itself. To the extent you disagree, given the timetable we're operating under, the issue is now one for summary judgment." *Id.*

## **ARGUMENT**

## I.    THE MCKAY DECLARATION SHOULD BE EXCLUDED BECAUSE THE STATE FAILED NOT ONLY TO DISCLOSE THE COST ESTIMATE AND ITS BASIS IN DISCOVERY BUT ALSO TO DISCLOSE MR. MCKAY AS AN EXPERT WITNESS.

Because the State not only failed to disclose cost information that is material to its arguments regarding fundamental alteration, but also failed to disclose Mr. McKay as an expert witness upon whom it intended to rely, the Declaration should be excluded.

7

The Federal Rules of Civil Procedure permit parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under Federal Rule of Civil Procedure 26(e), "[a] party . . . who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process . . . ." Fed. R. Civ. P. 26(e)(1)(A). A party is under the same obligation to supplement when it "has made a disclosure under Rule 26(a)," Fed. R. Civ. P. 26(e)(1)(A), which requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705," Fed. R. Civ. P. 26(a)(2)(A), and to provide either a written report or summary outlining the expert witness's opinions. *See* Fed. R. Civ. P. 26(a)(2)(B), 26(a)(2)(C).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c); *accord Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019) (citing Fed. R. Civ. P. 37(c)). *See also*

*Coward v. Forestar Realty, Inc.*, 282 F. Supp. 3d 1317, 1330 (N.D. Ga. 2017) (finding plaintiffs' delayed disclosure of supplemental expert report, "which appear[ed] to be based on information that was available, or should have been available, to Plaintiffs from a very early stage in the litigation," was not substantially justified or harmless because defendants "would not have an opportunity to rebut the opinions in the [report]."); *Morrison v. Mann*, 244 F.R.D. 668, 673 (N.D. Ga. 2007) ("Most commonly, the harm associated with untimely expert witness disclosures is the non-disclosing party's inability to adequately prepare its case by deposing the witness during the discovery period.") (citation omitted).

The party that makes the late disclosure bears the burden of demonstrating that its untimely disclosure was substantially justified or is harmless. *See Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019); *Coward v. Forestar Realty, Inc.*, 282 F. Supp. 3d 1317, 1328 (N.D. Ga. 2017). Courts have excluded expert testimony that parties disclosed after the disclosure deadline had passed. *See Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 719 (11th Cir. 2019) (affirming the district court's decision to strike supplemental expert report that was filed "over a *month after* the close of discovery," noting the disclosing party "did not seek leave of the district court prior to disclosing the [report], nor did he move to extend discovery.") (emphasis in original); *see also Durkin v. Platz*, 920 F. Supp. 2d 1316, 1328 (N.D. Ga. 2013) (granting motion to exclude expert testimony filed two months

after discovery closed because defendants failed to show their delayed filing was substantially justified); *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1308 (N.D. Ga. 2003) (finding defendants' attempt in their opposition to plaintiffs' motion for summary judgment to present new evidence, which they failed to disclose when plaintiffs sought the evidence during discovery, was not harmless because plaintiffs relied on defendants' discovery disclosures "in framing their discovery requests, taking depositions and in filing the motion for partial summary judgment.").

Additionally, courts have considered whether a "party knew or should have known that an expert was necessary before the late stages of the discovery period." *See, e.g.*, *Morrison v. Mann*, 244 F.R.D. 668, 673-674 (N.D. Ga. 2007) (concluding plaintiffs "should . . . have known" they needed to disclose expert witness "to establish a necessary element of their . . . cause of action and to rebut any potential . . . witnesses."); *APA Excelsior III, L.P. v. Windley*, 329 F. Supp. 2d 1328, 1337-1338 (N.D. Ga. 2004) (concluding "[t]he need for an expert should have been apparent during discovery" because "it was readily apparent during discovery that" the issue to which the late disclosing parties' experts would testify, "would be at issue.").

A.    **The State Significantly Prejudiced the United States When it Failed To Disclose the Cost Estimate and its Basis During Discovery as Required by Rule 26(e) and this Court's Scheduling Orders.**

Despite the United States' request that the State produce information regarding the cost of expanding Apex, *see* Ex. B, the State did not produce the cost estimate described in the McKay Declaration, let alone the underlying data or documents supporting that estimate. In fact, Mr. McKay provided sworn deposition testimony that DBHDD had not, as of January 2022, conducted any cost estimate regarding an expansion of Apex. ECF No. 404, 2022 McKay Dep. 184:4-185:1, 187:8-12. At no time between Mr. McKay's January 27, 2022 deposition and the March 10, 2023 close of fact discovery or the October 31, 2023 close of expert discovery did the State supplement its discovery responses to include the current cost estimate evidence or any underlying data or documents. The State's failure to do so constitutes a clear violation of the letter and intent of Federal Rule 26(e). Moreover, this failure significantly prejudices the United States, which has no opportunity to test the basis of the cost estimate evidence through depositions or otherwise.

**B.    The State Significantly Prejudiced the United States When it Failed To Disclose Mr. McKay as an Expert Witness as Required by Rule 26(a) and this Court's Scheduling Orders.**

*1.    Mr. McKay's Declaration Offers an Expert Opinion.*

According to Federal Rule of Evidence 702, which expressly incorporates Federal Rule of Civil Procedure 26 (a)(2), a witness offers an expert opinion if the opinion relies on "specialized knowledge." Fed. R. Evid. 702(a). *See Williams v.*

*Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317-1318 (11th Cir. 2011); Fed. R. Evid. 701(c); Fed. R. Evid. 701 Advisory Committee Note to the 2000 amendments ("any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules."). This is particularly so if the witness's testimony is responsive to a hypothetical. *See Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 906 (11th Cir. 2023) (concluding "[t]he effect of [a yacht company's] failure to retain a full-time . . . crew leading up to and during Hurricane Irma is exactly the kind of issue that requires expert testimony" because it was "a hypothetical question" and "[a] lay witness cannot offer a hypothesis about what caused the [ship] to sink or what [the crew] might have done to change the outcome."); *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) ("[T]he ability to answer hypothetical questions is the essential difference between expert and lay witnesses.") (citations and quotations omitted).

A witness must have specialized knowledge to testify about potential barriers to the future expansion of a government program, such as projected workforce shortages or the estimated cost (including required legislative appropriations) associated with such an expansion. Providing this type of analysis requires detailed and specialized knowledge about the government program itself, as well as the

statewide workforce (current and projected) and financial data and assumptions used to generate cost estimates, commonly calculated through multi-page spreadsheets.

As the Director of DBHDD's Office of Children, Young Adults and Families, a DBHDD employee since 2016, and the head of a staff that coordinates with numerous stakeholders regarding the Apex Program, Mr. McKay has access to specialized information about the Apex program, including the data, background assumptions, and formulas needed to calculate the anticipated cost of expanding the Apex program and any State appropriations required to meet those costs. *See* Ex. A, 2023 McKay Dep. 13:20-14:10; ECF No. 404, 2022 McKay Dep. 59:21-60:14, 80:1-80:23, 107-108:10, 124:13-129:19. In several depositions, including when he served as a witness in the 30(b)(6) deposition of the State, Mr. McKay demonstrated his detailed understanding of the Apex Program, such as the funding sources for multiple expansions of the program. *See* Ex. A, 2023 McKay Dep. 12:7-13:19, 16:8-17:1, 33:13-34:9, 34:25-39:25, 55:3-10, 63:7-15; *see also* ECF No. 404, 2022 McKay Dep. 21:25-22:1, 32:11-25, 35:3-38:12, 140:1-144:24, 184:4-185:1, 187:8-12. Given Mr. McKay's longstanding leadership within DBHDD, his role as one of the State employees most knowledgeable about Apex, and his access to the specialized information required to generate a cost estimate for an Apex expansion, his Declaration constituted expert testimony. That the future expansion of the Apex

Program for which Mr. McKay provides a cost estimate is hypothetical only bolsters this conclusion.

### 2. *The State Failed to Properly Disclose Mr. McKay as an Expert Witness.*

A party must disclose expert testimony "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). In addition, if a party wishes to rely on the testimony of an expert witness, the party "shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert . . . ." LR 26.2(C). "Any party who does not comply . . . shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by Court order based upon a showing that the failure to comply was justified." LR 26.2(C). This rule governing expert disclosure "is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Reese v. Herbert*, 527 F.3d 1253, 1264-1265 (11th Cir. 2008) (quotation marks and citations omitted) (affirming district court's exclusion of an affidavit that was filed during summary judgment briefing, nearly seven weeks after discovery closed).

Under this Court's scheduling orders, the parties were required to disclose their affirmative experts no later than March 15, 2023 and any rebuttal expert witnesses no later than July 28, 2023. ECF Nos. 344, 379. Although the United States disclosed two affirmative experts on March 15, 2023, the State did not

disclose any.  The State did disclose one rebuttal expert witness on July 28, 2023, but that witness was not Mr. McKay.[6]  By choosing not to disclose Mr. McKay as an expert witness in accordance with this Court's scheduling orders, the State has deprived the United States of notice of the subject matter on which Mr. McKay was "expected to present evidence" and "a summary of the facts and opinions to which" he was "expected to testify," Fed. R. Civ. Pro. 26(a)(2)(C), as well as the opportunity to depose Mr. McKay regarding that subject matter—in this case, material facts in support of the State's assertion that the cost and workforce capacity required to expand Apex would fundamentally alter the State's programs.  *See* ECF No. 429-1, Motion for Summary Judgment at 31.

### C.   The State's Failure to Disclose the Cost Estimate Evidence and Its Intended Reliance on Mr. McKay as an Expert Was Not Substantially Justified or Harmless.

The State has not acknowledged its failure to comply with this Court's scheduling orders and the Federal Rules of Civil Procedure and Evidence, let alone argued its noncompliance was justified or harmless.  *See Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019).  Months ago, the United States put the State on notice of the United States' interest in any potential cost evidence related to the expansion of Apex.  The State did not disclose the cost estimate evidence it now seeks to introduce or any basis for that evidence even though the United States

---

[6] *See supra* at 6.

sought the information in its Fifth Request for Production.  *See* Ex. B.  Furthermore, the State knew that Mr. McKay testified that DBHDD had not assessed the costs associated with expanding Apex, yet the State waited almost two years to file a declaration that asserts precisely the opposite.  *See* ECF No. 404, 2022 McKay Dep. 184:4-185:1, 187:8-12; McKay Decl. ¶ 7.  The United States and its expert, Dr. Putnam, relied on Mr. McKay's testimony that DBHDD had not analyzed the cost of expanding Apex.  *See, e.g.*, ECF No. 428-1, Putnam Rep. at 41 ("While DBHDD wants to expand the Apex Program statewide, it has not conducted any analysis of how much additional funding that would require.").  Because the State never disclosed the requested cost estimate evidence or its basis, the United States and its experts have been deprived of the opportunity to examine and test that evidence in discovery.

Similarly, because the State failed to disclose its intended reliance on Mr. McKay as an expert witness or provide any summary of the facts and opinions to which he would testify, the United States has also been deprived of the opportunity to depose Mr. McKay and ask specific questions about the estimate, which addresses information that is material to the parties' dispute.[7]  Under these circumstances, the State cannot demonstrate harmlessness.  *See*, *e.g.*, *Coward v. Forestar Realty, Inc.*,

---

[7] Although the United States has twice deposed Mr. McKay, it conducted those depositions without the benefit of having the evidence contained in Mr. McKay's Declaration.

282 F. Supp. 3d 1317, 1330 (N.D. Ga. 2017) (finding plaintiffs' delayed disclosure of supplemental expert report, "which appear[ed] to be based on information that was available, or should have been available to Plaintiffs from a very early stage in the litigation," was not substantially justified or harmless because defendants "would not have an opportunity to rebut the opinions in the [report]."); *Morrison v. Mann*, 244 F.R.D. 668, 673 (N.D. Ga. 2007) ("Most commonly, the harm associated with untimely expert witness disclosures is the non-disclosing party's inability to adequately prepare its case by deposing the witness during the discovery period.").

The State's failure to timely disclose the cost estimate evidence and Mr. McKay's anticipated expert testimony also is not justified. The State has been in possession of the United States' request for cost information related to the expansion of Apex since December 2022. *See* Ex. B. In addition, upon receiving Dr. Putnam's June 16, 2023 report, the State was on notice of Dr. Putnam's opinion that expanding Apex is one of the ways that the State could modify its delivery of mental health services to better serve students with behavior-related disabilities in integrated settings. *See* ECF No. 428-1, Putnam Rep. at 59-60. Finally, this Court should also presume that the State has long been aware of its right to assert fundamental alteration as an affirmative defense in an ADA case. *See*, *e.g.*, *Olmstead v. L.C.*, 527 U.S. 591, 607 (1998) (Stevens, J. concurring in part) ("If a plaintiff requests relief that requires modification of a State's services or programs, the State may assert, as

an affirmative defense, that the requested modification would cause a fundamental alteration of a State's services and programs."); *see also* ECF No. 429-1, Defendant's Motion for Summary Judgment at 29 n. 32 ("Reasonableness is an element of any ADA plaintiffs' [sic] case, and fundamental alteration is a defense.").

Given these timelines, the State lacks any credible justification for its decision not to disclose the cost estimate, the basis for that estimate, or the State's intended reliance on Mr. McKay to introduce the cost estimate. The State had the benefit of the Court's multiple extensions of the fact and expert discovery periods, which afforded it several months to produce cost estimate evidence in response to the United States' discovery request and over a month from the time it received Dr. Putnam's report, June 16, 2023, to the time it was required to disclose the names of its rebuttal experts, July 28, 2023. *See* ECF Nos. 376, 379. Yet, when the time came to designate a rebuttal witness, the State failed to inform the United States of its intention to rely on Mr. McKay to provide testimony on cost estimates or appropriations related to Apex.[8] Because the State was well aware of the United States' prior request for cost estimate evidence related to the expansion of Apex and the United States' expert's identification of the expansion of Apex as a reasonable

---

[8] *See supra* at 6.

modification, the State's failure to disclose this evidence and the witness through whom the State intended to offer the evidence lacks justification.

## II.    THE COURT SHOULD ALSO EXCLUDE THE MCKAY DECLARATION BECAUSE IT IS INADMISSIBLE.

### A. Mr. McKay's Declaration is Inadmissible Because it Was Not Made on Personal Knowledge and Did Not Set Out Admissible Facts in Violation of Rule 56(c)(4).

Even assuming, for purposes of argument, that Mr. McKay is not an expert witness within the meaning of Federal Rule of Civil Procedure 26(a), this Court should exclude the cost estimate evidence contained in his Declaration because it is otherwise inadmissible.

Federal Rule of Civil Procedure 56 requires a declaration in support of a motion for summary judgment to: (1) "be made on personal knowledge;" (2) "set out facts that would be admissible in evidence;" and (3) "show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). *See also* Wright & Miller, § 2738 Affidavits in Support of or in Opposition to Summary Judgment, 10B Fed. Prac. & Proc. Civ. (4th ed.) ("[T]he first requisite" of affidavits used on summary-judgment motions "is that the information they contain (as opposed to the affidavits themselves) would be admissible at trial."). The McKay Declaration does not meet this standard.

### 1. *Mr. McKay Lacks Personal Knowledge of the Cost Estimate and Workforce Shortages.*

Mr. McKay offers no evidence that he has personal knowledge of DBHDD's cost estimate or workforce shortages. He merely states that he has obtained "firsthand knowledge" of DBHDD's "business operations." McKay Decl. ¶ 2. His Declaration does not provide any specific information about workforce shortages or the cost estimate, beyond the estimate's total amount. McKay Decl. ¶¶ 8-11. Nor does it provide specific information about the assumptions supporting the cost estimate, including the student to therapist ratio, the date the State would complete the Apex expansion, how much funding would allegedly result from legislative appropriations, and how the estimate compares to other portions of the State's budget. McKay Decl. ¶¶ 8-10. The Declaration also does not explain whether Mr. McKay himself or another employee within DBHDD prepared the estimate, when the estimate was prepared, or why the estimate contemplated expansion of Apex to every school in Georgia, as opposed to a more limited expansion. For these reasons, this Court should exclude the Declaration.

## 2. _Mr. McKay Fails to Set Out Admissible Evidence in Support of His Opinions._

Mr. McKay's opinion about the cost estimate regarding Apex expansion is likely also inadmissible on hearsay grounds. Federal Rule of Evidence 801(c) defines hearsay as a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

The cost estimate upon which Mr. McKay opines does not appear in the State's production, *see supra* pp. 4-5, 6-7, and Mr. McKay's Declaration is silent as to whether he conducted, or participated in any way, in the development of the cost estimate. Additionally, he does not explain the basis for his understanding of statewide workforce shortages and their potential impact on the Apex Program. To the extent that he does not have personal knowledge related to information about workforce availability and the development of the cost estimate and instead relies on statements provided to him by others, his Declaration is inadmissible on hearsay grounds because his opinions are being asserted for the truth of the matter.

In particular, the State cites the Declaration in its motions to prove the State's assertion, which is contained in the Declaration and the State's briefs, that a potential expansion of Apex would require additional appropriations and depend on workforce constraints. McKay Decl. ¶¶ 8, 11; ECF No. 429-1, Defendant's Motion for Summary Judgment at 30-31; ECF No. 428, Motion to Exclude the Testimony of Dr. Robert Putnam at 12. The State thus offers Mr. McKay's testimony about workforce shortages and the cost estimate to prove the truth of the matter asserted in his Declaration: that expanding the Apex Program to every public school in Georgia is subject to workforce availability and would cost $313.5 million. McKay Decl. ¶¶ 8; 11; ECF No. 428, Defendant's Motion to Exclude the Testimony of Dr. Robert

Putnam at 12; ECF No. 429-1, Defendant's Motion for Summary Judgment at 30-31.

Therefore, this Court should exclude the Declaration because it contains inadmissible hearsay.

## **CONCLUSION**

Because the State failed to make timely disclosures during discovery related to the cost estimate evidence contained in the McKay Declaration, that cost estimate evidence and other evidence related to workforce shortages is inadmissible, and the United States has been prejudiced by the State's untimely disclosure of the evidence, the United States respectfully requests that this Court grant this Motion to Exclude the McKay Declaration.


Dated:  November 21, 2023

Respectfully submitted:

RYAN K. BUCHANAN
*United States Attorney*
Northern District of Georgia

KRISTEN CLARKE
Assistant Attorney General

SHAHEENA A. SIMONS
Chief

KELLY GARDNER WOMACK
Deputy Chief

ANDREA HAMILTON WATSON
Special Litigation Counsel

22

<u>/s/ *Aileen Bell Hughes*</u>
AILEEN BELL HUGHES
GA Bar Number: 375505
Assistant United States Attorney
United States Department of Justice
Richard B. Russell Federal Building
75 Ted Turner Dr. SW
Suite 600
Atlanta, GA 30303-3309
(404) 581.6000
 aileen.bell.hughes@usdoj.gov

CRYSTAL ADAMS
CLAIRE CHEVRIER
FRANCES COHEN
MATTHEW GILLESPIE
PATRICK HOLKINS
VICTORIA M. LILL
JESSICA POLANSKY
LAURA C. TAYLOE
MICHELLE L. TUCKER
Trial Attorneys
Educational Opportunities Section

<u>/s/ *Crystal Adams*</u>
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-4092
Crystal.Adams@usdoj.gov

23

## **L.R. 7.1(D) CERTIFICATION**

I certify that this brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C) and 7.1(D).  Specifically, this brief has been prepared using 14-pt Times New Roman Font.


/s/ *Crystal Adams*
CRYSTAL ADAMS

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing.

This 21st day of November, 2023.

*/s/ Crystal Adams*
CRYSTAL ADAMS