## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA,

     *Plaintiff*,

v.

STATE OF GEORGIA,

     *Defendant*.

CIVIL ACTION

NO. 1:16-CV-03088-ELR

## STATE OF GEORGIA'S RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE DECLARATION OF DANTE MCKAY

The State of Georgia submits this Response in Opposition to the Department of Justice's ("DOJ") Motion to Exclude the Declaration of Dante McKay ("Motion"). Doc. No. [439]. The State of Georgia filed the Declaration of Dante McKay ("Declaration"), Doc. No. [429-10], pursuant to Federal Rule of Civil Procedure 56 in support of its Motion for Summary Judgment, Doc. No. [429], and its Motion to Exclude Testimony of Dr. Robert Putnam and Incorporated Memorandum of Law in Support Thereof. Doc. No. [428]. For the reasons set forth below, DOJ's attempt to strike the Declaration should be denied.

### INTRODUCTION

The DOJ frequently states that this case has been pending for years. <u>See</u>, <u>e.g.</u>, Doc. No. [395-1] at 1.  All the while, the DOJ has wrongly claimed that

"thousands of [unidentified] public school students" in Georgia face "ongoing harm" from local officials' decisions on where some students should receive educational services and how local school districts choose to spend state grants for the Georgia Network for Educational and Therapeutic Support Program ("GNETS"). Despite this passage of time and its claims of significant and ongoing harm, the DOJ has yet to formally articulate what remedy it plans to ask this Court to impose on the State of Georgia. Instead, the DOJ continues to conclusively state, with no factual basis in support, that the State of Georgia "could reasonably modify its service delivery system to better support students with behavior-related disabilities and help them remain in integrated settings." Doc. No. [439-1] at 2.

Notwithstanding the certainty with which the DOJ claims Georgia schools can and should adopt its undisclosed policy preferences, the first glimpse the State received as to any actual proposal occurred when the DOJ filed Dr. Robert Putnam's report at 10:41 p.m. on June 16, 2023. Doc. No. [428-1]. There, Dr. Putnam made at least six policy recommendations, including expanding Georgia's Apex Program, which is partially funded by the Medicaid program. (Id. at 55-60.) The June disclosure represented the first time Georgia could evaluate a prima facie element of DOJ's case. See Doc. No. [438] at 3-4, 9 (acknowledging that the proffer of a reasonable accommodation is a prima facie element of an ADA claim.) At that time, fact discovery had been closed for just over three months. Doc. No.

[376] at 1 (amended scheduling order extending fact discovery through and including March 10, 2023).

Partially in response to Dr. Putnam's mid-June revelation, the State turned to Dante McKay ("McKay"). Since February 2016, McKay has served as the Director of DBHDD's Office of Children, Young Adults, and Families. Doc. No. [429-10] at 1. He has held that position for almost the entirety of Apex Program's existence. See Jan. 27, 2022 Dep. of D. McKay at 21:23-22:1; 50:2-3. The DOJ describes McKay "as one of the State employees most knowledgeable about Apex." Doc. No. [439-1] at 4.

At the time (again, after the close of extended fact discovery) McKay had not performed the cost analysis contained in the Declaration. Doc. No. [429-10]. This makes sense. The State was not required to perform an analysis in response to the DOJ's discovery request to produce *existing* documents. Nor did the State have any ability to predict what remedy the DOJ (or its proffered experts) would seek. Consequently, the State did not possess the Declaration until November 6, 2023. (Aff. of J. Belinfante, Ex. 1.)[1] This is confirmed by McKay's signature on the Declaration. Doc. No. [429] at 5. Once in its possession, the State filed the Declaration as an exhibit the following day. This issue is no more complex than that.

---

[1] The affidavit of Josh Belinfante is attached as "Exhibit 1."

As importantly, during fact discovery, the DOJ obtained information sufficient to conduct its own analysis on Apex expansion (or have its experts do so). For example, the DOJ had model Apex Program provider contracts. (See, Dep. of R. Putnam, Ex. 12A, US0013064-0013091, attached hereto as "Exhibit 2"; Dep. of R. Putnam at 224:11-14, 227:17-19 (referencing other Apex provider contracts reviewed.)) It had two opportunities to depose McKay, Doc. Nos. [404; 451], and one opportunity to depose former DBHDD Commissioner Judy Fitzgerald. Doc. No. [413]. In all three depositions, the DOJ asked numerous questions about the Apex Program and presented documentary evidence about the same. (See, e.g., Dep. of J. Fitzgerald, Ex. 371, attached hereto as "Exhibit 3"; Dep. of J. Fitzgerald, Ex. 374, attached hereto as "Exhibit 4"; Jan. 27, 2022 Dep. of D. McKay, Ex. 21, attached hereto as "Exhibit 5"; Jan. 27, 2022 Dep. of D. McKay, Ex. 10, attached hereto as "Exhibit 6"; March 9, 2023 Dep. of D. McKay, Ex. 978, attached hereto as "Exhibit 7.") Despite its access to this information, and as learned by the State only at the time of the depositions of Drs. Putnam and McCart, the DOJ and its experts chose to analyze the projected cost of the experts' proposals. In sum, the DOJ only recently disclosed a key element of its prima facie case (a proffered reasonable accommodation) despite having access to relevant information. Despite that the delay was caused exclusively by the DOJ, it now seeks to prevent this Court from considering the Declaration at summary judgment. Doc. No. [439]. The

reason is obvious. The DOJ and its experts' failure to perform any kind of cost and workforce analysis for Dr. Putnam's proposal to expand Medicaid services into each of Georgia's 2,306 public schools matters.[2] Binding precedent identifies cost and workforce concerns as necessary elements of a "reasonable" accommodation. See Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 606 n.16 (1999).

In a misguided attempt to prevent this Court's consideration of the projected cost of $219.5 million in state funds to implement Dr. Putnam's purported "reasonable accommodation," Doc. No. [429-10] at 3, the DOJ articulates three arguments based on Federal Rules of Procedure 56, 702, and 26(e).   Doc. No. [439]. Each lacks merit. The Court should deny DOJ's Motion and consider the Declaration in its entirety.[3]

**ARGUMENT**

**I.    The Declaration is Proper Pursuant to FRCP 56**

---

[2] Doc. No. [429-1] at 10; available at https://www.gadoe.org/External-Affairs-and-Policy/communications/Pages/Quick-Facts-on-Georgia-Education.aspx

[3] As discussed more fully in the State's forthcoming Reply Brief in Support of its Motion for Summary Judgment, and to a lesser extent in its Reply Brief in Support of the Motion to Exclude the Testimony of Robert Putnam, even if this Court were to strike the Declaration, DOJ does not overcome summary judgment. It admits that establishing the reasonableness of its proposed remedy is part of *its* prima facie case. Doc. No. [438] at 3-4, 9. And the DOJ failed to satisfy this burden by not providing any evidence of cost or workforce considerations to allow the Court to evaluate whether the proposed remedy is reasonable. The absence of this evidence warrants granting summary judgment in the Eleventh Circuit. See Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1086 (11th Cir. 2007); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116, 1127 n.17 (11th Cir. 1993).

FRCP 56(c)(4) provides three requirements for a declaration to be considered at summary judgment. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FRCP 56(c).

The Declaration easily satisfies each of these requirements. First, it is made on McKay's personal knowledge. "In my position, I have acquired firsthand knowledge of the business operations within DBHDD." Decl. at ¶ 2. Indeed, DOJ's Motion recognizes McKay's vast personal knowledge of DBHDD's Apex Program: it concedes that "[McKay] demonstrated his detailed understanding of the Apex Program, such as the funding sources for multiple expansions of the program." Doc. No. [439-1] at 4. The DOJ knows this; it describes McKay "as one of the State employees most knowledgeable about Apex." Doc. No. [439-1] at 4.[4] Thus, the DOJ's own admissions establish that the Declaration satisfies the first requirement of Rule 56.

Second, the Declaration is based on admissible, specific information McKay gained through his own personal experience with the Apex Program as well as data and information he has obtained through his professional endeavors. As McKay

---

[4] Indeed, it is notable that DOJ considers McKay's knowledge on Apex so substantial that he should be deemed an expert. *See generally*, Doc. No. [439-1] at 11-13.

affirmed, "[i]n my position, I have acquired firsthand knowledge of the business operations within DBHDD." Decl. at ¶ 2. Should McKay be called at trial, the information on which his testimony is based would be admissible because McKay himself would be able to lay the foundation for such information and be able to testify based on his personal knowledge of such information.

DOJ's argument to the contrary is wholly speculative and, therefore, unavailing. For example, DOJ presumes that "McKay's opinion about the cost estimate regarding Apex expansion *is likely* also inadmissible on hearsay grounds." Doc. No. [439-1] at 20. (emphasis added). DOJ further claims, "*[t]o the extent that* he does not have personal knowledge related to information about workforce availability and the development of the cost estimate and instead relies on statements provided to him by others, his Declaration is inadmissible." Doc. No. [439-1] at 21. (emphasis added.) DOJ even asks this Court to exclude the Declaration on hearsay grounds though it has offered no evidence beyond its own speculation that the Declaration is based on hearsay. Doc. No. [439-1] at 22. The Court should decline to exclude the Declaration based on DOJ's unfounded speculations and presumptions of inadmissibility.

In addition, the fact that the cost estimate to which McKay refers "does not appear in the State's production" also does not require exclusion of the Declaration. Doc. No. [439-1] at 21. Once again, DOJ concedes this statement is

speculative. Doc. No. [439-1] at 21. In addition, beyond public information available online and through other resources, DOJ has had access to other information that could be used to provide some kind of cost analysis and that identifies workforce concerns, including two depositions of McKay. Doc. Nos. [404; 451]. If it felt otherwise, the DOJ certainly could have requested such documents during fact discovery. Finally, because McKay explained the basis of his analysis, the DOJ's concerns about underlying data go to the weight of the evidence and not its admissibility. See Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986). This is particularly true where, as here, the DOJ itself has acknowledged McKay's substantial personal knowledge of the Apex Program.

Lastly, DOJ does not argue that McKay lacks competency to testify on the Apex Program including barriers to its expansion. Nor could it. In addition to his personal knowledge, McKay possesses the legal requirements for competency to provide a declaration. He affirms that "I am over the age of 21 years, and I am under no legal disability which would prevent me from giving this declaration. If called to testify, I would testify under oath to these facts." Decl. at ¶ 1. Accordingly, the Declaration satisfies each of the requirements of Rule 56 for declarations in support of summary judgment and should not be excluded.

## II.    The Declaration Does Not Contain Expert Opinions

In undeniable tension with its claim that McKay lacks personal knowledge to complete the Declaration, DOJ next wrongly argues that McKay is an undisclosed expert witness that should be excluded (e.g., stricken). This is a nonstarter. The State has never needed to disclose McKay as an expert witness, and the Declaration does not contain expert opinion testimony. Here again, the DOJ's attempt to strike or exclude the Declaration is meritless.

As an initial matter, considerations of a fact witness' opinion testimony is governed by Federal Rule of Evidence 701 and not Rule 702 as the DOJ erroneously asserts. Doc. No. [Doc. 439-1] at 11-14. Federal Rule of Evidence 701 allows a lay witness to offer opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

The Advisory Committee notes for Rule 701 provides relevant examples. They explain that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." The Advisory Committee continued: "[s]uch opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, *but*

*because of the particularized knowledge that the witness has by virtue of his or her position in the business*." Fed. R. Evid. 701, Advisory Committee notes (emphasis added).

The Eleventh Circuit has adopted the Advisory Committee's flexible approach. "Notably, Rule 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from their own personal experiences." United States v. Estrada, 969 F.3d 1245, 1270–71 (11th Cir. 2020) (quoting United States v. Jeri, 869 F.3d 1247, 1265 (11th Cir. 2017).) In another opinion, the Eleventh Circuit affirmed the district court's decision to allow lay testimony garnered "by virtue of [the lay witness's] position in the business." Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1218 (11th Cir. 2003). There, the Court agreed with the trial judge's reasoning that:

> He's the project manager. He's a superintendent, whatever you want to call him. He oversaw the project. From what I can glean from his testimony, this is his business. This is what he does for Tampa Bay.... [H]e makes estimates, sets prices. That's what he does. And obviously, he's accountable for that. Based on his testimony, if he is to be believed ... he was quite concerned towards the end there that there was all this ... work that was not going to be paid for. But it seems to me that by virtue of his position in the business, he should be able to testify that the hours that I estimated and the work that I've charged for is reasonable. So I'm going to go ahead and let him testify.

Id.

Similarly, a lay witness could properly opine about future lost revenues at his own restaurant based on "historical perspective of a specific franchise, based on facts within the witness's own personal knowledge." Tim Hortons USA, Inc. v. Singh, No. 16-23041-CIV, 2017 WL 4837552, at *15 (S.D. Fla. Oct. 25, 2017) (noting instead that "this type of an opinion was not presented in this case… Rather, this lay witness opined like an economist, without actual knowledge 'on the ground' of what is happening at this store.)

Despite this binding and persuasive authority, the DOJ claims, without citation to any authority, that McKay's status—being in DBHDD's "leadership" and "access to the specialized information required to generate a cost estimate"— transformed his testimony into expert opinion. Doc. No [439-1] at 13. Putting aside that the DOJ does not articulate or identify what "specialized information" McKay utilized, the law in the Eleventh Circuit is actually the opposite of DOJ's description. See United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005); Rementer v. United States, 8:14-CV-642-T-17MAP, 2017 WL 1095054, at *21 (M.D. Fla. Mar. 21, 2017) (citing Henderson 409 F.3d at 1300). In Henderson, the Eleventh Circuit affirmed the treatment of a surgeon's testimony about the diagnoses she reached with a patient for whom she had first-hand knowledge. 409 F.3d at 1300. Clearly, the ability to make a diagnosis involves some specialized skill, but the court decided that the testimony satisfied Rule 701's standard. Id.

The Middle District of Florida recognized that the <u>Henderson</u> decision allows lay witness to testify about "expert facts" if the testimony represents "an account of [the witness's] observations … or it is offered for the purpose of explaining the [witness's] decision making process." <u>Rementer</u>, 2017 WL at * 21 (addressing physician testifying as a lay witness) (citing <u>Henderson</u>, 409 F.3d at 1300).

Thus, like the role of the business owner contemplated by the Advisory Committee notes for Rule 701 and <u>Tim Hortons USA</u>, the project manager in <u>Tampa Bay</u>, or the physicians in <u>Henderson</u> and <u>Rementer</u>, McKay's experience as the Director of DBHDD's Office of Children, Young Adults and Families (the office that oversees the Apex Program) makes him qualified to testify about the Apex Program, but it does not mean he can only do so as an expert witness. Just like the business owner providing lay testimony about potential lost revenue, McKay can and should be able to estimate the cost to expand the program he oversees based on his own knowledge and experience with it. He is not being asked, for example, to use his experience in Georgia to opine on other states' school-based mental health programs. Nor is a question about cost or workforce a hypothetical one that requires expert testimony any more than lay testimony about financial calculations of lost profits. [5]

---

[5] The DOJ's reliance on <u>Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC</u>, 71 F.4th 894, 906 (11th Cir. 2023) is misplaced.  There, the witness was asked the hypothetical question: what caused the [92-foot yacht] *My Lady* to sink

Next, DOJ asks this Court to create new law by imposing an absolute rule that allows only experts to testify about "potential barriers to the future expansion of a government program." Doc. No. [439-1] at 12. The DOJ cites no authority for this sweeping proposition, and this Court should decline the invitation to impose such unsupported standards. This is especially true when, as here, the DOJ has not identified what would constitute the "specialized knowledge" found in unidentified "data, background assumptions, and formulas," why such information would be necessary to determine cost, or why it would be no different from the financial lay testimony previously deemed admissible in binding precedent.

More importantly, binding precedent has again considered and rejected the DOJ's argument. Specifically, lay testimony based on knowledge acquired from experience is admissible as non-expert opinions. See, Estrada, 969 F.3d at 1270–71 (deeming admissible lay testimony about government policy); Tampa Bay

---

or what professional captains or crews might have done to change the outcome. "*Indeed, the question here is what experts would have done differently to avoid the accident.*" (emphasis added). Travelers concerns what is obviously and objectively technical testimony requiring an expert to provide an opinion on what caused a ship to sink to the bottom of the sea and what could have prevented it. In contrast, McKay's Declaration relies on his own knowledge and experience with the Apex Program, which his office oversees, to provide testimony on the expansion of the Program. In addition, the Eleventh Circuit no longer applies a bright line rule that forbids lay witnesses from answering hypothetical questions. See United States v. Hill, 643 F.3d 807, 842 (11th Cir. 2011); Handley v. Werner Enterprises, Inc., 596 F. Supp. 3d 1353, 1359 (M.D. Ga. 2022) (recognizing the circuit court's acceptance of lay witnesses answering hypothetical questions) (citing Hill 643 F.3d at 842).

Shipbuilding, 320 F.3d at 1218; see also, First Annapolis Bancorp, Inc. v. United States, 72 Fed. Cl. 204, 207 (2006) ("Not all lay witnesses offering opinions that require specialized knowledge or experience have to qualify under Federal Rule of Evidence 702. A lay witness can offer opinion testimony based on first-hand knowledge once the Court determines that a witness has the requisite specialized knowledge or experience to offer the opinion.") (internal citation omitted).

In the light of this authority, the DOJ's arguments about workforce analysis fail as well. As with its other arguments, the DOJ cannot identify what specialized knowledge is necessary to convert McKay's lay testimony into expert testimony. Doc. No. [439-1] at 12-13. The Eleventh Circuit does not appear to have addressed this precise consideration of workforce availability in the context of opinion testimony.  Other circuits, however, have admitted lay testimony where: "it requires no great leap of logic and draws straightforward conclusions from observations informed by the witness's own experience." United States v. Masha, 990 F.3d 436, 445 (5th Cir. 2021) (citing United States v. Riddle, 103 F.3d 423, 428 (5th Cir. 1997)) (lay witness testimony by defendant's friend identifying defendant in surveillance picture and passport photos held admissible.) Indeed, "[l]ay opinion testimony is admissible if the witness bases his or her opinion on personal or firsthand knowledge, has a rational basis for the opinion, and the

opinion is helpful to the determination of a fact at issue." Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1198 (3d Cir.1995).

Such is the case here. McKay is a longtime DBHDD employee who has spent a significant portion of his career in this field, which provides him with the experience needed to testify about cost, workforce availability, and their impact on expansion of mental health services in Georgia. McKay's opinion is a "straightforward conclusion" drawn from McKay's own perceptions and experiences in the field of mental health. Masha, 990 F.3d at 445. Such testimony is undoubtedly admissible at summary judgment.

Lastly, it is no secret—particularly to DOJ—that Georgia continues to suffer from a well-documented and ongoing workforce shortage of mental health professionals in this State. (Georgia Apex Program Annual Evaluation Results, Doc. No. [428-5] at GA05558537, -8542, -8561, -8565, -8569, -8572; Doc. No. [428-4].) Indeed, McKay testified extensively about the shortage during these depositions. See, e.g., Jan. 27, 2022 Dep. of D. McKay at 114:11-115:3, 72:6-19; 95:9-522; March 9, 2023 Dep. of D. McKay at 110:19-25; 113:25-114:3. Thus, the issue should not surprise the DOJ, nor is it prejudiced by the testimony in the light of McKay's deposition testimony. See Passmore v. Travelers Cas. & Sur. Co., No. 2:19-CV-59, 2021 WL 12103008, at *6 (S.D. Ga. Apr. 16, 2021) (citing Complete Gen. Const. Co. v. Occupational Safety & Health Rev. Comm'n, 53 F.3d 331 (6th

Cir. 1995) ("lay opinion on matters appropriate for expert testimony may be admissible if it is based on a witness's personal knowledge, is one a 'normal person would form from those perceptions,' and if the opinion is helpful in determining the facts.")

### III.    The State Complied With Its Rule 26 Obligations.

DOJ also argues that Rule 26 of the Federal Rules of Civil Procedure requires striking the Declaration because McKay's cost estimate was not disclosed during discovery.[6] Specifically, DOJ relies on McKay's testimony during two depositions, and the DOJ's Fifth Request for Production of Documents. Doc. No. [439-1] at 5, 10-11.

As a threshold matter, the DOJ likely did not know that the State received the Declaration only the day before it filed it into the record. (Ex. 1.) Thus, even presuming the State had an obligation to produce the Declaration, it did so on a timely basis. This should end the inquiry.

DOJ's claim that the State did not supplement McKay's deposition testimony fails for several reasons, both textual and precedential.[7] DOJ claims that FRCP 26(e) obligates the State to supplement a witness's *deposition testimony* if a document is later created and responsive to a question of counsel. Nothing in the

---

[6] The DOJ's Rule 26 argument is limited to McKay's cost analysis and not the consideration of available workforce. Doc. No. [439-1] at 7-18.

[7] DOJ does not seem to dispute the veracity of McKay's testimony when made.

text of FRCP 26(e) supports this contention. Indeed, the word "deposition" is nowhere in FRCP 26(e), which by its terms, is limited to FRCP 26(a) disclosures and written discovery:

> (1) In General. A party who has **made a disclosure** under Rule 26(a)--or who has responded to an **interrogatory**, **request for production**, or **request for admission**--must supplement or correct its disclosure or response:
>
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]

Fed. R. Civ. P. 26(e)(1) (emphasis added).

The obligation to supplement deposition testimony is limited to expert testimony: "[f]or an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given **during the expert's deposition**." Fed. R. Civ. P. 26(e)(2) (emphasis added). This demonstrates that Congress knows how to impose an ongoing duty to supplement deposition testimony, but it limited that obligation to expert testimony. This decision must be viewed as intentional. Animal Legal Def. Fund v. U.S. Dep't of Agric., 789 F.3d 1206, 1217 (11th Cir. 2015) ("Where Congress knows how to say something but chooses not to, its silence is controlling.") (citation omitted). At least one district court in this circuit agrees, and its reasoning should foreclose DOJ's contention about McKay's deposition

17

testimony. Sevi v. Nationstar Mortgage, LLC, 613CV1433ORL37KRS, 2015 WL 12861173, at *2 (M.D. Fla. Jan. 8, 2015) (citing 1993 Advisory Committee Notes).

DOJ next asserts that the State failed to supplement its response to written discovery, specifically Request No. 3 in the DOJ's Fifth Request for Production of Documents (the "RPD"). Doc. No. [439-1] at 11. The RPD seeks production of:

> All analyses, reports, memoranda, presentations, recommendations, or other documents that describe the actual cost, or possible cost, to the State of increasing access to and use of school-based behavioral health services in general education settings, including through the Georgia Apex program, **to divert children from placement in GNETS**.

(emphasis added). Putting aside that the State produced the evidence a day after it received it, the DOJ's contention fails for several other reasons.

First, the RPD contains an important narrowing descriptor that the DOJ failed to mention in its brief: the RPD seeks documents created for the purpose of "divert[ing] children from placement in GNETS." (Compare Doc. No. [439-3] at 6 (the RPD containing the phrase "to divert children from placement in GNETS"), with Doc. No. [439-1] at 5 n.3 (omitting phrase).) The State objected to the phrase as, among other things, vague and ambiguous. (Ex. 8 at 3-4.) Objections aside, the limitation renders the Declaration not responsive: it was not created for the purpose of considering how to "divert children from placement in GNETS." Doc. No. [439-1], Ex. B, p. 6. This alleviates any duty to supplement the State's response.

Second, the State maintained the objections it made to the RPD during discovery. These included that the RPD used phrases that were overly broad, and that the request contained no temporal limitation.[8] (Ex. 8 at 3-4.) The State did indicate that, "[s]ubject to and without waiving" its objections, it would produce documents it deems responsive. (Ex. 8 at 4.) The DOJ never challenged or sought to address these objections. As importantly, the State did not begin preparing the Declaration until after Dr. Putnam's deposition, and the State's counsel produced it the day after it received it. Thus, there was nothing to produce, but if a cost estimate were performed, the State maintained its objections to the production.

Third, the Eleventh Circuit appears not to have decided that FRCP 26(e)'s duty to supplement written discovery responses with responsive information continues after discovery closes. See Bahr v. NCL (Bahamas) Ltd., 19-CV-22973, 2022 WL 293255, at *3 (S.D. Fla. Feb. 1, 2022) (citing persuasive authority but nothing from the Eleventh Circuit). Thus, it is unclear whether the State would be required to produce the Declaration under Rule 26(e) at all.

Fourth, the State reasonably expected Dr. Putnam to have considered cost in his analysis. He did not, which became clear only after his September 7, 2023 deposition. (Dep. of R. Putnam at 97:6-10; 88:8-12; 282:11-16.) Thus, if anything

---

[8] The State is attaching a true and accurate copy of its discovery responses as "Exhibit 8."

is to blame for the timing of the State's production, it is the DOJ's decision to not disclose its proposed remedies and the analysis supporting (or not supporting) them until a month before summary judgment and well after the close of fact discovery.

Finally, under these circumstances, the DOJ cannot show prejudice. It chose not to identify its remedies and then rely on a putative expert report that failed to conduct requisite analysis. Moreover, the DOJ has had information about the Apex Program—including financial information and statements of workforce concerns—throughout discovery.

## CONCLUSION

For the reasons described herein, the Motion should be denied.

Respectfully submitted, this 5th day of December, 2022.

| | |
|---|---|
| | */s/ Josh Belinfante* |
| Christopher M. Carr    112505 | Josh Belinfante         047399 |
| *Attorney General* | Melanie Johnson         466759 |
| Bryan Webb             743580 | Edward A. Bedard        926148 |
| *Deputy Attorney General* | Javier Pico Prats        664717 |
| Russell D. Willard      760280 | Danielle Hernandez      736830 |
| *Sr. Assistant Attorney General* | Anna Edmondson          289667 |
| Susan R. Haynes         901269 | ROBBINS ALLOY BELINFANTE |
| *Assistant Attorney General* |     LITTLEFIELD, LLC |
| Office of the Attorney General | 500 14th St. NW |
| 40 Capitol Square, SW | Atlanta, GA 30318 |
| Atlanta, Georgia 30334 | T: (678) 701-9381 |
| | F: (404) 856-3255 |
| | E: jbelinfante@robbinsfirm.com |
| |     mjohnson@robbinsfirm.com |
| |     ebedard@robbinsfirm.com |
| |     jpicoprats@robbinsfirm.com |
| |     dhernandez@robbinsfirm.com |

aedmondson@robbinsfirm.com

Alexa R. Ross          614986
AlexaRossLaw, LLC
2657 Danforth Lane
Decatur, Georgia 30033
E: alexarross@icloud.com

*Special Assistant Attorneys General*

*Attorneys for Defendant*
*State of Georgia*

## LOCAL RULE 7.1(D) CERTIFICATION

I certify that this **STATE OF GEORGIA'S RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE DECLARATION OF DANTE MCKAY** has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, this document has been prepared using 14-pt Times New Roman font and type.

_/s/ Josh Belinfante_
Josh Belinfante