# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STATE OF GEORGIA, ) <br> ) <br> Defendant. ) | CIVIL ACTION FILE <br><br> NO. 1:16-CV-03088-ELR |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. ROBERT PUTNAM**

Defendant State of Georgia submits this Reply Brief in Support of the Motion to Exclude Testimony of Dr. Robert Putnam ("Putnam Motion"). The DOJ has not provided this Court with a sound basis to deny the Putnam Motion.[1] Instead, the DOJ conceded key points that render inadmissible Dr. Putnam's testimony on reasonableness and appropriate services.

While not exactly clear, it appears that the DOJ still seeks to use Dr. Putnam's testimony for at least three impermissible reasons: (1) the reasonableness of his proposed accommodations; (2) the adequacy of services provided to students with behavior-related disabilities; and (3) the quantity of those services. These issues are central to the DOJ's theory of liability. Indeed, the DOJ acknowledges that showing the reasonableness of any proffered accommodation is part of the DOJ's "*prima facie* case." (Doc. No. [438] at 3-4, 9.) Consequently, the DOJ seeks to use Dr. Putnam's testimony to achieve these ends. (Doc. No. [438] at 6.) Rule 702 and the cases that apply it indicate that it cannot.[2]

---

[1] This Reply Brief adopts the same references as those in the Putnam Motion. Doc. No. [428].

[2] There is not much difference between the standard under Rule 702 articulated by the DOJ and by the State. The DOJ alone argues that the application of Rule 702's gatekeeper function is relaxed in a bench trial like this one. (Doc. No. [438] at 2-3 (citing United States v. Brown, 415 F.3d 1257, 1268-69 (11th Cir. 2005).) The DOJ's contention, however, has been limited by later decisions of the Eleventh Circuit that applied Brown as narrowing

1. **<u>Reasonable Accommodation.</u>**

Dr. Putnam's opinions on the "reasonableness" of his proposed accommodations should be excluded for two reasons. First, he recommended expansion of Medicaid-reimbursed services but failed to consider the requisite elements of cost and workforce. Precedent and Dr. Putnam acknowledge these are necessary factors to evaluate reasonableness. Second, despite recommending that the DOE provide additional training on PBIS, Dr. Putnam wrongly presumed that the DOE could compel local school districts to adopt the service model.

When considering whether Dr. Putnam offers admissible testimony on "reasonableness," it is important to narrow the areas of disagreement between the DOJ and the State. Both parties agree that Title II requires a plaintiff to show that any accommodation they propose is "reasonable." (Doc. No. [438] at 3-4, 6, 9-10, 12.) See <u>Olmstead v. L.C. ex rel. Zimring</u>, 527 U.S. 581, 606 n.16 (1999).[3] The DOJ does not challenge (nor can it) that the plurality's decision in <u>Olmstead</u> specifically identifies cost and workforce

---

appellate review and not excusing the application of Rule 702 in all bench trials. <u>In re Teltronics, Inc.</u>, 904 F.3d 1303, 1311 (11th Cir. 2018).
[3] The DOJ does not contest that Justice Kennedy's concurring opinion is the controlling opinion in the <u>Olmstead</u> decision. See <u>United States v. Mississippi</u>, 82 F.4th 387, 394 n.11 (5th Cir. 2023) (citing <u>Marks v. United States</u>, 430 U.S. 188, 193 (1977)).

concerns as necessary elements of what constitutes a "reasonable modification." Id.

It is also undisputed that Dr. Putnam neither performed nor reviewed any workforce or cost analyses. (Doc. No. [438] at 14-15.) And, the DOJ does not challenge Dr. Putnam's own testimony that workforce and cost are highly relevant considerations of reasonableness and appropriateness. (Putnam Dep. 71:20-25, 137:2-6.)[4] Finally, the DOJ does not dispute or address that Dr. Putnam misunderstood the DOE's authority when recommending enhanced training. See Doc. No. [438] at 24-25.

These omissions and error matter. The DOJ disagrees, but it offers only scant and irrelevant arguments to the contrary. It ignores Dr. Putnam's fundamental misunderstanding about DOE's ability to compel local school districts to adopt PBIS or accept training from the DOE. In addition, the DOJ describes Dr. Putnam's opinions on reasonableness as "central" to the case. (Doc. No. [438] at 9, 14-15 n.2.) But, it dedicates only a paragraph to defending his decision to ignore cost and workforce considerations. The

---

[4] The DOJ implies, without citation to any authority, that the State was required to plead the fundamental alteration defense as part of its answer. This is incorrect. The State was not obligated to do so in light of DOJ's failure to clearly identify the remedy it is seeking. See Brooklyn Ctr. for Independence of Disabled v. Bloomberg, 980 F.2d 588, 657 (S.D.N.Y. 2023)("it would have been improper for the State to assert the defense when, as here, the plaintiff "did not propose any specific accommodations.").

paragraph discussion wrongly misdirects the Court's focus to summary judgment burdens, which is a red herring. (Doc. No. [438] at 14-15 n.2.) In sum, these arguments do not save Dr. Putnam's testimony.

First, the DOJ's attempt to connect its burden on summary judgment to the admissibility of Dr. Putnam's testimony is weak at best. While the lack of evidence of reasonableness is addressed in the State's Motion for Summary Judgment (Doc. No. [429-1] at 24-32), the question presented in this Motion is whether—standing alone—Dr. Putnam can opine on reasonableness when his report did not consider undisputed requisite elements of it.[5] The answer is "no."

Second, even if the summary judgment standard were relevant to the admissibility of Dr. Putnam's testimony, the DOJ's contention is erroneous and based on only distinguishable, non-binding authority. (Doc. No. [438] at 14-15 n.2.) Controlling precedent from the Eleventh Circuit has recognized that even in ADA cases, at summary judgment, the moving party need only show an absence of evidence. See Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1086 (11th Cir. 2007); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116, 1127 n.17 (11th Cir. 1993). District courts in this circuit have had no issue

---

[5] "A Daubert motion is not a backdoor means of achieving a second bite at the summary judgment apple." Kirksey v. Schindler Elevator Corp., CV 15-0115-WS-N, 2016 WL 5213928, at *3 n.3 (S.D. Ala. Sept. 21, 2016).

implementing this rule.  See, e.g., Thatcher v. Dep't of Veterans Affairs, 8:17-CV-3061-T-AEP, 2020 WL 2838849, at *15 (M.D. Fla. June 1, 2020), aff'd, 20-12476, 2021 WL 4940824 (11th Cir. Oct. 22, 2021); Richardson v. Honda Mfg. of Alabama, LLC, 635 F. Supp. 2d 1261, 1279 (N.D. Ala. 2009).  Thus, it is relevant that Dr. Putnam failed to provide a complete analysis of reasonableness, and it warrants excluding his testimony.

Third, because Dr. Putnam's opinion on reasonableness failed to consider the necessary elements of cost and workforce, his testimony would be irrelevant and unhelpful to answering the question of whether his policy suggestions would satisfy the DOJ's prima facie burden of showing its proposed remedy of expanding Medicaid are reasonable.  Courts have excluded the testimony of other proffered experts, whose opinions are like Dr. Putnam's and apply the wrong, different, or incomplete legal standard.  Long v. Raymond Corp., 245 Fed. Appx. 912, 916 (11th Cir. 2007).  For example, in Long, the Eleventh Circuit affirmed a district court's application of Rule 702 to exclude expert testimony when the witness did not opine on the relevant elements of the case.  Id.  This reasoning applies equally to Dr. Putnam, who seeks to testify about reasonable accommodations but did not analyze material considerations.

Finally, Dr. Putnam's mistaken beliefs that the DOE could potentially hire and fire local school principals or could compel local school districts to adopt PBIS render his opinions about the reasonableness of expanding PBIS unreliable. (Putnam Rep. at 62.) Contrary to Dr. Putnam's presumptions (and not challenged by the DOJ), the DOE is authorized only to "encourage[]" local school districts to employ PBIS strategies, O.C.G.A. § 20-2-741(b), and it cannot hire or fire local school principals for any reason, including opposition to PBIS expansion. (Lazari Dep. at 65: 18-24; Cleveland Dep. at 146:14-23; Ngeve Dep. at 128:3-131:18; Low Dep. at 195:16-17; Ackerman Dep. at 85:4-7.) The DOJ wrongly claims this mistake has "little bearing" on his opinions. (Doc. No. [438] at 24.) But presuming the DOE can mandate training and enforce the mandate through hiring and firing practices, Dr. Putnam's belief in the reasonableness of his recommendation is not based in reality and, consequently, unreliable and inadmissible.

### 2. Dr. Putnam's Generalized Analysis Is Inadmissible On The Question Of What Constitutes "Appropriate" Services.

Similar to the issue of reasonableness, Dr. Putnam should be precluded from offering testimony on whether the State has purportedly "failed to provide [appropriate] services and supports in sufficient amount or intensity to students who need them; [and] that this failure results in students unnecessarily being placed in the GNETS Program" or at-risk of entering the

-6-

GNETS Program. (Doc. No. [438] at 6.) The reason is straightforward. Considerations of what constitutes an appropriate service necessarily turns on the unique needs of each, individual student.[6] Moreover, even when students are afforded the full range of services, separate settings may still be appropriate. Dr. Putnam agrees with both of these points. (Putnam Dep. 19:18-21; 63:1-16; 121-15-18.) The DOJ does not dispute them either. (Doc. No. [438] at 10-13). In other words, by conceding that the type of service, as well as its amount and intensity, are individualized determinations, Dr. Putnam's methodology (conducting a generalized analysis and examining only seven individual student files) falls well short of the requirements of Rule 702. This is because the Court cannot determine, from such a generalized approach, whether any student received appropriate services or whether a separate setting is appropriate.

Thus, the question is whether Dr. Putnam can testify about whether Georgia students receive "appropriate services," and if not, whether the provision of those services would have prevented non-party local officials

---

[6] This may be a non-issue. Contrary to Dr. Putnam's report and the DOJ's Response in Opposition to the Putnam Motion, the DOJ's Response in Opposition to the State's Motion for Summary Judgment states that "Dr. Putnam did not directly opine on appropriateness." (Doc. No. 448-1 at 16 n.17.) If he does not testify about whether students in Georgia are denied either "appropriate" services, or an appropriate amount or intensity of those services, this issue may be moot.

from recommending GNETS services for the individual student. Because this is a fact-specific individualized inquiry, the answer is "no."

### a. Dr. Putnam's Generalized Review Is Inadmissible On The Question of "Appropriate" Services.

The DOJ seeks to use Dr. Putnam's opinions to contend that the State does not provide behavior-related services "**appropriate** to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d) (emphasis added). It is well established that questions of what constitutes "appropriate" services in ADA claims require an individualized inquiry into the unique needs of individual persons and not a generalized approach. Congress said so by limiting Title II to considerations of a "qualified **individual** with a disability." 42 U.S.C.A. § 12132 (emphasis added). The Olmstead plurality did as well by limiting its "appropriateness" analysis to the particular services needed by the two named plaintiffs. 527 U.S. at 603. The Fifth Circuit recently recognized this when considering a similar, generalized claim by the DOJ: "'[a]ppropriate' treatment of those with serious mental illness, as Olmstead clearly understood, must be individualized." United States v. Mississippi, 82 F.4th 387, 396 (5th Cir. 2023).[7]

---

[7] In its response to the State's Motion for Summary Judgment, the DOJ claimed that the "case law makes clear" that an individualized inquiry is not required. (Doc. No. [441-1] at 14.) The weight of this "case law" is apparently limited to one, reversed district court decision from New York. See Disability Advocates, Inc. v. Paterson, 653 F. Supp. 2d 184, 258 (E.D.N.Y. 2009),

-8-

Unlike the DOJ, Dr. Putnam does not disagree with the Supreme Court or the Fifth Circuit; he testified that questions of "appropriate services" necessarily turn on the specific needs of individual children. (Putnam Dep. 19:18-21; 63:1-16; 121:15-8). His discussion is supported by his analysis of seven student files. Specifically, Dr. Putnam testified that providing more Medicaid-reimbursable services might not have (1) prevented some of the students from being recommended for GNETS services or (2) shortened the time that they received those services. (Putnam Dep. 262:19-264:7; 265:4-17.) Thus, courts' concerns about generalized analysis is demonstrated by Dr. Putnam's own words.

Despite its position in this case, even the DOJ recently and implicitly agreed with the centrality of considering individual's needs. United States v. Florida, 12-CV-60460, 2023 WL 4546188, at *40 (S.D. Fla. July 14, 2023). In the Florida case, the DOJ alleged that the State of Florida violated Title II by

---

vacated sub nom. Disability Advocates, Inc. v. New York Coal. for Quality Assisted Living, Inc., 675 F.3d 149 (2d Cir. 2012), and vacated sub nom. Disability Advocates, Inc. v. New York Coal. for Quality Assisted Living, Inc., 675 F.3d 149 (2d Cir. 2012). As will be addressed more fully in the State's Reply in Support of its Motion for Summary Judgment, the Second Circuit reversed the district court on standing after deciding that the plaintiff organization did not have associational standing. Id. This is another implicit rejection of the generalized and distinguishable approach of the Paterson district court. Whatever the import of the Paterson district court opinion may be, it is inconsistent with Olmstead, which controls, and far less persuasive than the more recent decision of United States v. Mississippi.

unnecessarily segregating medically fragile children in what it called "institutional settings." Id. at *2-3.  There, the DOJ's proffered experts did exactly what Dr. Putnam did not: "conducted an **individualized review** of the medical records of all 139 Institutionalized Children" and opined that each child could be served in a general setting given appropriate services to the child's unique needs.  Id. at *40-41 (emphasis added). Dr. Putnam's analysis falls well short of this, despite reaching essentially the same conclusion.

Indeed, the DOJ's Response does not defend Dr. Putnam's generalized approach.  (Doc. No. [438] at 12-13.)  Instead, it contends that the State's decision to raise the legal requirement of individual reviews "distorts the clear focus of Dr. Putnam's opinion, which is to establish the effectiveness" of certain services for students with behavior-related disabilities.  (Id. at 12.)

This claim contradicts DOJ's positions in the Response and subsequent pleadings.  DOJ's Response identifies no less than six opinions of Dr. Putnam, including testimony about the "sufficient amount or intensity" of services that individual students "need."  (Id. at 6.)  Its Response to the State's Motion for Summary Judgment also cites Dr. Putnam's report for the proposition that some unquantified number of unnamed students who were referred by their IEP Team for GNETS services "might otherwise have been able to remain in general education settings if provided the appropriate

-10-

services and supports." (Doc. No. [448-1] at 17 n.17.)  For purposes of the Putnam Motion, however, the DOJ's decision not to address the individual review requirement imposed by precedent effectively waives any challenge.

Finally, the Putnam Motion is consistent with precedent.  The relevant inquiry on reasonableness is set forth in the ADA, the Olmstead decisions (Justice Kennedy's concurrence and, to a lesser extent, the plurality opinion), and binding decisions of the Eleventh Circuit.  This authority establishes that any determination of appropriateness must be based on individual needs, which Dr. Putnam did not consider.  Consequently, either applying his wrong definition of "appropriate" or ignoring some of its central elements, as Dr. Putnam does, the testimony is irrelevant and unhelpful.  See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1028 (11th Cir. 2014).  In Dolgencorp, the court affirmed the district court's decision to deem expert testimony inadmissible when it addressed "the wrong problem [which does] not assist the trier of fact to determine a fact in issue in this case."  Id.  When it excluded proposed expert testimony, the Southern District put it this way: "By repeatedly using a standard-either in its regulatory sense or in its ordinary sense-that is decidedly at odds with the actual governing standard, Plaintiffs' experts' analysis and conclusions rest upon repeated and erroneous evaluations of Defendants' billing practices."  United States v. Aegis Therapies, Inc., CV 210-072, 2015 WL 1541491, at *8 (S.D. Ga. Mar. 31,

2015). As such, Dr. Putnam's testimony should be excluded from consideration on summary judgment and, if necessary, at trial.[8]

### b. Dr. Putnam's Generalized Review Is Inadmissible On The Question Of Reasonableness.

Because Dr. Putnam did not conduct any meaningful or statistically significant review of individual students' files, his testimony on the purported reasonableness of his proffered accommodations is inadmissible. As shown, the ADA, Olmstead, and its progeny require considerations of cost and workforce that Dr. Putnam ignored. This alone warrants excluding his testimony on reasonableness. Another reason for excluding such testimony is the binding Eleventh Circuit precedent that holds that reasonableness under the ADA is determined on a case-by-case basis and not the generalized approach adopted by Dr. Putnam. See Bircoll, 480 F.3d at 1086.

In Bircoll, the Eleventh Circuit considered the ADA's application to a police stop. Id. It affirmed the district court's grant of summary judgment, in part, because the deaf plaintiff did not demonstrate that providing auxiliary aids to help him understand what officers were asking of him constituted a reasonable accommodation. Id. In reaching this conclusion, the court held

---

[8] The DOJ does not challenge or address Eleventh Circuit precedent, cited in the Putnam Motion, that only admissible evidence can be considered on a motion for summary judgment. Chapman v. Provter & Gamble Distrib., LLC, 766 F.3d 1296, 1313 (11th Cir. 2014).

that "terms like reasonable are relative to the particular circumstances of the case … What is reasonable must be decided case-by-case based on numerous factors." Id.

Here, Dr. Putnam's report does not consider any "particular circumstances" of any individual student. Id. This alone is dispositive. If the Court looked beyond this critical omission, it should still exclude Dr. Putnam's opinions on the alleged reasonableness of his suggestions for an additional reason. Dr. Putnam acknowledges that some students may still need to "receive educational services … in a separate or segregated setting" even if provided with all appropriate services. (Putnam Dep. 63:9-16.) Only a review of individual student files could determine which students receiving GNETS services fell into this category and which did not. As it stands, Dr. Putnam's generalized review does not account for this reality and renders it unhelpful and unreliable. See Lizarazo, 2018 WL 8224943 at *3; Aegis Therapies, Inc., 2015 WL 1541491 at *8; Tharpe, 2012 WL 174844 at *5.

   c. Dr. Putnam's Methodology Is Flawed.

The DOJ attempts to save Dr. Putnam's generalized analysis by referring to his review of "statewide billing data for all Medicaid-reimbursed behavioral health services for children in Georgia between 2016 and 2021." (Putnam Rep. at 32; Doc. No. [438] at 17-18.) The attempt fails, because by limiting his analysis to Medicaid, Dr. Putnam ignored what he concedes:

-13-

students in general education settings may receive community-based services that are not billed to Medicaid or part of the Apex Program. (Putnam Dep. 75:6-20, 120:16-19, 136:1-14.) Dr. Putnam also acknowledged that his report did not track any behavioral health services that were not reimbursed by the Medicaid program. (Putnam Dep. 136:15-137:1.) In other words, Dr. Putnam's methodology is, by his own admission, glaringly incomplete.

This renders his generalized methodology fatally flawed and inadmissible. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 595 (1993) (considering methodology). For its part, the Eleventh Circuit has set forth four factors to consider when examining a putative expert's methodology: "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; (4) whether the technique is generally accepted by the scientific community." Rink v. Cheminova, Inc., 400 F.3d 1286, 1292 (11th Cir. 2005).

Dr. Putnam's method of examining utilization rates of Medicaid-funded services satisfies only the first criteria. He could not testify whether the methodology had ever been peer reviewed. (Putnam Dep. 99:19-23.) The report neither contained nor identified a rate of error (despite not omitting consideration of any services that were not reimbursed by Medicaid). And, there was no evidence that his methods have been approved by the academic

community.[9] Consequently, Dr. Putnam's Medicaid-only analysis does not provide a reason for the Court to ignore the binding precedent requiring individualized analysis in ADA cases. To the contrary, it provides an additional reason to prevent Dr. Putnam from testifying about whether appropriate services are offered.

## **CONCLUSION**

For each of these reasons, Dr. Putnam offers inadmissible opinions on (1) the reasonableness of his policy proposals for accommodation; and (2) whether appropriate services are offered to Georgia students with disability-related behaviors. Consequently, the State requests that this Court grant the Putnam Motion and deem such testimony inadmissible at summary judgment and, if necessary, at trial.

---

[9] The DOJ's Response in Opposition to the Putnam Motion describes his methodology as "well-established," but it offers the Court no citation to support this conclusory statement. (Doc. No. [438] at 2.) Under these circumstances, this Court is under no obligation to do the DOJ's work for it. Cf. Stephens v. GuideOne Mut. Ins. Co., 1:19-CV-05534-ELR, 2021 WL 9710959, at *1 (N.D. Ga. Oct. 15, 2021) (describing the Court's duty to consider citations to the record at summary judgment).

Respectfully submitted this 5th day of December, 2023.

<div style="columns:2">

Christopher M. Carr
*Attorney General*
Georgia Bar No. 112505
Bryan K. Webb
*Deputy Attorney General*
Georgia Bar No. 743580
Russell D. Willard
*Senior Assistant Attorney General*
Georgia Bar No. 760280
Susan R. Haynes
*Assistant Attorney General*
Georgia Bar No. 901269
Office of the Attorney General 40 Capitol Square, S.W. Atlanta, Georgia 30334 Telephone: (404) 656-3357

*/s/ Josh Belinfante*
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Melanie Johnson
Georgia Bar No. 466756
mjohnson@robbinsfirm.com
Edward Bedard
Georgia Bar No. 926148
ebedard@robbinsfirm.com
Danielle Hernandez
Georgia Bar No. 736830
dhernandez@robbinsfirm.com
Javier Pico Prats
Georgia Bar No. 664717
jpicoprats@robbinsfirm.com
Anna Edmondson
Georgia Bar No. 289667
aedmondson@robbinsfirm.com
**Robbins Alloy Belinfante Littlefield LLC**
500 14th Street NW
Atlanta, GA 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

Alexa R. Ross
Georgia Bar No. 614986
alexarross@icloud.com
**AlexaRossLaw, LLC**
2657 Danforth Lane
Decatur, Georgia 30033

Special Assistant Attorneys General
*Attorneys for Defendant*

</div>

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. ROBERT PUTNAM was prepared double-spaced in 13-point Century Schoolbook font, approved by the Court in Local Rule 5.1(C).

*/s/Josh Belinfante*
Josh Belinfante