UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATE OF GEORGIA, )<br>)<br>Defendant. ) | CIVIL ACTION FILE<br><br>NO. 1:16-CV-03088-ELR |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO
EXCLUDE TESTIMONY OF DR. AMY MCCART**

Defendant State of Georgia submits this Reply Brief in Support of the Motion to Exclude Testimony of Dr. Amy McCart (the "McCart Motion"). The DOJ's Response in Opposition to the McCart Motion (the "DOJ Response") misfires by relying on persuasive authority while ignoring binding precedent, and also by placing an improper overreliance on Dr. McCart's experience.[1] Consequently, the DOJ fails to demonstrate why Dr. McCart's testimony is admissible on the questions of (1) "unnecessary segregation;" (2) appropriate services; (3) reasonable accommodations; (4) the State's efforts to implement MTSS throughout the Georgia public schools; and (5) DOE's influence over local schools' administration of the GNETS Program.

### 1. **Unnecessary Segregation.**

The State and the DOJ agree that only "unjustified isolation" is actionable under the ADA. Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 597 (1999) (plurality). (Doc. No. [448-1] at 2.) Any thoughts to the contrary were resolved by Justice Kennedy's controlling concurrence that explicitly rejected the idea that, in the context of the ADA, "segregation and institutionalization are always discriminatory or that segregation or institutionalization are, by their nature, forms of prohibited discrimination."

---

[1] This Reply Brief adopts the same references as those in the McCart Motion. Doc. No. [431.]

Olmstead, 527 U.S. at 614.[2]  Dr. McCart's report, however, adopts the opposite position of Justice Kennedy; she opines that any separation is "unnecessary segregation." (McCart Rep. at 65:17-22.)  The resulting distinction between the Court's legal standard and Dr. McCart's "fervent belief" renders inadmissible her opinions that students referred for GNETS services by local officials are always "unnecessarily" separated and, therefore, subject to discrimination.  (McCart Rep. at 1, 167.)

This conclusion is consistent with the binding precedent of the Eleventh Circuit.  Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1028 (11th Cir. 2014).  In Dolgencorp, the court affirmed the district court's decision to deem expert testimony inadmissible when it addressed "the wrong problem [which does] not assist the trier of fact[.]"  Id.  The Southern District put it this way: "By repeatedly using a standard-either in its regulatory sense or in its ordinary sense-that is decidedly at odds with the actual governing standard, Plaintiffs' experts' analysis and conclusions rest upon repeated and erroneous evaluations of Defendants' billing practices."  United States v. Aegis Therapies, Inc., CV 210-072, 2015 WL 1541491, at *8 (S.D. Ga. Mar.

---

[2] The DOJ does not dispute that Justice Kennedy's concurring opinion is controlling.  See, United States v. Mississippi, 82 F.4th 387, 394 n.11 (5th Cir. 2023) (citing Marks v. United States, 430 U.S. 188, 193 (1977)).

31, 2015).  By adopting a different (indeed, opposite) definition of "unnecessary separation," Dr. McCart's report is equally inadmissible.

The DOJ's Response addresses this issue with only a few sentences and citation to authority that is far more helpful to the State.  (Doc. No. [440] at 21-22 (citing Burkhart v. Washington Metro. Area Transit Auth., 112 F.3d 1207, 1213 (D.C. Cir. 1997); Braggs v. Dunn, 317 F.R.D. 634, 646 (M.D. Ala. 2016).)  Its contention that experts are not required to use "catchphrases," misses the mark completely.  The State does not challenge Dr. McCart's choice of words.  The McCart Motion is based on Dr. McCart's attempt to expand the ADA by adopting a definition of "unnecessary separation" that is "decidedly at odds with the actual governing standard" articulated in Olmstead.  Aegis Therapies, 2015 WL 1541491, at *8.

The authority cited by the DOJ only makes this point more clear.  In Braggs, the district court allowed expert testimony that the court concluded was distinguishable from Aegis Therapies and similar cases where, like Dr. McCart, the inadmissible testimony "all involve[d] experts who, in one way or another, 'fail[ ] to recognize ... the range of behavior between clearly unlawful and perfectly lawful.'" 317 F.R.D. at 650 n.17 (citing Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp., 582 F.3d 1227, 1233 (11th Cir. 2009)).  Dr. McCart's testimony, therefore, is the exact kind of opinions that Braggs says would be inadmissible because she fails to distinguish between any isolation

and unjustified isolation. Consequently, her opinions impermissibly blur "clearly unlawful and perfectly lawful" behavior. Id. Similarly, in Burkhart the D.C. Circuit reversed a district court's decision to admit expert testimony for committing the same error as Dr. McCart: misstating what constituted discrimination under the ADA. 112 F.3d at 1213-14.

The DOJ has provided this Court with no meritorious defense of Dr. McCart's application of the wrong legal standard on the central issue of her proposed testimony: whether local officials' referral of students for GNETS services was "unnecessary" under the ADA. Dr. McCart's error warrants excluding her testimony altogether, or at the very least, her opinions on what she calls "unnecessary segregation" (two of her three) (McCart Rep. at 1.)

2. **Appropriate Services and Referrals by IEP Teams.**

Dr. McCart opines that an unidentified and unquantified "vast majority of students in the GNETS Program" could be served in general education classrooms if provided with unidentified and "appropriate services and supports." (McCart Rep. at 159.) This vague and generalized conclusion is the product of Dr. McCart's second misapplication of the ADA and an unreliable methodology. Both errors preclude her from providing admissible testimony on elements of the DOJ's claim, including that the "vast majority" of students receiving GNETS services: (1) were inappropriately referred for GNETS services by their IEP Team, which is comprised of exclusively local

officials; (2) were denied or otherwise lacked access to unidentified services; (3) would not have been referred for GNETS services by their IEP Team if their zoned school offered the unidentified and unique services tailored to each child; and (4) could appropriately be served in their general education classrooms. These are highly individualized and fact specific questions that Dr. McCart erroneously attempted to analyze in the aggregate.

a. *Dr. McCart Applies The Wrong Standard.*

Liability under the ADA requires consideration of the unique needs of each "qualified **individual**" who is alleged to suffer discrimination based on their particular disability. 42 U.S.C.A. § 12132 (emphasis added). The Supreme Court recognized this in Olmstead. 527 U.S. 581 at 605 (plurality opinion). So too has the Fifth Circuit in a recent decision: "'[a]ppropriate' treatment of those with serious mental illness, as Olmstead clearly understood, must be individualized." United States v. Mississippi, 82 F.4th 387, 396 (5th Cir. 2023).

Dr. McCart's testimony appears to agree with the legal requirement that considerations of what are "appropriate" services under the ADA require an analysis of an individual child's unique needs.[3] (McCart Dep. 20:19-20;

---

[3] Standing alone is the DOJ that argues, counter to the conclusion of its proposed expert witness, that discrimination can be based on generalized concerns that gloms together disabled students and fails to recognize or appreciate their individual needs. Indeed, despite Dr. McCart's agreement

-5-

104:8-11; 105:8-14.)  Dr. McCart acknowledges that even with the provision of all "appropriate" services, some students' needs warrant providing his or her education in a separate environment.  (Id. 19:14-18; 143:18-144:1.)  Despite her recognition of the controlling legal standard of individualized review, Dr. McCart's opinion that the "vast majority" of students receiving GNETS services is not based on a review of the "vast majority" of individual students. (McCart Rep. at 159; McCart Dep. at 141:18-19.)  Instead, she reviewed only 65-100 student files or about 3% of the students receiving GNETS services at the time of her review.[4]  (McCart Dep. 34:22-35:15.)  Nowhere does Dr. McCart or the DOJ contend that this is a statistically significant or representative review.[5]

Under these circumstances, Dr. McCart's opinion about the "vast majority" of students is inadmissible.  She utilizes an inapplicable,

---

that determining what constitutes appropriate services requires a consideration of a student's individual needs, the DOJ cites her report at summary judgment to defend its claim about the "vast majority" of students that neither it nor its proffered experts even considered.  (Id.)

[4] This approach is radically different from the one taken by the DOJ's experts in United States v. Florida, which is now on appeal.  12-CV-60460, 2023 WL 4546188, at *40 (S.D. Fla. July 14, 2023).  There, the DOJ's proffered experts "conducted an individualized review" of all relevant children and, based on this review, opined that each of the children could appropriately be served in a more integrated setting.  Id. at *40-41.

[5] The State does not dispute that Dr. McCart observed many students in the classroom setting.  But these observations did not result in Dr. McCart recommending any particular services for any individual student.

generalized analysis to answer a highly individualized question. This renders her testimony both unhelpful and her methodology unsound. It is unhelpful because Dr. McCart cannot, for example, state or even quantify which students are appropriately receiving GNETS services (because she acknowledges some students need to learn in separate environments), and which are not. The generalized review also fails to establish a foundation for Dr. McCart to opine that the "vast majority" of local officials who recommended students for GNETS services did so because the necessary service was unavailable to the student. By considering the issue in the aggregate, Dr. McCart's testimony prevents the fact-finder from recognizing which students are "unnecessarily isolated," and which are appropriately receiving GNETS services. Aegis Therapies, 2015 WL 1541491, at *8.

b. *Dr. McCart's Unreliable Methodology*.

The methodology employed by Dr. McCart to reach her conclusion about the "vast majority" of students receiving GNETS services falls short of the requirements imposed by binding precedent. In the Eleventh Circuit, courts consider four factors when examining a proposed expert's methodology: "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; and (4) whether the technique is generally accepted by the scientific community."

Rink v. Cheminova, Inc., 400 F.3d 1286, 1292 (11th Cir. 2005). Neither Dr. McCart nor the DOJ address any of these factors for understandable reasons.

During her deposition, Dr. McCart could not specifically identify any peer reviewed analysis of her generalized methodology. (McCart Dep. 148:6-17; 248:11-249:1.) Nor could she identify any specific peer-reviewed literature that supported, tested, or even considered anything similar. (McCart Dep. 148:11-17; 248:1-249:2.) Worse yet, in Dr. McCart's 167 page report, she cites only about ten articles and only on pages four and five. (McCart Rep. at 4-5.) When asked about some of those works, Dr. McCart frequently could not recall or otherwise offer testimony about their conclusions or methods. (See, e.g., McCart Dep. 112:19-22; 127:8-12; 133:7-17.) She even attempted to distance testimony from the conclusions in an article she recently co-wrote with two colleagues.[6] (McCart Dep. 283:2-

---

[6] The DOJ disingenuously and falsely claims that the McCart Motion "includes a number of misleading and inaccurate assertions." (Doc. No. [440] at 5 n.3.) Nothing could be further from the truth. The State cited Dr. McCart's own testimony that describes herself to the public as "unwavering" and "radical." (McCart Dep. at 316:4-14.) The DOJ does not deny this. Instead it ineffectively attempts to downplay Dr. McCart's view of herself by claiming, without evidentiary support, that the representation was supposed to be "punchy." (Doc. No. [440] at 5 n.3.) The DOJ also claims that the State misquoted Dr. McCart's report by not including the full sentence where Dr. McCart described her "hope" of enlisting GNETS Program instructors into a "movement toward better support for themselves professionally and better outcomes for students with behavior-related disabilities." (Doc. No. [440] at 5 n.3.) The relevancy of Dr. McCart's own words is less about what "movement" Dr. McCart advocates for and more about the fact that her report

284:19.) Dr. McCart's failure to identify independent support for her methodology (and conclusions) is particularly troublesome given her frequent unquantifiable and unscientific references to things like "sad classrooms," or her metaphysical ability to "feel[] sadness from parents." (Id. at 84; 154.)

The DOJ offers a meritless defense of Dr. McCart's *methodology* by relying mostly on her *qualifications*. See (Doc. [440] at 17-23); Hughes v. Kia Motors Corp., 1:11-CV-02733-JOF, 2013 WL 12099352, at *5 (N.D. Ga. Jan. 29, 2013) (recognizing that qualified witnesses' testimony must still comply with Rule 702's admissibility standards) (citing Long v. Raymond Corp., 245 Fed. Appx. 912, 916 (11th Cir. 2007) aff'd, 766 F.3d 1317 (11th Cir. 2014)).

It also cites to the incomplete deposition of the State's proffered and unchallenged expert, Dr. Andrew Wiley, and mischaracterizes it as effectively endorsing Dr. McCart's approach. (Doc. No. [440] at 18, Ex. 1.) Dr. Wiley's testimony indicates that his review would include "similar" considerations, but he also expressed concerns about the "structure [and] transparen[cy]" of Dr. McCart's analysis. (Id.) Instead of supporting Dr. McCart's approach,

---

advocates for the "The SWIFT Center['s] belief as captured in the phrase "ALL Means ALL." See Amy B. McCart, Wayne S. Sailor, Who is My Brother's Keeper? All of Us, SWIFT Center Issue Brief No. 5 (July 2014), https://files.eric.ed.gov/fulltext/ED560130.pdf. The DOJ may be uncomfortable with Dr. McCart's use of her report as an opportunity to express her "fervent belief[s]," but that discomfort does not justify a false allegation that the State mislead the Court with "inaccurate assertions." (Doc. No. [440] at 5 n.3.)

Dr. Wiley's concerns about the transparency of Dr. McCart's analysis are well-founded. None of the 147 pages where Dr. McCart sets forth her opinions, findings, recommendations, and conclusions include any citations or references to research, scholarship, or third-party analysis. (McCart Rep. at 20-167.) The text is Dr. McCart's thoughts alone and void of any explanation of how her experience led her to the conclusions she reached. (Id. at 160-67.)

Courts have rejected other attempts by expert witnesses to connect their conclusions "to existing data only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). The DOJ's reliance on Dr. McCart's years of experience does not make her testimony admissible. Nowhere does her report "'explain *how* [her] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" United States v. Ahmed, 73 F.4th 1363, 1382 (11th Cir. 2023) (emphasis in original) (citing United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004)).[7] Indeed, Dr. McCart's reliance on her work with other states did not permit her to identify

---

[7] Other than a brief citation to the Court's recognition that district courts have significant discretion when deciding whether expert testimony is admissible, the DOJ's Response cites no binding precedent or authority in defense of Dr. McCart's methodology. (Doc. No. [440] at 17-23 (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).)

a single one that adopted the recommendations she asks this Court to impose on Georgia schools. (McCart Dep. 44:20-45:6.)

### 3. Reasonable Accommodation.

The DOJ recognizes that an element of its prima facie case is to show that its proposed (and still unidentified) accommodation is reasonable. (Doc. No. [438] at 3-4, 9.) Dr. McCart's failure to consider the requisite factors of cost and workforce availability renders her opinions inadmissible.

The Supreme Court, the State, and Dr. McCart all agree that any determination of reasonableness requires consideration of cost and workforce. Olmstead, 527 U.S. at 606 n.16 (1999); (McCart Dep. 83:7-10, 11-12.) Based on its misreading of nonbinding authority, only the DOJ appears to disagree. (Doc. No. [440] at 12-13 (citing (Arc of Wash. State Inc. v. Braddock, 427 F.3d 615, 621 (9th Cir. 2005); Frederick L. v. Dep't of Public Welfare of Pa., 364 F.3d 487, 495 (3rd Cir. 2004); Fisher v. Okla. Health Care Auth., 335 F.3d 1175, 1183 (10th Cir. 2003); Disability Advocates, Inc. v. Paterson, 653 F. Supp. 2d 184, 187 (E.D.N.Y. 2009)[8], vacated sub nom. Disability Advocates, Inc. v. New York Coal. for Quality Assisted Living, Inc., 675 F.3d 149 (2d Cir.

---

[8] Despite the DOJ's repeated and heavy reliance on the Paterson district court decision, it fails to inform this Court that the Second Circuit reversed the district court on the grounds that the plaintiff lacked associational standing to bring the ADA claim against public officials. New York Coal. for Quality Assisted Living, Inc., 675 F.3d at 152.

2012), and vacated sub nom. Disability Advocates, Inc. v. New York Coal. for Quality Assisted Living, Inc., 675 F.3d 149 (2d Cir. 2012).)  The DOJ's legal analysis is wrong, and Dr. McCart's admitted failure to consider the requisite factors of workforce and cost renders her opinions inadmissible.

The persuasive authority cited by the DOJ is easily distinguishable. None address workforce concerns, which the Olmstead plurality and Dr. McCart identified as a necessary consideration.  527 U.S. at 606 n.16; (McCart Dep. at 83:11-12).  Because the DOJ's arguments depend entirely on these cases, the Court has been presented with no argument to counter the failure of Dr. McCart to consider workforce.  On cost, the plaintiffs in the cases cited by the DOJ all provided some evidence of the projected cost of their requested accommodation.[9]  Frederick L., 364 F.3d at 496-97; Fisher, 335 F.3d at 1179; Paterson, 653 F. Supp. 2d at 301.  Dr. McCart does not.[10]

### 4. **Quantity and Quality of Services.**

---

[9] In Braddock, costs were not an issue.  427 F.3d at 615.

[10] The cases cited by the DOJ also involve discussions of the fundamental alteration defense, which is distinct from the DOJ's obligation to show reasonableness.  On this point, the DOJ implies, without citation to any authority, that the State was required to plead the fundamental alteration defense as part of its answer.  Not so.  In fact, the only court that appears to have address that argument rejected it and recognized that it would have been improper for the State to assert the defense when, as here, the plaintiff "did not propose any specific accommodations."  Brooklyn Ctr. for Independence of Disabled v. Bloomberg, 980 F.2d 588, 657 (S.D.N.Y. 2023). "Defendants, therefore, could not reasonably be expected to have pleaded a defense to a claim not presented."  Id.

The DOJ does not argue that the ADA imposes liability based on the quality of services provided. (Doc. No. [440] at 10-11.) Nor can it. The plurality opinion in <u>Olmstead</u> declined to impose on states a "'standard of care' for whatever medical services they render.'" 527 U.S. at 603 n.14. <u>See also</u> <u>Silva v. Baptist Health S. Florida, Inc.</u>, 856 F.3d 824, 834 (11th Cir. 2017) (same). The DOJ's and Dr. McCart's challenge to the quality of services provided was rejected in Justice Kennedy's controlling concurrence: "a State may not be forced to create a community-treatment program where none exists." 527 U.S. at 612-13.

Despite the clarity of this binding precedent, the DOJ claims Dr. McCart's opinions on the quality and quantity of GNETS services are relevant and admissible.[11] (Doc. No. [440] at 11.) It does not substantively address the issue of quality of care and, instead, attempts to shift the focus to other issues that have nothing to do with the quality of services. (<u>Id.</u> (addressing physical plant issues and extra-curricular activities)).

The DOJ's contention that it does not seek to "require the State to create programs" is nonsensical. (<u>Id.</u>) It argues there is a "**lack of**" services,

---

[11] Dr. McCart's testimony about the quantity of services provided may be a non-issue. Dr. McCart testified that she offers no opinion on whether the DOE provides "an insufficient quantity of support services." But, she later testifies that DOE "provides an insufficient number of support services, an insufficient quantity." McCart Dep. 172:1-9.

which, obviously, can only be resolved by **creating** them.  (Id.)  Olmstead forbids this from being a basis of imposing ADA liability, and the DOJ has not provided any authority to the contrary.  This ends the inquiry.

### 5. The Role of the State and the State's Current Efforts.

The McCart Motion seeks to exclude certain aspects of Dr. McCart's testimony on the efficacy of DOE's efforts to implement MTSS (the crux of her recommendation), because admittedly it did not evaluate those efforts.  It also seeks to exclude Dr. McCart's opinions on how DOE influences the GNETS Program due to her lack of knowledge about DOE's authority.

The DOJ offers **no response** to the State's challenges to the admissibility of Dr. McCart's testimony about her proposed recommendation that the DOE "turn its attention to statewide implementation of MTSS."[12] (McCart Rep. 161-67.)  This testimony is inadmissible because Dr. McCart "did not evaluate the efficacy of MTSS or fidelity within the State of Georgia." (McCart Dep. 101:15-16.)  Consequently, Dr. McCart's opinion is based on something she did not research, study or analyze.  The opinions, therefore, are inadmissible speculation and improper opinion testimony.  Am. Pegasus

---

[12] The DOJ only describes her recommendations as being based on Dr. McCart's self-described "extensive experience."  (Doc. No. 440 at 8 (citing McCart Rep. at 160).)  This misses the mark.  The issue is not Dr. McCart's qualifications, it is her methodology and decision not to evaluate the very program she criticizes and provides the basis of her recommendations.

SPC by & through Sybersma v. Clear Skies Holding Co., LLC, No. 1:13-CV-03035-ELR, 2016 WL 11710067 (N.D. Ga. Jan. 14, 2016).

On the DOE's authority, Dr. McCart and DOJ represent that she offers no opinion on whether the State administers the GNETS Program. (McCart Dep. 40:14-16.) It is undisputed that Dr. McCart lacks knowledge about DOE's authority, GNETS funding, and other aspects of Georgia education policy. (Doc. No. [431] at 10-12; Doc. No. [440] at 16-17.) Despite this, Dr. McCart offers inadmissible and speculative testimony about DOE's acts and omission, including false assertions that the DOE: "maintains the GNETS Program;" "implicitly encourages schools and their IEP teams to remove students … from the general education environment;" "perpetuated [discrimination] by dedicating" funds to the GNETS Program; and "adopted a vision of statewide systemic segregation of students with behavior-related disabilities." (McCart Rep. 157, 158, 167; McCart Dep. 314:22-315:9.) Dr. McCart again is providing opinions about something she admits to knowing nothing about. This is improper and inadmissible.[13]

## CONCLUSION

For the reasons above, the State requests that this Court grant the McCart Motion.

---

[13] Dr. McCart offers no opinions about the acts or omissions of DBHDD or DCH. (McCart Dep. 166:7-15.)

Respectfully submitted this 5th day of December, 2023.

| | |
|---|---|
| Christopher M. Carr<br>*Attorney General*<br>Georgia Bar No. 112505<br>Bryan K. Webb<br>*Deputy Attorney General*<br>Georgia Bar No. 743580<br>Russell D. Willard<br>*Senior Assistant Attorney General*<br>Georgia Bar No. 760280<br>Susan R. Haynes<br>*Assistant Attorney General*<br>Georgia Bar No. 901269<br>Office of the Attorney General 40 Capitol Square, S.W. Atlanta, Georgia 30334 Telephone: (404) 656-3357 | */s/ Josh Belinfante*<br>Josh Belinfante<br>Georgia Bar No. 047399<br>jbelinfante@robbinsfirm.com<br>Melanie Johnson<br>Georgia Bar No. 466756<br>mjohnson@robbinsfirm.com<br>Edward Bedard<br>Georgia Bar No. 926148<br>ebedard@robbinsfirm.com<br>Danielle Hernandez<br>Georgia Bar No. 736830<br>dhernandez@robbinsfirm.com<br>Javier Pico Prats<br>Georgia Bar No. 664717<br>jpicoprats@robbinsfirm.com<br>Anna Edmondson<br>Georgia Bar No. 289667<br>aedmondson@robbinsfirm.com<br>**Robbins Alloy Belinfante Littlefield LLC**<br>500 14th Street NW<br>Atlanta, GA 30318<br>Telephone: (678) 701-9381<br>Facsimile: (404) 856-3255<br><br>Alexa R. Ross<br>Georgia Bar No. 614986<br>alexarross@icloud.com<br>**AlexaRossLaw, LLC**<br>2657 Danforth Lane<br>Decatur, Georgia 30033<br><br>Special Assistant Attorneys General<br>*Attorneys for Defendant* |

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. AMY MCCART was prepared double-spaced in 13-point Century Schoolbook font, approved by the Court in Local Rule 5.1(C).

/s/Josh Belinfante
Josh Belinfante