IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

     *Plaintiff,*

v.

STATE OF GEORGIA,

     *Defendant.*

CIVIL ACTION FILE

NO. 1:16-CV-03088-ELR

## STATE OF GEORGIA'S RESPONSES TO PLAINTIFF'S ADDITIONAL STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Federal Rule of Civil Procedure 56 and Rule 56.1(B) of the Civil

Local Rules of Practice for the United States District Court for the Northern District of

Georgia, Defendant State of Georgia hereby submits these responses and objections to

the individual facts asserted in Plaintiff's Additional Statement of Undisputed Material

Facts (Doc. No. [448-3]) as follows:

**State Agencies**

1.    **As Georgia's designated state authority for behavioral health services, DBHDD is responsible for overseeing and administering policies, programs, and services for people with mental illness, including—through the Office of Children, Young Adults and Families—children with behavior-related disabilities. O.C.G.A. § 37-1-20;** *see also* **O.C.G.A. § 37-1-21; Ex. A, Berry Dep. at 165:11-166:15, 184:21- 25; Ex. B, J. Fitzgerald Dep. at 52:21-53:19; 62:2-16.**

    **RESPONSE:** Objection. Defendant objects on the ground that Plaintiff's

interpretation of a statute constitutes a legal conclusion which does not comply with LR

56.1(B)(1). Second, the cited evidence does not support the statement. There is no mention of the Office of Children, Young Adults, and Families in any of the cited evidence. Third, Defendant objects to the statement because it is not material for purposes of the pending Motion and thus does not comply with the provisions set out in LR 56.1(B)(1). Fourth, Defendant objects because the statement is vague and overbroad as to the role of DBHDD and its purported "responsibilities."

Lastly, Defendant objects that, in contrast to the fact's assertion, the evidence shows that not all children in the State of Georgia are the financial responsibility of DBHDD. Deposition of Judy Fitzgerald, Doc. No. [413] at 154:8-9. DBHDD plays a limited role in ensuring that mental health services are readily available to children across the State of Georgia in their own communities because their funding supports only uninsured children. Deposition of Frank Berry, Doc. No. [407] at 184:13-20.

**2.    In that capacity, the Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD") designs and defines the publicly funded behavioral health services that are available to children and their families in Georgia; funds, oversees, and administers the Georgia Apex Program, through which the State seeks to deliver behavioral health services in certain school settings; contracts with the Georgia State University's Center of Excellence to advance the development of effective behavioral health services for children, specifically including Intensive Customized Care Coordination ("IC3"); and helps to lead the State's efforts to implement its System of Care Plan, which acknowledges that "[a]ccess to an array of community-based services and supports is a core component of any functional behavioral health care system." Ex. C, Tiegreen Dep. at 52:12-19; Ex. D, DiGirolamo Dep. at 16:16-17:16, 82:24-83:3, 92:16-21; Ex. B, J. Fitzgerald Dep. at 62:2-63:9; 134:3-20; Ex. 47, 2020 Georgia System of Care Plan at 11; Ex. 31, APEX Contract FY2020, ABH000004, US0013064; see also O.G.C.A. § 49-5-225 et seq.**

**RESPONSE:** Objection. First, the statement contains more than one purported statement of fact in violation of LR 56.1(B)(1). Second, the statement constitutes an impermissible legal conclusion with respect to O.C.G.A. § 49-5-225. Third, the multi-part statement contains portions that are immaterial to the claims and defenses in this case. Fourth, the phrase "designs and defines" is vague, overbroad, and unsupported by the evidence. The statement is also overbroad to the extent it implies the State is financially responsible for the provision of mental health services for all children in the State. See Response to ¶ 2, supra. Fifth, the evidence cited does not support the full fact as stated.

3.    **Medicaid is a partnership jointly funded by the federal government and the states and administered by the states according to federal requirements to assist states in providing medical care to eligible people. Ex. 2, The Kaiser Family Foundation: The Kaiser Commission on Medicaid and the Uninsured, "5 Key Questions About Medicaid and Its Role in State/Federal Budgets and Health Reform," https://www.kff.org/wp-content/uploads/2013/01/8139-02.pdf (last accessed November 20, 2023).**

**RESPONSE:** Objection. Defendant objects to the statement because it is not material for purposes of the pending Motion and thus does not comply with the provisions set out in LR 56.1(B)(1).

4.    **DCH is the agency designated under federal law as the State's Medicaid agency. O.C.G.A. § 49-4-142; Ex. C, Tiegreen Dep. at 21:16-22:7; see ECF No. 429- 2, Defendant's Statement of Undisputed Material Facts ("Def. SOMF") at ¶ 21.**

**RESPONSE:** Objection. The evidence cited does not support the fact stated.

Paragraph 21 of Defendant's Statement of Undisputed Material Facts relates to

Dr. Stephanie Pearson, not DCH. Defendant further objects on the ground that

Plaintiff's interpretation of a statute constitutes a legal conclusion which does not

comply with LR 56.1(B)(1). Subject to the preceding objections, the Court can consider

the fact for purposes of the summary judgment motion.

5.    **In that capacity, the Georgia Department of Community Health ("DCH"), in
      conjunction with DBHDD, designs and specifies the behavioral health
      services that DCH administers and contracts with private Care Management
      Organizations to deliver services to enrolled members, including children.
      Ex. B, J. Fitzgerald Dep. at 51:5-52:3, Ex. C, Tiegreen Dep. at 45:7-13, 52:12-
      53:8; Ex. 3, Georgia Department of Community Health, Medicaid Managed
      Care, https://dch.georgia.gov/medicaid-managed-care (last accessed Nov. 20,
      2023).**

      **RESPONSE:** Defendant objects to the statement as the evidence does not

support the entire fact as stated. In addition, the phrase "designs and specifies" is vague,

overbroad, and unsupported by the evidence. Defendant further objects to the statement

as confusing, overly broad, and vague as to DBHDD's and DCH's purported roles. See,

Responses to ¶¶ 1-2, supra.

6.    **In accordance with federal regulations, DCH developed a Quality Strategy
      "to continually monitor, assess, and improve the timeliness and delivery of
      quality healthcare" to Medicaid and PeachCare for Kids members served
      through its managed care and fee-for-service programs. DCH's Quality
      Strategy provides "the framework to accomplish DCH's mission of
      providing Georgians with access to affordable, quality healthcare through
      effective planning, purchasing, and oversight." Ex. 3, Georgia Department of
      Community Health 2021-2023 Quality Strategy,
      https://dch.georgia.gov/medicaid-quality-reporting (last accessed Nov. 20,
      2023).**

**RESPONSE:** Objection. Defendant objects to the statement because it is not material for purposes of the pending Motion and thus does not comply with the provisions set out in LR 56.1(B)(1). Defendant further objects in that the statement is an impermissible legal conclusion in that it states "in accordance with federal regulations."

7. **On at least one occasion the State's GNETS Program Manager directly received an informal complaint via email in which a parent expressly requested a community educational placement. _See_, _e.g._, Ex. 8, GA05202437.**

**RESPONSE:** Objection. Defendant objects to the phrase "community educational placement" which the evidence does not support. Defendant further objects to the extent that the fact suggests or otherwise implies that the State administers the GNETS Program. Lastly, Defendant objects that the cited evidence contains hearsay, which cannot be considered at summary judgment. See FRE 802; FRCP 56.

**Non-Opposition to Community Educational Placements**

8. **Some parents have filed due process complaints with the State to demand community educational placements for their children. _See_, _e.g._, Ex. 15, GA05199933; Ex. 16, GA05200951; Ex. 17, GA05199710; Ex. 18, GA05200962.**

**RESPONSE:** Objection. Defendant objects to the phrase "to demand community educational placement" which the evidence does not support. Defendant objects to the vague and unquantifiable use of the word "some" in a purported statement of fact. Defendant further objects to the extent that the fact suggests or otherwise implies that the State administers the GNETS Program. Lastly, Defendant objects that the cited

evidence contains hearsay, which cannot be considered at summary judgment. <u>See</u> FRE

802; FRCP 56.

**9.    Some of those due process complaints have expressly alleged that the initial GNETS Program placement decisions for students were made unilaterally, despite parents' objections and explicit requests that their children remain in community educational placements. *See*, *e.g.*, Ex. 19, GA05201028; Ex. 16, GA05200951.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. Defendant further objects to the extent that the fact suggests or otherwise implies

that the State administers the GNETS Program. Defendant objects to the phrase

"community educational placement" which the evidence does not support. Defendant

objects to the vague and unquantifiable use of the word "some" in a purported statement

of fact. Lastly, Defendant objects that the cited evidence contains hearsay, which cannot

be considered at summary judgment. <u>See</u> FRE 802; FRCP 56.

**10.    Multiple Individual Education Plans ("IEPs") produced by regional GNETS programs memorialized parents' desire for their children return to community educational placements. *See, e.g.*, Ex. 20, US0151559 at US0151673; Ex. 21, US0184588 at US0184594. *See also* ECF No. 432-1, Report of Amy McCart ("McCart Rep.") at 154.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. Defendant further objects to the extent that the fact suggests or otherwise implies

that the State administers the GNETS Program. Defendant objects to the phrase

"community educational placement" which the evidence does not support. Defendant

objects to the vague and unquantifiable use of the word "multiple" in a purported

statement of fact. Defendant objects that the cited evidence contains hearsay, which cannot be considered at summary judgment. See FRE 802; FRCP 56. Lastly, Defendant objects that cited evidence, the proffered expert testimony of Dr. Amy McCart, is subject to a pending Motion to Exclude by Defendant. Should that Motion be granted, Defendant objects to the cited evidence as inadmissible.

11. **Parents have contacted the United States to express their opposition to students' GNETS Program placements and their desire for students to attend community educational placements. See, e.g., Ex. 9, US0012047; Ex. 10, US0012763; Ex. 11, US0011494; Ex. 12, US0011511; Ex. 13, US0011549; and Ex. 14, US0011550.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Defendant further objects to the extent that the fact suggests or otherwise implies that the State administers the GNETS Program. Defendant objects to the phrase "community educational placement" which the evidence does not support. Lastly, Defendant objects that the cited evidence contains hearsay, which cannot be considered at summary judgment. See FRE 802; FRCP 56.

12. **Oftentimes, when parents raised concerns about the GNETS Program during IEP meetings, they were told that the GNETS Program was the only option for their children. See, e.g., Ex. G, McCart Dep. at 56:14-57:20; Ex. 22, US0011522.**

**RESPONSE:** Objection. The evidence cited does not support the fact stated. Defendant objects that the cited evidence contains hearsay, which cannot be considered at summary judgment. See FRE 802; FRCP 56. Defendant objects to the use of the term "oftentimes" which is vague and unquantifiable. Defendant further objects to the extent

that the fact suggests or otherwise implies that the State administers the GNETS

Program. Lastly, Defendant objects that the cited evidence, the proffered expert

testimony of Dr. Amy McCart, is subject to a pending Motion to Exclude by Defendant.

Should that Motion be granted, Defendant objects to the cited evidence as inadmissible.

13. **Some parents lamented that they initially agreed to their children being placed in the GNETS Program, rather than lodging an explicit complaint about the segregated placement at the outset, only because they felt "bullied" by the educational placement process that led to their children's GNETS Program placement.** *See, e.g.*, **Ex. 22, US0011522.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. The cited evidence only makes reference to actions taken by Fulton County, the

child's school, and the local school board. Defendant further objects to the extent that

the fact suggests or otherwise implies that the State administers the GNETS Program.

Defendant objects that the cited evidence contains hearsay, which cannot be considered

at summary judgment. See FRE 802; FRCP 56. Lastly, Defendant objects to Plaintiff's

characterization of the cited exhibit as argumentative. Such characterization is

immaterial and therefore not appropriate for consideration at summary judgment

pursuant to LR 56.1(B)(1).

14. **Some parents shared that they believe more parents are not actively fighting GNETS Program placements and seeking community educational placements because they do not "know there is something better" or have "given up" advocating.** *See, e.g.*, **Ex. 23, US0011538.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. This purported statement of fact is pure speculation and not appropriate for

consideration at summary judgment pursuant to LR 56.1(B)(1). See Garrison v. Sam's

E., Inc., No. 1:17-CV-381-C, 2019 WL 2603176, at *7 (S.D. Ala. Apr. 3, 2019), aff'd,

787 F. App'x 627 (11th Cir. 2019) ("unsupported speculation ... does not meet a party's

burden of producing some defense to a summary judgment motion"). The fact does not

comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement

of fact. Defendant objects to the use of the phrase "some parents" which is vague and

unquantifiable. Lastly, Defendant objects that the cited evidence contains hearsay and

hearsay within hearsay which cannot be considered at summary judgment. See FRE

802; FRCP 56.

**15.    The United States has continued to uncover more evidence in support of its allegation that students are defaulted to GNETS Program placements due to Georgia's failure to provide appropriate and required therapeutic supports and services in community educational settings.** ***See***, ***e.g.***, **Ex. H, Putnam Dep. at 9:22- 10:1, 96:2-24, 97:11-98:16, 193:18-194:2, 199:16-200:25;** ***see also*** **Ex. G, McCart Dep. at 61:6-62:15.**

**RESPONSE:** Objection. The evidence cited does not support the fact stated.

Second, the fact does not comply with LR 56.1(B)(1) because it is stated as an argument

regarding a disputed issue in this case rather than as undisputed fact. This is particularly

true with respect to use of the terms "defaulted" and "Georgia's failure" which are also

vague and ambiguous. Fourth, Defendant objects to the extent the fact suggests or

otherwise implies that the State administers the GNETS program. Last, Defendant

objects that the cited evidence, the proffered expert testimony of Drs. Amy McCart and

Robert Putnam, is subject to pending Motions to Exclude by Defendant. Should that Motion be granted, Defendant object to the cited evidence as inadmissible.

**16.    Some students with behavior-related disabilities are denied adequate community-based services, which could make it harder for the students to receive appropriate supports and increase their risk of being referred to or placed in a more restrictive setting.** *See* **ECF No. 428-1, Report of Robert Putnam ("Putnam Rep.") at 32-42.**

**RESPONSE:** Objection. First, the evidence cited does not support the fact stated. Second, the fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a matter of undisputed fact. Defendant further objects to Plaintiff's characterization of the cited exhibits as argumentative. Such characterization is immaterial and therefore not appropriate for consideration at summary judgment pursuant to LR 56.1(B)(1). Third, Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program. Fourth, Defendant objects that the statement is vague and that "appropriate" and "adequate" are ambiguous. Fifth, Defendant objects that the statement is speculative and thus inappropriate for consideration at summary judgment. See Garrison v. Sam's E., Inc., No. 1:17-CV-381-C, 2019 WL 2603176, at *7 (S.D. Ala. Apr. 3, 2019), aff'd, 787 F. App'x 627 (11th Cir. 2019) ("unsupported speculation ... does not meet a party's burden of producing some defense to a summary judgment motion"). Lastly, Defendant objects that the cited evidence, the proffered expert testimony of Dr. Robert Putnam, is subject

to a pending Motion to Exclude by Defendant. Should that Motion be granted,

Defendant objects to the cited evidence as inadmissible.

**Appropriateness of Placement**

17.     **The integration mandate does not refer to treating professionals; it simply requires services to be administered "in the most integrated setting appropriate to the needs of" the individual. 28 C.F.R. § 35.130(d).**

      **RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it

is a legal conclusion and is stated as argument. Defendant also objects to the extent that

the fact suggests or otherwise implies that the State administers the GNETS program.

18.     **The decision to place students in the GNETS Program is made by an IEP Team, not a treating physician. *See* Def. Mem. in Support of Mot. Summ. J., ECF No. 429-1 at 26-28; Ga. Comp. R. & Regs. § 160-4-7-.15(3)(a).**

      **RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it

is a legal conclusion. Defendant further objects to the extent it suggests that a treating

physician is never a member of an IEP Team. Subject to and without waiving the

foregoing objections, the Court can consider that the decision to place students in the

GNETS Program is made by an IEP team.

19.     **IEP Teams are comprised of "the parents of the child with a disability," "not less than 1 regular education teacher of such child (if the child is, or may be, participating in the regular education environment)," "not less than 1 special education teacher, or wherever appropriate, not less than 1 special education provider of such child," "a representative from the local educational agency[,]" "an individual who can interpret the instructional implications of evaluation results," "at the discretion of the parent or the agency, other individuals who have knowledge or special expertise regarding the child, including related services personnel as appropriate[,]" and "whenever appropriate, the child with a disability." 20 U.S.C. § 1414(d)(1)(B).**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion. Subject to the preceding objection, the Court may consider the remainder of this evidence for purposes of the summary judgment motion.

20. **The GNETS Rule state that for any IEP Team meeting at which a GNETS Program placement will be considered, "[t]he IEP meeting will include a GNETS director or his/her designee." Ga. Comp. R. & Regs. § 160-4-7-.15(3)(b).**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion. Second, Defendant objects to the extent the fact suggests or otherwise implies the State administers the GNETS program or is involved in any student's IEP team or such process. Subject to the preceding objections, the Court may consider the remainder of this evidence for purposes of the summary judgment motion.

21. **The GNETS Rule directs that students' IEP Teams determine when they are ready for a less restrictive setting. Ga. Comp. R. & Regs. § 160-4-7-.15(2)(f).**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion. Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program or is involved in any student's IEP team or such process. Subject to the preceding objections, the Court may consider the remainder of this evidence for purposes of the summary judgment motion.

22. **IEP file reviews demonstrate and acknowledge that regional GNETS programs often fail to create exit criteria for students and end up maintaining students for extended periods of time. See e.g., Ex. 35, GA05250459 (no exit plan); Ex. 36, GA05249762 (showing no exit plan, student in GNETS for over 10 years); Ex. 37, GA05250869 (no exit plan); Ex. 38, GA05256666 (no exit plan, student in GNETS for 7.5 years).**

**RESPONSE:** Objection. First, Defendant objects to Plaintiff's characterization of the cited exhibits as argumentative rather than as a statement of undisputed fact. Such characterization is immaterial and therefore not appropriate for consideration at summary judgment pursuant to LR 56.1(B)(1). Second, the fact is immaterial to the claims and defenses in this case. Third, the evidence cited does not support the fact stated. Fourth, Defendant objects to the use of the terms "exit plan" or "exit criteria" which are vague and undefined. Fifth, the cited evidence contains hearsay, which cannot be considered at summary judgment. See FRE 802; FRCP 56. Lastly, Defendant objects that the statement is conclusory and speculative which is inappropriate to consider at summary judgment. See Garrison v. Sam's E., Inc., No. 1:17-CV-381-C, 2019 WL 2603176, at *7 (S.D. Ala. Apr. 3, 2019), aff'd, 787 F. App'x 627 (11th Cir. 2019) ("unsupported speculation ... does not meet a party's burden of producing some defense to a summary judgment motion").

23. **Dr. McCart conducted 70 site visits of GNETS Program facilities that covered 33 counties including rural, urban, and suburban areas. McCart Rep. at 12.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Defendant further objects that the cited evidence is subject to a pending Motion to Exclude by Defendant. Should that Motion be granted, Defendant objects to the cited evidence as inadmissible.

24.   **During site visits, Dr. McCart methodically toured GNETS Program facilities, observed classrooms and students, and conducted informal interviews of regional GNETS program personnel. McCart Rep. at 12.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Defendant further objects to the term "methodically" as vague and undefined. Defendant objects that the cited evidence is subject to a pending Motion to Exclude by Defendant. Should that Motion be granted, Defendant objects to the cited evidence as inadmissible.

25.   **Dr. McCart testified that her analysis was based on: her observation of nearly 1,000 GNETS students; examination of individual student records, including IEPs, documentation regarding supports and needs, parent documentation, incident reports, and other documents; and her extensive experience working with students with a full range of behavior needs. Ex. G, McCart Dep. at 145:6-146:12; see also McCart Rep. at 1, 11-12.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Defendant objects that the cited evidence is subject to a pending Motion to Exclude by Defendant. Should that Motion be granted, Defendant objects to the cited evidence as inadmissible. Lastly, Defendant objects that the statement is vague as to the meaning and extent of any purported "observation," "examination," and "other documents."

26.   **The United States has obtained and developed evidence showing that students in the GNETS Program could be appropriately served in community educational settings, including documentation from treating physicians, communications describing how students succeeded in community educational placements once parents successfully demanded they leave the GNETS Program, documentation from parents asserting that their children could and should attend school in community educational**

**placements and from students themselves, IEPs that memorialize parents' disagreements with the IEP Team decision for their child to enter or remain in the GNETS Program, and due process complaints seeking community educational placements. See e.g., Ex. 39, US0306845; Ex. 40, US0012687; Ex. 10, US0012763; Ex. 41, US0011665; Ex. 8, GA05202437; Ex. 15, GA05199933; Ex. 16, GA05200951; Ex. 17, GA05199710; Ex. 18, GA05200962; Ex. 21 US0184588.**

**RESPONSE:** Objection. First, Defendant objects to Plaintiff's characterization

of the cited exhibits as argumentative. Such characterization is immaterial and therefore

not appropriate for consideration at summary judgment pursuant to LR 56.1(B)(1).

Second, the statement contains more than one purported statement of fact in violation of

LR 56.1(B)(1). Third, the evidence cited does not support the facts stated. Fourth,

Defendant objects that the facts are immaterial to the claims and defenses in this case.

Fifth, the cited evidence contains hearsay, which cannot be considered at summary

judgment. See FRE 802; FRCP 56. Sixth, Defendant objects that the statement is

conclusory and speculative, which also cannot be considered at summary judgment. See

Garrison v. Sam's E., Inc., No. 1:17-CV-381-C, 2019 WL 2603176, at *7 (S.D. Ala.

Apr. 3, 2019), aff'd, 787 F. App'x 627 (11th Cir. 2019) ("unsupported speculation ...

does not meet a party's burden of producing some defense to a summary judgment

motion"). Seventh, Defendant objects to the terms "community educational settings"

and "community educational placements" as vague and undefined. Lastly, Defendant

objects to the statement as it contains a legal conclusion regarding a disputed issue in

this case.

27.  **Dr. Putnam concluded that most children with behavioral-related disabilities can be served in general education schools and that there are therapeutic services that help students remain in more integrated educational settings. Putnam Rep. at 14.**

**RESPONSE:**  Objection. The fact does not comply with LR 56.1(B)(1) because it is

stated as argument regarding a disputed issue in this case rather than as a matter of fact.

Defendant objects to the extent the fact suggests or otherwise implies that the State

administers the GNETS program. Defendant objects that the cited evidence, the

proffered expert testimony of Dr. Robert Putnam, is subject to a pending Motion to

Exclude by Defendant. Should that Motion be granted, Defendant objects to the cited

evidence as inadmissible. Lastly, the fact contains speculation, which cannot be

considered at summary judgment. See Garrison v. Sam's E., Inc., No. 1:17-CV-381-C,

2019 WL 2603176, at *7 (S.D. Ala. Apr. 3, 2019), aff'd, 787 F. App'x 627 (11th Cir.

2019) ("unsupported speculation ... does not meet a party's burden of producing some

defense to a summary judgment motion").

28.  **At least one Georgia Department of Education ("GaDOE") employee shared that students with intellectual disabilities who are on the Georgia Alternate Assessment (referred to as GAA) track may be categorically inappropriate for the GNETS Program and better served in community educational placements. See Ex. 28, GA00338963; Ex. K, Cole Dep. 115:19-119:17.**

**RESPONSE:** Objection. First, the evidence cited does not support the fact stated.

Defendant objects to Plaintiff's characterization of the cited exhibits as argumentative

and therefore not appropriate for consideration at summary judgment pursuant to LR

56.1(B)(1). Second, the fact is immaterial to the claims and defenses in this case. Third,

– 16 –

the cited evidence contains hearsay, which cannot be considered at summary judgment.

See FRE 802; FRCP 56. Fourth, Defendant objects because the statement contains pure

speculation. Garrison v. Sam's E., Inc., No. 1:17-CV-381-C, 2019 WL 2603176, at *7

(S.D. Ala. Apr. 3, 2019), aff'd, 787 F. App'x 627 (11th Cir. 2019) ("unsupported

speculation ... does not meet a party's burden of producing some defense to a summary

judgment motion"). Fifth, it contains inappropriate lay opinion. See FRE 701; Great

Lakes Ins. SE v. Wave Cruiser LLC, 36 F.4th 1346, 1357 (11th Cir. 2022) (holding

District Court abused its discretion in admitting improper lay testimony where witness

drew inferences). Sixth, Defendant objects to the extent the fact suggests or otherwise

implies that the State administers the GNETS program.

29. **Dr. McCart's report details the gross lack of mental health and therapeutic educational services and supports available to students in the GNETS Program. McCart Rep. at 136-37, 140-41, 151, 157-58.**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it

is stated as argument regarding a disputed issue in this case rather than as a matter of

fact. Defendant further objects that the cited evidence, the proffered expert testimony of

Dr. Amy McCart, is subject to a pending Motion to Exclude by Defendant. Should that

Motion be granted, Defendant objects to the cited evidence as inadmissible. Lastly,

Defendant objects to the extent the fact suggests or otherwise implies that the State

administers the GNETS program.

30. **Dr. McCart's report describes and illustrates regional GNETS programs' dilapidated buildings. McCart Rep. at 68-106.**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because the fact is stated as argument rather than as a matter of undisputed fact. Second, Defendant objects that the cited evidence, the proffered expert testimony of Dr. Amy McCart, is subject to a pending Motion to Exclude by Defendant. Should that Motion be granted, Defendant objects to the cited evidence as inadmissible. Lastly, Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program.

31. **Dr. McCart's report describes the absence or denial of extracurricular activities; art, music, and physical education classes; lunchrooms; gymnasiums; and libraries for students in the GNETS Program. McCart Rep. at 48-49, 100-04, 124-126.**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) the fact is stated as an argument rather than as a fact. Second, Defendant objects that the cited evidence, the proffered expert testimony of Dr. Amy McCart, is subject to a pending Motion to Exclude by Defendant. Should that Motion be granted, Defendant objects to the cited evidence as inadmissible. Lastly, Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program.

32. **Dr. McCart describes the "shocking" use of corporal punishment and other restrictive measures such as inappropriate restraints and placement of students in isolation rooms or spaces. McCart Rep. at 51-67, 134-36.**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because the fact is stated as an argument rather than as a matter of undisputed fact. Defendant further objects that the fact is not material to the claims and defenses in this case.

Defendant objects that the statement is vague in its use of "other restrictive measures" and "inappropriate." Defendant objects that the cited evidence, the proffered expert testimony of Dr. Amy McCart, is subject to a pending Motion to Exclude by Defendant. Should that Motion be granted, Defendant objects to the cited evidence as inadmissible. Lastly, Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program.

**33.    Dr. McCart concludes that "[t]he GNETS Program, as presently structured, is an inappropriate and unjust program for students with behavior-related disabilities . . . ." McCart Rep. at 158.**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because the fact is stated as an argument rather than as a matter of undisputed fact. Second, fact impermissibly contains a legal conclusion as to a disputed issue in this case. Defendant objects to the use of the term "inappropriate" as vague and overbroad and dependent upon the individual student. Defendant objects that the cited evidence, the proffered expert testimony of Dr. Amy McCart, is subject to a pending Motion to Exclude by Defendant. Should that Motion be granted, Defendant objects to the cited evidence as inadmissible. Lastly, Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program.

**34.    GNETS directors conducted IEP file reviews of students in GNETS. Ex. K, Cole Dep. at 369:1-20; Ex. 6, GA05243260; see also Ex. 35, GA05250459.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. In addition, the evidence cited does not support the fact stated. Third, the phrase

"IEP file reviews" is vague and undefined. Lastly, Defendant objects to the extent that

the fact suggests or otherwise implies that the State administers the GNETS program.

35.    **The IEP file reviews show a pervasive lack of therapeutic supports and services, the availability and provision of which is purportedly the purpose of the GNETS Program. See, e.g., Ex. 35, GA05250459; Ex. 36, GA05249762, Ex. 37, GA05250869; Ex. 42, GA05249823; see generally Ga. Comp. R. & Regs. § 160-4-7- .15(2)(a).**

**RESPONSE:** Objection. Defendant objects on the ground that Plaintiff's

interpretation of a rule and its application constitutes a legal conclusion which does not

comply with LR 56.1(B)(1). Second, the cited evidence does not support the statement.

Third, the fact does not comply with LR 56.1(B)(1) because the fact is stated as

argument rather than as a matter of undisputed fact. The cited evidence also contains

hearsay which cannot be considered at summary judgment. <u>See</u> FRE 802; FRCP 56.

Defendant objects to the term "pervasive" which is vague and unquantified. Lastly,

Defendant objects to the extent that the fact suggests or otherwise implies that the State

administers the GNETS program.

**McKay Declaration**

36.    **On December 22, 2022, the United States served the State of Georgia ("State") with a written discovery request that focused explicitly on the cost of expanding access to behavioral health services in general education services, including through the Apex Program. See ECF No. 439-3, United States' Fifth Req. for Produc. of Docs. at 6-7 (seeking "[a]ll analyses . . . or other documents that describe the actual cost, or possible cost, to the State of increasing access to and use of school-based behavioral health services in general education settings, including through the Georgia Apex program . . . .").**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Defendant also objects on the grounds that this is an incomplete fact. The request sought documents created for the purpose of "divert[ing] children from placement in GNETS." Thus, the subject request is for a narrower category of documents and states in full: "All analyses, reports, memoranda, presentations, recommendations, or other documents that describe the actual cost, or possible cost, to the State of increasing access to and use of school-based behavioral health services in general education settings, including through the Georgia Apex program, to divert children from placement in GNETS. Include any documents that describe cost savings, actual or possible, that the State could achieve by maximizing available resources through Medicaid and third-party payors to fund these services in whole or in part."

**37.** **During fact discovery, the United States deposed Mr. McKay, the Director of DBHDD's Office of Children, Youth and Families, twice, first on January 27, 2022 in his personal capacity and second on March 9, 2023, when the State identified him in response to a Rule 30(b)(6) deposition notice. See Ex. X, 1/27/22 McKay Dep.; See Ex. E, 3/9/23 McKay Dep.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Subject to the foregoing objection, the Court may consider this fact for the purpose of the summary judgment motion.

**38.** **On March 15, 2023, after the close of fact discovery and pursuant to this Court's operative scheduling orders, the United States disclosed its experts, Dr. Amy McCart and Dr. Robert Putnam. See ECF No. 344.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. Subject to the foregoing objection, the Court may consider this fact for the

purpose of the summary judgment motion.

**39.    The United States provided Dr. McCart's and Dr. Putnam's written expert reports to the State on June 16, 2023. See ECF No. 376.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. Subject to the foregoing objection, the Court may consider this fact for the

purpose of the summary judgment motion.

**40.    In his report, Dr. Putnam recommends the State expand its Apex Program to better serve students with behavior-related disabilities in integrated settings. Putnam Rep. at 54-55, 59-60.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. Defendant objects that the statement is vague with respect to the phrase "better

serve." Defendant objects that the cited evidence, the proffered expert testimony of Dr.

Robert Putnam, is subject to a pending Motion to Exclude by Defendant. Should that

Motion be granted, Defendant objects to the cited evidence as inadmissible.

**41.    The only expert the State disclosed during expert discovery was Dr. Andrew Wiley, a rebuttal expert first identified on July 28, 2023. See ECF No. 379.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. Subject to the preceding objection, the Court may consider this evidence for

purposes of the summary judgment motion.

**42.    Dr. Wiley's rebuttal report, which the State served on September 1, 2023, does not reference the cost estimate or workforce shortages described in the McKay Declaration or any other costs or workforce shortages related to Apex expansion in Georgia. See ECF No. 439-4 (Rebuttal Report of Dr.**

Andrew Wiley ("Wiley Rep.")); ECF No. 439-5 (Errata to Wiley Rep. ("Wiley Errata")).

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Subject to the preceding objection, the Court may consider this evidence for purposes of the summary judgment motion.

43. **The list of considered materials in Dr. Wiley's report also does not reference any cost estimate or workforce shortages described in the McKay Declaration.** *See generally* **Wiley Rep.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Subject to the preceding objection, the Court may consider this evidence for purposes of the summary judgment motion.

44. **On November 7, 2023, the State filed the McKay Declaration in support of its Motion to Exclude the Testimony of Dr. Robert Putnam, at ECF No. 428-4, and its Motion for Summary Judgment, at ECF No. 429-10.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Subject to the preceding objection, the Court may consider this evidence for purposes of the summary judgment motion.

45. **In the Declaration, Mr. McKay offers his opinion about cost and workforce shortages, which he claims impact the State's ability to expand the Apex Program to all public schools in Georgia. ECF No. 428-4 at ¶¶ 6-11.**

**RESPONSE:** Objection. The evidence cited does not support the fact stated. As stated in the declaration, "DBHDD conducted an informal cost estimate for expanding the APEX program to all 2,308 public schools in Georgia" which would be "a total estimated cost of $313.5 million." ¶¶ 7, 8. The declaration further states, "APEX has not

been expanded to every public school in Georgia due to several factors, among the most

material are cost and workforce shortages." ¶ 6. And that, "This cost estimate for

expanding APEX is subject to the availability of workforce to staff all 2,308 public

schools." ¶ 11.

**46.    The McKay Declaration, ECF No. 428-4, neither identifies nor attaches any
documents produced in response to the United States' Fifth Request for
Production of Documents containing the cost figures referenced in Mr.
McKay's Declaration.**

   **RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. Defendant further objects to the suggestion or implication that the United States'

Fifth Request for Production of Documents requested documents that should have been

produced and were not so produced.

**47.    The United States wrote opposing counsel on November 9, 2023, requesting
that the State confirm (1) the date of the cost estimate referenced in the
McKay Declaration and (2) whether the State had produced the cost
estimate or any documents on which the estimate relied and, if so, the Bates
numbers of those documents. *See* ECF No. 439-6 (Nov. 9. 2023 Email from A.
Hamilton Watson to M. Johnson and Nov. 10, 2023 Response).**

   **RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case.

**48.    In response to the United States' November 9, 2023 email seeking
clarification about the McKay Declaration, the State did not provide the
information that the United States requested, but rather stated, in full and
without explanation, that: "Mr. McKay's affidavit speaks for itself. To the
extent you disagree, given the timetable we're operating under, the issue is
now one for summary judgment." *See* ECF No. 439-6.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case.

**49.    During his January 27, 2022 deposition, Mr. McKay testified that DBHDD had not conducted any analysis of the cost of expanding Apex. Ex. X, 1/27/22 McKay Dep. at 184:4-185:4, 187:8-12.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Defendant also objects because the evidence cited does not support the fact stated. Lastly, Defendant objects to the suggestion or implication that such an analysis was required.

**50.    At no time between January 27, 2022 and the March 10, 2023 close of fact discovery or the October 31, 2023 close of expert discovery did the State supplement its discovery responses to include the current cost estimate evidence referenced in the McKay Declaration or any underlying data or documents supporting the cost estimate. See ECF No. 439-6.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Defendant also objects because the evidence cited does not support the fact stated. Lastly, Defendant objects to the suggestion or implication that supplement was required or that the State has not fully complied with its discovery obligations.

**51.    Mr. McKay has worked at DBHDD since 2016. See Ex. E, 3/9/23 McKay Dep. at 13:20-14:10.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Subject to the preceding objection, the Court may consider the remainder of this evidence for purposes of the summary judgment motion.

52. **In both of his depositions, including when he served as a witness in the 30(b)(6) deposition of the State, Mr. McKay demonstrated his detailed understanding of the Apex Program, such as the funding sources for multiple expansions of the program. See Ex. E, 3/9/23 McKay Dep. at 12:7-13:19, 16:8-17:1, 33:13-34:9, 34:25- 39:25, 55:3-10, 63:7-15; see also Ex. X, 1/27/22 McKay Dep. at 21:25-22:1, 32:11- 25, 35:3-38:12, 140:1-144:24, 184:4-185:4, 187:8-12.**

    **RESPONSE:** Undisputed. The Court may consider this evidence for purposes of

the summary judgment motion.

53. **Mr. McKay and his staff coordinate with numerous stakeholders regarding the Apex Program. See Ex. X, 1/27/22 McKay Dep. at 59:21-60:14, 80:1-80:23, 107-108:10, 124:13-129:19.**

    **RESPONSE:** Objection. The evidence cited does not support the fact stated. In

addition, the fact is vague, especially with respect to the meaning of "coordinate" and

"stakeholders." Lastly, the fact is immaterial to the claims and defenses in this case.

Subject to the preceding objections, the Court may consider this evidence for purposes

of the summary judgment motion.

54. **Under this Court's scheduling orders, the parties were required to disclose their affirmative experts no later than March 15, 2023. ECF No. 344.**

    **RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case.

55. **Under this Court's scheduling orders, the parties were required to disclose any rebuttal expert witnesses no later than July 28, 2023. ECF No. 379.**

    **RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case.

56. **The State did not plead fundamental alteration, which is an affirmative defense, in its Answer to the United States' Complaint. See ECF No. 67 at 1-3.**

    **RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is a legal conclusion. Defendant objects to the suggestion or implication that it was required to take any act or the legal implications of any act or failure to act. In addition, the evidence cited does not support the fact. Lastly, the fact is immaterial to the claims and defenses in this case.

## Funding

57. **Each year the General Assembly appropriates money to the Georgia Department of Education that is designated for the GNETS Program, and each year the Georgia Department of Education allocates the funds to regional GNETS programs, through their fiscal agents, by applying its spreadsheet formula using the weighted student count and personnel T&E earnings submitted by the programs in their annual grant applications. See, e.g., Ex. II, Bell Dep. at 30:5-11, 30:23-31:4, 33:3-34:22, 140:2-141:16, 166:23-167:20; 206:3-19; Ex. N, Ngeve Dep. at 263:16- 264:24; ECF No. 395-39 (Pl. Mot. for Partial Summ. J. Ex. 7); Ex. L, Cleveland Dep. at 158:25-159:10, 159:20-161:5.**

    **RESPONSE:** Objection. The statement contains more than one purported statement of fact in violation of LR 56.1(B)(1). Defendant also objects because the evidence cited does not support the fact as stated. Defendant objects that the fact is vague, especially with respect to the phrase "spreadsheet formula." Lastly, Defendant objects to the extent that the fact suggests or otherwise implies that the State administers the GNETS Program.

58.    **While some Local Education Agencies ("LEAs") provide facilities and transportation, not all LEAs contribute in-kind services to the regional GNETS programs serving their students. See, e.g., Ex. J, Braddock Dep. at 35:7-21, 83:4-24, 204:25-205:10, 205:11-17 (identifying one of the nine LEAs served by the Cedarwood GNETS program who provides a paraprofessional for a student served in GNETS).**

**RESPONSE:** Objection. Defendant objects because the evidence cited does not

support the fact stated. In addition, the fact is vague. The statement is also stated as

argument rather than a matter of undisputed fact. Lastly, Defendant objects to the extent

that the fact suggests or otherwise implies that the State administers the GNETS

Program.

59.    **Most regional GNETS program staff positions are funded by the state GNETS grant, with voluntary funding towards one or a few positions provided by an LEA. See, e.g., Ex. CC, Livingston Dep. at 200:22-201:1 (salaries are covered by GNETS state grant); Ex. J, Braddock Dep. at 83:4-24, 204:25-205:10 (listing the subset of LEAs that contribute funds to offset costs for a few staff members).**

**RESPONSE:** Objection. The evidence cited does not support the fact stated. The

statement is also stated as argument rather than a matter of undisputed fact. In addition,

the fact is vague, especially with respect to the terms "most" and "a few." Defendant

further objects to the extent that the fact suggests or otherwise implies that the State

administers the GNETS Program.

60.    **Nearly all LEAs participate in the GNETS Program. See GNETS Map and GNETS Directory. McCart Rep. at App. B and App. C.**

**RESPONSE:** Objection. The fact is vague, especially with respect to the

reference to "nearly all LEAs." Defendant objects that the cited evidence, the proffered

expert testimony of Dr. Amy McCart, is subject to a pending Motion to Exclude by

Defendant. Should that Motion be granted, Defendant objects to the cited evidence as

inadmissible. Subject to the preceding objections, the Court may consider the remainder

of this evidence for purposes of the summary judgment motion.

**61.     There is no way to get funding for services for students with behavior-related disabilities other than submitting an application for GNETS funding. See, e.g., ECF No. 429-2 (Def. SOMF) at ¶ 325 (not disputed by the United States); Ex. II, Bell Dep. at 187:15-19 (not aware of sources of funding for students in general education settings who are exhibiting emotional and behavioral challenges); Ex. N, Ngeve Dep. at 263:16-264:24 (the GNETS grant application is "an application we have to submit annually to the State Department" in order to get GNETS funding).**

**RESPONSE:** Objection. The evidence cited does not support the fact stated,

which is also overbroad, absolute ("there is no way"), and vague. In addition, the

statement is stated as argument rather than a matter of undisputed fact. Defendant does

not dispute that in order to receive GNETS grant money, regional GNETS programs

must submit an annual GNETS grant application.

**62.     Regional GNETS programs must submit their program budgets to GaDOE and have those budgets approved by GaDOE. ECF No. 395-2 (United States' Statement of Material Facts ("U.S. SOMF")) at ¶ 29 (GNETS Rule charges SEA with approving regional GNETS program budgets); see also ECF No. 395-33, Def. Resp. to RFA No. 25; Ex. I, Holifield Dep. at 104:10-106:18; Ex. Y, McCollum Dep. at 101:4-5, 102:14-17, 103:6-21, 107:4-109:8, 214:9-17; Pl.'s Ex. 82; Ex. L, Cleveland Dep. at 158:25-159:10, 159:20-161:5, 208:9-210:4; Ex. GG, Stevenson Dep. at 149:4-150:5; Ex. EE, Gilchrist Dep. at 243:11-21, 245:6-16.**

**RESPONSE:** Objection. The evidence cited does not support the fact stated. In

addition, the statement is overbroad. Defendant does not dispute that in order to receive

GNETS grant money, regional GNETS programs must submit their program budgets to

GaDOE as part of the GNETS grant application. Defendant objects to the extent that the

fact suggests or otherwise implies that the State administers the GNETS Program.

Lastly, the fact is incomplete in that regional GNETS programs must also submit their

program budgets to and receive approval by their fiscal agents as part of the GNETS

grant application process. Deposition of Cassandra Holifield, Doc. No. [401] at 105:24-

106:6; see also Deposition of Haley Livingston, Doc. No. [410] at 118:9-10; 199:25-

200:4; 229:12-18 (explaining Harrell Learning Center's RESA prepares its budget).

63.    **In addition to the assurances that regional GNETS programs submit to
       GaDOE with the GNETS grant application, the regional GNETS programs
       provide assurances to GaDOE in connection with additional grant funds
       for therapeutic services, see U.S. SOMF at ¶ 136, and when regional GNETS
       programs seek approval from GaDOE to move to another site. Ex. BB,
       Rowland Dep. 111:21- 112:16, 114:8-115:21.**

       **RESPONSE:**  Objection. The evidence cited does not support the fact stated.

The cited evidence instead shows that the assurances referred to in Ex. BB (Rowland

Dep. 111:21- 112:16, 114:8-115:21) were for a specific instance of a voluntary facilities

grant application. In addition, regional GNETS Programs do not seek permission or

approval from GaDOE "to move to another site." Indeed, decisions to close programs or

locations are local decisions. Deposition of Vickie Cleveland, Doc. No. [424] at 114:11-

14; Doc. No. [429-2] at ¶ 259

       In response to the citation to U.S. SOMF at ¶ 136, Defendant refers to and

incorporates its objection in Response to U.S. SOMF at ¶ 136, Doc. No. [434-1] at 71,

as follows: "Objection, the evidence does not support the statement. First, the evidence does not show that GNETS Programs 'must provide the State with various assurances.' Instead, the evidence shows the GNETS programs and the fiscal agent enter into assurances with each other. (See, e.g., Plaintiff's Ex. 120.) Second, the evidence shows that it is the fiscal agent that decides to enter into any agreement with a therapeutic services provider, it is the fiscal agent that reviews the provider agreement, and the fiscal agent that "make[s] any adjustments that they deemed (sic) to be necessary. Including statements related to the contractors (sic) liability for this service." (Plaintiff's Ex. 118.)"

Lastly, the evidence instead shows that there are fiscal assurances signed between the GNETS Programs and their respective RESAs/LEAs as the fiscal agents for the GNETS Programs. Deposition of Lakesha Stevenson, Doc. No. [415] at 145:4-12; 144:17-20. There are no assurances between the GNETS Programs and GaDOE. Deposition of Lakesha Stevenson, Doc. No. [415] at 145:13-15. There are also no separate assurances for the therapeutic services grant; it is a subgrant. Deposition of Vickie Cleveland, Doc. No. [424] at 150:8-11.

**64.    Each regional GNETS program must have its budget approved by the State. See, e.g., Ex. I, Holifield Dep. at 104:4-20, 105:24-106:18.**

**RESPONSE:** Objection. The evidence cited does not support the fact stated. In addition, the statement is overbroad. Defendant does not dispute that in order to receive GNETS grant money, regional GNETS programs must submit their program budgets to

GaDOE as part of the GNETS grant application. Defendant objects to the extent that the fact suggests or otherwise implies that the State administers the GNETS Program. In addition, the fact is incomplete in that regional GNETS programs must also submit their program budgets to and receive approval by their fiscal agents as part of the GNETS grant application process. Deposition of Cassandra Holifield, Doc. No. [401] at 105:24-106:6; see also Deposition of Haley Livingston, Doc. No. [410] at 118:9-10; 199:25-200:4; 229:12-18 (explaining Harrell Learning Center's RESA prepares its budget).

**65.    Some GNETS expenditures require approval by the State even after funds have been released to the fiscal agent. See, e.g., Ex. J, Braddock Dep. at 25:25- 26:11 (certain program purchases need approval through GaDOE); Ex. Y, McCollum Dep. at 202:22-203:9, 204:2-5, 205:18-25, 206:20-209:7 (State denied regional GNETS program and LEA authority to use program funds to make purchase designed to help get GNETS students into the community).**

     **RESPONSE:** Objection. The evidence cited does not support the fact stated and mischaracterizes the evidence. In fact, Ms. Braddock could not identify a single item that required State approval above the RESA, which runs the GNETS Program's PO System (purchasing system). Ex. J at 25:14-26:11.

     In addition, Defendant objects that the fact is stated as argument rather than undisputed fact.

     Next, the fact is incomplete and relies on hearsay and speculation, which is not appropriate for summary judgment. See FRE 802; FRCP 56; Garrison v. Sam's E., Inc., No. 1:17-CV-381-C, 2019 WL 2603176, at *7 (S.D. Ala. Apr. 3, 2019), aff'd, 787 F.

App'x 627 (11th Cir. 2019) ("unsupported speculation ... does not meet a party's burden of producing some defense to a summary judgment motion"). The deponent specifically advised during the deposition that, "all of this is speculation because I don't know what they talked about." Ex. Y at 208:13-14. In addition, the testimony shows the GNETS Program was also advised to consult with their LEA: "Q: And she [Vickie Cleveland] indicated that Mainstay [GNETS Program] needs to meet with the LEA special ed director to work something out; is that correct? A: It indicates that." Ex. Y at 206:14-17.

Lastly, portions of the cited deposition testimony (Ex. Y at 202:22-203:9, 204:2-5, 205:18-25) are not contained in Ex. Y.

**66.    There are a number of things that do not impact funding for the GNETS Program (aside from the weighted student count and T&E earnings), including student diagnoses and needs identified in their IEPs, as well as things for which funding is earned under the quality basic education formula for students in general education settings, such as specials teachers for elementary students, remediation, tech specialists, and English Language Learner services. Ex. II, Bell Dep. at 166:12- 167:20, 183:14-20, 184:16-185:6-19.**

**RESPONSE:** Objection. Defendant objects that the fact is stated as argument rather than undisputed fact. The evidence cited also does not fully support the fact as stated. The fact is vague, incomplete, and confusing especially with respect to the use of "things" that earn funding under the "quality basic education formula" which is not explained or defined. In addition, the fact does not comply with the provisions set out in LR 56.1(B)(1) because it contains more than one fact. Lastly, certain cited pages of the deposition transcript of Geronald Bell are not included in Plaintiff's Exh. II.

67. **O.C.G.A. § 20-2-152(c)(1) states: "(c)(1) The State Board of Education shall provide for the funding which has been approved by the General Assembly for this purpose for special education programs for students with disabling conditions which are either of such low incidence or of such severity that it is unfeasible or impractical to provide needed educational services through programs offered by local school systems. The state board may provide such educational services with funds specifically approved by the General Assembly for this purpose by:**

   **(A) Providing grants directly to regional educational service agencies for provision of services;**

   **(B) Either directly contracting with or making grants to or authorizing local units of administration to contract with or make grants to suitable private or public institutions, inside or outside this state, for the provision of such services; provided, however, that the educational and related services of the child must be provided by professionals, such as teachers, school psychologists, speech therapists, physical and occupational therapists, and audiologists who meet the certification or licensing standards of their profession in the state in which the institution is located;**

   **(C) Authorizing local units of administration to contract with suitable public agencies and departments, including institutions in which eligible children are confined and out-patient centers serving eligible children, inside and outside this state, for the provision of such services;**

   **(D) Entering into reciprocal agreements with other states or political subdivisions thereof for the provision of such services; or**

   **(E) Operating the Georgia School for the Deaf, the Georgia Academy for the Blind, the Atlanta Area School for the Deaf, and other special schools as approved by the General Assembly.**

   **(2) The state board may promulgate rules, regulations, and standards and establish the terms and conditions governing the provision of state aid provided for this purpose by the General Assembly under this subsection and perform any and all acts necessary or proper to carry out the provisions, intent, and purpose of this subsection."**

**RESPONSE:** Objection. The fact is a legal conclusion which does not comply with LR 56.1(B)(1). Subject to the preceding objection, the Court may consider this evidence for purposes of the summary judgment motion.

68.    **O.C.G.A § 10-2-152(b) states in full: "Local school systems shall, subject to any limitations specified in this Code section, provide special education programs for all eligible students with special needs who are residents of their local school systems, either by establishing and maintaining such educational facilities and employing such professional workers as are needed by these students or by contracting with other local school systems, regional educational service agencies, or other qualified public or private institutions for such services."**

**RESPONSE:** Objection. O.C.G.A § 10-2-152(b) does not exist. Presuming Plaintiff intended to refer to O.C.G.A § 20-2-152(b), the fact is a legal conclusion which does not comply with LR 56.1(B)(1). Subject to the preceding objection, the Court may consider this evidence for purposes of the summary judgment motion.

**Individuals with Disabilities Education Act**

69.    **The Individuals with Disabilities Education Act ("IDEA") states that State Education Agencies ("SEAs") must take steps to "ensure" that LEAs are properly implementing IDEA requirements, including the least restrictive environment requirement ("LRE"). 20 U.S.C. § 1416(a).**

**RESPONSE:** Objection. The fact is a legal conclusion which does not comply with LR 56.1(B)(1).

70.    **The GNETS Rule states that "[t]he SEA shall . . . [m]onitor GNETS to ensure compliance with Federal and state policies, procedures, rules, and the delivery of appropriate instructional and therapeutic services." Ga. Comp. R. & Regs. 160-4- 7-.15(5)(a)(iii).**

**RESPONSE:** Objection. The fact is a legal conclusion which does not comply

with LR 56.1(B)(1). Subject to the preceding objection, the Court may consider this

evidence for purposes of the summary judgment motion.

71. **The Dear Colleague Letter issued by the United States Department of Education on August 1, 2016 states: "Research shows that school-wide, small group, and individual behavioral supports that use proactive and preventative approaches, address the underlying cause of behavior, and reinforce positive behaviors are associated with increases in academic engagement, academic achievement, and fewer suspensions and dropouts. In short, children are more likely to achieve when they are directly taught predictable and contextually relevant school and classroom routines and expectations, acknowledged clearly and consistently for displaying positive academic and social behavior, consistently prompted and corrected when behavior does not meet expectations, and treated by others with respect.." ECF No. 429-29 at 6-7 (footnotes omitted).**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. Subject to the preceding objection, the Court may consider the evidence for

purposes of the summary judgment motion.

72. **Footnote 12 of the August 1, 2016 Dear Colleague Letter cites as sources of support two separate articles co-authored by the United States' expert, Dr. Robert Putnam. ECF No. 429-29 at 6 n.12.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case.

73. **GaDOE has required that GNETS directors conduct an IEP file review for each and every student in the GNETS Program and produce certain information about the students to the State. Ex. K, Cole Dep. at 369:1-25.**

**RESPONSE:** Objection. The evidence cited does not support the fact stated. The

cited evidence never states that GaDOE "required that GNETS directors" do so. Instead

the evidence shows the GNETS Director twice testified she was asked to complete the

file review. Ex. K at 369:2, 21-23. In addition, Defendant objects that the statement is

stated as argument rather than undisputed fact. The fact is also immaterial to the claims

and defenses in this case. Lastly, Defendant objects to the extent that the fact suggests

or otherwise implies that the State administers the GNETS Program.

**74.    To facilitate the IEP file review process, GaDOE requested specific information and later provided a form with a drop-down menu. See, e.g., Ex. 7, GA05250025.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. In addition, the cited evidence does not support the fact's assertion that GaDOE

provided "a form with a drop-down menu" or that this was to "facilitate" anything.

Defendant further objects to the extent the fact suggests or otherwise implies that the

State administers the GNETS Program.

**75.    The drop down form requires information related to each student's disability, placement history, behavior interventions, history of restraint and seclusion, and the regional GNETS program's compliance with the entrance criteria outlined in the GNETS rules, among other information. See e.g., Ex. 7, GA05250025; Ex. K, Cole Dep. at 369:1-15; Ex. L, Cleveland Dep. at 199:7-202:20.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. Defendant further objects to the term "requires" and objects to the extent the fact

suggests or otherwise implies anything was "required" by GaDOE. The cited evidence

also does not support the fact's assertion that the form requested information on

"compliance with the entrance criteria outlined in the GNETS rules." Lastly, Defendant

objects to the extent the fact suggests or otherwise implies that the State administers the

GNETS Program.

76.  **The IDEA clearly lays out the makeup of an IEP Team as being composed of: the parents of a child with a disability; not less than 1 regular education teacher of such child (if the child is, or may be, participating in the regular education environment); not less than one special education teacher, or where appropriate, not less than 1 special education provider of such child; a representative of the local educational agency who is (1) qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities, (2) knowledgeable about the general education curriculum, and (3) knowledgeable about the availability of resources of the local educational agency; an individual who can interpret the instructional implications of evaluation results; and at the discretion of the parent or the agency, other individuals who have knowledge or special expertise regarding the child, including related services personnel as appropriate; and whenever appropriate, the child with a disability. IEP Team members may be excused from participation under certain circumstances. 20 U.S.C. § 1414(d)(1)(B), (C).**

RESPONSE: Objection. The fact is a legal conclusion which does not comply

with LR 56.1(B)(1). Defendant further objects in that it is stated as argument rather than

undisputed fact. Subject to the preceding objections, the Court may consider the

remainder of this evidence for purposes of the summary judgment motion.

77.  **Lisa Futch testified that she was aware of an instance where the then- State Director of Special Education, Zelphine Smith-Dixon, was present as a member of an IEP Team in her role as State Director of Special Education. Ex. O, Futch Dep. at 349:20-350:14.**

RESPONSE: Objection. The fact is immaterial to the claims and defenses in this

case. Defendant further objects to the extent the fact suggests or otherwise implies that

the State administers the GNETS Program.

**At Risk**

78. **Students at high risk of placement in segregated educational settings typically have behaviors including aggression, violence, defiance, disruption, property damage, and/or elopement. Those behaviors often derive from diagnoses including Conduct Disorder, Intermittent Explosive Disorder, Oppositional Defiant Disorder, Attention Deficit Hyperactivity Disorder, or Autism Spectrum Disorder. Putnam Rep. at 14.**

    **RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. In addition, the fact does not comply with 56.1(B)(1) because it contains more than one purported fact. Defendant further objects that cited evidence, the proffered expert testimony of Dr. Robert Putnam, is subject to a pending Motion to Exclude by Defendant. Should that Motion be granted, Defendant object to the cited evidence as inadmissible.

79. **The State collects data about the provision of Medicaid services to children. See, e.g., Dec. 27, 2022 Letter from Edward Bedard to Andrea Hamilton (producing data set responsive to Interrogatory 21 of the Pl.'s Second Set of Interrogs. with individual-level data reflecting paid claims for Medicaid services provided to students who attended GNETS during SY2020); Feb. 27, 2023 Letter from Melanie Johnson to Kelly Gardner (producing data set responsive to Interrogatory 21 of the Pl.'s Second Set of Interrogs with individual-level data reflecting paid claims for Medicaid services provided to students who attended GNETS during SY2022); Pl.'s Second Set of Interrogs. at ¶ 21; see also Dec. 15, 2022 Letter from Edward Bedard to Andrea Hamilton (producing, inter alia, data responsive to Pl.'s Second Set of Interrogs.); Pl.'s Second Set of Interrogs. at ¶¶19, 20 (requesting data about, inter alia, the total number of children receiving specific Medicaid services and the total number of units of services paid for annually from 2016 through 2021).**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. In addition, the fact is vague as to any "data" collected. Lastly, Defendant objects as the cited evidence is not in the record.

80. **The State collects data about the provision of Apex services. See, e.g., Def.'s Objs. & Resps. to Pl.'s Third Req. for Produc. of Docs., Sept. 12, 2022, at ¶ 5 (producing data sets responsive to Pl.'s 3d Request for Production No. 5, including monthly programmatic reports and monthly progress reports about Apex programs and services); Dec. 15, 2022 Letter from Edward Bedard to Andrea Hamilton (producing, *inter alia*, data sets responsive to Pl.'s Third Req. for Produc. Of Docs.); Ex. X, 1/27/22 McKay Dep. at 55:6-56:8 (DBHDD receives data about services provided through Apex, such as individual counseling).**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. In addition, the fact is vague as to any "data" collected. Lastly, Defendant objects as the cited evidence is not in the record.

81. **The State collects data about children who are placed in GNETS programs. See, e.g., Oct. 12, 2020 Letter from Joseph Saul to Aileen Bell Hughes (producing data set responsive to Interrogatory 13 of the Jan. 27, 2022 First Set of Interrogs.); Def.'s Resp. to Pl.'s First Set of Interrogs. at ¶ 13 (producing data sets about students in GNETS including, inter alia, students' name, grade, date of birth, disability, race/ethnicity, gender, local educational authority, home school, GNETS program and location, date of admission into GNETS, Medicaid eligibility and enrollment, and PeachCare for Kids eligibility and enrollment).**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. In addition, the fact is vague and incomplete as to the "data" collected and which agency(ies) are in possession of the various data elements listed in the purported fact. Defendant objects to the extent the fact suggests or otherwise implies that the State

administers the GNETS Program. Lastly, Defendant objects as the cited evidence is not

in the record.

**82.    The State collects data about students who receive discipline in school, including office discipline referrals, suspensions, referrals to alternative schools, and expulsions. See Ex. 43, K-12 Student Discipline Dashboard, State of Georgia Governor's Office of Student Achievement, available at https://public.gosa.ga.gov/noauth/extensions/DisciplineDASHV1/DisciplineDASHV1.html, last visited Nov. 27, 2023 (reporting data about, inter alia, student enrollment, number students with disciplinary incidents, suspension rates, expulsion rates); see also Ex. 44, Student Discipline, Georgia Department of Education, available at https://www.gadoe.org/wholechild/Pages/Student-Discipline.aspx, last visited Nov. 27, 2023.**

    RESPONSE: Objection. The fact is immaterial to the claims and defenses in this

case. In addition, the fact is incomplete in that it shows the Governor's Office of

Student Achievement possesses the listed data. (Pl's Ex. 43). Plaintiff's Exhibit 44 does

not support the fact stated.

**83.    The State has required Apex partners to report disciplinary incidents of students receiving Apex services. Deposition of Layla Fitzgerald ("L. Fitzgerald Dep.") 127:23-131:15 (attached hereto as Exhibit KK); Deposition of Dimple Desai Dep. 191:23-195:7 (attached hereto as Exhibit LL).**

    RESPONSE: Objection. The fact is immaterial to the claims and defenses in this

case.

**84.    The State requires schools to report data about disciplinary referrals as part of their PBIS implementation. Ex. T, Byars Dep. at 171:5-11.**

    RESPONSE: Objection. The fact is immaterial to the claims and defenses in this

case. In addition, in contrast to the stated fact, implementation of PBIS is not required

in the State of Georgia but is voluntary and "encouraged." O.C.G.A. § 20-2-741(b);

Deposition of Garry McGiboney, Doc. No. [408] at 160:2–20; Deposition of Jason

Byars, Doc. No. [411] at 222:4-6. Lastly, Defendant objects in that the cited pages of

the deposition transcript of Jason Byars are not in Plaintiff's Exh. T.

**85.    State officials acknowledge that data about office disciplinary referrals can be used to identify students who may need additional supports. Ex. T, Byars Dep. at 95:25-96:14; see also Ex. T, Byars Dep. at 113:18-114:11.**

     **RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. In addition, the evidence does not fully support the fact as stated in that Plaintiff

has identified one such State employee (Jason Byars) rather than more than one State

"officials." Lastly, Defendant objects in that the cited pages of the deposition transcript

of Jason Byars are not in Plaintiff's Exh. T.

**Reasonable Modifications**

**86.    The State of Georgia offers, through its publicly funded behavioral health and Medicaid programs, key integrated therapeutic services and supports— including IC3, Intensive Family Intervention ("IFI"), and Individual and Group Counseling—designed for children with behavior-related disabilities. Ex. 30, FY 23 Ga. DBHDD Provider Manual for Community Behavioral Health Providers (January 1, 2023) at 3, 20-124; Ex. 53, Ga DCH Policies and Procedures for Community Behavioral Health and Rehabilitation Services (revised Oct. 1, 2023) at 89-96; Def. Resp. to Pl.'s Interrog. No. 17.**

     **RESPONSE:** Objection. The State of Georgia, through DBHDD and DCH, does

not deliver direct therapeutic services or care. Deposition of Frank Berry, Doc. No.

[407] at 147:14-148:8; 167:16-18; 90:19-91:5; Deposition of Judy Fitzgerald, Doc. No.

[413] at 217:17-20. DBHDD contracts with government and private providers of

behavioral health services, including community service boards (CSBs), to provide some behavioral health services, including those listed in the fact. Deposition of Judy Fitzgerald, Doc. No. [413] at 217:23-218:1. DCH is not a service provider either; and Medicaid is an insurance plan rather than a service delivery plan. Deposition of Frank Berry, Doc. No. [407] at 173:15-20. See Doc. No. [429-2] at ¶¶11-12, 27.

Defendant further objects that the fact is immaterial to the claims and defenses in this case. Defendant objects to the phrase "key integrated therapeutic services and supports" which is vague and undefined. Lastly, Defendant objects to citation to evidence not in the record (Def. Resp. to Pl.'s Interrog. No. 17.)

**87.    The State acknowledges that integrated therapeutic services and supports help students with behavior-related disabilities remain in their communities and avoid restrictive placement. See, e.g., Ex. 29, Georgia CMHS Block Grant Application FY 2020-2021 at 172 ("[T]he ability to keep youth in their communities and to improve their functioning is directly related to the types of services and supports made available to them and their families."); Ex. X, 1/27/22 McKay Dep. at 131:21-132:24 (testifying that the State's Medicaid-reimbursable services for children with behavior- related disabilities, specifically including IC3, are "important to helping DBHDD achieve its goal of maintaining youth in their homes, schools and communities.").**

**RESPONSE:** Objection. Defendant objects that the fact is immaterial to the claims and defenses in this case. Defendant further objects because the cited evidence does not support the fact. Neither the text of the Georgia CMHS Block Grant Application nor Mr. McKay's 1/27/22 deposition (which was not his 30(b)(6) deposition) are admissible sources of what "[t]he State acknowledges."

88.   **Through the Georgia Apex Program, the State has the goal of providing access to key integrated therapeutic services and supports in "all public schools in the State of Georgia." Ex. X, 1/27/22 McKay Dep. at 186:9-16; see Ex. KK, L. Fitzgerald Dep. at 219:11-19 (testifying that DBHDD and other child-serving agencies in Georgia are working "to expand the services that we provide through Apex to more schools across the State").**

**RESPONSE:** Objection. Defendant objects because the cited evidence does not

support the fact. Mr. McKay testifies that, for DBHDD, an "[u]nofficial target would be

that this [Apex] program is available in all public schools in the State of Georgia." He

does not mention, and Defendant maintains its objection to, the phrase "key integrated

therapeutic services and supports" which is not defined. See Response to ¶ 86 supra.

Lastly, Defendant objects because the cited pages of the deposition transcript of L.

Fitzgerald are not included in Plaintiff's Exh. KK.

89.   **As far back as 2010, the State acknowledged that "there is no assurance that GNETS is a cost-effective placement for providing these services." Ex. 45, Georgia Department of Audits and Accounts Performance Audit Operations, GNETS, at 13.**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because

the fact is stated as argument rather than as a matter of undisputed fact.

90.   **By the State's own estimate, it would cost less to serve students in their local schools than in GNETS. Ex. 45 at 22.**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because

the fact is stated as argument rather than as a matter of undisputed fact. Defendant

further objects that the fact is misleading and incomplete, as the audit goes on to state,

"while this scenario [serving students in their local schools] would cost approximately

$16 million less, it is not known what additional services – and at what costs – would

have to be provided to meet the students' needs." Pl's Ex. 45 at 22.

**91.    A recent State-coordinated analysis of the funding framework for Georgia's behavioral health system further illustrates that serving more students in integrated educational settings through the State's Medicaid program, in lieu of placement in the GNETS Program, would generate significant cost-savings for the State. Ex. 46, Mindworks Georgia, "Our Funding Framework for Children: Understanding How We Measure Spending Across Georgia's Behavioral Health System of Care," at 28-32, https://mindworksga.org/download/funding-framework- report/ (last accessed Nov. 24, 2023).**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because

the fact is stated as argument rather than as a matter of undisputed fact. Defendant also

objects on the ground that the cited evidence does not support the statement. Lastly, the

fact is immaterial to the claims and defenses in this case.

**92.    The State acknowledges that effective coordination between State agencies and key stakeholders is "at the heart" of the State's System of Care approach. Ex. 47, Georgia System of Care Plan 2020 at 11.**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because

the fact is stated as argument rather than as a matter of undisputed fact. Defendant also

objects on the ground that the cited evidence does not support the statement. The cited

evidence provides, "At the heart of the SOC approach is coordination and collaboration

between child-serving agencies and organizations, and between the child or youth,

family, and the larger system." Third, the fact is immaterial to the claims and defenses

in this case. Lastly, Defendant objects to any attempt to attribute a statement made by

the Interagency Directors Team in the cited document as being statement of "the State."

93.    **The State requires that approved community-based behavioral health
       service providers comply with minimum standards relating to the training
       and qualifications of therapeutic staff. Ex. 30, FY 23 Georgia DBHDD
       Provider Manual for Community Behavioral Health Providers (January 1,
       2023) at 377-396 (setting forth the community service requirements,
       including relating to professional staff training and qualifications, for
       approved community behavioral health service providers).**

       **RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. In addition, it is stated as argument rather than undisputed fact and thus does not

comply with the provisions set out in LR 56.1(B)(1).

94.    **The State acknowledges that it is important for community-based behavioral
       health service providers to use evidence-based practices. Ex. X, 1/27/22
       McKay Dep. at 88:12-89:25; Deposition of Monica Johnson 92:24-93:14
       (attached hereto as Exhibit MM).**

       **RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. In addition, the cite does not support the stated fact. The evidence instead shows

McKay agrees that it is important, in his view, that "Georgia's behavioral health service

providers" use evidence-based practices. Pl's Ex. X at 88:19-24. Ms. Johnson testifies

she is a proponent of evidence-based practices generally, but there is not specific

mention of "community-based behavioral health service providers" specifically. Pl's Ex.

MM at 92:24-93:4. Defendant objects to the testimony of either McKay or Johnson

being used as testimony of what "the State acknowledges," as neither were testifying as

a 30(b)(6) witness in the cited depositions.

95.   **The State seeks to promote the use of certain evidence-based behavioral health services and supports, including by offering trainings to community-based service providers. Ex. X, 1/27/22 McKay Dep. at 89:9-91:19; Ex. B, J. Fitzgerald Dep. at 104:2-5.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. Subject to the preceding objection, the Court may consider this evidence for purposes of the summary judgment motion.

96.   **The State likewise seeks to promote the implementation of Positive Behavior Intervention and Supports, including by offering trainings to educational and therapeutic staff. Ex. U, 30(b)(6) Hill Dep. at 34:11-35:6.**

**RESPONSE:** Objection. The cited evidence does not support the fact. Hill agreed that "GaDOE currently support[s] Georgia schools with their adoption of the PBIS framework." In addition, portions of the cited deposition testimony are not included in Ex. U. Subject to the preceding objections, the Court may consider the remainder of this evidence for purposes of the summary judgment motion.

**Miscellaneous Facts**

97.   **The goal of the GNETS Program, pursuant to the GNETS Rule, is "to support students with social, emotional and/or behavioral challenges." Ga. Comp. R. & Regs. § 160-4-7-.15(2)(b).**

**RESPONSE:** Objection. The cited evidence does not support the fact. The cited portion of the Rule states, "GNETS services aim to support students with social, emotional and/or behavioral challenges." Defendant further objects that the fact constitutes a legal conclusion which does not comply with LR 56.1(B)(1). Subject to the

preceding objections, the Court may consider the remainder of this evidence for

purposes of the summary judgment motion.

98.    **Numerous parents have experienced difficulty removing their children from the GNETS Program after making clear that they do not wish for their child to remain in the Program. See, e.g., Ex. 8, GA05202437 (email from parent to Vickie Cleveland noting the parent's difficulty getting his child returned to their home school despite the fact that he "ha[d] made it very clear that I do not wish for my daughter to continue in the Futures [GNETS] program"). In many cases, parents have had to file due process complaints to modify their child's placement in GNETS—even when they objected to the GNETS placement from the beginning. See, e.g., Ex. 19, GA05201028 at GA05201029 (due process complaint filed by parent whose child was placed in GNETS over their objection); Ex. 18, GA05200962 at GA05200969 (due process complaint filed by parent who had previously objected to child's placement at HAVEN GNETS).**

**RESPONSE:** Objection. Defendant objects to the fact in that it is stated as

argument rather than undisputed fact which does not comply with LR 56.1(B)(1). In

addition, Defendant objects to Plaintiff's characterization of the cited evidence, which

does not support the fact. Plaintiff's Ex. 8 does not show a parent "experience[ing]

difficulty removing" his child from GNETS; instead the parent expresses his

dissatisfaction and seeks information about his child attending his home school.

Plaintiff's Ex. 19 shows a parent's dissatisfaction with Fulton County School District,

not a parent "experience[ing] difficulty removing" their child from GNETS. In addition,

the cited evidence contains hearsay, which cannot be considered at summary judgment.

See FRE 802; FRCP 56. Lastly, Defendant objects to the extent the fact suggests or

otherwise implies that the State administers the GNETS program.

99.   **The State's Director of Special Education concedes that GNETS "wasn't intended to be a place [where students] stay forever." Ex. P, Low Dep. at 154:20- 156:4**

**RESPONSE:** Objection. Defendant objects to the fact in that it is stated as

argument rather than undisputed fact which does not comply with LR 56.1(B)(1). The

fact is also immaterial to the claims and defenses in this case. Lastly, Defendant objects

to the extent the fact suggests or otherwise implies that the State administers the

GNETS program.

100.  **Brooke Cole, Director of Elam Alexander GNETS Academy, testified that the State's GNETS Program Manager concluded that students on the Georgia Alternate Assessment were inappropriate for Elam Alexander and could be served in their home school systems. ECF No. 395-117 (Pl. Mot. for Partial Summ. J. Ex. 83); Ex. K, Cole Dep. at 108:3-110:3, 111:9-18. As a result, Elam Alexander began removing such students from its program and reintegrating them into their home school systems. See ECF No. 395-117 (Pl. Mot. for Partial Summ. J. Ex. 83); Ex. K, Cole Dep. at 98:18-22, 107:6-19, 112:22-113:3.**

**RESPONSE:** Objection. Defendant objects to the fact in that it is stated as

argument rather than undisputed fact which does not comply with LR 56.1(B)(1). The

fact is also immaterial to the claims and defenses in this case. In addition, the cited

evidence is based on hearsay which cannot be considered at summary judgment. See

FRE 802; FRCP 56. Lastly, Defendant objects to the extent the fact suggests or

otherwise implies that the State administers the GNETS program.

101.  **Because the GNETS Program is intended to provide students with therapeutic services and supports that will enable them to return to their home schools, the length of time a student remains in GNETS also depends on the nature of the therapeutic services and supports available to that**

**student. See, e.g., Ex. 25, GA00481564; Ex. Q, Keith Dep. at 26:5-27:24, 81:8-82:3, 86:10-87:8; Ex. N, Ngeve Dep. at 55:9-56:5; Ex. P, Low Dep. at 154:20-155:23.**

RESPONSE: Objection. Defendant objects to the fact in that it is stated as

argument rather than undisputed fact which does not comply with LR 56.1(B)(1). In

addition, the cited evidence does not support the fact stated. Defendant objects to the

extent the fact suggests or otherwise implies that the State administers the GNETS

program.

**102.    The lack of adequate therapeutic services and supports across GNETS is therefore a factor in a student's length of stay in the Program. See, e.g., ECF No. 395-152 (Pl. Mot. for Partial Summ. J. Ex. 117 at GA00197227) (noting that because "many of the GNETS programs are operating below the expected clinical staff ratio for therapeutic services[,] . . . [s]ome of the programs are . . . challenged in providing the recommended amount of therapeutic supports to facilitate optimal turn around in students' behaviors"); Ex. Q, Keith Dep. at 132:10-139:20.**

RESPONSE: Objection. Defendant objects to the fact in that it is stated as

argument rather than undisputed fact which does not comply with LR 56.1(B)(1). It also

contains a legal conclusion which does not comply with LR 56.1(B)(1). The cited

evidence does not support the fact stated. Lastly, Defendant objects to the extent the fact

suggests or otherwise implies that the State administers the GNETS program.

**103.    Students in the GNETS program may be required to meet general exit criteria that apply to all students. See, e.g., Ex. 49, SH_000363; Ex. R, Newsome Dep. at 214:19-224:5; Ex. S, Wolf Dep. at 81:20-82:14. For example, Patricia Wolf testified that one such "exit criteria that appl[ies] across the board to all GNETS of Oconee students" is that a student remain on the "green level" (i.e., displaying positive behavior) 80 percent of the time before transitioning back to their home school. Ex. S, Wolf Dep. at 81:20-**

82:14; see also generally Ex. 49, SH_000363; Ex. R, Newsome Dep. at 214:19-224:5 (discussing similar level system and its relation to student exit).

RESPONSE: Objection. Defendant objects to the fact in that it is stated as argument rather than undisputed fact which does not comply with LR 56.1(B)(1). The cited evidence also does not support the fact stated. The fact is also immaterial to the claims and defenses in this case. Lastly, Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program.

104. **After conducting an extensive examination of the GNETS Program that included a review of records (including individual student records and the depositions of GNETS and State agency personnel), site visits of 70 GNETS facilities, and observations of countless classrooms and approximately 1,000 students in the GNETS Program, Dr. Amy McCart concluded that the GNETS Program demonstrated a lack of the therapeutic services and supports that its students need. McCart Rep. at 137-140, 149-151. This included a "lack of certified behavioral and therapeutic staff," "a lack of understanding of the myriad tools, resources, and support available to help students," and "a universal absence of trauma-informed practices, restorative practices, or effective behavioral practices," among other things. See id. at 137-140, 149-151.**

RESPONSE: Objection. Defendant objects that the cited evidence, the proffered expert testimony of Dr. Amy McCart, is subject to a pending Motion to Exclude by Defendant. Should that Motion be granted, Defendant objects to the cited evidence as inadmissible. Defendant further objects to the fact in that it is stated as argument rather than undisputed fact which does not comply with LR 56.1(B)(1). Lastly, Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program.

**105.** **The GNETS Program fails in numerous ways to provide the comprehensive educational and therapeutic support services that it purports to provide. See, e.g., McCart Rep. at 136-153.**

RESPONSE: Objection. Defendant objects that the cited evidence, the proffered

expert testimony of Dr. Amy McCart, is subject to a pending Motion to Exclude by

Defendant. Should that Motion be granted, Defendant objects to the cited evidence as

inadmissible. Defendant further objects to the fact in that it is stated as argument rather

than undisputed fact which does not comply with LR 56.1(B)(1). Lastly, Defendant

objects to the extent the fact suggests or otherwise implies that the State administers the

GNETS program.

**106.** **Decisions about the location where a regional GNETS program provides GNETS services are not exclusively local decisions. See ECF No. 395-33, Def. Resp. to RFA Nos. 81, 87, 89, 90; ECF No. 395-135, ECF Nos. 395-137 through ECF No. 395-140 (Pl. Mot. for Partial Summ. J. Exs. 100, 102-105); Ex. Z, Owen Dep. at 154:7-155:20; Ex. AA, W. Jones Dep. at 189:4-190:6, 193:1-194:25; Ex. Q, Keith Dep. at 226:16-229:22, 230:14-232:18; Ex. BB, Rowland Dep. at 80:21-82:2, 83:5-88:1, 94:4-96:13, 111:21-116:9, 145:7-146:20; see also Ex. J, Braddock Dep. at 219:21-220:23, 221:17-222:2, 222:15-22, 225:10-226:6.**

RESPONSE: Objection. The cited evidence does not support the fact stated. The

fact is also immaterial to the claims and defenses in this case. Lastly, Defendant objects

to the extent the fact suggests or otherwise implies that the State administers the

GNETS program.

**107.** **For example, the director of GNETS of Oconee testified that if her regional GNETS program were to move from an exclusively school-based program to a center-based program, "it would have to be approved by the Department**

**of Education and [] Facilities." Ex. S, Wolf Dep. at 60:7-17; see also Ex. 34, GA00343802; Ex. S, Wolf Dep. at 56:20-60:17.**

RESPONSE: Objection. The cited testimony is admissible hearsay as to what Hayward Corty, the then-director of Oconee RESA, told Ms. Wolf (who also reports to him). Ex. S at 57:10-14; 60:7-12. Hearsay cannot be considered at summary judgment. See FRE 802; FRCP 56. Similarly, the testimony is inadmissible speculation (Ex. S at 60:13-17). Riley v. Univ. of Alabama Health Servs. Found., P.C., 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.").

108. **Decisions to close programs or locations are not exclusively local decisions. See ECF No. 395-33, Def. Resp. to RFA Nos. 81, 87, 89, 90; ECF Nos. 395-137 through ECF No. 395-140 (Pl. Mot. for Partial Summ. J. Exs. 100, 102- 105); Ex. Z, Owen Dep. at 154:7-155:20; Ex. AA, W. Jones Dep. at 189:4-190:6, 193:1-194:25; Ex. Q, Keith Dep. at 226:16-229:22, 230:14-232:18; Ex. BB, Rowland Dep. at 80:21-82:2, 83:5-88:1, 94:4-96:13, 111:21-116:9, 145:7- 146:20; see also Ex. J, Braddock Dep. at 219:21-220:23, 221:17-222:2, 222:15-22, 225:10-226:6.**

RESPONSE: Objection. The cited evidence does not support the fact stated. The fact is also immaterial to the claims and defenses in this case. Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program. Lastly, evidence instead shows that, "[t]hat's a local decision and we're informed if they're closing programs or locations. They keep us informed of that, and it's also reported in their grant app." Deposition of Vickie Cleveland, Doc. No. [424] at 114:11-14.

109. **For example, the director of GNETS of Oconee testified that her regional GNETS program transitioned from a center-based program to an exclusively school- based program after "[t]he Department of Education in Georgia basically told us that we would have to move out of the facility" and "[t]here was not another facility for us to move into, so the board decided that we should be spread out." Ex. S, Wolf Dep. at 51:13-52:11; see also Ex. S, Wolf Dep. at 54:25-55:23.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this case. In addition, Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program. Lastly, Defendant objects to the fact as vague and misleading, in that the testimony shows the use of the word "board" refers to the local RESA Board of Control. Ex. S at 51:25-52:01.

110. **An IEP team is constrained in its choice of settings for a student's receipt of GNETS services by the settings available in the relevant catchment area. See generally Ex. G, McCart Dep. at 61:6-62:15.**

**RESPONSE:** Objection. Defendant objects that the cited evidence, the proffered expert testimony of Dr. Amy McCart, is subject to a pending Motion to Exclude by Defendant. Should that Motion be granted, Defendant objects to the cited evidence as inadmissible. Defendant further objects to the fact in that it is stated as argument rather than undisputed fact which does not comply with LR 56.1(B)(1). Lastly, Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program.

111. **For example, an IEP team within the Rutland Academy catchment area would not have had the option of determining that a student should be placed in a school-based GNETS program location because Rutland Academy consisted of a single separate facility and the only option for**

GNETS placement in the catchment area served by Rutland was a GNETS
center. See Ex. N, Ngeve Dep. at 45:8-20.

**RESPONSE:** Objection. Defendant objects that the cited evidence, the proffered

expert testimony of Dr. Amy McCart, is subject to a pending Motion to Exclude by

Defendant. Should that Motion be granted, Defendant objects to the cited evidence as

inadmissible. Defendant further objects to the fact in that it is stated as argument rather

than undisputed fact which does not comply with LR 56.1(B)(1). Defendant objects to

the extent the fact suggests or otherwise implies that the State administers the GNETS

program. Lastly, Defendant objects that the fact presents a hypothetical and speculation

rather than a statement of fact. See Garrison v. Sam's E., Inc., No. 1:17-CV-381-C, 2019

WL 2603176, at *7 (S.D. Ala. Apr. 3, 2019), aff'd, 787 F. App'x 627 (11th Cir. 2019)

("unsupported speculation ... does not meet a party's burden of producing some defense

to a summary judgment motion").

112. **GaDOE officials have participated in decisions regarding a regional GNETS
program's ability to serve students in particular counties. See, e.g., ECF No.
395-102 (Pl. Mot. for Partial Summ. J. Ex. 68) (Oconee GNETS Direction
inquiring of GaDOE whether Elam Alexander Academy "can . . . serve
Jasper County Students even though Jasper County falls under GNETS of
Oconee catchment" and GaDOE responding "Jasper county is in the
catchment area for the Oconee GNETS program, thus, students will need to
receive services in their service area by the Oconee Program or in their local
school district. Another concern would be the distance the Jasper county
students would need to travel to receive services at Elam."); Ex. S, Wolf Dep.
at 216:2-217:15.**

**RESPONSE:** Objection. The evidence cited does not support the fact. Instead,

the evidence shows one instance of a GaDOE employee assisting a regional GNETS

Director with a question. Defendant objects to Plaintiff's argumentative characterization of the evidence which does not comply with LR 56.1(B)(1). The fact is also immaterial to the claims and defenses in this case. Lastly, Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program.

113. **Following a comprehensive review of the GNETS Program that included classroom observations in 70 regional GNETS program facilities, Dr. Amy McCart concluded that the GNETS Program—unlike general education settings—was characterized by a focus on functional rather than standards-based curricula. See McCart Rep. at 1, 108, 110-114. Dr. McCart also found an absence of standards- based instruction. See id. at 114-115.**

**RESPONSE:** Objection. Defendant objects that the cited evidence, the proffered expert testimony of Dr. Amy McCart, is subject to a pending Motion to Exclude by Defendant. Should that Motion be granted, Defendant objects to the cited evidence as inadmissible. Defendant further objects to the fact in that it is stated as argument rather than undisputed fact which does not comply with LR 56.1(B)(1). Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program. Lastly, the fact is immaterial to the claims and defenses in this case.

114. **Regional GNETS programs are required to use i-Ready—a supplemental curriculum—for a particular number of minutes each week. See, e.g., Ex. N, Ngeve Dep. at 33:4-23, 253:1-15, 345:14-25.**

**RESPONSE:** Objection. Defendant objects to the extent the fact suggests or implies that the State requires use of i-Ready for a particular number of minutes each week. Evidence instead shows Curriculum Associates recommended use for 90 minutes per week per subject. Doc. No. [418] at 96:17-97:7. In addition, the State does not

require use of i-Ready at all: "It is something that is available, that the program uses, if they choose to, at their regional level." Deposition of Wina Low, Doc. No. [427] at 87:11–13.

**115. Two regional GNETS program directors identified the current GNETS Program Manager and GNETS Program Specialist as individuals to whom they report. See Ex. K, Cole Dep. at 25:6-21, 26:8-15; Ex. R, Newsome Dep. at 54:25- 55:8.**

**RESPONSE:** Objection, the statement is a flagrant misrepresentation of the cited evidence. The entire relevant transcript portions are not cited, which shed light on the Directors' meaning of "reports" in this context. As clarified by Ms. Newsome: "When you say 'report,' you mean like just 'share information.'" The deposing attorney for Plaintiff answered with, "Yes." Newsome Dep. 66:23-67:5. Further, as Ms. Cole testified in the evidence cited, "I don't know if you would say 'report to.'" Cole Dep. 25:5-13. As such, Defendant objects that the statement provided is incorrect, argumentative, and misleading as no GNETS Director reports to the GNETS Program Manager or GNETS Program Specialist in any supervisory capacity as improperly suggested by the statement. Instead, GNETS Directors are employees of the LEA/RESA and report to supervisors employed by the LEA/RESA. Deposition of Talithia Newsome. at 52:15-53:23; Deposition of Haley Livingston at 11:16-20; 277:8-10; Deposition of Cassandra Holifield at 332:16-19; Deposition of Derrick Gilchrist at 256:4-6; 19:10-18; Deposition of Brooke Cole at 24:5-13; Deposition of Celest Ngeve

at 23:9-11. Lastly, Defendant objects to the extent the fact suggests or otherwise implies

that the State administers the GNETS program. Doc. No. [434-1] at ¶ 93.

116. **GNETS Program Directors' salaries are funded with monies from the GNETS State grant. See, e.g., Pl. Mot. for Partial Summ. J. Exs. 96 (part 1) at 25 (ECF No. 395-130), 107 at 14 (ECF No. 395-142), 108 at 18 (ECF No. 395-143); Ex. DD, Clemons Dep. at 149:24-150:6; Ex. K, Cole Dep. at 174:7-19, 181:5-23; Ex. I, Holifield Dep. at 50:5-51:13, 104:10-20, 114;1-6; Ex. N, Ngeve Dep. at 273:15- 274:1; Ex. S, Wolf Dep. at 104:18-20.**

   **RESPONSE:** Defendant objects to the extent the fact suggests or otherwise

implies that the State administers the GNETS program. Subject to the preceding

objection, the Court may consider this evidence for purposes of the summary judgment

motion.

117. **The State provides regional GNETS programs with the Georgia Professional Standards Commission guidelines that outline the minimum requirements for personnel being hired into particular positions (i.e., teachers, counselors, social workers, paraprofessionals). See Ex. R, Newsome Dep. at 111:24-114:7.**

   **RESPONSE:** Objection. Defendant objects to the extent the fact suggests or

otherwise implies that the State administers the GNETS program. In addition, the fact is

immaterial to the claims and defenses in this case.

118. **In addition, the State establishes the approved staffing agencies and/or professional qualifications that regional GNETS programs receiving therapeutic grants must use when hiring therapeutic staff. See ECF Nos. 395-153, ECF Nos. 395-155, 395-161 through 395-163 (Pl. Mot. for Partial Summ. J. Exs. 118, 120, 126-128); Ex. Q, Keith Dep. at 140:8-143:5, 153:7-155:6; Ex. FF, Neal Dep. at 80:6- 83:8; Ex. S, Wolf Dep. at 141:6-144:2, 144:19-145:19, 147:13-149:2.**

**RESPONSE:** Objection. Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program. In addition, the fact is immaterial to the claims and defenses in this case.

**119.  In some instances, the State has played an even more substantial role, drafting job responsibilities for particular positions that regional GNETS programs have subsequently used to formulate job descriptions. See ECF No. 395-163 (Pl. Mot. for Partial Summ. J. Ex. 128); Ex. S, Wolf Dep. at 147:13-149:2.**

**RESPONSE:** Objection. The cited evidence does not support the fact. Instead, the evidence shows a single instance of the GNETS Program Manager sharing a draft of social worker responsibilities. Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program. Lastly, the fact is immaterial to the claims and defenses in this case.

**120.  The State evaluates regional GNETS programs through the GNETS Strategic Plan. See, e.g., ECF No. 395-52 (Pl. Mot. for Partial Summ. J. Ex. 18) at GA00362008-GA00362010; ECF Nos. 395-39, 395-49, 395-58, 395-59 (Pl. Mot. for Partial Summ. J. Exs. 7, 15, 24-25); Ex. J, Braddock Dep. at 208:6-209:17, 210:5-14; Ex. DD, Clemons Dep. at 250:12-251:9, 254:7-255:20; Ex. L, Cleveland Dep. at 158:24-159:10, 166:11-167:10, 210:5-18, 217:20-219:8, 230:16– 231:14; Ex. K, Cole Dep. at 387:17-388:2, 390:22-391:25; Ex. O, Futch Dep. at 93:20-95:18; Ex. EE, Gilchrist Dep. at 246:4-247:6; Ex. I, Holifield Dep. at 198:19-199:23, 200:15- 202:4; Ex. Q, Keith Dep. at 90:22-91:6, 178:20-180:22, 181:7-183:22; Ex. CC, Livingston Dep. at 68:12-70:12, 80:25-81:17; Ex. FF, Neal Dep. at 23:21-24:13; Ex. N, Ngeve Dep. at 288:3-289:16, 290:19-291:18, 304:8-305:22; Ex. GG, Stevenson Dep. at 46:10-23, 49:9-51:6.**

**RESPONSE:** Objection. Defendant objects to the fact as vague and ambiguous, particularly with respect to the term "evaluates." The evidence shows that the GNETS

Programs rate themselves; GaDOE does not provide a rating. Deposition of Vickie

Cleveland, Doc. No. [424] at 207:4-10; Deposition of Lakesha Stevenson, Doc. No.

[415] at 151:9-21. The GNETS Program Manager looks at the Programs' Strategic Plan

self-assessments for what the Programs have done, what information and artifacts they

have presented, and may provide feedback. Deposition of Vickie Cleveland, Doc. No.

[424] at 185:1-4; 214:20-24. The Strategic Plan is not tied to anything, including the

receipt of any funding. Deposition of Lakesha Stevenson, Doc. No. [415] at 154:9-10;

160:1-2. A Program can still be funded by the grant even if the goals in the Strategic

Plan are not met. Deposition of Vickie Cleveland, Doc. No. [424] at 219:9-12.

121. **The State has played a role in addressing GNETS facility conditions and maintenance. See ECF No. 395-33, Def. Resp. to RFA Nos. 69, 81, 87, 89, 90; ECF Nos. 395-134 through 395-140 (Pl. Mot. for Partial Summ. J. Exs. 99-105); Ex. HH, Beck Dep. at 135:11-136:15, 139:12-141:19; Ex. AA, W. Jones Dep. at 189:4-190:6, 193:1-194:25; Ex. Q, Keith Dep. at 226:16-229:22, 230:14-232:18; Ex. BB, Rowland Dep. at 47:16-50:19, 78:7-79:20, 80:21-82:2, 83:5-88:1, 94:4-96:13, 111:21-116:9, 145:7-146:20, 160:6-161:6; see also Ex. J, Braddock Dep. at 219:21-220:23, 221:17- 222:2, 222:15-22, 225:10-226:6.**

**RESPONSE:** Objection. Defendant objects to the fact as vague and ambiguous,

particularly with respect to the phrase "played a role." Defendant further objects to the

extent the fact suggests or otherwise implies that the State administers the GNETS

program.

122. **GaDOE oversaw the committee of GNETS directors involved in developing the Consideration of Services packet and Request for GNETS Consultation document. See ECF Nos. 395-66, 395-74 through 395-77, 395-82 through 395-87 (Pl. Mot. For Partial Summ. J. Exs. 32, 40-43, 48-53); Ex. S, Wolf Dep. at 187:6-205:15; see generally Ex. K, Cole Dep. at 97:1-98:14; Ex. EE, Gilchrist**

**Dep. at 228:5-233:6; Ex. N, Ngeve Dep. at 192:13-193:6, 201:16-202:17, 207:1-6, 220:6-24, 236:14-238:1.**

**RESPONSE:**  Objection. Defendant objects to the fact as vague and ambiguous, particularly with respect to the term "oversaw." Instead, the evidence shows the packet and documents were developed by a committee which included various GNETS Directors. Wolf Dep., Doc. No. [418] at 171:6-16. The GNETS Program Manager agreed to the final versions in conjunction with the rest of the committee. The forms themselves were formally approved by the Committee, not by the GNETS Program Manager. Wolf Dep., Doc. No. [418] at 185:23-187:5. Defendant further objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program.

123. **The Consideration of Services Forms are consistently used across GNETS programs and understood to be requirements by regional GNETS program directors. See, e.g., Exs. 50-52; ECF Nos. 395-64 through 395-73 (Pl. Mot. For Partial Summ. J. Exs. 30-39); Ex. J, Braddock Dep. at 101:21-102:24, 103:15-104:3, 107:11-110:10; Ex. DD, Clemons Dep. at 51:21-52:6, 61:20-62:19; Ex. O, Futch Dep. at 313:2-314:23, 316:2-317:12, 350:23-352:6; Ex. EE, Gilchrist Dep. at 228:5- 233:6; Ex. FF, Neal Dep. at 128:10-130:11; Ex. N, Ngeve Dep. at 191:18-193:24, 195:21-198:5, 201:16-204:15, 220:11-222:9, 235:13-238:1, 313:25-316:22; Ex. S, Wolf Dep. at 170:19-175:22.**

**RESPONSE:** Objection. First, the cited evidence does not support the fact. Second, Defendant objects to the extent the fact suggests that use of the Consideration of Services Forms is required by GaDOE. Instead, the evidence shows there is no requirement by GaDOE to use any of these documents. Deposition of Talithia Newsome, Doc. No. [423] at 150:13-151:10; 162:13-17; 180:16-22; Deposition of

Cassandra Holifield, Doc. No. [401] at 279:8-18; 252:9-14; Deposition of Vickie

Cleveland, Doc. No. [424] at 128:4-129:15. In fact, GaDOE does not require use of any

specific documents related to consideration of services. Deposition of Vickie Cleveland,

Doc. No. [424] at 128:4-129:15.

Third, Defendant objects that the fact is stated as argument rather than undisputed

fact and thus does not comport with LR 56.1(B)(1). Fourth, Defendant objects that the

statement contains speculation as to what GNETS Directors understand. Garrison v.

Sam's E., Inc., No. 1:17-CV-381-C, 2019 WL 2603176, at *7 (S.D. Ala. Apr. 3, 2019),

aff'd, 787 F. App'x 627 (11th Cir. 2019) ("unsupported speculation ... does not meet a

party's burden of producing some defense to a summary judgment motion"). Lastly,

Defendant objects to the extent the fact suggests or otherwise implies that the State

administers the GNETS program.

**124.  The GNETS program funding formula does not include, as a factor in determining funding, the number of students for whom a regional GNETS program provides consultative services in the general education setting—that is, services directly to a student or that student's teacher or paraprofessional in the general education setting. Ex. I, Holifield Dep. at 277:9-281:9; Ex. J, Braddock Dep. at 69:2-12; Ex. K, Cole Dep. at 150:9-153:10.**

**RESPONSE:** Objection. The fact is immaterial to the claims and defenses in this

case. Defendant further objects to the extent the fact suggests or otherwise implies that

the State administers the GNETS program.

**125.  Regional GNETS programs' failure to receive funding for GNETS services provided in general education environments (i.e., consultative services)**

**presents numerous difficulties, including a lack of funds to ensure regional GNETS programs have enough staff both to serve the students with significant needs in GNETS environments and to push into the general education environment to deliver consultative services. See Ex. 5, GA00347596; Ex. I, Holifield Dep. at 277:9-281:9.**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is stated as argument rather than as a statement of fact. The fact is also immaterial to the claims and defenses in this case. Defendant further objects to the extent the fact is conflating FTE funding and GNETS grant funds. Lastly, Defendant objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program.

126. **The State has the authority—and has exercised its authority—to put a pause on regional GNETS programs' funding when those programs fail to comply with their responsibilities. Ex. JJ, Winter Dep. 166:5-168:8.**

**RESPONSE:** Objection. The fact does not comply with LR 56.1(B)(1) because it is stated as argument regarding a disputed issue in this case rather than as a matter of fact. Defendant also objects to the extent the fact suggests or otherwise implies that the State administers the GNETS program. Lastly, Defendant objects that the cited testimony is not contained in Plaintiff's Ex. JJ.

Respectfully submitted this 13th day of December, 2023.

| | |
|---|---|
| Christopher M. Carr | */s/ Josh Belinfante* |
| *Attorney General* | Josh Belinfante |
| Georgia Bar No. 112505 | Georgia Bar No. 047399 |
| Bryan K. Webb | jbelinfante@robbinsfirm.com |
| *Deputy Attorney General* | Melanie Johnson |
| Georgia Bar No. 743580 | Georgia Bar No. 466756 |
| Russell D. Willard | mjohnson@robbinsfirm.com |
| *Senior Assistant Attorney General* | Edward Bedard |

Georgia Bar No. 760280
Susan R. Haynes
*Assistant Attorney General*
Georgia Bar No. 901269
Office of the Attorney General 40
Capitol Square, S.W.
Atlanta, Georgia 30334
Telephone: (404) 656-3357

Georgia Bar No. 926148
ebedard@robbinsfirm.com
Javier Pico Prats
Georgia Bar No. 664717
jpicoprats@robbinsfirm.com
Danielle Hernandez
Georgia Bar No. 736830
dhernandez@robbinsfirm.com
Anna Edmondson
Georgia Bar No. 289667
aedmondson@robbinsfirm.com
**Robbins Alloy Belinfante Littlefield LLC**
500 14th Street NW
Atlanta, GA 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

Alexa R. Ross
Georgia Bar No. 614986
alexarross@icloud.com
**AlexaRossLaw, LLC**
2657 Danforth Lane
Decatur, Georgia 30033

Special Assistant Attorneys General
*Attorneys for Defendant*