# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STATE OF GEORGIA, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 1:16-cv-03088-ELR |

## UNITED STATES' REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE THE DECLARATION OF DANTE MCKAY

Plaintiff United States of America ("United States") respectfully submits this Reply Brief in Further Support of its Motion to Exclude the Declaration of Dante McKay, ECF No. 439.

## INTRODUCTION

The United States seeks to exclude the Declaration of Dante McKay ("McKay Declaration" or "Declaration") because: (1) neither the Declaration nor the State provides adequate evidence that Mr. McKay's testimony is based on personal knowledge; (2) the Declaration contains expert rather than lay testimony, and the State failed to disclose Mr. McKay as an expert; and (3) the United States has not

1

received, and the State does not claim it provided, any supporting documentation, through discovery or otherwise, for the cost estimate to which Mr. McKay attests.[1]

Instead of showing, as the governing legal standard requires, that its actions were substantially justified or harmless, the State attempts to rationalize its introduction of the Declaration by asserting that the United States delayed articulating the proposed reasonable modifications it seeks, thus disadvantaging the State. This is false, but even were it not, it would not excuse the State's conduct. The State does not dispute the material facts set forth in the United States' Motion. The State does not argue it supplied, or that the Declaration contains, key information establishing a foundation for Mr. McKay's testimony about Apex expansion. Finally, the State confirms it did not disclose Mr. McKay as an expert witness. The State's failure to comply with its discovery obligations unduly prejudices the United States. Thus, the McKay Declaration should be excluded.

## ARGUMENT

I. **NO LEGAL AUTHORITY OR RECORD EVIDENCE JUSTIFIES THE STATE'S FAILURE TO DISCLOSE AN EXPERT OPINION ON THE SCHEDULE SET BY THIS COURT.**

The State attempts to excuse its noncompliant behavior by mischaracterizing both the United States' responsibilities under Title II and *Olmstead v. L.C.*, 527 U.S.

---

[1] The United States addressed the State's failure to supplement its discovery responses in its opening brief and does not repeat those points in this Reply. *See* ECF No. 439-1 at 7-11.

581 (1999) and the factual record in this case. In particular, the State blames the United States for failing to do what the applicable law does not require—affirmatively detail the cost and workforce implications of its proposed reasonable modifications. *See* State's Response in Opposition to Motion to Exclude Declaration of Dante McKay ("Opp. Br."), ECF No. 452 at 4-5, 20. The State also contradicts the factual record by arguing the United States "only recently disclosed a key element of its prima facie case (a proffered reasonable accommodation)." *See* Opp. Br. at 4. These arguments ignore the undisputed facts and highlight the State's incorrect reading of applicable legal standards.

First, the State had notice of the United States' proposed reasonable accommodations from the outset of this case. ECF No. 448-1 at 23. The United States alleged in its August 23, 2016 Complaint that the State could make reasonable accommodations: "[t]he actions needed to remedy the State's mental health and therapeutic educational service system could be achieved through the redirection, reallocation, *expansion*, and coordination of *existing resources*." ECF No. 1 ¶ 61 (emphasis added); *see also id.* ¶ 58.

Further, on March 10, 2023, the United States timely responded to an interrogatory, explaining the State could reasonably modify its "system for delivering community-based services, including . . . expanding access to . . . evidence-based school-based interventions and supports such as those offered

3

through Apex."[2]  The United States also timely produced the expert report of Dr. Robert Putnam, which outlines multiple reasonable modifications and cost-effective methods for implementing them.  Report of Dr. Robert Putnam ("Putnam Rep."), ECF No. 428-1 at 58-67.  Although the State concedes that it turned to Mr. McKay after it received Dr. Putnam's report, Opp. Br. at 3, the State did not disclose Mr. McKay as a rebuttal expert.

Second, the State bears the burden of demonstrating that the United States' proposed reasonable modifications would fundamentally alter the nature of the State's services, programs, or activities.[3]  United States' Opposition to the State's Motion for Summary Judgment, ECF No. 448-1 at 22.  The State's baseless criticisms of the United States serve only to distract this Court from that burden and the State's own missteps in attempting to carry it.

The State had years to prepare for expert discovery.  During that time, the elements of a prima facie *Olmstead* claim were well established.  Thus, the State knew or should have known that the United States would be required to propose reasonable modifications and that the State could raise fundamental alteration as an

---

[2] United States' Supplemental Objections and Responses to Defendant's First Set of Interrogatories at 19-20 (attached hereto as Exhibit 1).

[3] The State failed to plead fundamental alteration, an affirmative defense, in its Answer to the United States' Complaint.  *See* ECF No. 67 at 1-3.  The United States further discusses the State's misunderstanding of Title II and *Olmstead* in its Opposition to the State's Motion for Summary Judgment.  ECF No. 448-1 at 22-26.

affirmative defense. The State had every opportunity to identify an expert to support its fundamental alteration arguments on the timetable set by this Court. Having chosen not to do so, the State should not now be permitted to prejudice the United States by its eleventh-hour disclosure of the McKay Declaration.

## II. THE MCKAY DECLARATION OFFERS EXPERT, NOT LAY, TESTIMONY.

### A. The State Does Not Establish Mr. McKay Has Particularized Knowledge Sufficient to Support His Alleged Lay Opinions.

Through the McKay Declaration, which the State invites this Court to characterize as lay witness testimony, the State seeks to resurrect fundamental alteration arguments that it neither asserted as an affirmative defense nor pursued in fact and expert discovery. This Court should reject these efforts.

Under Federal Rule of Evidence 701, "[n]on-expert witnesses may only testify to opinions . . . which are . . . (a) rationally based on the perception of the witness . . . ." *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (internal quotations and citation omitted). The hallmark of lay opinion testimony is the witness's particularized knowledge.[4] The State has not shown Mr. McKay's testimony meets this criterion.

---

[4] While "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an . . . expert, . . . [s]uch opinion testimony is admitted . . . because of the *particularized* knowledge that the witness has by virtue of his or her position

5

Mr. McKay's alleged "firsthand knowledge" of the "business operations" of the Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD"), McKay Decl. ¶ 2, does not establish that he possesses particularized or personal knowledge of the cost estimate and workforce shortages discussed in the Declaration. Although the State repeatedly cites this portion of the otherwise threadbare Declaration as providing sufficient support for Mr. McKay's opinions, on its face the Declaration fails to satisfy applicable standards. *See* Fed. R. Evid. 701 (lay testimony must be "rationally based on the witness's perception"); Fed. R. Civ. P. 56(c)(4) ("declaration used to support . . . a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Contrary to the State's assertions, the cases cited in its brief do not actually support the admissibility of the Declaration. Mr. McKay's opinions about a hypothetical expansion of the Apex Program bear no resemblance to the witnesses' testimony in *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, where "the Eleventh Circuit affirmed the district court's decision to permit three officers of a shipbuilding company to testify as lay witnesses . . . as to the reasonableness of an amount billed to a customer for ship repairs." *Gallagher Benefit Servs., Inc. v.*

---

in the business." Fed. R. Evid. 701 Advisory Committee Note to the 2000 amendment (emphasis added).

*Campbell*, 528 F. Supp. 3d 1326, 1350 (N.D. Ga. 2021) (summarizing *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213 (11th Cir. 2003)). "Crucially, the officers [in *Tampa Bay*] were directly involved in the repairs process and were responsible for approving the initial quotation for the repairs." *Gallagher*, 528 F. Supp. 3d at 1350. In sharp contrast to the facts in *Tampa Bay*, there is no evidence that, in discharging his job responsibilities, Mr. McKay is routinely involved in projecting costs for future expansions of Apex or analyzing potential workforce constraints that may impact any such expansions.

Mr. McKay's testimony is more akin to the corporate representative witness in *Tim Hortons USA, Inc. v. Singh*, who "relied on hearsay assumptions" to predict the lost profits of a restaurant "but did not provide a report in advance of trial where the opinions and assumptions could be tested." *See* No. 16-23041-CIV, 2017 WL 4837552, at *15 (S.D. Fla. Oct. 25, 2017); *see also Gallagher*, 528 F. Supp. 3d at 1352. In *Tim Hortons*, the witness "admitted that he did not do any analysis to calculate growth assumptions but relied on a spreadsheet given to him." 2017 WL 4837552, at *14. The court concluded that the assumptions upon which the witness relied did "not appear to be within his personal knowledge . . . ." *Id.* at *15.

Further, the State wholly ignores criticism that the Declaration lacks facts vital to establishing a foundation for Mr. McKay's testimony. *See* Mem. in Supp. Mot. to Exclude McKay Decl., ECF No. 439-1 at 20. Indeed, nowhere in its 20-page brief

7

does the State assert that Mr. McKay personally prepared the cost estimate at the heart of his proffered testimony, let alone provide any of the additional foundational details the United States has identified as missing from the Declaration, such as calculations related to the cost estimate, the date of the estimate, the identities of the individuals who conducted the estimate, or the basis for the assumptions informing Mr. McKay's opinions.

Although the State asserts that "[s]hould McKay be called at trial, the information on which his testimony is based would be admissible because McKay himself would be able to lay the foundation for such information," Opp. Br. at 7, the State should not be permitted "to make an end-run against the language and policy of Federal Rules, which specifically guard against trial by ambush." *See Waite v. AII Acquisition Corp.*, No. 15-CV-62359, 2016 WL 4433713, at *3 (S.D. Fla. Apr. 28, 2016) (internal quotations and citation omitted) ("Because Defendant failed to follow the dictates of Rule 26 in untimely serving expert disclosures, it is not permitted to use these disclosures at trial . . . ."); *see also F.T.C. v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1180 (N.D. Ga. 2008), *aff'd*, 356 F. App'x 358 (11th Cir. 2009) (finding witness's declaration filed in opposition to motion for summary judgment inadmissible where failure to disclose witness "prevented the [opposing party] from deposing her or anticipating her testimony before expending the significant resources required to file their dispositive motions."). The United

States and this Court should not have to speculate as to the basis for Mr. McKay's opinions until he testifies at trial.

For the reasons stated, the Declaration is fatally deficient under Federal Rule of Evidence 701 and Federal Rule of Civil Procedure 56 and should be excluded at this stage and at trial.

### B. Mr. McKay's Testimony is Based on Specialized Knowledge and is Thus Expert Testimony Under Rule 702.

In asserting that the McKay Declaration does not constitute expert testimony, the State seeks to avoid "the reliability requirements . . . in Rule 702 . . . through the simple expedient of proffering an expert in lay witness clothing." *See* Fed. R. Evid. 701 Advisory Committee Note to the 2000 amendment.[5] The State's admission that it turned to Mr. McKay in response to Dr. Putnam's opinions regarding reasonable modification, Opp. Br. at 3, betrays the Declaration's true purpose: rebutting the United States' expert testimony. Rewarding the State's attempt to introduce expert testimony under the guise of a lay witness would subvert Rule 702 and severely prejudice the United States.

A witness offers an expert opinion if the opinion relies on "specialized knowledge." Fed. R. Evid. 702(a). Predicting the potential costs and workforce

---

[5] Rule 701 was amended "in an attempt to rein in the admission of expert testimony under the guise of lay opinion." *Henderson*, 409 F.3d at 1300 (affirming the trial court's exclusion of testimony proffered as non-expert). The Advisory Committee cautions against the precise stratagem upon which the State relies here.

9

availability related to a "gradual [Apex] expansion" that would allegedly "result[] in a total estimated cost of $313.5 million," Decl. ¶¶ 8, 10, requires specialized knowledge about Apex providers' Medicaid billing practices, the Medicaid reimbursement process, DBHDD's budget, potential sources of state and federal funding, whether and to what extent Medicaid revenue would increase over time,[6] whether DBHDD would contract with any new providers, and what therapist-to-student ratio should factor into any calculations.  *See* McKay Decl. ¶¶ 4, 8.

It is well-settled that "[a] corporate officer does not[] . . . have carte blanche authority to offer his or her lay opinion as to any possible valuation without restraint."[7]  *See Gallagher*, 528 F. Supp. 3d at 1351.  The State's $313.5 million estimate necessitates more than "straightforward common-sense calculations," *see id.*, and "'draw[ing] straightforward conclusions from observations.'"  *See United States v. Masha*, 990 F.3d 436, 445 (5th Cir. 2021) (quoting *United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997) ("a lay opinion must be based on personal

---

[6] The State bills Medicaid for Apex services, and an expansion of the Program could lead to additional federal reimbursement.  *See* GA05558501 Apex Year 7 Evaluation Slide Deck, ECF No. 428-5 at GA05558523.

[7] While Rule 701 permits testimony from some business officers in certain circumstances (allowing "the owner or officer of a business to testify to the value or projected profits of the business"), Fed. R. Evid. 701 Advisory Committee Note to the 2000 amendment, Mr. McKay's testimony does not fit within those bounds.  *See supra* at 7 comparing Mr. McKay's testimony to corporate representatives' inadmissible lay opinions about businesses' lost profits.

perception, must be one that a normal person would form from those perceptions . . . .") (internal quotations and citations omitted)).

That Mr. McKay has knowledge of the Apex Program and its funding sources, DBHDD's budget, and the legislative appropriations process does not qualify Mr. McKay to offer lay testimony. Individuals may not testify as lay witnesses about a "complex and intricate regulatory scheme" like Medicare. *See United States v. White*, 492 F.3d 380, 403 (6th Cir. 2007) ("[W]e cannot say that the average lay person[] . . . commands a working knowledge of Medicare reimbursement procedures."); *see also United States v. Vega*, 813 F.3d 386, 395 (1st Cir. 2016) ("the fact that [witnesses] had knowledge of Medicare law through their occupations does not make it personal knowledge qualifying as lay expertise."). Mr. McKay's testimony about potential Apex expansion requires an understanding of Medicaid, the complexity of which is comparable to Medicare. Moreover, the knowledge needed to opine on the costs and workforce implications of expanding Medicaid services statewide is far more specialized than the knowledge needed to testify about an employer's policies and practices. *See United States v. Estrada*, 969 F.3d 1245, 1270-71 (11th Cir. 2020) (permitting employees to offer lay testimony "about government policy related to unblocking licenses and visa applications").

The State does not claim that Mr. McKay "oversaw" the cost estimate process or "ma[d]e estimates" himself. *See Tampa Bay*, 320 F.3d at 1218. Nor are Mr.

11

McKay's opinions about a hypothetical expansion of Apex similar to a physician's diagnosis of an injury. *See Henderson*, 409 F.3d at 1300. In *Henderson*, the court found it permissible for an individual's treating physician, who examined the individual after his arrest, to offer lay testimony on the type of injury the individual sustained. *Id.* But the court concluded the physician's opinions about the *cause* of her patient's injury were expert, not lay, opinions because she answered a hypothetical question. *Id.*; *see also Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 906 (11th Cir. 2023).[8]

Because Mr. McKay's opinions about a hypothetical modification to the State's systems rely on specialized knowledge of the Apex Program, Medicaid, and

---

[8] The State cites *United States v. Hill* and *Handley v. Werner Enterprises, Inc.* to demonstrate that courts have permitted lay witnesses to answer certain hypothetical questions in particular contexts. However, those cases do not refute the United States' argument that predictions about the potential costs and workforce constraints related to a future expansion of the Apex Program are not suitable topics for lay testimony. Indeed, the facts in *Handley* and *Hill* are distinguishable from Mr. McKay's circumstances. Analyzing a potential expansion of a Medicaid service delivery system demands more expertise than that of the employees in *Hill*, who needed only to rely on common sense "to realize that lending institutions would be reluctant to approve a loan application if they knew that it contained false statements about material facts." 643 F.3d 807, 842 (11th Cir. 2011). Nor is Mr. McKay's testimony analogous to the lay opinions of the police officer in *Handley*, whom the district court permitted to testify about what constitutes "a danger to the . . . public" after noting the officer "was on the scene after the accident [in question], ha[d] years of relevant law enforcement experience, and . . . w[ould] testify as to his observations and his understanding of the Rules of the Road at the subject intersection." 596 F. Supp. 3d 1353, 1358 (M.D. Ga. 2022). Unlike the State, the party relying on the officer's testimony in *Handley* disclosed the officer as an expert prior to the end of discovery. *See id.* at 1360.

DBHDD's budget, the Declaration contains expert testimony that the State should have disclosed in compliance with Rule 26(a) before discovery closed.

### C. The State Concedes Its Failure to Disclose Mr. McKay as an Expert Was Not Substantially Justified or Harmless.

The State does not argue that its disregard for the Federal Rules and this Court's scheduling orders was substantially justified or harmless.[9] Nor could it.

"[T]he expert disclosure rule is intended to provide opposing parties reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses." *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (internal quotations and citations omitted) (affirming lower court's exercise of discretion to exclude expert testimony); *see also Mitchell v. Ford Motor Co.*, 318 F.App'x 821, 825 (11th Cir. 2009); *Macaulay v. Anas*, 321 F.3d 45, 52-53 (1st Cir. 2003).[10] The State had six weeks after receiving the United States' June 2023 expert reports to identify and disclose its rebuttal expert witnesses. *See* ECF Nos. 376, 379. Because Mr. McKay is a longstanding DBHDD employee, the State could easily have identified him within the required timeframe. Additionally, the State had more than two months after receiving the United States'

---

[9] Accordingly, since this is the applicable standard, the state concedes the issue. *See Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019).

[10] It is axiomatic that "[t]he general purpose of discovery is to remove surprise from trial preparation so that parties may obtain the evidence necessary to evaluate and resolve their dispute." 6 Moore's Federal Practice - Civil § 26.02.

13

expert reports to complete and serve its rebuttal expert disclosures. In Mr. McKay's case, the disclosure would have required, at a minimum, the subject matter of his testimony, and a summary of the facts and opinions to which he was expected to testify. *See* Fed. R. Civ. P. 26(a)(2)(C). This could easily have been completed in accordance with the Court-ordered timeline, and the State offers no reason why it was not.

Although the State denies that the United States is significantly prejudiced by the State's actions, the undisputed facts reveal the substantial harm to the United States. The State did not disclose evidence responding to Dr. Putnam's reasonable modification opinions and supporting the State's fundamental alteration arguments until the State filed its Motion for Summary Judgment on November 7, 2023. By that time, discovery had closed. The State would have this Court believe that it is mere coincidence that it received the McKay Declaration one day before its motion for summary judgment was due to be filed. *See* Opp. Br. at 3, 16. This suggestion strains credulity. Mr. McKay opines about a cost estimate that the State admits did not exist at the time the United States served discovery requests seeking such cost evidence or at the time the United States deposed Mr. McKay and specifically asked whether any such cost estimate had been performed. *See* Opp Br. at 16. At some point, that cost estimate was generated. While the State may not have been required "to perform an analysis in response to the DOJ's discovery request," Opp. Br. at 3,

it was required to disclose that analysis in advance of the Court-ordered deadlines for rebuttal experts and the final close of discovery if—as is now evident—it intended to rely on such an analysis at summary judgment or trial. Doing so would have given the United States the required notice of the contents of the analysis and an opportunity to test the analysis by deposition or otherwise. *See, e.g.*, *Waite*, 2016 WL 4433713, at *3 (disclosure of expert testimony after discovery closed was "gamesmanship" the court would "not permit" because the delayed disclosure "was anything but substantially justified or harmless."). The State's effort to introduce the McKay Declaration at the eleventh hour is precisely the sort of trial by ambush that the Federal Rules seek to guard against.

## CONCLUSION

For the reasons set forth above and the reasons outlined in the United States' Motion to Exclude the Declaration of Dante McKay and Memorandum in Support, the United States respectfully requests that this Court grant its Motion to Exclude.

Dated: December 19, 2023

Respectfully submitted:

| | |
|---|---|
| RYAN K. BUCHANAN<br>*United States Attorney*<br>Northern District of Georgia | KRISTEN CLARKE<br>Assistant Attorney General<br><br>SHAHEENA A. SIMONS<br>Chief |

15

/s/ *Aileen Bell Hughes*
AILEEN BELL HUGHES
GA Bar Number: 375505
Assistant United States Attorney
United States Department of Justice
Richard B. Russell Federal Building
75 Ted Turner Dr. SW
Suite 600
Atlanta, GA 30303-3309
(404) 581.6000
 aileen.bell.hughes@usdoj.gov

KELLY GARDNER WOMACK
Deputy Chief

ANDREA HAMILTON WATSON
Special Litigation Counsel

CRYSTAL ADAMS
CLAIRE CHEVRIER
FRANCES COHEN
MATTHEW GILLESPIE
PATRICK HOLKINS
VICTORIA M. LILL
JESSICA POLANSKY
LAURA C. TAYLOE
MICHELLE L. TUCKER
Trial Attorneys
Educational Opportunities Section

/s/ *Crystal Adams*
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-4092
Crystal.Adams@usdoj.gov

## L.R. 7.1(D) CERTIFICATION

I certify that this brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C) and 7.1(D). Specifically, this brief has been prepared using 14-pt Times New Roman Font.

                                              /s/ *Crystal Adams*
                                              CRYSTAL ADAMS

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing.

This 19th day of December, 2023.

/s/ *Crystal Adams*
CRYSTAL ADAMS