UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STATE OF GEORGIA, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 1:16-cv-03088-ELR |

**UNITED STATES' REPLY BRIEF IN FURTHER SUPPORT OF ITS
MOTION IN LIMINE TO PARTIALLY EXCLUDE
TESTIMONY OF DR. ANDREW WILEY, PH.D.**

## I. INTRODUCTION

When distilled to its relevant parts, Defendant State of Georgia's ("State") Response in Opposition to Plaintiff United States of America's ("United States") Motion in Limine to Partially Exclude the Testimony of Dr. Andrew Wiley, Ph.D., (ECF No. 479) (the "State's Brief"), illustrates the necessity and propriety of the United States' Motion (ECF No. 476). First, the State does not dispute that legal opinion testimony by an expert witness is inadmissible but instead argues that the opinions the United States seeks to exclude are not legal opinion testimony or, if they are, that they constitute permissible rebuttal testimony. Both the plain text of Dr. Wiley's Rebuttal Report and his related deposition testimony confirm that he

intended to provide legal opinion testimony and therefore favor granting the Motion. Second, the State repeatedly concedes that Dr. Wiley did not evaluate the GNETS Program, was not engaged by the State to provide testimony about the GNETS Program, and offers no opinions about the GNETS Program. This alone is dispositive of the United States' second category of testimony for partial exclusion.

Mixed in with its concessions on the relevant issues, the State spends significant portions of its Brief mischaracterizing the United States' position,[1] pre-litigating evidentiary issues, and restating arguments that have already been submitted to the Court. These broader issues may be litigated closer to or during trial, but the State should not be permitted to obfuscate the issues presently before the Court or prevent the Court from resolving this limited, straightforward Motion.

## II.  ARGUMENT

As made clear in the United States' Motion and Memorandum in Support, the United States seeks to exclude two categories of opinions Dr. Wiley may be called to offer: (1) legal opinion testimony, including all opinion testimony contained in or related to Section I of Dr. Wiley's Rebuttal Report; and (2) all

---

[1] For example, the State asserts that Dr. Wiley's testimony is intended to rebut a number of opinions that the United States' experts never render. *See, e.g.,* State's Br. at 6 (that individualized determinations to provide education in separate settings are "always" or "usually" unnecessary; that providing appropriate services can "always" prevent separation; and that Georgia is "unique" in its provision of educational and mental health services).

2

testimony Dr. Wiley may be called on to provide about the GNETS Program, including regional GNETS programs, or the supports and services received by students placed in the GNETS Program. ECF No. 476. As Dr. Wiley himself explicitly acknowledges—and as the State's Brief implicitly acknowledges—Section I of his Rebuttal Report is legal opinion testimony; it should therefore be excluded. Similarly, the State repeatedly concedes that Dr. Wiley was not retained to opine about the GNETS Program and conducted no evaluation of it. With the State offering no valid grounds for its continued opposition to this portion of the United States' Motion, any testimony relating to the GNETS Program should be excluded.

### A. Section I of the Rebuttal Report Consists of Legal Opinion Testimony that Should Be Excluded at Trial.

A plain reading of both Section I of the Rebuttal Report and Dr. Wiley's own deposition testimony makes clear that Section I was intended to be, and is, Dr. Wiley's "analysis as to how the requirements of the ADA and IDEA should be understood"—in other words, legal opinion testimony. ECF No. 476-4 ("Wiley Dep.") at 239:17-21. While the State seems to acknowledge that legal opinion testimony by expert witnesses is appropriately excluded, the State nevertheless repeatedly attempts to recharacterize and dodge Dr. Wiley's opinions by proffering three alternative explanations for Dr. Wiley's blatant legal analyses. Each fails.

First, the State asserts that Dr. Wiley's "discussions of the IDEA and ADA" are merely "responses to the statements about the IDEA from the DOJ's proffered experts." ECF No. 479 at 9. Tellingly, the State does not cite to either the Rebuttal Report or any report of the United States' experts to support this point. That is because this *post hoc* rationalization is unsupported. Unlike Dr. Wiley, Drs. McCart and Putnam do not purport to analyze the interplay between the IDEA and the ADA. In fact, neither Dr. McCart nor Dr. Putnam include any substantive discussion of the IDEA or ADA in their reports. Similarly, Section I of the Rebuttal Report is largely divorced from references to either of the United States' experts' reports, save for a subsection largely centered on Dr. Wiley's criticism that the United States' experts did not discuss the law *enough*. ECF No. 476-2 at 17-19.[2] For example, Dr. Wiley repeatedly criticizes the United States' experts' reports for perceived legal ambiguities, stating it is unclear how "[the Continuum of Alternative Placements under the IDEA] should change," or how separate placements "can be provided in a way that both complies with [Free Appropriate Public Education under the IDEA]" and the ADA. *Id.* at 18. Dr. Wiley also states that DOJ, through its experts, "provides few details" on how its experts'

---

[2] Dr. Wiley makes one preceding reference to Dr. McCart's report in Section I, to dispute her very brief characterization of the IEP process and to assert his own interpretations of the requirements and purpose of the IDEA. ECF No. 476-2 at 10, n. 1.

recommendations can be implemented "alongside the procedural and substantive requirements of [the] IDEA." *Id.* As a result, Dr. Wiley's report clearly undermines the State's rationalization for Section I: Dr. Wiley's legal opinions are not in response to "statements about the IDEA from the DOJ's proffered experts," but are instead in response to the *lack* of statements about the IDEA that Dr. Wiley perceives as a deficiency. In addition, as the State acknowledges, Dr. Wiley's Rebuttal Report only "addresses eight specific opinions of the DOJ's proffered experts…" State's Br. at 9. Dr. Wiley identifies the eight specific opinions he purports to rebut in his report. Wiley Rep. at 2-3; Wiley Dep. 212:11-12, 22-24 ("[M]y effort was to rebut these claims in particular…I think these quotes reflect the main things that I wanted to rebut."). Tellingly, none of these opinions make even a passing reference to the IDEA or ADA. Accordingly, Section I is nothing more than Dr. Wiley's own legal opinions couched as expert witness testimony.

Second, the State suggests Section I provides "appropriate context for the difficult choices facing local education officials." ECF No. 479 at 9. The State, however, provides no further explanation or justification for this assertion, and no support for this interpretation appears in the Rebuttal Report. Dr. Wiley does not purport to be an expert on the views and challenges of "local education officials." Even if he were, the State's claimed justification does not set forth a basis for

admitting legal opinion testimony from an expert witness and should therefore be disregarded.

The third and final justification the State posits for the admissibility of Dr. Wiley's legal opinions is that they consist of "information about the state of academic opinion in [ ] light of Drs. McCart's and Putnam's disputed claims that their 'full inclusion' philosophy is the accepted standard." ECF No. 479 at 9-10.[3] Again, the Rebuttal Report fails to corroborate this justification. Nothing in Section I purports to present "academic opinion" on the IDEA and ADA.[4] Even if it did, this would not change the core legal principles now before the Court. Whether it is Dr. Wiley's own legal opinions or those of other academics that Dr. Wiley is merely repeating, "all witnesses are prohibited from testifying as to questions of

---

[3] In its Brief, the State repeatedly attempts to discredit the United States' experts by characterizing their opinions as part of "full inclusion" advocacy. *See, e.g.,* ECF No. 479 at 5 (stating United States' experts' statements "reflect the disputed ideology of the full inclusion camp."). These assertions are uniformly based on irrelevant citations to outside materials that have no bearing on the work performed by the United States' experts in this case or the conclusions that flow from that work. Needless to say, the United States' experts do not "claim" that "full inclusion" is the "accepted standard" for this case. *See also* ECF No. 431-1 (McCart Rep.) at 67 (acknowledging separate settings are appropriate for a small number of students).

[4] Dr. Wiley *does* cite to academic papers for legal propositions like "[m]any parental rights are enumerated in [the] IDEA," or that school-based teams identify least restrictive environments after an IEP is developed, or to support analyses he favors, such as those criticizing full inclusion. ECF No. 476-2 at 10, 11, 21. These types of citations do not constitute the type of "academic opinion" that the State asserts.

law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct." *Ma v. Equifax Info. Servs., LLC*, 288 F. Supp. 3d 1360, 1367 (N.D. Ga. 2017) (citing *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005)) (cleaned up).

To understand that the Rebuttal Report consists of legal opinions, one needs to look no further than the report itself. In his summary of Section I of the Rebuttal Report, Dr. Wiley explicitly identifies the legal opinions he intends to set out:

> To determine whether one is "unnecessarily segregated" under the Americans with Disabilities Act (ADA), one must also consider the detailed and complete framework for determining proper placement designed by the Individuals with Disabilities Education Act (IDEA)… Because DOJ's experts do not consider IDEA's processes and their effect on decisions related to a child's placement in their analysis, their assertions of "unnecessary segregation" of students is unsubstantiated.

ECF No. No. 476-2 at 3. In other words, in Section I, Dr. Wiley purports to address what the legal concept of "unnecessary segregation" means under the ADA and how the IDEA and ADA should be interpreted together. Whereas the State has run away from this conclusion, Dr. Wiley, notably, did not. In his deposition, Dr. Wiley candidly acknowledged Section I of his Rebuttal Report was a legal analysis:

> Q: And in section I of your report, you provide your analysis as to how the requirements of the ADA and IDEA should be understood, correct?
> A: Uh-huh. As I understand them, yeah.

7

Wiley Dep. at 239:17-21. Section I of the Rebuttal Report cannot reasonably be read as anything but Dr. Wiley's legal opinions. As a result, any testimony related to Section I of the Rebuttal Report, or any other legal opinions Dr. Wiley may seek to offer, should be excluded at trial.

### B. Because the Parties Agree That Opinions About the GNETS Program Are Outside of Dr. Wiley's Scope, Such Opinions Should Be Excluded.

The merits of the United States' second ground for partial exclusion of Dr. Wiley's testimony are uncontested, and the Motion should therefore be granted in that respect. The State confirms that "Dr. Wiley did not conduct an 'evaluation' of the services provided through the GNETS Program" (State's Br. at 14); "DOJ seeks to exclude testimony … that the State and Dr. Wiley agree he was not engaged to testify about" (State's Br. at 15); and "[Dr. Wiley's] testimony was not on GNETS. It was not on Georgia specifically" (*id*.). This can, and should, conclude the analysis: because the State does not purport to offer Dr. Wiley to rebut any expert testimony as to the GNETS Program, including regional GNETS programs and the supports and services received by students placed in the GNETS Program, the Court should enter an order excluding any testimony Dr. Wiley may offer about the GNETS Program.

Despite this consensus of the parties, the State spends considerable portions of its Brief making collateral attacks on the United States' experts or asserting

8

extraneous defenses of Dr. Wiley's testimony. Many of these arguments have been addressed sufficiently in other filings. S*ee, e.g.*, ECF No. 448-1 at 5, n. 5 (the State's misapplication of *United States v. Florida*, No. 12-cv-60460, 2023 WL 4546188, at *40 (S.D. Fla. July 14, 2023)); ECF Nos. 438, 440 (irrelevant and immaterial attacks on the United States' experts' testimony); ECF No. 448-1 at 4-6, 14-16 (whether the United States' claims must include record reviews for every student in the GNETS Program). While much of what the State argues in its Brief is irrelevant to this filing,[5] some clarifications are warranted.

First, the State attempts to draw parallels between Dr. Wiley's testimony and that of the United States' experts, reasoning that excluding Dr. Wiley's testimony necessitates excluding the testimony of Drs. McCart and Putnam. *See, e.g.,* State's Br. at 17. However, as the United States has shown in other filings before this Court, this argument misses the mark. Drs. McCart and Putnam formed their conclusions based on a thorough review of relevant materials, including materials

---

[5] The State spends no fewer than three pages attempting to rebut footnote 2 to the United States' initial brief, which addressed the State's mischaracterization of, and Dr. Wiley's limited review of, a specific dataset. The United States made its observation in footnote 2 for the limited purpose of highlighting the ways in which the State was already attempting to overextend the scope of Dr. Wiley's opinions to apply to the GNETS Program. *See also* State's Br. at 6-7, 11-12 (making same arguments about dataset). That point clearly stands. However, as neither the admissibility of this dataset nor the persuasiveness of Dr. Wiley's interpretation is currently before the Court, the United States will not respond point-by-point to the State's arguments here but reserves the right to do so in the future.

specific to the GNETS Program and specific to individual students in the GNETS Program. *See* ECF Nos. 438, 440. This gave Drs. McCart and Putnam ample bases to opine on the GNETS Program. Conversely, Dr. Wiley did none of this. Dr. Wiley cannot opine about the GNETS Program's appropriateness as an educational setting, nor can he compare it to other educational settings, because, as the State admits, he did not evaluate the GNETS Program. This in no way means that the United States' experts are being held to a different standard: they are entitled to present testimony based on the work and analyses they actually performed, and, similarly, Dr. Wiley should be prohibited from testifying on issues and topics he did not—and was not asked to—review.

Second, and more troublingly, the State's continued reference to "hypothetical students" is neither accurate nor helpful to the Court's analysis. The State argues that Dr. Wiley is entitled to testify to the needs of "hypothetical students" to the same extent as the United States' experts. State's Br. at 3, 8, 16-17. To be clear, there are no "hypothetical students" in this case. The United States' experts do not discuss "hypothetical students" in their reports and deposition testimony. They discuss the actual needs of real students currently in or at risk of entering the GNETS Program. They do so based on comprehensive fact reviews and decades of experience working in special education and meeting the needs of students like those in the GNETS Program. The fact that many GNETS Program

settings, services, and supports are *categorically* deficient certainly does not mean that those students receiving unequal educational opportunities as a result are less deserving of relief. To imply that the interests at stake are theoretical does a disservice to the very real and immediate needs of students in the GNETS Program and their families.

Regardless, and in stark contrast to the United States' experts, Dr. Wiley's report makes little or no reference to *any* students, hypothetical or otherwise. Instead, as the State acknowledges, Dr. Wiley's report was intended to defend the use of separate settings generally, a concept neither at issue in this case nor contested by the United States.[6] State's Br. at 6. The United States does not seek to exclude any such testimony, but the State proposes a false equivalence between such general testimony and the well-founded, unrebutted opinions of the United States' experts about the GNETS Program. The State's apples-to-oranges comparisons to the United States' experts' reports have little bearing on either this Motion or any other motions pending before the Court. Instead, the State's

---

[6] Indeed, as the State has observed, Dr. McCart has acknowledged that separate settings may be necessary and appropriate in rare circumstances. ECF No. 431-1 at 159 (also noting the "needs of [the] small number of students requiring intensive supports should not justify the statewide segregation of thousands of students with behavior-related disabilities.").

11

concessions on the scope of Dr. Wiley's testimony unambiguously support this Court granting the United States' Motion.

## III. CONCLUSION

The filings of the parties establish both the sound basis for and the appropriateness of granting the United States' Motion in Limine to Partially Exclude Testimony of Dr. Andrew Wiley, Ph.D.: (1) both a reading of the plain language of the Rebuttal Report and Dr. Wiley's testimony make clear that he presents his legal opinions as expert testimony, and under the prevailing rules such testimony should be excluded; (2) any opinions Dr. Wiley would offer about the GNETS Program, regional GNETS programs, and supports and services received by students in the GNETS Program are outside of the scope of his expert testimony. As a result, the United States asks this Court to grant its Motion in full.

Dated: March 1, 2024.

Respectfully submitted:

| | |
|---|---|
| RYAN K. BUCHANAN<br>*United States Attorney*<br>Northern District of Georgia<br><br> /s/ *Aileeen Bell Hughes*<br>AILEEN BELL HUGHES<br>GA Bar Number: 375505<br>Assistant United States Attorney<br>United States Department of Justice<br>Richard B. Russell Federal Building<br>75 Ted Turner Dr. SW<br>Suite 600<br>Atlanta, GA 30303-3309<br>(404) 581.6000<br>aileen.bell.hughes@usdoj.gov | KRISTEN CLARKE<br>Assistant Attorney General<br><br>SHAHEENA A. SIMONS<br>Chief<br><br>KELLY GARDNER WOMACK<br>Deputy Chief<br><br>ANDREA HAMILTON WATSON<br>Special Litigation Counsel<br><br>CRYSTAL ADAMS<br>CLAIRE CHEVRIER<br>FRANCES COHEN<br>MATTHEW GILLESPIE<br>PATRICK HOLKINS<br>VICTORIA M. LILL<br>JESSICA POLANSKY<br>LAURA C. TAYLOE<br>MICHELLE L. TUCKER<br>Trial Attorneys<br>Educational Opportunities Section<br><br>/s/ *Matthew Gillespie*<br>United States Department of Justice<br>Civil Rights Division<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>(202) 598-6368<br>Matthew.Gillespie2@usdoj.gov |

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>STATE OF GEORGIA,<br><br>DEFENDANT. | Civil Action No.<br><br>1:16-cv-03088-ELR |

**Certificate of Compliance**

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing motion has been prepared using Times New Roman, 14-point font.

March 1, 2024.

*/s/ Matthew Gillespie*
MATTHEW GILLESPIE

14

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| PLAINTIFF, | Civil Action No. |
| v. | 1:16-CV-03088-ELR |
| STATE OF GEORGIA, | |
| DEFENDANT. | |

## Certificate of Service

I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

March 1, 2024.

*/s/ Matthew Gillespie*
MATTHEW GILLESPIE