IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| STATE OF GEORGIA, | ) | NO. 1:16-CV-03088-ELR |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY</u>**

Defendant State of Georgia (the "State" or "Defendant") has consistently argued that—when considering liability under Title II of the Americans with Disabilities Act (the "ADA")—this Court should neither (1) defer to the Plaintiff's interpretation of the statute, (2) nor adopt the reasoning of other circuits' district court opinions that did so after applying judicial deference based on <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984) ("<u>Chevron</u>"). <u>See</u>, e.g., [Docs. 429-1 at 17-24; 434 at 24-32]. In further support of these arguments, the State respectfully submits the attached ruling of the United States Supreme Court styled <u>Loper Bright Enterprises v. Raimondo</u>, 22-1219, 2024 WL 3208360 (U.S. June 28, 2024) ("<u>Loper Bright</u>").

<u>Loper Bright</u> addressed whether courts should defer to executive agency's

regulations based on the agency's interpretation of the relevant statute, or whether courts must exercise "independent judgment when deciding whether an agency has acted within its statutory authority." 2024 WL 3208360 at *22.  The 6-3 opinion unquestionably adopted the latter approach.  In overruling Chevron, the Court held that judges "may not defer to an agency interpretation of the law simply because a statute is ambiguous."  Id.

Loper Bright is relevant to at least three questions raised by the pending motions for summary judgment and partial summary judgment in this lawsuit: whether Title II of the ADA imposes liability (1) when a public entity administers instead of provides services, (2) based on a generalized or individualized basis, or (3) where no treatment professional has identified any individual who is not receiving appropriate services based on that person's unique needs.  In answering each of these questions, the State has relied on the text of the ADA and the Supreme Court's decisions (plurality and controlling concurrence) in Olmstead v. L.C., 527 U.S. 581 (1999).  See, e.g., [Docs. 429-1 at 17-24 (citing 42 U.S.C. §§ 12131(2) (defining "qualified individual") and 12132 (attaching liability based on the "services, programs, or activities of a public entity"), 25-28 (addressing necessity of individual analyses); 434 at 24-32 (addressing provision of services)); 448-1 at 14-17; 470 at 10-11.]

By contrast, the Plaintiff has not engaged in any statutory analysis of the ADA but instead relies on its own regulation, 28 C.F.R. § 35.130. [Doc. 448-1 at 14-17; 442 at 2-6.] Similarly, rather than directly addressing the State's Olmstead analysis, Plaintiff's brief cites only to decades-old district court decisions from other circuits that deferred to the Plaintiff's regulation after applying Chevron-based deference. See [Doc. 442 at 5 (Price v. Shibinette, 21-CV-25-PB, 2021 WL 5397864, at *8 (D.N.H. Nov. 18, 2021) (citing (Day v. District of Columbia, 894 F. Supp.2d 1, 22-23 (D.D.C. 2012)); State of Connecticut Office of Prot. & Advocacy for Persons with Disabilities v. Connecticut, 706 F. Supp. 2d 266, 277 (D. Conn. 2010) (citing Disability Advocates, Inc. v. Paterson, 598 F. Supp. 2d 289, 313 (E.D.N.Y. 2009)); Joseph S. v. Hogan, 561 F. Supp. 2d 280, 290 n.7 (E.D.N.Y. 2008))].

Whatever disagreement the parties had before June 28, 2024, it should be undisputed that Loper Bright now provides the controlling analysis to "the question that matters: Does the [ADA] statute support the challenged agency action?" 2024 WL 3208360 at *19. Writing for the six-Justice majority, the Chief Justice provided several reasons why the answer is now "no," and the Plaintiff's expansive reading of the ADA is no longer defensible if it ever was.

First, Congress has not delegated authority to the Plaintiff to define terms

that appear in the text of the APA, which makes judicial deference inappropriate. Loper Bright makes this point and cites to other statutes that do, in fact, delegate specific authority to an agency to "give meaning to a particular term." Loper Bright, 2024 WL 3208360 at *13 n.5 (citing 29 U.S.C. § 213(a)(15) (exempting from provisions of the Fair Labor Standards Act "any employee employed on a casual basis in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves *(as such terms are defined and delimited by regulations of the Secretary)*" (emphasis in original); 42 U.S.C. § 5846(a)(2) (requiring notification to Nuclear Regulatory Commission when a facility or activity licensed or regulated pursuant to the Atomic Energy Act "contains a defect which could create a substantial safety hazard, *as defined by regulations which the Commission shall promulgate*" (emphasis in original)).  Thus, both Congress and the Court have spoken: there is no need to defer to the Plaintiff when determining the meaning of the ADA. See 42 U.S.C. § 12134(a).[1]  See also United States v. Mississippi, 82 F.4th 387 (5th Cir. 2023)

---

[1] Title II delegates to the Attorney General the limited authority to "promulgate regulations in an accessible format that implement" Title II of the ADA; nothing suggests the Plaintiff is entitled to define terms or establish bases of liability. 42 U.S.C. § 12134(a).

Second, the Loper Bright Court identified a negative byproduct of applying Chevron deference as risking "judicial judgment [that] would not be independent at all" and, therefore, inconsistent with courts' constitutional "duty … to say what the law is." 2024 WL 3208360 at *9 (citing Marbury v. Madison, 1 Cranch 1137 (1803)). In other words, how *courts* read the law matters more than how an agency does. Applied here, this mandate highlights the importance of Justice Kennedy's concurrence in Olmstead, as it represents binding authority interpreting the *text* of the ADA. See United States v. Mississippi, 82 F.4th 387, 394 n.11 (5th Cir. 2023) (describing Justice Kennedy's concurrence as controlling) (citing Marks v. United States, 430 U.S. 188, 193 (1977)). Thus, as interpreted by the Supreme Court, the ADA is a statute that imposes narrow liability and courts "must be cautious when [they] seek to infer specific rules limiting States' choices when Congress has used only general language in the controlling statute." Olmstead, 527 U.S. at 615. Justice Kennedy emphasized this point earlier in the concurrence, when he identified "[g]rave constitutional concerns … when a federal court is given the authority to review the State's choices in basic matters such as establishing or declining to establish new programs. It is not reasonable to *read the ADA* to permit court intervention in these decisions." Id. at 613-14 (emphasis added). In other words, Olmstead represents a case that interpreted the ADA's text, whereas

Plaintiff's new and expansive theory turns on its own regulation. Loper Bright rejects this approach. 2024 WL 3208360 at *15.

The Loper Bright Court identified a third problem with Chevron deference; it allowed federal agencies to "change course even when Congress has given them no power to do so." 2024 WL 3208360 at *21. The Chief Justice's concerns are manifest here, where the Plaintiff celebrated the filing of this lawsuit as the "First Challenge" raising a vastly expanded theory of the ADA and Olmstead decision. [Doc. 429-1 at 6 n.1 (citing Plaintiff's press release, available at https://www.justice.gov/opa/pr/justice-department-sues-georgia-unnecessarily-segregating-students-disabilities).]

Fourth, Loper Bright also made clear that Chevron deference was never appropriate to resolve questions "of deep 'economic and political significance'" like education policy.[2] Id. at *18 (citing King v. Burwell, 576 U.S. 473, 486 (2015)).

Finally, there is no reasonable argument that Loper Bright is inapplicable to this lawsuit or the questions currently before this Court. The State recognizes that the Loper Bright decision did not "call into question prior cases that relied on the

---

[2] The Court has also recognized that local education policy is certainly one of material significance and, consequently, it has "traditionally deferred to state legislatures." San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 40 (1973).

Chevron framework," but this does not matter on a prospective basis. 2024 WL 3208360 at *21. Moreover, the Court in Olmstead did not consider a "challenge [to] the regulatory formulations themselves as outside of the congressional authorization."[3] 527 U.S. at 592 (plurality opinion). Indeed, to the extent that Olmstead is read as a case about statutory construction, Loper Bright forecloses the contention that the Plaintiff's regulation is proper, controlling, or even entitled to deference. This is particularly true when the Plaintiff never substantively responded to the State's construction of the ADA or Olmstead analysis that demonstrates that Title II applies only to public entities that *provide* services and those services have been shown—on an individual basis and by treating professionals—to be inappropriate. [Docs. 429-1 at 17-28; 434 at 24-32; 448-1 at 11-16.]

In sum, Loper Bright is supplemental and dispositive authority that speaks to three material questions before this Court on summary judgment: can a public entity be liable under Title II when (1) it does not "provide" the services at issue; (2) the plaintiff has conducted no individualized review to determine what

---

[3] At best, the Eleventh Circuit's consideration of the issue is dicta, but it expressly "defer[red] to" the Plaintiff's regulation without analysis and in a way that cannot be reconciled with Loper Bright. See United States v. Florida, 932 F.3d 1221, 1224 (11th Cir. 2019).

constitutes "appropriate services;" and (3) no treating physician has opined that each individual could appropriately be treated in community settings? Where the Plaintiff's answer turned on its *regulation*, Loper Bright mandates that these questions must be answered by "determin[ing] the best reading of the *statute*." 2024 WL 3208360 at *16 (emphasis added). Plaintiff never engaged in this kind of statutory analysis, and at least after Loper Bright, the omission error is dispositive.

Respectfully submitted this 12th day of July, 2024.

|  |  |  |  |
|---|---|---|---|
|  |  | */s/ Josh Belinfante* |  |
| Christopher M. Carr | 112505 | Josh Belinfante | 047399 |
| *Attorney General* |  | Melanie Johnson | 466759 |
| Bryan K. Webb | 743580 | Edward A. Bedard | 926148 |
| *Deputy Attorney General* |  | Danielle Hernandez | 736830 |
| Kristen P. Stoff | 536807 | Javier Pico Prats | 664717 |
| *Senior Assistant Attorney General* |  | Anna Edmondson | 289667 |
| Kristen Settlemire Fuller | 919430 | Robbins Alloy Belinfante Littlefield, LLC | |
| *Assistant Attorney General* |  | 500 14th St. NW | |
| Office of the Attorney General |  | Atlanta, GA 30318 | |
| 40 Capitol Square, SW |  | T: (678) 701-9381 | |
| Atlanta, Georgia 30334 |  | F: (404) 856-3255 | |
| T: (404) 458-4336 |  | E: jbelinfante@robbinsfirm.com | |
|  |  |     mjohnson@robbinsfirm.com | |
|  |  |     ebedard@robbinsfirm.com | |
|  |  |     dhernandez@robbinsfirm.com | |
|  |  |     jpicoprats@robbinsfirm.com | |
|  |  |     aedmondson@robbinsfirm.com | |

– 9 –

        Alexa R. Ross     614986
        AlexaRossLaw, LLC
        2657 Danfroth Lane
        Decatur, Georgia 30033
        E: alexarross@icloud.com

*Special Assistant Attorneys General*

*Attorneys for Defendant, State of Georgia*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Notice has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Notice has been prepared using 14-pt Times New Roman Font.

*/s/ Josh Belinfante*
Josh Belinfante

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing **NOTICE OF SUPPLEMENTAL AUTHORITY** with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing.

This 12th day of July, 2024.

*/s/ Josh Belinfante*
Josh Belinfante