# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STATE OF GEORGIA, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 1:16-cv-03088-ELR |

## PLAINTIFF'S [PROPOSED] RESPONSE TO DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY

On July 12, 2024, Defendant State of Georgia ("State") filed a brief—styled as a notice of supplemental authority—in which it contends that the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. ____, 144 S. Ct. 2244 (2024), bolsters the arguments advanced in its motion for summary judgment. ECF No. 492. For the reasons that follow, *Loper Bright* should not alter this Court's review of the parties' pending motions for summary judgment on claims brought by Plaintiff United States of America ("United States") under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*[1]

---

[1] In this case, the United States asserts that (1) the State's unnecessary segregation of students in the Georgia Network for Educational and Therapeutic Support

In its brief, the State asserts "that <u>Loper Bright</u> now provides the controlling analysis to 'the question that matters: Does the [ADA] statute support the challenged agency action?'" ECF No. 492 at 3. However, the State fails to clearly identify what it views as "the challenged agency action." It appears the State believes that the United States takes the position that its regulations—but not the statute—dictate the resolution of three issues: (1) whether a public entity must "provide," rather than "administer," services or programs in order to be subject to liability under Title II for discrimination in those services or programs; (2) the degree to which proof of a violation of Title II's integration mandate, as interpreted in *Olmstead*, must be individualized; and (3) the proper scope of *Olmstead*'s "appropriateness" prong. *See id.* at 2, 7-8. Relying on this understanding, the State then claims that *Loper Bright* affects the resolution of those three issues. *See id.* But the State's premise—and therefore its conclusion—is incorrect. As the United States' briefs on summary judgment show, the second and third issues, listed above, do not involve agency

---

("GNETS") Program violates the integration mandate of Title II of the ADA, *see Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597-601 (1999); and (2) the State relegates students in the GNETS Program to unequal educational opportunities in violation of Title II.

2

interpretation of the ADA but instead how *Olmstead*'s holding should be construed and applied to the facts of this case.[2] *See*, *e.g.*, ECF No. 448-1 at 11-16.[3]

Contrary to the State's assertion, *Loper Bright*—which overruled *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)—does not compel the conclusion that the Title II implementing regulations improperly prohibit discrimination in services and programs that a public entity "administers." Prior to *Loper Bright*, *Chevron* and the rules it established for deference applied only when Congress had not "directly spoken to the precise question at issue" and Congressional intent was thus unclear. *Loper Bright*, 144 S. Ct. at 2254, 2273 (citing *Chevron*, 467 U.S. at 842). Because Congress's intent regarding Title II's application to public entities that "administer" services is clear, the Supreme Court's elimination of *Chevron* deference does not affect this Court's analysis. Moreover, because Congress has ratified the language contained in the Title II regulations implementing the integration mandate, the State's challenges to that language fail.

---

[2] As the State acknowledges, the *Olmstead* decision is based on the text of the ADA. ECF No. 492 at 5. Though the State suggests otherwise, *Olmstead*'s central holding—that unnecessary segregation constitutes discrimination under Title II—commanded a majority of the Court. 527 U.S. at 597-98.

[3] Although the State contends that the United States' briefing "cites only to decades-old district court decisions from other circuits that deferred to the [United States'] regulation after applying Chevron-based deference," ECF No. 492 at 3, none of the cases that the State cites in support of this contention reference the decision in *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). While the cases do construe and apply *Olmstead*, nowhere does the State suggest that *Loper Bright* renders *Olmstead* infirm.

3

In enacting the ADA, Congress "provide[d] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," including the "serious and pervasive social problem" of "such forms of discrimination against individuals with disabilities" as their "isolat[ion] and segregat[ion]." 42 U.S.C. § 12101(a)(2), (b)(1). Indeed, as the Supreme Court has recognized, "Congress enacted Title II against a backdrop of pervasive unequal treatment in the *administration* of state services and programs," including in "the *administration* of a wide range of public services, programs, and activities, including . . . public education." *Tennessee v. Lane*, 541 U.S. 509, 524-25 (2004) (emphasis added) (citations omitted). In going beyond Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, which bars federal funding recipients from engaging in disability discrimination, the ADA satisfied Congress's identified need for "omnibus civil rights legislation" providing for broad enforcement of "necessary civil rights protections for people with disabilities" against *all* public entities, whether federally-funded or not. *Helen L. v. DiDario*, 46 F.3d 325, 331 (3d Cir. 1995), *citing* S. REP. NO. 101-116, at 17 (1989), *and* H.R. REP. NO. 101-485, pt. 2, at 40 (1990); *see also Shotz v. City of Plantation*, 344 F.3d 1161, 1174 (11th Cir. 2003).

In the ADA, Congress directed "the Attorney General [to] promulgate regulations in an accessible format that implement" Title II and specifically required

4

that the Attorney General's implementing regulations "be consistent with this [statute] and with the coordination regulations under [Section 504 of the Rehabilitation Act]." 42 U.S.C. § 12134(a)-(b). The ADA further specifies that, "[e]xcept as otherwise provided" in the statute, "nothing" in the ADA "shall be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 (29 U.S.C. 790 *et seq.*)"—which includes Section 504—"*or the regulations issued by Federal agencies pursuant to such title.*" *Id.* § 12201(a) (emphasis added).

The Attorney General complied with these congressional commands when it issued regulations implementing Title II. *Compare* 28 C.F.R. § 41.51 (Section 504 coordination regulations), *with* 28 C.F.R. § 35.130 (Title II implementing regulations). As shown in the chart below, the provisions of the Title II implementing regulations primarily at issue in this case track the Section 504 regulations virtually word for word, and thus satisfy Congress's mandate.

|  | **Section 504 Coordination Regulations** | **Title II Implementing Regulations** |
|---|---|---|
| Integration Mandate | **28 C.F.R. § 41.51(d)**<br>"Recipients shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons." | **28 C.F.R. § 35.130(d)**<br>"A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." |
| Discriminatory Effect | **28 C.F.R. § 41.51(b)(3)(i)**<br>"A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: (i) That have the | **28 C.F.R. § 35.130(b)(3)(i)**<br>"A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: (i) That have the effect of subjecting |

| | effect of subjecting qualified handicapped persons to discrimination on the basis of handicap[.]" | qualified individuals with disabilities to discrimination on the basis of disability[.]" |
|---|---|---|
| Equal Opportunity to Participate | **28 C.F.R. § 41.51(b)(1)(ii)** "A recipient, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap: (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others[.]" | **28 C.F.R. § 35.130(b)(1)(ii)** A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability: (ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others[.]" |

As the Eleventh Circuit has recognized, "Congress was quite clear that Title V of the Rehabilitation Act and its accompanying regulations were to be construed as the *minimum standard* for the ADA." *United States v. Florida*, 938 F.3d 1221, 1244 (11th Cir. 2019) (emphasis in original). By explicitly endorsing the Section 504 coordination regulations in the ADA not once, but twice, Congress voiced its approval of the administrative interpretations embodied in those regulations. *See Lorillard v. Pons*, 434 U.S. 575, 580-81 (1978); *Florida*, 938 F.3d at 1228. Given that the Attorney General incorporated those interpretations—as directed by Congress—when promulgating the Title II implementing regulations, the implementing regulations have the force of law.[4] *See United States v. Bd. of*

---

[4] Because Congress required that the Title II implementing regulations be consistent with—but not necessarily identical to—the Section 504 coordination regulations, *Loper Bright* would not foreclose reliance on Title II ADA regulations that do not

6

*Comm'rs of Sheffield*, 435 U.S. 110, 134 (1978) (observing that courts are bound by administrative interpretations that Congress ratifies in the course of reenacting legislation); *Helen L.*, 46 F.3d at 332 ("[B]ecause Congress mandated that the ADA regulations be patterned after the section 504 coordination regulations, the former regulations have the force of law.").

In short, the use of the word "administer" in the Title II regulations is inarguably consistent with Congressional intent, and nothing in the rationale or express language of *Loper Bright* precludes this Court from ruling in accordance with the arguments advanced in the United States' affirmative and responsive summary judgment briefing. *E.g.*, 144 S. Ct. at 2259 (courts exercising independent judgment in determining the meaning of statutory provisions may be guided by agency interpretations of the federal statutes that they implement); *id.* at 2262 (courts are particularly justified in "seek[ing] aid from the interpretations of those responsible for implementing particular statutes" when—as here—the interpretations were "issued contemporaneously with the statute at issue[] and … have remained consistent over time.").

For the reasons set forth above, nothing in *Loper Bright* should change this Court's analysis of the parties' pending motions for summary judgment.

---

mirror the Section 504 coordination regulations but are nevertheless consistent with them.

7

Dated: July 19, 2024

Respectfully submitted:

| | |
|---|---|
| RYAN K. BUCHANAN<br>United States Attorney<br>Northern District of Georgia | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| /s/ *Aileen Bell Hughes*<br>AILEEN BELL HUGHES<br>GA Bar Number: 375505<br>Assistant United States Attorney<br>United States Department of Justice<br>Richard B. Russell Federal Building<br>75 Ted Turner Dr. SW<br>Suite 600<br>Atlanta, GA 30303-3309<br>(404) 581-6000 | SHAHEENA A. SIMONS<br>Chief<br>Educational Opportunities Section<br><br>KELLY GARDNER WOMACK<br>Deputy Chief<br>Educational Opportunities Section<br><br>ANDREA HAMILTON WATSON<br>Special Litigation Counsel<br><br>CLAIRE CHEVRIER<br>FRANCES COHEN<br>MATTHEW GILLESPIE<br>VICTORIA M. LILL<br>JESSICA POLANSKY<br>LAURA C. TAYLOE<br>MICHELLE L. TUCKER<br>Trial Attorneys<br>United States Department of Justice<br>Civil Rights Division<br><br>/s/ *Laura Cassidy Tayloe*<br>United States Department of Justice<br>Civil Rights Division<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>(202) 514-4092<br>Laura.Tayloe@usdoj.gov |

## **L.R. 7.1(D) CERTIFICATION**

I certify that this brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this brief has been prepared using 14-pt Times New Roman Font.

/s/ *Laura C. Tayloe*
LAURA C. TAYLOE

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing.

This 19th day of July, 2024.

/s/ *Laura C. Tayloe*
LAURA C. TAYLOE