## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA,   )
                    )
      Plaintiff,       )
                    )     CIVIL ACTION FILE
v.                    )
                    )     NO. 1:16-CV-03088-ELR
STATE OF GEORGIA,        )
                    )
      Defendant.     )

## DEFENDANT'S MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, RECONSIDERATION OF THE COURT'S ORDER ON SUMMARY JUDGMENT

Defendant State of Georgia (the "State" or "Defendant") seeks the Court's clarification or, in the alternative, reconsideration of two issues raised in the August 16, 2024 Order (the "Order") [Doc. 496].  The State also seeks reconsideration of one independent issue.  On clarification, the State requests that this Court clarify, or in the alternative, reconsider the portion of the Order on redressability that decided, for purposes of summary judgment, "any challenged discrimination is … redressable by a judgment against [the State] without the presence of certain 'absent third part[ies]'—that is, the [local education agencies or] LEAs."  [Doc. 496 at 44-55.]  On reconsideration, the State requests that the Court reconsider its characterization of the State's argument that there must be

evidence that an individual's treating physician **or** treating professional (here, the IEP team) makes a determination that a less restrictive environment is appropriate.

The reason for this motion's (the "Motion") request for clarification (and, alternatively, reconsideration) is two-fold.  First, the State seeks to determine whether the Order's consideration of redressability is based on what the Order described as the "the reasonable accommodation DOJ proposes" through its experts, or whether the Court concluded the DOJ established redressability through something more.  [Doc. 496 at 66.]  If the Court clarifies that redressability is based on the testimony of the DOJ's expert witnesses, the second question for clarification is whether such (disputed) evidence provided the exclusive basis used by the DOJ to show redressability.

If the Court clarifies that (1) the DOJ's expert witnesses provided the factual basis for the Order's conclusion on redressability, and (2) that evidence provided the only proffered remedies, the State does not seek reconsideration of the Order.  Alternatively, if the Court concludes that the DOJ established redressability with a proposed remedy outside of what its experts suggested, and if that remedy would be considered at a potential trial, the State requests that the Court reconsider the Order to separately analyze redressability and identify how any proposed remedy redresses what the DOJ and the Court identified as the alleged injuries in fact.

The basis of the third ground for reconsideration only is the Order's limiting of the "State's argument [to being] that a 'responsible, **treating physician**" must determine appropriateness for purposes of Title II liability.  [Doc. 496 at 57 (emphasis added).]  The Order's description is accurate but incomplete.  At summary judgment, the State argued that the student's locally-staffed IEP teams also constituted the type of treating professional whose opinions are part of a Title II plaintiff's prima facie case, and whether those opinions were entitled to the kind of "greatest deference" Justice Kennedy's concurrence mandated in Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 610 (1999) (Kennedy, J., concurring).

## **BACKGROUND**

Since the inception of this litigation, the State has challenged the DOJ's standing to bring this lawsuit, including the requirement of redressability.  [Doc. 496 at 12.]  It has also argued that neither the complaint nor the DOJ's evidence at summary judgment satisfied the requirements of binding precedent of showing a "determination by the State's treatment professionals" that an individual's placement in a more integrated setting would be appropriate.  United States v. Florida, 938 F.3d 1221, 1250 (11th Cir. 2019).

The Order disagreed, but the Court's conclusion is not final.  [Doc. 496 at 52.]  At trial, the DOJ must (re)establish each of the three requirements of standing without the benefit of the favorable inferences applicable to non-movants at

summary judgment.  [Id. at 11 (citing United States v. Amodeo, 916 F.3d 967, 971 (11th Cir. 2019) (requiring the party invoking federal jurisdiction to establish standing at each stage of the litigation)).]  See also Murthy v. Missouri, 144 S. Ct. 1972, 1986 (2024) (reaffirming that the plaintiff's burden is to "'establish standing as of the time [s]he brought th[e] lawsuit and maintaining it thereafter'") (citing Carney v. Adams, 592 U.S. 53, 59 (2020)).  The Order rejected the State's argument on the necessity for treating professionals by characterizing the State's contention as limited to treating physicians and not including IEP teams staffed by local education officials.  [Doc. 496 at 57.]

A.     Standing

On standing, this Motion focuses on redressability, and the extent to which the Order concluded that the DOJ's proffered remedies would redress what the Court identified as the relevant injuries in fact.  More specifically, the Order identified the DOJ's disputed and alleged injuries-in-fact as "including [alleged] ongoing stigmatization, inferior education and not receiving appropriate supports and services in the most integrated setting pursuant to the mandate of" Olmstead v. L.C. ex. rel. Zimring, 527 U.S. 581 (1999).  [Doc. 496 at 24.]  By contrast, the Order's discussion of redressability did not identify what kind of judicial order would redress these specific, alleged harms.  [Doc. 496 at 38-52.]  As the Order also recognized, however, binding precedent required (and at trial will require

again) the DOJ to show not only that the identified injuries were traceable to the State alone, but also that *these alleged injuries* can be "redressed by a favorable decision" against the State alone.  [Doc. 496 at 12 (citing <u>Jacobson v. Fla. Sec'y of State</u>, 974 F.3d 1236, 1245 (11th Cir. 2020) (further citations omitted).]

At summary judgment, the State's briefs argued the DOJ fell short of this burden.  [Doc. 496 at 12 (citing, <u>e.g.</u>, Doc. 429-1 at 10-17 & n.15).]  The DOJ's responsive briefing on standing did not expressly identify the remedy it seeks.  [Doc. 448-1 at 7-10.]  Nor did the DOJ separately address redressability to argue that its unidentified remedy against only the State would likely compel action by the LEAs and/or RESAs to redress the alleged injuries in fact; nor did the DOJ explain *how* this would occur.  [<u>Id.</u>]

The Order addressed traceability and redressability together, and it did not specify what kind of judicial order satisfied the redressability requirement.  [Doc. 496 at 38-52.]  The Order did, however, identify possible remedies when addressing the DOJ's proffered reasonable accommodations.  The DOJ's briefing addressed remedies as part of the same discussion.  [Doc. 448-1 at 23.]  There, the DOJ represented to this Court that it had "identified the reasonable modifications it seeks" from the State as: (1) an expansion of therapeutic services and supports; (2) the provision of additional training to the LEAs and RESAs; and (3) additional "coordination and data-sharing" across various State agencies (collectively referred

to as the "Proposed Accommodations"). [Id. at 23-25.] It may be that this is the kind of relief the Court considered when deciding redressability. [Doc. 496 at 66 (citing the same portions of the DOJ's responsive summary judgment brief).] A purpose of this Motion is to seek clarification on this point, and to determine if the Court identified other proposed remedies when analyzing the DOJ's standing.

### B.  Treating Professionals

In its Brief in Support of Summary Judgment, the State argued:

> Summary judgment is warranted because DOJ has provided no testimony of a "responsible, treating physician" who has examined any (much less the "vast majority") of students receiving GNETS services. Olmstead, 527 U.S. at 610 (Kennedy, J., concurring). As binding Eleventh Circuit authority states, "[w]here there is no such finding … nothing in the ADA requires the deinstitutionalization of that patient[.]" See Zimring, 138 F.3d at 903 (emphasis added).[1] Under these circumstances, they cannot overcome the "great deference" afforded here to **IEP Teams' recommendations** that students receiving GNETS services are doing so appropriately. Olmstead, 527 U.S. at 610; see also School Bd. of Nassau Cty. v. Arline, 480 U.S. 273, 288 (1987) ("[C]ourts normally should defer to

---

[1] The Supreme Court affirmed this portion of the Eleventh Circuit's Olmstead opinion. 527 U.S. at 596–603. If anything, the Supreme Court added to the Eleventh Circuit's opinion by requiring that "the State's treatment professionals determine that [community-based] treatment is appropriate," in addition to the individual's treating physician. Id. at 607; see also id. at 602 ("Absent such qualification [from the State's treatment professionals], it would be inappropriate to remove a patient from the more restrictive setting"). But whether or not the Supreme Court's opinion requires the State's treatment professionals to recommend a community placement, the Eleventh Circuit's holding—affirmed in Olmstead—that such a recommendation must come, at a minimum, from the individual's treating physician remains binding.

the reasonable medical judgments of public health officials.").

[Doc. 429-1 at 27-28 (footnote one here is footnote 30 in original) (bold added).] [2]

The State's Reply Brief in Support of its Motion for Summary Judgment used the same, broad argument.  [Doc. 470 at 9, 10, 13-14.]  And, it specifically relied on IEP teams and not only State-employed treating physicians: "Factually [the DOJ's response] ignores that the only individualized assessments were completed by IEP Teams."  [Doc. 470 at 13.]  Footnote 8 of the Reply Brief further clarified the State's reliance on more than just treating physicians:

> Whether this Court cites Justice Kennedy's concurrence and requires a physician's opinion, or whether it relies on the plurality decision and mandates **some "professional" determination (e.g., an IEP Team)**, there is no support for the idea that an absence of competent, individualized assessments is necessary. Olmstead, 527 U.S. at 602, 610.

[Doc. 470 at 13 n.8 (emphasis added).]

The Order acknowledged the significance of IEP teams' role under an Olmstead analysis:

> As the State concedes in its own motion for summary judgment, an IEP team—not necessarily a physician, much less a State's physician—is the decisionmaker regarding what educational placement is appropriate for a student, a reality that is also reflected in the GNETS Rule. [See Doc. 429-1 at 22]; see also Ga. Comp. R. & Regs. § 160-4-7-.15(2)(f), (3)(a).
> …

---

[2] This Brief adopts the ECF numbered pages.

> [T]his case [is] factually distinguishable from <u>Olmstead</u> in
> key respects, including the fact that IEP teams, not treating
> physicians determine when to recommend a student to
> enter or exit GNETS.

[Doc. 496 at 57, 60.]  The Order did not, however, view the State's argument as inclusive of IEP team determinations and explained that the Court was "unmoved by the State's argument that a "responsible, treating physician" must determine appropriateness."  [<u>Id.</u> at 57.]

Part of the Order's reasoning appears to be based on the testimony from Dr. McCart.  [Doc. 496 at 60-61.]  The State had addressed such testimony by contending it did not provide evidence of systemic disregard for IEP team recommendations or the context of the single IEP team decision identified in the Order.  [<u>Id.</u> at 61 (citing Doc. 450-12 at 11-16).]  Finally, the Order did not expressly defer to any decisions of IEP teams.

<u>**STANDARD OF REVIEW**</u>

Different standards of review apply to motions for clarification and for reconsideration.  <u>See</u> <u>Kuber v. Berkshire Life Ins. Co. of Am.</u>, 19-80211-CV, 2020 WL 650782, at *1 (S.D. Fla. Jan. 27, 2020) (recognizing distinct standards of review for motions for clarification and reconsideration).

Unlike motions for reconsideration, there appears to be no clearly established standard of review governing motions for clarification.[3]  Precedent does, however, provide some guidance.  First, when considering a motion for clarification, "the burdens associated with a motion for reconsideration under Rules 59 or 60 are not applicable."  Kuber, 2020 WL 650782 at *1.  Second, this Court has granted motions for clarification in the same order that denies a motion for reconsideration.  See, e.g., Duren v. Int'l Follies, Inc., 1:19-CV-01512-ELR, 2020 WL 13526686, at *4 (N.D. Ga. Sept. 30, 2020); Brown v. Nexus Bus. Sols., LLC, 1:17-CV-01679-ELR, 2020 WL 10460498, at *2 (N.D. Ga. Apr. 29, 2020) (same).  This suggests that litigants' motions for clarification are reviewed less stringently than motions for reconsideration.

The standard imposed on parties seeking reconsideration of orders in the Northern District of Georgia is far more clear.  Local Rule 7.2(E) provides that motions for reconsideration must be submitted within 28 days of the order at issue and should not be "filed as a matter of routine practice."  N.D. Ga. Civ. R. 7.2(E).

---

[3] Also unlike motions for reconsideration, there is no local rule or other rule of procedure that expressly addresses motions for clarification.  Another court in this district cited its "plenary power to" hear and grant motions for clarifications.  Fair Fight Action, Inc. v. Raffensperger, 1:18-CV-5391-SCJ, 2021 WL 9553849, at *1 (N.D. Ga. Nov. 15, 2021).  The Fair Fight opinion is based on Eleventh Circuit precedent that authorizes district courts to exercise such power to "reconsider, revise, alter or amend" any interlocutory order (like the Order) before entry of a final judgment.  Id. (citing Hardin v. Hayes, 52 F.3d 934, 938 (11th Cir. 1995) (citations omitted)).

This Court held that the party seeking reconsideration must demonstrate the relief is necessary based on (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact.  <u>Duren</u>, 2020 WL 13526686, at *4 (citation omitted).  A motion for reconsideration should neither present new arguments or "repackage familiar arguments."  <u>Id.</u>

## ANALYSIS

This Motion seeks clarification and possibly reconsideration of the Order's analysis on the redressability aspect of standing.  It seeks reconsideration of the Order's description of the State's argument on <u>Olmstead</u> liability.  Nothing in the Motion seeks to "repackage" considered arguments, but instead, it highlights issues where there is either uncertainty or presentation of only a portion of the State's position.

**A.** **Request for Clarification or Reconsideration on Redressability**.

On redressability, this Motion asks:

> When analyzing redressability, did the Court understand the DOJ to be seeking only those remedies articulated in the Proposed Accommodations?  If not, what other kind of remedies did the Court consider when considering redressability?

If the answer to the first question is "yes," the State does not seek any further clarification or any reconsideration of the Order's analysis on redressability.  If the

Court answers the first question in the negative and declines reconsideration of the Order, then the State seeks reconsideration of the Order's conclusions on redressability.

1.    Request for Clarification on Redressability.

For a few reasons, this Motion seeks to clarify whether the DOJ's Proposed Accommodations are what the Order considered when analyzing redressability, or whether the Order contemplates some other kind of judicial order.

First, because the Order's discussion of redressability does not identify the possible remedies that would redress the DOJ's alleged injuries in fact, the State is unsure whether the Court relied on the Proposed Accommodations or something else.  [Doc. 496 at 38-52.]  If the Proposed Accommodations provided the sole basis of the Court's decision, the State seeks no further clarification or reconsideration on the Order's discussion of redressability.

If the Court's decision on redressability was based on something other than the Proposed Recommendations, the State cannot determine what kind of judicial order the Court contemplated or how, in fact, that order would redress what the DOJ identifies as the injuries in fact.  The Order conducted this analysis for the Proposed Accommodations, but if there is another kind of judicial order the Court contemplated, the State cannot discern "*how* any injury [it] might have suffered 'is

likely to be redressed by a favorable judicial decision.'"[4] <u>Wittman v. Personhuballah</u>, 578 U.S. 539, 544 (2016) (emphasis added) (citing <u>Hollingsworth v. Perry</u>, 570 U.S. 693, 704 (2013)).

Both questions could be resolved by clarifying that the Order's analysis on reasonable accommodations applies to the redressability discussion.  [Doc. 496 at 66.]  Such a clarification would also suggest—and this Motion seeks to confirm—that the DOJ has not identified another kind of judicial relief that would redress the injuries it alleges.  Such clarifications would be consistent with governing law.

As the Order acknowledged, Title II of the ADA requires plaintiffs to show, as part of the prima facie case, "the availability of a reasonable accommodation."[5] [Doc. 496 at 64-66.]  The DOJ attempted to do so by relying exclusively—in law and in evidence—on the Proposed Accommodations.[6]  [Doc. 496 at 67, 72, 80.]

---

[4] The State's uncertainty is compounded by the fact that it did not see, in the DOJ's briefing, any identified remedies (other than the Proposed Accommodations) or an explanation of how any such additional remedies would provide redress, even though the State's briefs raised both of these concerns.  [Doc. 470 at 9-10; 434 at 30-34; 448-1 at 7-10.]

[5] When deciding whether a proposed accommodation is actually reasonable in the context of Title II, courts consider whether the request "is both efficacious and proportional to the costs to implement it."  <u>Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.</u>, 765 F.3d 1277, 1289 (11th Cir. 2014).

[6] The Order appears to cite to exclusively Dr. Putnam's testimony on the issue of reasonable accommodation, but the State acknowledges that Dr. McCart offered testimony on recommendations to increase and mandate PBIS training across Georgia schools.  [Doc. 496 at 66, 72.]

This matters, because reasonableness is "generally a question of fact," meaning it must be established by actual evidence.[7]  Wolfe v. Florida Dep't of Corr., 5:10-CV-663-OC-PRL, 2012 WL 4052334, at *4 (M.D. Fla. Sept. 14, 2012).  Under these circumstances, the DOJ's presentation of remedies should be limited to the evidence in the record and what the Court said may redress the alleged injuries.

In sum, this Motion seeks to understand whether the Court's decision on redressability considered something other than the Proposed Accommodations, and if so, the basis of the Court's understanding of how an alternative (or additional) judicial remedy redressed the DOJ's identified injuries in fact.

<h3>2.    Alternative Request for Reconsideration on Standing.</h3>

If the Court denies the State's request for clarification, or if it clarifies the Order to mean something other than the Proposed Accommodations provide the only relief at issue in trial, the State respectfully requests that the Court reconsider the Order's conclusion that the "injuries at issue in this case are … redressable by a judgment against [the State]."  [Doc. 496 at 52.]  This is for two reasons.

First, precedent treats redressability and traceability as two separate and independent factors.  Allen v. Wright, 468 U.S. 737, 754 n.19 (1984).  To the

---

[7] Indeed, the Order denied the State's motion for summary judgment on the reasonable accommodation element of an ADA claim because "genuine disputes of material fact remain as to the reasonableness of DOJ's proposed accommodations." [Doc. 496 at 72.]

extent the Order blended the two elements of standing, the State respectfully requests that it be reconsidered to decide whether the DOJ satisfied both the redressability and traceability requirements of standing.  [Doc. 496 at 38-52.] Second, precedent also requires parties asserting federal jurisdiction to show *how* their proposed remedies would actually redress the alleged injuries in fact.  See Wittman, 578 U.S. at 544.  If the Court denies the request for clarification, then the State requests the Court reconsider its decision on redressability.

>    a.    *A Finding of Traceability Does Not Always Satisfy Redressability.*

While related in concept, the requirements of traceability and redressability are distinct.  Traceability "examines the causal connection between the assertedly unlawful conduct and the alleged injury, whereas [redressability] addresses the causal connection between the alleged injury and the judicial relief requested." Allen, 468 U.S. at 754 n.19.  See also California v. Texas, 593 U.S. 659, 671-76 (2021) (separately analyzing traceability and redressability); Lewis v. Governor of Alabama, 944 F.3d 1287, 1296-1306 (11th Cir. 2019) (same).

The Order can be clarified to explain that it did independently analyze traceability and redressability.  [Doc. 496 at 38-52.]  If, however, such clarification is not possible, reconsideration would be appropriate because "the relief requested goes beyond the violation of the law alleged, [which] illustrate[s] why it is **important to keep the inquiries separate**."  Allen, 468 U.S. at 754 n.19

(emphasis added).  Indeed, in cases like this one, where the "plaintiff is not [itself] the object of government action or inaction [it] challenges … much more is needed" to show redressability, and it will be a "'substantially more difficult' [requirement] to establish." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 562 (1992) (citing <u>Allen</u>, 468 U.S. at 758).  Thought it remains a disputed issue for trial, if the Order's conclusion on redressability was not based on the Proposed Accommodations, the State seeks reconsideration of the Order's conclusion on redressability in the light of the fact that the DOJ did not identify another kind of judicial order that would satisfy standing.[8]

> b.  *Plaintiff Must Establish How A Judicial Order Will Redress Their Alleged Injuries-in-Fact.*

Second, with the exception of the Proposed Accommodations, the Order does not explain how a different kind of judicial order would redress what the DOJ identifies as the alleged injuries in fact.  <u>Wittman</u>, 578 U.S. at 544 (requiring demonstration of how a judicial order will address the alleged injuries in fact) (citing <u>Hollingsworth</u>, 570 U.S. at 704).  This too may be resolved by clarifying the Order, as described above.[9]  If, however, the DOJ's briefing does not provide a

---

[8] The State acknowledges that the DOJ's briefing did not separately address redressability in its Corrected Brief in Opposition to the State's Motion for Summary Judgment.  [Doc. 448-1 at 7-10.]

[9] Any clarification should be based on the DOJ's briefs and not a new argument made in response to this Motion.

basis to clarify the Order, reconsideration may again be appropriate.

The Order acknowledges that the State's motion on summary judgment challenged the DOJ's attempt to show redressability by arguing that (1) "the challenged actions are attributable only to third parties, specifically the LEA's;" (2) the State does not provide the services at issue, and the Integration Mandate's use of the word "administer" is inconsistent with the text of the ADA; and (3) the State does not administer the GNETS program.  [Doc. 496 at 39.]  The State made the additional argument that the DOJ failed to establish redressability by showing (or even arguing) how a judicial order "mandating the expansion of the Apex Program and PBIS training does not curtail the challenged local decisions" would redress the alleged injuries in fact.  [Doc. 470 at 9-10.]  Indeed, the State specifically faulted the DOJ for challenging the GNETS Rule and the State's special education criteria (which are consistent with the IDEA), but not identifying how revising either would address the alleged injuries in fact.  [Doc. 434 at 30-34.]  The State also pointed out how the DOJ attacked the voluntary GNETS grants, but that the Proposed Accommodations did not recommend any changes to the funding mechanisms (and, indeed the DOJ's proffered experts did not know much about them), nor did the DOJ indicate how any proposed fiscal changes would redress the issues.  [Id.]  If, upon review, the Court agrees, the DOJ did not satisfy all requirements of standing.  Wittman, 578 U.S. at 544 (requiring demonstration of

how a judicial order will address the alleged injuries in fact) (citing <u>Hollingsworth</u>, 570 U.S. at 704).  This conclusion would be appropriate, as the DOJ's briefing did not attempt to show how expanding Medicaid funded services and additional training will reduce alleged discrimination that purportedly arises from the GNETS Rule, the current funding mechanisms, or other acts of oversight.  [Doc. 448-1 at 7-10.]

In sum, if the Order should be read as accepting that, for purposes of summary judgment, a judicial order imposing the Proposed Accommodations would provide redress, the matter can be resolved at trial.  If, however, this Motion demonstrates that the DOJ neither identified a specific remedy and, consequently, failed to show how a judicial order compelling the unknown would provide redress, reconsideration of the Order's determination that the DOJ satisfied the redressability requirement is warranted.

### 3.  Request for Reconsideration on Olmstead Requirements.

This Court has said that reconsideration of an order is warranted when there is a need to correct a clear error of law or fact.  <u>Duren</u>, 2020 WL 13526686, at *4 (citation omitted).  Respectfully, for three reasons, reconsideration is warranted here for the portion of the Order that addressed the "appropriateness" prong of an <u>Olmstead</u> claim.  [Doc. 496 at 55-61.]  First, the Order limited the breadth of the State's argument on appropriateness.  Second, once framing the issue narrowly, the

Order overlooked the DOJ's failure to provide evidence of IEP team recommendations being systemically ignored.  Third, the Order does not appear to have afforded IEP teams' recommendations any deference.

As discussed above, the State's briefing at summary judgment—both its main and reply briefs—argued that a Title II claim requires evidence that some treating professional, be it a physician or an IEP team, determined that a less restrictive environment is appropriate and then denied.  [Doc. 429-1 at 27-28; 470 at 9, 10, 13-14.]  The Order disagreed, but it did not consider the State's contention that IEP teams could constitute the kind of treating professional that must recommend a less restrictive setting before establishing liability.  [Doc. 496 at 57.] This characterization of the State's argument warrants reconsideration, because, as an issue of fact, the State did not argue that only a treating physician could provide the necessary evidence of whether community placement is appropriate.  The distinction is also material, as the Order also appears to identify the IEP teams as providing the relevant professional opinions: "IEP teams, not treating physicians, determine when to recommend a student to enter or exit GNETS."  [Doc. 496 at 60.]

Second, because the Order did not deem the IEP teams to be included in the State's argument, it did not consider whether Title II liability existed only if an IEP team decided community placement was appropriate but the student remained in a

more restrictive environment.  This too is material.  If IEP teams'

recommendations are a required element, then the DOJ would not have satisfied its

burden at summary judgment (even if <u>Olmstead</u> is read as allowing evidence

beyond the conclusion of a state treating physician).  527 U.S. at 602 (plurality

opinion).[10]

Third, reconsideration is also appropriate because, after narrowing the

State's argument to the opinions of physicians, the Order does not appear to have

afforded the treating professionals of IEP teams the "greatest deference" required

by Justice Kennedy's controlling concurrence in <u>Olmstead</u>.  527 U.S. at 610

(Kennedy, J., concurring).  This too would be an error of law stemming from the

apparent error of misapplying the State's argument at summary judgment.

In sum, the State seeks reconsideration of three aspects of the Order's

discussion of the merits of DOJ's Title II claim, and specifically the discussion on

the kind of evidence necessary to show that "community placement is

appropriate."  <u>Olmstead</u>, 527 U.S. at 587 (plurality opinion).  [Doc. 496 at 55-61.]

First, the State seeks reconsideration of the Order's conclusion that the State

argued that only "a 'responsible, treating physician' must determine

---

[10] This conclusion is also supported by recent Eleventh Circuit precedent applying <u>Olmstead</u>: "the Supreme Court struck that balance in <u>Olmstead</u>, holding that the requirement that States provide community-based treatment must be tempered by: (1) a determination by the State's treatment professionals that such placement is appropriate."  <u>United States v. Florida</u>, 938 F.3d 1221, 1250 (11th Cir. 2019).

appropriateness," for purposes of <u>Olmstead</u> claims.  [Doc. 496 at 57.]  Second, the State seeks reconsideration of the Order's decision that the DOJ did not need to provide evidence of schools systemically ignoring decisions of IEP teams to recommend more integrated setting.  <u>Olmstead</u>, 527 U.S. at 587; [Doc. 469 at 55-61.]  Third, and independent of the Order's conclusion that treating professionals' opinions are not required, to the extent it did not do so, the State seeks reconsideration of the Order and defer to IEP teams' recommendations.  <u>Olmstead</u>, 527 U.S. at 602 (plurality opinion), 610 (Kennedy, J., concurring).

Such reconsideration should lead to one of two conclusions.  Either the DOJ failed to satisfy its burden by (1) not providing systemic evidence that treating professionals determined community placement is appropriate per <u>Olmstead;</u> and/or (2) not affording such decisions the appropriate level of deference.  Or, reconsideration would lead to the (disputed) conclusion that the DOJ is not required to provide evidence that, on a systemic basis, students receive or are referred for GNETS services despite a determination by "the State's [or any other] treatment professionals that [community] placement is appropriate."  <u>Florida</u>, 938 F.3d at 1250.

## **CONCLUSION**

This Motion seeks a clarification of the Order to explain whether the Proposed Accommodations provided the Court with the basis of its conclusion on

redressability, and if the DOJ is now limited to seeking the remedies articulated in the same.  If the answer is "no," then the State seeks reconsideration of the Order to correct what may be the error of not independently analyzing redressability and, upon such reconsideration, explaining how the Proposed Accommodations would redress the DOJ's alleged injuries in fact.  The Motion further seeks reconsideration from the Order's conclusion on whether the DOJ satisfied the "appropriateness" requirement of one of its Title II claims.

Respectfully submitted this 13th day of September, 2024.

Christopher M. Carr        112505
  *Attorney General*
Bryan K. Webb              743580
  *Deputy Attorney General*
Katherine P. Stoff         536807
  *Sr. Assistant Attorney General*
Kristen L. Settlemire      919430
  *Assistant Attorney General*
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334

*/s/ Josh Belinfante*
Josh Belinfante            047399
Melanie Johnson            466756
Edward A. Bedard           926148
Danielle Hernandez         736830
Javier Pico Prats          664717
Anna Edmondson             289667
Robbins Alloy Belinfante Littlefield, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
F: (404) 856-3255
E: jbelinfante@robbinsfirm.com
   mjohnson@robbinsfirm.com
   ebedard@robbinsfirm.com
   dhernandez@robbinsfirm.com
   jpicoprats@robbinsfirm.com
   aedmondson@robbinsfirm.com

Alexa R. Ross             614986
AlexaRossLaw, LLC
2657 Danforth Lane
Decatur, Georgia 30033
E: alexarross@icloud.com

*Special Assistant Attorneys General*

*Attorneys for Defendant*
*State of Georgia*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Notice has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this Notice has been prepared using 14-pt Times New Roman Font.

*/s/ Josh Belinfante*
Josh Belinfante

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing **DEFENDANT'S MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, RECONSIDERATION OF THE COURT'S ORDER ON SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing.

This 13th day of September, 2024.

*/s/ Josh Belinfante*
Josh Belinfante