# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STATE OF GEORGIA, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 1:16-cv-03088-ELR |

### UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, RECONSIDERATION OF THE COURT'S ORDER ON SUMMARY JUDGMENT

## I. INTRODUCTION

On August 16, 2024, after the parties to this litigation filed hundreds of pages of summary judgment briefing and participated in a full day of oral arguments (both of which afforded the State ample opportunity to assert whichever arguments it wished), this Court entered a detailed and well-reasoned 97-page order denying the State's motion for summary judgment. ECF 496 (refiled with redactions as ECF 499) (the "Order"). Discontent with this outcome, the State—through its Motion for Clarification or, in the Alternative, Reconsideration of the Court's Order on Summary Judgment ("Motion")—now invites this Court to revisit issues the Court has repeatedly ruled upon, consider new arguments the

State failed to raise earlier, and impose artificial and legally insupportable limits on the United States' ability to prove its claims at trial. For the reasons provided below, the Court should summarily deny this invitation.

## II. STANDARD OF REVIEW

"The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *United States v. Philip Morris USA Inc.*, 682 F. Supp. 3d 32, 45 (D.D.C. 2023) (internal citation omitted); *Asirifi v. Omni Asset Mgmt., LLC*, No. 2:11-CV-04039 (DMC)(MF), 2013 WL 4858711, at *1 (D.N.J. Sept. 11, 2013) (internal citation omitted). While it is appropriate to seek clarification "[w]here a decision contains a ministerial error or ambiguity that leaves the parties genuinely unsure of the court's intent, . . . . the purpose of a motion for clarification is not to re-litigate a matter that the court has considered and decided." *Sai v. Transp. Sec. Admin.*, No. CV 14-403 (RDM), 2015 WL 13889866, at *3 (D.D.C. Aug. 19, 2015).

By contrast, motions for reconsideration should be filed only when "absolutely necessary." *NetRoadshow, Inc. v. Carrandi*, No. 1:23-CV-05697-ELR, 2024 WL 2158715, at *2 (N.D. Ga. Mar. 7, 2024) (internal citation omitted); *accord* LR 7.2(E), NDGa ("Motions for reconsideration shall not be filed as a matter of routine practice."). This "absolute necessity" can be shown only when there is: "(1) newly discovered evidence; (2) an intervening development or change

2

in controlling law; or (3) a need to correct a clear error of law or fact." *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003). "In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly." *United States ex rel. Tenn. Valley Auth. v. An Easement & Right-of-Way Over 8.56 Acres of Land, More or Less, in Whitfield Cnty., Ga.*, 324 F.R.D. 267, 275 (N.D. Ga. 2017) (internal citation omitted).

"[A] party cannot use a motion for reconsideration as 'a vehicle to show the court how it could have done it better.'" *Id.* Nor should such motions be used "as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Lewis v. City of Marietta*, No. 1:21-CV-01883-ELR, 2023 WL 2455423, at *1 (N.D. Ga. Jan. 23, 2023) (citation and internal quotations omitted); *see also Su v. Loc. 568, Transp. Workers Union of Am.,* 699 F. Supp. 3d 1333, 1337 (S.D. Fla. 2023) ("A party's disagreement with the court's decision, absent a showing of manifest error, is not sufficient to demonstrate entitlement to relief." (quoting *United States v. Dean*, 838 F. App'x 470, 472 (11th Cir. 2020))). The decision whether to grant a motion for reconsideration is committed to the sound discretion of the district court. *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216 (11th Cir. 2000).

## III. ARGUMENT

In its Motion, the State seeks to reopen issues considered and decided by this Court at summary judgment. As a general matter, the State's Motion fails to point to any newly discovered evidence, change in law, or "clear error" committed by the Court, and that failure alone mandates denial of any request for reconsideration. The State's arguments also fail on the merits. First, under the guise of a motion for "clarification" of the Court's ruling on standing, the State seeks extraordinary relief in the form of a court order limiting the reasonable modifications the United States can prove at trial and any remedies that follow to those identified in the summary judgment record. ECF 501 at 13 (seeking clarification that "DOJ's presentation of remedies should be limited to the evidence in the record").[1] But the State points to no basis in fact or law for this Court to reverse its earlier rulings on the issue of standing beyond those arguments already made and rejected. Next, the State attempts to relitigate certain claims decided on summary judgment—namely those related to *Olmstead*'s "appropriateness" prong—by baselessly asserting that the Court misunderstood the State's initial arguments. A review of the State's own briefing proves otherwise, and the

---

[1] For this brief, when citing to filings on the docket, page number references correspond with the ECF file-stamped page number.

arguments that the State now raises do not alter the Court's conclusions in any event. As a result, the Motion should be denied.

### a. The State's Motion to Reconsider Fails to Meet the High Standard of Showing "Clear Error" by this Court.

As a threshold matter, the State's Motion should be denied for failing to meet the exacting standard set forth by this Court. As the State acknowledges, parties moving for reconsideration must establish necessity based on: "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." ECF 501 at 10 (citing *Duren v. Int'l Follies, Inc.*, 1:19-CV-01512-ELR, 2020 WL 13526686, at *4 (N.D. Ga. Sept. 30, 2020)). The State does not cite new evidence or any change in controlling law. Instead, it implies that the Court committed "clear error" by allegedly misconstruing arguments the State raised on summary judgment.

The standard for establishing "clear error" is a demanding one that the State's Motion does not come close to satisfying. As this Court has found in similar contexts, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *McLaurin v. Ga. Dep't of Nat. Res.*, No. 1:22-CV-03601-SCJ, 2024 WL 3373511, at *9 (N.D. Ga. July 3, 2024) (citing *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997)). "To be clearly erroneous, a decision must strike us as more than

just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Howzell v. Saul*, No. 20-80142-CIV, 2020 WL 5077029, at *1 (S.D. Fla. Aug. 27, 2020) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

Here, the State does not argue that the Court misapplied the law or made *any* error of fact (let alone a clear error). Indeed, nowhere in its Motion does the State point to any fact or legal authority the Court failed to consider. The State's assertion that this Court improperly interpreted its arguments instead amounts to the type of "repackage[d] familiar arguments" this Court has repeatedly found to be an improper basis for reconsideration.[2] *See Lewis*, 2023 WL 2455423, at *1. For this reason alone, the State's motion to reconsider should be denied.

### b. The State's Latest Attempt to Challenge the United States' Standing Is Improper.

The State's request for clarification or, alternatively, reconsideration of this Court's decision on standing should be rejected.  The State offers no authority to support its request that this Court clarify or modify the decision on redressability

---

[2] As but one example, the State argues it is entitled to reconsideration because this Court failed to apply the type of deference "required by Justice Kennedy's controlling concurrence in *Olmstead*." ECF 501 at 19. This is not so. As this Court correctly held in its Order, "[t]he State's reliance on this language from the plurality opinion and Justice Kennedy's limited concurrence does not reach the context presented here." Order at 56.

so as to preclude the United States from offering evidence at trial beyond that which it offered in opposition to the State's motion for summary judgment. Nor is there any legal basis for imposing such a limitation. Rather, such a limitation is wholly inconsistent with a nonmovant's burden at the summary judgment stage. The State's "alternative" request for reconsideration of the Court's ruling that the State can redress alleged harms to students in the GNETS Program fails to meet the high standard set by this Court for reconsideration, as the State has not identified any "clear error of fact or law" on this issue.

In its summary judgment motion, the State argued that the United States lacks standing because the harms it alleges are not traceable to and redressable by the State. ECF 429-1 at 18-21. In opposing the State's motion, the United States cited the abundant evidence supporting its motion for partial summary judgment on state control, an issue the United States made clear is "inextricably linked" to traceability and redressability. *See* ECF 448-1 at 7-10; Order at 38. The Court concluded, after a thorough analysis, that the United States has standing to pursue its claims, as "the injuries at issue in this case are traceable to the State and redressable by a judgment against it." Order at 52.[3] Similarly, the Court rejected

---

[3] The State complains that the Court "blended the two elements of standing," ECF 501 at 13-14, and that the United States did not "separately address redressability." ECF 501 at 5. In its opening summary judgment brief, the State itself addressed traceability and redressability together. *See* ECF 429-1 at 18 (section titled "Any injuries are neither traceable to nor redressable by the State."). In addition, the

7

the State's contention that the United States failed to make a *prima facie* showing of the availability of reasonable modifications under Title II after the United States identified several proposed remedial measures that the Court found demonstrated "the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." Order at 72 (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2d Cir. 2003)); *see also Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1082-83 (11th Cir. 2007) (confirming that public entity bears the burden of proving fundamental alteration); *Frederick L. v. Dept. of Pub Welfare of Com. of Pa.*, 364 F.3d 487, 492 n.4 (3d Cir. 2004) (describing burden shifting following a showing of a reasonable accommodation).

Taking the Court's decision on redressability and reasonable modifications together, the State contends that this Court must clarify whether the reasonable modifications suggested by the United States' expert witnesses "provided the factual basis for the Order's conclusion on redressability." ECF 501 at 2. Although the State complains that "the DOJ did not identify another kind of judicial order that would satisfy standing," ECF 501 at 15, and that "the Order does not explain

---

State altogether failed to cite the decades-old Supreme Court case it now says is controlling on this point (*Allen v. Wright*, 468 U.S. 737 (1984)) or the more recent Supreme Court case it cites as further support (*California v. Texas*, 593 U.S. 659 (2021)). In the same brief, the State only cited *Lewis v. Governor of Alabama*, 944 F.3d 1287 (11th Cir. 2019)–another case it now relies on to emphasize the distinction between traceability and redressability—for unrelated purposes. *See* ECF 429-1 at 18 (citing *Lewis* in its argument related to an "absent third party").

how [a judicial order other than one based on the proposed reasonable modifications] would redress what the DOJ identifies as the alleged injuries in fact," *id*., it cites no authority requiring these showings to defeat a summary judgment motion.

To show redressability, a plaintiff must demonstrate that a favorable decision from the Court "would amount to a significant increase in the likelihood that [they] would obtain relief that directly redresses the injury suffered." *Reeves v. Comm'r, Ala. Dep't. of Corr.*, 23 F.4th 1308, 1319 (11th Cir. 2022) (citing *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1303-04 (11th Cir. 2011)), *injunction vacated by* 142 S. Ct. 742 (Mem.) (2022). In the Eleventh Circuit, where a plaintiff seeks any remedy that is likely to redress the injury, even in part, it satisfies the Article III standing requirement. *Id.* at 1318 (citing *Uzuegbunam v. Preczewski*, 592 U.S. 279, 141 S. Ct. 792, 801 (2021)).

The Supreme Court has made clear that each element of standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Thus, at summary judgment—where the record exists only to prove or disprove the existence of a genuine dispute of material fact—the United States need not provide evidence of a link between the injuries to students in the GNETS Program and *every possible* remedy this Court could impose should the United States prevail on

9

liability. Instead, to proceed to trial, it need only provide evidence demonstrating a genuine issue of material fact regarding redressability. The United States has met this requirement, and no further clarification is needed or warranted.

To the extent the State asks this Court to reconsider its Order if the Order's conclusion regarding redressability is not based on the reasonable modifications provided by the United States' experts and if some other remedy "would be considered at a potential trial," ECF 501 at 2, the State improperly seeks not only to retroactively heighten the United States' burden at summary judgment but also to limit the United States' ability to prove its case and present proposed reasonable modifications and remedies as it sees fit.[4] The State will have the opportunity at later stages of this litigation to test the evidence demonstrating the link between its action or inaction, the harms that students in the GNETS Program suffer, and the full scope of remedies sought by the United States.[5] At this stage, however, the State offers no authority for the proposition that standing requirements preclude a

---

[4] *See, e.g.*, ECF 501 at 12 ("[T]his Motion seeks to confirm … that the DOJ has not identified another kind of judicial relief that would redress the injuries it alleges."); *id*. at 13 ("the DOJ's presentation of remedies should be limited to the evidence in the record and what the Court said may redress the alleged injuries"); *id*. at 20-21 (seeking clarification of whether "the Proposed Accommodations provided the Court with the basis of its conclusion on redressability, and if the DOJ is now limited to seeking the remedies articulated in the same").

[5] *Cf. Silva v. Baptist Health S. Fla., Inc.*, 838 F. App'x 376 (11th Cir. 2020) (standing assessed again at the time of trial because of new relevant evidence, after standing had been previously established during summary judgment).

Title II plaintiff from introducing evidence at trial beyond that cited for the narrow purpose of demonstrating a genuine dispute of material fact sufficient to defeat summary judgment. The State's efforts to limit the United States' trial presentation to only those reasonable modifications identified in the summary judgment record should therefore be rejected. *See Furby v. White*, 7 Fed. App'x. 306, 316 (6th Cir. 2001) ("[A] party need not prove its entire case to survive summary judgment . . . ."); *Majic Window Co. v. Milgard Windows*, No. 06-CV-12600-DT, 2007 WL 2121944 at *7 (E.D. Mich. Jul. 24, 2007) ("[T]he evidence and all reasonable inferences therefrom must be construed in favor of the non-moving party, which party need not prove its entire case to survive a motion for summary judgment."); *United Incentives, Inc. v. Sea Gull Lighting Prods., Inc.,* No. CIV. A. 91-0226,1993 WL 147266, at *1 (E.D. Pa. May 4, 1993) ("Clearly, at trial parties are not limited to evidence produced in support of and opposition to unsuccessful summary judgment motions.").

In sum, this Court thoroughly considered and rejected each of the State's challenges to the United States' standing based on redressability. In so doing, the Court reached the correct conclusion regarding arguments related directly to the State's administration of the GNETS Program for purposes of Title II liability. ECF 429-1 at 18-21; Order at 39-52. Neither the State's failure to understand or agree with the Court's Order nor its desire to raise arguments that it could have

made, but did not, render the Court's Order deficient or subject to either clarification or reconsideration.

### c. The State's Attempt to Repackage Old Arguments Regarding the Appropriateness Prong Does Not Warrant Reconsideration.

In seeking reconsideration of the Court's ruling on the issue of "appropriateness," the State attempts to rewrite history and present new arguments it wishes it had made. The State specifically argues that this Court erroneously "limited the breadth of [its] argument" regarding the United States' alleged failure to satisfy *Olmstead*'s appropriateness prong by failing to interpret the State's references to "treating physicians" as inclusive of individualized education program ("IEP") teams. *Id*. at 17-18.  This argument finds no support in the record.

Review of the State's own citations to its briefing demonstrates that the State failed to develop any argument that its references to "treating physicians" should be construed as including not only treating physicians, but also IEP teams. In its initial summary judgment briefing, the State repeatedly asserted that appropriateness must be determined at an individual level by a "treating physician." ECF 429-1 at 25 ("DOJ has not shown any evidence that a 'responsible, treating physician' has observed and decided that any individual…could be 'appropriately' served in the general education classroom." (internal citation omitted)); *id*. at 26 ("Summary judgment is warranted because DOJ has provided no testimony of a 'responsible, treating physician' who has

12

examined *any*…of students [sic] receiving GNETS services." (internal citation omitted)). The State made reference to "treating professionals" only in a footnote that did not assert that such professionals could include IEP teams. ECF 429-1 at 26 n. 30 (suggesting that in addition to "the individual's treating physician," the "State's treatment professionals" may also be needed).

Despite this, the State now argues that the Court should have read a solitary, passing reference to IEP teams in its summary judgment brief to mean that IEP teams were the "responsible, treating physicians" the State contended were required to evaluate appropriateness. ECF 429-1 at 27. But the only fair reading of that lone reference to IEP teams is that an IEP team's decision to place a student in the GNETS Program is entitled to deference over community placement unless and until a "treating physician" determines otherwise. By trying to expand the significance of a single, vague, and internally inconsistent reference to IEP teams in its brief, ECF 429-1 at 27, the State seeks to preserve an argument it did not make.

The Court should reject this sort of revisionist history. If the State wanted to rely on the argument it now makes, it bore the burden of making the argument clear and developing it. It is simply "not sufficient for [the State] to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *Tymar Distrib. LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275,

13

1289 n.7 (S.D. Fla. 2021) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see also Hewlett-Packard Co. v. CP Transp. LLC*, No. 12-21258-Civ, 2012 WL 4795766, at *2 (S.D. Fla. Oct. 9, 2012) ("The onus is upon the parties to formulate arguments." (cleaned up; quoting *Resol. Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995))). Indeed, "[i]t is axiomatic that arguments not supported and properly developed are deemed waived." *W. Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017), *aff'd*, 760 F. App'x 810 (11th Cir. 2019).

    The State's citation to arguments made for the first time in its reply brief, ECF 470, is similarly unavailing, particularly where the State relies on arguments made in a footnote. *Compare* ECF 501 at 7 (citing ECF 470 at 13 n. 8), *with Patterson v. City of Melbourne*, 669 F. Supp. 3d 1204, 1221 n. 17 (M.D. Fla. 2023) (noting that "[a]rguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived," and "a footnote is not the proper place for such an argument." (citing *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009)), and *Brady v. Medtronic, Inc.*, No. 13-cv-62199-RNS, 2014 WL 1377830, at *8 n.1 (S.D. Fla. Apr. 8, 2014)). The fact remains: If the State intended to argue that IEP teams rather than "treating physicians" were the ones vested with authority to determine appropriateness, it had every opportunity to make that clear

on summary judgment. Since it did not, the door to that argument should not be reopened.[6]

In any event, even if the State had preserved the argument it now asserts, the argument would not alter this Court's prior conclusions. IEP teams are comprised of parents, students, and professionals, including educators.[7] The United States cited testimony by Dr. Amy McCart, an expert in the field of special education who concluded that the vast majority of students in the GNETS Program could be served in more integrated settings. As the United States has repeatedly highlighted, and as the Court recognized, Dr. McCart reached that conclusion after extensive review of student-specific records and on-site observations. Order at 60-61. As a result, this Court properly concluded that the United States has put forth "evidence sufficient to create a factual dispute regarding whether the students at issue can be appropriately served in community (general education) settings." Order at 60. As a

---

[6] It is worth noting that the Court extensively considered, and rejected, the State's position on whether *Olmstead* plaintiffs need to provide the type of individualized assessment by treating physicians, as the State reargues in this Motion. *See* Order at 56-61.

[7] The State misconstrues the role of IEP teams. IEP teams do not "treat" students. Instead, they determine which placement is the "least restrictive environment" appropriate to the student. 34 C.F.R. § 300.116. Where, as here, the State has administered a program in which certain supports and services the program purports to provide are available only in segregated settings, IEP teams must determine where, among the limited options that currently exist, the student can receive the supports and services they need.

result, even if the State's novel argument is considered, it would not change the holding in this Court's Order.

## IV. CONCLUSION

In its summary judgment motion, the State challenged the United States' ability to proceed to trial on numerous procedural and substantive grounds, many of which this Court had already previously considered and rejected. In its 97-page Order, the Court exhaustively engaged with each of the State's arguments, ultimately ruling in favor of the United States and ordering the parties to participate in mediation and/or prepare for trial. Ignoring this Court's careful work, the State now seeks another bite at the apple through a Motion that lacks basis in fact or law and provides no persuasive reason for revisiting the Court's Order. For this reason, the Motion should be denied.

Dated: September 27, 2024.

Respectfully submitted:

| | |
|---|---|
| RYAN K. BUCHANAN<br>*United States Attorney*<br>Northern District of Georgia | KRISTEN CLARKE<br>Assistant Attorney General |
| | SHAHEENA A. SIMONS<br>Chief |
| /s/ *Aileeen Bell Hughes*<br>AILEEN BELL HUGHES<br>GA Bar Number: 375505<br>Assistant United States Attorney<br>United States Department of Justice<br>Richard B. Russell Federal Building<br>75 Ted Turner Dr. SW<br>Suite 600<br>Atlanta, GA 30303-3309<br>(404) 581.6000<br>aileen.bell.hughes@usdoj.gov | KELLY GARDNER WOMACK<br>Deputy Chief<br><br>ANDREA HAMILTON WATSON<br>Special Litigation Counsel<br><br>CLAIRE CHEVRIER<br>FRANCES COHEN<br>MATTHEW GILLESPIE<br>VICTORIA M. LILL<br>JESSICA POLANSKY<br>LAURA C. TAYLOE<br>MICHELLE L. TUCKER<br>Trial Attorneys<br>Educational Opportunities Section<br><br>/s/ *Matthew Gillespie*<br>United States Department of Justice<br>Civil Rights Division<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>(202) 803-1302<br>matthew.gillespie2@usdoj.gov |

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>STATE OF GEORGIA,<br><br>DEFENDANT. | Civil Action No.<br><br>1:16-cv-03088-ELR |

**Certificate of Compliance**

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing motion has been prepared using Times New Roman, 14-point font.

September 27, 2024.

*/s/ Matthew Gillespie*
MATTHEW GILLESPIE

18

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> PLAINTIFF, <br><br> v. <br><br> STATE OF GEORGIA, <br><br> DEFENDANT. | Civil Action No. <br><br> 1:16-CV-03088-ELR |

**Certificate of Service**

I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

September 27, 2024.

*/s/ Matthew Gillespie*
MATTHEW GILLESPIE