IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STATE OF GEORGIA, ) <br> ) <br> Defendant. ) | CIVIL ACTION FILE <br><br> NO. 1:16-CV-03088-ELR |

**<u>DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR
CLARIFICATION OR, IN THE ALTERNATIVE, RECONSIDERATION
OF THE COURT'S ORDER ON SUMMARY JUDGMENT</u>**

The Defendant State of Georgia (the "State") submits this Reply Brief in Support of its Motion for Clarification or, in the Alternative, Reconsideration of the Court's Order on Summary Judgment (the "State's Motion"). [Doc. 501.]

**INTRODUCTION**

The DOJ's Memorandum in Opposition (the "DOJ's Brief") fails to address or mischaracterizes the arguments put forth in the State's Motion.[1] [Doc. 503 at 1-2.] The State's Motion neither rehashes summary judgment arguments, nor does it assert new or inappropriate ones. The DOJ's Brief does, however, continue to hide the ball on the kind of remedy it seeks, ignores substantive legal argument and authority, and answers the wrong questions. Ultimately, it remains undisputed that:

---

[1] This Reply adopts the same abbreviations as in the State's Motion. [Doc. 501.]

1. Despite the most recent opportunity afforded by the State's Motion, the DOJ continues to not expressly identify the kind of judicial order it seeks and that would establish redressability; [Doc. 503 at 8-10];

2. Similarly, the DOJ continues to avoid explaining *how* a proposed remedy (whatever it may be) would redress what the Court identified as the alleged injuries-in-fact and continues to fail to challenge the State's authority showing the DOJ's obligation to do so; [Doc. 503 at 9-10]; and

3. The DOJ failed to provide anything close to systemic evidence of IEP teams' recommendations for placement in a general education setting going unheeded.  [Doc. 503 at 15-16.]

These omissions warrant clarifying and reconsidering the Order.

## ARGUMENT & CITATION TO AUTHORITY

The State's Motion seeks a *clarification* of what the Court considered to be the relief requested by the DOJ (for purposes of redressability) and the evidence supporting its efficacy.  Compare Doc. 501 at 15-16 to 503 at 9-11.  If the Order intended the Proposed Accommodations to address reasonable accommodations and redressability, the State does not seek any reconsideration of the Order's redressability analysis.[2]  The State also seeks *reconsideration* of the Order's factual finding that the "State argue[d] that appropriateness can *only* be determined by a 'responsible, treating physician,'" and not IEP teams.  [Doc. 499 at 56 (emphasis

---

[2] The Proposed Accommodations are expanding certain supports and services, provide additional training, and greater data sharing.  [Doc. 448-1 at 23-25.]

added).]³  If the Order is reconsidered as such, the State requests reconsideration of the conclusion that the State is not entitled to summary judgment on the DOJ's Olmstead claim.  Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581 (1999).

## I.     Request for Clarification on Remedies/Redressability

The State's Motion sought clarification of how the Order concluded the "injuries at issue in this case are … redressable by a judgment against [the State]." [Doc. 499 at 52.]  Specifically, the State is unsure what the Court considered a "judgment against" the State to entail.  The State's Motion suggested that the answer may be found in the Order's discussion of the Proposed Accommodations in the section of the Order addressing reasonable accommodations.  [Id. at 66-67.]

In response to this relatively simple request, the DOJ could have expressly identified what remedy it seeks and the evidence it relied on at summary judgment that shows *how* the relief would redress the alleged injuries.⁴  Consistent with its past practice, it did neither.  [Doc. 501 at 15-16 (citing Wittman, 578 U.S. at 544);

---

³ Unlike the State's Motion, this Reply cites to Doc. 499, the redacted Order.  The State's version has blurred ECF numbers, so it cites to the page at the bottom of the Order instead of the ECF-generated number.

⁴ To be sure, the State maintains that the Proposed Accommodations are neither reasonable accommodations under Eleventh Circuit precedent, nor sufficient to demonstrate redressability, nor can they be imposed by a judicial order to the extent that they are inconsistent with State law.  See Badaracco v. Comm'r, 464 U.S. 386, 398 (1984) ("Courts are not authorized to rewrite a statute"); Ga. Advocacy Office v. State of Georgia, No. 1:17-cv-3999-MLB, 2024 WL 4340034 at *21 (N.D. Ga. Sept. 27, 2024) (referred to as "GAO") (same).

429-1 at 19-21; 470 at 7-8).] Instead, the DOJ claimed it "offered" evidence on redressability at summary judgment, but the DOJ's Brief identifies neither the evidence nor where it would be found in the record.[5] [Doc. 503 at 7.] The DOJ's second argument defended its hide the ball strategy on the erroneous grounds that only at trial does the DOJ have to specify the relief it requests or explain *how* it would redress alleged injuries. [Id. at 8-9.]

These arguments lack merit and provide no basis to deny the State's request for clarification. First, it is undisputed that, as plaintiff, the DOJ bears the burden of demonstrating standing. See TransUnion LLC v. Ramirez, 141 S. Ct. 190, 2203 (2021); [Doc. 503 at 9]. This burden includes demonstrating that the alleged injuries are "likely to be redressed by *the requested relief*." Allen v. Wright, 468 U.S. 737, 751 (1984) (emphasis added). See also Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316, 329 (1999). In other words, questions of redressability turn on the "requested relief" and not guesswork. This is why the DOJ is also obligated to demonstrate "how any injury … 'is likely to be redressed

---

[5] At best, the DOJ's Brief conflates control with redress. It says that, because there is (highly disputed) evidence of "state control," that control is linked to traceability and redressability. [Doc. 503 at 7.] Not only is this statement conclusory, it fails to identify a proposed remedy or explain *how* its proposed remedy would address the injuries in fact. [Doc. 429-1 at 18-21; Doc. 501 at 11-12 (citing Wittman, 578 U.S. at 544)]. Finally, standing alone, "general supervision and administration" do not establish redressability. Jacobson v. Fla. Sec'y of State, 974 F.3d 1236, 1253 (11th Cir. 2020).

by a favorable judicial decision.'" Wittman, 578 U.S. at 544 (citations omitted). See also Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury, 773 F.3d 243, 247 (11th Cir. 2014) (finding no standing when the plaintiff had "not explained … how the requested relief" would provide redress). Such an analysis is impossible without knowing what a "favorable judicial decision" would be. Another Court in this District considered a similar omission dispositive when considering the same arguments at summary judgment. GAO, 2024 WL 4340034 at *7 n.8, *15, *16. The DOJ's evidentiary argument—that it would not be limited at trial to the evidence produced in discovery—also fails. It should be axiomatic that the DOJ cannot introduce evidence at trial it did not produce during discovery.[6] (Fed. Rules Civ. Proc. Rule 37(c)(1).) The State's Motion merely seeks to confirm this.

Ultimately, these disputes about evidence and the burden at summary judgment are not material to the State's request for clarification. Because the DOJ will not identify the remedy it seeks, the State asks this Court to clarify (1) what remedy was considered by the Order; and (2) the evidence explaining *how* the proposed remedy would provide redress. If the answer is the Proposed

---

[6] Obvious exceptions to this rule exist, such as evidence for impeachment. None would be applicable to evidence both identifying a proposed remedy and showing that it would actually work.

Accommodations, then the State seeks no reconsideration of the issue. [See Doc. 503 at 7-9.]

## II. Alternative Request for Reconsideration on Redressability

If the answer is not the Proposed Accommodations, reconsideration is warranted because the Order would contain two clear errors of law: not considering redressability independently from traceability; and denying the State's motion for summary judgment when the DOJ did not expressly identify its requested relief at summary judgment.

The DOJ's Brief provides little, if any, substantive responses. [Doc. 503 at 5-6, 9-12.] It does not express disagreement with the statement that redressability and traceability are distinct and should be considered separately. See [Doc. 501 at 14 (citing California v. Texas, 593 U.S. 659, 671-76 (2021); Allen v. Wright, 468 U.S. 737, 754 n.19 (1984); Lewis v. Governor of Alabama, 944 F.3d 1287, 1296-1306 (11th Cir. 2019).)] Nor does the DOJ's Brief contend that its summary judgment briefs or the Order conducted distinct analyses. [Doc. 503 at 5-6, 9-12.]

The only substantive response on the need to distinguish traceability from redressability is made in a footnote where the DOJ wrongly claims the State blended the two elements as well.[7] [Doc. 503 at 7 n.3.] The State's brief in

---

[7] The State does not contend that the DOJ's placement of the argument constitutes waiver.

support of summary judgment addressed traceability and redressability under the *same heading*, but it distinguished the two elements and made distinct arguments for each with supporting authority. [Doc. 429-1 at 18.] For example, the following arguments address only redressability: (1) redressability is not satisfied by requested relief that requires the rewriting of state laws or promulgation of a new state regulation[8]; (2) "LEAs … will not be impaired by an injunction against the State;" and (3) the DOJ failed show *how* its contemplated (but unidentified) judicial order would redress the injuries in fact. [9] [Doc. 429-1 at 19.]

By limiting its argument to misstatements of the record, the DOJ's Brief does not disagree that precedent requires traceability and redressability to be analyzed separately, or that the Order blended the distinct analyses. [Doc. 503 at 7 n.3.] Thus, if reconsideration is necessary, there is no dispute that the Order's analysis of traceability and redressability constitutes a clear error. Cf. United States v. Wise, 22-13204, 2023 WL 4446357, at *3 (11th Cir. July 11, 2023) (deeming the application of an incorrect standard a clear error of judgment).

---

[8] To date, the DOJ has not substantively disagreed (or identified a remedy that would be consistent with Georgia law). [See Doc. 470 at 5-6.]

[9] The DOJ suggests the State waived an argument that traceability and redressability must be separately considered. [Doc. 503 at 7 n.3.] This too is belied by the record. The State's brief in support of summary judgment cited differing cases to explain the distinction between the two elements of standing. [Doc. 429-1 at 13 (citing Jacobson, 974 F.3d at 1253 (addressing traceability); Fair Fight Action, Inc. v. Raffensperger, 634 F. Supp. 3d 1128, 1186 (N.D. Ga. 2022) (addressing redressability).)]

Under those circumstances, the only remaining question is whether the Order clearly erred when it denied the State's summary judgment motion on redressability. The answer is "yes," because the DOJ never identified its requested relief or explained how the judicial it seeks would redress the injuries in fact.

The State has shown that the DOJ has never "expressly identif[ied] the remedy it seeks … or separately address[ed] redressability … nor explain[ed] *how*" a proposed remedy would redress the injuries in fact. [Doc. 501 at 5 (citing [Doc. 448-1 at 7-10].) This is dispositive under binding precedent, and it warrants reconsideration if clarification is not an option. Allen, 468 U.S. at 751.

The DOJ's Brief also fails to substantively address the second question, which asks whether the DOJ provided evidence demonstrating *how* a remedy (perhaps other than the Proposed Accommodations) would provide redress. [Doc. 503 at 7-12; 501 at 15-17 (citing Wittman, 578 U.S. at 544); Doc. 429-1 at 19-21; 470 at 7-8.] At best, the DOJ's Brief responds by articulating its burden at summary judgment as showing "significant increase in the likelihood that [they] would obtain relief that directly redresses the injury suffered." [Doc. 503 at 9 (citing Reeves v. Comm'r, Ala. Dep't of Corr., 23 F.4th 1308, 1319 (11th Cir. 2022) (further citations omitted) (brackets in DOJ Brief).)] The State does not disagree that Reeves correctly cites the law, but Reeves does not help the DOJ here for several reasons. There, the plaintiff identified the specific relief he requested

through the lawsuit. 23 F.4th at 1318-19. Though not mentioned in the DOJ's Brief, the Supreme Court also vacated the judgment, effectively reversing the appellate court. Hamm v Reeves, 142 S. Ct. 743 (2022).

In sum, if the Order decided the DOJ satisfied its burden on redressability based on anything other than the Proposed Accommodations, the State requests it reconsider the Order because the DOJ failed to satisfy the basic requirements of clearly articulating requested relief and showing, through evidence, that the Court can order the requested relief and that it would work. If the Court concludes, instead, that the DOJ's summary judgment briefing identified the Proposed Accommodations as the requested relief, then clarifying the Order on this point may be sufficient.

### III. Request for Reconsideration of Treating Professionals

The Olmstead plurality opinion identified an element of the DOJ's claim as showing that the "State's treatment professionals determine[d] that [community-based] placement is appropriate" but the individual remains in a more isolated environment. Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 607 (1999). At summary judgment, the State argued that the DOJ had not created a material question of fact on this issue. The Order disagreed, but only after it described the State's argument as asserting that "appropriateness can *only* be determined by a 'responsible, threating physician.'" [Doc. 499 at 56 (emphasis added).] The

– 8 –

State's argument, however, described IEP teams as the kind of treatment professionals considered in Olmstead. Consequently, the State's Motion seeks reconsideration of the Order's description of the breadth of its argument on the grounds that (1) the Order's narrow reading represents a clear error of fact; and (2) if corrected to include IEP teams, the State would be entitled to summary judgment on the Olmstead claim. [Doc. 501 at 17-20 (citing [Doc. 496 at 55-61].)]

The DOJ's Brief makes two arguments in response. Both fail. The first mischaracterizes the State as having made only a "passing reference" to the argument that IEP teams are the kind of "treatment professionals" considered in Olmstead. [Doc. 503 at 12-15.] To the contrary, the State's Motion identified several points in the State's main *and* reply briefs in support of its motion for summary judgment where the State expressly identified physicians *and* IEP teams as qualifying treatment professionals:

- "Under these circumstances, they cannot overcome the 'great deference' afforded here to **IEP Teams'** recommendations that students receiving GNETS services are doing so appropriately. Olmstead, 527 U.S. at 610; see also School Bd. of Nassau Cty. v. Arline, 480 U.S. 273, 288 (1987) ('[C]ourts normally should defer to the reasonable medical judgments of public health officials.')." [Doc. 429-1 at 26-27.]

- "Whether this Court cites Justice Kennedy's concurrence and requires a physician's opinion, or whether it relies on the plurality decision and mandates **some 'professional' determination (e.g., an IEP Team)**, there is no support for the idea that an absence of competent, individualized assessments is necessary. Olmstead, 527 U.S. at 602, 610." [Doc. 470 at 13 n.8.]

- Under the heading "Necessity of Professional Judgment" the State argues, "The Eleventh Circuit recently reaffirmed that, under Olmstead, plaintiffs must show 'a determination by the State's treatment professionals that [community] placement is appropriate.' United States v. Florida, 938 F.3d 1221, 1250 (11th Cir. 2019). The DOJ disagrees, but it fails to address either controlling opinion and instead relies on non-binding decisions. Legally, this is insufficient. Factually, it ignores that the only individualized assessments were completed by **IEP Teams**, Ga. Comp. R. & Regs. 160-4-7-.15(3)(c)." [Doc. 470 at 13.]

- "Dr. McCart's testimony does not provide any basis to identify persons subject to alleged unjustified separation: she did not review the 'vast majority' of files, challenged no specific **IEP Team's**

> **determination**, and identified no individual student." [Doc. 470 at 11-12.]

These arguments appeared in the bodies of both briefs and in footnotes. This completely disproves the DOJ's contention that the State's position on IEP teams is new, waived, insufficiently developed, or first made in its reply brief in support of summary judgment.[10] In the light of these citations to the record, the State seeks reconsideration of the Order's description of the State's argument as excluding IEP teams as a clear error of fact.

The misunderstanding of the breadth of the State's argument is also material, and if corrected, the State would be entitled to summary judgment on the DOJ's

---

[10] Consequently, the authority cited by the DOJ is easily distinguishable. [Doc. 503 at 13-14 (citing Tymar Distrib. LLC v. Mitchell Grp. USA, LLC, 558 F. Supp. 3d 1275, 1289 n.7 (S.D. Fla. 2021) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997)); Hewlett-Packard Co. v. CP Transp. LLC, No. 12-21258-Civ., 2012 WL 4795766, at *2 (S.D. Fla. Oct. 9, 2012) (quoting Resol. Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)); W. Sur. Co. v. Steurwald, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017)).] In Tymar Distribution, the party made only a conclusory argument and "fail[ed] to support [it] with any authority." 552 F. Supp. 3d at 1289. The case cited in Tymar Distribution is McPherson, where the party offered "no real analysis … explained the elements … [nor] pointed to evidence in the record that could satisfy the elements … [nor] offered legal support." 125 F.3d at 995. Similarly, in Hewlett-Packard, the defendants failed to "develop" the argument at issue after "dedicat[ing] a mere sentence to state the argument, with no supporting facts or case law." 2012 WL 4795766 at *2. The case it cites, Dunmar Corporation, involved a plaintiff that relied on the pleadings at summary judgment, did not distinguish the authority relied on by the defendant, and did not factually assert the argument. 43 F.3d at 599. Finally, Steurwald involved a motion to dismiss where the response did "not address the arguments made." 2017 WL 5248499 at *2.

Olmstead claim. The Order implies as much. It recognized the substantive significance of IEP teams, because they, like the physicians in Olmstead are "the decision maker[s] regarding what educational placement is appropriate." [Doc. 499 at 57.] Decisions about "appropriate" placement is exactly what the Olmstead Court identified as an element of a Title II claim. 527 U.S. at 607 (plurality op.).

The DOJ's Brief responds in two footnotes.[11] [Doc 503 at 15 n.6, n.7.] The first asserts that, because the Order concluded that individualized evidence is not required for systemic Olmstead claims, "determination[s] by the State's treatment professionals" are irrelevant. Compare Florida, 938 F.3d at 1250 (citing Olmstead, 527 U.S. at 607 (plurality op.).) The second is that IEP teams do not "'treat' students," and, therefore, are not "treatment professionals." [Id. at 15 n.7.] Neither contention has merit.

On the first, the DOJ's Brief conflates the two distinct issues of individualized review and the significance of a treatment professional's determination of appropriate services. The Order makes this plain. One of the reasons the Order decided Olmsted does not require an individualized review is the "fact that IEP teams, not treating physicians, determine when to recommend a student to enter or exit GNETS." [Doc. 499 at 60.] In other words, the significance of IEP teams matters greatly in this Court's analysis of the Olmstead

---

[11] The State does not contend this constitutes waiver.

claim. Thus, a finding that the State included IEP teams as the relevant treatment professionals would also be material. After all, the Order did not conclude that a plaintiff can overcome summary judgment without *any evidence* of unheeded conclusions of treating professionals like IEP teams. It just said the State did not make that argument. [Doc. 499 at 56.]

The DOJ's second footnote argument contends that IEP teams are not "treating professionals." [Doc. 503 at 15 n.7.] It should be dismissed for two reasons. First, it is a new argument for the DOJ despite that the State has previously argued IEP teams should be considered treatment professionals. Based on the DOJ's own authority, the Court should consider this argument waived. See supra n. 10. Even if considered on the merits, footnote seven makes the State's point. It describes IEP teams as the group that "determine[s] which placement is the 'least restrictive environment' appropriate to the student." [Doc. 503 at 15 n.7 (citing 34 C.F.R. § 300.116).] This is the same language of the Olmstead plurality used to describe the kind of treatment professionals who must determine community placement is appropriate before a state can be liable for some other placement: "professionals [who] determin[e] whether an individual 'meets the essential requirements' for habilitation in a community-based program." 527 U.S. at 602 (plurality op.).

Finally, the DOJ's Brief repeats an argument it made at summary judgment: evidence of IEP teams' recommendations is unnecessary in the light of Dr. McCart's testimony. [Doc. 503 at 15-16.] The DOJ's Brief cites no authority for this proposition, and it fails to explain why Olmstead's express requirements are inapplicable. Substantively, Dr. McCart's testimony answers the wrong question. Olmstead limits liability to situations where treatment professionals, like IEP teams, made recommendations for general education settings that were ignored. [Id. at 15.] Dr. McCart's testimony did not describe such situations; instead, her opinion was more philosophical: "the vast majority of [unidentified] students in the GNETS Program could be served in more integrated settings." [Id.] See GAO, 2024 WL 4340034 (deciding such generalized testimony is insufficient at summary judgment). Put differently, Dr. McCart does not address or identify unheeded recommendations of IEP teams; it substitutes her judgment for that of each IEP team. This is precisely the kind of argument Olmstead rejects.

In sum, the State seeks reconsideration of the Order's decision that the State did not argue IEP teams are part of the treatment professionals whose recommendations are a necessary consideration in Olmstead claims. The Order agreed that IEP teams represent the "decisionmaker[s]" of appropriate services. [Doc. 499 at 57.] Given this, reconsideration is warranted for the factual error of limiting the breadth of the State's argument at summary judgment, and once it is

– 14 –

considered, reconsideration is appropriate for the legal conclusion that the DOJ provided sufficient evidence when it provided no systemic evidence of IEP teams' recommendations being ignored (especially by State officials). As shown, this is the requirement of an Olmstead claim as the Eleventh Circuit recently reaffirmed in Florida.

## CONCLUSION

For the reasons set forth above, the State respectfully requests the State's Motion be granted.

Respectfully submitted this 11th day of October, 2024.

/s/ Josh Belinfante

| | | | |
|---|---|---|---|
| Christopher M. Carr | 112505 | Josh Belinfante | 047399 |
| *Attorney General* | | Melanie Johnson | 466756 |
| Bryan K. Webb | 743580 | Edward A. Bedard | 926148 |
| *Deputy Attorney General* | | Danielle Hernandez | 736830 |
| Katherine P. Stoff | 536807 | Javier Pico Prats | 664717 |
| *Sr. Assistant Attorney General* | | Anna Edmondson | 289667 |
| Kristen L. Settlemire | 919430 | | |
| *Assistant Attorney General* | | | |

Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334

Robbins Alloy Belinfante Littlefield, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
F: (404) 856-3255
E: jbelinfante@robbinsfirm.com
   mjohnson@robbinsfirm.com
   ebedard@robbinsfirm.com
   dhernandez@robbinsfirm.com
   jpicoprats@robbinsfirm.com
   aedmondson@robbinsfirm.com

        Alexa R. Ross     614986
        AlexaRossLaw, LLC
        2657 Danforth Lane
        Decatur, Georgia 30033
        E: alexarross@icloud.com

*Special Assistant Attorneys General*

*Attorneys for Defendant*
*State of Georgia*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Notice has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Notice has been prepared using 14-pt Times New Roman Font.

*/s/ Josh Belinfante*
Josh Belinfante

# CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, RECONSIDERATION OF THE COURT'S ORDER ON SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing.

This 11th day of October, 2024.

*/s/ Josh Belinfante*
Josh Belinfante