# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA,   )
                     )
      Plaintiff,         )
                     )
v.                       )     CIVIL ACTION FILE
                     )     NO. 1:16-CV-03088-ELR
STATE OF GEORGIA,         )
                     )
      Defendant.      )

## DEFENDANT'S BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO CERTIFY AN ORDER OF INTERLOCUTORY APPEAL OF SEVERAL CONCLUSIONS IN THE AUGUST 16, 2024 ORDER AND FOR POTENTIAL STAY OF LITIGATION

## INTRODUCTION

Recent splits of authority among federal appellate courts and now within the Northern District itself confirm the veracity of what the Supreme Court said years ago: lawsuits over the important issue of public education present "intractable economic, social, and even philosophical problems." San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 42 (1973) (citation omitted).  These inherent challenges and complexities are compounded by the fact that this case is the "first-of-its kind" that seeks to apply the Americans with Disabilities Act ("ADA") in such a sweeping and systemic manner to public education.[1] While the Plaintiff Department of Justice ("DOJ") has not specifically identified the remedy it seeks to impose on the Defendant State of Georgia's (the "State") locally controlled schools, it seems evident that the kind of relief the DOJ seeks could upend Georgia's "line of [State] constitutional authority, unbroken since it was originally memorialized in the 1877 Constitution of Georgia, granting local boards of education the exclusive right to establish and maintain, i.e., the exclusive control over, general K-12 public education." Gwinnett Cnty. Sch. Dist. v. Cox, 289 Ga. 265, 265 (2011).

---

[1] Press Release, U.S. Dep't of Justice, Justice Department Sues Georgia for Unnecessarily Segregating Students with Disabilities (August 23, 2016), https://www.justice.gov/opa/pr/justice-department-sues-georgia-unnecessarilysegregating-students-disabilities ("The Lawsuit is the First Challenge to a State-Run School System for Segregating Students with Disabilities.")

As recognized in this Court's 97-page order of August 16, 2024 (the "Order"), the Eleventh Circuit has not addressed many of the dispositive questions at issue. [See, e.g., Doc. 496 at 16, 37, 60.]  Other courts have and under a very different legal landscape than the one that existed when this Court denied the State's motion to dismiss in 2020.  [Doc. 61.] Their decisions—within and outside the Northern District—reveal a significant split of authority on issues addressed in the Order.

The split began while the parties were preparing their summary judgment briefs.  See United States v. Mississippi, 82 F.4th 387 (5th Cir. 2023). In Mississippi, the Fifth Circuit reversed a district court's order granting injunctive relief to the DOJ based on the same interpretation of the ADA that it advances here, based, in part, on the conclusion that virtually all of the DOJ's authority had been "superseded by" Kisor v. Wilkie, 588 U.S. 558, 576 (2019). Id. at 394.

Then, after this Court heard oral argument on summary judgment, the Supreme Court decided federal agencies' interpretation of statutes are no longer entitled to automatic deference.  See Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024) (ending Chevron deference to agency interpretations of statutes). Like Kisor, Loper Bright is also relevant to the issues in this case given the centrality of the DOJ's regulation known as the "Integration Mandate." 28 C.F.R. § 35.130(d).

Finally, just last month and after this Court issued the Order, another court in the Northern District reached different conclusions on the same issues addressed in

the Order. See Georgia Advocacy Office v. Georgia, 1:17-CV-3999-MLB, 2024 WL 4340034, at *1 (N.D. Ga. Sept. 27, 2024) ("GAO"). The emerging split of authority on the scope of the ADA has, therefore, reached the Northern District. These divergent interpretations of the ADA make it particularly appropriate to afford the Eleventh Circuit an opportunity to decide some of the dispositive issues now.

Moreover, an interlocutory appeal best conserves judicial and other public resources by potentially eliminating the need for a trial or significantly narrowing the issues and evidence in dispute. It is certain that a trial in this case will be long, document-intensive, subject to possible changes to federal and state policies, and likely result in an appeal. The evidence will surely include dozens of witnesses, hundreds or thousands of documents, and a multitude of complex and fact-specific decisions by non-party local education professionals. The expenditure of significant public financial resources will be necessary, and trial preparation and trial itself will significantly burden State and local education officials' ability to focus on students.

Under these circumstances, the State is compelled to ask this Court to grant a certificate for interlocutory review to allow the Eleventh Circuit to consider six questions of law that each present a dispositive issue and about which there is a split of authority (the "Six Questions"). See 28 U.S.C. § 1292(b). As set forth in the State's Motion to Certify an Order of Interlocutory Appeal of Several Conclusions

– 4 –

in the August 16, 2024 Order and for Potential Stay of Litigation (the "State's Motion"), the Six Questions are:

1. Whether, for purposes of Article III standing or on the merits, Title II of the ADA imposes liability for "administering" services as set forth in the DOJ's regulation known as the "Integration Mandate," or whether the text of the ADA limits liability to alleged discrimination caused by "programs or activities *provided* by a public entity." Compare 42 U.S.C. § 12131(2) (emphasis added) with 28 C.F.R. § 35.130(d). See also GAO, 2024 WL 4340034 at *12 (deciding, for standing purposes, alleged discrimination must be a result of an act of the defendant). [Doc. 496 at 41-45 (deciding liability can apply for "administering" services alone).]

2. Whether—for purposes of Article III standing or on the merits of a Title II claim—determinations of "appropriate" settings or services must be demonstrated on an individualized basis with evidence addressing the needs of each qualified individual. See Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581 (1999); 28 C.F.R. § 35.130(d). Compare United Mississippi, 82 F.4th at 387 (requiring individualized assessment), and GAO, 2024 WL 4340034 at *5 (same) with Disability Advocates, Inc. v. Paterson, 653 F. Supp. 2d 184, 258 (E.D.N.Y. 2009), vacated sub nom. Disability Advocates, Inc. v. New York Coal. for Quality Assisted Living, Inc., 675 F.3d 149 (2d Cir. 2012), and vacated sub nom. Disability Advocates, Inc. v. New York Coal. for Quality Assisted Living, Inc., 675 F.3d 149 (2d Cir. 2012) (deciding the ADA does not require an assessment of each alleged victim of discrimination); [Doc. 496 at 57-61 (same).]

3. Whether—for purposes of Article III's requirement of demonstrating traceability and redressability and on the merits—Title II imposes liability on a state only for discrimination it directly causes, and if a remedial order is limited to restraining the enforcement of an allegedly discriminatory law or policy. Compare GAO, 2024 WL 4340034 at *11, *13 n.14, *16 n.16, *20-21 (answering in the affirmative) with Doc. 496 at 45-52 (answering in the negative).

4. Whether, for purposes of Article III standing or on the merits, Title II of the ADA requires evidence of actual discrimination. Compare Mississippi, 82 F.4th at 387 (rejecting the at-risk theory of disability

discrimination), <u>with</u>, <u>e.g.</u>, <u>Waskul v. Washtenaw Cty. Cmty. Mental Health</u>, 979 F.3d 426, 461 (6th Cir. 2020) (relying on DOJ guidance to recognize at-risk claims of discrimination under Title II); [Doc. 496 at 34-38 (recognizing at-risk claims).]

5.   Whether a claim based on <u>Olmstead</u>'s application of the Integration Mandate requires a plaintiff to provide evidence that some treating professional has determined that an individual may be appropriately "remove[d] from [a] more restrictive setting" but has not, and what kind of deference, if any, is afforded to treating professionals' conclusions. <u>Olmstead</u>, 527 U.S. at 602 (plurality opinion), 610 (Kennedy, J., concurring).  <u>See</u> <u>also</u> <u>United States v. Florida</u>, 938 F.3d 1221, 1250 (11th Cir. 2019) <u>Compare</u> <u>Disability Advocates, Inc.</u>, 653 F. Supp. 2d at 258 (deciding no assessment is needed); [Doc. 496 at 55-57 (same).][2]

6.   Whether an ADA claim's prima facie element of identifying a reasonable accommodation requires an individualized, "highly fact specific inquiry" considering an individual's unique needs, or if it can be satisfied by generalized theory.  <u>Compare</u> <u>Bircoll v. Miami-Dade Cnty.</u>, 480 F.3d 1072, 1086 (2007) (requiring individualized analysis); <u>Mary Jo C. v. N.Y. State & Local Ret. Sys.</u>, 707 F.3d 144, 165 (2d. Cir. 2013) (same); <u>with</u> [Doc. 496 at 67-68 (distinguishing <u>Bircoll</u> and applying "the established standards for discerning the reasonableness of a proposed accommodation").]

These questions each satisfy the requirements imposed by 28 U.S.C. § 1292(b).[3]

Other than for the Court-ordered mediation, the State also seeks a stay of litigation during the pendency of the Motion and a potential appeal.

---

[2] The State recognizes that it seeks reconsideration of this part of the Order.  [Doc. 501.]  This request is made in an abundance of caution and to prevent delay.

[3] All of these issues should be certified for interlocutory review, but they are not dependent on one another.  Thus, this Court can certify one issue for interlocutory review, six issues, or anything in between.

## BACKGROUND

The Order denied the State's Motion for Summary Judgment [doc. 429], and it granted the DOJ's Motion for Partial Summary Judgment [doc. 395]. [Doc. 496 at 7.] Among the decisions in the Order are that: (1) the Integration Mandate imposes liability against a public entity for "administering" and not just "providing" services; (2) an "individualized … review" is not required for systemic Olmstead claims; (3) a finding that a public entity administers the services at issue satisfy causation requirements, and an order against the State alone could redress the alleged discrimination at issue here; (4) the ADA recognizes an "at risk of discrimination" theory; (5) at least in the education context, Olmstead claims require neither evidence of restrictive placement that is contrary to an actual treating professional's (including IEP teams') recommendation, nor deference to the same professionals' conclusion that community placement would be inappropriate; and (6) at summary judgment a "reasonable accommodation" can be demonstrated on a generalized basis. [Doc. 492 at 60-61, 34-38, 44, 55-57, 67-68.]

## STANDARD OF REVIEW

Orders granting partial summary judgment and denying motions for summary judgment are typically not immediately appealable.  See 28 U.S.C. § 1291; Gen. Television Arts, Inc. v. S. Ry. Co., 725 F.2d 1327, 1331 (11th Cir. 1984).  Thus, appellate review before trial is available only if this Court exercises its discretion

under 28 U.S.C. § 1292(b) to certify one or more of the Six Questions. Certification is appropriate only if a proposed question "involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[4] Drummond Co., Inc. v. Conrad & Scherer, LLP, 885 F.3d 1324, 1336 (11th Cir. 2018) (citing 28 U.S.C. § 1292(b) (brackets added)).

Pure questions of law can be decided "without having to delve beyond the surface of the record in order to determine the facts." McFarlin v. Conesco Servs., LLC, 381 F.3d 1251, 1259 (11th Cir. 2004). A substantial ground for difference of opinion exists when the Eleventh Circuit has not addressed the issue, and there is a split of authority within the Northern District or federal courts of appeals.  See Cosby v. State Farm Fire & Cas. Co., 1:22-CV-03449-ELR, 2024 WL 1235539, at *6 (N.D. Ga. Feb. 15, 2024) (full citation in n.4). A finding of a substantial ground for difference of opinion is not an admission of error. In another education case decided in the Northern District, the court offered the parties the option of a certificate for immediate review while still being "confident in the legal and factual conclusions it

---

[4] The State acknowledges that the interlocutory review "process should be used sparingly," but, as discussed, the dynamics of this case make interlocutory review particularly appropriate. Cosby v. State Farm Fire & Cas. Co., 1:22-CV-03449-ELR, 2024 WL 1235539, at *5 (N.D. Ga. Feb. 15, 2024) (citing Ga. State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013)), appeal dismissed, 24-10847-A, 2024 WL 3013573 (11th Cir. Apr. 10, 2024).

has reached, [but recognizing] there may be a reasonable basis for differences of opinion." Williams by & through Williams v. Fulton Cnty. Sch. Dist., 1:14-CV-0296-AT, 2020 WL 10700151, at *19 (N.D. Ga. Apr. 9, 2020). Finally, litigation is materially advanced when an appeal can substantially reduce the scope of litigation and not only result in its termination. McFarlin 381 F.3d at 1259.

The grant of a certificate—by this Court or the Eleventh Circuit—does not automatically stay the litigation. But stays have been deemed an appropriate way to conserve public resources in lawsuits involving public officials. R. F. J. v. Florida Dep't of Children & Families, 3:15-CV-1184-J-32JBT, 2017 WL 11004970, at *1 (M.D. Fla. Feb. 24, 2017) (citing Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (addressing Section 1983 actions)).

## ARGUMENT AND CITATION TO AUTHORITY

Each of the Six Questions satisfies the criteria established by 28 U.S.C. § 1292(b). Other courts in the Northern District have made the same conclusion when considering similar cases over education law or involving one or more government entities. See, e.g., Crowther v. Bd. of Regents of University Sys. of Georgia, 1:21-CV-04000-VMC, 2023 WL 4915078, at *1 (N.D. Ga. May 12, 2023) (Eleventh Circuit granted immediate appellate review); Williams, 2020 WL 10700151, at *1 (parties did not seek immediate appellate review); FTC v. Hornbeam Special Situations, LLC, 391 F. Supp. 3d 1218, 1220 (N.D. Ga. 2019)

(Ray, J.) (immediate appellate review denied by the Eleventh Circuit); <u>FDIC v. Skow</u>, 955 F. Supp.2d 1357 (2012) (Jones, J.) (Eleventh Circuit certified question to the Georgia Supreme Court); <u>Dale v. Stephens Cnty. (Georgia) Sch. Dist.</u>, 2:04-CV-151-WCO, 2006 WL 8433912, at *1 (N.D. Ga. June 8, 2006) (Eleventh Circuit granted immediate appellate review). The State respectfully requests that this Court do the same.

1.    **Question No. 1: Basing Liability on the Integration Mandate's Language of "Administering Services" Instead of the ADA's Text About "Providing Services."**

Question No. 1 seeks interlocutory review to determine whether public entities can violate Title II when they possibly administer but do not provide the services at issue. At summary judgment, the State argued the text of the ADA limits liability to public entities that "provide" the services at issue, and to the extent that the Integration Mandate broadens potential liability to the "administration" of services, it is unlawful.[5] [Doc. 496 at 41; see also Doc. 496 at 42 (citing [Doc. 434 at 23-24]); Doc. 429-1 at 22-23.] The DOJ did not challenge the State's reasoning, offer an alternative reading of Title II's text, or explain how the Integration Mandate is consistent with the text of the ADA. Instead, it highlighted that no court has adopted (or appears to have considered) the State's interpretation. [Doc. 496 at 42

---

[5] After the briefing and hearing on summary judgment concluded, the State also raised the argument in its Notice of Supplemental Authority, which argued the <u>Loper Bright</u> decision made imposing liability based on the DOJ's regulation improper to the extent it is inconsistent with the text of Title II. [Doc. 492 at 3-5.]

(citing [Doc. 442 at 4]); Doc. 442 at 2-5.]  The DOJ also relied on pre-<u>Kisor</u> non-binding authority issued by mostly district courts located outside the Eleventh Circuit. But those courts answered a different question involving states "contracting out" but maintaining significant operational control over the services.[6]  [Doc. 496 at 42 (citing [Doc. 442 at 4].]

The Order agreed with the State on two points. One, the ADA's text "only mentions public entities that 'provide' services," and the word "administer" is found only in the Integration Mandate. [Doc. 496 at 41 (citing 42 U.S.C. § 12131(2) and 28 C.F.R. § 130(d).] Two, the State does not provide the services at issue. [Doc. 469 at 42-45, 74; <u>see</u> <u>also</u> doc. 1, ¶ 69 (Compl.).] Nevertheless, the Order agreed with the DOJ that the Integration Mandate provides an additional basis of liability for public entities that only "administer" services. [Doc. 496 at 41-45.]  Question No. 1 seeks interlocutory review of this legal and dispositive conclusion that has split courts.

---

[6] Equivalent levels of operational control are unavailable to the State in the light of Georgia's constitutional mandate that "grant[s] local boards of education the exclusive right to establish and maintain, i.e., the exclusive control over, general K-12 public education." <u>Cox</u>, 289 Ga. at 266.  <u>See</u> <u>also</u> [Docs. 429-1 at 7-8, 18-24; Doc. 470 at 9-10, 19; Doc. 434 at 33-34, 36-37.]

**First**, deciding the scope of liability under the ADA and whether the Integration Mandate properly interprets the statute present pure questions of law. See Loper Bright Enters., 144 S. Ct. at 2258, 2262.

**Second**, while no courts have squarely considered the State's argument, there still exists "substantial ground for a difference of opinion" on the issues. McFarlin, 381 F.3d at 1258. It is one of "first impression" in the Eleventh Circuit, and this matters. Cosby, 2024 WL 1235539 at *6. There also appears to be a split of authority between the Fourth Circuit and several district court opinions cited in the Order. Compare Bacon v. City of Richmond, Virginia, 475 F.3d 633, 642 (2007), with Murphy by Murphy v. Minnesota Dep't of Human Servs., 260 F. Supp. 3d 1084, 1102 (D. Minn. 2017). In Bacon, the Fourth Circuit held that Title II liability attaches only when someone is denied the benefits and services "*of a public entity*, or be subjected to discrimination *by any such entity*" based on the text of the ADA. 475 F.3d at 642 (emphasis in original) (citing 42 U.S.C. § 12132). By contrast, Murphy held liability can attach based on a public entity's funding, oversight, and establishment of administrative procedures governing the public services. 260 F. Supp. 3d at 1102 [Doc. 496 at 42-44]. These irreconcilable holdings demonstrate the

presence of a "substantial ground for a difference of opinion" on the scope of liability under Title II.[7] <u>Cosby</u>, 2024 WL 1235539 at *6 (citation omitted).

**Third**, if the Eleventh Circuit adopted the State's interpretation, the State would be entitled to summary judgment because it undisputedly does not provide the services at issue. [Doc. 469 at 42-45, 74; <u>see also</u> Doc. 1, Compl. ¶ 69.]

2. <u>**Question No. 2**</u>: **Whether the "Most Integrated Setting Appropriate to the Needs of Qualified Individuals" Must be Shown by Individualized Evidence.**

No one disputes the Order's conclusion that persons alleging a Title II/<u>Olmstead</u> claim must demonstrate that qualified individuals are not receiving "services in the most integrated setting *appropriate* to [their] needs." [Docs. 496 at 24 (emphasis added); 429-1 at 22-23; 448-1 at 14-16.] The disagreement is over whether "appropriateness" can be determined without "individualized evidence regarding each student's needs." [Doc. 496 at 57.] Question No. 2 seeks interlocutory review of that purely legal, dispositive, and disputed question.

**First**, Question No. 2 presents a purely legal issue. It addresses the *kind of evidence* (e.g., individualized or generalized) needed to establish liability, which is a legal question of statutory construction. It does not ask whether the DOJ provided

---

[7] For the sake of clarity, the State continues to agree with the <u>GAO</u> court's conclusion that the State does not "administer GNETS in a way that harms" the plaintiffs in that case. 2024 WL 4340034 at *20 n.21. [<u>See</u> Doc. 496 at 39.]

*sufficient evidence*, which requires a factual analysis.[8]  Snapp v. Unlimited Concepts, Inc., 208 F.3d 928, 933 (11th Cir. 2000) (questions of statutory construction are ones of law); United States v. Seaboard Coast Line R. Co., 368 F. Supp. 1079, 1083 (M.D. Fla. 1973) (questions of regulatory construction are ones of law).

**Second**, Question No. 2 presents an issue for which there exists substantial ground for a difference of opinion.  On the one hand, this Court held that individualized evidence was *not* required, but the Order also acknowledged that there is no "controlling precedent" on the issue.  [Doc. 496 at 60.]  The Order also recognized the split of authority on the issue after the Fifth Circuit adopted what the district court described as "the minority approach" and determined—in the first appellate decision to consider the issue after Kisor—that Olmstead claims *do* require "individualized proof of 'unjustified isolation[.]'" [Doc. 496 at 60, 57–58 (quoting Mississippi, 82 F.4th at 395–96).]  The GAO court likewise agreed, which created a split within the Northern District.  GAO, 2024 WL 4340034 at *5 (citing with

---

[8] Here, the DOJ admitted that it did not have such individualized evidence, but it argued that it did not need to and relied, instead on generalized evidence from its experts.  [Doc. 446 at 15.]  The Order agreed but also decided, as an alternative holding, that the DOJ presented "evidence sufficient to create a factual dispute regarding whether the students at issue can appropriately be served in community (general education) settings." [Doc. 496 at 60.]  The alternative holding, however, was based on testimony from one of the DOJ's experts who acknowledged she did not review the "vast majority" of students' files.  [Id.]  Thus, if the Eleventh Circuit decides that an individualized review is necessary, Dr. McCart's testimony will not save the DOJ.

approval <u>Mississippi</u>, 82 F. 4th at 395). These splits of authority on a question that is open in the Eleventh Circuit satisfies the second factor imposed by 28 U.S.C. § 1292(b). <u>Cosby</u>, 2024 WL 1235539 at *6.

**Third**, if the Eleventh Circuit adopts the Fifth Circuit's analysis, the State would be entitled to summary judgment based on the lack of individualized assessments of appropriateness. <u>See</u> <u>GAO</u> 2024 WL 4340034 at *8.

> **3.** **Question No. 3: Whether Actionable Discrimination Under Title II Must Be Caused by (or Traceable to) A Public Entity's Actual Conduct; and Whether Relief Can Do More Than Restrain Enforcement of a Discriminatory Law or Policy.**

Question No. 3 seeks interlocutory review of two related questions that the State raised: (1) does Title II impose liability on a public entity that "merely 'administers' … programs [or must the entity] administer those services and programs in a way that harms the plaintiff;" and (2) if liability exists, when the public entity is a state, can federal courts do more than restrain it from enforcing the alleged law or regulation causing the discrimination? <u>GAO</u>, 2024 WL 4340034 at *11.

Based on the Order, the alleged injuries here are: "ongoing stigmatization, inferior education, and not receiving appropriate supports and services in the most integrated setting pursuant to the mandate in <u>Olmstead</u>." [Doc. 496 at 24 (citations omitted).] Question No. 3 asks whether, under Title II, a state can be liable simply by administering those services, or whether that administration must also *cause* the alleged discrimination. Since the inception of the litigation, the State has causation

matters. [Doc. 496 at 24 (citations omitted); 429-1 at 10-17, n.15.]   The DOJ apparently disagrees and has never expressly identified *how* the State's alleged administration *causes* the purported injuries, or that any statute or regulation is to blame. [Doc. 448-1 at 7-10.]   Thus, the DOJ does not appear to seek an injunction from the enforcement of anything but rather an order compelling *more* services.  The Order disagreed with the State and decided that a finding of administration alone satisfied traceability and redressability requirements.[9]   [Doc. 496 at 41, 44-52.] Consistent with the DOJ's presentation, the Order did decide any GNETS "statute or regulation … violates federal law." GAO, 2024 WL 4340034 at *21.

Question No. 3 seeks interlocutory review of these decisions, and it satisfies 28 U.S.C. § 1292(b).  **First**, whether analyzed through the lens of Article III standing's traceability and redressability requirements or on the merits of causation, the question posed is purely legal. Snapp, 208 F.3d at 933 (addressing statutory construction); Fla. Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel, 194 F.3d 1227, 1229 (11th Cir. 1999) (addressing standing); Alabama-Tombigbee

---

[9] The Order reached this conclusion after deciding that (1) "Georgia law clearly contemplates the State's role in administering services for students with disabilities, including the GNETS program;" (2) the ADA imposes liability for "administering" and not just "providing" services; and (3) after considering the four factors articulated in this Court's order denying the State's motion to dismiss. [Doc. 496 at 41-52.]

Rivers Coalition v. Dep't of Interior, 26 F.3d 1103 (11th Cir. 1994) (reviewing de novo propriety of injunctive relief based on alleged statutory violation).

**Second**, the Eleventh Circuit has not squarely addressed these issues in the context of Title II, and the split of authority within district courts in this circuit demonstrate substantial grounds for differences of opinion. On traceability/causation, the GAO court held that ADA claimants must provide evidence that the administration of services "caused … unnecessary segregation." GAO, 2024 WL 4340034 at *11. Another district court in this circuit held the opposite. Compare United States v. Florida, 682 F. Supp. 3d 1172, 1185 (S.D. Fla. 2023) ("Causation is *not* an element of an Olmstead case.") (emphasis in original).

Similarly, this Court and the GAO court split on the issue of available remedies.  In GAO, the court held that it could not compel non-party LEAs to act, and that federal courts' authority in cases like these is limited to enjoining the enforcement of a state law or regulation that violates the ADA.  Id. at *21 (citing Jacobson, 974 F.3d at 1255). This Court disagreed. [Doc. 496 at 44-45.]

These differences of opinions are not limited to district courts in this circuit. The Fifth Circuit recently issued an opinion that echoes the Mississippi court's call for judicial restraint, and it is in stark contrast to the decision in Florida. Compare M. D. by Stukenberg v. Abbott, 24-40248, 2024 WL 4471977, at *16 (5th Cir. Oct. 11, 2024), with United States v. Florida, 682 F. Supp.3d at 1242-52. In Abbott, the

court considered an injunction against the Texas Department of Family and Protective Services arising from allegations of inadequate care of foster children. Id. When addressing the scope of available remedies, the Abbott panel wrote of "a general rule of law [that] federal judges are not allowed to become de facto superintendents of major state agencies … Nor … interven[e] to thwart the state's self-management." Id. (citing Horne v. Flores, 557 U.S. 433, 453(2009) ("[T]he longer an injunction or consent decree stays in place, the greater the risk that it will improperly interfere with a State's democratic processes.").) By contrast, the Florida court imposed significant and detailed obligations on Florida state agencies. 682 F. Supp.3d at 1242-52. This split of authority plainly satisfies the second criterion of 28 U.S.C. § 1292(b). Cosby, 2024 WL 1235539 at *6.

**Third**, there would be no trial if the Eleventh Circuit either adopts the reasoning of the Fifth Circuit and GAO court on traceability/causation or on the limitation of injunctive relief to restraining State actors (as the DOJ has never argued that the GNETS Rule or any State statute is inherently discriminatory).

### 4.    Question No. 4: Whether Title II Recognizes At-Risk Claims, or Whether It Requires Evidence of Actual Discrimination.

Question No. 4 also asks a pure question of law: whether Title II recognizes claims for potential discrimination (e.g., the "at risk" theory). The Order decided "yes." [Doc. 497 at 37-38.] The Fifth Circuit said "no," in the most recent appellate

decision which represents the "minority approach." [Id. at 58.]  The Eleventh Circuit has not said anything on the issue.

Throughout this litigation, the State argued that the ADA does not recognize claims of potential or at-risk discrimination.[10] [See Doc. 429-1 at 12, 13 n.15, 24 n.29; 470 at 5-7.]  Citing persuasive authority decided before Kisor, the DOJ argued the contrary but did not substantively distinguish the State's authority, including Mississippi, 82 F.4th at 393-94. [Doc. 448-1 at 28-29.] The Order chose not to follow the persuasive authority of Mississippi and recognized at risk claims. [Doc. 496 at 35-36 (citing Fitzmorris v. N.H. Dep't of Health & Hum. Servs. Comm'r Lori Weaver, No. 21-CV-25-PB, 2023 WL 8188770, at *2 (D.N.H. Nov. 27, 2023) (relying on Davis v. Shah, 821 F.3d 231, 263 (2016)).]¹¹

Question No. 4 would allow the Eleventh Circuit to address this circuit and district split.  **First**, this presents a question of statutory construction, which is one

---

[10] The Order states that the State challenged the DOJ's at-risk theory of liability only in a footnote.  [Doc. 496 at 25 n.7.]  Respectfully, the State raised the issue in several other places.  See Doc. 429-1 at 12, 13 n.15, 24 n.29; 470 at 5-7.]  The State also identified the Loper Bright decision as an additional basis to challenge the DOJ's at-risk theory.  [Doc. 442 at 2-5.] Further, and as the State argued at summary judgment, the DOJ relegated many arguments to footnotes or offered "perfunctory" and tautological responses to dispositive issues.  N.L.R.B. v. McClain of Georgia, Inc., 138 F.3d 1418, 1422 (11th Cir. 1998). See also [Doc. 470 at 6, 7-8, 18.]
[11] As recognized in Mississippi, Davis predates Kisor and applied Auer deference. Mississippi, 82 F.4th at 396; Davis, 821 F.3d at 263.

of law. <u>Snapp</u>, 208 F.3d at 933; <u>Mississippi</u>, 82 F.4th at 393 (evaluating at-risk claims as a matter of "statutory interpretation"); [Doc. 496 at 35-36].

**Second**, recent opinions demonstrate that the existence of substantial grounds for difference of opinion on the breadth of the ADA. <u>Cosby</u>, 2024 WL 1235539, at *6. The Order acknowledged that the issue is an open one in this circuit, and the <u>Mississippi</u> opinion created a split of authority. [Doc. 496 at 37.]; <u>see also</u> [Doc. 448-1 at 28-29.] Since then, courts in the Northern District split over the availability of at-risk claims. <u>Compare</u> [Doc. 499 at 37-38] <u>with</u> GAO, 2024 WL 4340034 at *9.

**Third**, eliminating the DOJ's at-risk theory (and limiting its evidence to only cases of alleged actual discrimination) would "substantially reduce the amount of litigation left in the case," as well as the amount and type of evidence and potential remedies. <u>McFarlin</u>, 381 F.3d at 1264. Consequently, the issue warrants certification.

5.    **<u>Question No. 5</u>: Whether a Title II Claim Based on Appropriate Services Requires Evidence of a Treating Professional's Evaluation, and How the Court Should Defer to the Professional's Opinion.**

Question No. 5 seeks immediate appellate review of related but distinct questions about the significance of treating professionals' opinions on the appropriateness of more integrated or separate settings, and what kind of deference should be afforded to their decisions. <u>See</u> <u>Olmstead</u>, 527 U.S. at 587 (plurality opinion). The Order concluded Title II did not require the DOJ to provide evidence that "a 'responsible, treating physician'" decided a more integrated setting is

appropriate for a student, and it appeared not to afford any deference to any IEP teams' recommendation.  [Doc. 496 at 55-57.]  These companion issues satisfy the criteria imposed by 28 U.S.C. § 1292(b).

The State has consistently argued that <u>Olmstead</u>-type claims require evidence of a treating professional['s opinion] that [a more integrated] placement is appropriate" and disregarded. <u>Florida</u>, 938 F.3d at 1250. In cases alleging systemic violations, systemic evidence is needed.  [Doc. 429-1 at 27-28; 470 at 9, 10, 13-14.] The State also said that IEP teams qualify as the kind of treating professionals described in <u>Olmstead</u>, and that their decisions are entitled to the "greatest of deference."[12] <u>Olmstead</u>, 527 U.S. at 610 (Kennedy, J., concurring).  <u>See</u> <u>also</u> <u>id.</u> at 602 (plurality opinion) (same). [Doc. 429-1 at 26-27, 33; 470 at 13, 13 n.8, 11-12.]

The Order reached different conclusions after understanding the State to limit its argument to State-employed physicians. [Doc. 496 at 57.] It then concluded that IEP teams are the relevant decision makers, but did not require the DOJ to provide evidence that an IEP team recommended more integrated services or settings, or that such recommendations went unheeded. <u>See</u> [Doc. 496 at 59-60 (<u>citing</u> <u>Long v. Benson</u>, No. 08-cv-26 (RH/WCS), 2008 WL 4571904, at *2 (N.D. Fla. Oct. 14,

---

[12] In its Brief in Opposition to the State's Motion for Clarification and Reconsideration, the DOJ wrongly argues the State limited its argument to <u>Olmstead</u>'s focus on State-employed physicians.  [Doc. 503 at 12-13.]  As set forth in both the State's Motion for Clarification and Reconsideration briefing and above, this is not so. [Doc. 501 at 6-8, 18-20; Doc. 504 at 9-16.]

2008); Joseph S. v. Hogan, 561 F. Supp. 2d 280, 291 (E.D.N.Y. 2008)).] The Order also considered one of DOJ's experts, Dr. McCart, as a treating professional, but Dr. McCart acknowledged that she did not personally assess any individual student. [Id. at 60-61.] Thus, it is unclear whether the Order afforded any deference to the judgment of any IEP team.

The twin issues posed by Question No. 4 satisfy the three requirements of 28 U.S.C. § 1292(b). **First**, the significance of Olmstead's holding on the role of treating professionals is a legal issue not based on the factual record. McFarlin, 381 F.3d at 1258.[13] See also Guerrero-Lasprilla v. Barr, 589 U.S. 221, 234 (2020) (deciding that applying precedent to undisputed facts is a question of law); Snapp, 208 F.3d at 933 (deciding the appropriate level of deference is also a question of law.) Cf. Buckner v. Florida Habilitation Network, Inc., 489 F.3d 1151, 1154 (11th Cir. 2007) (addressing federal regulations).

**Second**, other than a general statement in Florida, the Eleventh Circuit has not squarely addressed either issue since Olmstead itself. [Doc. 429-1 at 26 n.30.] Florida, 938 F.3d at 1250. There is a split of authority among the federal courts that

---

[13] As with the issue of appropriateness, the question is not whether the DOJ provided *sufficient* evidence. The DOJ does not contend it provided evidence of routinely ignored recommendations of IEP teams. [See Doc. 496 at 61 (citing Doc. 450-12 at 11-16 (identifying one instance of a student receiving GNETS services without a recommendation from an IEP team).] Here again, the question presented is one about the *kind* of evidence needed for ADA claims to survive summary judgment.

have considered the issues. [Doc. 496 at 35, 58.] The only circuit court to specifically address the issue emphasized "the importance of obtaining treating or state physicians' opinions for each individual." <u>Mississippi</u>, 82 F.4th at 395. The Order adopted the reasoning of district courts that seem to question whether evidence of a treating professional is necessary at all. [<u>See</u> Doc. 496 at 59-60 (citing <u>Hogan</u>, 561 F. Supp. 2d at 291).] This divergent authority satisfies the second prong of the 28 U.S.C. § 1292(b) analysis.

**Third**, a decision by the Eleventh Circuit that is favorable to the State would warrant granting summary judgment against the DOJ's <u>Olmstead</u> claim. At the very least, it would preclude the DOJ from making systemic allegations and seeking systemic relief and, therefore, "substantially shorten the litigation." <u>McFarlin</u>, 381 F.3d at 1259.

6.    <u>**Question No. 6**</u>**: Whether DOJ's proposed Reasonable Accommodations in Title II Cases Must Be Analyzed on an Individualized or Generalized Basis.**

Question No. 6 focuses on which standard applies at summary judgment on the issue of reasonable accommodations. There is no disagreement that the DOJ bears the initial burden of identifying a reasonable accommodation at summary judgment. [Doc. 496 at 65.] The question is whether this showing can be made on a generalized basis or only with fact-specific and individualized evidence. <u>See</u> <u>Bircoll</u>, 480 F3d at 1086. The Court agreed with the DOJ that an individualized

demonstration of reasonable accommodations is not required based on what it described as the "established standards." [Doc. 496 at 67.]

Allowing the Eleventh Circuit to address this issue in the context of a systemic Olmstead case satisfies the requirements of 28 U.S.C. §1292(b). **First**, determining the applicable legal standard presents a pure question of law that does not require evaluation of the evidence.   See Barr, 589 U.S. at 234. **Second**, there exists substantial ground for a difference of opinion on the applicable standard. As the State noted in its summary judgment briefing, the Eleventh Circuit has said that the "reasonable-modification inquiry in Title II-ADA cases is a 'highly fact-specific inquiry,'" and that "[w]hat is reasonable must be decided case-by-case based on numerous factors." [Doc. 214-1 at 29].  Bircoll, 480 F.3d at 1086. Other authority supports the State's position. See, e.g., PGA Tour, Inc. v. Martin, 532 U.S. 661, 688 (2001) ("an *individualized* inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work a fundamental alteration.") (emphasis added); Mary Jo C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 165 (2d. Cir. 2013) (same); McGary v. City of Portland, 386 F.3d 1259, 1270 (9th Cir. 2004) (same). But, the Order's decision demonstrates the existence of another interpretation.

**Third**, a reversal by the Eleventh Circuit would entitle the State to summary judgment on the grounds that the DOJ did not create a question of material fact on the requisite individualized basis. McFarlin, 381 F.3d at 1259.

### 7.    Request for Stay of Litigation.

The State also seeks a stay of this litigation if the Court-ordered mediation is unsuccessful and either (1) this Court has not issued a decision on the State's Motion; (2) this Court grants, in whole or in part, the State's Motion, and the State's petition for appellate review is not due or still pending before the Eleventh Circuit; and (3) during the pendency of any appeal if the Eleventh Circuit grants the State's petition for appellate review.

To be clear, the State does not seek to stay or delay the Court-ordered mediation, which is taking place on November 21, 2024, before the Honorable Regina D. Cannon, United States Magistrate Judge. The State's request is limited to the circumstances described above and the Order's direction that the parties file the Local Rule 16.5 Consolidated Pretrial Order within 30 days of an unsuccessful mediation (here, December 20, 2024).

## <u>CONCLUSION</u>

For reasons set forth in this Motion and in the State's Brief in Support of this Motion, the State seeks a certificate of immediate review on each of the Six Questions identified in this Motion. The State does not seek this relief on an all-or-

nothing basis, as each identified question satisfies the criteria imposed by 28 U.S.C. § 1292(b).  Should this Court certify one or more of the questions at issue, the State also seeks a stay of the pre-trial deadlines and trial in this case during the pendency of the interlocutory review.

Respectfully submitted this 29th day of October, 2024.

Christopher M. Carr        112505
   *Attorney General*
Bryan K. Webb              743580
   *Deputy Attorney General*
Katherine P. Stoff         536807
   *Sr. Assistant Attorney General*
Kristen L. Settlemire      919430
   *Assistant Attorney General*
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334

*/s/ Josh Belinfante*

Josh Belinfante           047399
Melanie Johnson           466756
Edward A. Bedard          926148
Danielle Hernandez        736830
Javier Pico Prats         664717
Anna Edmondson            289667
Robbins Alloy Belinfante Littlefield, LLC
500 14th St. NW
Atlanta, GA 30318
T: (678) 701-9381
F: (404) 856-3255
E: jbelinfante@robbinsfirm.com
   mjohnson@robbinsfirm.com
   ebedard@robbinsfirm.com
   dhernandez@robbinsfirm.com
   jpicoprats@robbinsfirm.com
   aedmondson@robbinsfirm.com

Alexa R. Ross             614986
AlexaRossLaw, LLC
2657 Danfroth Lane
Decatur, Georgia 30033
E: alexarross@icloud.com

*Special Assistant Attorneys General*

*Attorneys for Defendant*
*State of Georgia*

## <u>L.R. 7.1(D) CERTIFICATION</u>

I certify that this Notice has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this Notice has been prepared using 14-pt Times New Roman Font.

*/s/ Josh Belinfante*
Josh Belinfante

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the within and foregoing **DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO CERTIFY PORTIONS OF AN ORDER OF INTERLOCUTORY APPEAL AND FOR POTENTIAL STAY OF LITIGATION** with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing.

This 29th day of October, 2024.


*/s/ Josh Belinfante*
Josh Belinfante