# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA,

    PLAINTIFF,

    *v.*

STATE OF GEORGIA,

    DEFENDANT.

Civil Action No.
1:16-cv-03088-ELR

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY AN ORDER OF INTERLOCUTORY APPEAL OF SEVERAL CONCLUSIONS IN THE AUGUST 16, 2024 ORDER AND FOR POTENTIAL STAY OF LITIGATION

Plaintiff United States of America ("United States") respectfully files this response in opposition to Defendant's Motion to Certify an Order of Interlocutory Appeal of Several Conclusions in the August 16, 2024 Order and for Potential Stay of Litigation (ECF No. 505) and its Memorandum in Support (ECF No. 506) (collectively, the "Motion").

## INTRODUCTION

More than eight years into this litigation, the State of Georgia ("State") seeks to further delay the timely resolution of this matter through procedural stonewalling—this time by seeking certification of an interlocutory appeal just as this case is ready for trial. But the State fails to satisfy the high bar it must clear for this Court to take the extraordinary step of certifying such an appeal now, rather than following the usual course and waiting for any appeal to proceed after final judgment.

Filed in 2016, this case has already encountered several years of delay tied to procedural maneuvering by the State.[1] Having failed to obtain summary judgment, the State yet again seeks to forestall progress in this case. Displeased with the well-

---

[1] The State responded to the complaint with a motion to dismiss. ECF No. 9. From August 2017 until October 2019, this case was stayed pending an Eleventh Circuit ruling that ultimately reaffirmed that the United States has the authority to bring suit to enforce Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131 *et seq*. *See* ECF Nos. 40, 45. Once the stay was lifted, the State filed a second motion to dismiss and a motion for judgment on the pleadings, each of which was denied. *See* ECF Nos. 47, 61, 78, 94.

reasoned conclusions in this Court's August 16, 2024 Order on summary judgment (ECF No. 496) ("Order"), the State first attempted to relitigate summary judgment by filing a Motion for Clarification or, in the Alternative, Reconsideration ("Motion for Reconsideration"). ECF No. 501. With the Motion for Reconsideration still pending, the State has now filed an untimely motion under 28 U.S.C. § 1292(b) ("§ 1292(b)") to certify for interlocutory appeal what it frames as "six questions" related to this Court's summary judgment ruling. ECF Nos. 496, 506. As discussed more fully below, none of the issues presented by the State meets the high standard required under § 1292(b) for this Court to exercise its discretion to authorize an immediate appeal. The State's Motion should therefore be denied, and this case should proceed to trial to ensure that the rights of the thousands of children who have been languishing in the GNETS Program for nearly a decade can be vindicated.

## ARGUMENT

### I.     THE MOTION FOR CERTIFICATION IS UNTIMELY.

The summary judgment decision the State seeks to challenge was issued by this Court on August 16, 2024. ECF No. 496. Only now—two-and-a-half months later (74 days)—does the State ask this Court to certify that ruling for immediate appellate review. ECF No. 505. The State's failure to justify or otherwise explain this delay is reason enough to deny the Motion.

While § 1292(b) does not contain an express time limit for seeking certification of an appeal, "reasonable simultaneity of the certification with the order certified is required." *United States ex rel. Quartararo v. Cath. Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 274 (E.D.N.Y. 2021) (citation omitted). District courts "should not grant an inexcusably dilatory request" for § 1292(b) certification. *Robinson v. First Fam. Fin. Servs. of Georgia, Inc.*, No. 1:07-CV-00026-MHS, 2007 WL 9703170, at *1 (N.D. Ga. Nov. 19, 2007) (quoting *Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000)). "In the context of requests for interlocutory appeals, timely requests for certification are calculated in days, not months." *Fabricant v. Sears Roebuck & Co.*, No. 98-1281-CIV-NESBITT, 2001 WL 883303, at *1 (S.D. Fla. Jan. 29, 2001).

Here, the State inexcusably waited two-and-a-half *months* to file this Motion. In similar circumstances, courts throughout the country have found this kind of delay renders a motion for § 1292(b) certification untimely. *See, e.g.*, *Fabricant*, 2001 WL 883303, at *1 (46 days); *Robinson*, 2007 WL 9703170, at *1 (two-and-a-half months); *Green v. City of New York*, No. 05–CV–0429, 2006 WL 3335051, at *2 (E.D.N.Y. Oct. 23, 2006) (two months); *Weir v. Propst,* 915 F.2d 283, 287 (7th Cir. 1990) (two months).[2] That the State filed its Motion for Reconsideration in the

---

[2] *See also, e.g.*, *Ferraro v. Sec'y of U.S. Dept. of Health and Human Servs.*, 780 F. Supp. 978, 979 (E.D.N.Y. 1992) (two-and-a-half months); *Morton Coll. Bd. of*

intervening period does not compel a different outcome. *See Weir*, 915 F.3d at 286 ("The time limits in section 1292(b) may not be circumvented by the facile device of asking for reconsideration of the order sought to be appealed under that section.") (citation omitted).[3] To the contrary, it reinforces the untimeliness of the State's Motion. "Delay in filing a motion to certify an order for interlocutory appeal suggests that a party may be seeking to avoid an unfavorable ruling, rather than to expedite the litigation for the benefit of the Court and all parties." *Lindley*, 2010 WL 2465515, at *2. This is particularly true where, as here, the Court first decided several issues the State seeks to certify more than *four years ago*.[4] Had the State

---

*Trustees of Illinois Cmty. Coll. Dist. No. 527 v. Town of Cicero*, 25 F. Supp. 2d 882, 885 (N.D. Ill. 1998) (30 days); *Liberty Salad, Inc. v. Groundhog Enters., Inc.*, No. CV 17-226, 2019 WL 1303829, at *3 (E.D. Pa. Mar. 20, 2019) (two months); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2012 WL 662334, at *1 (S.D. Ill. Feb. 29, 2012) (two months); *Lindley v. Life Invs. Ins. Co. of Am.*, No. 08-CV-0379-CVE-PJE, 2010 WL 2465515, at *3 (N.D. Okla. June 11, 2010) (70 days); *Spears v. Washington Mut. Bank FA*, No. C-08-00868 RMW, 2010 WL 54755, at *2 (N.D. Cal. Jan. 8, 2010) (two-and-a-half months).

[3] Nor is the State's motion rendered timely because a nonbinding order in a *different* case on a *different* record held that *other* plaintiffs challenging the GNETS Program lacked standing to pursue their claim. *Compare Georgia Advocacy Off. v. Georgia*, No. 1:17-CV-3999-MLB, 2024 WL 4340034, at *2 (N.D. Ga. Sept. 27, 2024) ("GAO"), *with* ECF No. 506.

[4] *Compare* ECF No. 61 at 8-17 (denying dismissal after rejecting State's arguments on treating professionals and concluding the complaint sufficiently alleged State "operate[s], *and* administer[s]" the GNETS Program), *and* ECF No. 91 (denying judgment on the pleadings after concluding the complaint sufficiently alleged State is liable for discriminatory actions), *with* ECF No. 505 (seeking certification for same issues in question nos. 1, 3, and 5).

truly intended to conserve resources and avoid unnecessary expense, it would have sought certification for what it now describes as purely legal issues *before* the parties conducted over 50 depositions and 70 site visits; exchanged extensive document discovery and expert reports; and briefed summary judgment and the Motion for Reconsideration. As it stands, the timing of the State's Motion suggests only a strategy of continued delay, and the Motion should be denied for that reason alone.

## II.    THE STATE FAILS TO MEET THE LEGAL STANDARD FOR CERTIFICATION.

The State has failed to establish an adequate basis for taking the extraordinary measure of certifying this Court's August 16, 2024 Order for interlocutory appeal. "Most interlocutory orders do not meet th[e] test" for certification for an immediate appeal. *OFS Fitel, LLC. v. Epstein*, 549 F.3d 1344, 1359 (11th Cir. 2008). That is so because "[t]he proper division of labor between the district courts and the court of appeals and the efficiency of judicial resolution of cases are protected by the final judgment rule," which generally requires parties to await a final judgment before appealing. *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). Applying § 1292(b) "too expansive[ly]" threatens judicial efficiency and the division of labor that promotes such efficiency. *Id.* "Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy." *Id.* Certification for interlocutory appeal under § 1292(b) is therefore an "extraordinary measure, which is permitted only in exceptional circumstances."

*DeKalb Cnty. v. HSBC North America Holdings, Inc.*, No. 1:12-CV-03640-ELR, 2016 WL 3958730, at \*2 (N.D. Ga. Nov. 17, 2015) (citation omitted).

Section 1292(b) permits a district court, in its discretion, to certify a non-final order for interlocutory appeal if the ruling "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and . . . [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1336 (11th Cir. 2018) (citing § 1292(b)) (numbers added); *see also OFS Fitel, LLC*, 549 F.3d at 1358 (noting § 1292(b) certification is "wholly discretionary"); *see also Cosby v. State Farm Fire & Cas. Co.*, No. 1:22-CV-03449-ELR, 2024 WL 1235539, at \*14-15 (N.D. Ga. Feb. 15, 2024) (citing *Drummond Co.*, 885 F.3d at 1336, which provides the five-step interpretation the Eleventh Circuit uses to implement the § 1292(b) standard). The party seeking certification bears the burden of proving the exceptional circumstances required to justify this extraordinary measure. *See FXM, P.C. v. Gordon*, No. 1:07-CV-1642, 2007 WL 3491274, at \*3 (N.D. Ga. Nov. 6, 2007).

A pure question of law is one that the appeals court "'can decide quickly and cleanly without having to study the record.'" *Ga. State Conf. of NAACP v. Fayette Cnty. Bd. Of Comm'rs*, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013) (citation omitted). If answering the question presented requires a "fact-specific inquiry,"

6

certification is improper. *Cosby*, 2024 WL 1235539, at *14-15 (citing *Drummond Co.*, 885 F.3d at 1337). A question of law is considered "'controlling' if it has the potential of substantially accelerating disposition of the litigation, even if it would not terminate the case." *DeKalb Cnty.*, 2016 WL 3958730, at *2 (citation omitted).

"[T]he requirement that there be substantial ground for difference of opinion is satisfied when (1) the issue is difficult and of first impression, (2) a difference of opinion as to the issue exists within the controlling circuit, or (3) the circuits are split on the issue." *Id.* at *2 (citation omitted). In assessing this requirement, courts consider whether differing opinions have examined the "precise issue[s]" proposed for interlocutory appeal. *Id.* at *3. "[T]wo district court opinions of limited precedential and persuasive value" do not present a "*substantial* difference of opinion." *U.S. ex rel Powell v. Am. InterContinental Univ. Inc.*, 756 F. Supp. 2d 1374, 1380 (N.D. Ga. 2010) (emphasis in original). Nor does such a difference of opinion arise from "the mere claim that the district court's ruling is incorrect[.]" *Id.  In re Scientific-Atlanta, Inc.*, No. 1:01-CV-1950-RWS, 2003 WL 2574073, at *1.

Finally, to "materially advance" the termination of the litigation means the certification for an appeal "'would serve to avoid a trial or otherwise substantially shorten the litigation[,]' thereby lessening the time, effort, and expense the parties must expend." *Cosby*, 2024 WL 1235539, at *19 (citing *McFarlin*, 381 F.3d at 1259).

As explained below, the State has failed to carry its burden of showing that any of the "six questions" it seeks to certify meet these demanding standards.

**A.    Certification Is Improper Because the State Has Failed to Show That Appealing Would Materially Advance the Termination of Litigation.**

Because none of the "six questions" the State seeks to certify for immediate appeal would materially advance the termination of litigation and this alone makes certification improper, we begin with the third prong of the applicable test. Section II.B. then explains the varying reasons why the State's proposed questions also fail to present controlling, pure questions of law with substantial grounds for difference of opinion.

"Normally, an interlocutory appeal will not 'materially advance the ultimate termination of litigation' when discovery has concluded and a case is ready for trial.'" *In re Int'l Mgmt. Assoc. LLC. v. Lehman Brothers*, No. 1:17-CV-0302-AT, 2019 WL 2250638, at *3 (N.D. Ga. Feb. 27, 2019) (citation omitted). Here, fact and expert discovery have been closed for more than a year, this Court has winnowed the issues for trial with its ruling on summary judgment and the motions in limine, and it is undisputed that the case is trial-ready. *See* ECF No. 496. Moreover, even if the Eleventh Circuit reversed on each of the abstract issues presented, its decision would not fully dispose of the United States' claims or change the evidence the United States is likely to present at trial.

Under these circumstances, none of the issues presented for certification is a "controlling" issue that materially advances the ultimate termination of litigation and an appeal "would only serve to further delay these proceedings." *Frank Betz Assoc., Inc. v. Scenic Homes, Inc.*, No. 1:08-CV-1216-ODE, 2010 WL 11507150, at *1 (N.D. Ga. May 3, 2010). Because the State's Motion is exactly the type of "dilatory tactic" that § 1292(b) empowers district court judges "familiar with the litigation" to stop, *McFarlin*, 381 F.3d at 1257, the Court should deny the Motion.

## B. The "Six Questions" the State Seeks to Certify Do Not Meet the Remaining Requirements for Interlocutory Appeal.

### 1. Question 1 Is Not a Pure Question of Law and Has No Substantial Ground for Difference of Opinion.

On Question 1, the State seeks certification for whether the Americans with Disabilities Act ("ADA") is properly construed as imposing liability on public entities for "administering" discriminatory services. ECF No. 506 at 5.[5] This issue

---

[5] To support its Motion, the State mischaracterizes this Court's Order as holding that "the Integration Mandate imposes liability against a public entity for 'administering' and not just 'providing' services." *Id*. at 7, 11. However, the Court's ruling was not dependent on or limited to the text of 28 C.F.R. § 35.130(d), which in any event is amply supported by the ADA. Indeed, the Court considered the statutory text and relevant case law in concluding that the mere absence of the word "administer" in Title II's broad statutory prohibition on discrimination, 42 U.S.C. § 12132, does not limit the circumstances in which liability attaches. ECF No. 496 at 42. As this Court noted, the ADA prohibits direct and indirect discrimination by public entities, including state and local agencies. *Id.* at 41-42.

should not be certified for interlocutory appeal because it does not present a pure question of law or substantial grounds for difference of opinion.

Although the State attempts to frame the issue presented in Question 1 as a narrow legal question, determining whether the State may be held liable under Title II based on its administration of the GNETS Program is highly fact dependent. Making such a determination will require this Court to apply the law to the facts presented at trial, particularly those demonstrating how the State is involved in the delivery of behavioral health services generally and the operation of GNETS in particular. The latter operational question will be addressed through testimony and evidence regarding the State's role in planning, funding, regulating, managing, and overseeing aspects of the GNETS Program – all of which establish the State's substantial authority over the Program's activities.

The State has also failed to identify substantial ground for difference of opinion as to Question 1. As this Court explained, "it is widely recognized and long held by courts across the country that 'States cannot avoid *Olmstead* liability by contracting away their duty to provide services. In other words, States may not discriminate indirectly more than they may do so directly.'" ECF No. 496 at 42 (citing, *inter alia*, *United States v. Florida*, 682 F. Supp. 3d 1172, 1185 (S.D. Fla. 2023) ("*Florida III*")).

The State contends that there "appears" to be a difference of opinion by comparing a 2007 ruling by the Fourth Circuit to a district court ruling in Minnesota. ECF No. 506 at 12 (citing *Bacon v. City of Richmond, Virginia*, 475 F.3d 633, 642 (4th Cir. 2007) and *Murphy v. Minnesota Dep't of Human Servs.*, 260 F. Supp. 3d 1084, 1102 (D. Minn. 2017)). However, the two rulings do not establish a circuit split, let alone "irreconcilable holdings" as to "the scope of liability under Title II." ECF No. 506 at 12-13. *Murphy* details the many ways a public entity's actions and inactions may be "causally connected to Plaintiffs' failure to receive individualized … services and their resulting segregation." 260 F. Supp. 3d at 1102. Those actions and inactions include "approv[ing] funding … while failing to ensure that such a setting is the most integrated setting appropriate for the individual," failing to ensure the availability of sufficient community-based services, and general oversight of the provision of services throughout the state. *Id. Bacon* did not consider whether such actions would be grounds for liability under Title II, because the only issue in *Bacon* was funding and the court held that mere funding does not support Title II liability.[6] 475 F.3d at 642-43. In short, *Bacon* and *Murphy* are not at odds and do not create a circuit split. If anything, they underscore that determining whether Title II applies is

---

[6] In discussing *Bacon* in its ruling denying the State's motion to dismiss, this Court specifically distinguished *Bacon's* facts from the facts in this case and noted that the record here, as in *Murphy*, demonstrates State action and inaction (beyond mere funding) relevant to the segregation at issue. ECF No. 61 at 13-14.

a fact-bound analysis. For these reasons, no substantial ground for difference of opinion exists.

### 2. Questions 2 and 5 Are Not Pure Questions of Law and They Lack Substantial Grounds for Differences of Opinion.

On Question 2, the State seeks certification to address whether a court's determination as to whether an integrated setting is "appropriate" for an individual with a disability, as required by *Olmstead*, must be individualized.[7] ECF No. 506 at 13. Relatedly, on Question 5, the State seeks certification to address whether the evidence supporting an appropriateness determination must come from a "treating professional[,]" and what deference, if any, should be afforded to such a professional's opinion. ECF No. 506 at 5-6. The Court should decline the State's request to certify these questions because they are not pure questions of law and there are no substantial grounds for difference of opinion on either issue.

Over the last eight years, this Court has repeatedly and thoughtfully considered and rejected the State's shifting arguments on these questions.[8] The

---

[7] The State's question inconsistently frames the *Olmstead* standard for the "appropriateness" prong, which requires "that community placement is appropriate." *Olmstead*, 527 U.S. 581, 587 (1999); *see* ECF No. 506 at 5, 7, 13.

[8] In the early stages of this litigation, the State asserted that only a "*state* treatment professional" could determine the appropriateness of a community placement. ECF 47-1 at 17, ECF No. 53 at 8-9 (emphasis added). This Court explicitly disagreed and noted that "lower courts have universally rejected [this] absolutist interpretation[.]" ECF No. 61 at 14-15 (citing *Day v. Dist. of Columbia*, 894 F. Supp. 21, 23-24 (D.D.C. 2012)). Next, the State asserted that the United States must show a

State's own inconsistencies highlight that these questions are not "pure questions of law." The evidence required to determine whether an individual can appropriately be served in a community placement is fact-specific, which is why courts have accepted various forms of individualized and generalized evidence from a variety of sources, including sources other than "treating professionals." *See infra* at pages 14-15. Further, as the United States has previously asserted, "the assessment of whether a community educational placement is appropriate necessarily involves comparisons with, and assumptions about, the segregated setting in which the population is currently being served." ECF No. 446 at 16. When, as the United States asserts is the case here, the students' segregated setting is itself "inappropriate and unjust" (ECF No. 446 at 17 (citing ECF No. 432-1 at 164)) and the necessary supports and services could be provided to those students in the community (ECF No. 496 at 31), evidence regarding the program as a whole, community-based services, and assessments regarding the population overall suffices. Ultimately, the Court did not reach this precise question because the United States did, in fact, present evidence about individual children, including from treating professionals. *See* ECF No. 496 at

---

"responsible, treating *physician*" determined that students could be appropriately served in community educational placements. ECF No. 429-1 at 25 (emphasis added). Faced with the obvious reality that an Individualized Education Program ("IEP") Team and not a "responsible, treating physician" makes the decision for a child to enter GNETS, the State has recently tried to pivot again and now claims the IEP Teams have been the "treating professionals" to which it has been referring all along. *See* ECF No. 446 at 11, ECF No. 496 at 56-60 *and* ECF No. 501 at 1-3, 8.

60-61. Resolving Questions 2 and 5 would therefore require the court of appeals to wade through the factual record to assess the sufficiency of the United States' evidence—general and individualized.

There is also no substantial ground for differences of opinion within or outside the Eleventh Circuit regarding Questions 2 and 5. While the State suggests that evidence of appropriateness is binary (e.g., either individualized or generalized, (ECF No. 506 at 13)), its oversimplification fails to recognize the full spectrum of evidence that courts have relied on in *Olmstead* cases. The specific facts of those cases and the contexts of the underlying placement determinations shape the kinds of evidence courts choose to consider. *See*, *e.g.*, *Disability Advocates, Inc. v. Paterson*, 653 F. Supp. 2d 184, 257-59 (E.D.N.Y. 2009) (crediting "persuasive evidence from a variety of sources" to determine that "virtually all" constituents could be served in community settings); *United States v. Mississippi*, 82 F.4th 387, 393 (5th Cir. 2023) (requiring evidence of appropriateness from treating professionals where chancery courts are statutorily required to make assessments about whether someone will be committed to the hospital "after a hearing and evaluation by a court-appointed physician, a medical doctor, and a psychologist");[9] ECF No. 496 at 58 (citing *Florida III*, 682 F. Supp. 3d at 1224-27 and noting that,

---

[9] As this Court has already acknowledged, *Mississippi* is an "outlier opinion" that "remains firmly the minority approach." ECF No. 496 at 58.

in addition to individualized evidence, the court in that matter credited the United States' experts' opinions regarding "their reviews of Florida's policies and Medicaid program, their observations from their tours of the residential facilities where the children were kept, and the Court's own site visit to one of these residential facilities").

This wide variation in the sort of evidence courts have considered and credited in varying factual contexts when assessing appropriateness does not create substantial grounds for difference of opinion about whether specific types of evidence are required. Even in *Mississippi*, the court acknowledged that "appropriate" analyses may vary depending on the circumstances of the underlying alleged violations (e.g., the type of disability of the population in question). 82 F.4th at 396. Here, unlike in *Mississippi*, a treating physician does not determine whether a student is placed in the GNETS Program, so there can be no question that a treating physician is not necessary for a child to exit the Program. *See Mississippi*, 82 F.4th at 393. For all of these reasons, the State has failed to show any real or meaningful split of authority regarding the evidentiary issues that Questions 2 and 5 present.[10]

   3. Question 3 Is Not a Pure Question of Law and Lacks Substantial Ground for Difference of Opinion.

---

[10] Nor does the decision in *GAO* provide substantial grounds for difference of opinion. The Court in that case found the plaintiffs "fail[ed] to identify any individualized evidence," while acknowledging that in the instant matter, the United States had provided individualized evidence. *GAO*, 2024 WL 4340034, at *25, 27 n.10.

The State acknowledges that Question 3 is actually two interrelated questions about causation and relief: 1) Must the public entity 'directly' cause the discrimination?; and 2) As to remedies, are federal courts limited to enjoining a state law or regulation that caused the harm? ECF No. 506 at 15.[11] Neither question is a pure question of law. Nor is there a substantial ground for difference of opinion regarding these questions.

As explained *supra* at page 10, the Eleventh Circuit could not meaningfully answer the State's question about "impos[ing] liability … only for discrimination it directly causes" without examining what the factual record shows about the State's involvement. *See* ECF No. 506 at 5. The question is therefore not a pure question of law.

There are also no substantial grounds for difference of opinion. Although the State contends there is disagreement among courts about whether discrimination must be traceable to or caused by the public entity's conduct, its position relies on a misreading of the cases it cites. ECF No. 506 at 15-17. The State cites *GAO* as holding "that ADA claimants must provide evidence that the administration of services 'caused … unnecessary segregation'" and *Florida III* as holding that

---

[11] The second part of "Question 3" was not properly raised at summary judgment. Not until filing its Motion for Reconsideration did the State earnestly attempt to limit available remedies, should the United States prevail at trial. ECF No. 501 at 2.

"[c]ausation is not an element of an Olmstead case." However, the *Florida III* language appears in the context of a discussion of the ADA's requirement that public entities make reasonable modifications for persons with disabilities and notes that "[w]here a defendant fails to meet this affirmative obligation, the cause of that failure is *irrelevant*." *Florida III*, 682 F. Supp. 3d at 1185 (emphasis in original). Both *GAO* and *Florida III* agree that when a public entity fails to provide reasonable modifications to allow persons with disabilities equal access to its programs in the community, it can be held liable under Title II.

Next, the State claims that this Court's Order and the decision in *GAO* provide substantial grounds for difference of opinion regarding the availability of relief. ECF No. 506 at 17. But the court's ruling in *GAO* on the evidence and arguments presented in that case do not make this Court's ruling on the evidence and arguments presented here appropriate for interlocutory appeal, particularly where the records are factually distinct. *See supra* at page 15 n.10.

Finally, the State claims a "split in authority" because a "Florida court imposed significant and detailed obligations on Florida state agencies," while a Fifth Circuit panel used language that the State interprets as limiting federal courts' authority over state agencies. ECF No. 506 at 17-18 (citing *M.D. v. Abbott*, 2024 WL 4471977, at *16 (5th Cir. Oct. 11, 2024) and *Florida III*, 682 F. Supp. 3d at 1242-52). Not so. The lower court in the Fifth Circuit case had also imposed significant

and detailed obligations on Texas state agencies that the Fifth Circuit found the state had substantially discharged. Any remaining differences between the Florida and Texas cases reflect the application of the law to distinct sets of facts and each case's unique procedural posture, not a split in authority. Further, because this Court has made no findings of liability and has not ordered any remedial relief, Question 3 is premature.

4. Question 4 Is Not a Controlling Question of Law and Has No Substantial Ground for Difference of Opinion.

On Question 4, the State seeks certification for whether Title II encompasses "claims of potential or at-risk discrimination." ECF No. 506 at 19. The Court need not determine whether this issue presents a pure question of law because the question is not controlling and is inappropriate for certification on that basis alone. In addition, the State has failed to show a substantial ground for difference of opinion.

Question 4 presents zero "potential of substantially accelerating disposition of the litigation," *DeKalb Cnty.*, 2016 WL 3958730, at *2, because there is substantial overlap between the evidence the United States will present at trial regarding the lack of services available to and the harm experienced by: 1) students in GNETS, and 2) those at serious risk of placement in GNETS. For example, the United States intends to rely on an expert analysis of Medicaid claims data for all eligible students placed in GNETS to demonstrate the paucity of services provided to students who

might have avoided GNETS placement had they received these services.[12] This evidence would be presented regardless of the Eleventh Circuit's decision on the at-risk question, because the evidence pertains to students actually placed in GNETS (i.e., formerly at-risk students), not just students at-risk of a future GNETS placement.[13] Therefore, even if the Eleventh Circuit reversed on this question, there would be no change in the evidence presented at trial.

Question 4 also lacks substantial grounds for a difference of opinion. As this Court has already explained, "the majority approach" among the courts of appeals recognizes claims based upon a serious risk of unnecessary segregation. ECF No. 496 at 37. The only circuit to reach a contrary conclusion—the Fifth Circuit, in *Mississippi*—disclaimed creating any split with its sister circuits by reasoning that the decisions going the other way are "significantly factually distinguishable." 82

---

[12] As Dr. Putnam stated in his report: "Unfortunately, many students who ultimately were sent to GNETS did not receive these Medicaid reimbursable intensive services before they entered GNETS. As the result of these service deficiencies, children continue to be sent to GNETS, *and other students remain at serious risk of being sent to GNETS,* when they might otherwise be able to remain in general education settings if provided the appropriate services and supports." ECF No. 428-1 at 46-47 (emphasis added).

[13] Further, even if the Eleventh Circuit concluded that a serious risk of unnecessary segregation was not itself actionable under Title II, the United States would still be entitled to seek relief benefitting at-risk children as an exercise of this Court's equitable authority to *prevent* the unnecessary segregation that *Olmstead* indisputably proscribes. *See, e.g.*, *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (explaining "[t]he purpose of an injunction is to prevent future violations" and such relief is appropriate where there is a "cognizable danger of recurrent violation").

F.4th at 396. Nor does the *GAO* decision create an intra-circuit split here, as the State argues, because the holding in that case was a factual one based on the record in that case. As the *GAO* court explained, the at-risk claims in that case failed not because those claims are unavailable as a matter of law, but rather because the evidence was too conclusory to support a sufficient risk of unjustified segregation. 2024 WL 4340034, at *9-10. Further, as a "district court opinion[] of limited precedential and persuasive value," the *GAO* decision does not give rise to a "*substantial* difference of opinion." *Powell*, 756 F. Supp. 2d at 1380.

>    5.  Question 6 Is Not a Controlling Pure Question of Law and Lacks Substantial Ground for Differences of Opinion.

On Question 6, the State seeks certification to address whether the reasonable accommodations the United States proposes must be analyzed on an individualized or generalized basis. However, Question 6 is not a controlling pure question of law and has no substantial ground for differences of opinion.

Whether the United States has met its burden of proving reasonable modifications is a mixed question of law and fact. While the applicable standard of proof is a question of law, determining whether the United States meets that standard requires a factual inquiry. For example, even if the court were to determine that reasonable modifications required some degree of individualized assessment, the court would still need to determine if proposed reasonable modifications from the United States' expert, informed in part by her extensive observations and review of

individual student records, meet that threshold. In short, even if the Eleventh Circuit adopted the State's theory, its decision on the applicable legal standard would not be dispositive here.

There is also no substantial ground for difference of opinion on the applicable standard at the heart of Question 6. To fabricate controversy, the State misapplies the Eleventh Circuit's holding in *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072 (11th Cir. 2007), and construes the holding in *Bircoll* as creating new standards for *Olmstead* plaintiffs. As this Court has already explained, the court in *Bircoll* did not rule that plaintiffs in *Olmstead* actions must determine the applicability of a proposed reasonable modification to each individual alleged to be unnecessarily segregated as a result of a defendant's action or inaction. ECF No. 496 at 67-68. This "strained interpretation," (*id.* at 68), is predicated on the State's patently inaccurate interpretation of what the Court intended when it referred to a "case." *See* ECF No. 506 at 24 (quoting *Bircoll*, 480 F.3d at 1086 ("terms like 'reasonable' are relative to the particular circumstances of the case … What is reasonable must be decided *case-by-case* based on numerous factors.") (emphasis added)). Instead of accurately reading the Court's references to "cases" to refer to individual legal actions, the State reads *Bircoll*'s references to "cases" to mean "individuals" and thus to require that plaintiffs like the United States prove the applicability of reasonable modifications for every affected individual. This is nonsensical given the fact that *Bircoll* did not

address a claim involving the unnecessary segregation of multiple individuals but rather the distinct issue of a *single* individual's right to reasonable modifications during a traffic stop. *Bircoll,* 480 F.3d at 1075-80; ECF No. 496 at 67. Of course, the modification needed was individualized where there was a *single* plaintiff. The Court here correctly "decline[d] the State's invitation to create a new standard that injects a requirement for 'individualized' evidence. Rather, the Court applie[d] the established standards for discerning the reasonableness of a proposed accommodation." ECF No. 496 at 68. Now, instead of showing any substantial ground for difference of opinion that would justify an interlocutory appeal, the State recycles the same unpersuasive argument from summary judgment, which this Court should once again reject. The Motion for certification should therefore be denied.

## III.    THE STATE FAILS TO PROVIDE ADEQUATE JUSTIFICATION FOR STAYING THIS LITIGATION INDEFINITELY.

In two short paragraphs at the end of its brief, the State requests a sweeping stay of all litigation while the Motion and any related appeal are pending. ECF No. 506 at 25. That perfunctory request should be denied.

"[A] district court 'has broad discretion' to grant or deny a motion to stay proceedings 'as an incident to its power to control its own docket'." *Sherwood v. Horizon Actuarial Servs., LLC,* No. 1:22-CV-01495-ELR, 2023 WL 9546649, at *1 (N.D. Ga. Feb. 24, 2023) (citing *Clinton v. Jones*, 520 U.S. 681 (1997). Here, the State makes no attempt to show why exercising that discretion to stay the entire

litigation would be appropriate. Indeed, the request for a stay amounts to little more than a transparent desire to delay this case at the expense of children in the GNETS Program. The "six questions" the State seeks to certify for interlocutory appeal are largely mixed questions of law and fact that do not lend themselves to abstract resolution and would not materially advance the termination of this litigation. Moreover, for the reasons already explained in this Court's August 16, 2024 Order, the arguments the State intends to advance on appeal lack merit.

The State also fails to identify any harm that it will suffer if litigation is not stayed pending appeal. Although the State makes passing reference to the "expenditure of significant public financial resources" that may be associated with trying this case, ECF No. 506 at 4, the State ignores that a trial would be necessary, regardless of how the court of appeals were to resolve the "six questions" proposed for certification. The State further ignores the significant public resources that both parties have already expended to litigate this case and prepare for trial.

In contrast to the lack of potential harm shown by the State, any stay would impose substantial prejudice on the United States. Because it is unclear whether or when the State's requested appeal would be heard, let alone decided, staying proceedings at this late stage would only lead to further undue delay, evidence becoming stale, and an increased likelihood of the parties needing to devote additional resources to supplement discovery after any stay is lifted.

Granting another stay of indeterminate length would also harm the thousands of students with behavior-related disabilities in GNETS who have already waited nearly a decade for relief in this case. With each passing day, these students continue to endure unnecessary segregation and unequal educational opportunities, and many other students face serious risk of the same fate. Because the gravity of the harm students in GNETS face outweighs any inconvenience or expense associated with trial, the public interest weighs heavily against a stay and in favor of speedy resolution of the United States' claims.

In sum, the State has failed to demonstrate that a stay of proceedings is necessary or appropriate. For this reason, the Court should deny the State's request and adhere to the deadlines outlined in its August 16, 2024 Order.

## **CONCLUSION**

For the foregoing reasons, the State has failed to meet its burden to demonstrate that the extraordinary remedy it seeks is appropriate. The Court should therefore deny the State's Motion. If the Court nonetheless decides to certify its order for interlocutory review, the United States respectfully asks the Court to deny the State's request for a stay pending that appeal.

Respectfully submitted:

RYAN K. BUCHANAN
*United States Attorney*
Northern District of Georgia

 /s/ *Aileeen Bell Hughes*
AILEEN BELL HUGHES
GA   Bar   Number:   375505
Assistant United States Attorney
United States Department of Justice
Richard B. Russell Federal Building
75 Ted Turner Dr. SW
Suite 600
Atlanta, GA 30303-3309
(404) 581.6000
aileen.bell.hughes@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General

SHAHEENA A. SIMONS
Chief

KELLY GARDNER WOMACK
Deputy Chief

ANDREA HAMILTON WATSON
Special Litigation Counsel

CLAIRE CHEVRIER
FRANCES COHEN
MATTHEW GILLESPIE
VICTORIA M. LILL
JESSICA POLANSKY
LAURA C. TAYLOE
MICHELLE L. TUCKER
Trial Attorneys
Educational Opportunities Section

*/s/ Claire Chevrier*
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-4092
claire.chevrier@usdoj.gov

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| PLAINTIFF, | Civil Action No. |
| *v.* | 1:16-cv-03088-ELR |
| STATE OF GEORGIA, | |
| DEFENDANT. | |

### Certificate of Compliance

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing motion has been prepared using Times New Roman, 14-point font.

November 12, 2024.

*/s/ Aileen Bell Hughes*
AILEEN  BELL  HUGHES

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| PLAINTIFF, | Civil Action No. |
| *v.* | 1:16-CV-03088-ELR |
| STATE OF GEORGIA, | |
| DEFENDANT. | |

## Certificate of Service

I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

November 12, 2024.


*/s/ Aileen Bell Hughes*
AILEEN  BELL  HUGHES